Neil S. Ende, Esq.
nende@tlgdc.com
Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
Telephone: (202) 895-1707
Attorneys for Michael D. Lansky,
Michael D. Lansky, LLC dba Avid Telecom

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, ex rel. Kristin K. Mayes, Attorney General; State of Alabama ex rel. Attorney General Steve Marshall; State of Arkansas, ex rel. Tim Griffin; People of the State of California ex rel. Rob Bonta, Attorney General of California; State of Colorado, ex rel. Philip J. Weiser, Attorney General; State of Connecticut; State of Delaware ex rel. Kathleen Jennings, Attorney General of the State of Delaware; District of Columbia; Office of the Attorney General, State of Florida, Department of Legal Affairs; State of Georgia, ex rel. Christopher M. Carr, Attorney General of the State of Georgia; State of Hawaii; State of Idaho, through Attorney General Raúl R. Labrador; People of the State of Illinois; State of Indiana; State of Iowa ex rel. Brenna Bird, Attorney General of Iowa; State of Kansas; Commonwealth of Kentucky; State of Louisiana; State of Maine; Maryland Office of the Attorney General; Commonwealth of Massachusetts; People of the State of Michigan; State of Minnesota, by its Attorney General, Keith Ellison; State of Mississippi ex rel. Attorney General Lynn Fitch; State of Missouri, ex. rel. Andrew Bailey, Attorney General; State of Montana; State of Nebraska, ex rel. Michael T. Hilgers, Attorney General; State of Nevada; State of New Hampshire; State of New Jersey; State of New Mexico, ex rel. Raúl Torrez, Attorney General; People of the State of New York, by Letitia James, Attorney General of the State of New York; State of North Carolina, ex rel. Attorney General Joshua H. Stein; State of North Dakota, ex rel. Drew H. Wrigley, Attorney General; | Case No. 4:23-cv-00233-EJM<br><br>**OPPOSITION TO APPLICATION FOR CLERK'S ENTRY OF DEFAULT** |

| | |
|---|---|
| 1 | State of Ohio ex rel. Attorney General Dave Yost; State of Oklahoma ex rel. Attorney General Gentner Drummond; State of Oregon, ex rel. Ellen F. Rosenblum, Attorney General for the State of Oregon; Commonwealth of Pennsylvania, by Attorney General Michelle A. Henry; State of Rhode Island; State of South Carolina ex. rel. Attorney General Alan Wilson; State of Tennessee; State of Texas; Utah Division of Consumer Protection; State of Vermont; Commonwealth of Virginia, ex rel. Jason S. Miyares, Attorney General; State of Washington; State of West Virginia ex rel. Patrick Morrisey, Attorney General; State of Wisconsin; and State of Wyoming, |
| | Plaintiffs, |
| | v. |
| | Michael D. Lansky, L.L.C., dba Avid Telecom, an Arizona limited liability company; Michael D. Lansky, individually as a Member/ Manager/Chief Executive Officer of Michael D. Lansky, L.L.C., dba Avid Telecom; and Stacey S. Reeves, individually as a Manager/Vice President of Michael D. Lansky, L.L.C., dba Avid Telecom, |
| | Defendants. |

Defendants Michael D. Lansky, LLC, Michael D. Lansky, and Stacey S. Reeves ("Defendants"), through counsel, hereby oppose the Application for Clerk's Entry of Default filed by Joseph Yeoman on behalf of the State Attorneys General Plaintiffs on September 8, 2023.

**Background Facts**

The facts relevant to the Application are as follows. On May 23, 2023, Plaintiffs filed their Complaint against Defendants. The original date upon which all Defendants were to have filed their Answer was July 24, 2023. Following discussions between Plaintiffs and Defendants, it was agreed that the parties would stipulate to extend the time for Defendant's responsive pleading from July 24, 2023 to September 7, 2023, to allow for good faith settlement negotiations. At Plaintiffs' insistence, Defendants agreed that

2

the settlement process would commence with Defendants providing a significant variety of documents that Plaintiffs argued were necessary for them to consider settlement. Plaintiffs agreed to do so.

