Neil S. Ende, Esq.
nende@tlgdc.com
Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
Telephone: (202) 895-1707
Facsimile: (202) 478-5074
Attorneys for Michael D. Lansky, LLC
dba Avid Telecom
Michael D. Lansky and Stacey S. Reeves

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

State of Arizona, ex rel. Kristin K. Mayes
Attorney General et al.

Plaintiffs

v.

Michael D. Lansky, LLC, dba
Avid Telecom, an Arizona
Limited Liability Company;

Michel D. Lansky, individually
As a Member/Manager/Chief
Executive Officer of Michael D.
Lansky, LLC dba Avid Telecom;
and

Stacey S. Reeves, individually as
a Manager/Vice President of
Michael D. Lansky LLC dba
Avid Telecom

Defendants.

Case No. 4:23-cv-00233-EJM

## MOTION TO STAY AND REFER

Defendants Michael D. Lansky, LLC, dba Avid Telecom, Michel D. Lansky, in his individual capacity, and Stacey S. Reeves in her individual capacity (together referred to as "Defendants"), through counsel, hereby respectfully request, pursuant to the prudential doctrine of primary jurisdiction, that the Court stay and refer each of the counts set forth in the Complaint, as appropriate, to the Federal Communications Commission (Counts II-V) and to the Federal Trade Commission (Count I). For the reasons stated, good cause supports this request.[1]

## ARGUMENT

### The Legal Standard

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency. *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir. 2008). "A court's invocation of the doctrine does not indicate that it lacks jurisdiction." *Id* (citing *Reiter v. Cooper,* 507 U.S. 258, 268–69, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993)). "Rather, the doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over

[1] This Motion is filed as an alternative to the Motion to Dismiss that is also being filed today. Stay and referral is requested to the extent that the Court declines to dismiss the Complaint in its entirety.

the relevant industry rather than by the judicial branch." *Id.* (citing *Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)).[2]

Primary jurisdiction applies where a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency," and if "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* (citing *Brown v. MCI WorldCom Network Servs.,* 277 F.3d 1166 (9th Cir.2002); *United States v. Gen. Dynamics Corp.,* 828 F.2d 1356, 1362 (9th Cir.1987); *Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 442, 27 S.Ct. 350, 51 L.Ed. 553 (1907) (internal quotations omitted)). Courts residing within jurisdiction of the United States Court of Appeals for the Ninth Circuit have held that the doctrine applies in cases where there is: "(1)[a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a

[2] "Once a district court determines that primary jurisdiction is appropriate, it may either stay proceedings or dismiss the case without prejudice." *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 761 (9th Cir. 2015). "[W]hen a court invokes primary jurisdiction 'but further judicial proceedings are contemplated, then jurisdiction should be retained by a stay of proceedings, not relinquished by a dismissal.'" *Id.* (citing and quoting *N. Cal. Dist. Council of Hod Carriers v. Opinski*, 673 F.2d 1074, 1076 (9th Cir.1982)). *See also Beach TV Cable Co. v. Comcast of Fla./Ga., LLC*, 808 F.3d 1284, 1288 (11th Cir. 2015) (The primary jurisdiction doctrine allows a court to "stay an action pending resolution of an issue that falls within the special competence of an administrative agency.") Notably, the *Beach T Cable* case, like this one, included two state law claims arising under Florida's consumer protection statute. In referring the case to the FCC, the Court also stayed those claims. *See Id*. at 1286.

comprehensive regulatory authority that (4) requires expertise or uniformity in administration," *Syntek*, 307 F.3d at 781 (citing *Gen. Dynamics,* 828 F.2d at 1362).

> In considering these factors, we have previously explained that the primary jurisdiction doctrine is designed to protect agencies possessing "quasi-legislative powers" and that are "actively involved in the administration of regulatory statutes." *Gen. Dynamics,* 828 F.2d at 1365. Charged with the administration of the Telecommunications and Federal Communications Acts, the FCC is such an agency. *See* 47 U.S.C. §§ 151, 154.

*Clark,* 523 F.3d at 1115.

