Neil S. Ende, Esq.
nende@tlgdc.com
Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
Telephone: (202) 895-1707
Facsimile: (202) 478-5074
Attorneys for Michael D. Lansky, LLC
  dba Avid Telecom
Michael D. Lansky and Stacey S. Reeves

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| State of Arizona, ex rel. Kristin K. Mayes Attorney General et al. | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Case No. 4:23-cv-00233-EJM |
| Michael D. Lansky, LLC, dba Avid Telecom, an Arizona Limited Liability Company; | ) ) ) ) | |
| Michel D. Lansky, individually As a Member/Manager/Chief Executive Officer of Michael D. Lansky, LLC dba Avid Telecom; and | ) ) ) ) ) ) | |
| Stacey S. Reeves, individually as a Manager/Vice President of Michael D. Lansky LLC dba Avid Telecom | ) ) ) ) ) | |
| Defendants. | ) | |

_____

1

## MOTION TO DISMISS

Defendants Michael D. Lansky, LLC, Michael D. Lansky, and Stacey S. Reeves ("Defendants"), through counsel, hereby move to dismiss the Complaint filed by the state Attorneys General identified in the caption (the "Plaintiffs" or "AGs").  For the reasons stated herein, the Complaint should be dismissed in its entirety, the Defendants should be awarded their attorneys' fees and costs. [1]

The filing of a complaint of this scope, containing inciteful rhetoric is a very serious matter.  A complaint brought by a nationwide coalition of attorneys general should be crafted with extreme care to ensure that it is well founded and prosecuted in a responsible manner. Proceedings of this nature should never be undertaken for the purpose of publicity or retribution.[2]

The AGs have pursued a public smear campaign against the Defendants, along with this well publicized Complaint—despite the fact that no regulatory authority with jurisdiction over the issues—not the Federal Communications Commission, which has primary

_____

[1] Contemporaneously with this Motion, Defendants are filing a Motion to Stay and Refer based on the doctrine of primary jurisdiction.  That Motion is presented as an alternative request— in the event that this Motion is not granted in its entirety—that the case be stayed and referred to the FCC and the FTC as set forth in the governing motion.

[2] The inflammatory rhetoric contained both in the Complaint itself and in the AGs' endless publicity-hungry press releases has led to dozens of death threats against each of the Defendants as well as their outside counsel.  Copies of two of the dozens of threatening messages that Defendants received, are attached in Exhibit I hereto.

jurisdiction over interstate calling, not the Federal Trade Commission, which purports to have jurisdiction based on the content of the calls, not any state regulatory authority, and not any court—has ever found that a single call transmitted by Defendant Avid Telecom was illegal. There is a reason for that: Defendants have met every applicable regulatory obligation and have not violated the law. For the reasons set forth below, the Complaint must be dismissed by this Honorable Court.

## **BACKGROUND FACTS**

### **The Robocalling Industry**

Robocalling is generally defined as the placement of a phone call that uses a computerized autodialer to deliver a pre-recorded message. Although the term "robocalling" has become pejorative, the fact is that not all robocalls are illegal. Indeed, a call is only an illegal robocall in the limited circumstances when it is placed using a computerized autodialer *and* the message is prerecorded (*i.e.,* not delivered via a live human voice). Calls that do not meet *both* criteria are entirely legal. And even where the call is placed using a computerized autodialer *and* the message is prerecorded, a robocall is entirely legal if it comes from a caller who is exempted from an applicable telemarketing statute (for example, a political campaign to a landline telephone) or where the party receiving the call has agreed in advance to receive the call. These customers, who represent a large percentage of robocall recipients, include persons who, for example, have opted-in to receive notifications from doctors, pharmacies or delivery services, and parents opting into a school emergency notification service. As a result, carriers like Avid Telecom that transmit calls falling within one of these allowed categories are operating in an entirely legal and proper manner, without reference to the number of calls

they transmit. Put another way, the mere fact that a carrier like Avid Telecom transmits a lot of calls is not evidence of illegal activity, as many robocalls are legal.

## Avid Telecom's Full Compliance with All Applicable Regulatory Requirements

During all times relevant to the Complaint, Avid Telecom have been fully compliant with all applicable regulatory requirements, including the following: [3]

➢ Avid Telecom only provides services to carriers that have all required authorizations from the FCC.

➢ Avid Telecom has implemented all regulatorily required robocalling mitigation requirements (some well in advance of the required implementation date), including a comprehensive and fully compliant Robocall Mitigation Plan.

➢ Avid Telecom is in full compliance with the FCC's "STIR/SHAKEN" mandate.[4]

➢ Avid Telecom has implemented "Know Your Customer" procedures that are fully compliant with all applicable FCC regulations.

---

[3] In addition to the specific procedures outlined below, for all new carrier customers, Avid Telecom requires: (i) that the carrier have a FCC 499 Filer ID; (i) that the carrier have a FCC Registration Number ("FRN"); (iii)Verified trade references from respected source; (iv) a STIR/SHAKEN compliance plan; (v) Verified bank references; (vi) confirmed federal tax ID; (vii) proof of federal FCC Universal Service Fund ("FUSF") compliance for the then-current year; and (viii) verification of a filed Robocall Mitigation Plan. A copy of the Avid Telecom's Robocall Mitigation Plan is attached as Exhibit II hereto.  Defendants request that the Court take judicial notice of the facts contained in Avid Telecom's Robocall Mitigation Plan as a governmental record.

[4] STIR/SHAKEN are acronyms for the Secure Telephone Identity Revisited (STIR) and Signature-based Handling of Asserted Information Using toKENs (SHAKEN) standards. For a common carrier provider to be in complete STIR/SHAKEN compliance, all calls traveling through the common carrier provider's interconnected phone networks must have their caller ID "signed" as legitimate by originating carriers and validated by other carriers before reaching consumers. STIR/SHAKEN digitally validates the handoff of phone calls passing through the complex web of networks, allowing the phone company of the consumer receiving the call to verify that the call is in fact from the number displayed on Caller ID.

## ARGUMENT

### A.    This Court Lacks Specific General Jurisdiction over Ms. Reeves

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move, "prior to trial, to dismiss the complaint for lack of personal jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Where such a motion is made, the plaintiff bears the burden to show that an exercise of jurisdiction is proper. *Ziegler v. Indian River City*, 64 F.3d 470, 473 (9th Cir. 1995). While the Plaintiffs need only make a *prima facie* showing of jurisdictional facts, this requirement "is not toothless." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019).[5] A plaintiff "cannot simply rest on the bare allegations of its complaint" to establish personal jurisdiction. *Id.* (citing *Schwarzenegger*, 374 F.3d at 800). Without more, the Court will not construe the Complaint's bare allegations, including that Defendants intended to cause harm, have caused harm, and misappropriated Plaintiff's intellectual property, as sufficient to demonstrate personal jurisdiction. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden.").

