KRISTIN K. MAYES
Attorney General of Arizona
(Firm State Bar No. 14000)
Alyse Meislik (AZ Bar No. 024052)
Dylan Jones (AZ Bar No. 034185)
Assistant Attorneys General
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax:     (602) 542-4377
consumer@azag.gov
*Lead Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, *ex rel*. Kristin K. Mayes, Attorney General; et al., <br><br> Plaintiffs, <br><br> v. <br><br> Michael D. Lansky, L.L.C., dba Avid Telecom; et al., <br><br> Defendants. | NO. CV-23-00233-TUC-CKJ <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs respectfully file this Response in Opposition to Defendants' Michael D. Lansky, L.L.C, dba Avid Telecom ("Avid Telecom"), Michael D. Lansky ("Lansky"), and Stacey S. Reeves ("Reeves") (collectively, "Defendants") Motion to Dismiss. [Dkt 39]. For the reasons set forth below, the Court should deny Defendants' Motion to Dismiss.

## I.     INTRODUCTION

Defendants' Motion to Dismiss includes five arguments. [Dkt 39]. For the reasons set forth below, the Court should deny Defendants' Motion to Dismiss:

1.     Under Fed. R. Civ. P. 12(h)(1), a general appearance or responsive pleading that fails to dispute personal jurisdiction waives any defect in it. Defendant Reeves has waived any personal jurisdiction defense.

2.     Further, specific personal jurisdiction exists when a defendant oversees or causes to be made telephone calls into the forum state.  Defendant Reeves knew of and caused telephone calls to be made into Arizona.

3.     General jurisdiction exists for a corporation in its state of incorporation. Defendant Avid Telecom is incorporated in Arizona.

4.     Motions to dismiss must comply with Fed. R. Civ. P. 7(b). Many of Defendants' arguments do not comply with Fed. R. Civ. P. 7(b)

5.     Motions to dismiss for Fed. R. Civ. P. 12(b)(6) must have a certification complying with LRCiv 12.1.  Here there is no such certification.

6.     A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is confined to the pleadings.  Defendants cannot use extrinsic facts to contradict the Complaint's allegations.

7.     Finally, Defendants' substantive arguments fail.

### A.     Response to Defendants' "Background Facts" Section

To assist the Court, Plaintiffs offer the following to clarify misstatements of law and fact set forth in the "Background Facts" section of Defendants' Motion.

Defendants state that: "a call is only an illegal robocall in the limited circumstances when it is placed using a computerized autodialer *and* the message is prerecorded . . . Calls that do not meet both criteria are entirely legal." [Dkt 39 at 3]. Defendants fail to provide a citation for this legal assertion, as it is incorrect as to both the Telephone Consumer Protection Act ("TCPA") and the Telemarketing Sales Rule ("TSR"). For example, under the TCPA, it is a violation of 47 U.S.C. § 227(b)(1)(A) to "make any call . . . using any automatic telephone dialing system **_or_** an artificial or prerecorded voice . . ." to a phone number assigned to a cellular service.  [Dkt 1 at ¶ 440] (emphasis added). Also, it is a violation of 47 U.S.C. § 227(b)(B) "to initiate any

telephone call to any residential telephone line using an artificial **_or_** prerecorded voice to deliver a message without the prior express consent of the called party." [Dkt 1 at ¶ 441] (emphasis added). Under the TSR, it is a violation to initiate "any outbound telephone call that delivers a prerecorded message[.]" 16 C.F.R. § 310.4(b)(1)(v) (removing exemptions). [Dkt 1 at ¶ 431(f)].  Thus, a person or entity violates the relevant statutes and regulations by using an "autodialer" *or* using an artificial or prerecorded voice.

Defendants claim that Defendant Avid Telecom has been fully compliant with all "applicable regulatory obligation[s,]" [Dkt 39 at 4-5, citing its "Robocall Mitigation Plan" of which Defendants request the Court take judicial notice].

Plaintiffs are unclear as to how Defendants' alleged policies have any relevance to their Rule 12(b)(2) arguments, since such policies are unrelated to personal jurisdiction, and Defendants fail to explain how, if at all, the plan advances their legal position. Second, consideration of such extrinsic evidence is improper on a motion to dismiss, and the Court should not take judicial notice of Defendants' Robocall Mitigation Plan because Defendants provide no support for their request for judicial notice.

## II.     DEFENDANTS' RULE 12(b)(2) ARGUMENTS FAIL

### A.     Reeves Has Waived a Personal Jurisdiction Defense.

"The defense of lack of personal jurisdiction may also be waived as a result of the defendant's conduct before the court." *TDBBS LLC v. Ethical Prod. Inc*., No. CV-19-01312-PHX-SMB, 2019 WL 1242658, at *1 (D. Ariz. Mar. 18, 2019) (citing *Peterson v. Highland Music*, Inc., 140 F.3d 1313, 1318 (9th Cir. 1998)). "A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *amended by* 807 F.2d 1514 (9th Cir. 1987).

A general appearance is "an overt act by which the party comes into court and submits to the jurisdiction of the court," and "an affirmative act involving knowledge

of the suit and an intention to appear." *Id.* "Motions to set aside default and participation in joint stipulations have each been regarded as actions that manifest a 'clear purpose to defend the action.'" *Pacesetter Consulting LLC v. Kapreilian*, No. CV-19-00388-PHX-DWL, 2019 WL 6464659, at *4 (D. Ariz. Dec. 2, 2019) (citing *Pom Wonderful LLC v. Gida Maddeleri ITH IHR TIC SAN AS*, 2014 WL 12738923, *3 (C.D. Cal. 2014)).

Here, Defendant Reeves has made a general appearance and has manifested a clear purpose to defend this action. On June 13, 2023, she waived service. [Dkt 11]. On June 20, 2023, Lee Stein and Anne Chapman filed an appearance as her attorneys. [Dkt 13]. In the appearance, Defendant Reeves made no mention it was a limited representation to argue a lack of personal jurisdiction. *Id.*

On July 10, 2023, Defendant Reeves filed a motion for an extension of time, citing that the parties needed more time for settlement negotiations. [Dkt 14 at ¶¶ 5, 6]. The Motion did not mention a lack of personal jurisdiction. On September 8, 2023, Defendants filed a second motion for an extension and a correction. [Dkt 20, 21]. The motions did not mention a lack of personal jurisdiction.

On September 14, 2023, Defendants filed an opposition to Plaintiffs' application for default. [Dkt 23]. The opposition filing did not reference a lack of personal jurisdiction. Defendants included a 28-page "Summary of Defenses to Complaint." [Dkt 23-4]. While the summary does mention the word "jurisdiction," it does not address personal jurisdiction. *Id.* at 20, 24-25 (jurisdiction); *id.* at 26, 27, 29 (Reeves' specific defenses).

On October 2, 2023, Defendants filed a motion for leave to exceed the page limit for their "responsive pleading." [Dkt 25]. The motion raises an issue with jurisdiction generally, but it does not assert a lack of personal jurisdiction defense for Defendant Reeves. *Id.* at 3.

Defendant Reeves has manifested a clear purpose to defend the action, and thus, she waived the defense of lack of personal jurisdiction. *Pom Wonderful*, 2014 WL

12738923, at \*3. Accordingly, the Court should deny her request to dismiss her from this litigation based on a lack of jurisdiction under Rule 12(b)(2).

### B.   This Court has Personal Jurisdiction Over Defendant Reeves

In Defendants' Motion to Dismiss, Defendant Reeves moves to dismiss Plaintiffs' Complaint under Rule 12(b)(2) for lack of personal jurisdiction. This Court has specific personal jurisdiction over Reeves because Plaintiffs' TCPA and TSR claims arise directly from the calls that Defendant Reeves made or caused to be made to Arizona area codes.

### i.   The Standard for Determining a Rule 12(b)(2) Motion

In opposing a Rule 12(b)(2) motion, Plaintiffs bear the burden of establishing this Court's personal jurisdiction over Defendant Reeves. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017)). As is the case here, where the motion will be resolved before discovery has been conducted and without an evidentiary hearing, Plaintiffs need only make a *prima facie* showing by presenting facts that, if true, establish jurisdiction. *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). "Unless directly contravened, [Plaintiffs'] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [Plaintiffs'] favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists." *See id*.

In general, "personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006). If there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits for determining personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Arizona's long arm statute permits jurisdiction over non-resident defendants to the full extent allowable under the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Constitutional due process concerns are

1  satisfied when a non-resident defendant has certain "minimum contacts" with the forum
2  state such that the maintenance of the suit would not offend "traditional notions of fair play
3  and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

4          When judging minimum contacts, a court must focus on "the relationship among
5  the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S.
6  770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). A defendant has
7  sufficient minimum contacts with the forum state to establish specific personal jurisdiction
8  if: (1) the defendant purposefully directs activities toward the forum state, (2) the plaintiffs'
9  claim arises out of or relates to those activities, and (3) an exercise of jurisdiction would
10 be reasonable. *Burri Law PA v. Skurla*, 35 F.4th 1207, 1212 (9th Cir. 2022). If Plaintiffs
11 establish the first two prongs of this inquiry, the burden shifts to Defendant Reeves to
12 "present a compelling case that the exercise of jurisdiction would not be reasonable." *See
13 id.* at 1213. "Once minimum contacts is shown, a rebuttable presumption arises that the
14 exercise of jurisdiction is reasonable." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191,
15 1195 (9th Cir. 1988). A defendant bears a "heavy burden" to overcome this presumption.
16 *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

17     **ii.     Defendant Stacey Reeves Purposefully Directed Activity at this Forum**

18          The *Calder* "effects" test governs inquiries into whether a defendant has
19 purposefully directed activities toward a forum state. *Skurla*, 35 F.4th at 1213; *Calder v.
20 Jones*, 465 U.S. 783, 788-89 (1984).   The effects test establishes that a defendant
21 purposefully directed conduct at the forum state if the defendant: (1) commits an intentional
22 act, (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was
23 likely to be suffered in the forum state. *Skurla*, 35 F.4th at 1213; *Calder*, 465 U.S. at 788-
24 89. Under this test, jurisdiction may be constitutionally maintained even if a defendant
25 never set foot in the forum state, if a defendant's contacts with the forum state are out-of-
26 state acts that had an effect in the forum. *Id.* Courts have deemed a few instances of
27 correspondence or telephone contact, through which the defendant directed tortious
28 activities, to be sufficient to establish purposeful direction. *See Brainerd v. Governors of*

1  *the Univ. of Alberta*, 873 F.2d 1257, 1259–60. (9th Cir. 1989); *Wien Air Alaska, Inc. v.*
2  *Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications
3  with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful
4  availment."); *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332–33 (5th Cir. 1982) (A
5  single telephone call can be sufficient to confer personal jurisdiction over a defendant).

