UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| STATE OF INDIANA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:21-cv-00150-RLY-MPB |
| | ) |
| STARTEL COMMUNICATION LLC, | ) |
| WANDA HALL, | ) |
| ABHIJIT CHOWDHURY, and | ) |
| RAPID EAGLE, INC. | ) |
|    d/b/a VOIP ESSENTIAL, INC., | ) |
| | ) |
| Defendants. | ) |

**ENTRY DENYING DEFENDANT RAPID EAGLE'S MOTION TO DISMISS**

Plaintiff, State of Indiana, sues Defendants, Startel, Wanda Hall, Abhijit Chowdhury, and Rapid Eagle, Inc. d/b/a VoIP Essential, Inc., alleging violations of the Federal Trade Commission's ("FTC") telemarketing sales rules and Indiana telephone privacy laws. Indiana also maintains claims under the Telephone Consumer Protection Act against Startel, Hall, and Chowdhury. VoIP Essential moves to dismiss the claims based on the federal telemarketing sales rules (Counts I–V) and on the Indiana telephone privacy laws (Count XI–XII) under Federal Rule of Civil Procedure 12(b)(6). In its view, it is a common carrier that is immune from suit under the FTC's telemarketing sales rules. VoIP Essential further submits that the complaint insufficiently pleads violations of the Indiana telephone privacy laws because VoIP Essential falls into the narrow communications service provider immunity. However, the court disagrees with VoIP

1

Essential for the reasons set forth below and **DENIES** the motion to dismiss for failure to state a claim.

I.  **Factual Background**

VoIP Essential, a company that provides voice over internet protocol services, entered into a contract with Defendant, Startel, to serve as Startel's intermediate carrier. (Filing No. 1, Complaint ¶¶ 57, 455). Pursuant to that contract, Startel routed 222,251,133 calls through VoIP Essential over the span of approximately a year. (*Id.* ¶ 466). Around 1.2 million of those calls were sent to Indiana area codes. (*Id.* ¶ 472). Of those calls, 424,157 calls were made to Hoosier numbers on the federal do-not-call list and 402,824 were made to Hoosier numbers on the Indiana do-not-call list. (*Id.* ¶ 473). A number of these calls were from sellers or telemarketers who engaged in deceptive, unfair, or abusive practices in violation of the telemarketing sales rules. (*Id.* ¶¶ 600, 609, 618, 626, 634). Indiana alleges VoIP Essential substantially supported these unlawful calls by routing them to Indiana area codes even though it knew or consciously avoided knowing that the calls were unlawful. (*Id.* ¶¶ 573, 575, 598, 600, 607, 609, 615–16, 624–25, 632–33). Despite operating in Indiana, VoIP had not applied for or been granted a certificate of territorial authority by the Indiana Utility Regulatory Commission. (*Id.* ¶¶ 202, 203).

The State of Indiana brought suit alleging that VoIP Essential violated the telemarketing sales rules, (*id.* ¶¶ 593–634), the Indiana Telephone Solicitation of Consumers Act, (*id.* ¶¶ 640–56), and the Indiana Regulation of Automatic Machines

Dialing Act, (*id.* ¶¶ 657–70), by substantially supporting the unlawful calls routed to Indiana area codes.  VoIP Essential moved to dismiss the claims against it.

II.     **Legal Standard**

A Rule 12(b)(6) motion "test[s] the legal sufficiency of the complaint" rather than "the merits of the lawsuit."  *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  To test the sufficiency of the complaint, a 12(b)(6) motion demands that the court accept all non-conclusory facts in the complaint as true and draw all reasonable inferences for the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

A court may only grant a 12(b)(6) motion to dismiss where the complaint lacks "enough facts to state a claim to relief that is plausible on its face" such that the claims have not been "nudged . . . across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility exists where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

III.    **Discussion**

    A.     **Federal Law Claims**

VoIP Essential's primary contention is that it cannot be liable for allegedly providing substantial assistance to sellers and telemarketers who engaged in deceptive and unfair telemarketing practices under the FTC's telemarketing sales rules because it is an exempt common carrier under 15 U.S.C. § 45(a)(2).  The court disagrees.

