**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, et al., | No. CV-23-00233-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Michael D Lansky L.L.C., et al., | |
| Defendants. | |

On May 23, 2023, Plaintiffs, approximately 50 state attorney generals, filed this action against Defendants Michael D. Lansky L.L.C., dba Avid Telecom (Avid Telecom), M. Lansky, individually, and Stacey Reeves, individually, and as Vice President of Operations and Sales of Avid Telecom. Plaintiffs allege Defendants violated the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 et seq.; the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310 et seq.; the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., and certain state laws that protect consumers against unfair and deceptive trade practices, including unfair, deceptive, abusive, and illegal telemarketing practices.

Plaintiffs' case focuses on the barrage of unwanted robocalls sent to millions of American consumers that are harassing, annoying, threatening, and malicious. The Complaint alleges the Defendants are in the business of providing Voice over Internet Protocol (VoIP) services, facilitating, or initiating robocalls, and/or helping others make robocalls. (Complaint (Doc. 1)). Avid Telecom is a VoIP business that makes and transmits

telephone calls for profit for retail customers that are the originating callers of robocall and telemarketing calls and for wholesale customers that are other voice service providers that route and transmit robocall and telemarketing calls. *Id.* ¶¶ 48-49. VoIP providers use robocalling technology that allows for the transmission of high call volumes in short durations. *Id.* ¶ 60.

"A robocaller can make multiple calls in a single second." *Id.* Robocalls can be prerecorded or artificially-voiced messages, or allow for computerized confirmation that a call recipient has answered and then connects to a live operator. *Id.* "VoIP technology is particularly attractive to scammers that place illegal robocalls because it allows them to efficiently place millions or billions of calls as they troll for vulnerable consumers who will fall victim to their financial or identity theft scams." *Id.* ¶ 62. In the world of robocalling, calls move from provider to provider, and each stop is designated as a "hop" moving "downstream" to the call recipient, with all downstream providers from the "gateway" or "point of entry" on the U.S. voice communications network, except the last provider, being collectively referred to as "intermediate providers." *Id.* ¶ 53. The last voice service provider that delivers the call to its customer's target call recipient is referred to as the "terminating" provider. *Id.* ¶ 54. Avid Telecom is classified or categorized in this arena as either an originating provider or intermediate provider. *Id.* ¶ 55.

Defendants responded to the Complaint with a Motion to Dismiss (Doc. 39) and a Motion to Stay and Refer (Doc. 30) the case to the Federal Trade Commission (FTC) and the Federal Communications Commission (FCC), the federal agencies charged with oversight and regulation related to the federal laws at issue in the case.

    A.  Motion to Dismiss

        1.  Standard of Review

The Court disfavors and rarely grants a motion to dismiss for failure to state a claim. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) motion tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

The Supreme Court announced the standard for review for a 12(b)(6) motion in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (U.S.,2005), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (U.S., 2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (U.S., 2009).  At the pleading stage, a plaintiff must allege enough facts, if taken as true, to suggest that a claim exists.  This does not impose a probability requirement at the pleading state, it simply requires enough facts to raise a reasonable expectation that discovery will reveal evidence to support the claim. *Twombly*, 550 U.S. at 556.  To survive a 12(b)(6) motion, the Afactual allegations [in the complaint] must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact. *Id*.

In the Ninth Circuit, two conditions must be met when considering a motion to dismiss for failure to state claim: (1) allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively, and (2) the factual allegations must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). When considering whether the complaint is sufficient to state a claim upon which relief may be granted, the Court takes material allegations as true and construes the claims in the light most favorable to the nonmoving party. *Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court also assumes that general allegations embrace the necessary, specific facts to support the claim.  *Smith v. Pacific Prop. and Dev. Corp*., 358 F.3d 1097, 1106 (9th Cir. 2004); *Peloza v. Capistrano Unified Sch. Dist*., 37 F.3d 517, 521 (9th Cir. 1994). Courts will not, however, assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Warren v. Fox*

*Family Worldwide Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Furthermore, Courts will not assume that defendants have violated additional laws, or that plaintiffs can prove exogenous facts, when the appropriate allegations are absent. *Associated General Contractors of California , Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In short, at the pleading stage the Plaintiff must allege enough facts, if taken as true, to suggest that a claim exists.  Dismissal is appropriate if the facts alleged do not state a claim that is plausible on its face. *Iqbal,* 556 U.S. at 678.  Plausibility is not attained if the facts are merely consistent with his claims.  *Twombly*, 550 U.S. at 545, 557.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Plaintiffs submit that "[i]f the Court grants the motion to dismiss, the Court should 'freely give' leave to amend the complaint when there is no 'undue delay, bad faith[,] dilatory motive on the part of the movant[,] . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment[.]'" (Response to Motion to Dismiss (Resp. MD) (Doc. 45) at 18 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a)). "Generally, leave to amend the complaint is only denied when it is clear that deficiencies in the complaint cannot be cured by an amendment." *Id.* (citing *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992)).

## 2. Personal Jurisdiction[1]

"Defendant Avid Telecom is incorporated in the State of Arizona. (Response Motion to Dismiss (Resp. MD) (Doc. 45) at 14 (citing Complaint (Doc. 1) ¶ 10). "Defendants do not present any evidence that contradicts this." *Id.* Plaintiffs are correct that general jurisdiction over Avid Telecom exists because Arizona is the state in which the company is incorporated and where Avid Telecom maintains its principal place of

---

[1] A defendant may move, prior to trial, to dismiss the complaint for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

business. (Resp. MD (Doc. 45) at 15 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014): "The paradigm forum for the exercise of general jurisdiction [for a corporation] is one in which the corporation is fairly regarded as at home."). Defendants do not dispute this. *See also* Reply (Doc 49) (no reply to Plaintiffs' assertion of personal jurisdiction over Avid Telecom based on its incorporation in Arizona).

Without question, the defense of lack of personal jurisdiction may be waived as a result of a defendant's conduct during the litigation. *Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1318 (9th Cir. 1998)). A party waives the defense of lack of personal jurisdiction by omitting it from a motion under Federal Rule of Civil Procedure Rule 12(g)(2), and a party that makes a motion under Rule 12 must not make another motion under Rule 12 raising a defense or objection that was available to the party but omitted from its earlier motion. The defense is waived by failing to include it in a responsive pleading. See Rule 12(h)(1). The Ninth Circuit construes the provisions of Rule 12(h) strictly, observing that a "fundamental tenet" of the Federal Rules is that "certain defenses . . . must be raised at the first available opportunity or, if they are not, they are forever waived." *Am. Ass'n. of Naturopathic Physicians v Hayhurst*, 227 F.3d 1104, 1106 (9th Cir. 2007). Therefore, a general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction can waive a defect in service or personal jurisdiction *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *amended by* 807 F.2d 1514 (9th Cir. 1987). A general appearance is "an overt act by which the party comes into court and submits to the jurisdiction of the court," and "an affirmative act involving knowledge of the suit and an intention to appear." *Id.*

Here, Defendant Reeves made an appearance in the case in June 2023, when after waiving service, she had counsel file a notice of appearance in the case. "'An appearance ordinarily is an overt act by which the party comes into court and submits to the jurisdiction of the court. This is an affirmative act involving knowledge of the suit and an intention to appear.'" *Id.* (quoting 28 Fed. Proc. (L.Ed.) § 65.137 at 526 (1984) (further citations omitted).

She was thereafter included as a Defendant in all Defendants' filings. In July 2023, Defendants filed a motion for an extension of time to file a responsive pleading in the case. In September they sought a further extension of time to respond to the Complaint. Plaintiffs objected and filed a Motion for Entry of Default for failure to file a responsive pleading. Defendants filed responses to both requests. Both responses argued similarly that the parties had been engaged in settlement discussions, including that Defendants had made some document productions, and Defendants had been misled into believing that Plaintiffs would agree to further extend the time to file a responsive pleading so that the matter might be resolved by settlement. *See* (Order (Doc. 24) (granting extension of time and denying request for entry of default). The Response objecting to Plaintiffs' Application for Entry of Default included a 28-page "Summary of Defenses to Complaint." (Resp. App. For Default, Ex. 4 (Doc. 23-4)). None of the documents filed with this Court, including the Summary of Defenses, challenged the Court's personal jurisdiction over Defendant Reeves.