As set forth in the Declaration of Matthew Albaugh, which is attached as Exhibit 1 hereto, between June 1, 2023 and the present, Defendants have made significant, good-faith efforts to facilitate discussions about a possible settlement or compromise of the Lawsuit.  Between late June 2023 and July 18, 2023, Defendants and their counsel spent material time preparing a response to the Plaintiff's complaint to aid in settlement discussion.  Defendants' other attorney, Neil Ende, sent Plaintiffs' counsel a detailed refutation of Plaintiffs' allegations on July 18, 2023.  A true and accurate copy of the July 18, 2023 response is attached as Exhibit 4 hereto.

Defendants' counsel met with Plaintiffs' counsel via Zoom on July 19, 2023. Following the meeting, Mr. Albaugh sent an email to Plaintiffs' counsel on July 19, 2023, thanking them for the meeting.  In that email, he confirmed that Defendants would assemble certain information requested by Plaintiffs, and requested a list of the specific, additional information that Plaintiffs wanted to evaluate a potential settlement.  Plaintiffs responded with approximately five categories of documents and information on July 19, 2023.  A true and accurate copy of the July 19, 2023, correspondence is attached as Exhibit F to the Albaugh Declaration (Exhibit 1).

The efforts at settlement during this period also included numerous discussions and emails regarding the procedures that would be undertaken to govern the settlement discussions and the specific actions that would be required of Defendants.  While Defendants viewed a number of these procedures and actions—including Plaintiffs' refusal to agree to a standard form Protective Order—as inappropriate and oppressive, to move the process forward, Defendants agreed to produce each of the five categories of documents and to do so notwithstanding Plaintiffs' refusal to enter the standard form

Arizona Protective Order.[1] Defendants made their first production to Plaintiffs on August 21, 2023.  Declaration of Matthew Albaugh at paragraph 12.

On August 31, 2023, Defendants informed Plaintiffs' counsel that Defendants anticipated making a supplemental production shortly.  Plaintiffs' counsel responded that same day as follows: "Thank you for letting us know and we look forward to receiving the second production.  If you'd like to set up a call to discuss the production sent to-date, we will need additional time after receiving the second batch of documents to complete a preliminary review.  We can get back to you about setting up a call after that time so that we can be better positioned to have a more productive conversation." Declaration of Matthew Albaugh at paragraph 13.

On or about September 1, 2023, Mr. Albaugh contracted COVID-19.  He discovered he had contracted COVID-19 as a result of an at-home test.  "Between September 1, 2023, and September 7, 2023, I was out of the office in bed at home and seriously ill.  I did not return to the office until September 8, 2023."  Declaration of Matthew Albaugh at paragraph 14.

On the afternoon of September 7, 2023, Mr. Albaugh discovered that Defendants' deadline to answer Plaintiffs' complaint would expire later that day.  Because Plaintiffs had previously expressed no displeasure or complaints about Defendants' progress assembling information and documents, he assumed there would be no problem obtaining Plaintiffs' consent to an additional 30-day extension.   Declaration of Matthew Albaugh at paragraph 15.

On September 7, 2023, Mr. Albaugh requested a 30-day extension to Defendants' response deadline.  At no time prior to this request had Plaintiffs expressed displeasure,

---

[1] Defendants requested the Protective Order be put in place to ensure that the documents that it was producing as a party of the settlement discussions would not be shared with the defendants in two defamation lawsuits filed by Avid Telecom and Michael Lansky against third parties that it believes had defamed them through false statements, many of which form the basis of the State Attorney General's complaint.  More details on the Protective Order issue and the engagement between the parties is set forth in paragraphs 10-11 of the Declaration of Matthew Albaugh.

4

concerns, or any other issue with Defendants' efforts to provide the requested information. Declaration of Matthew Albaugh at paragraph 16.

Later that day, on September 7, 2023, Plaintiffs advised Mr. Albaugh that they would not consent to an extension to the responsive deadline. For the first time, Plaintiffs raised concerns about Defendants' settlement efforts: "Based on Defendants' general lack of responsiveness and the content of the limited production we have received and reviewed so far, we have no reason to believe that Defendants are interested in resolving this matter by agreement within the next thirty days." Mr. Albaugh promptly alerted Mr. Ende of Plaintiffs' refusal to consent to an additional 30-day extension.[2] Declaration of Matthew Albaugh at paragraph 17.