The primary jurisdiction doctrine rests both on a concern for uniform outcomes (which may be defeated if disparate courts resolve regulatory issues inconsistently), *Texas Pacific Ry. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 441, 27 S.Ct. 350, 51 L.Ed. 553 (1907); *see also* Peter L. Strauss, *One Hundred Fifty Cases Per Year: Some Implications of the Supreme Court's Limited Resources for Judicial Review of Agency Action,* 87 Colum. L. Rev. 1093, 1121 (1987) (suggesting uniformity rationale for *Chevron* doctrine), and on the advantages of allowing an agency to apply its expert judgment. *United States v. Western Pacific R.R.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). Expertise, of course, is not merely technical but extends to the policy judgments needed to implement an agency's mandate. *See id.,* 352 U.S. at 65, 77 S.Ct. at 166; *Chevron,* 467 U.S. at 864-66, 104 S.Ct. at 2792-93. A court's support for a primary jurisdiction referral should be particularly strong where there is a demonstrated need for uniformity of policy, based on expert judgment, *Western Pacific R.R.,* 352 U.S. at 65-70, 77 S.Ct. at 166-68 and action by the court would preempt the regulatory agency from implementing what amount

to policy decisions about an important issue of national concern. *Allnet Communication Service, Inc. v. National Exchange Carrier Ass'n,* 965 F.2d 1118, 1121 (D.C. Cir. 1992).[3]

Historically, courts have avoided making judicial determinations in cases that require action by a regulatory body, including the Federal Communications Commission ("FCC") and the Federal Trade Commission ("FTC"). From the time of the doctrine's origins, courts have consistently held that a judicial remedy "must be confined to redress of such wrongs as can, consistently with the context of the act, be redressed by courts without previous action by the Commission[.]" *Id.* at 442, 27 S.Ct. at 356; *see also ICC v.*

---

[3] The enactment by Congress of what has become The Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act (aka the "Traced Act") and the comprehensive and evolving regulatory scheme promulgated thereunder, provides one of many examples of the complexity of the legal and policy issues surrounding short duration calls and robocalling that lie at the heart of this proceeding. As described by Congress, the Traced Act instructs the FCC to "establish regulations to create a process that "streamlines the ways in which a private entity may voluntarily share with the Commission information relating to" a call or text message that violates prohibitions regarding robocalls or spoofing set forth section 227(b) and 227(e) of the Communications Act of 1934, as amended." The multiple implementing proceedings at the FCC that have followed the enactment of the Traced Act include: (i) FCC Report and Order, in EB Docket No. 20–374, FCC–21–75, adopted and released on June 17, 2021, which was the initial implementing proceeding; and (ii) Further Notice of Proposed Rulemaking, and Notice of Inquiry (FCC 23-37), which seeks public comment on a variety of anti-robocall issues including requiring providers to adopt analytics-based blocking, requiring providers to block based on do-not-originate lists, issues that relate directly to claims by the Plaintiffs relating to call blocking and Do Not Call issues; (iii) Further Notice of Proposed Rulemaking, Targeting and Eliminating Unlawful Text Messages, CG Docket No. 21-402, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, March 16, 2023, which is an ongoing proceeding (initiated in June 2023) that seeks to clarify the opt in process for telemarketing calls that is at the heart of his case.

*Atlantic Coast Line R. Co.,* 383 U.S. 576, 579-80, 86 S.Ct. 1000, 1004, 16 L.Ed.2d 109 (1966)(discussing consequences of a court referral to the Commission of issues that *Abilene* reserves to it); *Hansen v. Norfolk Western Ry.,* 689 F.2d 707, 709-11 (7th Cir. 1982) (applying *Abilene* to successor provision, 49 U.S.C. § 11705(c)(1), authorizing civil actions to enforce liability against common carriers).

**<u>Counts II-V Should Be Referred To the FCC</u>**

Within the everchanging landscape of federal regulation of robocalling services, and considering the critical open issues, there is no doubt that the claims and defenses asserted in this case cannot be judicially resolved without further action by the FCC and the FTC. Ironically, concern about the open issues regarding the lawfulness of robocalls is held not just by the Defendants, but by most Plaintiffs in this case. Indeed, shortly after the filing of this lawsuit, on June 6, 2023, a coalition of 28 state attorneys general[4] — all Plaintiffs in this proceeding — filed Reply Comments with the FCC expressly calling on the agency to clarify the federal rules requiring telemarketers to obtain consent between an individual consumer and a specific seller or business entity before making telemarketing robocalls on behalf of the seller or business to that consumer, often called the "opt-in process." Those

[4] Attorney Generals from the states of Alabama, Alaska, Arizona, California, Colorado, Connecticut, Washington D.C., Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, New Jersey, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Vermont, Virginia, Washington, Wisconsin, and Wyoming.

comments were submitted in a docket—*that remains open to date*—examining this exact issue.[5]

Remarkably, in this action, Plaintiffs have accused Defendants of conspiring to violate opt-in regulations *that most Plaintiffs have expressly told the FCC* *<u>that they do not understand</u>* and need additional clarity from the FCC to properly implement. The issue of regulations associated with opt ins is essential to this proceeding as every call that the Plaintiffs allege to be illegal would undeniably be legal if it was associated with a proper opt in.[6] Thus, because the majority of the tracebacks described specifically identified a

---

[5] *Further Notice of Proposed Rulemaking, Targeting and Eliminating Unlawful Text Messages,* CG Docket No. 21-402, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, March 16, 2023. Defendants respectfully request that the Court take judicial notice of this NPRM as an official government document issued by a government agency.