Where, as here, there is no personal jurisdiction under statute, a "district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d

---

[5] The prevailing view in the federal courts is that "it is the exceptional case where general jurisdiction be available anywhere other than a nonresident defendant's state of incorporation, state of residence, or corporate headquarters." *See, e.g., Paul D.S. Edwards v. Juan Martinez, Inc., et al.*, 506 F.Supp.3d 1061 USDC Nevada (2020).
.

1218, 1223 (9th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A)). Because Arizona's long-arm statute conforms with the requirements of federal due process, the analyses of personal jurisdiction under Arizona law and federal due process are the same. Ariz. R. Civ. P. 4.2(a), *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004), *A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569 (1995). For an exercise of personal jurisdiction to comport with federal due process, the non-resident defendant must have certain "minimum contacts" with the forum state such that an exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id*. at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be general (based on a forum connection unrelated to the underlying suit) or specific (based on an affiliation between the forum and the underlying controversy). *See, e.g.*, *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)).

Ms. Reeves is a resident of Oviedo, Florida.  All the services she provided for Avid Telecom—as well as all the actions alleged in the Complaint—were provided from her home office in Florida.  Ms. Reeves has not ever had a residence or owned any property in Arizona and, other than as several hour layover on a transiting flight, has not been in Arizona. Reeves Declaration (Exhibit III) at paras.  1-4, 6.

At all times relevant to the Complaint, I served as an independent contractor to Avid Telecom, LLC.  My compensation was paid exclusively as an independent contractor as reflected on the IRS Form 1099 that I received from Avid Telecom each year.[6]  My compensation was never tied

---

[6] A true and correct copy of each of these 1099s is attached as Exhibit III hereto.

to any sales metric; I did not receive extra compensation based on the sales in which I was involved. I did not receive any compensation that was specifically tied to any sales associated with the State of Arizona.  I did not receive any compensation that was tied directly to the company's performance. I was never an owner or member of the LLC.[7]   Reeves Declaration (Exhibit III) at paras. 7, 9, 10.

All actions that I undertook relating to the matters alleged in the complaint were undertaken on behalf of Avid Telecom in my independent contractor capacity.  I never communicated with any third party in my personal name, and I never undertook any action in my personal capacity.  All the matters in which I was involved related to services that were being originated from and terminated to locations selected by third party customers or carriers.  I never had any input to that selection.  I never specifically promoted the sale of any service in Arizona, and I was never knowingly involved in transactions that included any contact with the State of Arizona. Reeves Declaration (Exhibit III) at paras. 11-12.

I never had any decision-making authority over any matters associated with the LLC. All the actions that I took in connection with the matters and parties identified in the Complaint were undertaken under the direction and supervision of Mr. Lansky, who had exclusive decision-making authority. Reeves Declaration (Exhibit III) at para. 13.

Plaintiffs allege that "Reeves transacted business in this District through Avid in her individual capacity." Compl. ¶ 15.  Yet, this allegation flies in the face of the statement in Ms. Reeves' Declaration that she never did so.  Ms. Reeves' statement must be favored over Plaintiffs' allegation as the Complaint does not provide any facts evidencing that any of the alleged conduct was undertaken in Ms. Reeves' personal capacity. Indeed, each and every

---

[7] The "Vice President" title that appears on some of my emails and on a filing with the FCC was merely a marketing title.  It does not reflect an actual position that I held at Avid Telecom.

reference in the Complaint to conduct purportedly undertaken by Ms. Reeves—including Ms. Reeves' email address and signature block on emails referenced by Plaintiffs in the Complaint—as well as Avid Telecom's filings with the FCC's Robocall Mitigation Database—clearly indicate that the same was authored in Ms. Reeves' professional capacity at Avid Telecom.[8] *See, e.g.,* Compl. p. 14.

For these reasons, Defendant Reeves is clearly not subject to the *general* personal jurisdiction of this Court. Thus, the jurisdictional analysis turns to whether Plaintiffs have met their burden to demonstrate the existence of specific personal jurisdiction over Ms. Reeves and her co-Defendants.

The Ninth Circuit employs a three-prong test to assess whether a defendant has sufficient minimum contacts with the forum state to be subject to the *specific* jurisdiction of this Court:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

---

[8] Indeed, Plaintiffs make a point of Ms. Reeves' name on the filing in support of its inconsistent and false claim that Ms. Reeves had controlling authority at Avid Telecom. Of course, the fact that Ms. Reeves made the filing is not evidence of control or authority and Plaintiffs' offer no well pled fact that demonstrate otherwise.

*Picot*, 780 F.3d at 1211 (citing *Schwarzenegger*, 374 F.3d at 802) (internal citations omitted). The burden initially falls on the Plaintiffs to establish the first two prongs. If Plaintiffs can meet these burdens, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction does not comport with fair play, justice, or reasonableness. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

The Complaint fails to allege that Ms. Reeves *purposefully* directed any activity to the state of Arizona. Indeed, even viewing every allegation of fact as true, the Complaint sets forth no factual basis on which the Court could conclude that Ms. Reeves ever knew or intended to be associated with telecommunications traffic that was terminated in Arizona. The absence of an allegation of purposeful direction must fail in the face of a direct statement by Ms. Reeves that she "never specifically promoted the sale of any service in Arizona, and I was never knowingly involved in transactions that included any contact with the State of Arizona." Reeves Declaration (Exhibit III) at para. 12. Moreover, Plaintiffs do not plead that Avid Telecom ever actually terminated even a single call in Arizona.[9] As such, it is literally impossible for this Court to conclude that Ms. Reeves, *purposefully directed* any action to the State of Arizona.

---

[9] As an intermediate carrier (*i.e.*, a carrier that receives its traffic from another carrier and hands that traffic onto another carrier that may terminate the call or hand it to another carrier who does), Avid Telecom is *never* involved in deciding where a call is originated or terminated and has never originated or terminated a call in the State of Arizona. Plaintiff's misleading reference to Avid Telecom's FCC 499 form—which refers to seeking authority to operate in all fifty states—is nothing more than a standard response that creates the legal authority for a company to originate or to terminate calls in those states. It is not evidence that Avid Telecom actually did so, which it did not. Plaintiff makes no direct allegation that Avid Telecom actually operated in Arizona—or that Ms. Reeves arranged for Avid Telecom to do so—because it never happened.