6    In TCPA cases, courts generally find that specific jurisdiction exists when
7  defendants make a call or sends a message into the forum state by targeting a telephone
8  number within the forum. *Mey v. All Access Telecom, Inc.*, 5:19-CV-00237-JPB, 2021 WL
9  8892199, at *3 (N.D.W. Va. Apr. 23, 2021) (citing *Shelton v. Nat'l Gas & Elec.*, LLC,
10  2019 WL 1506378, *7 (E.D. Pa. Apr. 5, 2019*)); see also Baker v. Caribbean Cruise Line,*
11  *Inc.*, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) (finding personal jurisdiction where
12  the complaint alleged "that Defendant made calls to Plaintiff's Arizona number and the
13  fact that those calls are the basis for Plaintiff's [TCPA] claims."); *Luna v. Shac*, LLC, 2014
14  WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding purposeful direction "where
15  [defendant] intentionally sent text messages directly to cell phones with California based
16  area codes, which conduct allegedly violated the TCPA and gave rise to this action,
17  [defendant] expressly aimed its conduct at California."); *Heidorn v. BDD Marketing &*
18  *Mgmt. Co.*, LLC, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013) (finding personal
19  jurisdiction in TCPA case where calls were made to a California resident at a California
20  number); *Abramson v. Agentra*, LLC, 2018 WL 6617819, at *4 (W.D. Pa. Dec. 18, 2018)
21  (finding defendant "purposefully aimed its conduct at Pennsylvania by contacting directly
22  [plaintiff's] Pennsylvania mobile and residential telephone numbers."); *Abramson v. CWS*
23  *Apartment Homes, LLC*, 2016 WL 6236370, at *4 (W.D. Pa. Oct. 24, 2016) (finding
24  purposeful direction when defendant sent the text message to plaintiff's cell phone bearing
25  a Pennsylvania area code); *Ayers v. Receivables Performance Mgmt.*, L.L.C., 2016 WL
26  5402962, at *3 (E.D. Mich. Sept. 28, 2016) (finding purposeful availment when defendant
27  "elected to dial a phone number with a Michigan area code for the purpose of collecting a
28  debt. In other words, [defendant] effectively reached into Michigan to conduct business.");

1  *Hudak v. Berkeley Group, Inc.*, 2014 WL 354676, at *2 (D. Conn. Jan. 23, 2014); *Branham*

2  *v. ISI Alarms, Inc.*, 2013 WL 4710588, at *8 (E.D. N.Y. Aug. 30, 2013) (holding that the

3  defendants should have anticipated that the use of a system "to call a New York cell-phone

4  number could subject them to being haled into court in New York.").

5       Courts have also found that personal jurisdiction exists over a defendant playing a

6  supporting role in the TCPA violation. *See, e.g.*, *Mey*, 2021 WL 8892199 at *3 ("Because

7  each Defendant profited from its exposure to this market and purposefully availed

8  themselves of the privilege of conducting business here, they are answerable in West

9  Virginia courts for their conduct in making these West Virginia calls.") (citing *UMG*

10  *Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354 (4th Cir. 2020)), *Ott v. Mortg. Inv'rs*

11  *Corp. of Ohio, Inc.*, 65 F.Supp.3d 1046, 1057 (D. Or. 2014) (finding specific jurisdiction

12  over defendants who had "mere oversight" of telemarketing operation that included phone

13  numbers with in-state area codes relating to the jurisdiction); *Hudak*, 2014 WL 354676 at

14  *2 ("Defendants deny that they made any of the calls at issue but do not deny that they

15  caused them to be made."); *Keim v. ADF MidAtlantic, LLC*, 199 F.Supp.3d 1362, 1368

16  (S.D. Fla. 2016) (specific jurisdiction over defendants who hired agents to send text

17  messages received in-state).

18       Here, Defendant Stacey Reeves had minimum contacts with the forum. Defendant

19  Reeves held herself out publicly as Defendant Avid Telecom's Vice-President of

20  Operations and Sales and provided a telephone number with an Arizona area code as her

21  contact number. Ex. 1, Declaration of Investigator John Isaacs at ¶¶ 6, 8, 10, 16. In her role

22  as Vice-President, Reeves participated in the control and management of Avid Telecom's

23  customer-specific account settings and network-wide settings that affected how and where

24  calls were routed.  [Dkt 1 at ¶¶ 190, 200].

25       For example, Defendant Reeves was notified by Telco Connection on February 23,

26  2021 and September 10, 2021 that Defendants were sending IRS impersonation scam and

27  Social Security Administration scam calls to Arizona area codes. Ex. 1 at ¶ 16. Defendant

28

Reeves responded to these notifications that Defendants blocked the calling phone number. *Id.*

In an email to Inteliquent, Defendant Reeves wrote that, "I've made some adjustments to help with the ASR. End of day stats should be closer to 60%." *Id.* at ¶ 18. An Inteliquent employee responded with a breakdown of where Defendants' traffic was being routed to a terminating provider, which included two Arizona businesses. *Id.* at ¶¶ 18-19. Here, Defendant Reeves' actions impacted Arizona, and she was notified of it.

From March 20, 2021 until March 23, 2023, Defendant Reeves was notified by the Industry Traceback Group of at least nine Tracebacks for calls to phone numbers with Arizona area codes. *Id.* at ¶ 9-10. These calls included telephone calls using a prerecorded or artificial voice. *Id.*

Finally, Defendant Reeves had the power to shut off call traffic to an entire state. *See id.* at ¶ 17. In the Complaint, Plaintiffs alleged that, for a time, Defendants curbed their traffic to Vermont's one area code. [Dkt 1 at ¶¶ 185-188]. Since Defendant Reeves had the ability to stop traffic to specific states (likely through blocking specific area codes), Defendant Reeves had the ability to block Defendants' traffic to Arizona; however, Defendant Reeves did not.

At the customer account level, Reeves managed settings that determined call routing, call signaling, and call volume for customers that initiated calls to telephone numbers with Arizona area codes. [Dkt 1 at ¶¶ 381-382]; Ex. at ¶ 7. Reeves managed the account settings for the Virtual Telecom/Mobi Telecom account which made millions of deceptive robocalls "auto warranty" robocalls. Ex. at ¶ 7.  Between October 27, 2020 and February 8, 2021, Avid Telecom facilitated 55,224,731 calls for Virtual Telecom/Mobi Telecom to telephone numbers with Arizona area codes. *Id.* at ¶ 11.  At least 246 Arizona residents whose telephone numbers were called in those 55,224,731 calls filed do-not-call complaints with the Federal Trade Commission about unwanted warranty calls during that same time frame. *Id.* at ¶ 12.

An analysis of another customer's traffic (John Spiller) shows that on October 28, 2020 Defendants Reeves accessed and managed the John Spiller ("Spiller") account and selected the downstream provider where Spiller's traffic would be routed. *Id.* at ¶ 13. On October 28, 2020, at least 360,332 telephone calls were initiated to numbers with Arizona area codes for the Spiller account. *Id.* at ¶ 14. At least 3 Arizona residents whose telephone numbers were called in those 360,332 calls filed do-not-call complaints with the Federal Trade Commission about the receipt of auto warranty calls. *Id.* at ¶ 15. With respect to Spiller, Defendants Reeves' actions impacted Arizona residents.

As such, Defendant Reeves knew, or should have known, that she was purposefully directing activity at the forum. Defendant Reeves' conduct constitutes purposeful direction because she purposefully availed herself of the privilege of causing a consequence in Arizona by facilitating "auto warranty robocalls" or otherwise unwanted calls terminating to Arizona residents, and as a result taking advantage of the benefits and privileges of the laws of Arizona.

### iii. Plaintiffs' Claims Arise Out Of and Relate To Defendant Reeves' Activities

The second requirement of the specific jurisdiction test is that the defendant purposefully directed contacts to the forum that give rise to the current suit. The Ninth Circuit measures this requirement in terms of "but for" causation. *See Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995). As described above, this requirement is met here because Plaintiffs would not have any TCPA or TSR claims against Defendant Stacey Reeves but for her actions managing network and customer-specific account settings. With regards to at least two customers, Defendant Reeves' actions were the "but for" cause of Plaintiffs' claims. Indeed, Defendants' call traffic telephone is the very subject of the litigation. Without question, Plaintiffs' claims arise out of, and relate to, Defendant Stacey Reeves' placement of calls into Arizona.

### iv. Exercising Personal Jurisdiction over Defendant Reeves is Reasonable

Courts presume that an exercise of jurisdiction over a defendant is reasonable if the first two requirements of the specific jurisdiction test are met. *Ballard*, 65 F.3d at 1500.

1    Plaintiffs established the first two prongs of the inquiry regarding minimum contacts;

2    therefore, the burden shifts to Defendant Reeves to "present a compelling case that the

3    presence of some other considerations would render jurisdiction unreasonable." *Id.*

4         The Ninth Circuit considers seven factors when determining whether exercising

5    specific jurisdiction is reasonable: "(1) [t]he extent of the defendant['s] purposeful

6    interjection into the forum state's affairs; (2) the burden on the defendant of defending in

7    the forum; (3) the extent of conflict with the sovereignty of the defendant['s] state; (4) the

8    forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution

9    of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient

10   and effective relief; and (7) the existence of an alternative forum." *Terracom v. Valley Nat.*

11   *Bank*, 49 F.3d 555, 561 (9th Cir. 1995).  Courts balance all seven factors, while recognizing

12   that none of the factors are dispositive. *Id.* The factors are not "mandatory tests," but

13   "illuminate the considerations of fairness and due process set forth in *International Shoe*,

14   326 U.S. at 310." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1332 (9th Cir. 1984).

15        The exercise of specific personal jurisdiction over Defendant Reeves is reasonable

16   here.  First, Defendant Reeves purposefully interjected herself into Arizona by intentionally

17   routing tens of millions of calls into Arizona. Ex. 1 at ¶¶ 7, 11, 14. Second, the modern-

18   day ease of email and other communications, electronic filing, and relative ease of air travel

19   lessen the burden on Defendant Reeves to defend in Arizona. *See, e.g.*, *Decker Coal Co. v.*

20   *Commonwealth Edison Co.*, 805 F.2d 834, 841 (9th Cir. 1986) ("Improvements in

21   communication and transportation have reduced much of the historical burden of litigating

22   in a distant forum."). The third factor is not relevant here because there is no issue as to

23   conflicts of law because the Plaintiffs' claims arise under the TCPA, the TSR, and

24   numerous state laws brought by the Attorneys General of those states.

25        Next, with respect to the fourth factor, Arizona has a strong interest in providing a

26   forum for Plaintiffs because the state of Arizona has a strong interest in ensuring that its

27   residents have a forum to ensure that they are not injured by foreign citizens. The TCPA

28   aims to eliminate abusive interstate telemarketing practices that could evade state-law

prohibitions. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372–73 (2012). Here, Defendants made, or caused to be made, abusive robocalls and telemarketing calls to Arizona consumers.

Fifth, judicial efficiency is served by this Court asserting jurisdiction over Defendant Reeves. The efficient resolution of a controversy is furthered when a court asserts jurisdiction over a case that is currently on that court's active docket. This case is currently on this Court's active docket, and it includes joint claims against Defendant Reeves and Defendant Lansky, who is a resident of Arizona, as well as Defendant Avid Telecom, whose principal place of business is in Arizona. The judicial system's interest in the efficient resolution of controversies would be furthered if this Court grants jurisdiction.

Sixth, this forum is important for convenient and effective relief because co-Defendants reside in Arizona and are subject to general jurisdiction in this forum. These Defendants would likely raise identical arguments regarding personal jurisdiction if this action were brought against all Defendants in an alternate forum, or the efficiencies of simultaneously prosecuting all Defendants would be lost if the Plaintiffs were to proceed in multiple forums.