3

Section 45(a)(2) directs the FTC to make rules to prevent "unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices." 15 U.S.C. § 45(a)(2). That empowered the FTC to create the telemarketing sales rules which in turn allow state Attorneys General—like Indiana's Attorney General here—to sue for violations. *See* 16 C.F.R. § 310.1–310.7. 15 U.S.C. § 45(a)(2), and by extension the telemarketing sales rules, applies these rules to "persons, partnerships, or corporations" but excludes "common carriers subject to the Acts to regulate commerce." *Id.*; s*ee also* 60 Fed. Reg. 43843 n.10 (Aug. 23, 1995) (explaining telemarketing sales rules "do[] not apply to any activity excluded from the [FTC's] jurisdiction."). The issue here is whether VoIP Essential is a "common carrier subject to the Acts to regulate commerce" and thereby exempt from the telemarketing sales rules. In short, the answer is no.

This issue is one of statutory interpretation. That analysis "begins with the text." *Ross v. Black*, 578 U.S. 632, 638 (2016). Courts interpret statutory terms "in accordance with their ordinary meaning" unless the term has been "otherwise defined." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). It will not do, however, to focus solely on one provision of the statutory code because "a fair reading of legislation demands a fair understanding of the legislative plan." *King v. Burwell*, 576 U.S. 473, 498 (2015). That requires looking at the broader structure of the regulatory scheme as "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989).

Beginning with the statute's text, § 45(a)(2) only exempts common carriers "subject to the Acts to regulate commerce." 15 U.S.C. § 45(a)(2). The referenced "Acts"

4

in § 45(a)(2) are "the Communications Act of 1934 and all Acts amendatory thereof and supplementary thereto."[1] 15 U.S.C. § 44. Put differently, the entity must be subject to regulation by the FCC as a common carrier to be exempt from the FTC's telemarketing sales rules that Indiana bases its suit on.

Congress cabined the FCC's ability to regulate common carriers by dividing the FCC's authority into two statutory classifications. *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 975–76 (2005). In *Brand X*, the Court explained that the Communications Act of 1934, as amended by the Telecommunications Act of 1996, "regulates telecommunications carriers, but not information-service providers, as common carriers."[2] *Id.* at 975. Even though the FCC can impose regulations on information-service providers through its "Title I ancillary jurisdiction," information-service providers are not subject to "mandatory common-carrier regulation" under Title II by the FCC. *Id.* at 976. That means that to be a "common carrier subject to the Acts to regulate commerce," 15 U.S.C. § 45, the entity needs to be a telecommunications carrier regulated under Title II and not an information-service provider regulated under Title I.

A telecommunications carrier is "any provider of telecommunications services." 47 U.S.C. § 153(51). Telecommunications, in turn, means the provider transmits

---

[1] It also includes entities regulated under Title 49—which regulates transportation—though that is not applicable here.
[2] The FCC considers whether an entity is a telecommunications service or information service to be a "mutually exclusive determination." *Communications Assistance for L. Enf't Act and Broadband Access and Services*, 20 F.C.C.R. 14989, 14996 (F.C.C. 2005). That interpretation is entitled to deference, *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 643 (2013), and has not been challenged by either party. Regardless, the antithetical definitions of telecommunications services and information-services confirms the FCC's interpretation. *Compare* 47 U.S.C. § 153(50) (telecommunications) *with id.* § 153(24) (information-service).

5

"information of the user's choosing, without change in the form or content of the information as sent and received." *Id.* § 153(50). Information-service providers, meanwhile, are providers that offer "capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications . . . but does not include any use of any such capability for the management, control, or operation of a telecommunications system." *Id.* § 153(24). The lodestar for this statutory distinction is whether the provider can change the form or content of the information sent and received. If the provider has the capability to change form or content, the provider can transform communications and is acting as an information-service provider; the opposite is true if the provider cannot change form or content.

Indiana alleges VoIP Essential could change the form or content of the communications it carried. In its brief, Indiana explains that the transforming of information from one type to another through a process called protocol conversion is "a defining attribute of VoIP telephony" and part of VoIP Essential's capabilities.[3] (Filing No. 24, Pl.'s Br. at 7–9). In other words, Indiana alleges that "VoIP calls placed through Startel and VoIP Essential would have been transformed before a traditional user could receive them." (*Id.* at 9). Assuming that fact as true, the reasonable inference is that

---

[3] Plaintiffs may "elaborate on [their] factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see also Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("[A] plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint.").

6

VoIP Essential is acting as an information-service provider not a telecommunications service provider. The court holds that the activities alleged by Indiana would make VoIP Essential an information-service provider that is not exempt from the FTC's telemarketing sales rules.