In *Benny*, the court considered three motions to extend time to file a responsive pleading, noting that generally "a motion to extend time to respond gives no hint that the answer will waive personal jurisdiction defects, and is probably best viewed as a holding maneuver while counsel consider how to proceed." *Benny*, 799 F.2d at 493. The first two motions to enlarge sought additional time because of counsel's involvement in other trials. The court explained that it may have been prudent for defendants to include statements that they were not waiving any affirmative defenses, but it would be harsh to label these pre-answer omissions as a general appearance waiving the defense. The third motion, however, specifically reserved the defense. Consequently, the court held there was no waiver and proceeded to the merits of the case. *Id.* at 106-107.

Here, the Court considers Defendant Reeves' pre-answer omissions in the motions to extend time to respond to the Complaint and the responsive objection to the Plaintiffs' Application for Entry of Default. The motions filed in this case to extend time to file a responsive pleading gave no hint that Defendant Reeves would waive personal jurisdiction

defects. Unlike the defendant in *Benny,* there was no reservation of right. Nevertheless, the Court assumes the motions to extend time filed in this case, like most such motions, were nothing more than holding maneuvers. The Court turns to the Response filed in objection to Plaintiffs' Application to Enter Default. The title of the pleading does not matter because the essence of a Rule 12 waiver is to ensure certain defenses are raised at the first available opportunity or, if they are not, they are forever waived. *See* Fed. R. Civ. P. 12(g), (h). *Hayhurst*, 227 F.3d at 1106–07. In *Hayhurst,* the court recognized that when a party does not respond to a complaint and default judgment is entered, a Rule 55 motion will very frequently be the first document filed with the court. *Id.* at 1107. This Court finds no rationale to distinguish between a Rule 55 motion to set aside a default or to set aside a default judgment. Both are made pursuant to Rule 55(c). Likewise, if a party has appeared, then that party, like Defendants in this case, are afforded notice and opportunity to be heard. When this happens, like it did here, an objection to the application for default will likely be the first opportunity, as it was here, for a defendant to challenge personal jurisdiction.

In the Response to the Application for Entry of Default, the Defendants expressly argued the case lacked legal merit and "[t]he Complaint [was] riddled with false statements of fact and facts that are plainly not applicable to Avid Telecom" and that "claims against Ms. Reeves—who served as an independent contractor to Avid Telecom--in her individual capacity, notwithstanding clear precedent in the 9th Circuit precluding such claims." (Resp. App. For Default (Doc. 23) at 8-9.) Defendants attached a "more complete summary of certain of Defendants' key defenses to the Complaint." *Id.,* Ex. 4 (Doc. 23-4)). They argued: "The defenses that Defendants will assert are substantial and well founded and they expect to be fully exonerated." *Id.* at 9.  Defendants asked the Court to deny the Application for Entry of Default because they deserved "the opportunity to present these defenses and Plaintiffs should not be allowed to use the default process to deny them that opportunity." *Id.* Finally, Defendants submitted that the failure to answer was inadvertent and not intentional.

The Court finds that filing the Response to the Application for Entry of Default was an overt act by which Defendant Reeves came before this Court and submitted to its jurisdiction to resolve its objections. *Benny*, 799 F.2d at 492. The Response, including the "Summary of Defenses to Complaint," evinced a "clear purpose to defend" unlike the motions to extend time. Defendant Reeves should have raised the defense of personal jurisdiction in the Response objecting to the Application for Entry of Default just as she would have had to raise the defense in a motion to set aside the default or a default judgment under Rule 55(c) to avoid waiving it. *Cf., Thomas P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1255 (9th Cir. 1980) ("It is well-established that a judgment entered without personal jurisdiction over the parties is void."). Defendant Reeves chose to not do either and waived her defense of lack of personal jurisdiction.

Additionally, the Court finds that the challenge to personal jurisdiction fails on the merits. The Complaint alleges specific personal jurisdiction over Defendant Reeves in Arizona.

The Court applies the law of the state of Arizona because there is no applicable federal statute governing personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see* Fed. R. Civ. P. 4(k)(1)(A). "The Arizona long-arm statute provides for personal jurisdiction co-extensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). In this case, therefore, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–801. Due process requires a nonresident defendant to have "certain minimum contacts" with the relevant forum so that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up).

Plaintiffs bear the burden of establishing jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Here, the Court decides the jurisdictional question based only on written materials rather than on testimony at an evidentiary hearing,

therefore, "the plaintiff need only make *a prima facie* showing of jurisdictional facts." *Schwarzenegger*, 374 F.3d at 800 (citation and internal quotation marks omitted). "Uncontroverted allegations in the complaint must be taken as true." *Id.*

"'The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation.'" *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) (quoting *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (citations and internal quotation marks omitted). The Court applies a three-part test, as follows:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* (citing *Schwarzenegger*, 374 F.3d at 802). If the Plaintiff establishes the first two prongs of the test, the burden shifts to the Defendant to present a compelling case that it would be unreasonable to exercise personal jurisdiction of her. *Id.* (relying on *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) and *Schwarzenegger*, 374 F.3d at 802).

The first prong of the specific-jurisdiction inquiry encompasses two separate concepts. Generally, "purposeful availment" provides the framework for analysis in a contract case, and "purposeful direction" is the approach used for analyzing claims in tort. "At bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.'" *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In this case, the Court considers whether Defendant Reeves "purposefully

directed" her activities toward the forum by applying the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984), which asks "whether the defendant: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Herbal Brands Inc*., 72 F.4th at 1091 (quoting *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022) (quoting *Schwarzenegger*, 374 F.3d at 803)).

Plaintiff easily satisfies the first and third elements of the *Calder* effects test. VoIP businesses, including Defendant Avid Telecom, intentionally provide calling services using robocalling technology. The Complaint alleges Defendant Reeves was Vice-President of Operations and Sales for Avid Telecom. (Complaint (Doc. 1) ¶ 381). In this capacity, "Reeves participated in the control and management of Avid Telecom's customer-specific account settings and network-wide settings that affected how and where calls were routed." (Resp. MD (Doc. 45) at 8 (citing Complaint (Doc. 1) ¶¶ 190, 200)) "At the customer account level, Reeves managed settings that determined call routing, call signaling, and call volume for customers that initiated calls to telephone numbers with Arizona area codes." *Id.* ¶¶ 381-382. The Complaint is replete with specifically alleged violations that were reported to Defendants, including Defendant Reeves, to which they responded but allegedly did nothing to stop. *Id.* ¶¶ 100-135, 180-304, 323-330, 356-369, 386-389.

Plaintiffs proffer more detailed evidence outside the pleadings[2] that specifically relates to Defendant Reeves' conduct as reported by Plaintiffs' investigator that reflects Defendant Reeves was notified on February 23, 2021, by Telco Connection that Avid Telecom was sending IRS impersonation scam calls to Arizona area codes, and on September 10, 2021, she was told Social Security Administration scam calls were being sent to Arizona area codes. (Resp. MD, Ex. 1: Isaacs Decl. (Doc. 45-1) ¶ 16.) In response

---

[2] The Court references this evidence because it summarizes the allegations in the Complaint more exactly to reflect Defendant Reeves' conduct. Additionally, the Isaac Declaration reflects Defendant Reeves' challenge to personal jurisdiction would fail on the merits. At best, Plaintiffs would be directed to amend the Complaint to include allegations as reflected in the declaration. Such amendment is unnecessary because Defendant Reeves has waived this defense.

to an email to Inteliquent from Defendant Reeves, an Inteliquent employee responded with a breakdown of where Defendants' traffic was being routed to a terminating provider, including two Arizona businesses. *Id.* ¶¶ 18-19. From March 20, 2021, until March 23, 2023, Industry Traceback Group notified Defendant Reeves of at least nine tracebacks for calls to phone numbers with Arizona area codes. *Id.* ¶¶ 9-10. These calls included telephone calls using a prerecorded or artificial voice. *Id.*

"Reeves managed the account settings for the Virtual Telecom/Mobi Telecom account which made millions of deceptive "auto warranty" robocalls." *Id.* ¶ 7. Including "55,224,731 calls for Virtual Telecom/Mobi Telecom to telephone numbers with Arizona area codes." *Id.* ¶ 11. "At least 246 Arizona residents whose telephone numbers were called in those 55,224,731 calls filed do-not-call complaints with the Federal Trade Commission about unwanted warranty calls during that same time frame." *Id.* ¶ 12. "Defendant Reeves accessed and managed the John Spiller ("Spiller") account and selected the downstream provider where Spiller's traffic would be routed," *id.* ¶ 13, including "at least 360,332 telephone calls . . . with Arizona area codes, *id.* ¶ 14. "At least 3 Arizona residents whose telephone numbers were called in those 360,332 calls filed do-not-call complaints with the Federal Trade Commission about the receipt of auto warranty calls." *Id.* ¶ 15.