As set forth in the Declaration of Silsa Cabezas, paralegal to Neil Ende, promptly on learning that Plaintiffs would not consent to the extension, Mr. Ende and Ms. Cabezas prepared and filed a *pro hac vice* motion seeking the admission of Mr. Ende to practice before the Court and a Motion for Extension of Time to respond to the Complaint. True and correct copies of these filings are attached as Exhibit 2 hereto. The two documents were filed at approximately 6:55 PM PDT on September 7, 2023, and email confirmations of each filing were received shortly thereafter. Declaration of Silsa Cabezas at paragraph 4. Neither Mr. Ende nor Ms. Cabezas had had reason to believe that there was any issue with the docketing of these filings on September 7, 2023.

The following day, after Defendants became aware of Plaintiffs' Application, Defendants first learned that the Motion to Dismiss did not appear in the Complaint docket file. Promptly at 9:00 am PDT on September 8, 2023, Ms. Cabezas and Mr. Ende made calls to the Judge's chambers, the clerk's office and, ultimately, to the *pro hac vice* application office. The clerk in the *pro hac vice* office was able to track down the filing we had made. She told Ms. Cabezas and Mr. Ende that both the *pro hac vice* application and the Motion to Dismiss had been placed into the *pro hac vice* docketing system because

---

[2] Mr. Ende agreed to serve as counsel to Defendant for the purpose of seeking an extension of time and, as it became necessary, to oppose the Application for Default.

5

this was the first pleading that Mr. Ende had filed and thus his name had yet to be included in the case docketing system. She told us that she had granted the *pro hac vice* application and that we should refile the Motion for Extension of Time and that it would be properly docketed in the case docketing system. Promptly thereafter, Defendants refiled the Motion for Extension of Time in the main case docket, along with a request for acceptance *nunc pro tunc*. Declaration of Silsa Cabezas at paragraph 5.

On September 8, 2023, Mr. Albaugh provided Plaintiffs with Defendants' supplemental production of documents and information. Notwithstanding the filing of the Application for Clerk's Entry of Default the previous evening, representatives of the Indiana Attorney General's Office downloaded Defendants' supplemental production the same day. Declaration of Matthew Albaugh at paragraph 18.

### **The Legal Standard**

The Plaintiffs' Application is predicated in its entirety on the allegation, that Plaintiffs know to be false, that Defendants had not sought an extension of time to file a responsive pleading. As set forth above, and verified in the attached Declaration of Silsa Cabezas, Plaintiffs' false factual predication cannot survive scrutiny and cannot serve as the basis for a default. With respect to the Motion for Extension of Time, as set forth in that pleading and verified in Mr. Albaugh's Declaration and in Ms. Cabezas' Declaration, Defendants have operated responsibly and in complete good faith throughout the settlement process and in filing their request for Extension of Time. As those Declarations demonstrate, Defendants believed that the settlement discussions were progressing in a meaningful and a positive manner and, for that reason, they had no reason to believe that there would be any issue with any extension of time to continue settlement discussions. Defendants' delay in seeking the extension was the byproduct of Mr. Albaugh's unfortunate and unexpected health issue.

In this context, to the extent the Court deems necessary, Defendants respectfully believe that good cause exists for the Court to grant Defendants' Motion for Extension of

Time. Moreover, given the serious factual and legal deficiencies in the Complaint,[3] as well as the punitive relief that Plaintiffs seek,[4] it would be extremely prejudicial to permit Plaintiffs to obtain a default in the circumstances presented. At the same time, good cause clearly exists to allow Defendants to fully defend themselves against the provably false and legally unsustainable claims asserted in the complaint in its responsive pleading and at trial.

**The Caselaw Fully Supports the Denial of Plaintiffs' Application for Default**

Plaintiff cites only a single case, *Rowland v. California Men's Colony,*[5] in support of its Application. As an initial matter, the facts of *Rowland* are not in line with the facts of this instant matter. Indeed, in stark contrast to the facts of the instant case—where the alleged default arises out of an alleged failure to file a responsive pleading or to seek a timely extension of time—the *Rowland* case holds that corporations can appear in a court proceeding only through an attorney and that the failure to do so can be grounds for a default. There is no such issue here. As the docket in this case reflects, Defendants are represented by Mr. Ende as the result of the grant of the *pro hac vice* application that was filed on September 7, 2023. *See* the Declaration of Silsa Cabezas and the Exhibits thereto which are attached as Exhibit 3 hereto. In addition, as Defendants themselves pled in the Application, Mr. Ende and Mr. Albaugh had advised Plaintiffs of their status as counsel to Defendants.[6] *See* generally, Application. Thus, notwithstanding the contrary and false allegations in the Application, the fact of legal representation is not in legitimate dispute.