[6] If this case proceeds to the evidentiary stage, Defendants intend to seek the production of documents evidencing the sources of the data utilized by the Industry Traceback Group the underly the tracebacks issued to Avid Telecom as well as the sources of data referenced by the Plaintiffs in the complaint. On information and belief, much of these data were obtained as a byproduct of what appears to be: (i) the illegal recording of telephone calls—ironically, without the required two-party consent, where it is required (in 14 states); (ii) by one or more third parties that illegally scraped and collected customer voicemail data; (iii) the byproduct of data collection from telephone numbers that were obtained by a business entity that were improperly (illegally) listed on the Do Not Call List (only residential numbers qualify; see https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs); and (iv) through the use of Artificial Intelligence call answering services that, apparently intentionally, are designed to cut off a call before the required disclosures are made (which leads to allegations of illegality based on the failure to provide required disclosures). Defendants also have very significant concerns about the manner (*e.g.,* the apparent delivery of these data by wire) and circumstances (*e.g.,* who knew about the data collection methodologies and whose idea was it to secure the data in this manner—*i.e.,* was it single person or a group—and was compensation paid to the data provider) under which these data made it into Plaintiffs' hands. Defendants are also very concerned about how the financial data regarding Mr. Lansky referenced in the complaint—and cited as the basis for his alleged personal liability—is also of great concern. ***Defendants' request that the court allow targeted discovery into these issues prior to ruling on this Motion***. In all

perceived problem with the opt in as the basis for issuance, it is nothing less than imperative that the FCC be allowed to address the uncertainties in its policies before the court attempts to do so.[7]

The issue of what constitutes permissible forms of opt-in is presently being considered by the FCC, as part of its comprehensive regulatory scheme governing robocalls. Yet, in this case, these same attorneys general seek to destroy Avid Telecom and to impose harsh sanctions on its principal and an innocent independent contractor for allegedly violating these very same ambiguous regulations.

As the courts have repeatedly recognized, it is essential that a single, uniform nationwide policy be determined by the FCC, the agency tasked by Congress with legislating this area of commerce. A decision by this court at this juncture--on issues that the Plaintiffs have expressly stated are unclear, on which they have expressly requested clarification, and which remain pending for resolution in a proceeding before the FCC—

---

events, Defendants reserve all right to challenge the admissibility of any "evidence" that was obtained through improper or illegal means.

[7] Examples of these tracebacks, showing that the reason for issuance was a *suspicion* of improper opt-in, are attached as Exhibit I hereto. Defendants respectfully request that the Court take judicial notice of these tracebacks as an official government document issued by the Industry Traceback Group, which (as a part of USTelecom) has been designated by the FCC as the consortium responsible for the issuance of tracebacks since 2020. *See*, e.g., *Report and Order Implementing Section 13(d) of the Pallone-Thune and Telephone Robocall Abuse Criminal Enforcement and Deterrence Act*, EB Docket No. 20-22, Released August 22, 2022 (2022-2023 designation) at para. 40; *Report and Order Implementing Section 13(d) of the Pallone-Thune and Telephone Robocall Abuse Criminal Enforcement and Deterrence Act*, EB Docket No. 20-22, Released August 18, 2023 (2023-2024 designation) at para. 43 (the FCC's 2022-2023 and 2023-2024 designations).

would directly threaten the ability of the FCC to create a uniform national regulatory scheme. Defendants respectfully believe that the court should defer to the FCC to clarify the policies and rules regarding robocalling—rues that will be uniformly applicable on a nationwide basis—before the court attempts to apply those policies and rules to one specific set of facts in this proceeding.

**Count I Should Be Referred to the Federal Trade Commission**

The Federal Trade Commission Act of 1914, 5 U.S.C. §§ 41-58 et seq. establishes the FTC as the expert federal agency empowered, among other things, to (a) prevent unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce; (b) seek monetary redress and other relief for conduct injurious to consumers; (c) prescribe rules defining with specificity acts or practices that are unfair or deceptive, and establishing requirements designed to prevent such acts or practices; (d) gather and compile information and conduct investigations relating to the organization, business, practices, and management of entities engaged in commerce; and (e) make reports and legislative recommendations to Congress and the public. *See* https://www.ftc.gov/legal-library/browse/statutes/federal-trade-commission-act.