Further, there is no allegation, let alone proof, that Ms. Reeves ever attempted to "consummate" a transaction with the State of Arizona or any resident thereof, nor is there any evidence that she sought to conduct any activity in the State. For these same reasons, the complaint fails completely to demonstrate that Ms. Reeves purposefully availed herself of the privilege of conducting activities in Arizona.

Under the second prong of the test, Plaintiffs also bear the burden of establishing that the specific claims against Ms. Reeves' conduct arise out of or relate to the defendant's forum-related activities. They have not and cannot meet this burden either. The Supreme Court has held that "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." In *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Two principles drive this inquiry. First, the relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id*. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original)). Second, a court must examine "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. As a result, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 286.

The Complaint fails to allege that Ms. Reeves has a relationship with Arizona that she herself created. Indeed, the Complaint makes no reference whatsoever to ***any*** contact between Ms. Reeves and Arizona. The Complaint alleges only that Ms. Reeves assisted and/or aided and abetted *others*, such as non-party carriers or customers who may have a contact with Arizona. The Complaint fails to allege that the asserted claims arise from Ms. Reeves' contacts with Arizona. Instead, it asserts that Ms. Reeves' allegedly unlawful conduct was directed at

10

"persons who reside there."  However, Plaintiffs offer no evidence in support of this allegation.

Again, Plaintiffs' factually unsupported allegation must fail in the face of the direct statement

by Ms. Reeves that, she "never specifically promoted the sale of any service in Arizona. . ."

"was never knowingly involved in transactions that included any contact with the State of

Arizona"  and "[t]o the best of my recollection, I never spoke with anyone—resident, called

party or otherwise—who resides in Arizona."  Reeves Declaration (Exhibit III) at para. 12.

In sum, Plaintiffs have completely failed to present allegations of fact sufficient to

support the allegation Ms. Reeves' that Ms. Reeves had the required contacts with Arizona.

They have certainly failed to present facts sufficient to refute the direct statements by Ms.

Reeves to the contrary.  As a result, the Complaint fails to allege facts sufficient to pass

constitutional or Rule 12 muster with respect to this Court's specific personal jurisdiction over

Ms. Reeves. As such, the Complaint must be dismissed as to Ms. Reeves.

**B.**      **Ms. Reeves is Not Liable for the Acts of Avid Telecom**

Plaintiffs attempt to render Ms. Reeves liable for the acts of Avid Telecom are also

lacking in merit. Ms. Reeves was an independent contractor who lacked authority over or

ownership in Avid Telecom. Reeves Declaration (Exhibit III) at para. 7.  Taking the allegations

in the Complaint as true for the purposes of the instant motion, Ninth Circuit law does not

allow for the application of vicarious liability of one party against another under the TCPA,

where the alleged conduct arises out of an independent contractor relationship. *See, e.g., Jones*

*v. Royal Admin. Servs., Inc.* 887 F.3d 443 (9th Cir. 2017); *see also, Worsham v. Direct Energy*

*Services, LLC*, No. SAG-20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021). In this context,

the allegations regarding Ms. Reeves' alleged knowledge about the carriers with which Avid

Telecom did business, even if true, are insufficient to attach liability considering her limited independent contractor role at Avid Telecom.

### C. The Complaint Fails to Sufficiently Allege this Court's Specific Personal Jurisdiction over Avid Telecom

As set forth above, the Ninth Circuit applies a three-part test to determine whether an out-of-state defendant has sufficient contacts to be subject to specific personal jurisdiction of the federal court:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum- related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004) (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (citation omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–78 (1985)).

Purposeful direction "requires that the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 803 (quoting *Dole Food Co. v. Watts,* 303 F.3d 1104,

1111 (9th Cir. 2002)). Actions may be directed at the forum state even if they occurred elsewhere. *Id.* However, "random, fortuitous, or attenuated contacts" are insufficient to create the requisite connection with the forum. *Burger King,* 471 U.S. at 475 (internal quotation marks omitted). An intentional act is one "denot[ing] an external manifestation of the actor's will . . . not includ[ing] any of its results, even the most direct, immediate, and intended." *Wash. Shoe Co. v. A–Z Sporting Goods Inc.,* 704 F.3d 668, 673–74 (9th Cir. 2012) (quoting *Schwarzenegger,* 374 F.3d at 806).

In this case, the Complaint fails to allege sufficient facts to establish that Avid purposefully directed activities at Arizona or consummated a transaction with an Arizona resident. Avid routes calls that pass through multiple states.  As Plaintiffs acknowledge, the calls at issue are transmitted by others to Avid Telecom.  The transmitting party, or its predecessor, determines the terminating location of the call.  Plaintiffs fail to present and facts on which the Court could conclude that Avid Telecom has the ability control—on a real time basis—the final destination of any call to Arizona.  This reality—which Plaintiffs acknowledge in substance—precludes any finding by the Court that Avid Telecom purposefully directed even a single call to a called party in Arizona—let alone the statutorily-required fact that the called party had not agreed to accept the call.  For these reasons, Plaintiffs cannot and have not alleged, let alone presented evidence that it was Avid Telecom's "will" to "expressly aim" its provision of telecom services at the state in which the calls terminate. Therefore, this Court cannot exercise specific jurisdiction over Avid Telecom.

**D.**   **The Complaint Presents No Basis in Fact or Law for Piercing the Corporate Veil and Asserting Claims Directly against Mr. Lansky**

The Complaint alleges that Mr. Lansky "used the Michael D. Lansky, LLC corporate credit card, bank account, and/or PayPal account a company credit card to pay for personal expenses" consisting of (i) Ancestry.com DNA LLC; (ii) Bandcamp for the full digital discography (9 releases) by Clann An Drumma; (iii) SMHS reunion fee for Michael Lansky and guest; (iv) bicycle replacement; and (v) bachelor party lodging. Mr. Lansky's use of the Michael D. Lansky, LLC corporate credit card, bank account and/or PayPal account to pay personal expenses is not relevant to a veil-piercing analysis.  However, the Complaint does not address the relevant issue; that is, whether the company or Mr. Lansky took ultimate responsibility for the payment of the referenced charges. Merely alleging that the credit card was utilized is not enough.  This is particularly true where the Plaintiff has alleged that Avid Telecom earned millions and millions of dollars in telecommunications charges, yet Plaintiffs fail provide any evidence regarding the dollar value of the credit card charges.[10]

The reason for Plaintiffs' failure to provide the amount of any of the charges—which they undoubtedly had access to—is because those amounts would evidence the small amounts at issue and thus the absurdity of their efforts to pierce on this basis.  For example, the Court can determine from a quick web search that Ancestry.com DNA for less than $100.  *See* https://www.ancestry.com/c/dna/bundle?o_xid=79107&o_lid=79107&o_sch=Paid+Search+Brand&ancid=wwb6eax3kz&s_kwcid=ancestry.com%2Fdna&gad=1&gclid=CjwKCAjw4P6oBhBsEiwAKYVkq4NjUWX0qhrllA67_ttVMXxYuZDoxB7vfvb2xs4BVZuPBQ106gPBfRoCAcYQAvD_BwE&gclsrc=aw.ds.    Similarly, the Bandcamp for the full digital

---

[10] The reason that Plaintiff chose not to

discography (9 releases) by Clann An Drumma is available for about $60. https://clannandrumma.bandcamp.com/album/the-gathering. It is apparent that any reasonable person would understand that the remaining items are also available as a similar *de minimis* cost.  As such, Plaintiffs claims plainly fail the materiality test required of any piercing action.