As to the seventh factor, an alternative forum likely exists in Florida where Defendant Reeves resides, but, as noted, co-Defendants are likely not subject to general jurisdiction in Florida, complicating the jurisdictional analysis in that forum, and resulting in inefficiencies if Plaintiffs' filed multiple cases regarding the same nucleus of operative facts. The claims against Defendants Lansky and, Avid Telecom, which arise out of the same facts as those against Defendant Reeves, will proceed here in Arizona. When balancing all the factors involved in determining whether exercising personal jurisdiction over Defendant Reeves is reasonable, the judicial efficiency of litigating the claims against all three defendants in the same forum outweighs the fact that an alternative forum in Florida exists to litigate claims against Defendant Reeves.

On balance, the exercise of personal jurisdiction over Defendant Reeves by the District Court of Arizona is reasonable.

1
2

**v.      Defendant Reeves' Assertion that She is an Independent Contractor is Not Dispositive to Her Argument that the Court Lacks Personal Jurisdiction**

3
4
5
6
7
8
9
10
11
12

In their Rule 12(b)(2) arguments, Defendants copy and paste a portion of Defendant Reeves' Declaration, asserting that she is an independent contractor. [Dkt 39 at 6, 7]. This is not a statement of fact; it is a legal conclusion. "To determine whether a worker is an employee or an independent contractor, courts look to 'the hiring party's right to control the manner and means by which the product is accomplished.'" *Cox v. Glob. Tool Supply LLC*, 629 F. Supp. 3d 963, 969 (D. Ariz. 2022) (quoting *Henry v. Adventist Health Castle Med. Ctr*., 970 F.3d 1126, 1130 (9th Cir. 2020)). This is a "fact-specific inquiry which 'depends on the economic realities of the situation.'" *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999) (quoting *Mitchell v. Frank R. Howard Mem. Hosp.*, 853 F.2d 762, 766 (9th Cir. 1988)).

13
14
15
16
17
18
19
20
21
22
23
24

The relevant factors the Court should consider are: "[1] the skill required; [2] the source of the instrumentalities and tools; [3] the location of the work; [4] the duration of the relationship between the parties; [5] whether the hiring party has the right to assign additional projects to the hired party; [6] the extent of the hired party's discretion over when and how long to work; [7] the method of payment; [8] the hired party's role in hiring and paying assistants; [9] whether the work is part of the regular business of the hiring party; [10] whether the hiring party is in business; [11] the provision of employee benefits; and [12] the tax treatment of the hired party." *Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945–46 (9th Cir. 2010) (quoting *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323 (1992)).  Defendants fail to provide an analysis as to why Defendant Reeves should be categorized as an independent contractor under the relevant factors listed above.

25
26
27
28

Furthermore, the assertion is contradicted by Defendant Reeves's prior declarations. Defendants Lansky and Avid Telecom initiated a lawsuit against another party, and as part of that litigation, Defendant Reeves submitted three declarations, attached as Exhibit 2.

1    In the April 10, 2023 Declaration, Defendant Reeves states that she is the "Vice

2    President of Operations and Sales of Michael D. Lansky, LLC dba Avid Telecom,

3    LLC." She further declared: "[a]mong my responsibilities is to interact with the

4    Industry Traceback Group and others regarding traceback issues." *Id.* at 1, ¶¶ 1, 2. In

5    the other declarations, she declared that "[a]t all times relevant to this action, I served

6    as an independent contractor to Avid Telecom." *Id.* at 3, ¶¶ 1, 2 and 5, ¶¶ 1, 2.

7    In her declaration for this case, Defendant Reeves declares herself to always have

8    been an independent contractor to Defendant Avid Telecom, and that "[t]he 'Vice

9    President' title that appears on some of my emails and on a filing with the [Federal

10   Communications Commission ("FCC")] was merely a marketing title. It does not

11   reflect an actual position that I held at Avid Telecom." [Dkt 39-3 at ¶¶ 7, 10].

12   Effectively, this Declaration states that Defendant Reeves had no responsibilities at

13   Avid Telecom, which is in opposition to her previous two declarations.

14   Defendant Reeves' declarations contradict themselves. In April, she was a Vice

15   President of Operations and Sales, and now in October, that title is but mere corporate

16   theater. In April, before this lawsuit, it was in Defendants' best interest for Defendant

17   Reeves to publicly be the Vice President of Operations and Sales and for her to have

18   responsibilities including compliance. After this lawsuit, Defendants' interests changed

19   and magically so did Defendant Reeves' role and responsibilities.

20   Regardless, the Court has specific personal jurisdiction over Defendant Reeves

21   whether she is an independent contractor or corporate officer. Thus, the Court need not

22   decide her employment status at this time.

23   ### C.    This Court has Personal Jurisdiction Over Avid Telecom

24   Defendant Avid Telecom is incorporated in the State of Arizona. [Dkt 1 at ¶ 10].

25   Defendants do not present any evidence that contradicts this. General jurisdiction is

26   appropriate here for Avid Telecom, as Arizona is the state in which the company is

27   incorporated and where it maintains its principal place of business. *See Daimler AG v.*

28   *Bauman*, 571 U.S. 117, 137 (2014) ("The paradigm forum for the exercise of general

14

jurisdiction [for a corporation] is one in which the corporation is fairly regarded as at home."). Thus, Defendants' argument that this Court does not have specific personal jurisdiction over Avid Telecom has no merit.

### III.   DEFENDANTS' REMAINING ARGUMENTS

While Defendants' Motion to Dismiss purports to challenge the legal and/or factual bases of select allegations in Plaintiffs' Complaint, it fails to cite, mention, or analyze Rule 12(b)(6) and the accompanying standards governing.

As a result, Defendants' fail to comply with Federal Rule 7's "particularity" requirement. Plaintiffs can only speculate as to whether Defendants' motion seeks relief under Federal Rule 12(b)(6).[1]  *See* Fed. R. Civ. P. 7(b)(1)(B) (providing that Rule 12 motions "must . . . state with particularity the grounds for seeking the order"); *Cartessa Aesthetics LLC v. Aesthetics Biomedical Incorporated*, 2020 WL 1952567, *3 (D. Ariz. April 23, 2020) (denial of motion for noncompliance with Rule 7 is proper if "it has caused the parties to talk past each other in their briefs and caused the Court to guess as to which legal framework to apply"). Based upon the foregoing deficiencies, denial of Defendants' Motion to Dismiss is warranted for all but Section A of the Motion, which directs the Court's attention to Federal Rule 12(b)(2). [Dkt 39 at 5].  Out of an abundance of caution, Plaintiffs will attempt to address the merits of the remaining substantive arguments brought forward by Defendants as if they were properly argued under Federal Rule 12(b)(6).

### A.   Defendants' Non-Compliance with Local Rule 12.1(c)

Local Rule 12.1(c) provides that a Rule 12(b)(6) motion will not be considered unless "the moving party includes a certification that, before filing the motion, the movant notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by

---

[1] Defendants Lansky and Avid were recently admonished in a separate case before this Court for filing a similarly confusing and non-compliant brief. *See Avid Telecom LLC, et al., v. Frankel, et al.*, No. 4:22-cv-00558-JCH (D. Ariz. 2022) (Oct. 16, 2023) (holding, in its order entered Oct. 16, 2023 (Doc. 81 at 2), that Avid's brief failed to "adequately prepare the Court to hear oral argument" and "further advis[ing Avid] to review the Local Rules governing briefing requirements").

the pleading party." The purpose of Local Rule 12.1(c) is to avoid unnecessary motion practice, which squanders judicial resources and undermines Rule 1's objective of securing "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see Wine Educ. Council v. Ariz. Rangers*, No. CV-19-02235-PHX-SMB, 2020 WL 7352632, *8 (D. Ariz. Dec. 15, 2020).

Defendants wholly fail to comply with Local Rule 12.1(c), and their Rule 12(b)(6) arguments should be stricken summarily. *Gulden v. Liberty Home Guard LLC*, No. CV-20-02465-PHX-JZB, 2021 WL 689912, at *2 (D. Ariz. Feb. 23, 2021) (striking the defendant's motion because there was no meet and confer). Further, as of this filing, Defendants have not attempted to remedy their lack of compliance, despite Plaintiffs notice of this discrepancy in Plaintiffs' Motion for Extension of Time. [Dkt 33, 2, n. 1].

Since Defendants failed to meet and confer or file a L.R.12.1(c) certification in connection with their Motion to Dismiss and have failed to take any steps to remedy their non-compliance, any potential Rule 12(b)(6) arguments should be summarily stricken. *Id.* *See also Leibel v. City of Buckeye*, No. CV-18-01743-PHX-DWL, 2020 WL 516671, at *2 (D. Ariz. Jan. 31, 2020) (noting the Court is a "stickler for compliance with Local Rule 12.1(c)").

### B.     Rule 12(b)(6) Legal Standard

A motion to dismiss for failure to state a claim is disfavored and rarely granted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). "A Rule 12(b)(6) motion [to dismiss] tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering whether the complaint is sufficient to state a claim upon which relief may be granted, the Court should take all material allegations as true and construe the claims in the light most favorable to Plaintiffs. *See Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), dismissal is appropriate if the complaint fails to provide the defendant with fair notice of a legally cognizable claim and the grounds on which that claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  Thus, the court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Courts then should determine whether the factual allegations in the complaint "plausibly give rise to an entitlement to relief." *Id.* The plausibility inquiry "is not akin to a probability requirement," but a complaint will not survive a motion to dismiss if the factual allegations "do not permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 678–79 (internal quotation marks omitted). The complaint must "nudge[ ] the[ ] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. . . . However, material which is properly submitted as part of the complaint may be considered" with a motion to dismiss.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). "Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, the court may also take judicial notice of "matters of public record[,]" without converting the motion to dismiss into a motion for summary judgment. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the court considers materials outside the pleadings, the Rule 12(b)(6) motion is converted into a motion for summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

The Federal Rules provide for *sua sponte* conversion of a motion under Rule 12(b)(6) to a summary judgment motion under Rule 56 "if . . .  matters outside the pleadings

are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). A district court will notify the parties before taking such action in order to provide to the parties a fair opportunity to present material relevant to summary judgment. *Id.*; *In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 781 (9th Cir. 2014) (additional citations omitted).

If the Court grants the motion to dismiss, the Court should "freely give" leave to amend the complaint when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant[,] . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a). Generally, leave to amend the complaint is only denied when it is clear that deficiencies in the complaint cannot be cured by an amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## C.      Defendant Reeves is Liable for Her Own Acts and the Acts of Avid Telecom

In Section B of Defendants' Motion, Defendants argue Defendant Reeves should not be held responsible for her personal actions and her actions as Vice President of Sales and Operation because she is an independent contractor. [Dkt 39 at 11]. Defendants improperly use extrinsic evidence from Defendant Reeves' Declaration to make this point. [Dkt 39-3 at ¶ 7]. The Court should not consider Reeves' Declaration for any of Defendants' arguments outside of Defendants' Rule 12(b)(2) arguments. *Hal Roach Studios, Inc.*, 896 F.2d at 1555 n.19. Plaintiffs did not allege Defendant Reeves was an independent contractor. The Court should deny Defendants' request, as Defendants are trying to shoehorn their argument under Rule 12(b)(2) using outside "facts."