This conclusion accords with multiple persuasive authorities. A wealth of federal courts also concluded that VoIP providers are information-service providers rather than telecommunications service providers. The Eighth Circuit held that "VoIP technology . . . is an 'information service.'" *Charter Advanced Services (MN), LLC v. Lange*, 903 F.3d 715, 719 (8th Cir. 2018). Similarly, other courts have concluded that a VoIP provider, Vonage, "is an information service provider," *Vonage Holdings Corp. v. Minn. Pub. Utils. Comm'n*, 290 F. Supp. 2d 993, 994 (D. Minn. 2003), and that "IP–PTSN is computer-to-phone VoIP" and "constitutes an information service." *Sw. Bell Tel., L.P. v. Mo. Pub. Serv. Comm'n*, 461 F. Supp. 2d 1055, 1083 (E.D. Mo. 2006); s*ee also FTC v. Educare Ctr. Servs., Inc.*, 433 F. Supp. 3d 1008, 1018–20 (W.D. Tex. 2020) (holding VoIP provider did not fall under common-carrier exception because it was an information service). While most addressed the status of VoIP providers in contexts different from the one here, the consequence of being an information-service provider is clear: information-service providers are not "common carriers subject to Acts to regulate commerce" and are not above FTC regulation. 15 U.S.C. § 45(a)(2).

VoIP Essential's primary argument is that, in determining whether it is a common carrier, the court should apply the two-part test articulation in *Nat'l Ass'n of Regulatory Util. Comm'rs v. FCC*, 525 F.2d 630, 640–42 (D.C. Cir. 1976) ("*NARUC I*") instead of

7

looking at the Telecommunications Act's distinction between information-service providers and telecommunications providers. In its view, whether an entity is a "common carrier under 15 U.S.C. § 45(a)(2) is properly defined by reference to the common law of carriers and not to the Communications Act." *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 57 (2d Cir. 2006) (explaining the common law *NARUC* test applies to determine whether an entity is a common carrier). This misses the forest for the trees. All the *NARUC* test does is define the term "common carrier" in § 45(a)(2). *Id.* at 58 (citing *Nat'l Ass'n of Regul. Util. Comm'rs v. FCC*, 533 F.2d 601, 608–09 (D.C. Cir. 1976) (*"NARUC II"*)). The test does not speak to whether that entity is "subject to Acts to regulate commerce," which is the issue here. 15 U.S.C. § 45(a)(2)

Far from conflicting with the court's holding, *Verity Int'l* reinforces the court's conclusion. The *Verity Int'l* court expressly stated that Congress modified "the exemption of common carriers from FTC regulatory authority" in one way: "to extend the exemption to common carriers *now subject to the Communications Act*." *Verity Int'l*, 443 F.3d at 57–58 (emphasis added). The only common carriers "now subject to the Communications Act" are telecommunications providers; information-service providers—regardless of whether they meet the *NARUC* test—are not covered. *Brand X*, 545 U.S. at 975 (The Telecommunications Act "regulates telecommunications carriers, but not information-service providers, as common carriers.").

VoIP Essential attempts to sidestep this critical distinction because Congress created the information-service category through the Telecommunications Act of 1996— roughly 70 years after the foundation of the *NARUC* test, *see NARUC II*, 533 F.2d at 608

8

(citing *Washington ex rel. Stimson Lumber Co. v. Kykendall*, 275 U.S. 207, 211–12 (1927)). Yet modification of the Communications Act of 1934 to only include certain types of common carriers (i.e., only allowing the FCC to regulate telecommunications providers rather than information-service providers as common carriers) is expressly considered by § 45(a)(2) and § 44, which circumscribe the common carrier exception to only apply to "the Communications Act of 1934 and all Acts Amendatory thereof."

This leads VoIP Essential to its last redoubt: the FCC treats VoIP Essential identically to telecommunications providers by applying the same rules to both in multiple different areas. Yet that is still consistent with finding that VoIP Essential is an information-service provider rather than a telecommunications provider. That is because the FCC may be able to impose identical regulations on information-service providers under its Title I ancillary jurisdiction.[4] *See Brand X*, 545 U.S. at 976. The dispositive question here is which statutory authority the FCC uses—either Title I or Title II—not which rules the FCC imposes. So, the extension of universal service fund rules, carrier porting obligations, customer privacy rules, and robocall mitigation rules to VoIP providers, without more, does not make those providers telecommunications providers under 47 U.S.C. § 153(51).