The Court finds the Complaint alleges that Defendant Reeves knew that Avid Telecom's use of robocalling technology was causing harm in Arizona. For specific jurisdiction to exist over Defendant Reeves, Plaintiffs' claims must arise out of or be related to her forum-related activities. In other words, it doesn't matter that she "provided a telephone number with an Arizona area code as her contact number," (Resp. MD (Doc. 45) at 8), or did not knowingly call or speak to anyone who was residing in Arizona, (MD (Doc. 39) at 11). It makes no difference that she was an independent contractor. Here, the dispositive second prong of the *Calder* test, whether Defendant Reeves expressly aimed her activities at Arizona, requires a claim-tailored inquiry. Best explained in *Briskin v.*

1  *Shopify, Inc.,* 87 F.4th 404, 414 (9th Cir. 2023), this requires "but for" causation, i.e., a direct

2  nexus between what she did and the alleged injury in Arizona.[3]

3        The allegations in the Complaint support personal jurisdiction over Defendant

4  Reeves in Arizona because they allege that in her capacity as Vice President of Operations

5  and Sales, she worked directly with Avid Telecom customers to oversee the delivery of the

6  services at issue in this case that caused robocalls to be sent to Arizona, and she was notified

7  that these robocalls were violating the TSR and TCPA and, therefore knew that these

8  robocalls were causing harm in Arizona. It does not matter that the 246 robocalls

9  terminating in Arizona represents 0.00000445454525999 of the total 55 million robocalls

10  made via the account settings for Virtual Telecom/Mobi Telecom. (Reply MD (Doc. 49)

11  at 7. It is not true that "none" of the 246 calls were connected to Defendant Reeves'

12  "personal activity." It is enough that Defendant Reeves managed the account settings. As

13  Vice-President of Operations and Sales for Avid Telecom, her conduct related to the

14  control and management of Avid Telecom's customer-specific account settings and

15  network-wide settings that caused robocalls for Virtual Telecom/Mobi Telecom to be

16  routed to and terminated in Arizona. This is enough.

17        The Court finds *Herbal Brands, Inc.,* while not a perfect fit, applies in principle.[4]

18  [3] The Court rejects Defendant Reeves suggestion that because she cannot be held personally liable for the conduct of the company, Avid Telecom, this Court lacks personal

19  jurisdiction over her. The Court understands that she may be asserting a challenge under

20  the fiduciary shield doctrine where a person's mere association with a corporation that causes injury in the forum state is not sufficient to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir.1989). In the

21  Ninth Circuit, the fiduciary shield doctrine is not a question of constitutional significance and does not limit personal jurisdiction in states that have statutes extending jurisdiction to

22  the limits of due process. *Id.* at 522 (concluding that Arizona's "long-arm" statute extended jurisdiction to constitutional due process limits and was not limited by the fiduciary shield

23  doctrine). Consequently, "[e]ach defendant's contacts with the forum State must be assessed individually." *Id.* at 521 (internal quotation marks and citation omitted).

24

25  [4]*But see, Briskin v. Shopify, Inc.*, 87 F.4th 404, 417–18 (9th Cir. 2023) (explaining need to draw some lines to avoid subjecting web platforms to personal jurisdiction everywhere,

26  every time, it offers a product for sale through an interactive website because this "would be too broad to comport with due process; there must be something more); *Martin v.

27  Outdoor Network LLC*, No. 2:23-CV-09807-AB-AJR, 2024 WL 661173, at *3–4 (C.D. Cal. Jan. 31, 2024 (limiting *Herbal Brands Inc.* to conduct centered around operating a

28  website and distinguishing between operating "passive" websites that merely make information available to visitors, which is insufficient to support personal jurisdiction, and "interactive" websites, where users exchange information with the host computer; finding

The Ninth Circuit considered an interactive Amazon internet website, indiscriminately available in all 50 states. Similarly, in this case Defendants offer robocalling services in all 50 states. In *Herbal Brands, Inc.*, the court held "the express aiming inquiry does not require a showing that the defendant targeted its advertising or operations at the forum," if defendant exercised some level of control over the ultimate distribution in Arizona of its products, beyond simply placing products into the stream of commerce. *Id.* at 1094. The court applied pre-internet principles finding "'distribution in the forum state of goods originating elsewhere was a paradigmatic example of conduct purposefully directed at a form state.'" *Id.* at 1093 (quoting *Schwarzenegger*, 374 F.3d at 803)). In this case, the Defendants placed robocalls into the stream of commerce. While not a physical product, these robocalls were no less concretely directed into Arizona, similarly to the Herbal products being delivered in Arizona.

In the Ninth Circuit, under *Calder*, purposeful availment may be satisfied if a defendant intentionally directs activities into the forum intentionally committing a tort. *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259–60 (9th Cir. 1989). A telephone call initiated by an Arizona resident to defendant, a nonresident inquiring about plaintiff's past job performance resulted in allegedly negative comments causing plaintiff injury in Arizona from tortious interference with contractual employment relationship in Arizona. The court reasoned that defendant allegedly committed intentional torts. "His communications were directed to Arizona, even though he did not initiate the contact. Assuming the allegations in the complaint are true, [defendant] knew the injury and harm stemming from his communications would occur in Arizona, where [plaintiff] planned to live and work." *Id.* at 1259. The court found those contacts with the forum supported

latter supports personal jurisdiction only when something more can be established under *Herbal Brands Inc.,* outside product sales cases and must be shown by conduct such as: the degree of interactivity of the website ("sliding scale" of interactivity with more interaction, the more likely the operator expressly aimed at the jurisdiction); did operator of website with national viewership and scope appeal to, and profit from, an audience in a particular state); did the website have a forum-specific focus or did defendant exhibit an intent to cultivate an audience in the forum). Even if *Herbal Brands, Inc.* is not analogous, personal jurisdiction exists over Reeves because her alleged conduct included managing accounts, including robocall settings, for Avid Telecom customers like Virtual Telecom/Mobi Telecon, intending to send these customer's calls into Arizona.

personal jurisdiction over the out-of-state defendant. The rationale for this conclusion was found in *Calder* where the Supreme Court distinguished untargeted negligence, which will not amount to purposeful availment, from intentional and allegedly tortious acts expressly aimed at the forum. *Id.* (citing *Calder*, 465 U.S. at 789–90.) The court explained the logic behind the effects test from *Calder* was that "where acts are performed for the very purpose of having their consequences felt in the forum state, the forum will have personal jurisdiction over the actor." *Id.* at 1260. *See also: Baker v. Caribbean Cruise Line, Inc.*, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) (finding personal jurisdiction based on defendants calls to Arizona number where the calls formed the basis for TCPA claims."); *Luna v. Shac, LLC*, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding purposeful direction based on intentionally sent text messages direct to cell phones with California based area codes, which conduct allegedly violated the TCPA); *Heidorn v. BDD Marketing & Mgmt. Co., LLC*, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013) (finding personal jurisdiction in TCPA case because calls were made to a California resident at a California number).

Plaintiffs have sufficiently alleged Defendant Reeves exercised some level of control over that ultimate delivery of Avid Telecom's robocalling services to Arizona. Accordingly, the Court finds that Defendant Reeves expressly aimed her activities at Arizona because she knew the robocalls were likely to be received and cause harm in Arizona. *See also Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir.2000) (deducing that the requirement, "expressly aimed" is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). In the Ninth Circuit, it is enough if Defendant "knew or should have known" her intentional acts were expressly aimed at Arizona. *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 678 (9th Cir.2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064 (9th Cir. 2017).

This Court has personal jurisdiction over Defendant Reeves because she fails to show it is unreasonable. The logic of *Herbal Brands, Inc.* applies again: "When an online sale occurs as part of a defendant's regular course of business, it 'arises from the efforts of the [seller] to serve directly or indirectly[ ] the market for its product ...,' and the defendant 'should reasonably anticipate being haled into court" where the product is sold.'" *Herbal Brands, Inc.*, 72 F.4th at 1094 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), *see also Brainerd,* 873 F.2d at 1260 (applying *Burger King*, 471 U.S. at 477, presumption that personal jurisdiction is reasonable when defendant purposefully directs his activities into the forum).