---

[3] For a complete discussion of the serious factual and legal deficiencies in the complaint, *see, infra*, the section titled "Defendants Have a Meritorious Defense" and Exhibit 4 hereto.

[4] This relief would include, for example, a complete ban from work in the telecommunications industry for Ms. Reeves, whose worked as an independent contractor to Avid Telecom with absolutely no decision-making authority.

[5] Rowland v. California Men's Colony (91-1188), 506 U.S. 194 (1993)

[6] Prior to the submission of the *pro hac vice* application and the filing of the Motion for Extension of Time, Mr. Ende participated directly in the initial call with the Attorney General Group. The Declaration setting forth the agreed timing, procedures and productions associated with the parties' settlement discussions is provided by Mr. Albaugh as he served as lead counsel in the settlement discussions with Plaintiffs.

7

1  Moreover, because the *Rowland* case did not involve allegations relating to an alleged
2  failure to respond to a complaint in a timely manner, the *Rowland* case does stand for the
3  proposition that the remedy in that circumstance is a default.[7]  As such, the *Rowland* Case
4  is plainly inapposite and should not be given any precedential weight.

## Defendants Did Not Engage in Culpable Conduct

It is widely recognized that default is an extreme remedy that should only be imposed where there is clear evidence of that a party has engaged in "culpable conduct." Default is widely viewed as a drastic step which is appropriate only in extreme circumstances, and that every case "should whenever possible, be decided on the merits."[8] In the 9th Circuit, the prevailing doctrine is that the determination of whether sufficient culpability exists, is based on three factors: (i) whether the moving party engaged in culpable conduct leading to the default; (ii) whether the party in default had no meritorious defense to the action; or (iii) whether setting aside the default would prejudice the opposing party.

Culpable conduct exists when a party "intentionally fail[][s] to answer"[9] a complaint.  The courts in the 9th Circuit have concluded that a finding of "intention" requires more than a mere conscious choice not to answer; rather, "to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process.'"[10]

---

[7] The *Rowland* case does not address the untimely filing an answer, or default judgment, or any of the issues present in this case.  Rowland was a case filed by a prison inmate who was also indigent.  The case considered, among many other more material issues, whether associations or corporations could be a person and therefore plead indigency. The *Rowland* Court concluded that corporations must be represented by counsel.

[8] *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

[9] *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010).

[10] *Id*.

8

     In the case at hand, as the Declarations of Mr. Albaugh and Ms. Cabezas plainly show, Defendants did not intentionally fail to timely answer a complaint or otherwise act in bad faith. To the contrary, when the response date arose, Defendants were fully engaged in a good faith settlement process and believed that the process would continue beyond the response date with the consent of Plaintiffs' counsel. As Mr. Albaugh declares, the reason that the extension of time was filed on the last day was that he became very ill with COVID-19 and failed to realize—until the afternoon of September 7th—that the response date had arrived. Given Defendants' full cooperation in the settlement process, clearly, there was no "bad faith" or an "intention to take advantage of the other party, interfere with judicial decision making, or otherwise manipulate the legal process."[11] Notably, Plaintiffs do not and cannot plead such facts as they do not exist.

     Moreover, to demonstrate "good cause" for default, the asserting party must show prejudice that "result[s] in greater harm than simply delaying resolution of the case. Rather, the standard is whether asserting party's ability to pursue his claim will be hindered."[12] Plaintiffs provide no evidence that they will suffer material harm from the thirty-day extension that Defendants have requested. Given the time that has passed since the filing of the Complaint, there is no reason to believe that there would be any material prejudice.

### **Defendants Have a Meritorious Defense**

     The Complaint is predicated on strained and provably unsustainable legal theories under which Avid Telecom and the two individuals can be held liable for the delivery of telephone calls that they did not originate and which they had no way of knowing—until after the fact—could be in violation of the referenced regulations and laws. The Complaint is riddled with false statements of fact and facts that are plainly not applicable to Avid Telecom. In addition, the Complaint includes claims against Ms. Reeves—who served as an *independent contractor* to Avid Telecom--in her individual capacity, notwithstanding

---

[11] *Id*.