The TSR has been a matter of continuing review and revision, including four major amendments in the last decade. The most recent amendment, in 2015, gave effect to the Telemarketing and Consumer Fraud and Abuse Prevention Act (TCFPA). This legislation gives the FTC enforcement tools to combat telemarketing fraud, gives consumers added privacy protections and defenses against unscrupulous telemarketers, and helps consumers tell the difference between fraudulent and legitimate telemarketing.

The FTC's continuing review and refinement of its telemarketing rules has continued even after the filing of the Complaint. The volatility and uncertainly of the federal regulatory scheme surrounding the TSR is nothing short of remarkable. For example, on April 28, 2022, the FTC issued a Notice of Proposed Rulemaking (Matter Number R411001) in which it proposed to extend the TSR's prohibition on material misrepresentations and false and misleading statements to business-to-business calls. Again, as issue with direct relevance to the instant proceeding.[8] This NPRM—and thus the rules applicable to the TSR—is currently pending. Again, on July 27, 2023, the FTC abruptly and without prior notice, changed its interpretation of TSR rules concerning the manner in which a telemarketer can secure the lawful consent of a party to receive telemarketing calls.[9] Now, after years of enforcement under a TSR regulatory regime that permitted one-to-one consent for prerecorded calls, the FTC took the position that consent can only be obtained directly from a consumer and cannot be transferred.

As these facts demonstrate, the FCC and the FTC are the duly authorized expert agencies with responsibility for setting and revising the rules governing the transmission of certain interstate calls. As the facts also demonstrate, these rules are the byproduct of a complex integration between law and policy. As such, determinations regarding the

[8] The Federal Register publication of this NPRM can be found at: https://www.federalregister.gov/documents/2022/06/03/2022-09914/telemarketing-sales-rule.

[9] This is the same issue on which many of the Plaintiffs in this proceeding—who seek to hold Defendants liable under the TCPA for conduct that they allege *knowingly* constitutes a violation of the FCC's opt in rules—told the FCC that they did not understand the applicable rules and needed a clarification. *See* footnotes 3-4, supra.

impact of these laws and policies on the facts of this proceeding are best left to the expert agencies, at least in the first instance.

## CONCLUSION

The legal and regulatory landscapes surrounding the TCPA and the TSR are an ever-changing, complex mix of law, regulation, and policy. Congress has delegated the authority to establish and interpret those policies, including the authority to determine when violations have occurred. Principles of comity, deference to expertise and the need for uniformity all weigh heavily in favor of staying the instant proceeding and referring the issues arising under each of the counts to the FCC or to the FTC, as relevant. Once those agencies have provided appropriate input, the case can be returned to the Court for final resolution.

Accordingly, for the reasons stated, Defendants respectfully request that the Court stay the instant proceeding and refer the issues arising under the TCPA and the TSR to the FCC or the FTC, as relevant.

Respectfully submitted,

Neil S. Ende
*Pro Hac Vice*
*Counsel to Michael D. Lansky, LLC dba Avid Telecom*
*Michael D. Lansky and Stacey S. Reeves*

Dated: October 6, 2023

Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
nende@tlgdc.com
Telephone: (202) 895-1707
Facsimile: (202) 478-5074

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of October 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

Silsa Cabezas

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

State of Arizona, ex rel. Kristin K. Mayes Attorney General et al.

Plaintiffs

v.

Michael D. Lansky, LLC, dba Avid Telecom, an Arizona Limited Liability Company;

Michel D. Lansky, individually As a Member/Manager/Chief Executive Officer of Michael D. Lansky, LLC dba Avid Telecom; and

Stacey S. Reeves, individually as a Manager/Vice President of Michael D. Lansky LLC dba Avid Telecom

Defendants.

Case No. 4:23-cv-00233-EJM

**[PROPOSED] ORDER**

Upon consideration of the Motion to Stay and Refer, the opposition and reply, it is the considered judgement of this Court that Defendant have established that the prudential doctrine of primary jurisdiction should be applied and, that the Court should stay and refer each of the counts set forth in the Complaint, as appropriate, to the Federal Communications Commission (Counts II-V) and to the Federal Trade Commission (Count I).

This Court retains jurisdiction over the case.

SO ORERED:

Dated: ____________________________