Moreover, as the Court is likely aware in its experience, it is not uncommon for the principal of single member LLC to utilize the company credit card for multiple purposes and to reimburse the company for those that are personal.  The question is not whether the credit card was used, but whether proper reimbursement was made.[11]

Plaintiffs fail completely to establish, as a matter of fact, that any "co-mingling" actually occurred as they do not address the issue of reimbursement.  Even had they done so, and could show that reimbursement did not occur, their failure to demonstrate materiality renders their claim totally unsustainable.

### E.  Plaintiffs Have Failed to Sufficiently Plead Defendants' Liability

Each Count of the Complaint is predicated on the false legal premise that Avid Telecom is directly liable, and the individual Defendants are somehow vicariously liable, under the Telecom Sales Rule, the TCPA and, derivatively, under state laws, for calls originated by others, from clients selected by others, based on telephone numbers selected by others, containing content created by others. Even assuming all the facts as pled in the Complaint to be true, Plaintiffs cannot plead or establish that Defendants that liability adheres to Avid

---

[11] Avid Telecom's accounting records evidence that each of these charges was fully reimbursed by Mr. Lansky contemporaneously with the receipt of each credit card invoice.

Telecom as a common carrier and, even if it could, that Avid telecom actually participated or intended to participate in any illegal activity. On these bases, the Complaint must be dismissed.

**COUNT** I
**Violations of the Telemarketing Sales Rule**
**16 C.F.R. §§ 310.3-310.4**

**1.   Avid Telecom is Immune from Liability Under the Telemarketing Sales Rule**

Count I of the Complaint relies entirely on 16 C.F.R. § 310.3-310-14 ("TSR") as a basis for its claim. Compl. ¶¶ 426-431.  For the reasons set forth below, this claim fails as a matter of law. Long-standing case precedent clearly exempts common carriers[12] are exempted from claims arising under the Telemarketing Sales Rule ("TSR") when the complained-of conduct arises out of their common-carrier activities. *See FTC v. AT&T Mobility*, *LLC*, 883 F.3d 848, 850 (9th Cir. 2018) (*citing* 15 U.S.C. § 45(a)(1)). Section 5 of the Federal Trade Commission Act ("FTC Act"), which gives the agency enforcement authority over "unfair or deceptive acts or practices," exempts "common carriers subject to the Acts to regulate commerce." 15 U.S.C. §§ 45(a)(1), (2).

Section 5 of the FTC Act also specifically exempts common carriers from claims under the TSR. *Id.* Section 5 "provides immunity [to a common carrier] from FTC regulation … to the extent that a common carrier is engaging in common-carrier services." *Id.* The "Section 5 exemption" extends to the TSR, meaning that common carriers are not subject to TSR claims premised on their actions that occurred while they were engaged in common carrier activities.

---

[12] The term "common carrier" or "carrier" means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy. . . .  47 U.S.C. § 153(11).

*See* Telemarketing Sales Rule, 60 Fed. Reg. 43842, 43843 (Aug. 23, 1995) (stating that the TSR does not cover activity beyond the jurisdiction of the FTC Act); *see also The Broadcast Team, Inc. v. FTC*, 429 F.Supp.2d 1292, 1298-99 (M.D. Fla. 2006). Under this controlling test, an entity's common carrier status turns on "(1) whether the carrier 'holds himself out to serve indifferently all potential users'; and (2) whether the carrier allows 'customers to transmit intelligence of their own design and choosing.'" *U.S. Telecom Ass'n v. FCC*, 295 F.3d 1326, 1329 (D.C. Cir. 2002); *Payton v. Kale Realty, LLC,* 164 F. Supp. 3d 1050, 1056 (N.D. Ill. 2016).

Under *AT&T Mobility,* the common-carrier issue is tested against the specific conduct at issue in the Complaint. Here the specific conduct at issue is Avid Telecom's provision of FCC-regulated wholesale services. 883 F.3d at 860 (citing *McDonnell Douglas Corp v. Gen. Tel. Co. of Cal.,* 594 F.2d 720, 724-25 n.3 (9th Cir. 1979)) ("We have recognized that a company may be a[] … common carrier 'in some instances but not in others, depending on the nature of the activity which is subject to scrutiny.'"). "[W]hether an entity in a given case is to be considered a common carrier or [not] turns on the particular practice under surveillance." *Id.* (citing *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1005 (9th Cir. 2010)). Therefore, because Avid Telecom's actions arose from its common carrier activities, Avid Telecom served as a common carrier here and is thus exempt from the TSR claims brought in Count I of the Complaint.

Avid Telecom is engaged in only one line of business: the provision of telecommunications services to wholesale customers (other common carriers) and to end-user customers. Like all common carriers, Avid Telecom's telecommunications services are

"available to all potential users," and allow customers to transmit intelligence of their own design and choosing. Avid Telecom does not participate in the content of any of the voice services that it provides. As such, Avid Telecom plainly meets the definition of a common carrier. The Complaint does not present any facts or allegations to the contrary.