## D.      Defendant Lansky is Liable for His Own Acts and the Acts of Avid Telecom

In Section D of the Defendants' Motion, Defendants argue the Complaint does not adequately pierce the corporate veil. [Dkt 39 at 13-15]. Defendants, however, fail

to request any relief for this alleged inadequacy. Fed. R. Civ. P. 7(b)(1)(B).  As such, the Court should disregard this section.

If, however, the Court treats Defendants' arguments here as a request to dismiss all the Counts against Defendant Lansky, then Defendants have not met their Rule 12(b)(6) burden. Defendants, again, are trying to introduce evidence that is outside of the Complaint, specifically referencing, for example, Defendant Lansky's accounting practices. [Dkt 39 at 13-15]. The Court should not consider these "facts." *Hal Roach Studios, Inc.*, 896 F.2d at 1555 n.19. Further, Defendants fail to cite to any caselaw regarding the piercing the corporate veil standard. For these reasons, the Court should reject these extrinsic facts and unsupported arguments and disregard this contention.

Nevertheless, Defendants' argument is meritless because individuals can be held liable under the TCPA if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 (D. Md. 2011) (quoting *Texas v. Am. Blastfax*, 164 F.Supp.2d 892, 898 (W.D.Tex. 2001). The same is true for Plaintiffs' claims arising under the TSR, which are treated as claims arising under the Federal Trade Commission Act pursuant to 15 U.S.C. § 6102(c)(1). *F.T.C. v. Garvey*, 383 F.3d 891, 900 (9th Cir. 2004) (Individuals are subject to injunctive relief under the Federal Trade Commission Act if they participated directly in the acts in question or had authority to control them). Plaintiffs have alleged that Defendants Lansky and Reeves participated in and directed or supervised illegal trade practices. [Dkt 1 at 405].

**E.     The Assertion that Defendant Avid Telecom is a Common Carrier is Not Appropriate for a Motion to Dismiss**

Defendant Avid Telecom claims that it is a "common carrier," and thus asserts that Plaintiffs cannot bring an enforcement action against it under the TSR. Courts in the Ninth Circuit have held that the determination of a common carrier is a factual issue that should not be determined at the pleading stage.  *See Linlor v. Five9, Inc.,* No. 17CV218-MMA (BLM), 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017) ("The Court . . . declines

to find as a matter of law, at the pleadings stage, that Defendant is a common carrier exempt from liability under the TCPA."); *Couser v. Pre-paid Legal Servs., Inc*., 994 F. Supp. 2d 1100, 1104–05 (S.D. Cal. 2014) ("[W]ith only pleadings to go on and no discovery as to the precise relationship between CallFire and Legal Shield, it is simply too early in this litigation for the Court to affirmatively conclude that CallFire is the middleman it claims."); *Luna*, 2014 WL 5324291 at *2 ; *Kauffman v. CallFire, Inc.*, No. 3:14-CV-1333-H-DHB, 2015 WL 11237468, at *1 (S.D. Cal. July 22, 2015) (stating that "whether CallFire is a common carrier is a factual issue better suited for resolution at summary judgment").

The Court should deny Defendants' request to dismiss on this basis, as the assertion that Defendant Avid Telecom is a common carrier is not appropriate at this stage.

### F.     Avid Telecom is Not a Common Carrier

In the alternative, the Court should hold that Defendant Avid Telecom is not a common carrier. Defendants argue Defendant Avid Telecom is a common carrier and therefore only the FCC has sole enforcement authority over the company. [Dkt 39 at 16-18]. Defendants' assertion that it "served as a common carrier here" mischaracterizes its role in the robocalling ecosystem and its representations and actions.  As demonstrated below, Defendant Avid Telecom is not a common carrier, but rather it is an information-service provider. In the event that the Court does not find Defendant Avid Telecom to be an information-service provider, the company is still not a common carrier under the FCC's two-part "NARUC" test.

Whether Defendant Avid Telecom is a common carrier or not depends on if it is a telecommunication carrier or an information-service provider under 47 U.S.C. § 153. *See Fed. Trade Comm'n v. Educare Ctr. Servs., Inc.*, 433 F. Supp. 3d 1008, 1017 (W.D. Tex. 2020); *State of Indiana v. Startel Communication LLC, et al.,* 3:21-cv-00150-RLY-MPB, ECF No. 39, at 6 (S.D. Ind. Sept. 9, 2022).[2]

If the provider is an information-service provider, it cannot be a common carrier. *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 975 (2005)

---

[2] For ease, the *Startel* decision has been included as Exhibit 3.

(stating that the Communications Act of 1934, as amended by the Telecommunications Act of 1996, "regulates telecommunications carriers, but not information-service providers, as common carriers"). A telecommunications carrier is "any provider of telecommunications services." 47 U.S.C. § 153(51). This is when the provider transmits "information of the user's choosing, without change in the form or content of the information as sent and received." *Id*. § 153(50). Information-service providers offer the "capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications . . . but does not include any use of any such capability for the management, control, or operation of a telecommunications system." *Id*. § 153(24).

"The lodestar for this statutory distinction is whether the provider can change the form or content of the information sent and received. If the provider has the capability to change form or content, the provider can transform communications and is acting as an information-service provider; the opposite is true if the provider cannot change form or content." *Startel Communication LLC, et al.,* 3:21-cv-00150-RLY-MPB, ECF No. 39, at 6 (S.D. Ind. Sept. 9, 2022).

"[C]ourts must examine the **actual conduct** of an entity to determine if it is a common carrier for purposes of the FTC Act exemption." *Fed. Trade Comm'n v. Verity Int'l, Ltd.*, 443 F.3d 48,60 (2d Cir. 2006) (emphasis added).

Telecommunications service providers are subject to regulation as common carriers under certain amendments to the Communications Act. *See* 47 U.S.C § 153(51).

"Information services are distinguished from telecommunications services, in part, by their inclusion of "protocol conversion"—the "ability to communicate between networks that employ different data-transmission formats"—whereas telecommunications services only transmit without alteration. *See PAETEC Comm'ns, Inc. v. CommPartners, LLC*, No. 08-cv-0397, 2010 WL 1767193, at *2 (D.D.C. Feb. 18, 2010) (*quoting Brand X Internet Servs.*, 545 U.S. at 975–77). "Telecommunications services are subject to the FCC's jurisdiction, whereas information services are not, and the categories are mutually exclusive." *Educare Ctr. Servs., Inc.*, 433 F. Supp. 3d at 1017 (citing *Brand X Internet*

*Servs.*, 545 U.S. at 975–76; *Nat'l Ass'n of Reg. Util. Comm'rs v. FCC*, 851 F.3d 1324, 1325 (D.C. Cir. 2017)).

A number of federal courts have concluded that Voice over Internet Protocol ("VoIP")[3] providers, like Defendant Avid Telecom, operate as information services, not telecommunications services. *See, e.g.*, *Startel Communication LLC, et al.,* 3:21-cv-00150-RLY-MPB, ECF No. 39, at 6 (S.D. Ind. Sept. 9, 2022), *Charter Advanced Servs. (MN), LLC v. Lange*, 903 F.3d 715, 719 (8th Cir. 2018); *Educare Ctr. Servs., Inc.*, 433 F. Supp. 3d at 1018; *Sw. Bell Tel., L.P. v. Mo. Pub. Serv. Comm'n*, 461 F. Supp. 2d 1055, 1079-83 (E.D. Mo. 2006); *Vonage Holdings Corp. v. Minn. Pub. Utils. Comm'n*, 290 F. Supp. 2d 993, 999 (D. Minn. 2003); *PAETEC Commc'ns, Inc.*, 2010 WL 1767193 at *3; *Vonage Holdings Corp. v. NY. State Pub. Serv. Comm'n*, No. 04-cv-4306, 2004 WL 3398572, at * 1 (S.D.N.Y July 16, 2004).

The Eighth Circuit wrote that "the touchstone of the information services inquiry is whether [the VoIP provider] acts on the consumer's information—here a phone call—in such a way as to 'transform' that information." *Lange*, 903 F.3d at 719 (emphasis added). Generally speaking, VoIP technology "allows a caller using a broadband Internet connection to place calls to and receive calls from other callers using VoIP or traditional telephone service." *Nuvio Corp. v. FCC*, 473 F.3d 302, 303 (D.C. Cir. 2006). VoIP technology effectuates, for example, the information transformation required for computer-to-telephone calls through a process called protocol conversion or net protocol conversion.

As the Eighth Circuit put it, "[w]hen a [VoIP] customer calls or receives a call from a subscriber of a traditional telecommunications carrier, the call must be converted between IP and TDM. This process is known as 'protocol conversion.'" *Lange*, 903 F.3d at 718 (internal quotation and citation omitted).[4] The Eighth Circuit concluded that the VoIP

---

[3] Plaintiffs alleged Defendant Avid Telecom identified itself as an interconnected VoIP service provider, registered with the FCC's Form 499 Filer Database as Filer ID No. 828064. [Dkt at ¶ 16].

[4] "IP" stands for Internet Protocol. "TDM" stands for Time Division Multiplexing. *See Lange*, 903 F.3d at 717-718. "The purpose of IP-TDM protocol conversion . . . is to

1    provider was an information service because it "mak[es] available information via

2    telecommunications by providing the capability to transform that information through net

3    protocol conversion." *Id.*; *see also Mo. Pub. Serv. Comm'n*, 461 F. Supp. 2d at 1082 (a

4    "net-protocol conversion occurs when an end-user [can] send information into a network

5    in one protocol and have it exit the network in a different protocol. That conversion

6    transforms information, and therefore provides . . . an information service."); *Minn. Pub.*

7    *Utils. Comm'n*, 290 F. Supp. 2d at 999 ("[C]alls in the VoIP format must be transformed .

8    . . before a [traditional] user can receive the call. For calls originating from a [traditional]

9    user, the process . . . is reversed. The Court concludes that [the VoIP provider's] activities

10   fit within the definition of information services."). "Net-protocol conversion is a

11   determinative indicator of whether a service is an . . . information service." *Mo. Pub. Serv.*

12   *Comm'n*, 461 F. Supp. 2d at 1081. It is immaterial where the VoIP service provider was in

13   a call chain. *Id.* All that matters is that an end-user's information is transformed during the

14   process. *See id.* at 1082.

15          In its Motion to Dismiss, Avid Telecom states that it is a common carrier but ignores

16   and does not bring to this Court's attention the key distinctions between information

17   services and telecommunications services. [Dkt 39 at 16-18].

18          Further, the Communications Act states that a company need only have the

19   "capability" to "transform[] . . . information via telecommunications" to meet the definition

20   of an "information service." 47 U.S.C. § 153(20). *See Lange*, 259 F. Supp. 3d at 987, *aff'd.*

21   903 F.3d 715 (8th Cir. 2018) (holding that the Communications Act does not require a

22   VoIP provider to use protocol conversion in every single call to be an information service.)

23   Since the capability to perform protocol conversion is a defining attribute of VoIP

24   telephony, Defendant Avid Telecom is an "information service" provider within the

25   meaning of the Communications Act and is not subject to regulation as a common carrier.