In sum, VoIP Essential's interpretation of the relevant statutes must fail because it renders superfluous the language requiring the exempted common carrier be "subject to

---

[4] This is not to say that the FCC has exactly the same powers under Title I and Title II of the Communications Act. Rather, because these Titles have some overlapping authority, *Brand X*, 545 U.S. at 976 (describing Title I authority as "ancillary"), the mere fact that the same regulation is imposed is not dispositive.

9

Acts to regulate commerce." If VoIP Essential were correct that any entity—even an information-service provider—that meets the *NARUC* test is excluded from the FTC's jurisdiction, common carriers that are information-service providers would also be excluded from the FCC's authority to regulate common carriers. Under that view, no agency could regulate an information-service provider as a common carrier and part of § 45(a)(2) would be meaningless. That cannot be correct. *In re Merchants Grain, Inc.*, 93 F.3d 1347, 1353–54 (7th Cir. 2013) (explaining courts will "avoid rendering [words] meaningless, redundant, or superfluous").

Accordingly, the court holds that because Indiana has sufficiently alleged that VoIP Essential is an information-service provider, VoIP Essential cannot be a "common carrier subject to the Acts to regulate commerce." 15 U.S.C. § 45(a)(2). As VoIP Essential does not fit into the common carrier exception, it is not exempt from the FTC's telemarketing sales rules on these pleadings.

### B. State Law Claims

VoIP Essential contends that it is a communications service provider under Ind. Code § 24-4.7-4-7(e), which provides limited immunity for Telephone Solicitation of Consumers Act and Machines Dialing Act claims.[5] From that argument, VoIP Essential claims Indiana failed to plead facts indicating that the communications service provider immunity did not protect VoIP Essential. But VoIP Essential is not a communications service provider under Indiana law. Indiana's claims are therefore properly stated.

---

[5] VoIP Essential does not dispute the Complaint sufficiently states a claim if VoIP Essential is not a communications service provider.

10

As before, this issue is one of statutory interpretation. While applying the aforementioned methodology for statutory interpretation, this court will "look to see how Indiana courts address a statutory interpretation issue." *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 508 (7th Cir. 1998). As the Indiana Supreme Court explained, "[t]he first and often only step in resolving an issue of statutory interpretation is the language of the statute." *State, Ind. Civil Rts. Comm'n v. Indianapolis Newspapers, Inc.*, 716 N.E.2d 943, 946 (Ind. 1999). That is the case here.

The section granting communications service providers immunity provides that "[a] communications service provider (as defined in [Ind. Code] 8-1-32.5-4) does not violate this subsection" so long as "the communications service provider's equipment or services are used only to transport, handle, or retransmit a communication." Ind. Code § 24-4.7-4-7(e) (parentheses original). In turn, § 8-1-32.5-4 defines a communications services provider as "a person or entity that offers communications services to customers in Indiana." But before one can "offer communications service to customers in Indiana, the communications service provider must apply to the commission for a certificate of territorial authority." Ind. Code § 8-1-32.5-6. There are, thus, two requirements to gain the communications service provider immunity: first, gain a certificate of service to be able to offer communications services to customers in Indiana, and second, offer those services.

Indiana sufficiently alleged VoIP Essential failed to complete the first step. The complaint alleges that VoIP Essential did not apply for a certificate of territorial authority. (Compl. ¶ 216). Nor does VoIP Essential already have a certificate. (*Id.*).

11

That means that VoIP Essential cannot "offer communications services to customers in Indiana" under Indiana law. The limited communications service provider immunity, therefore, does not apply to VoIP Essential.

VoIP Essential contends that that result misreads the statute because the subsection that creates the communications service provider immunity only references § 8-1-32.5-4 and does not reference § 8-1-32.5-6. *See* Ind. Code § 24-4.7-4-7(e). That argument is unpersuasive. Statutory interpretation requires "consider[ing] the structure of the statute as a whole" instead of adopting "selective reading[s] of individual words." *ESPN, Inc. v. Univ. of Notre Dame Police Dept.*, 62 N.E.3d 1192, 1195 (Ind. 2016). The court cannot simply ignore § 8-1-32.5-6 merely because it is in a different subsection of the same statute. Had the Indiana legislature wanted to allow entities to be able to provide communications services without a certificate, it would have said so.

## IV. Conclusion

For the reasons discussed above, Defendant VoIP Essential's motion to dismiss for failure to state a claim (Filing No. 15) is **DENIED**.

**IT IS SO ORDERED** this 9th day of September 2022.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.