There is no evidence to suggest that the alleged robocalls to Arizona residents occurred outside of the regular course of business, specifically Avid Telecom's general robocalling business. The robocalls also occurred within the regular course of Defendant Reeves' business responsibilities for managing customer accounts, including robocall settings that determined call routing, call signaling, and call volume for customers that initiated calls to telephone numbers with Arizona area codes. The Court finds that Defendant Reeves should have reasonably anticipated being haled into court where she was directing the robocalls to go, including Arizona.

### 3. Individual Liability: Defendants M. Lansky and S. Reeves

The Defendants argue that Plaintiffs cannot hold Defendant Reeves liable for acts of Avid Telecom because there is no evidence that she held any decision-making authority or control or that her role was anything other than that of an independent contractor. According to Defendants, the law in the Ninth Circuit precludes vicarious liability under the TCPA where the alleged conduct arises out of an independent contractor relationship. (Motion to Dismiss (MD) (Doc. 39) at 11-12 (citing *Jones v. Royal Admin. Servs. Inc.,* 887 F.3d 443 (9th Cir. 2017) (further citations omitted).

Simply establishing that Avid Telecom paid Defendant Reeves, and she paid her taxes, as an independent contractor is not determinative. Whether an employee is an independent contractor is a legal conclusion based on a factual inquiry aimed at

determining whether the hiring party has the right to control the manner and means by which the product is accomplished. (Resp. MD (Doc. 45) at 13) (citations omitted). The Court must consider relevant factors, as follows: "'[1] the skill required; [2] the source of the instrumentalities and tools; [3] the location of the work; [4] the duration of the relationship between the parties; [5] whether the hiring party has the right to assign additional projects to the hired party; [6] the extent of the hired party's discretion over when and how long to work; [7] the method of payment; [8] the hired party's role in hiring and paying assistants; [9] whether the work is part of the regular business of the hiring party; [10] whether the hiring party is in business; [11] the provision of employee benefits; and [12] the tax treatment of the hired party.'" *Id.* (quoting *Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945–46 (9th Cir. 2010) (quoting *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323 (1992)). Defendants fail to provide any analysis of these factors showing that Defendant Reeves should be categorized as an independent contractor.

Until Defendant Reeves' status as an independent contractor is established, the Court cannot determine whether the law in the Ninth Circuit precludes the imposition of vicarious liability under the TCPA, if the alleged conduct arises out of such an independent contractor relationship. Plaintiffs are correct that Defendants ask the Court to consider facts outside of those alleged in the Complaint. (Resp. MD (Doc. 45) at 17-19 (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990)). Questions of fact relevant to determining vicarious liability require discovery and preclude granting the motion to dismiss on this issue. This argument fails as a matter of law based on the facts now before the Court.

Defendants argue that Plaintiffs fail to allege facts to support piercing the corporate veil and holding Defendant Lansky personally liable for acts of Avid Telecom. (MD (Doc. 39) at 13-14.) Defendants challenge the allegations in the Complaint that Lansky used the Michael D. Lansky L.L.C. corporate credit card, bank account, and/or PayPal account for his personal expenses. Defendants submit evidence that Lansky took ultimate

1   responsibility for the payment of referenced charges and that merely alleging credit card

2   use personally by Lansky is not enough. *Id.* at 14.

3       Piercing the corporate veil is a means to reach individual ownership assets when the

4   line between the corporation and the individual owners is blurred. *Standage v. Standage*,

5   711 P.2d 612, 614 (Ariz. App. 1985). Federal courts apply the law of the forum state to

6   determine whether to pierce the corporate veil. *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th

7   Cir. 2003). Generally, a corporation will be treated as a legal entity until there is sufficient

8   reason to disregard the corporate form as a corporate fiction. This occurs if the corporation

9   is the alter ego or business conduit of a person, and when observing the corporate form

10  would work an injustice. *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. App. 1972). There must

11  be a unity of interest and ownership so that the separate personalities of the corporation

12  and owners cease to exist. *Id.* (citing *Employer's Liability Assurance Corporation v. Lunt*,

13  313 P.2d 393 (Ariz. 1957)). This theory of liable has only been alleged against Defendant

14  Lansky.

15      "The concept of a corporation as a separate entity is a legal fact, not a fiction."

16  *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d1190, 1195 (Ariz. App.

17  1994). Corporate status will not be lightly disregarded." *Chapman v. Field*, 602 P.2d 481,

18  483 (1979) (*en banc*).

19      Factors indicating a corporation and its owner have an "alter ego" relationship

20  include the "commingling of personal and corporate funds" and the failure to maintain

21  corporate records or observe other "formalities of separate corporate existence, such as:

22  having common officers or directors; payment of salaries and other expenses of a

23  subsidiary by a parent (or of a corporation by shareholders); failure to maintain formalities

24  of separate corporate existence; similarity of corporate logos; plaintiff's lack of knowledge

25  of separate corporate existence; owners making interest-free loans to corporation;

26  maintaining of corporate financial records; commingling of personal and corporate funds;

27  diversion of corporate property for shareholders' personal use; observance of formalities of

28  corporate meetings; intermixing of shareholders' actions with those of corporation; and

failing to file corporate income tax returns and ACC annual reports. *Deutsche Credit*, 876 P.2d at 1195-1196) (Ariz. App. 1994) (citations omitted).

Factors indicating "injustice or fraud" include presenting evidence that the corporation was "formed for the purpose of perpetrating a fraud or other illegal act," *Butler v. Am. Asphalt & Contracting Co.*, 540 P.2d 757, 761 (Ariz. App. 1975), that the corporation was undercapitalized when formed, *Norris Chem. Co. v. Ingram*, 679 P.2d 567, 570 (Ariz. App. 1984), or that "observance of the corporate form would confuse the opposing parties and frustrate their efforts to protect their rights," *Keg Rests. Ariz., Inc. v. Jones*, 375 P.3d 1173, 1184 (Ariz. App. 2016), such as operating under confusingly similar names, leading customers, vendors, and other third parties to "reasonably assume" that the two are "only one company, *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 729 (Ariz. (1991) (*en banc*).

On a motion to dismiss, the Court's concern is with the pleadings, not the evidentiary proof of the claims. Given the disfavor for piercing the corporate veil, both the "unity of form" prong and the fraud/illegal prong of the claim must be plead with specificity. Conclusory allegations of "alter ego" status are insufficient to state a claim, and a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each. *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003); *Cullen v. Auto-Owners Ins. Co.*, 189 P.3d 344, 346 (Ariz. 2008) (conclusory statements are insufficient; claims must be supported with well-pled facts). S*ee also* Ariz. R. Civ. P. 9(b) (requiring fraud to be pled with particularity); *see also Green v. Lisa Frank, Inc.*, 211 P.3d 16, 33 (Ariz. App. 2009). "Magic language" is not required, but bare allegations of fraud are insufficient. *Hall v. Romero*, 685 P.2d 757, 761 (Ariz. App. 1984).

Here, Plaintiffs ask the Court to pierce the corporate veil between Defendants Michael D. Lansky, L.L.C. and Defendant Lansky, individually, (Complaint (Doc. 1) ¶ 406), because "Michael D. Lansky, L.L.C. and Lansky demonstrated a complete lack of respect to the separate identities of each entity and comingled corporate and personal

assets," *id.* ¶ 407. "Lansky controlled Michael D. Lansky, L.L.C.'s corporate bank account(s), corporate credit card(s), corporate check book(s), and corporate PayPal account(s)," *id.* ¶ 408, and comingled money for Lansky personally, *id.* As examples of Lansky's use of corporate funds for personal expenses, which allegedly diverted corporate assets to fund substantial personal expenses so as to limit the corporation's abilities to satisfy remedial obligations, Plaintiffs offered purchases as follows: Ancestry.com DNA L.L.C.; Bandcamp for the full digital discography (9 releases) by Clann An Drumma; Payment for the SMHS reunion for Michael Lansky and another person; Payment for a "Michael Lansky for Bicycle replacement;" and Payment for "Bachelor Party lodging." *Id.* ¶¶ 410-411.

Plaintiffs summarily allege that Defendant Lansky operated through Michael D. Lansky, L.L.C. and their conduct was one and the same, *id.* ¶ 413; 414, Defendant Lansky's conduct through Michael D. Lansky, L.L.C., caused harm to consumers, *id.* ¶ 414. Plaintiffs ask the Court to pierce the corporate veil between Michael D. Lansky, L.L.C. and Lansky as a sanction against fraud, to promote justice, and dissuade the evasion of legal obligations. *Id.* ¶ 415.