[12] *TCI Group Life Ins. Plan*, 244 F.3d at 700.

1  clear precedent in the 9th Circuit precluding such claims.  Moreover, it is noteworthy that
2  the Complaint was filed notwithstanding the fact that ***no state or federal expert regulatory***
3  ***agency or court has ever issued an order concluding that even a single call transited by***
4  ***Avid Telecom was illegal.***

5       A more complete summary of certain of Defendants' key defenses to the Complaint
6  is attached as Exhibit 4 hereto.  The defenses that Defendants will assert are substantial
7  and well founded and they expect to be fully exonerated.  Defendants deserve the
8  opportunity to present these defenses and Plaintiffs should not be allowed to use the
9  default process to deny them that opportunity.[13]

10  **Defendants Timely Sought an Extension of Time Based on Good Cause**

11       As set forth in the Declaration of Silsa Cabezas, on September 7, 2023, Defendants
12  timely filed a *pro hac vice* application for Mr. Ende along with a Motion for Extension of
13  Time.  Because Mr. Ende had yet to file an appearance, the docketing system accepted
14  each of these filings but placed them only in the docket for *pro hac vice* applications but
15  not into the docket for the main case.  This procedure is not apparent in the Pacer system
16  and Ms. Cabezas did not receive an error message or the like advising her that the Motion
17  would not be docketed in the main case until Mr. Ende's *pro hac vice* application was
18  granted.  Thus, Defendants were unaware of this circumstance until the next day.

19       Following conversations with the clerk for the main case and the clerk for the *pro*
20  *hac vice* section, Mr. Ende and Ms. Cabezas were advised of the filing "snafu." The *pro*
21  *hac vice* clerk told us that the issue arose because the docketing system creates separate
22  dockets for pro hac vice applications and for documents filed in the main case.  Once she
23  granted the *pro hac vice* application, the docketing system would recognize Mr. Ende as
24  counsel, and it would docket the refiled Motion for Extension of Time in the main case.
25  Pursuant to these instructions, promptly thereafter Defendants' counsel refiled the Motion

---

[13] As set forth in Exhibit 4, there are many reasons why Plaintiffs—and the persons who have fed them a continuing diet of false information—would want to use the default process to prevent a full airing of the facts associated with the claims presented in the complaint.

for Extension of Time along with a cover motion requesting that it be accepted *nunc pro tunc* to its original filing date of September 7, 2023. That Motion is currently pending.

In addition to requiring evidence of "bad faith" or an "intention to take advantage of the other party, interfere with judicial decision making, or otherwise manipulate the legal process" to sustain an application for default, the courts in the 9th Circuit have typically also looked to see if there is an "explanation of the default [that is] inconsistent with a devious, deliberate, willful, or bad faith failure to respond.").[14] The facts and circumstance preceding the response date—as set forth in the Declarations of Mr. Albaugh and Ms. Cabezas—clearly "explain" both Defendants' good faith throughout the settlement process and that the "technical error" that led to the delayed—but timely—request for extension of time.

Even if this Court were to consider an Application for Default, Defendants can make a showing that Plaintiffs will not be prejudiced, and a meritorious defense by citing the myriad cases holding that default is an extreme remedy to be used in the rarest of circumstances.

### **Prayer for Relief**

Defendants timely filed a Motion for Extension of time to allow the parties to continue settlement discussions. That Motion set forth good cause for the requested extension. Thus, Defendants request that it be granted. The grant of that Motion would render the Application for Default moot, negating the need to address the Application. However, should the Court elect to consider the Application, it should be denied outright because it is based on erroneous allegations of fact and because it does not plead, let alone establish, a factual or a legal basis for default.

Accordingly, Defendants pray that:

(i) This Court grants Defendants' Motion for Extension of Time

(ii) This Court denies Plaintiffs' Application for Default

---

[14] *Egelhoff v Egelhoff ex rel. Breiner*, 532 U.S. 141, 147–50, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001).

This Court grants Defendants such other relief as it deems appropriate and necessary.

DATED this 14th day of September, 2023.

Respectfully submitted,
***Technology Law Group, LLC***

Neil S. Ende
(*Pro Hac Vice*)
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC  20015
202.895.1707
nende@tlgdc.com
*Counsel to Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the __14th__ day of September, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

_____
Silsa Cabezas