While the *AT&T Mobile* decision recognizes the FTC's jurisdiction over telecommunications carriers, this jurisdiction is limited to *"activities that fall outside of common-carrier services[]."* 883 F.3d at 851. Those "outside" services include activities unrelated the transmission of voice services such as "website operation, video distribution, news and entertainment production, interactive entertainment services and devices, home security. . . ." *Id.* As Defendants' only business is the transmission of voice services, and the alleged illegal activity arose directly out of the provision of these regulated services, its activities fall squarely within the common carrier exception and outside of the jurisdiction of the FTC.[13]

---

[13] As explained above, the *AT&T Mobile* decision carefully drew the dividing line between common carriage, which is subject to the exclusive jurisdiction of the FCC, and matters—like advertising of telecommunications services—which can be subject to FTC jurisdiction.  Here, the services at issue are not only plainly common carrier, but they fall within an area of common carriage that the FCC actively regulates through a panoply of regulations applicable to intermediate providers like Avid Telecom. *See, e.g.*, 47 C.F.R. § 64.6300(f) (defining "intermediate provider" as "any entity that carriers [*sic*] or processes traffic that traverses or will traverse the PSTN [Public Switched Telephone Network] at any point insofar as that entity neither originates nor terminates that traffic."); 47 C.F.R. § 64.2119(a) ("Duty to complete calls. Intermediate providers must take steps reasonably calculated to ensure that all covered voice communications that t r a v e r s e  t h e i r  n e t w o r k s  a r e  d e l i v e r e d  to t h e i r  d e s t i n a t i o n ."); 4 7 C.F.R. § 6 4 . 6 3 0 2 (establishing Caller ID authentication standards for intermediate service providers, including passing the industry-standard STIR/SHAKEN authentication data on in calls for which such data is received, and cooperating with the FCC-authorized Traceback consortium (ITG) when investigating suspicious traffic patterns).  The comprehensive regulatory scheme associated with the Avid Telecom traffic at issue further

**2.   Defendants Are Not Sellers or Telemarketers Subject to the TSR**

In addition, Defendants' exemption from TSR claims pursuant to the common carrier exemption, it is also clear, as a matter of law, that Defendants do not qualify as "sellers" or "telemarketers" under the TSR. 16 CFR 310.2(dd) defines a "seller" as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration." The complaint contains no facts that could support the conclusion that Avid Telecom is a "seller." Similarly, 16 CFR 310.2(gg) defines a "telemarketer" as any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor."

Plaintiffs offer no facts that could support the conclusion that Avid Telecom is a "seller" under the TSR; the Complaint does not allege that Defendants have any involvement in creating a plan, program or a campaign conducted to induce the purchase of any goods or services. Plaintiffs also offer no facts that could support the conclusion that Avid Telecom is a "telemarketer" under the TSR. To the contrary, Plaintiffs expressly plead that Avid Telecom either acts an intermediary carrier, receiving traffic from at least one prior carrier, or it receives traffic from an originating call center. *See* Compl. fn.16. Absent any pleading on the face of the Complaint that the Defendants acted as a "seller" or a "telemarketer," the bare allegation that Avid Telecom was involved in telemarketing is insufficient to support a claim under the TSR.

---

supports the assertion of the common carrier exemption, especially when compared to the largely unregulated services at issue in the *AT&T Mobile* case.

**3.** **Plaintiffs Do Not Plead that Defendants Provided "Substantial Assistance or Support" or "Consciously Avoided Knowing" about any Act or Practice that Violates the TSR**

The Complaint theorizes that Defendants "provid[ed] substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates the TSR." To prove this element of their claim, Defendants must allege facts sufficient to evidence Avid Telecom's "substantial assistance" to a telemarketer and "knowledge or conscious avoidance of knowing" that the telemarketer was violating the TSR.

Plaintiffs' claim of "substantial assistance" is supported by mere conclusory allegations that Defendants provided the following services: (i) retail or wholesale voice termination; (ii) dialing software; (iii) assistance with DID rotation; (iv) DID assignment; (v) provision of leads for customers to call; and (vi) provision of "advice". Compl. ¶ 431. Plaintiffs do not identify a single customer who allegedly received any of these services; offer any details regarding the functionality of the supposed dialing software or the location or functionality of the supposed predictive dialer; or produce a copy of a "leads" list.[14]  Plaintiff's mere conclusory allegations are too bare and to meet the plausibility standard established in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 573 (2017).  Moreover, there is nothing *per se* illegal about any of the alleged activities—and Plaintiffs fail to plead otherwise. The absence of any allegation or direct evidence that the provision of services by Avid

---

[14] The allegation regarding "advice" is vague and generic, rendering a response impossible.

Telecom constituted "substantial assistance" to a telemarketer requires the dismissal of Count I of the Complaint under the pleading standard established in *Iqbal* and *Twombly*.

Further, as Plaintiffs' claims all arise under statute, specific facts addressing *how* and *when* Avid Telecom allegedly provided "substantial assistance" must be pled. Plaintiffs cannot rest on the bare, speculative allegation that Avid Telecom violated the statute by doing more than simply acting as a carrier. *See Trytko v. US Bank Home Mortg.*, Cause No. 3:17- CV-175-JD-MGG, 2018 U.S. Dist. LEXIS 145397, at *23 (N.D. Ind. Aug. 10, 2018) (quoting *Iqbal*, 566 U.S. at 678). Plaintiffs clearly fail to meet that standard with respect to any of the acts constituting the alleged "substantial assistance."

Finally, Plaintiffs do not any present facts that could support the conclusion that Plaintiff was aware, *before it received and transmitted a call*, that the telemarketer originating the call was engaged in any act or practice in violation of TSR. The mere fact that Avid Telecom communicated with carriers who allegedly transmitted illegal traffic with or through other carriers in unrelated circumstances, or that Avid Telecom ultimately transmitted traffic for these carriers, does not prove that the specific traffic that Avid telecom transmitted was illegal. The attempt at "guilt by association" is plainly insufficient to meet Plaintiffs' pleading burden. Plaintiffs' obligation is to present material facts in support of their allegation in Count I that *calls actually transmitted by Avid Telecom were illegal*.

As a provider of VoIP communications services, Defendants' only interaction with a telemarketer in the transmission of a specific call is the receipt of "1s" and "0s" in the data stream from the telemarketer. Defendants have no advance visibility of the content or the purpose of any call, the calling party, or the called party. Defendants do not know whether the

call meets one of the exceptions to the telemarketing rules, or where the actual telemarketer has a valid opt in.  As such, the suggestion that Defendants "knew or consciously avoided knowing" that the telemarketers sending traffic to Avid Telecom were violating the TSR is unsupported by any facts pled in the Complaint. Therefore, Count I of the Complaint must be dismissed.

Viewed in the broader context, Plaintiffs' complete failure to associate its guilt by association allegations to traffic actually transited by Avid Telecom should be no surprise. The reason is simple.  That evidence does not exist.  Moreover, while regulators have found that other carriers—including some identified in the Complaint—have transited illegal traffic, notably, no regulatory agency with jurisdiction over Avid Telecom, nor any court, has found that Avid Telecom was associated with such illegal traffic, aided and abetted in the transmission of such traffic or, itself, knowingly transmitted such traffic.[15]

**COUNT II: Violation of the TCPA – 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(n)(3)**
**(Failure to Exercise Due Diligence/KYC)**

---

[15] For these reasons, Plaintiffs have completely failed to plead facts establishing that Defendants directly or indirectly engaged in any of the conduct listed in paragraph 431 of the Complaint, requiring Defendants' knowledge of any of the representations made in any of the calls that it transmitted, or that any of these representations were false or misleading. Therefore, Defendants cannot be held responsible for the misrepresentations alleged in paragraph 431.a.-c. As explained furth in connection with Count V, Avid Telecom is not involved in the callerID associated with any call, and thus it does not have the opportunity or technological ability to engage illegal spoofing, as alleged in paragraph 431.d of the Complaint. Finally, as Plaintiffs acknowledge, Avid Telecom is never the initiator of a call and thus it could not have engaged in the conduct alleged in paragraph 431.e. or f of the Complaint.