26

27

28   _____

facilitate communication between users of VoIP and legacy telephony services[.]" *Lange*,
259 F. Supp. 3d at 989, *aff'd.* 903 F.3d 715 (8th Cir. 2018).

If the Court finds that Defendant Avid Telecom is a telecommunications provider, rather than an information service provider, the Court should still find that Avid Telecom fails the FCC's two-part test (aka the "NARUC" [5] test) as to whether an entity is a common carrier under the Communications Act. Under this test, "common carrier status turns on: (1) whether the carrier "holds himself out to serve indifferently all potential users"; and (2) whether the carrier allows "customers to transmit intelligence of their own design and choosing." *U.S. Telecom Ass'n v. F.C.C.*, 295 F.3d 1326, 1329 (D.C. Cir. 2002) (omitted internal citation).

Defendants attempt to bring in information outside of the Complaint to argue that Defendant Avid Telecom is a common carrier. The Court should reject these extrinsic facts. *Hal Roach Studios, Inc.*, 896 F.2d at 1555 n.19.

Instead, the Complaint alleges Defendant Avid Telecom offers its services through private, confidential contracts. [Dkt 1 at ¶ 55]. The Complaint also alleges some but not all of Defendant Avid Telecom's contracts and billing are structured for the transmittal of robocalls. *Id.* at ¶¶ 58, 63. For at least one customer, Defendant Avid Telecom did not have a written contract or agreement, as it was a pre-paid account. *Id.* at ¶ 378. Further, Defendant Reeves, on behalf of Defendant Avid Telecom, turned off call blocking features for some but not all customers. *Id.* at ¶ 190. Defendants' choices about whether and on what terms to deal mean it is not a common carrier. *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1220 (11th Cir. 2022) ("In the communications context, common carriers are entities that make a public offering to provide communications facilities whereby all members of the public who choose to employ such facilities may communicate or transmit intelligence of their own design and choosing—they don't make individualized decisions, in particular cases, whether and on what terms to deal") (internal modifications and quotations omitted). Defendants do not provide a service that is commonly understood to be common carriage, like a consumer's cellular telephone service. A user of Defendants' services cannot pass a cellular handset to any other member of the public to allow them to

---

[5] "NARUC" refers to the National Association of Regulatory Utility Commissioners.

make a call through Defendant and express a message of their choosing. Instead, Defendant individually contracts with each entity that uses its services and takes required, technical steps to connect them to its network on terms that are tailored to attract robocallers. Plaintiffs alleged sufficient facts to show that Defendant Avid Telecom did not hold itself out indifferently to all potential users. Thus, Defendant Avid Telecom cannot pass the NARUC test.

Further, Defendant Reeves, on behalf of Defendant Avid Telecom, claimed to block all traffic to Vermont. Ex. 1 at ¶ 17. This led to a traffic decrease to area code 802 for several months in early 2022. [Dkt 1 at ¶ 187]. Effectively, Defendant Avid Telecom took steps to prevent its customers from sending intelligence of their own design and choosing.

Plaintiffs have alleged sufficient facts to show that Defendant Avid Telecom did not allow its customers to send intelligence of their own design and choosing. Thus, even if Defendant Avid Telecom were not an information-service provider, it cannot pass the NARUC test.

For the reasons stated above, Defendant Avid Telecom is not common carrier, and the Court should deny Defendants' request to dismiss.

## G.   Plaintiffs Did Not Need to Allege that Defendants Were Sellers Under the TSR in Order to Bring Claims Against Defendants Under the TSR

Defendants argue that Count I of the Complaint should be dismissed because "Defendants do not qualify as "sellers" or "telemarketers" under the TSR." [Dkt 39 at 19]. Plaintiffs never pled that Defendants were sellers or telemarketers, nor is it a requirement to establish a violation of 16 C.F.R. § 310.3(b). Plaintiffs pled that Defendants violated the TSR by providing "substantial assistance or support to sellers and telemarketers that were violating the TSR in contravention of 16 C.F.R. § 310.3(b)[,]" and that Defendants knew or consciously avoided knowing about specific violations of the TSR. [Dkt 1 at ¶ 431]. Plaintiffs have properly pled that Defendants assisted and facilitated actors that violated the TSR, which is a violation of the TSR. 16 C.F.R. § 310.3(b). The Court should disregard Defendants' argument.

### H.    Plaintiffs Properly Pled that Defendants Substantially Assisted and Facilitated Violators of the TSR

Defendants argue that Count I of the Complaint should be dismissed because Plaintiffs' claim of substantial assistance is "supported by mere conclusory allegations that Defendants provided the following services: (i) retail or wholesale voice termination; (ii) dialing software; (iii) assistance with DID rotation; (iv) DID assignment; (v) provision of leads for customers to call; and (vi) provision of 'advice.'" [Dkt 39 at 20]. Contrary to Defendants' argument, Plaintiffs' Complaint is filled with specific factual allegations that Defendants provided either substantial assistance to facilitate the TSR violations, had knowledge of the ongoing TSR violations, or both.

For example, Plaintiffs' Complaint details Defendants' interactions with two customers where Defendants provided substantial assistance and had knowledge of TSR violations (Spiller at [Dkt 1 at ¶ 304] and Sumco [*Id.* at ¶¶ 371-403]). With Spiller, Plaintiffs allege Defendants transmitted his robocalls, which were made without consent to numbers on the national Do Not Call Registry, in violation of the TSR. (¶¶ 309–14); Defendants sold Spiller thousands of DIDs (¶¶ 316-18); Defendants switched Spiller's account so that he could "run [his] traffic if the FCC shuts off [his] business" (¶¶ 337-41); and Defendants went on to hide the rightful source of Spiller's call traffic from the Industry Traceback Group (¶ 341). Further, Defendants knew what type of traffic Spiller was sending them. *Id.* at ¶ 336. Finally, Plaintiffs allege that Spiller testified in a deposition that Defendant Lansky personally helped Spiller with the content of his messages. *Id.* at ¶ 370. "The threshold for what constitutes 'substantial assistance' is low: 'there must be a connection between the assistance provided and the resulting violations of the core provisions of the TSR.'" *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10 CIV. 3551 ILG RLM, 2012 WL 1890242, at *6 (E.D.N.Y. May 23, 2012) (quoting *United States v. Dish Network, L.L.C.,* 667 F.Supp.2d 952, 961 (C.D. Ill. 2009) (substantial assistance found where defendant paid dealers to engage in telemarketing that violated TSR and allegedly knew or consciously avoided knowledge of violations)). With the Spiller example,

Plaintiffs have pled with specificity that Defendants provided Spiller with substantial assistance and that Defendants had knowledge of Spiller's TSR violations.

Plaintiffs make similar allegations for Defendants' substantial assistance to their client Sumco. [Dkt 1 at ¶¶ 371-403].

Defendants further argue "Plaintiffs' claims all arise under statute, specific facts addressing *how* and *when* Avid Telecom allegedly provided 'substantial assistance' must be pled[,]" and that "Plaintiffs cannot rest on the bare, speculative allegation that Avid Telecom violated the statute by doing more than simply acting as a carrier." [Dkt 39 at 21]. Then Defendants cite to *Trytko v. US Bank Home Mortg*., Cause No. 3:17- CV-175-JD-MGG, 2018 U.S. Dist. LEXIS 145397, at *23 (N.D. Ind. Aug. 10, 2018) (quoting *Iqbal*, 566 U.S. at 678), which has nothing to do with the TSR or with a voice service provider. Plaintiffs assume that Defendants are using the *Trytko* case as a general reframing of *Iqbal* regarding statutory arguments. Nevertheless, contrary to Defendants' assertion, Plaintiffs have done more than make a "bare, speculative allegation" that Defendants violated the law.   As explained in previous sections, Plaintiffs' Complaint has contained specific, concrete allegations of violative conduct.

Next, Defendants argue that "Plaintiffs do not present any facts that could support the conclusion that [Defendants were] aware, *before it received and transmitted a call*, that the telemarketer originating the call was engaged in any act or practice in violation of TSR." Motion 21. Defendants do not cite to any case law that requires Defendants to know that the action would violate the TSR before there could be a violation of the TSR. Regardless, Defendants did know about the traffic before it was sent, and Plaintiffs' Complaint alleges the same. *See* [Dkt 1 at ¶ 336]. Further, Plaintiffs painstakingly allege many times Defendants were put on notice that a customer was violating the TSR and/or TCPA, and that Defendants did nothing to stop these customers. [Dkt 1 at ¶¶ 100-135, 180-304, 323-330, 356-369, 386-389]. Plaintiffs have pled with specificity that Defendants either knew or consciously avoided knowing about the TSR violations.

Plaintiffs' Complaint is replete with factual allegations that support Count I. The Court should reject Defendants' arguments in Argument E, Count 1, Point 3.

### I.      Avid Telecom is Subject to the TCPA

Defendants contend that they cannot be held liable under the TCPA because Avid Telecom does not "make" or "initiate" calls. [Dkt 39 at 26].

At the time Defendant Avid Telecom receives an attempted call from its customer, an upstream voice service provider or a non-provider like a call center customer, the call has not been "made" or "initiated" in the sense that the intended recipient of the call has received the call. Rather, Defendants are one link in a chain of service providers who each play a role in connecting the call. Defendants have the ability to stop the attempted call before it connects to the called party, a potential victim. *See* [Dkt 1 at ¶¶ 237-38, 241-45].

Defendants have not, and cannot, point to anything in the text of the TCPA that says that Defendants' role in connecting telephone calls cannot be considered making or initiating the calls for purposes of liability under the TCPA.

Whether a service provider involved in transmission of potentially violative calls and faxes can be held liable under the TCPA has been addressed by the FCC and several courts. In 1992, shortly after the passage of the TCPA, the FCC considered whether entities that provide facilities that transmit calls, such as Defendant, even when they are not the service provider directly serving the calling party, faced potential liability under the statute. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, ¶54 (1992) (the "1992 Order").[6] The FCC analogized to common carriers' liability for the transmission of obscene or indecent material and ordered that absent "a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions" those providing transmission services would not be liable under the TCPA. *Id.* (citing *In the Matter of Enf't of Prohibitions Against the Use of*

---

[6] Under the Hobbs Act, 28 U.S.C. § 2342, federal district courts are without jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of FCC orders. *See TRUE HEALTH CHIROPRACTIC, INC. et al., v. MCKESSON CORPORATION, et al.,* No. 22-15710, 2023 WL 7015279, at *2 (9th Cir. Oct. 25, 2023).

*Common Carriers for the Transmission of Obscene Materials*, 2 F.C.C. Rcd. 2819 (1987)).[7] "[T]he role Defendant plays in transmitting telephone calls falls within the scope of the FCC's 1992 Order." *Off. of the Att'y Gen. v. Smartbiz Telecom LLC*, No. 1:22-CV-23945-JEM, 2023 WL 5491835, at *3 (S.D. Fla. Aug. 23, 2023).

Here, Plaintiffs have specifically alleged that Defendants received at least 329 Tracebacks constituting actual notice of the illegal use of its network, and it failed to take steps to prevent the further use of its network to route illegal calls. [Dkt 1 at ¶ 22]. These allegations of actual notice and failure to prevent further illegal transmissions are sufficient to state a claim against Defendants under the TCPA.