Defendants do not improperly introduce evidence outside the Complaint by rebutting the examples from it. The Court agrees that the amounts for the alleged improper personal purchases Defendant Lansky made by Defendant Michael D. Lansky, L.L.C. are few and for relatively small amounts. They do not necessarily support the conclusory allegations that Defendant Lansky diverted corporate assets to fund substantial personal expenses that limited the corporation's abilities to satisfy remedial obligations. There is no evidence these amounts were not reimbursed, and alone they do not suffice to pierce the corporate veil. Plaintiffs have failed to allege specific facts to support the assertion that there is a unity of interest or ownership between Lansky and Michael D. Lansky L.L.C. or to show that Michael D. Lansky L.L.C. was created and/or used thereafter with an intent to defraud or commit illegal activities. Plaintiffs may amend the Complaint to state this claim. *See also,* Fed. R. Civ. P.15(a)(2) and (b).

As Plaintiffs point out, even though "corporate officers and directors are generally shielded from liability for acts done in good faith on behalf of the corporation, their status does not shield them from personal liability to those harmed as a result of intentionally harmful or fraudulent conduct." *Albers v. Edelson Tech. Partners L.P.*, 31 P.3d 821, 826 (Ariz. App. 2001) (citing 19 C.J.S. Corporations § 537 (1990) ("A corporate officer ... is personally liable for his wrongful deeds, even though he acts in his capacity as a corporate officer."); *id.* § 546(a) ("Directors or officers of a corporation are liable for their fraudulent acts to persons injured thereby."); 18B Am.Jur.2d Corporations § 1882 (1985) ("[I]t is clearly established that a director or officer of a corporation is individually liable for fraudulent acts or false representations of his own or in which he participates, even though his action in such respect may be in furtherance of the corporate business."); *accord Bischofshausen, Vasbinder, & Luckie v. D.W. Jaquays Mining & Equip. Contractors Co*., 700 P.2d 902, 908–09 (Ariz. App.1985)). "'A contrary rule would enable a director or officer of a corporation to perpetrate flagrant injuries and escape liability....'" *Id.* (quoting 18B Am.Jur.2d Corporations § 1877)). The corporate shield cannot be used to protect those who employ corporate power to serve their own ends. *Id., see also Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 (D. Md. 2011) (finding liability under the TCPA if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute") (quoting *Texas v. Am. Blastfax*, 164 F.Supp.2d 892, 898 (W.D.Tex. 2001); *F.T.C. v. Garvey*, 383 F.3d 891, 900 (9th Cir. 2004) (finding individuals subject to injunctive relief under FTCA if they participated directly in the acts in question or had authority to control them). The TSR claims are enforceable under the FTCA, pursuant to 15 U.S.C. § 6102(c)(1). *Fed. Trade Comm'n v. Simple Health Plans L.L.C.*, 58 F.4th 1322, 1329 (11th Cir. 2023).

Plaintiffs have alleged that Defendants Lansky and Reeves, as officers of Avid Telecom, participated in and directed or supervised illegal trade practices. (Complaint (Doc. 1) ¶ 405.) The Complaint states claims against Defendants Lansky and Reeves, individually. It remains to be seen, upon development of the record in respect to the parties'

relationships, the individual roles and responsibilities of each of them, and their actual undertakings in respect to the alleged violations whether these Defendants may be held individually liable.

Defendants submit a Supplement to the Motion to Dismiss wherein they argue: "The Third Circuit Court of Appeals has raised 'doubt' as to whether 'common-law-personal jurisdiction liability is available against corporate officers under the TCPA." (Supp. MD (Doc. 62) at 3 (citing *Perrong v. Chase Data Corp.,* 2024 WL 329933 *4 (Penn. January 26, 2024) (quoting *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 160 (3d Cir. 2018)). First, neither *Perrong* nor *City Select* are binding precedential in this Court. Second, the Third Circuit law referenced in *Perrong* is not new law issued subsequent to briefing the Motion to Dismiss; *City Select* was issued in 2018. *Perrong* is merely a recent application of it.

It is appropriate to file a notice of supplemental authority to inform the Court of a new judicial opinion that has been issued but this is not an opportunity to argue outside the pleadings. *Doe v. Blue Cross Blue Shield of Illinois*, 492 F. Supp. 3d 970, 980 (D. Ariz. 2020) (citations omitted), *see also* H*agens Berman Sobol Shapiro LLP v. Rubinstein*, 2009 WL 3459741, at *1, 2009 U.S. Dist. LEXIS 104619, at *3 (W.D. Wash. Oct. 22, 2009) (notice of supplemental authority improper "because it contained argument regarding the case" already submitted and ripe for the court's review). If Defendants wanted to merely inform the Court of the *Perrong* decision, this could have been accomplished within a sentence so stating the purpose of the filing. Instead, Defendants included two plus pages of additional argument for why the Court should dismiss the individual claims against the Defendants Reeves and Lansky. Such additional argument is inappropriate, and the court will not consider it. The Court grants the Plaintiffs' Motion to Strike the Supplement.

    4.  Meritless and/or Outside the Pleadings.

    a.  Argument: Common Carrier Exception

Defendants challenge claims against Avid Telecom under the TSR by asserting Avid Telecom is a common carrier, not an information-service provider. "A

telecommunications carrier is 'any provider of telecommunications services.'" (Resp. MD (Doc 45) at 21) (quoting 47 U.S.C. § 153(51)). "This is when the provider transmits 'information of the user's choosing, without change in the form or content of the information as sent and received.'" *Id.* (quoting 47 U.S.C. § 153(50)). "Information-service providers offer the 'capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications . . . but does not include any use of any such capability for the management, control, or operation of a telecommunications system.'" *Id.* (quoting 47 U.S.C. § 153(24)).

The TCPA, and by extension the TSR claim for relief thereunder, does not apply to common carriers. *Couser v. Pre-paid Legal Services, Inc.,* 994 F.Supp.2d 1100, 1104 (S.D.Cal.2014) (citing S.Rep. No. 102–178 (1991) (explaining Congress intended TCPA to "apply to the persons *initiating* the telephone call or sending the message and ... not to the common carrier ... that transmits the call or messages and that is not the originator or controller of the content of the call or message.") The determination of whether a VoIP provider falls wholly within the definition of a common carrier "is a fact-dependent inquiry" that has been "long-contested" in the industry and "raging for years." *FTC v. Educare Centre Services, Inc.,* 433 F. Supp. 3d 1008, 1017-18 (W.D. Tex. 2020) (collecting cases, quotation omitted).

Plaintiffs correctly point out that this factual inquiry should not be determined at the pleading stage. (Resp. MD (Doc. 45) at 19 (citing *Linlor v. Five9, Inc*., No. 17CV218-MMA (BLM), 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017) (holding: "The Court . . . declines to find as a matter of law, at the pleadings stage, that Defendant is a common carrier exempt from liability under the TCPA."); *Couser,* 994 F. Supp. 2d at 1104–05 (explaining "with only pleadings to go on and no discovery as to the precise relationship between CallFire and Legal Shield, it is simply too early in this litigation for the court to affirmatively conclude that CallFire is the middleman it claims[]"); *Kauffman v. CallFire, Inc*., No. 3:14-CV-1333-H-DHB, 2015 WL 11237468, at *1 (S.D. Cal. July 22, 2015)

1    (stating that "whether CallFire is a common carrier is a factual issue better suited for

2    resolution at summary judgment[]").

3         The question of liability under the common carrier exception turns on 1) whether

4    the carrier "holds himself out to serve indifferently all potential users; and 2) whether the

5    carrier allows 'customers to transmit intelligence of their own design and choosing.'" (MD

6    (Doc. 39) at 17 (quoting *United States Telecom Ass'n v. FCC,* 295 F.3d 1326, 1329 (D.C.

7    Cir. 2002) and (citing *Payton v. Kale Realty, LLC.,* 164 F. Supp.3d 1050, 1056 (N.D. Ill.,

8    2016)).