Plaintiffs' claims under Count II are entirely circular and without any basis in fact. Properly viewed, Plaintiffs argument boils down to nothing more than a simplistic, *post facto* result-oriented assertion that the alleged transmission of an illegal robocall is evidence that a carrier did not know its customer.  First, as demonstrated in the previous Section, Plaintiffs have completely failed to plead and prove that Avid Telecom actually transited a single illegal robocall.  That failing, standing alone, standing alone, renders Count II unsustainable. Moreover, Plaintiffs' claim strains credulity, as customers lie all the time and have a myriad of ways of hiding their true intentions. The mere fact that a customer committed a bad act is not proof of a failure of the Know Your Customer ("KYC") process.

Notwithstanding these fatal flaws in Plaintiffs' argument, if the Court is inclined to consider Count II, Plaintiff's argument therein fails completely under the actual language of the KYC rule.  As an initial matter, the KYC rules do not mandate a specific outcome, nor do they suggest that any specific outcome violates the rule. In the Complaint, Plaintiffs do not even attempt to demonstrate that Avid Telecom has failed to undertake KYC measures with any of its customers. Plaintiffs' leadership team is aware from previous engagements with Avid Telecom that the company undertakes comprehensive KYC measures. The evidence of these efforts is clear; Avid Telecom's KYC measures are among the most comprehensive in the industry. Avid Telecom has always had a fully compliant Robocall Mitigation Plan on file with the FCC relevant to this case.[16] That Plan has the following five sections: General

---

[16] A copy of that Plan is attached in Exhibit I hereto.  Defendants ask the Court to take judicial notice of the Plan as a document that was filed with and accepted by a governmental agency.

Background; Monitoring and Basic Telephone Number Authorization & Blocking; Subscriber Vetting (Know Your Customer); Compliance with Traceback Investigations; Stir-Shaken Capabilities. The Plan requires, among other things, that new customers verify compliance with tracebacks, provide a description of their vetting process for their new customers (and actions taken when fraudulent customers are found. In addition, customers are required to provide a wide array of documents and information, including: (i) a copy or their FCC 499 Filer ID (which evidences that they are authorized by the FCC to provide carrier services); (ii) their FCC Registration Number; (iii) extensive trade references; a copy of their STIR/SHAKEN Compliance Plan; (iv) their federal tax ID; (v) a description of the nature of business; (vi) a signed Federal Universal Service Form for the current year; and (vii) Verification that customer has filed a robocall mitigation plan. Plaintiffs present no evidence whatsoever that Avid Telecom has failed to adhere to the requirements of the Plan in any instance.[17]

Even a cursory review of the Plan evidences the absurdity of Plaintiff's allegation in Count II of the Complaint that Defendants violated the TCPA. Every carrier with whom Avid Telecom does business must have an FCC 499 Filer ID and registration number. This means that the carrier has registered with the FCC, that registration has been accepted and the carrier

---

[17] Plaintiffs' self-serving and unsubstantiated claim that Avid Telecom does not exercise caution in granting access to high-volume origination services, to ensure that bad actors do not abuse such services is belied by the fact that Avid telecom never operates as a Point of Entry carrier (i.e., a carrier that accepts traffic directly from overseas carriers) and by the fact that Avid telecom rejects more than 90% of the requests from prospective customers where they do not meet the guidelines set forth in its Robocall Mitigation Plan.

is authorized to operate in the United States. As the agency authorized to regulate carriers, the FCC's approval of a carrier to operate carries substantial weight.

With respect to the Plaintiffs' allegation regarding the blocking of calls, it is nothing more than compete self-serving speculation. Plaintiffs have no way of knowing how many calls Avid Telecom blocked, and they Complaint is completely devoid of any factual support for the allegation. The Complaint also conceals the fact that common carriers' right to block calls was only allowed, for specific categories of calls, in 2020. Thus, any allegation regarding a failure to block would be completely disingenuous as to previous traffic.[18]

Originally, none of the Industry Traceback Group, the FCC or the carriers had the tools to identify robocalls, nor were the carriers subject to most of the regulatory requirements that exist today and which the Plaintiffs seek to apply on a retroactive basis. Carriers like Avid Telecom did not have the clear right to block calls until the FCC allowed it in 2020. Yet the Complaint makes assertions about Avid Telecom's failure to block prior to 2020. Gateway providers could not apply STIR/SHAKEN caller ID authentication to, and perform robocall mitigation on, foreign-originated calls with U.S. numbers until the 2021 implementation of STIR/SHAKEN requirements in the IP portions of their voice networks. For all these reasons,

---

[18] Plaintiffs' unsupported allegation that "Defendants did not choose to regularly, if at all, block calls from telephone numbers that the FCC has authorized could (sic) be blocked. . ." is disturbingly, blatantly, and provably false. Compl. ¶ 436. Since that right became clear, Avid Telecom has blocked billions of calls that it deemed suspicious—including calls in every category identified by Plaintiffs in paragraph 434 of the Complaint—resulting in more than 2.3 billion blocked calls in 2022 alone. Ironically, the forced removal of Avid Telecom from the marketplace has dramatically increased the number of suspicious calls, as carriers have moved their traffic to less responsible carriers who do not block calls and whom the AGs have elected not to sue.

Plaintiffs have failed to set forth a claim for violation of the TCPA in Count II of the Complaint, and the Complaint should be dismissed on this basis.

### COUNT III: Violations of the TCPA – 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B) (Robocalls to Cellular and Residential Telephone Lines)

In support of this Count, Plaintiffs allege that:

Defendants violated the TCPA by "engag[ing] in a pattern or practice of initiating telephone calls to residential and cellular telephone lines using artificial or prerecorded voice to deliver messages without the prior express consent of the called parties.  Compl. ¶ 442.

Defendants violated the TCPA by engage in a pattern or practice of initiating or causing telephone calls to be initiated that include or introduce advertisements or constitute telemarketing to cellular telephone lines using artificial or prerecorded voice to deliver messages without the express written consent of the called parties.  Compl. ¶ 443.