In *Smartbiz,* the defendant was notified over 250 times, through Tracebacks, of fraudulent calls it had transmitted, and the court stated: "Looking to the totality of the circumstances, the Defendant not only demonstrated a high involvement, but also had actual notice of transmitting fraudulent calls." *Smartbiz Telecom LLC*, 2023 WL 5491835 at *4 (citing *Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D. W. Va. Oct. 4, 2018)).

Additionally, while the TCPA does not define what it means to make or initiate telephone calls, "one can violate the TCPA either by taking the steps necessary to physically place a telephone call, or by being so involved in the placing of a specific telephone call as to be deemed to have initiated it." *Mey*, 2021 WL 8892199 at *4 (citing *Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7890 (2015) (the "2015 FCC Order"). The 2015 FCC Order instructs courts to look at "the totality of the facts and circumstances" to determine whether an entity is sufficiently involved in placing a call to be deemed to have made or initiated it and identifies several relevant factors. 2015 FCC Order at ¶ 30. Significantly, these factors include "the extent to which a person willfully enables fraudulent spoofing of telephone numbers" and knowingly allowing the use of a platform for unlawful purposes. *Id.* Courts have found that alleging

---

[7] Defendant Avid Telecom asserts that it is a common carrier, when in fact it is not a common carrier. *See Educare Ctr. Servs., Inc.*, 433 F. Supp. 3d at 1019 (Finding that VoIP service provider is not a common carrier). Regardless of labels, the role Defendant plays in transmitting telephone calls places it squarely within the scope of the FCC's 1992 Order.

the ability to stop illegal use of VoIP services, and the failure to take action to do so, states a claim under the TCPA. *See Smartbiz Telecom LLC*, 2023 WL 5491835 at *4; *Mey*, 2021 WL 8892199 at *5; *Hurley v. Messer*, No. CV 3:16-9949, 2018 WL 4854082, at *4 (S.D.W. Va. Oct. 4, 2018).

Plaintiffs have sufficiently alleged both that Defendants had actual notice of the illegal use of Avid Telecom's network and failed to take steps to prevent such transmissions and that Defendants are sufficiently involved in the illegal calls to be deemed to have initiated them. Either of these is sufficient to support Plaintiff's TCPA claims.

In their Motion, Defendants seem to argue the Plaintiffs have failed to state a claim under 47 C.F.R. § 64.1200(n)(3). [Dkt 39 at 23]. Defendants again attempt to introduce extrinsic evidence of a document they created and filed with the FCC, request that the Court take judicial notice of the accuracy and legitimacy of Defendants' Robocall Mitigation Plan, and argue Plaintiffs have not presented any evidence that Defendants failed to adhere to their plan. [Dkt 39 at 24].

For example, contrary to the litany of policies enumerated in Defendants' Robocall Mitigation Plan, Plaintiffs pled that Defendants routed calls with illegally spoofed phone numbers for the Internal Revenue Service, United States District Court of the Southern District of New York, Phoenix Police Department Headquarters, etc. [Dkt 1 at ¶ 93]. Plaintiffs also pled that Defendants did not prevent new and returning customers from using its network to originate illegal calls, despite claims in its Robocall Mitigation Plan to the contrary. [Dkt 1 at ¶¶ 109-119, 305-403, 437]. Thus, Defendants' assertion is a factual disagreement and should be saved for a motion for summary judgment and, if necessary, for trial. The Court should deny Defendants' Motion to dismiss Count II.

In their Motion, Defendants seem to argue the Plaintiffs have failed to state a claim under 47 U.S.C. § 227(b)(1)(A)(iii) and (b)(1)(B). [Dkt 39 at 26]. Defendants specifically point to allegations about line type.

As for mobile phones, Defendants seem to argue that because cellular phones are physically portable, Plaintiffs did not or could not allege that the calls Defendants initiated

went to residents of the Plaintiff states. *Id.* at 26-27. Plaintiffs pled that Defendants sent or routed 21.5 billion phone calls to USA numbers, with 7.5 billion on the National Do Not Call Registry. [Dkt 1 at ¶¶ 88, 96]. For residential lines, "[i]n the 2003 TCPA Order, the FCC concluded that a cell phone registered on the do-not-call registry is presumptively a residential phone." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022) (citing *In Re Rules and Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003). At a minimum, Plaintiffs alleged 7.5 billion telephone calls to telephone numbers on the National Do Not Call ("DNC") Registry. [Dkt 1 at ¶¶ 88].

Defendants also seem to argue the Plaintiffs have failed to state a claim under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2). [Dkt 39 at 27]. As part of their argument, Defendants' claim that Plaintiffs only allege calls made in violation of the DNC rules were sent to "honeypots." [Dkt 39 at 28, n.19]. This is a mischaracterization. Plaintiffs pled 7.5 billion calls were to telephone numbers on the National DNC registry. *See* [Dkt 1 at ¶ 88].

The Plaintiffs have pled with enough particularity that Defendants violated the TCPA. As such, the Court should deny the Defendants' Motion to Dismiss with respect to Counts II, III, and IV.

### J.     Avid Telecom is subject to the Truth in Caller ID Act

Plaintiffs' Count V alleges that Defendants violated 47 U.S.C. § 227(e), a provision of the Truth in Caller ID Act, by "knowingly causing the caller identification services of the recipients of [Defendants'] call traffic to transmit misleading or inaccurate caller identification information including spoofed or otherwise misleading and inaccurate phone numbers." [Dkt 1 at ¶ 457]. Plaintiffs support this allegation by noting that Defendants transmit calls with obviously spoofed phone numbers that transmit law enforcement, government, and corporate phone numbers. *Id.* at ¶¶ 93, 94. Plaintiffs further allege that Defendants facilitate call traffic that features clear indicia of fraudulent spoofing, such as high volumes of calls where the calling phone number matches the area code and exchange code of the recipient's number to falsely appear as a local call. *Id.* at ¶ 88. Defendants have

been alerted to the fraudulent traffic transiting Defendant Avid Telecom's network, including illegal and/or fraudulent calls with spoofed phone numbers. *Id*. at ¶¶ 97-110. Something as simple as an internet search for the most common phone numbers appearing in its traffic, or Defendants simply periodically analyzing records of its traffic, would identify many numbers transiting Defendant Avid Telecom's network that were being illegally spoofed by its provider and non-provider customers. Indeed, there can be no question that Defendants are well aware that they routinely transmitted calls with illegally spoofed phone numbers. *Id*. at ¶¶ 111, 180, 184, 233, 235, 288, 290, 292, 294, 367.

Rather, Defendants argue that Avid Telecom does not have the "the opportunity or technological ability to engage illegal spoofing technology" to alter caller identification information, and that "[a]ll numbers used by customer (sic) sending traffic to Avid Telecom are owned by that customer, and each number used by the customer to initiate an outbound call number is selected by that customer." [Dkt 39 at 29]. Defendants further opine that "Avid Telecom has neither the opportunity nor ability to alter or spoof the originating number." *Id.*

As an initial matter, again, this claim is based on unsupported evidence that is outside the pleading. *See Hal Roach Studios, Inc.*, 896 F.2d at 1555 n.19. Therefore, it is inappropriate to consider in a motion to dismiss.

Second, the regulations enabling 47 U.S.C. § 227(e), as well as relevant case law, show that Count V is alleged properly. The statute's enabling regulation provides: "No person or entity in the United States . . . shall, with the intent to defraud, cause harm, or wrongfully obtain anything of value, ***knowingly cause***, directly, ***or indirectly***, any caller identification service to transmit or display misleading or inaccurate caller identification information in connection with any voice service or text messaging service." 47 C.F.R. § 64.1604 (emphases added). This regulation clearly specifies that any entity that knowingly causes caller identification services to transmit or display misleading information, even if they do so indirectly, violates the statute.

1    Similarly, case law shows that liability accrues when the entity causing the

2    transmission of misleading caller identification information did so knowingly. *United*

3    *States v. Rhodes*, No. CV 21-110-M-DLC-KLD, 2022 WL 2466796, at *7 (D. Mont. Apr.

4    1, 2022), *report and recommendation adopted*, No. CV 21-110-M-DLC, 2022 WL

5    17484847 (D. Mont. Dec. 7, 2022) ("The United States has thus alleged facts

6    demonstrating that Rhodes ***knowingly caused*** a caller identification service to transmit

7    misleading or inaccurate caller ID information in connection with a voice service.")

8    (emphasis added). Defendants' Motion should be denied as to Count V.

9                    **K.    Plaintiffs Have Properly Pled the State Claims**

10    Plaintiffs are uncertain as to whether Defendants are attempting to bring forward

11    a subject matter jurisdiction argument or a failure to state a claim argument, with

12    respect to Counts VI-XXIII. [Dkt 39 at 29]. Defendants claim that Plaintiffs have not

13    properly pled that some or all of the calls were sent to cell phones in each of the states

14    that are bringing state claims. *Id.* Defendants offer no citations as to how or why the

15    Court could dismiss these claims based on the fact people might use their cell phones

16    outside of their home state.

17    Regardless, the Complaint is pled with enough particularity regarding the

18    number of calls Defendants transmitted to each state. *See* [Dkt 1 at ¶¶ 86-89]. As such,

19    Defendants' request to dismiss Count VI-XXIII should be denied.

20    **L.    Plaintiffs' State Law Claims Predicated on the TCPA and other Federal**

21                                        **Regulations**

22    For the reasons stated above, Plaintiffs have properly pled violations of the TSR

23    and TCPA, and thus, these state claims should not be dismissed. Defendants' request

24    to dismiss Counts VI through XXIII should be denied.

25                    **M.    Indiana, Nevada, and New York Auto Dialer Arguments.**

26    For the Plaintiff State of Indiana, Defendants' argument regarding "Auto-dialer

27    Acts" should be denied because Plaintiff State of Indiana did not allege Defendants

28    violated Ind. Code 24-5-14. [Dkt 39 at 31]. Plaintiff State of Indiana alleged

33

Defendants violated "Ind. Code § 24-4.7-4-7(e) by providing substantial assistance to a telephone solicitor, supplier, or caller." [Dkt 1 at 489]. More specifically, Plaintiff State of Indiana alleged Defendants assisted and facilitated in the calling of Hoosiers on the Indiana Do Not Call List in violation of Ind. Code 24-4.7-4. [Dkt 1 at 490]. Defendants' Motion should be denied as to Count VII.

Plaintiff State of New York alleges that Defendants violated N.Y. General Business Law ("GBL") § 399-p, which governs the use of automatic dialing-announcing devices (auto-dialers). Defendants contend that they did not violate section 399-p because they never operated auto-dialers themselves. But section 399-p also prohibits "plac[ing] any consumer telephone call, except in accordance with the provisions of this section." GBL § 399-p(2). It applies not only to operators themselves but also to anyone "acting as an … agent … of a person operating" auto-dialers. Id. Defendants placed consumer telephone calls by auto-dialers and acted as agents of the entities that operated auto-dialers. [Dkt 1 at ¶ 550]. Defendants' Motion should be denied as to Count XIV.