9         The answers to these questions turn on facts that are undeveloped at this time and

10   need to be developed through discovery to determine the precise relationship between Avid

11   Telecom and its customers, and the allocation of responsibility between them. Because

12   there has been no discovery, Defendants submit without any evidentiary support that "Avid

13   Telecom is engaged in only one line of business: the provision of telecommunications

14   services to wholesale customers (other common carriers) and to end-user customers." (MD

15   (Doc. 39) at 17.) "Like all common carriers, Avid Telecom's telecommunications services

16   are "available to all potential users," and allow customers to transmit intelligence of their

17   own design and choosing. Avid Telecom does not participate in the content of any of the

18   voice services that it provides." *Id.* at 17-18. *See also* (Reply to Motion to Dismiss (Reply

19   MD) (Doc. 49) at 11 (relying on Lansky Decl. Ex. II (Doc. 49-2) ¶ 7) (asserting "In truth,

20   Avid Telecom does not have the technological ability to undertake a protocol conversion,

21   nor has it ever done so.")

22        Presentation by Defendants of supporting evidence on this issue in the Motion to

23   Dismiss is one-sided and without the benefit of adversarial discovery. The Court will not

24   consider evidence of facts outside of those alleged in the Complaint. *Hal Roach Studios,*

25   *Inc.,* 896 F.2d at 1555 n. 19.[5]

26

27   ─────────────
     [5] The Court will not strike, pursuant to LRCiv. 7.2(m)(1), this portion of the Motion to
28   Dismiss. Plaintiffs' objection in the Response sufficed, LRCiv. 7.2(m)(2). The Court did
     not consider evidence outside the record offered by Defendants. The Court did not consider
     it to support the assertion that the common carrier exception applies to Avid Telecom.

b. <u>Argument: No Substantial Assistance Provided to Others that Were Violating TSR and TCPA</u>

Summary judgment is the appropriate procedure for Defendants' arguments of due diligence to dispute the charge of substantial assistance and conscious avoidance with proffers of evidence outside the pleadings such as: Avid Telecom's "Know Your Customer" (KYC) procedures, FCC 499 registrations, and utilization of STIR/SHAKEN caller ID authentication.

For the TSR violation, Plaintiffs pled that Defendants provided "substantial assistance or support to sellers and telemarketers that were violating the TSR in contravention of 16 C.F.R. § 310.3(b)[,]" and Defendants knew or consciously avoided knowing about specific violations of the TSR. (Complaint (Doc. 1) ¶ 431.) This is enough. Plaintiffs have properly pled that Defendants assisted and facilitated actors that violated the TSR, which is itself a violation. 16 C.F.R. § 310.3(b). There is no merit to Defendants' argument that Count I should be dismissed because they are not "sellers" or "telemarketers" under the TSR. (MD (Doc. 39) at 19.) Plaintiffs do not allege this in the Complaint, and it is not a requirement for the claimed violation of 16 C.F.R. § 310.3(b). The Court disregards this challenge.

Likewise, there is no merit to the argument that Plaintiffs failed to allege facts with sufficient specificity to support the TSR claim that Avid Telecom provided "substantial assistance" to a telemarketer with "knowledge or conscious avoidance of knowing" that the telemarketer was violating the TSR. (MD (Doc. 39) at 20.) Defendants challenge as merely conclusory the factual allegations that they provided the following services: "(i) retail or wholesale voice termination; (ii) dialing software; (iii) assistance with DID rotation; (iv) DID assignment; (v) provision of leads for customers to call; and (vi) provision of 'advice.'" *Id.* (citing Complaint (Doc. 1) ¶ 431.) First, these are not conclusory assertions. These are alleged facts which, pursuant to a Rule 12(b) motion, are considered by the Court to be true for the purpose of assessing the sufficiency of the pleading.

Defendants also complain that the "Plaintiffs do not identify a single customer who allegedly received any of these services; offer any details regarding the functionality of the supposed dialing software or the location or functionality of the supposed predictive dialer; or produce a copy of a "leads" list." *Id.* Plaintiffs do, however, detail Defendants' interactions with two customers Spiller and Sumco. (Complaint (Doc. 1) ¶¶ 304, 371-403.)

Plaintiffs allege Spiller transmitted robocalls, which were made without consent to numbers on the national Do Not Call Registry, in violation of the TSR, *id.* ¶¶ 309–14, and Defendants sold Spiller thousands of DIDs, *id.* ¶¶ 316-18; switched Spiller's account so that he could "run [his] traffic if the FCC shuts off [his] business," *id.* ¶¶ 337-41; hid the rightful source of Spiller's call traffic from the Industry Traceback Group, *id.* ¶ 341, and knew what type of traffic Spiller was sending them, *id.* ¶ 336. Finally, Plaintiffs allege that Spiller testified in a deposition that Defendant Lansky personally helped Spiller with the content of his messages. *Id.* at ¶ 370.

Plaintiffs similarly allege facts against Defendants to support the claim of substantial assistance related to their client Sumco. *Id.* ¶¶ 371-403.

As noted in detail in the section of this Order considering personal jurisdiction, Avid Telecom and Defendant Reeves received notice that Avid Telecom customers were violating the TSR and/or TCPA. Plaintiffs allege multiple instances when Defendants were put on notice that a customer was violating the TSR and/or TCPA and did nothing to stop these customers from continuing to use Avid Telecom services in violation of the TSR and/or TCPA. *Id.* ¶¶ 100-135, 180-304, 323-330, 356-369, 386-389.

While Defendants assert that Plaintiffs' factual allegations should have specified how and when Avid Telecom provided "substantial assistance," the Defendants provide no law suggesting there is a heightened pleading standard for this element of the claim. "'The threshold for what constitutes 'substantial assistance' is low: 'there must be a connection between the assistance provided and the resulting violations of the core provisions of the TSR.'" (Resp. MD (Doc. 45) at 26 (quoting *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10 CIV. 3551 ILG RLM, 2012 WL 1890242, at *6 (E.D.N.Y. May 23, 2012) (quoting

*United States v. Dish Network, L.L.C.*, 667 F.Supp.2d 952, 961 (C.D. Ill. 2009) (substantial assistance found where defendant paid dealers to engage in telemarketing that violated TSR and allegedly knew or consciously avoided knowledge of violations)).

The Plaintiffs' Complaint satisfies the standards for considering a motion to dismiss under Rule 12(b)(6) set out in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) to ensure the Complaint provides Defendants with fair notice of a legally cognizable claim and the grounds on which that claim rests. The allegations challenged by Defendants are not threadbare recitals of elements of the claims supported by merely conclusory statements. The Court finds that factual allegations in the Complaint "plausibly give rise to an entitlement to relief" for violations of the TSR and TCPA.

### c.   Argument: Avid Telecom Never Initiated Calls Covered by TCPA

The Defendants challenge the sufficiency of the TCPA claims that Avid Telecom initiates telephone calls or causes any telephone calls to be initiated; according to Defendants, this allegation is "demonstrably false." (MD (Doc. 39) at 26.) Again, the Motion to Dismiss is not an appropriate procedure for challenging the demonstrable merit of a claim. As noted above, the Plaintiffs allege facts sufficient to support the claim that Defendants provided substantial assistance or support to customers, such as telemarketers, to place robocalls and that Defendants knew or consciously avoided knowing such customers were violating the TSR. The facts supporting this latter allegation are likewise sufficient to support the Count II claim that Defendants failed to exercise due diligence to prevent such violations as required under the TCPA.

There is no merit to the Defendants' argument that as a matter of law the TCPA claims fail because Avid Telecom cannot be found to have ever initiated any calls covered by the TCPA. Defendants provide no contrary law to that relied on by the Plaintiffs that "while the TCPA does not define what it means to make or initiate telephone calls, 'one can violate the TCPA either by taking the steps necessary to physically place a telephone call, or by being so involved in the placing of a specific telephone call as to be deemed to have initiated it.'" (Resp. MD (Doc. 45) at 29) (quoting *Mey v. All Access Telecom, Inc.*,

No. 5:19-CV-00237-JPB, 2021 WL 8892199, at *4 (Va. Apr. 23, 2021) (citing Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Red. 7961, 7890 (2015) (the "2015 FCC Order")). "The 2015 FCC Order instructs courts to look at 'the totality of the facts and circumstances' to determine whether an entity is sufficiently involved in placing a call to be deemed to have made or initiated it." *Id.* (citing 2015 FCC Order at ¶ 30). The FCC Order identifies several relevant factors, such as: "'the extent to which a person willfully enables fraudulent spoofing of telephone numbers' and knowingly allowing the use of a platform for unlawful purposes." *Id., see also Off. of the Att'y Gen. v. Smartbiz Telecom LLC*, No. 1:22-CV-23945-JEM, 2023 WL 5491835 at *4 (Fla. Aug. 23, 2023); *Mey*, 2021 WL 8892199 at *5; *Hurley v. Messer*, No. CV 3:16-9949, 2018 WL 4854082, at *4 (Va. Oct. 4, 2018) (finding that alleging the ability to stop illegal use of VoIP services, and the failure to take action to do so, states a claim under the TCPA).