Defendants violated 47 C.F.R. § 64.1200(a)(3) by engaging in a pattern or practice of initiating telephone calls to residential telephone lines using artificial or prerecorded voices to deliver messages without the prior express written consent of the called parties. Compl. ¶ 444.

Defendants transmitted calls delivering prerecorded or artificially voiced messages to cellular and residential telephone lines to consumers in each of the Plaintiffs' respective jurisdictions. Compl. ¶ 445.

Defendants initiated calls that terminated within the Plaintiffs jurisdictions because calls would not have connected but for Defendants decision to allow then to transit their network despite having actual knowledge that many of the calls were scam robocalls delivering prerecorded or artificially voiced messages. Compl. ¶ 446.

It is undisputed that Avid Telecom does not initiate telephone calls or cause any telephone calls to be initiated. Thus, the allegations in paragraphs 442 through 444 are demonstrably false. For the reasons stated above, Plaintiffs have not pled facts regarding the type of "line," landline or cellular service to which any of the referenced calls were terminated.  As mobile

phones are frequently located in a state other than the state associated with the recipient's area code and NNX, as a matter of jurisdiction, there is no way to know from the facts presented in the Complaint whether a mobile phone was located in a particular jurisdiction when a call was received. The absence of such data means that this Court has no factual basis on which to know where any call terminated to a mobile phone was located. Plaintiffs also fail to identify which of the allegedly illegal calls were terminated to mobile phones, and thus have completely failed to establish the required factual basis for the pendant jurisdiction.

Finally, with respect to paragraph 446, the allegation regarding call initiation is stymied by the undisputed fact that Avid Telecom does not initiate telephone calls or cause any telephone calls to be initiated. The associated allegation that the calls would not have connected but for Defendants' decision to allow the calls to transit their network is unsubstantiated by any well pled fact, and demonstrably untrue.  As the Complaint recognizes, calls that Avid Telecom transits are delivered to Avid Telecom as one carrier in a multi-carrier least-cost routing arrangement. Thus, if Avid Telecom somehow learned in real time that the call could be an unlawful robocall and blocked it, the call would simply be rerouted to another carrier and would be connected by that carrier or by one of its downstream carriers. As Plaintiffs have failed to carry their burden with respect to Count III of the Complaint, it should be dismissed.

**COUNT IV: Violations of the TCPA – 47 U.S.C. §§ 227(c) and 47 C.F.R. § 64.1200(c)(2)**
**(Calls to Telephone Numbers on the National DNC Registry)**

In Count IV of the Complaint, Plaintiffs allege that Defendants violated 47 C.F.R. § 64.1200(c)(2) by engaging in a pattern or practice of initiating telephone solicitations to

residential telephone subscribers in the Plaintiffs' respective jurisdictions who have registered their telephone numbers on the National Do Not Call ("DNC") Registry. As stated previously, Avid Telecom does not ever initiate a telephone call or cause any telephone call to be initiated. Avid Telecom does not have any role in selecting the party who initiates a telephone call or cause any telephone call to be initiated. Avid Telecom does not determine whether a call is prerecorded or live, or any aspect of the content of the call, including whether it contains a solicitation. Finally, Avid Telecom does not determine the telephone number to be called. Accordingly, there is no factual basis for the Plaintiffs' allegation in Count IV of the Complaint that Avid Telecom has engaged in a pattern or practice of initiating telephone calls to residential telephone subscribers in the Plaintiffs' respective jurisdictions who have registered their telephone numbers on the National DNC Registry.[19] Therefore the Complaint should be dismissed with respect to this Count.

### COUNT V: Violations of the Truth in Caller ID Act – 47 U.S.C. § 227(e) (Prohibition Against Spoofing)

Plaintiffs make two claims in Count V of the Complaint. First, Plaintiffs claim that Defendants violated 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604(a) by "knowingly causing the caller identification services of the recipients of their call traffic with spoofed phone numbers to transmit misleading or inaccurate caller identification information. Compl. ¶ 457.

---

[19] As explained *supra*, any (if not all) of the calls underlying the Plaintiffs' claim of a violation of the DNC Registry were terminated to "honeypots" set up by third parties who are looking to receive robocalls. Most of these numbers were obtained and unlawfully registered with the DNC Registry by a business and thus do not qualify for the protections associated with the DNC Registry. As a result, calls made to those numbers—even if otherwise unlawful—are do not violate the prohibitions associated with calls properly placed into the DNC Registry.

Plaintiffs also allege that Defendants knew or should have known that they accepted and profited from illegal robocalls with misleading or inaccurate spoofed phone numbers.

Spoofing involves the use of a number to initiate and document a call that is not owned by the calling party. As an initial matter, Plaintiffs do not allege that Avid Telecom has the technological ability to alter the callerID on a call that it transmits. It does not. Only the originating call center can associate the call with an originating number. Downstream carriers lack the technological ability to do so, even if they were so inclined. All numbers used by customer sending traffic to Avid Telecom are owned by that customer, and each number used by the customer to initiate an outbound call number is selected by that customer. The originating telephone number selected by the customer passes intact to each carrier in the string. Avid Telecom has neither the opportunity nor ability to alter or spoof the originating number.[20] Therefore, Plaintiffs have not stated a claim for violation for the Truth in Caller ID act, and Count V of the Complaint must be dismissed.

## COUNT VI-XXIII: Various State Statutes

### 1. <u>Plaintiffs Fail to State a Jurisdictional Basis for their Claims</u>

The evidence offered in support of the claims in Counts VI through XXIII of the Complaint arising under various state statutes—which is the same evidence offered in support of the claims arising under federal law—does not identify which of the calls at issue were delivered to a landline phone number and which calls were delivered to a mobile phone number. There is no way to know from the facts presented.  It is certainly possible that all the

---

[20] Where Avid Telecom is the first carrier in line, it "attestates" that call exactly as required in the Stir/Shake protocol.

calls could have been made to mobile phones. As mobile phones travel, when a call is received the phone can be located outside the state associated with the area code assigned to the phone. But for the purpose of the Complaint, Plaintiffs merely assume that each and every one of the calls was received in the state associated with the area code assigned to the phone, and base jurisdiction on that hollow assumption. As a matter of jurisdiction, there is no way for the Court to know from the facts presented in the Complaint—and which are asserted to support each of the individual state claims—whether any of the calls at issue were actually received in the relevant state. The absence of required data means that this Court has no factual basis on which to know where any call terminated to a mobile phone was located and thus no basis on which to accept jurisdiction. As such, Plaintiffs have failed to plead facts sufficient to meet their burden of proof of jurisdiction for Counts VI through XXIII of the Complaint. Accordingly, Plaintiffs state law claims should be dismissed.