Defendants' arguments that the Nevada-specific claims should be dismissed fail for multiple reasons. First, Defendants do not cite any legal authority as grounds for dismissal of the Nevada claims in the Complaint.

Second, Defendants' assertion that they have never owned or used automated dialing equipment and therefore the Nevada-specific claims must be dismissed is a question of fact in dispute. Not only is Defendants' assertion regarding automated dialing equipment in dispute, but to argue dismissal of a claim on the grounds of a fact in dispute is improper in a motion to dismiss.   When considering a FRCP 12(b)(6), a court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief. Not only does Plaintiff State of Nevada believe Defendants' assertion to be patently false, but no evidence has been presented or investigation undertaken to test the veracity of Defendants' claim – as would be premature to do at this juncture.

1  Third, Defendants' Motion to Dismiss as to Count XI also fails because Nevada has
2  pled sufficient facts, thereby satisfying the operative pleading standard. *Clemens v.*
3  *Daimler Chrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) (*quoting Twombly, 550 U.S.*
4  *at 555)*; *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

5  Here, Plaintiffs pled, among other assertions, that Defendants "provided substantial
6  support and assisted sellers and telemarketers engaged in illegal robocalling in many ways,
7  but not limited to (a) ***making*** and/or routing their customers' and robocallers' illegal calls
8  to consumers in the Plaintiffs' respective jurisdictions…(d) ***providing customers with the***
9  ***telephone numbers*** (DIDs or Caller IDs) used to make illegal calls to consumers in the
10 Plaintiffs' respective jurisdictions…[and] (e) **providing customers with leads and/or**
11 **data** used by their customers to make illegal calls to consumers in the Plaintiffs' respective
12 jurisdictions. *See* [Dkt 1 at 46]. (Emphasis Added.) This assertion of claims and facts
13 satisfies the notice pleading standard necessary to survive a motion to dismiss. As such,
14 Plaintiff State of Nevada has pled sufficient facts to demonstrate a claim for relief. For
15 these reasons, Defendants' arguments to dismiss the Nevada-specific claims are both
16 procedural and substantively deficient. As such, a request for dismissal must be denied.

17                                          **CONCLUSION**
18       For the reasons articulated above, Plaintiffs respectfully request the Court to
19 deny Defendants' Motion to Dismiss.
20
21       RESPECTFULLY SUBMITTED DATED this 6th day of November, 2023.
22
23
24
25
26
27
28

1

**FOR THE STATE OF ARIZONA:**

2

3

KRISTIN K. MAYES
Attorney General for the State of
Arizona

4

5

  */s/ Alyse Meislik*

6

ALYSE MEISLIK
DYLAN JONES

7

Assistant Attorneys General
*Attorneys for the State of Arizona*

8

9

10

**FOR THE STATE OF INDIANA:**

11

TODD ROKITA
Attorney General for the State of Indiana

12

13

14

  */s/ Joseph Yeoman*

DOUGLAS S. SWETNAM

15

JOSEPH D. YEOMAN
Deputy Attorneys General

16

*Attorneys for the State of Indiana*

17

18

19

20

21

22

23

24

25

26

27

28

**FOR THE STATE OF NORTH CAROLINA:**

JOSHUA H. STEIN
Attorney General for the State of North
Carolina


  */s/ Tracy Nayer*

TRACY NAYER
ASA C. EDWARDS IV
Special Deputy Attorneys General
DANIELLE WILBURN ALLEN
Assistant Attorney General
*Attorneys for the State of North Carolina*


**FOR THE STATE OF OHIO:**

DAVE YOST
Attorney General for the State of Ohio


  */s/ Erin Leahy*

ERIN B. LEAHY
Senior Assistant Attorney General
*Attorney for the State of Ohio*


*Lead Counsel for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on November 6, 2023, I caused the foregoing, PLAINTIFFS'

3  RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS to be filed

4  and served electronically via the Court's CM/ECF system upon counsel of record.

5

6                                         */s/ Joseph D. Yeoman*

7                                          Joseph D. Yeoman

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## LIST OF PLAINTIFFS' COUNSEL

Alyse Meislik (AZ Bar No. 024052)
Dylan Jones (AZ Bar No. 034185)
Assistant Attorneys General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax:     (602) 542-4377
consumer@azag.gov
alyse.meislik@azag.gov
*Attorneys for Plaintiff State of Arizona*

Douglas S. Swetnam (IN Bar No. 15860-49)
Joseph D. Yeoman (IN Bar No. 35668-29)
Deputy Attorneys General
Office of the Indiana Attorney
General Todd Rokita
Indiana Govt. Center South, 5th Fl.
302 W. Washington St.
Indianapolis, IN 46204-2770
Phone: (317) 232-6294 (Swetnam)
            (317) 234-1912 (Yeoman)
Fax:     (317) 232-7979
douglas.swetnam@atg.in.gov
joseph.yeoman@atg.in.gov
*Attorneys for Plaintiff State of Indiana*

Tracy Nayer (NC Bar No. 36964)
Asa C. Edwards IV (NC Bar No. 46000)
Special Deputy Attorneys General
Danielle Wilburn Allen (NC Bar No. 58141)
Assistant Attorney General
North Carolina Department of Justice
Consumer Protection Division
P.O. Box 629
Raleigh, North Carolina 27602
Phone: (919) 716-6000
Fax:     (919) 716-6050
tnayer@ncdoj.gov
aedwards@ncdoj.gov
dwilburnallen@ncdoj.gov
*Attorneys for Plaintiff State of North Carolina*

Erin B. Leahy (OH Bar No. 0069509)
Senior Assistant Attorney General
Office of Attorney General Dave Yost
30 East Broad Street, 14th Fl.
Columbus, OH 43215
Phone: (614) 752-4730
Fax:     (866) 768-2648
Erin.Leahy@OhioAGO.gov
*Attorney for Plaintiff State of Ohio*

***Lead Counsel for Plaintiffs***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lindsay D. Barton (AL Bar No. 1165-G00N)
Robert D. Tambling (AL Bar No. 6026-N67R)
Assistant Attorneys General
Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, Alabama 36130
Phone: (334) 353-2609 (Dawson)
       (334) 242-7445 (Tambling)
Fax:   (334) 353-8400
Lindsay.Barton@AlabamaAG.gov
Robert.Tambling@AlabamaAG.gov
*Attorneys for Plaintiff State of Alabama*

Amanda Wentz (AR Bar No. 2021066)
Assistant Attorney General
Office of Attorney General Tim Griffin
323 Center St., Ste. 200
Little Rock, AR 72201
Phone: (501) 682-1178
Fax:   (501) 682-8118
Amanda.wentz@arkansasag.gov
*Attorney for Plaintiff State of Arkansas*

Nicklas A. Akers (CA Bar No. 211222)
Senior Assistant Attorney General
Bernard A. Eskandari (CA Bar No. 244395)
Supervising Deputy Attorney General
Timothy D. Lundgren (CA Bar No. 254596)
Rosailda Perez (CA Bar No. 284646)
Deputy Attorneys General
Office of the California Attorney General
300 S. Spring St., Suite 1702
Los Angeles, CA 90013
Phone: (415) 510-3364 (Akers)
      (213) 269-6348 (Eskandari)
      (213) 269-6355 (Lundgren)
      (213) 269-6612 (Perez)
Fax:   (916) 731-2146
nicklas.akers@doj.ca.gov
bernard.eskandari@doj.ca.gov
timothy.lundgren@doj.ca.gov
rosailda.perez@doj.ca.gov
*Attorneys for Plaintiff People of the*
*State of California*

Michel Singer Nelson (CO Bar No. 19779)
Assistant Attorney General II
Bianca Feierstein (CO Bar No. 56653)
Assistant Attorney General
Colorado Office of the Attorney General
Ralph L. Carr Judicial Building
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6220 (Singer Nelson)
      (720) 508-6246 (Feierstein)
michel.singernelson@coag.gov
bianca.feierstein@coag.gov
*Attorneys for Plaintiff State of Colorado,*
*ex rel. Philip J. Weiser, Attorney General*

Brendan Flynn (Fed. Bar No. ct04545,
CT Bar No. 419935)
Assistant Attorney General
Office of the Connecticut Attorney General
William Tong
165 Capitol Avenue, Suite 4000
Hartford, CT 06106
Phone: (860) 808-5400
Fax:   (860) 808-5593
brendan.flynn@ct.gov
*Attorney for Plaintiff State of Connecticut*

Ryan Costa (DE Bar No. 5325)
Dashiell Radosti (DE Bar No. 7100)
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8811 (Costa)
        (302) 683-8812 (Radosti)
Fax:   (302) 577-6499
Ryan.costa@delaware.gov
Dashiell.radosti@delware.gov
*Attorneys for Plaintiff State of Delaware*

Adam Teitelbaum (DC Bar No. 1015715)
Director, Office of Consumer Protection
Assistant Attorney General
D.C. Office of the Attorney General
Office of Consumer Protection
400 6th Street NW, 10th Floor
Washington, DC 20001
Phone: (202) 741-0764
Adam.Teitelbaum@dc.gov
*Attorney for Plaintiff District of Columbia*

Patrick Crotty (FL Bar No. 108541)
Senior Assistant Attorney General
Miles Vaughn (FL Bar No. 1032235)
Assistant Attorney General
Office of the Florida Attorney General
Consumer Protection Division
3507 E. Frontage Rd, Suite 325
Tampa, FL 33607
Phone: (813) 287-7950
Fax:    (813) 281-5515
patrick.crotty@myfloridalegal.com
miles.vaughn@myfloridalegal.com
*Attorneys for Plaintiff Ashley Moody,*
*Attorney General of the State of Florida*

David A. Zisook (GA Bar No. 310104)
Senior Assistant Attorney General
Office of the Attorney General of the State
of Georgia
2 Martin Luther King Jr. Drive, SE, Ste. 356
Atlanta, GA 30334
Phone: (404) 458-4294
Fax:    (404) 464-8212
dzisook@law.ga.gov
*Attorney for Plaintiff State of Georgia*

Christopher J.I. Leong (HI Bar No. 9662)
Deputy Attorney General
Hawaii Department of the Attorney General
425 Queen Street
Honolulu, HI 96813
Phone: (808) 586-1180
Fax:    (808) 586-1205
christopher.ji.leong@hawaii.gov
*Attorney for Plaintiff State of Hawaii*

Stephanie N. Guyon (ID Bar No. 5989)
Deputy Attorney General
Idaho Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
Phone: (208) 334-4135
Fax:     (208) 334-4151
stephanie.guyon@ag.idaho.gov
*Attorney for Plaintiff State of Idaho*

Philip Heimlich (IL Bar No. 6286375)
Assistant Attorney General
Elizabeth Blackston (IL Bar No. 6228859)
Consumer Fraud Bureau Chief
Office of the Illinois Attorney General
500 S. Second Street
Springfield, IL 62791
Phone: (217) 782-4436
philip.heimlich@ilag.gov
elizabeth.blackston@ilag.gov
*Attorneys for Plaintiff People of the*
*State of Illinois*

Benjamin Bellus (IA Bar No. AT0000688)
William Pearson (IA Bar No. AT0012070)
Assistant Attorneys General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Phone: (515) 242-6536 (Bellus)
            (515) 242-6773 (Pearson)
Fax:     (515) 281-6771
Benjamin.Bellus@ag.iowa.gov
William.Pearson@ag.iowa.gov
*Attorneys for Plaintiff State of Iowa*