There is no basis as a matter of law to grant the Motion to Dismiss as to Counts II and III. "Plaintiffs have sufficiently alleged both that Defendants had actual notice of the illegal use of Avid Telecom's network and failed to take steps to prevent such transmissions and that Defendants were sufficiently involved in the illegal calls to be deemed to have initiated them. Either of these is sufficient to support Plaintiff's TCPA claims." (Resp. MD (Doc. 45) at 30.) Plaintiffs are correct that Defendants' challenge to Count II and III is "a factual disagreement and should be saved for a motion for summary judgment and, if necessary, for trial." *Id.*

d. Argument: Technologically Incapable of Violating Truth in Caller ID Act

Defendants' Motion to Dismiss, likewise, fails for the Truth in Caller ID Act claims alleged in Count V. Plaintiffs allege that Defendants violated 47 U.S.C. § 227(e), a provision of the Truth in Caller ID Act, by "knowingly causing the caller identification services of the recipients of [Defendants'] call traffic to transmit misleading or inaccurate caller identification information including spoofed or otherwise misleading and inaccurate phone numbers." (Complaint (Doc. 1) ¶ 457.) "No person or entity in the United States . . . . shall, with the intent to defraud, cause harm, or wrongfully obtain anything of value,

knowingly cause, directly, or indirectly, any caller identification service to transmit or display misleading or inaccurate caller identification information in connection with any voice service or text messaging service." 47 C.F.R. § 64.1604 (emphases added). *See also United States v. Rhodes*, No. CV 21-110-M-DLC-KLD, 2022 WL 2466796, at *7 (Mont. Apr. 1, 2022), *report and recommendation adopted*, No. CV 21-110-M-DLC, 2022 WL 17484847 (Mont. Dec. 7, 2022) (finding liability accrues under 47 U.S.C. § 227(e) when the entity causing the transmission of misleading caller identification information did so knowingly).

The critical inquiry is whether Plaintiffs allege sufficient facts to support the charge that Defendants knowingly caused caller identification services to transmit or display misleading information, even if they did so indirectly. Defendants argue that Avid Telecom is not technologically capable of altering caller identification information, therefore, it cannot engage in illegal spoofing and all the call numbers are owned by the customer and initiated as an outbound call number as selected by the customer. (MD (Doc. 39) at 29.) "Avid Telecom has neither the opportunity nor ability to alter or spoof the originating number." *Id*. Plaintiffs respond that a simple internet search for the most common phone numbers appearing in Avid Telecom's call-traffic, or just periodically analyzing its own records of its traffic would have revealed many numbers transiting its network that were being illegally spoofed by its customers. The Court does not consider the merits of these assertions because, again, Defendants make arguments based on evidence outside the pleading that are appropriate for consideration on summary judgment or at trial.

Considering the factual allegations as pled in the Complaint, it is alleged that Defendants transmitted calls with obviously spoofed phone numbers for law enforcement, government, and corporate phone numbers. (Complaint (Doc. 1) ¶¶ 93, 94.) Defendants facilitated call traffic with clear indicia of fraudulent spoofing, such as high volumes of calls where the calling phone number matches the area code and exchange code of the recipient's number to falsely appear as a local call. *Id*. ¶ 88. The Plaintiffs allege numerous instances when Defendants were alerted by the Industry Traceback Group (ITG) and other

third parties to the fraudulent traffic being transited by Defendant Avid Telecom's network, including illegal and/or fraudulent calls with spoofed phone numbers. *Id.* ¶¶ 97-110. The Court concludes that the Complaint amply alleges that Defendants were clearly aware that they routinely transmitted calls with illegally spoofed phone numbers. *Id.* ¶¶ 111, 180, 184, 233, 235, 288, 290, 292, 294, 367.

### e.   Argument:  Various State Statutes

The Court notes that Defendants' Reply does not contest Plaintiffs' argument in the Response objecting to dismissal of state law claims. While a Reply is optional, LRCiv. 7.2(d), in this case the Defendants filed a Reply, without disputing this objection. For the reasons stated by Plaintiffs in the Response, the Court summarily denies the Motion to Dismiss these counts, Counts VI-XXIII. LRCiv. 7.2(i). The Court finds that the Plaintiffs adequately pled these claims with enough particularity regarding the number of calls Defendants transmitted in each state. (Complaint (Doc. 1) ¶¶ 86-89.) The Court rejects Defendants' argument, presented without any supporting law, that Plaintiffs cannot plead these claims because "people might use their cell phones outside of their home states." (Resp. MD (Doc. 45) at 33.)

Likewise, Defendants offer no rebuttal in the Reply to the Plaintiffs' arguments in the Response for why the state law claims based on "Auto-dialer Acts," which are predicated on the TCPA and other federal regulations, should not be dismissed for Indiana, Nevada, and New York. The Court summarily denies this portion of the Motion to Dismiss based on the undisputed and unrebutted arguments made by the Plaintiffs in the Response. *See* (Resp. MD (Doc. 45) at 33-45.)

Denial is especially appropriate because Defendants failed to comply with LRCiv. 12.1(c),[6] which requires certification that prior to filing a 12(b)(6) motion, the movant notified the opposing party of the issues asserted in the motion and the parties were unable

---

[6] While the Court could, it will not, grant Plaintiffs' Motion to Strike the Motion to Dismiss, pursuant to LRCiv. 12.1(c). The Motion to Dismiss was fully briefed by the parties, and it is evident that there will be no agreement regarding the issues raised in it, except as noted above for the state law claims and the question of personal jurisdiction over Defendant Avid Telecom. Accordingly, striking the Motion to Dismiss would not result in any change in this Order.

to agree that the pleading was curable in any part by amendment offered by the pleading party. Because Defendants did not comply LRCiv. 12.1(c), the Court cannot assume that the parties considered dismissal of the state law claims and Plaintiffs' objections prior to them being presented in the Motion to Dismiss. Instead, the Court finds Defendants no longer urge this argument because they do not rebut Plaintiffs' objections in the Reply. *See* (Reply MD (no reply to Plaintiffs' arguments objecting to dismissal of these claims), *see also supra above* (citing Reply MD (Doc. 49) (same basis for finding general-personal jurisdiction exists over Avid Telecom based on its incorporation in Arizona). In other words, the Court finds these arguments in the Motion to Dismiss are abandoned by the Defendants and, therefore, moot.

### B.   Motion to Stay and Refer to the FCC and FTC

Defendants ask the Court to stay the case and refer Count I to the FTC and Counts II-V to the FCC, pursuant to the primary jurisdiction doctrine. As explained by the Defendants, the doctrine is a "'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" (Motion to Stay and Refer (MSR) (Doc. 30) at 2-3 (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (citing *Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)).

"In evaluating primary jurisdiction, we consider '(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to comprehensive regulatory authority that (4) requires expertise or uniformity in administration.'" *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Syntek*, 307 F.3d at 781).

It is important to note that not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction. The doctrine is reserved for a "limited

set of circumstances" that "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Clark*, 523 F.3d at 1114 (quoting *Brown v. MCI WorldCom Network Servs*., 277 F.3d 1166, 1172 (9th Cir.2002)) (internal quotation marks omitted).

The court in *Brown* set out the parameters for applying the four *Astiana* factors and explained the doctrine is NOT intended to "secure expert advice" for the courts from regulatory agencies every time a court is presented with an issue within the agency's ambit. *Brown*, 277 F.3d at 1172 (citing *United States v. General Dynamics Corp*., 828 F.2d 1356, 1365 (9th Cir.1987)). "Primary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.* (citing *Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 442 (1907)). "'The doctrine applies when protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.'" *Id.* (quoting *General Dynamics*, 828 F.2d at 1362) (internal quotation marks and citation omitted).