## 2. <u>Plaintiffs' State Law Claims Predicated on the TCPA and other Federal Regulations</u> <u>Fail for the Reasons Discussed Above.</u>

In Counts VI through XXIII of the Complaint, Plaintiffs assert a hodgepodge of state law claims explicitly premised upon a finding that Defendants violated the TCPA or other federal regulations. For example:

- Count VI (California): "California . . . is authorized by 47 U.S.C. § 227(f)(1) to file actions in federal district court to enjoin violations and enforce compliance with the Telephone Consumer Protection Act ("TCPA")." (Compl. ¶ 461);

- Count VII (Florida):  FDUTPA defines a "violation of this part" to include violations of the Act based on "[a]ny rules promulgated pursuant to the Federal Trade Commission Act" or "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." § 501.203(3), Florida Statutes." (Compl. ¶ 465);

- Count IX (Maryland): "Pursuant to § 14-3201(1) of the MTCPA, no person may violate the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 through 6108, as implemented by the Federal Trade Commission in the Telemarketing Sales Rule (16 C.F.R. Part 310)." (Compl. ¶ 494);

- Count XII (Nevada): "Defendants' conduct in transmitting fraudulent robocalls to consumers in Nevada is in violation of provisions of federal law, including without limitation, the Telemarketing Sales Rule, 16 C.F.R. Part 310 via 15 U.S.C. § 6103(a) and provisions of federal law identified herein." (Compl. ¶ 525);

- Count XV (North Carolina): With respect to compliance with the requirements of the FTC's Telemarketing Sales Rule, N.C. Gen. Stat. § 75-102(e) provides that no telephone solicitor shall violate any requirement of section 310.3 of the Telemarketing Sales Rule (Deceptive telemarketing acts or practices), section 310.4 of the Telemarketing Sales Rule (Abusive telemarketing acts or practices), and section 310.5 of the Telemarketing Sales Rule (Record keeping requirements), 16 C.F.R. §§ 310.3 through 310.5. (Compl. ¶ 555);

- Count XX (Washington): "Defendants' acts or practices that are unfair or deceptive under the TSR and FTC Act are also unfair or deceptive practices prohibited by RCW 19.86.020 and are violations of Washington CPA. (Compl. ¶ 612);

Because Plaintiffs fail to assert viable claims under federal law and regulation, their tag-along state claims must also be dismissed for the reasons set forth above.

### 3. **Plaintiffs' Auto-Dialer Claims Should Be Dismissed Because Defendants Do Not Own or Control Any Auto-Dialing Equipment**

The Attorneys General assert various defective claims against Defendants pursuant to state-law "Auto-dialer Acts." *See, e.g.*, Count XIII (Indiana – Ind. Code 24-5-14); Count XI (Nevada - NRS 597.814); Count XIV (New York – GBL 399-p. (4)). The Indiana Auto-dialer Act regulates callers who use auto-dialing machines and defines "an auto-dialing machine" as:

a device that: (1) selects and dials telephone numbers; and (2) working alone or in conjunction with other equipment, disseminates a prerecorded or synthesized voice message to the telephone number called.

Ind. Code § 24-5-14-1. Similarly, Nevada defines a "device for automatic dialing and announcing" as "any equipment" that:

> (1) Incorporates a storage capability of telephone numbers to be called and utilizes a random or sequential number generator producing telephone numbers to be called; and (2) Is used exclusively, working alone or in conjunction with other equipment, to disseminate a prerecorded message to the telephone number called to solicit a person at the telephone number called to purchase goods or services.

> NRS 597.812. And New York defines "automatic dialing-announcing device" as: "any automatic equipment which incorporates a storage capability of telephone numbers to be called and is used, working alone or in conjunction with other equipment, to disseminate a prerecorded message to the telephone number called without the use of an operator."

GPL § 399-p.

Plaintiffs do not set forth any facts or evidence to establish that Defendants actually own or have ever used automated dialing equipment of any kind. In fact, they do not. Plaintiffs specifically allege that Defendants used "broadband internet technology to route its customers' calls into, and throughout, the U.S. Telephone network." Compl. ¶ 18. Finally, Plaintiffs do not even attempt to associate the use of any auto-dialers with the specific traffic at issue. Thus, as a threshold matter, Plaintiffs' state-based auto-dialer claims are inapplicable. As an intermediate carrier, Defendants are never the carrier that selects the number to be dialed, nor does Avid Telecom ever dial the end-user's number. Plaintiffs completely fail to provide the factual basis to sustain a claim under the referenced Auto-dialer Acts, and those claims must be dismissed.

**CONCLUSION**

The Complaint is truly nothing more than a compilation of every perceived form of misconduct in the telecom industry.  In most cases, little effort was undertaken to determine if that perceived misconduct was actually undertaken by Avid Telecom.  As the above reveals, Plaintiffs completely fail to present evidence that relates specifically to Avid Telecom sufficient to establish the elements of the offense.

Plaintiffs also fail to present virtually any well pled facts in support of their efforts to secure jurisdiction over Ms. Reeves and, in any event, the prevailing caselaw clearly precludes the attachment of liability to independent contractors like Ms. Reeves.  The same is true with respect to the effort to pierce the veil to assign liability to Mr. Lansky.  None of the required facts are established, nor is there any proof of materiality.

Accordingly, for the reasons stated, the Complaint should be dismissed in its entirety and with prejudice.

Respectfully submitted,

_____
Neil S. Ende
*Pro Hac Vice*
*Counsel to Michael D. Lansky, LLC*
  *dba Avid Telecom*
Dated:  October 6, 2023                                *Michael D. Lansky and Stacey S. Reeves*

Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
nende@tlgdc.com
Telephone: (202) 895-1707
Facsimile: (202) 478-5074

33

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of October 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


Silsa Cabezas

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

State of Arizona, ex rel. Kristin K. Mayes          )
Attorney General et al.                             )
                                                    )
                 Plaintiffs                         )
                                                    )
v.                                                  )          Case No. 4:23-cv-00233-EJM
                                                    )
Michael D. Lansky, LLC, dba                         )
Avid Telecom, an Arizona                            )
Limited Liability Company;                          )
                                                    )
Michel D. Lansky, individually                      )
As a Member/Manager/Chief                           )
Executive Officer of Michael D.                     )
Lansky, LLC dba Avid Telecom;                       )
and                                                 )
                                                    )
Stacey S. Reeves, individually as                   )
a Manager/Vice President of                         )
Michael D. Lansky LLC dba                           )
Avid Telecom                                        )
                                                    )
                 Defendants.                        )
_____

## [PROPOSED] ORDER

Having considered the Motion to Dismiss, opposition and reply pleadings, for good cause shown, Counts I-VI of the Complaint are dismissed with prejudice.

Dated: _____            _____