Sarah M. Dietz (KS Bar No. 27457)
Assistant Attorney General
Office of the Kansas Attorney General
120 SW 10th Avenue
Topeka, KS 66612
Phone: (785) 296-3751
Fax:     (785) 291-3699
sarah.dietz@ag.ks.gov
*Attorney for Plaintiff State of Kansas*

Donald J. Haas (KY Bar No. 94090)
Assistant Attorney General
Office of the Attorney General,
Commonwealth of Kentucky
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Phone: (502) 696-5612
Fax:     (502) 573-8317
donald.haas@ky.gov
*Attorney for Plaintiff Commonwealth of*
*Kentucky*

Cathryn E. Gits (LA Bar No. 35144)
Assistant Attorney General
Office of the Attorney General Jeff Landry
1885 North Third St.
Baton Rouge, LA 70802
Phone: (225) 326-6414
Fax:     (225) 326-6499
gitsc@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

Laura Lee Barry Womack (ME Bar No.
010110)
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
Phone: (207) 626-8800
Lauralee.barrywommack@maine.gov
*Attorney for Plaintiff Aaron M. Frey,*
*Attorney General*

41

Philip Ziperman (Fed. Bar No. 12430)
Deputy Counsel
Kathleen P. Hyland (Fed. Bar No. 30075)
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Ziperman)
           (410) 576-7057 (Hyland)
Fax:    (410) 576-6566
pziperman@oag.state.md.us
khyland@oag.state.md.us
*Attorneys for Plaintiff Maryland Office of
the Attorney General*

Elizabeth Cho (MA Bar No. 672556)
Assistant Attorney General
Massachusetts Office of the Attorney
General
One Ashburton Place, 18th Floor
Boston, MA 02108
Phone: (617) 963-2608
Fax:    (617)727-5765
Elizabeth.Cho@mass.gov
*Attorney for Plaintiff Commonwealth of
Massachusetts*

Kathy P. Fitzgerald (MI Bar No. P31454)
Michael S. Hill (MI Bar No. P73084)
Assistant Attorneys General
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
Phone: (517) 335-7632
Fax:    (517) 335-6755
fitzgeraldk@michigan.gov
Hillm19@michigan.gov
*Attorneys for Plaintiff People of the State of
Michigan*

Bennett Hartz (MN Bar No. 0393136)
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
Saint Paul, MN 55404
Phone: (651) 757-1235
bennett.hartz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota,
by its Attorney General, Keith Ellison*

James M. Rankin (MS Bar No. 102332)
Special Assistant Attorney General
Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205
Phone: (602) 359-4258
james.rankin@ago.ms.gov
*Attorney for Plaintiff Lynn Fitch,
Attorney General State of Mississippi*

Michael Schwalbert (MO Bar No. 63299)
Assistant Attorney General
Office of the Missouri Attorney General
815 Olive Street, Suite 200
St. Louis, MO 63101
Phone: (314) 340-6816
Fax:    (314) 340-7891
michael.schwalbert@ago.mo.gov
*Attorney for Plaintiff State of Missouri,
ex. rel. Andrew Bailey, Attorney General*

Anna Schneider (MT Bar No. 13963)
Bureau Chief
Andrew Butler (MT Bar No. 53936812)
Assistant Attorney General
Montana Attorney General's Office
Office of Consumer Protection
555 Fuller Avenue
Helena, MT 59601
Phone: (406)444-4500
Anna.schneider@mt.gov
Andrew.butler@mt.gov
*Attorneys for Plaintiff State of Montana*

Michaela J. Hohwieler (NE Bar No. 26826)
Assistant Attorney General
Office of the Attorney General Michael T. Hilgers
2115 State Capitol Building
Consumer Protection Division
Lincoln, NE 68509
Phone: (402) 471-1928
Fax:     (402) 471-4725
Michaela.hohwieler@nebraska.gov
*Attorney for Plaintiff State of Nebraska*

Deepta Janardhan (NJ Bar No. 309022020)
Jeffrey Koziar (NJ Bar No. 015131999)
Deputy Attorneys General
New Jersey Office of the Attorney General
Division of Law
124 Halsey Street
Newark, NJ 07101
Phone: (973) 648-7819
Fax:     (973) 648-4887
Jeff.koziar@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

Michelle C. Newman (NV Bar No. 13206)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 North Carson Street
Carson City, NV 89701-4717
Phone: (775) 684-1164
Fax:     (775) 684-1299
MNewman@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

Jacqueline Ortiz (NM Bar No. 146309)
Assistant Attorney General
State of New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, New Mexico 87501
Phone: (505)490-4060
Fax:     (505) 490-4883
Jortiz@nmag.gov
*Attorney for Plaintiff Raúl Torrez,
New Mexico Attorney General*

Mary F. Stewart (NH Bar No. 10067)
Assistant Attorney General
New Hampshire Department of Justice
Office of the Attorney General
Consumer Protection and Antitrust Bureau
33 Capitol St.
Concord, NH 03301-6397
Phone: (603) 271-1139
Fax:     (603) 271-2110
Mary.F.Stewart@doj.nh.gov
*Attorney for Plaintiff State of New Hampshire*

Glenna Goldis (NY Bar No. 4868600)
Assistant Attorney General
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (646) 856-3697
Glenna.goldis@ag.ny.gov
*Attorney for Plaintiff Office of the Attorney General of the State of New York*

Parrell D. Grossman (ND Bar No. 04684)
Director, Consumer Protection & Antitrust Division
Elin S. Alm (ND Bar No. 05924)
Christopher G. Lindblad (ND Bar No. 06480)
Assistant Attorneys General
Office of North Dakota Attorney General
Consumer Protection & Antitrust Division
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
Phone: (701) 328-5570
Fax:     (701) 328-5568
pgrossman@nd.gov
ealm@nd.gov
clindblad@nd.gov
*Attorneys for Plaintiff State of North Dakota*

Caleb J. Smith (OK Bar No. 33613)
Assistant Attorney General
Office of the Oklahoma Attorney General
6 West 15th Street, Suite 1000
Tulsa, OK 74119
Phone: (918) 581-2230
Fax:     (405) 522-0085
Caleb.Smith@oag.ok.gov
*Attorney for Plaintiff State of Oklahoma
ex rel. Attorney General Gentner
Drummond*

Jordan M. Roberts (OR Bar No. 115010)
Senior Assistant Attorney General
Oregon Department of Justice
Consumer Protection Division
100 SW Market St.
Portland, OR 97201
Phone: (971) 673-1880
Fax:     (971) 673-1884
jordan.m.roberts@doj.state.or.us
*Attorney for Plaintiff State of Oregon*

Brandon J. Bingle (PA Bar No. 209133)
Senior Deputy Attorney General
Office of Attorney General
Michelle A. Henry
Strawberry Square, 15th Floor
Harrisburg, PA 17120-0001
Phone: (814) 878-5858
Fax:     (717) 705-3795
bbingle@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of
Pennsylvania by Attorney General
Michelle A. Henry*

Stephen N. Provazza (RI Bar No. 10435)
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 S. Main Street
Providence, RI 02903
Phone: (401) 274-4400, ext. 2476
Fax:     (401) 222-1766
sprovazza@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island,
by Attorney General Peter Neronha*

Kristin Simons (SC Bar No. 74004)
Senior Assistant Attorney General
Danielle Robertson (SC Bar No. 105846)
Assistant Attorney General
South Carolina Attorney General's Office
P.O. Box 11549
Columbia, SC 29211-1549
Phone: (803) 734-6134 (Simons)
             (803) 734-8044 (Robertson)
ksimmons@scag.gov
danirobertson@scag.gov
*Attorneys for Plaintiff State of
South Carolina*

Austin C. Ostiguy (TN Bar No. 040301)
Tyler T. Corcoran (TN Bar No. 038887)
Assistant Attorneys General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
Phone: (615) 532-7271 (Ostiguy)
        (615) 770-1714 (Corcoran)
Fax:    (615) 532-2910
austin.ostiguy@ag.tn.gov
tyler.corcoran@ag.tn.gov
*Attorneys for Plaintiff State of Tennessee*

David Shatto (Fed. Bar No. 3725697; TX
Bar No. 24104114)
Assistant Attorney General
Attorney General for the State of Texas
Office of the Attorney General
P.O. Box 12548 (MC-010)
Austin, TX 78711
Phone: (512) 463-2185
Fax:    (512) 370-9125
David.Shatto@oag.texas.gov
*Attorney for Plaintiff State of Texas*

Kevin McLean (UT Bar No. 16101)
Assistant Attorney General
Utah Attorney General's Office
160 East 300 South, 5th Floor
P.O. Box 140872
Salt Lake City, UT 84114-0872
Phone: (801) 366-0310
Fax:    (801) 366-0315
kmclean@agutah.gov
*Attorney for Plaintiff Utah Division of
Consumer Protection*

Edwin L. Hobson (VT Bar No. 637)
Senior Assistant Attorney General
Office of the Attorney General
Consumer Assistance Program
109 State Street
Montpelier, VT 05609-1001
Phone: (802) 863-2000 (Hobson)
        (802) 828-3171 (Main office)
Fax:    (802) 304-1014
ted.hobson@vermont.gov
*Attorney for Plaintiff State of Vermont*

Geoffrey L. Ward (VA Bar No. 89818)
Senior Assistant Attorney General
Office of the Attorney General of Virginia
202 N. Ninth St.
Richmond, VA 23219
Phone: (804) 371-0871
Fax:    (804) 786-0122
gward@oag.state.va.us
*Attorney for Plaintiff Commonwealth
of Virginia, ex rel. Jason S. Miyares,
Attorney General*

Mina Shahin (WA Bar No. 46661)
Alexandra Kory (WA Bar No. 49889)
Assistant Attorneys General
Washington State Attorney General's Office
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Phone: (206) 326-5485 (Shahin)
        (206) 516-2997 (Kory)
Fax:    (206) 464-6451
Mina.Shahin@atg.wa.gov
Alexandra.Kory@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

Ashley T. Wentz (WV Bar No. 13486)
Assistant Attorney General
West Virginia Attorney General's Office
Consumer Protection/Antitrust Division
P.O. Box 1789
Charleston, WV 25326
Phone: (304) 558-8986
Fax:    (304) 558-0184
Ashley.T.Wentz@wvago.gov
*Attorney for Plaintiff State of West Virginia*
*ex rel. Patrick Morrisey, Attorney General*

Gregory A. Myszkowski (WI Bar No.
1050022)
Assistant Attorney General
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707-7857
Phone: (608) 266-7656
Fax:    (608) 294-2907
myszkowskiga@doj.state.wi.us
*Attorney for Plaintiff State of Wisconsin*

Benjamin M. Peterson (WY Bar No.
8-6513)
Assistant Attorney General
Wyoming Office of the Attorney General
Kendrick Building
2320 Capitol Avenue
Cheyenne, Wyoming 82002
Phone: (307) 777-8240
Fax:    (307) 777-3435
benjamin.peterson2@wyo.gov
*Attorney for Plaintiff State of Wyoming*