Defendants' request to stay and refer the case pursuant to the primary jurisdiction doctrine requests the referral as a means for obtaining "expert advice." *See* (Reply MSR (Doc. 48) at 4 (explaining referral affords the Court the benefit of obtaining expert advice without ceding jurisdiction; accusing Plaintiffs of seeking to keep the Court from obtaining expert advice); at 7 (referral makes expert agency available to provide its expert opinion(s) to the Court upon request); at 9 (after the referral, the Court retains authority and ability to rule as it sees fit, while providing a procedure for it to obtain expert advice). Like the Plaintiffs, the Court understood the needed expert advice was "based solely on Defendants' assertions about the purported 'open issues' concerning the definition of "consent" under the TCPA and TSR." (Resp. MSR (Doc. 42) at 6 (citing MD (Doc. 30) at 6, 8, 9, 10.)

Plaintiffs are correct that "[i]n the Ninth Circuit, consent in the telemarketing space is not a matter of first impression, and it is not a particularly complicated legal issue requiring the FTC's or FCC's expertise." *Id.* at 6, *see Moskowitz v. Am. Sav. Bank, F.S.B.*,

37 F.4th 538, 541 (9th Cir. 2022) (finding consent exists where a person "knowingly releases" his or her telephone number, and it is "'effective' whe[n] the responsive messages relate to the same subject or type of transaction" which initially prompted the person to share his or her telephone number) (relying on *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044-45 (9th Cir. 2017); In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C. Rcd. 8752, 8769 (Oct. 16, 1992)), *see also Berman v. Freedom Fin. Network, LLC*. 30 F.4th 849, 853 (9th Cir. 2022) (finding consent when obtained via websites, using a two-part test to determine whether terms and conditions presented on websites provide "reasonably conspicuous notice" as to bind its users to terms of the agreements); *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1204 (9th Cir. 2022) (citing 16 C.F.R. § 310.4(b)(1)(v): "In 2008, the FTC amended the [TSR] to prohibit unsolicited robocalling in the form of 'any outbound telephone call that delivers a prerecorded message' by telemarketers without prior consent from the consumer."); *Trim v. Mayvenn, Inc*., No. 20-CV-03917-MMC, 2022 WL 1016663, at *4 (N.D. Cal. Apr. 5, 2022) (citing 15 U.S.C. § 6153 and finding TCPA's provision for business relationship ("EBR") defense should be construed to maximize consistency with the identical TSR provision). The Court agrees with Plaintiffs that there is ample law in the Ninth Circuit for this Court to address questions about consent if Defendants raise the issue as an affirmative defense in this action.

The Court notes that consent is not an element of the Plaintiffs' *prima facie* case under the TCPA but is an affirmative defense. "Prior express consent is a complete defense to ... [a] TCPA claim." *Van Patten, LLC*, 847 F.3d at 1044.  (9th Cir. 2017). As such, there being no answer yet filed by Defendants, consent is not at issue in this case. The Court does not consider this technicality to be dispositive in relation to the motion to refer. The deciding factor upon which this Court relies was presented by Notice of Supplemental Authority[7] filed by Plaintiffs on December 22, 2023, attaching the Second Report and Order released by the FCC on December 18, 2023. One of Defendants' central arguments

---

[7] Defendants do not object to this supplemental filing.

1    under the primary jurisdiction doctrine for staying and referring the case was to afford the

2    FCC an opportunity to consider the then pending Further Notice of Proposed Rulemaking

3    (FNPRM) and Notice of Inquiry (FCC 23-107) and corresponding "open issues." Now,

4    those open issues have been addressed by the FCC.

5          This brings the Court to the next reason for denying the motion. Defendants provide

6    only broad sweeping reasons for referring this case under the primary jurisdiction doctrine.

7    Defendants' approach would require referral of every case brought in a court of law that

8    involves the federal regulations overseen by the FCC and FTC. For example, Defendants

9    believe the claims brought by Plaintiffs "are subject to such significant and current legal

10   and regulatory uncertainty that needs to be resolved for the Court to properly adjudicate

11   issues in this proceeding." (Reply MSR (Doc. 48) at 9.) Defendants submit there "is a

12   critical need for the involvement of an expert agency to ensure national uniformity," as

13   follows:

14          Piecemeal decision-making by individual courts across the nation does not
            work in a dynamic industry like telecommunications—which requires a deep
15          understanding of the policy implications of key policy decisions—and
            common set of known and understood rules—that are applied regardless of
16          where a call originates or terminates. The current chaotic patchwork of rules
            and regulations will become irretrievably unmanageable—posing a threat to
17          our critical telecommunications infrastructure—if each court is allowed to
            create its own regulatory framework.
18

19   *Id.* They assert "[t]his case is literally the paradigm of a case where the primary jurisdiction

20   doctrine should be applied." *Id.* Defendants do not specify the issues the allegedly legal

21   and regulatory uncertainties apply to or say what issues require uniformity, clarification,

22   or decisions by the agency before the court can adjudicate them.

23          In an effort to satisfy the exclusivity of the doctrine, Defendants argue that

24   "consent" is only one of several essential open issues necessitating referral but fail to

25   provide even one reference to such "other" open issue(s). Instead, they refer to a form of

26   Order they submit for the Court to issue upon granting the motion. It contains a laundry

27   list of approximately eight issues to refer under the doctrine. *Id.*, Ex. 1 (Doc. 48-1) at 3.[8]

28   _____

[8] The Court denies the Motion to Strike, pursuant to LRCiv. 7.2(m), filed by Plaintiffs for
Exhibit 1, the form of order, and White Paper attached to the Reply. The Court "may

Without any explanation as to why and how these eight questions, once answered by the agency, should factor into this Court's decision on the merits of which issues, the Court is forced to read between the lines to determine what "other" open issues might exist beyond those related to Defendants' desire to raise the affirmative defense of consent. The proposed questions seem to challenge Plaintiffs' reliance on Industry Traceback Group notices that Avid Telecom was being used illegally in violation of TCPA and TSR. The Court is capable of assessing the relevancy of proffered evidence. Additionally, Defendants want to ask the FCC if a VoIP-based provider of long-distance telecommunications services is a common carrier subject to applicable exemptions. As noted above in reference to the Motion to Dismiss, whether the common carrier exception applies turns on facts not yet developed in this case. There is nothing overly complicated about the law the Court will apply to determine whether the exception applies to Avid Telecom.

While Defendants assert "[e]very predicate element of the test is plainly satisfied," (Reply MSR (Doc. 48) at 9), the motion to refer fails based on the first element: whether there is a need to stay and make an agency referral to resolve an issue. There is no matter of first impression or a particularly complicated issue; there is no clear risk of conflicting judicial versus administrative opinions. This case does not involve technical or policy considerations outside the conventional experience of judges. There is no need to stay and refer this case to either the FCC or FTC. The Court denies the motion because this case does not involve any of the limited set of circumstances that have been reserved for administrative resolution under the primary jurisdiction doctrine.

**Accordingly,**

**IT IS ORDERED** that the Motion to Stay and Refer (Doc. 30) is DENIED.

---

decline to consider new evidence or arguments raised in reply, and generally should not consider the new evidence without giving the non-movant an opportunity to respond." *Salazar v. Driver Provider Phoenix LLC*, No. CV-19-05760- PHX-SMB, 2022 WL 17824287, at *1 (D. Ariz. Dec. 8, 2022) (internal citations removed). The Court did not base the denial of the Motion to Stay and Refer on Plaintiffs' LRCiv. 12.1(c) arguments, therefore, the White Paper was not relevant and not considered. *See* Reply MSR (Doc. 48) at 3 n.2 (proffering White Paper to dispel arguments of surprise). The Court did not find Exhibit 1, the form of Order, to be evidentiarily persuasive. There was no need to afford Plaintiffs an opportunity to respond.

1    **IT IS FURTHER ORDERED** that the Motion to Dismiss (Doc. 39) is DENIED.

2    **IT IS FURTHER ORDERED** that the Motions to Strike (Docs. 50 and 51) are

3    DENIED AS MOOT.

4    **IT IS FURTHER ORDERED** that the Motion to Strike Supplement Re: Motion

5    to Dismiss (Doc. 63) is GRANTED.

6    **IT IS FURTHER ORDERED** that within 14 days of the filing date of this Order,

7    the Plaintiffs have leave to file an amended Complaint to state an alter ego claim of

8    individual liability against Defendant Lansky.

9    **IT IS FURTHER ORDERED** that in the event, Plaintiffs do not amend the

10   Complaint, the Defendants shall file an Answer by June 14, 2024.

11   Dated this 8th day of May, 2024.

12

13

14   Honorable Cindy K. Jorgenson
     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28