**Exhibit A**

**Plaintiffs' List of Counts and Elements of Proof**

Plaintiffs filed the Complaint on behalf of their respective jurisdictions against Michael D. Lansky, L.L.C., dba Avid Telecom, Michael D. Lansky, individually and as Chief Executive Officer, and Stacey Reeves, individually and as Vice President of Operations and Sales, (collectively "Defendants") alleging violations of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310 *et seq.*; the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.;* the Truth in Caller ID Act ("TCIA"), 47 U.S.C. § 227(e) and certain state laws. For each count of the Complaint, a summary is provided below as to the elements of proof, affirmative defenses and the respective burdens of proof.

<u>**COUNT I – By All Plaintiffs**</u>

<u>**Violations of the Federal Telemarketing Sales Rule**</u>

<u>**16 C.F.R. §§ 310.3(b)**</u>

1.      Plaintiffs must show they are proper parties to bring claims under the Telemarketing Act, 15 U.S.C. §§ 6103(a) and (f)(2). Plaintiffs must show they: 1) are attorneys general of their State or other authorized officers of their States; 2) had reason to believe that the interests of the residents of their states had been or were being threatened or adversely affected because any person had engaged or was engaging in a pattern or practice of telemarketing which violated any rule promulgated by the FTC under 15 U.S.C. § 6102; 3) as *parens patriae*, brought the action on behalf of residents of their states; 4) in an appropriate district court of the United States; 5) to enjoin such telemarketing, to enforce compliance with such rule of the Commission, to obtain damages, restitution or other compensation on behalf of such residents of their States, or to obtain such further and other relief as the court may deem appropriate.

2.      The Federal Trade Commission promulgated the TSR including, 16 C.F.R. § 310.3(b), under its authority pursuant to 15 U.S.C. § 6102.

3.      Plaintiffs allege in Count I of the Complaint that Defendants violated the TSR, 16 C.F.R. § 310.3(b). To prevail, the Plaintiffs must show that Defendants provided substantial assistance or support to any seller or telemarketer engaged in telemarketing while Defendants knew or were consciously avoiding knowing that the seller or

telemarketer was engaged in acts or practices that violated TSR §§ 310.3(a), (c) or (d), or 310.4, including but not limited to whether the seller or telemarketer:

        A.     Misrepresented material aspects of goods or services, in violation of 16 C.F.R. § 310.3(a)(2)(iii);

        B.     Misrepresented the seller's or telemarketer's affiliation with corporations or government entities, in violation of 16 C.F.R. § 310.3(a)(2)(vii);

        C.     Made false or misleading statements to induce any person to pay for goods or services, in violation of 16 C.F.R. § 310.3(a)(4);

        D.     Failed to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to caller identification services used by call recipients in violation of 16 C.F.R. § 310.4(a)(8);

        E.     Initiated or caused the initiation of outbound calls to telephone numbers on the National DNC Registry, in violation of 16 C.F.R. § 310.4(b)(1)(iii)(B);

        F.     Initiated or caused the initiation of outbound telephone calls that delivered prerecorded messages, in violation of 16 C.F.R. § 310.4(b)(1)(v); and/or

        G.     Failed to disclose the identity of the seller of the goods or services truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, in violation of 16 C.F.R. § 310.4(d)(1).

    4.     The TSR does not define "substantial assistance or support" but the FTC has provided guidance on its rule and a number of courts, including courts in the Ninth Circuit and others have defined it. Courts have found "substantial assistance or support" to include three elements: (1) there must be an underlying violation of the TSR; (2) the person must provide substantial assistance or support to the seller or telemarketer violating the TSR; and (3) the person must know or consciously avoid knowing that the seller or telemarketer

is violating the TSR. *FTC v. Lake* 181 F. Supp. 3d 692, 700–01 (C.D. Cal. 2016). "The threshold for what constitutes substantial assistance is low" *Id*. and requires showing only more than "mere casual or incidental assistance to the telemarketer." *Consumer Financial Protection Bureau v. Daniel A. Rosen, Inc.*, 2022 WL 1514439, *4 (C.D.Cal. 2022). *Consumer Financial Protection Bureau v. Nesheiwat*, No. 21-56052, 2022 WL 17958636, at *1 (9th Cir. Dec. 27, 2022); *FTC v. Consumer Health Benefits Ass'n*, No. 10-CV-3551 (ILG), 2011 WL 3652248, at *5 (E.D.N.Y. Aug. 18, 2011) (quoting Telemarketing Sales Rule, 60 Fed. Reg. 43842-01, 43852 (Aug 23, 1995)). Substantial assistance "does not impose a demanding standard[.]" *FTC v. Day Pacer LLC*, 689 F. Supp. 3d 609, 642, (N.D. Ill. 2023).

5.    "To constitute substantial assistance, there must be a connection between the assistance provided and the resulting violations of the core provisions of the TSR. *U.S. v. Dish Network, L.L.C.*, 667 F. Supp. 2d 952, 961, (C.D. Ill. 2009). The TSR does not require a showing of a direct connection between the substantial assistance given and the underlying violation. *See F.T.C. v. Chapman,* 714 F.3d 1211, 1216 (10th Cir. 2013) (Noting the Commission rejected a rule that proposed a requirement that the "substantial assistance [be] related to the commission or furtherance of that act or practice." Statement of Basis and Purpose and Final Rule, Telemarketing Sales Rule, 60 Fed. Reg. 43842, 43852 (Aug. 23, 1995)).

6.    Knowledge can be inferred from a combination of suspicion and indifference to the truth. See *United States v. Salinas*, 763 F.3d 869, 875 (7th Cir. 2014) (discussing the "ostrich instruction"); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (finding that a willfully blind defendant takes deliberate actions to avoid confirming a high probability of wrongdoing). Knowledge may be inferred when the person providing assistance receives complaints about violations. *FTC v. Day Pacer LLC*, 689 F. Supp. 3d at 642. Further, "knowledge of the agent is imputed to the principal." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020).

7. A person consciously avoids knowing about a violation when "there are facts and evidence that support an inference of deliberate ignorance." *Id.*; *see also United States v. L.E. Myers Co.*, 562 F.3d 845, 854 (7th Cir. 2009); *F.T.C. v. Chapman*, 714 F.3d 1211, 1219 (10th Cir. 2013) (quoting Fed. Trade Comm'n, *Complying with the Telemarketing Sales Rule*, (Feb. 2011), https://www.ftc.gov/business-guidance/resources/complying-telemarketing-sales-rule) ("[T]aking deliberate steps [*43] to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability.").

8. As to the underlying TSR violations, the Plaintiffs will bear the burden of showing calls at issue meet the following definitions:

A. A "seller" is "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2(dd)

B. "Telemarketing," in relevant part, as "a plan, program, or campaign which is conducted to induce the purchase of goods or services . . . by use of one or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(gg)

C. A "telemarketer" is "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor." 16 C.F.R. § 310.2(ff)

9. The Plaintiffs must prove the elements of the TSR violation by a preponderance of the evidence. *F.T.C. v. Com. Planet, Inc.*, 878 F. Supp. 2d 1048, 1055 (C.D. Cal. 2012), *aff'd in part*, 642 F. App'x 680 (9th Cir. 2016), and *aff'd in part, vacated in part, remanded*, 815 F.3d 593 (9th Cir. 2016).

10. A party claiming an exemption from coverage under the TSR or that calls meet an exemption under the TSR bear the burden of proof. The established business relationship and the telemarketing to business call provisions of the TSR are written as exemptions to the general rule. An exemption from the general rule is treated as an

5

affirmative defense for which the party asserting the defense bears the burden of proof. *United States v. Dish Network*, 75 F. Supp. 3d 942 (C.D. Ill. 2014) (*vacated in part on other grounds*); *Shaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 126 S. Ct. 528, 534, 163 L. Ed. 2d 387 (2005) (burden of proof shifts to defendant when element can be fairly characterized as an exemption); *Tourgeman v. Nelson & Kennar*, 900 F.3d 1105 (9th Cir. Cal. 2018.).

11.    A defendant is individually liable for corporate violations of the TSR if "(1) he participated directly in the [unlawful] acts *or* had the authority to control them and (2) he had knowledge of [such conduct] . . . or was aware of a high probability of" such conduct and "intentional[ly] [*3] [*3] avoid[ed] . . . the truth." *Consumer Financial Protection Bureau v. Nesheiwat*, No. 21-56052, 2022 WL 17958636, at *1 (9th Cir. Dec. 27, 2022) (quoting *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009)).

### COUNT II – By All Plaintiffs

### Violations of the Federal TCPA – 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(n)(3)

### (Failure to Exercise Due Diligence/KYC)

12.    To target and eliminate unlawful robocalls, the FCC requires that all originating voice service providers know their customers and exercise due diligence in ensuring that their services are not used to originate illegal traffic and further recommends that voice service providers exercise caution in granting access to high-volume origination services, to ensure that bad actors do not abuse such services.

13.    The FCC has authorized and encouraged voice service providers to block calls in specific circumstances.  TCPA rule 47 C.F.R. § 64.1200(k) provides that voice service providers may block calls so that they do not reach a called party when the calls purport to originate from:

> A.    Numbers where the subscriber of the originating number has requested that calls purporting to originate from that number be blocked

because the number is used for inbound calls only (Do Not Originate list numbers);

B.     Numbers that are not valid under the North American Numbering Plan ("NANP");

C.     Valid NANP numbers that are not allocated to a provider by the NANP Administrator or Pooling Administrator; and

D.     Valid NANP numbers that are allocated to a provider by NANP or the Pooling Administrator *but* are unused, so long as the provider blocking the calls is allocatee of the number and confirms that the number is unused or has obtained verification from the allocatee that the number is unused at the time of the blocking.

14.     TCPA rule 47 C.F.R. § 64.1200(n)(3) provides that a voice service provider must take affirmative, effective measures to prevent new and renewing customers from using its network to originate illegal calls, including knowing its customers and exercising due diligence in ensuring that its services are not used to originate illegal traffic.[1]

15.     Defendants did not choose to regularly, if at all, block calls made from telephone numbers that the FCC has authorized could be blocked so that those calls do not reach a called party pursuant to 47 C.F.R. § 64.1200(k).

16.     Defendants violated 47 C.F.R. § 64.1200(n)(3) by failing to take affirmative, effective measures to prevent new and renewing customers from using its network to originate illegal calls, including knowing its customers and exercising due diligence in ensuring that its services are not used to originate illegal traffic.

17.     As with Count I, the Plaintiffs bear the burden of proving the elements of this TSR violation by a preponderance of the evidence. See para.7.

---

[1] *In the Matter of Lingo Telecom, L.L.C., Notice of Apparent Liability for Forfeiture*, File No. EB-TCD-24-00036425 (rel. May 28, 2024).

**COUNT III – By All Plaintiffs**

**Violations of the Federal TCPA – 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B)**

**and its implementing rule, 47 C.F.R. §§ 64.1200(a)(2) and (a)(3)**

**(Robocalls to Cellular and Residential Telephone Lines)**

18.    Plaintiffs allege that Defendants violated the TCPA under 47 U.S.C. §§ 227(b)(1)(B) and (b)(1)(A)(iii) by engaging in a pattern or practice of initiating telephone calls to residential telephone lines and cellular telephone lines using artificial or prerecorded voices to deliver messages without the prior express written consent of the called party.

19.    Plaintiffs further allege Defendants violated TCPA rule, 47 C.F.R. § 64.1200(a)(2), by engaging in a pattern or practice of initiating or causing telephone calls to be initiated that include or introduce advertisements or constitute telemarketing to cellular telephone lines using artificial or prerecorded voices to deliver messages without the prior express written consent of the called parties.

20.    Plaintiffs further allege Defendants violated TCPA rule, 47 C.F.R. § 64.1200(a)(3), by engaging in a pattern or practice of initiating telephone calls to residential telephone lines using artificial or prerecorded voices to deliver messages without the prior express written consent of the called parties.

21.    The TCPA states that it is a violation for any person within the United States to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using...an artificial or prerecorded voice" to any "cellular telephone service." 47 U.S.C. § 227(b)(1)(A). *Burke v. Direct Energy, LP*, 2021 U.S. Dist. LEXIS 178408, *2 (S.D. Tex. Sept. 20, 2021).

22.    The TCPA states that "[i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States…to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the call party, unless the call is initiated for emergency purposes…." 47 U.S.C § 227(b)(1)(B).

23.    The TCPA prohibits the initiation of telephone solicitations to cellular telephone lines using artificial or prerecorded voices. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 (2012); *Lester v. Wells Fargo Bank N.A.*, 805 Fed Appx. 288, 289 (5th Cir. 2020); *Ybarra v. Dish Network, L.L.C.*, 807 F. 3d 635, 640 (5th Cir. 2015); *Thomas*, 559 F. Supp. 3d at 562-63 (multiple unwanted phone calls with prerecorded messages give rise to a concrete injury under the TCPA). Cellular phones were added to TCPA coverage in 2015 when the FCC recognized that the invasion of privacy from an unwanted call may be greater "where the calls are received on a phone that the consumer may carry at all times." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, ¶124 (2015).

24.    "The three elements of a TCPA claim [under Section 227(b)(1)] are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [or an artificial or prerecorded voice]; (3) without the recipient's prior express consent." *Shields v. Gawk Inc.*, No. 3:18-CV-00150, 2019 WL 1787781, at *3 (S.D. Tex. Apr. 24, 2019), *report and recommendation adopted*, No. 3:18-CV-00150, 2019 WL 2103423 (S.D. Tex. May 14, 2019) (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). The same analysis would apply to calls made to residential lines. 47 C.F.R. § 64.1200(a)(3). The burden of proving a call was made with the prior express consent of the called party lies with the seller or telemarketer. An exemption from the general rule is treated as an affirmative defense for which the party asserting the defense bears the burden of proof. *Shaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 126 S. Ct. 528, 534, 163 L. Ed. 2d 387 (2005) (burden of proof shifts to defendant when element can be fairly characterized as an exemption); *Tourgeman v. Nelson & Kennar*, 900 F.3d 1105 (9th Cir. Cal. 2018.).

25.    "To be liable under the 'artificial or prerecorded voice' section of the TCPA, under Section 227(b)(1), a defendant must make a call and an artificial or prerecorded voice must actually play." *Ybarra v. Dish Network, L.L.C.*, 807 F. 3d 635, 640 (5th Cir. 2015).

"With a prerecorded voice, though, unless the recipient answers, an artificial or prerecorded voice is never used." *Id.* at 641.

26.    While the TCPA nor its rules define what it means to make or initiate telephone calls, 'one can violate the TCPA either by taking the steps necessary to physically place a telephone call, or by being so involved in the placing of a specific telephone call as to be deemed to have initiated it." (quoting *Mey v. All Access Telecom, Inc.*, No. 5:19-CV-00237-JPB, 2021 WL 8892199, at *4 (Va. Apr. 23, 2021) (citing Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7890 (2015) (the "2015 FCC Order")).

27.    In determining whether a party "initiated" a call, the 2015 FCC Order instructs courts to look at 'the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it." *Id.* (citing 2015 FCC Order at ¶ 30). With the respect to this second prong, the FCC further states for those that offer calling platform services to others to use, it will also consider as a factor whether they "knowingly allowed its client(s) to use that platform for unlawful purposes." *Id.* The FCC Order identifies several relevant factors, such as: "'the extent to which a person willfully enables fraudulent spoofing of telephone numbers' and knowingly allowing the use of a platform for unlawful purposes." *Id., see also Off. of the Att'y Gen. v. Smartbiz Telecom LLC*, No. 1:22-CV-23945-JEM, 2023 WL 5491835 at *4 (Fla. Aug. 23, 2023); *Mey*, 2021 WL 8892199 at *5; *Hurley v. Messer*, No. CV 3:16-9949, 2018 WL 4854082, at *4 (Va. Oct. 4, 2018) (finding that alleging the ability to stop illegal use of VoIP services, and the failure to take action to do so, states a claim under the TCPA).

28.    Additionally, factors can include: "[t]he extent to which the defendant controls the call's message"; "[t]he extent to which the defendant controls the timing or initiation of the call"; "[t]he extent to which the defendant controls who receives the call." *Cunningham v. Montes*, 378 F.Supp.3d 741, 747–48 (W.D. Wis. 2019).

29.    A person or entity, including a common carrier, can also be liable under the TCPA if they provide "transmission facilities" and demonstrate "a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, ¶54 (1992).

30.    "[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved.  Individuals who directly (and here, knowingly and wilfully) [sic] violate the TCPA should not escape liability solely because they are corporate officers." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001).

31.    Many "courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Cunningham v. Britereal Management, Inc.*, No. 4:20-CV-144, 2020 WL 7391693, at *5–6 (E.D. Tex. Nov. 20, 2020), *adopted*, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020)). "If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force." *Maryland v. Universal Elections, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011)*.

### COUNT IV – By All Plaintiffs
### Violations of the Federal TCPA – 47 U.S.C. §§ 227(c) and its
### implementing rule, 47 C.F.R. § 64.1200(c)(2)
### (Calls to Telephone Numbers on the National DNC Registry)

32.    Plaintiffs allege that Defendants violated the TCPA by engaging in a pattern or practice of initiating telephone solicitations to residential telephone subscribers whose telephone numbers were listed on the National Registry in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

33.    The FCC Rule provides that "(c) No person or entity shall initiate any telephone solicitation, as defined in paragraph (f)(12) of this section, to…(2) A residential telephone subscriber who has registered his or her telephone number on the national do not call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). Sellers and telemarketers must honor the registration as long as the number remains on the National Registry. *Id*. Consumers may add their wireless telephone numbers to the National Registry, as well as their residential land lines. 47 C.F.R. § 64.1200(e).

34.    To prevail on a TCPA count under 47 U.S.C. § 227(c), the plaintiff must show that the call recipient (1) is a residential telephone subscriber who (2) registered that telephone number with the Do Not Call Registry, and (3) nonetheless received an unsolicited call to that number initiated by a person or entity. 47 C.F.R. § 64.1200(c)(2). *Lyman v. QuinStreet, Inc.*, No. 23-CV-05056-PCP, 2024 WL 3406992, at *3 (N.D. Cal. July 12, 2024).

35.    The National Registry was established in 2003 to enable individuals to avoid receiving unwanted telemarketing calls. 47 C.F.R. § 64.1200(c)(2) prohibits making a telemarketing call to a number listed on the National Registry without having an established business relationship with the telephone subscriber. *Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 448 (S.D. Tex. 2021); *Cunningham v. Mark D. Guidubaldi & Assoc.*, 2019 U.S. Dist. LEXIS 38652, *4, *adopted by*, 2019 U.S. Dist. LEXIS 170945 (E.D. Tex. Jan. 11, 2019). The established business relationship provision is written as an exemption to the general rule. An exemption from the general rule is treated as an affirmative defense for which the party asserting the defense bears the burden of proof. *Shaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 126 S. Ct. 528, 534, 163 L. Ed. 2d 387 (2005) (burden of proof shifts to defendant when element can be fairly characterized as an exemption); *Tourgeman v. Nelson & Kennar*, 900 F.3d 1105 (9th Cir. Cal. 2018.).

36.    The established business relationship exemption for calls made to telephone numbers on the Registry is inapplicable for callers initiating prerecorded telemarketing calls. 47 U.S.C. § 227(b).

37.    It is not necessary for the Plaintiffs to prove that the calls were made to the person who registered the number on the National Registry, merely that the number is on the Registry. *United States v. Dish Network LLC*, 75 F. Supp 3d 916,936 (C.D. Ill. Dec. 11, 2014).

38.    As the Plaintiffs alleged multiple violations of the TCPA and its implementing rules, the basic standards of proof related to TCPA claims are the same such that, paragraphs 26 through 31 also apply to this count.

### COUNT V – By All Plaintiffs
### Violations of the Federal Truth in Caller ID Act – 47 U.S.C. § 227(e)
### (Prohibition Against Spoofing)

39.    The TCPA, 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604(a), prohibit any person or entity within the United States, or any person or entity outside the United States if the recipient is within the United States, with the intent to defraud, cause harm, or wrongfully obtain anything of value, from knowingly causing, directly or indirectly, any caller identification service to transmit misleading or inaccurate caller identification information in connection with any voice service or text messaging service.

40.    In enforcement actions, the FCC has found that when an entity spoofs a large number of calls in a robocall campaign, it causes harms to the subscribers of the numbers that are spoofed, the consumers who receive the spoofed calls, and the terminating providers forced to deliver calls to consumers and handle the "consumers' ire," thereby increasing their costs.[2]

---

[2] *John C. Spiller et al*., File No.: EB-TCD-18-0027781, Notice of Apparent Liability for Forfeiture, 35 FCC Rcd 5948, 5957-61, paras 23-33 (2020).

41.    The FCC has further held when spoofing is done in conjunction with an illegal robocalling campaign—itself a harmful practice—it indicates an intent to cause harm.[3]

42.    Defendants violated 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604(a) by knowingly causing the caller identification services of the recipients of their call traffic with spoofed phone numbers to transmit misleading or inaccurate caller identification information.

43.    Defendants knew or should have known that they accepted and profited from illegal robocalls with misleading or inaccurate spoofed phone numbers, which sought to defraud, cause harm, or wrongfully obtain things of value from the call recipients.

44.    As this count is also codified in the TCPA, Plaintiffs believe the same standards will apply to determine whether Defendants can be deemed to have "initiated" calls at issue, as well as whether the individual defendant can be held personally liable and as such, paragraphs 26 through 31 are restated as applicable to this Count.  In determining whether a party "initiated" a call, the 2015 FCC Order instructs courts to look at 'the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it." 2015 FCC Order at ¶ 30.  Specifically, the FCC noted that one of the factors to consider is the extent to which a person willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either functionality to clients, can be relevant in determining liability for TCPA violations.

---

[3] *Roesel Notice of Apparent Liability*. 33 FCC Rcd at 9218-19, para. 40.

14

**COUNT VI – By State of California**

**Violations of Business and Professions Code Section 17200 (Unfair Competition)**

45.     Plaintiff, the People of the State of California, allege Count VI for violations of California Business and Professions Code § 17200 et seq., California's Unfair Competition Law (UCL). The People of the State of California allege that Defendants violated the UCL because they violated the Telemarketing Sales Rule ("TSR") and the Telephone Consumer Protection Act ("TCPA"). As a result, the People of the State of California allege that Defendants may be enjoined and must be found liable for civil penalties under California Business and Professions Code §§ 17204 and 17206, respectively.

The UCL.

46.     California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To bring a UCL claim, "a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice or (2) unfair, deceptive, untrue or misleading advertising." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (citing *Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999)). Because the text "is written in the disjunctive," an act or practice may be challenged if it fits within any one of these three prongs of unfair competition – unlawful, unfair, or fraudulent. *Id*.

Violations of the TSR and TCPA are Violations of the Unlawful Prong of the UCL.

47.     Unlawful business activity includes "anything that can properly be called a business practice and that at the same time is forbidden by law." *Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.,* 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003). "The 'unlawful' practices prohibited by the UCL 'are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory or court-

15

made.'" *Id.* "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 684 (N.D. Cal. 2020) (citing *Cel-Tech Comm'ns, Inc.*, 83 Cal.Rptr.2d 548 at 180).

Injunction and Civil Penalties.

48.     In bringing an enforcement action under the UCL, the California Attorney General is authorized to seek multiple remedies, including injunctive relief and civil penalties. Cal. Bus. & Prof. Code §§ 17204 and 17206.

## COUNT VII – By the State of Florida
### Violations of Chapter 501, Part II, Florida Statutes

49.     Plaintiff, State of Florida, Office of the Attorney General, Department of Legal Affairs ("State of Florida") brings Count VII for violations of Chapter 501, Part II, Florida Statutes ("FDUTPA"). The State of Florida's claim encompasses three legal theories. First, Defendants violated the Telemarketing Sales Rule ("TSR") and those violations are defined as violations of FDUTPA. Second, the State of Florida alleges that Defendants violated FDUTPA's prohibition on deceptive trade practices. Third, the State of Florida alleges that Defendants violated FDUTPA's prohibition on unfair trade practices. Finally, the State of Florida alleges that under any of these three theories Defendants may be enjoined and may be liable for civil penalties if their conduct was willful. The elements of each theory, in turn, are as follows.

Violations of the TSR are Defined as FDUTPA Violations.

50.     The FDUTPA defines a "violation of this part" to include violations of "[a]ny rules promulgated pursuant to the Federal Trade Commission Act." § 501.203(3), Florida Statutes. The TSR's enabling statute is the Telemarketing and Consumer Fraud and Abuse

1    Prevention Act (15 U.S.C. §§ 6101-08). Under 15 U.S.C. § 6102(c)(1), violations of the

2    TSR are treated as violations of rules passed under the Federal Trade Commission Act (15

     U.S.C. § 57a). Violations of rules passed under the FTC Act are unfair and deceptive within

3    the scope of 15 U.S.C. § 45, as set forth in 15 U.S.C. § 57a(d)(3) liability are coextensive

4    with the elements of Count I, as set forth above.). *See also United States v. Dish Network,*

5    *L.L.C.*, 75 F. Supp. 3d 942, 1004 (C.D. Ill. 2014) ("A violation of the TSR constitutes an

     unfair and deceptive act or practice in violation of § 5(a) of the [Federal Trade

6    Commission] Act."). Therefore, the elements of the State of Florida's first theory of

7    liability are coextensive with the elements of Count I, as set forth above.

8

     Deceptive Trade Practices in Violation of FDUTPA.

9        51.    Under FDUTPA, a deceptive trade practice is one which is "likely to deceive

10   a consumer acting reasonably in the same circumstances." *Coleman v. CubeSmart*, 328 F.

11   Supp. 3d 1349, 1361 (S.D. Fla. 2018) (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d

     977, 983 (11th Cir. 2016)).[4] Whether a practice is likely to mislead is determined based on

12   the net impression it creates on a reasonable consumer. *FTC v. RCA Credit Servs., LLC*,

13   727 F. Supp. 2d 1320, 1329 (M.D. Fla. 2010). *See also Matter of Cliffdale Assocs., Inc.*,

14   103 F.T.C. 110 (1984); *Fed. Trade Comm'n v. On Point Glob. LLC*, No. 19-25046-CIV,

     2021 WL 4892228, at *8 (S.D. Fla. Sept. 29, 2021) ("the term 'deceptive' is meant to be

15   'flexible,' and courts must look to the 'overall, net impression rather than the literal truth

16   or falsity of the words.'") (quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 384–85

     (1965)).

17

18

19
     _____

20   [4] FDUTPA state that in construing unfair and deceptive trade practices, "due
     consideration and great weight shall be given to the interpretations of the Federal Trade
     Commission and the federal courts" relating to the Federal Trade Commission Act, 15

21   U.S.C. s. 45(a)(1). § 501.204(2).

Unfair Trade Practices in Violation of FDUTPA.

52.     Under FDUTPA, and unfair trade practices is one which 1) causes risk of substantial injury, that 2) must not be outweighed by any countervailing benefits to consumers or competition that the practice produces, and 3) must be an injury that consumers themselves could not reasonably have avoided. *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. Dist. Ct. App. 2014).

Injunction and Civil Penalties.

53.     When seeking injunctive and other statutory relief, the Attorney General need not establish actual damages, irreparable harm, lack of an adequate legal remedy, or that an injunction is in the public interest, and need only show a clear right to an injunction by establishing that Defendant's practices violate FDUTPA. *Off. of Att'y Gen. v. Bilotti*, 267 So. 3d 1, 3 (Fla. Dist. Ct. App. 2019). Under FDUTPA, civil penalties may be imposed against "any person, firm, corporation, association, or entity, or any agent or employee of the foregoing, who is willfully using, or has willfully used, a method, act, or practice declared unlawful under s. 501.204." § 501.2075, Fla. Stat. "Willful violations occur when the person knew or should have known that his or her conduct was unfair or deceptive or prohibited by rule." § 501.2075, Florida Statutes.

### COUNT VIII – By the State of Indiana
### Violations of the Telephone Solicitation of Consumers Act (the "TSCA")
### Indiana Code 24-4.7-4

54.     To make a showing that Defendants violated Indiana's Telephone Solicitation of Consumers Act ("TCSA"), Plaintiff State of Indiana will need to show that Defendants provided substantial assistance or support to a "telephone solicitor, a supplier, or a caller" that violated the TSCA. Further, Plaintiff State of Indiana will need to show that Defendants knew or consciously avoided knowing that the "telephone solicitor, a supplier, or a caller" was violating the TSCA.

18

55.    As Defendants already admitted that Defendant Avid Telecom had not applied for a Certificate of Territorial Authority ("CTA") with Indiana's Utility Regulatory Commission, thus Plaintiff has a lower burden of proof in showing that Defendants provided substantial assistance or support. See Ind. Code § 24-4.7-4-7(e).

56.    Ind. Code § 24-4.7-4-7(e) prohibits that a "person may not provide substantial assistance or support to a telephone solicitor, a supplier, or a caller if the person knows or consciously avoids knowing that the telephone solicitor, supplier, or caller has engaged in any act or practice that violates" the TSCA.

57.    Further, "A telephone solicitor, a supplier, or a caller may not provide substantial assistance or support to another person if the telephone solicitor, supplier, or caller knows or consciously avoids knowing that the person has engaged in any act or practice that violates" the TSCA. Ind. Code § 24-4.7-4-7

58.    Ind. Code. § 24-4.7-2-1.7 defines caller as an individual or entity that attempts to contact or contacts a "a subscriber in Indiana by using a telephone or telephone line." Ind. Code § 24-4.7-2-5 defines "doing business in Indiana" as making or causing other to make "telephone sales calls to consumers located in Indiana whether the telephone sales calls are made from a location in Indiana or outside Indiana." Further, a person that controls, directly or indirectly, one or more persons to make or cause to make telephone calls to "a consumer located in Indiana is "doing business in Indiana", no matter where the person is located or domiciled."

59.    11 IAC 1-1-7 defines "residential telephone subscriber" as an individual who subscribes to or for another person with the individual's residential address, including: a landline, wireless, or interconnected VoIP.

60.    Ind. Code § 24-4.7-2-7 defines "listing" as "the no telephone sales solicitation listing published by the division under IC 24-4.7-3 that lists the telephone numbers of consumers who do not wish to receive telephone sales calls."

61.     Ind. Code § 24-4.7-2-4 defines "division" as "the consumer protection division of the office of the attorney general." Indiana's Do Not Call List can be found here: https://www.indonotcall.org/.

62.     Under the TSCA, a telephone solicitor may not make or cause others to make a telephone sales call to an Indiana consumer's telephone number that appears on the most current quarterly Indiana Do Not Call List. Ind. Code § 24-4.7-4-1.

63.     A "telephone sales call" is a telephone call made to a consumer for the solicitation of consumer goods or services or a telephone call to obtain information that may be used for the direct solicitation of consumer goods or services. This includes the use of a recorded message device. Ind. Code § 24-4.7-2-9.

64.     Indiana law does not directly define "consciously avoids knowing" and "substantial assistance." Ind. Code § 24-4.7-4-7(e) is nearly identical to the Telemarketing Sales Rule's ("TSR") assisting and facilitating provision. See 16 C.F.R. § 310.3(b) ("It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates . . . this Rule.").

65.     In defining "substantial assistance," courts have defined it as requiring more than casual or incidental help to a telemarketer. See 16 C.F.R. § 310.3(b); *FTC v. Chapman*, 714 F.3d 1211, 1216 (10th Cir. 2013) (quoting FTC, Complying with the Telemarketing Sales Rule, available at http://business.ftc.gov/documents/bus27-complying-telemarketing-sales-rule#assisting (Feb. 2011)); *Consumer Financial Protection Bureau v. Nesheiwat*, No. 21-56052, 2022 WL 17958636, at *1 (9th Cir. Dec. 27, 2022); *FTC v. Consumer Health Benefits Ass'n*, No. 10-CV-3551 (ILG), 2011 WL 3652248, at *5 (E.D.N.Y. Aug. 18, 2011) (quoting Telemarketing Sales Rule, 60 Fed. Reg. 43842-01, 43852 (Aug 23, 1995)). There must be some link between the third party's actions and the telemarketer, but not necessarily a direct connection. See *Chapman*, 714 F.3d at 1216. For example, someone who provides lists of contacts to a seller or telemarketer, drafts the

language used for telemarketing, or makes available incentives to be used in the telemarketing, provides substantial assistance. See Statement of Basis and Purpose and Final Rule, Telemarketing Sales Rule, 60 Fed. Reg. 43,842, 43,852 (Aug. 23, 1995).

66.     A person consciously avoids knowing about a violation when "there are facts and evidence that support an inference of deliberate ignorance." Statement of Basis and Purpose and Final Rule, Telemarketing Sales Rule, 60 Fed. Reg. 43,842, 43,852 n.106 (Aug. 23, 1995) (citing *United States v. Williams*, 32 F.3d 570, at *6 (7th Cir. 1994)); see *FTC v. Chapman*, 714 F.3d 1211, 1219 (10th Cir. 2013) (quoting FTC, Complying with the Telemarketing Sales Rule, available at https://www.ftc.gov/business-guidance/resources/complying-telemarketing-sales-rule (Feb. 2011)) ("[T]aking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability."). Knowledge can be inferred from a combination of suspicion and indifference to the truth. See *United States v. Salinas*, 763 F.3d 869, 875 (7th Cir. 2014) (discussing the "ostrich instruction"); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (finding that a willfully blind defendant takes deliberate actions to avoid confirming a high probability of wrongdoing). Further, "knowledge of the agent is imputed to the principal." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020).

67.     Further, the Attorney General may obtain these remedies separately against or from each person that violates the Ind. Code § 24-4.7-4-1, including a person that directly or indirectly controls a person that violates Ind. Code § 24-4.7-4-1.

**COUNT IX – By the State of Maryland**

**Violations of the Maryland Telephone Consumer Protection Act, Md. Code Ann., Com. Law § 14-3201, *et seq.***

68.     The claims brought by Maryland are pursuant to the §§ 14-3201(1) and (2) of Maryland Telephone Consumer Protection Act, Md. Code Ann., Com. Law § 14-3201, *et seq,* which simply incorporates under state law the protections that exist under the

Telemarketing under and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 through 6108, as implemented by the Federal Trade Commission in the Telemarketing Sales Rule (16 C.F.R. Part 310) and the Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L).

## COUNT X – By the State of Nevada
### Violations of the Nevada Telecommunication Solicitation Act
### Chapter 228.500 to 228.590

69.     The Nevada Telecommunication Solicitation Act ("NTSA"), Nevada Revised Statutes ("NRS") Chapter 228.500 to 228.590, also known as Nevada's Do Not Call Law, prohibits telephone solicitors from making unsolicited telephone calls for the sale of goods or services to a telephone number on Nevada's registry.

70.     Under NRS 228.520, a "telephone solicitor" means a person who makes or causes another person or a machine to make an unsolicited telephone call for the sale of goods or services.

71.     Under NRS 228.530(a)-(d),  an "unsolicited telephone call for the sale of goods or services" means an unsolicited telephone call, other than a telephone call on behalf of a charitable organization, religious organization or political organization, to  (a) Rent, lease, sell, exchange, promote or gift any good or service; (b) Solicit any act described in paragraph (a); (c) Seek or obtain a donation or contribution of money or anything else of value; or (d)  Seek or obtain information, including, without limitation, any document, intended to be used to facilitate any act described in paragraph (a), (b) or (c).

72.     Plaintiff State of Nevada alleges and affirms that Defendants violated the NTSA by intentionally making unsolicited telephone calls for the sale of goods or services to telephone numbers in the currently effective version of the list of telephone numbers in the registry. NRS 228.590.

73.    Additionally, pursuant to NRS 228.620, a violation of the NTSA constitutes a deceptive trade practice for the purposes of NRS 598.0903 to 598.0999, inclusive, in violation of NDTPA. As such, Plaintiff State of Nevada alleges and affirms that Defendants, by violating the NTSA, have also committed a deceptive trade practice for the purposes of NDTPA.

74.    Furthermore, a person's intent to "knowingly" violate the NDTPA, NRS chapter 598, does so by being aware that the facts exist that constitute the act or omission. *Poole v. Nevada Auto Dealership Invs., LLC,* 135 Nev. 280, 284, 449 P.3d 479, 483 (Nev. App. 2019).

## **COUNT XI – By the State of Nevada**
## **Violations of the Nevada Law – Devices for Automatic Dialing and Announcing Chapter 597 *et seq*.**

75.    Under Nevada Revised Statute (NRS) 597.814, a person is prohibited from using a device for automatic dialing and announcing to disseminate a prerecorded message in a telephone call.

76.    To make a showing that Defendants violated NRS 597.814(1), Plaintiff State of Nevada will show Defendants used a device for automatic dialing and announcing in their use of any equipment that (1) incorporates a storage capability of telephone numbers to be called and utilizes a random or sequential number generator producing telephone numbers to be called and (2) used exclusively, working alone or in conjunction with other equipment, to disseminate a prerecorded message to the telephone number called to solicit a person at the telephone number called to purchase goods or services. *See* NRS 597.812.

77.    Under NRS 597.814(1), Plaintiff State of Nevada will show that Defendants disseminated a prerecorded message in a telephone call which was not preceded by a recorded or unrecorded natural voice that (1) informed the person who answers the telephone call of the nature of the call, including, without limitation, the fact that a device for automatic dialing and announcing will be used to disseminate the message if the person

23

1    who answers the call remains on the line; and (2) provides to the person who answers the
2    telephone call the name, address and telephone number of the business or organization, if
     any, being represented by the caller.
3        78.    Under NRS 597.814(2), a person is prohibited from operating a device for
4    automatic dialing and announcing to place a call-back or second call to the same telephone
5    number if the person at the telephone number terminated the original call.  Plaintiff State
     of Nevada will show Defendants violated NRS 597.814(2) by placing call-backs or second
6    calls.

7

8                        **COUNT XII – By the State of Nevada**

         **Violations of the Nevada Deceptive Trade Practices Act, Chapter 598 *et seq*.**

9        79.    Under NRS 598.0916, a person engages in a deceptive trade practice when,
10   in the course of his or her business or occupation, he or she disseminates an unsolicited
11   prerecorded message to solicit a person to purchase goods or services by telephone and he
     or she does not have a preexisting business relationship with the person being called unless
12   a recorded or unrecorded natural voice informs the person who answers the telephone call
13   of the nature of the call, and provides to the person who answers the telephone call the
     name, address and telephone number of the business or organization, if any, represented
14   by the caller.

15       80.    Pursuant to NRS 598.0918(2), a person engages in a deceptive trade practice
16   when, in the course of his or her business or occupation, he or she repeatedly or
     continuously conducts the solicitation or presentation in a manner that is considered by a
17   reasonable person to be annoying, abusive, or harassing.

18       81.    Pursuant to NRS 598.0923(1)(c), a person engages in a deceptive trade
19   practice when in the course of his or her business or occupation, he or she knowingly
     violates a state or federal statute or regulation related to the sale or lease of goods or
20   services. In *Poole v. Nevada Auto Dealership Invs., LLC*, the Nevada Court of Appeals
21   "conclude[ed] that a "knowing[ ]" act or omission under the NDTPA does not require that

                                        24

the defendant intend to deceive with the act or omission, or even know of the prohibition against the act or omission, but simply that the defendant is aware that the facts exist that constitute the act or omission." *Poole v. Nevada Auto Dealership Invs., LLC*, 135 Nev. 280, 284, 449 P.3d 479, 483 (Nev. App. 2019).

82.    Defendants' conduct in transmitting fraudulent robocalls to consumers in Nevada is in violation of provisions of Federal law, including without limitation, the Telemarketing Sales Rule, 16 C.F.R. Part 310 via 15 U.S.C. § 6103(a) and provisions of federal law identified herein.

83.    Defendants knowingly violated the laws set forth in paragraph 14, above, because Defendants knew or should have known that the robocalls were in violation of those laws.

84.    Pursuant to NRS 598.0923(1)(e), a person engages in a deceptive trade practice when in the course of his or her business or occupation, he or she knowingly uses an unconscionable practice in a transaction.

85.    Defendants took advantage of the lack of knowledge, ability, experience or capacity of Nevada consumers to a grossly unfair degree by transmitting calls and carrying out attendant acts regarding those calls as alleged herein, thereby committing an unconscionable practice in a transaction in violation of NRS 598.0923(1)(e).

86.    Defendants' violations of the Nevada Do Not Call Law, and/or the NDTPA, and/or other statutory provisions as alleged herein, are subject to injunctions and/or restitution and/or civil penalties and/or damages and/or its costs and attorney's fees pursuant to NRS 597.818, 598.0963, and 598.0999.

87.    Under NRS 597.818, a person who uses a device for automatic dialing and announcing in violation of NRS 597.814, is guilty of (a) a misdemeanor for a first offense, (b) a gross misdemeanor for a second offense, and (c), a category E felony and shall be punished as provided in NRS 193.130 for a third and any subsequent offense. *See* NRS 597.818(1). In addition to any other penalty, a person who violates any provision of NRS 597.814 is subject to a civil penalty of not more than $10,000 for each violation. *See* NRS

597.818(3). Furthermore, a violation of any provision of NRS 597.814 constitutes a deceptive trade practice for the purposes of NRS 598.0903 to 598.0999, inclusive. *See* NRS 597.818(4).

88.     Where "the Attorney General has reason to believe that a person has engaged or is engaging in a deceptive trade practice the State may bring an action for a permanent injunction under NRS 598.0963(3). Additionally, NRS 598.0963(3) allows for a permanent injunction based upon either past or ongoing violations. *Id*.

89.     Under NRS 598.0999(2), "if the court finds that a person has willfully engaged in a deceptive trade practice… the Attorney General bringing the action may recover a civil penalty not to exceed $15,000 for each violation." Furthermore, the court in any such action may, in addition to any other relief or reimbursement, award reasonable attorney's fees and costs. *Id*.

90.     Defendants' violations of the NDTPA are further subject to additional penalties for acts committed against consumers in Nevada over the age of 60 or disabled consumers pursuant to NRS 598.0973. For a deceptive trade practice directed toward an elderly person not more than $25,000 for each violation shall be imposed. *See* NRS 598.0973(b). For a deceptive trade practice directed toward a person with a disability, not more than $15,000 for each violation shall be imposed. *See* NRS 598.0973(a).

### COUNT XIII – By the State of New York
### Violations of New York General Business Law § 399-z
### Pursuant to New York Executive Law § 63(12)

91.     The plaintiffs must prove that the defendant violated General Business Law § 399-z by establishing:

A.     The defendant is a "telemarketer" or "seller" and

i.     "'Telemarketer' means any person who, for financial profit or commercial purposes in connection with telemarketing, makes telemarketing sales calls or electronic messaging texts to a customer

when the customer is in [New York State] or any person who directly controls or supervises the conduct of a telemarketer." GBL § 399-z(1)(h).

    ii.    "'Telemarketing sales call' means a telephone call or electronic messaging text made directly or indirectly by a telemarketer or by any outbound telephone calling technology that delivers a prerecorded message to a customer or to a customer's voicemail or answering machine service, in which such telephone call or electronic messaging text is for the purpose of inducing payment or the exchange of any other consideration for any goods or services[.]" GBL § 399-z(1)(j).

    iii.    "Commercial purposes" means "the sale or offer for sale of goods or services[.]" GBL § 399-z(1)(h).

B.    The defendant engaged in one of the following:

    i.    The defendant "ma[d]e or cause[d] to be made any unsolicited telemarketing sales call to any customer when that customer's telephone number has been on the national 'do-not-call' registry, established by the federal trade commission, for a period of thirty-one days prior to the date the call is made, pursuant to 16 C.F.R. Section 310.4(b)(1)(iii)(B)." GBL § 399-z(5).

    ii.    The defendant "initiat[ed] any telemarketing sales call by means of a technology that delivers a pre-recorded message, unless the telemarketer or seller has obtained from the customer" prior express written consent. GBL § 399-z(6).

92.    The plaintiffs must prove that those violations satisfy Executive Law § 63(12):

A.    The defendant engaged in "repeated … illegal acts … in the carrying on, conducting or transaction of business." Exec. L. § 63(12).

i.    "Repeated" means any number of "separate and distinct …
illegal acts which affected more than one individual." *People v. 21st
Century Leisure Spa Int'l Ltd.*, 153 Misc. 2d 938, 944 (Sup. Ct. N.Y.
Cnty. 1991).

ii.    "Illegal acts" means acts that violate any law, including New
York's General Business Law. *See, e.g.*, *People v. Applied Card Sys.,
Inc.*, 27 A.D.3d 104, 104 (3d Dep't 2005), *aff'd*, 11 N.Y.3d 105
(2008); *People v. Telehublink,* 301 A.D.2d 1006, 1006 (3d Dep't
2003).

### COUNT XIV– By the State of New York
### Violations of New York General Business Law § 399-p

93.    The plaintiffs must prove each of the following elements pursuant to General
Business Law § 399-p:

A.    The defendant is "any natural person, firm, organization, partnership,
association or corporation, or other entity, whether for-profit or not-for-
profit[.]" GBL § 399-p(1)(b).

B.    The defendant acted "as an … agent … of a person operating
automatic dialing-announcing devices[.]" GBL § 399-p(2).

i.    "'Automatic dialing-announcing device' means any automatic
equipment which incorporates a storage capability of telephone
numbers to be called and is used, working alone or in conjunction with
other equipment, to disseminate a prerecorded message to the
telephone number called without the use of an operator[.]" GBL §
399-p(1)(a).

ii.    "A principal-agent relationship may be established by evidence
of the consent of one person to allow another to act on his or her behalf
and subject to his or her control, and consent by the other so to act[.]"

*Time Warner City Cable v. Adelphi Univ.*, 27 A.D.3d 551, 552 (2d Dep't 2006) (citations omitted).

C.    The "automatic dialing-announcing device … use[d] a random or sequential number generator to produce a number to be called." GBL § 399-p(4).

## COUNT XV – By the State of North Carolina
## Violations of the North Carolina Telephone Solicitations Act
## N.C. Gen. Stat. §§ 75-100 to 75-105

94.    The Plaintiff State of North Carolina alleged in Count XV that Defendants violated the North Carolina Telephone Solicitations Article of Chapter 75 of the North Carolina General Statutes, N.C.G.S. §§ 75-100 to 75-105, in three ways: by making telephone solicitations to telephone subscribers' numbers on the "Do Not Call" Registry, *see* N.C.G.S. § 75-102(a), (d); by making unsolicited prerecorded telephone calls, *see* N.C.G.S. § 75-104; and by failing to comply with the requirements of several enumerated sections of the FTC's Telemarketing Sales Rule, *see* 16 C.F.R. §§ 310.3 to 310.5, N.C.G.S. § 75102(e).

95.    With respect to calls made to persons on the "Do Not Call" Registry, North Carolina's Do-Not-Call Law provides that no telephone solicitor shall make a telephone solicitation to a North Carolina telephone subscriber's telephone number if the subscriber's telephone number appears in the latest edition of the National Do Not Call Registry. N.C.G.S. § 75-102(a). The "'Do Not Call' Registry" is created and maintained by the Federal Trade Commission pursuant to the Telemarketing Sales Rule. N.C.G.S. § 75-101(3). The term "telephone solicitor" means an individual or entity that, directly or through agents, makes or attempts to make telephone solicitations or causes telephone solicitations to be made. N.C.G.S. § 75-101(10). "Telephone solicitor" also includes any party defined as a "telemarketer" under the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310. N.C.G.S. § 75-101(10). The term "telephone subscriber" means an individual

who subscribes to a residential telephone service from a provider, including a wireless telephone company. N.C.G.S. § 75101(11). The term "telephone solicitation" means a voice or text communication, whether prerecorded, live, over a telephone line or wireless telephone network that is made by a telephone solicitor to a telephone subscriber for the purpose of soliciting or encouraging the purchase of goods or services, or obtaining information that will or may be used for that purpose. N.C.G.S. § 75101(9). "Telephone solicitation" also includes those transactions that are defined as "telemarketing" under the FTC's Telemarketing Sales Rule. 16 C.F.R. Part 310.

96. With respect to unsolicited prerecorded calls, the Telephone Solicitations Article of Chapter 75 of the North Carolina General Statutes, N.C.G.S. § 75-104, provides that, subject to some exceptions, no person may use an automatic dialing and recorded message player to make an unsolicited telephone call. N.C.G.S. § 75-104(a). An "unsolicited telephone call" is a voice or text communication, whether prerecorded, live, or a facsimile, over a telephone line or wireless telephone network that is made by a person to a telephone subscriber without prior express invitation or permission. N.C.G.S. § 75101(12). A "person" is defined as any individual, business establishment, business, or other legal entity. N.C.G.S. § 75101(7). "Express invitation or permission" is "[a]ny invitation or permission that is registered by the telephone subscriber on an independent form and that contains the telephone number to which calls can be placed and the signature of the telephone subscriber." N.C.G.S. § 75-101(6). An "automatic dialing and recorded message player" means, in relevant part, any automatic equipment that incorporates a storage capability of telephone numbers to be called that, working alone or in conjunction with other equipment, disseminates a prerecorded message to the telephone number called. N.C.G.S. § 75101(2).

97. Finally, with respect to complying with the requirements of the FTC's Telemarketing Sales Rule, N.C.G.S. § 75-102(e) provides that no telephone solicitor shall violate any requirement of section 310.3 of the Telemarketing Sales Rule (Deceptive telemarketing acts or practices), section 310.4 of the Telemarketing Sales Rule (Abusive

telemarketing acts or practices), or section 310.5 of the Telemarketing Sales Rule (Record keeping requirements). 16 C.F.R. §§ 310.3 through 310.5.

98.     Therefore, to prove that Defendants violated the North Carolina Telephone Solicitations Article of Chapter 75 of the North Carolina General Statutes, N.C.G.S. §§ 75-100 to 75-105, as alleged in Count XV, the Plaintiff State of North Carolina must prove the following:

> A.     In violation of N.C.G.S. § 75-102(a),(d), Defendants are "telephone solicitors," as defined by N.C.G.S. § 75-101(10), who made "telephone solicitations," as defined by N.C.G.S. § 75-101(9), to North Carolina "telephone subscribers," as defined by N.C.G.S. § 75-101(11), whose telephone numbers were in the National "Do Not Call" Registry as defined by N.C.G.S. § 75-101(3);

> B.     In violation of N.C.G.S. § 75-104, Defendants used an "automatic dialing and recorded message player," as defined by N.C.G.S. § 75-101(2), to make "unsolicited" telephone calls, as defined by N.C.G.S. § 75-101(12); or

> C.     In violation of N.C.G.S. § 75-102(e), Defendants are "telephone solicitors," as defined by N.C.G.S. § 75-101(10), who failed to comply with requirements of the FTC's Telemarketing Sales Rule, 16 C.F.R. §§ 310.3 through 310.5.

### COUNT XVI – By the State of North Carolina
### Violations of North Carolina's Unfair or Deceptive Trade Practices Act
### N.C. Gen. Stat. §§ 75-1.1, *et seq*.

99.     The Plaintiff State of North Carolina alleged in Count XVI that Defendants violated North Carolina's Unfair or Deceptive Trade Practices Act, N.C.G.S. §§ 75-1.1, *et seq*. by failing to comply with the requirements of the FTC's Telemarketing Sales Rule (TSR). *See* 16 C.F.R. § 310.3; N.C.G.S. § 75-102(e) (providing that "no telephone solicitor

1    shall violate any requirement of section 310.3 of the Telemarketing Sales Rule (Deceptive

2    telemarketing acts or practices)").

3            100.    In order to establish a *prima facie* claim for unfair and deceptive trade

     practices in North Carolina, the Attorney General must show: (1) Defendants committed

4    an unfair or deceptive act or practice and (2) the action in question was in or affecting

5    commerce. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citing *Spartan

     Leasing Inc. v. Pollard*, 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991)).  Proof of

6    actual injury is not required when such action is brought by the North Carolina Attorney

7    General.  *State ex rel. Edmisten v. Challenge, Inc.*, 54 N.C. App. 513, 522, 284 S.E.2d 333,

8    339 (1981) ("[T]here is no suggestion in our own statutory scheme that the Attorney

     General would be required to prove such actual injury." (quoting *Mayton v. Hiatt's Used

9    Cars, Inc.*, 45 N.C. App. 206, 211, 262 S.E.2d 860, 863 (1980))).

10            101.    Acts or practices are unfair under N.C.G.S. § 75-1.1 when they offend

11   established public policy, as well as when the practice is immoral, unethical, oppressive,

     unscrupulous, or substantially injurious to consumers.  Under N.C.G.S. § 75-1.1, a practice

12   or act is deceptive if it has the capacity or tendency to deceive; proof of actual deception is

13   not required.  *See, e.g.*, *Marshall v. Miller*, 302 N.C. 539, 542, 548, 276 S.E.2d 397, 399,

14   403 (1981) (providing that state courts have generally ruled that the [plaintiff] need only

     show that an act or practice possessed the tendency or capacity to mislead, or created the

15   likelihood of deception, in order to prevail under the states' unfair and deceptive practices

16   act" (internal citations omitted)).  Moreover, "per se violations of § 75–1.1 [may be]

17   established upon proof of a statutory or regulatory violation." *Sparks v. Oxy-Health, LLC*,

     134 F. Supp. 3d 961, 997 (E.D.N.C. 2015).  Similarly, acts or practices that are unfair or

18   deceptive trade practices under the TSR are also deceptive or misleading and constitute

19   unfair or deceptive trade practices prohibited by North Carolina's Unfair or Deceptive

20

21

32

Trade Practices Act.[5]  N.C.G.S. §§ 75-1.1, 102(e); *see also, e.g., Marshall v. Miller*, 302 N.C. 539, 542, 548, 276 S.E.2d 397, 399, 403 (1981) (finding that "federal decisions interpreting the FTC Act may be used as guidance in determining the scope and meaning of G.S. 75-1.1" (internal citations omitted)).

102.    With respect to whether acts or practices are in or affecting commerce within the State of North Carolina, the UDTPA defines "commerce" to include all business activities, however denominated, but not professional services rendered by a member of a learned profession.  N.C.G.S. § 75–1.1(b).  "'Business activities' is a term which connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized."  *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 592, 403 S.E.2d 483, 492 (1991).  And with respect to business activity in the form of telephone solicitations, N.C.G.S. 75-101(4) specifies that a person shall be considered to be "doing business in this State" if they "make or cause to be made any telephone solicitation to North Carolina telephone subscribers, whether the telephone solicitations are made from a location inside North Carolina or outside North Carolina."

103.    Therefore, to prove that Defendants violated North Carolina's Unfair or Deceptive Trade Practices Act, N.C.G.S. §§ 75-1.1, *et seq*., by failing to comply with the requirements of the FTC's Telemarketing Sales Rule (TSR), *see* 16 C.F.R. § 310.3, as alleged in Count XVI, the Plaintiff State of North Carolina must prove the following:

> A.    Defendants committed an unfair or deceptive act or practice; and
>
> B.    Defendants' acts or practices were in or affecting commerce within the State of North Carolina.

---

[5] Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).  *See United States v. Dish Network*, L.L.C., 75 F. Supp. 3d 942, 1004 (C.D. Ill. 2014) ("A violation of the TSR constitutes an unfair and deceptive act or practice in violation of § 5(a) of the [Federal Trade Commission] Act.").

### COUNT XVII – By the State of North Dakota

### North Dakota – Violations of the Unlawful Sales or Advertising Practices law
### N.D.C.C. ch. 51-15 – Facilitating and Assisting

104.    In Count XVII of the Complaint, Plaintiff State of North Dakota alleges Defendants violated N.D.C.C. § 51-15-02.3 by providing assistance or support to any person engaged in any act or practice or practice in violation of N.D.C.C. ch. 51-15 when the Defendants knew or consciously avoided knowing that the other person was engaged in an act or practice in violation of N.D.C.C. ch. 51-15.  Pursuant to N.D.C.C. § 51-28-17, a violation of N.D.C.C. ch. 51-28 constitutes a violation of N.D.C.C. ch. 51-15.  To prevail on this Count, Plaintiff State of North Dakota will need to show that:

> A.    A third party violated the North Dakota Telephone Solicitations Act, Ch. 51-28, N.D.C.C., and/or North Dakota's Unlawful Sales or Advertising Practices law, Ch. 51-15, N.D.C.C., by engaging in the one of the following:
>
>> i.    "ma[d]e or cause[d] to be made any telephone solicitation to the telephone line of any subscriber [in North Dakota] who, for at least thirty-one days before the date the call is made… has been on the national do-not call registry established by the federal trade commission under title 16, Code of Federal Regulations, part 310." *See* N.D.C.C § 51-28-06; or
>>
>> ii.    "use[d] or connect[ed] to a telephone line an automatic dialing-announcing device or deliver a prerecorded or synthesized voice message to a subscriber unless the subscriber has knowingly requested, consented to, permitted, or authorized receipt of the message or the message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered…" *See* N.D.C.C. § 51-28-02; or
>>
>> iii.    Deceptive acts and practices in violation of N.D.C.C. § 51-15-02, which requires a showing that:

34

a.    Defendants acted, used, or employed any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation;

b.    With the intent that others rely thereon; and

c.    In connection with the sale or advertisement of any merchandise."

B.    Defendants provided assistance or support to the third party engaged in any act or practice in violation of North Dakota's Unlawful Sales or Advertising Practices Act., Ch. 51-15, N.D.C.C., including any violations of the North Dakota Telephone Solicitations Act, Ch. 51-28. *See* N.D.C.C. § 51-15-02.3; N.D.C.C. § 51-28-17; and

C.    Defendants knew or consciously avoided knowing that the third party was engaged in acts or practices violating North Dakota's Unlawful Sales or Advertising Act, Ch. 51-15, N.D.C.C, including any violations of the North Dakota Telephone Solicitations Act, Ch. 51-28. *See* N.D.C.C. § 51-15-02.3; N.D.C.C. § 51-28-17.

105.    N.D.C.C. § 51-28-01(2) defines "Caller" as "…a person, corporation, firm, partnership, association, or legal or commercial entity that attempts to contact, or that contacts, a subscriber in [North Dakota] by using a telephone or a telephone line." N.D.C.C. § 51-28-01(2).

106.    "Telephone solicitation" is defined by N.D.C.C. § 51-28-01(8), which provides:

Telephone solicitation means any voice, text, or other electronic communication over a telephone line for the purpose of encouraging charitable contributions, or the purchase or rental of, or investment in, property, goods, services, or merchandise, including as defined in subsection 3 of section 51-15-01, whether the communication is made by a live operator, through the use of an automatic dialing-announcing device or by other means.  Telephone solicitation does not include communications:

35

A.    To any subscriber with that subscriber's express written request, consent, invitation, or permission.

B.    By or on behalf of any person with whom the subscriber has an established personal or business relationship.

C.    By or on behalf of a charitable organization that is exempt from federal income taxation under section 501 of the Internal Revenue Code, but only if the following applies:

    i.    The telephone call is made by a volunteer or employee of the charitable organization; and

    ii.    The person who makes the telephone call immediately discloses the following information upon making contact with the consumer:

        a.    The person's true first and last name; and

        b.    The name, address, and telephone number of the charitable organization.

D.    By or on behalf of any person whose exclusive purpose to poll or solicit the expression of ideas, opinions, or votes, unless the communication is a text message.

E.    By the individual soliciting without the intent to complete, and who does not in fact complete, the sales presentation during the call, but who will complete the sales presentation at a later face-to-face meeting between the individual solicitor or person who makes the initial call the prospective purchaser, unless the communication is a text message.

F.    By or on behalf of a political party, candidate, or other group with a political purpose, as defined in section 16.1-08.1-01, unless the communication is a text message.

N.D.C.C. § 51-28-01(8)(a)-(f).

36

107.    "Subscriber" is defined as "…a person who has subscribed to a residential telephone line or the other persons residing with the subscribing person." N.D.C.C. § 51-28-01(6).

108.    Automatic dialing-announcing device means a device that selects and dials telephone numbers and that, working alone or in conjunction with other equipment, disseminates a prerecorded or synthesized voice message to the telephone number called." N.D.C.C. § 51-28-01(1).

109.    Definitions and citations to caselaw for a deceptive acts or practices claim under N.D.C.C. § 51-15-02 are set forth in Count XVIII, *infra*.

110.    N.D.C.C. § 51-15-02.3 is similar to the Telemarketing Sales Rule's ("TSR") assisting and facilitating provision. *See* 16 C.F.R. § 310.3(b) ("It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates . . . this Rule.").

111.    North Dakota law does not define "assistance of support."  In defining "substantial assistance" under the TSR, courts have defined it as requiring more than casual or incidental help to a telemarketer. *See* 16 C.F.R. § 310.3(b); *FTC v. Chapman*, 714 F.3d 1211, 1216 (10th Cir. 2013) (quoting *FTC, Complying with the Telemarketing Sales Rule*, available at http://business.ftc.gov/documents/bus27-complying-telemarketing-sales-rule#assisting (Feb. 2011)); *Consumer Financial Protection Bureau v. Nesheiwat*, No. 21-56052, 2022 WL 17958636, at *1 (9th Cir. Dec. 27, 2022); *FTC v. Consumer Health Benefits Ass'n*, No. 10-CV-3551 (ILG), 2011 WL 3652248, at *5 (E.D.N.Y. Aug. 18, 2011) (quoting Telemarketing Sales Rule, 60 Fed. Reg. 43842-01, 43852 (Aug 23, 1995)). There must be some link between the third party's actions and the telemarketer, but not necessarily a direct connection. *See Chapman*, 714 F.3d at 1216. For example, someone who provides lists of contacts to a seller or telemarketer, drafts the language used for telemarketing, or makes available incentives to be used in the telemarketing, provides

1    substantial assistance. *See* Statement of Basis and Purpose and Final Rule, Telemarketing
2    Sales Rule, 60 Fed. Reg. 43,842, 43,852 (Aug. 23, 1995).

3         112.    North Dakota law does not define "consciously avoids knowing." However,
     in the context of a TSR claim, a person consciously avoids knowing about a violation when
4    "there are facts and evidence that support an inference of deliberate ignorance." Statement
5    of Basis and Purpose and Final Rule, Telemarketing Sales Rule, 60 Fed. Reg. 43,842,
     43,852 n.106 (Aug. 23, 1995) (citing *United States v. Williams*, 32 F.3d 570, at *6 (7th Cir.
6    1994)); *see FTC v. Chapman*, 714 F.3d 1211, 1219 (10th Cir. 2013) (quoting *FTC,*
7    *Complying with the Telemarketing Sales Rule*, available at https://www.ftc.gov/business-
     guidance/resources/complying-telemarketing-sales-rule (Feb. 2011)) ("[T]aking deliberate
8    steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an
9    ineffective strategy to avoid liability."). Knowledge can be inferred from a combination of
10   suspicion and indifference to the truth. *See United States v. Salinas*, 763 F.3d 869, 875 (7th
     Cir. 2014) (discussing the "ostrich instruction"); *Global-Tech Appliances, Inc. v. SEB S.A.*,
11   563 U.S. 754, 769 (2011) (finding that a willfully blind defendant takes deliberate actions
12   to avoid confirming a high probability of wrongdoing). Further, "knowledge of the agent
13   is imputed to the principal." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th
     Cir. 2020).

14

15            **COUNT XVIII – By the State of North Dakota**
16   **North Dakota – Violations of the Unlawful Sales or Advertising Practices law**
            **N.D.C.C. ch. 51-15 – Deceptive or Unconscionable practices**
17
         113.    In Count XVIII of the Complaint, Plaintiff State of North Dakota alleges
18   Defendants engaged in violations of N.D.C.C. ch. 51-15, the Unlawful Sales or Advertising
19   Practices Law, specifically N.D.C.C. § 51-15-02. Under N.D.C.C. § 51-15-02, there are
     three separate causes of action: the first is based on deceptive acts and practices; the second
20   is based on unconscionable acts; and the third is based on acts that cause or are likely to

21

cause substantial injury. Thus, to demonstrate a violation of N.D.C.C. § 51-15-02, Plaintiff State of North Dakota must demonstrate one of the following:

      A.    That Defendants engaged in ***deceptive acts and practices*** in violation of N.D.C.C. § 51-15-02, which requires showing that:

          i.    Defendants acted, used, or employed any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation;

          ii.    with the intent that others rely thereon; and

          iii.    in connection with the sale or advertisement of any merchandise; or

      B.    That Defendants engaged in ***unconscionable acts*** in violation of N.D.C.C. § 51-15-02, which requires a showing that:

          i.    Defendants used or employed an act or practice in connection with the sale or advertisement of any merchandise; and

          ii.    the act or practice was unconscionable; or

      C.    That Defendants' acts caused or were likely to cause ***substantial injury*** in violation of N.D.C.C. § 51-15-02, which requires a showing that:

          i.    Defendants used or employed an act or practice in connection with the sale or advertisement of any merchandise which caused or was likely to cause an injury to a consumer;

          ii.    the consumer injury was substantial;

          iii.    the injury was not outweighed by any countervailing benefits to consumers or to competition; and

          iv.    the injury was not an injury the consumers themselves could reasonably have avoided.

N.D.C.C. § 51-15-02.

First Cause of Action: Deceptive Acts and Practices

114.    N.D.C.C. § 51-15-02 provides, in relevant part:

> The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice…

N.D.C.C. § 51-15-02.

115.    "Sale" is defined as "any charitable solicitation or any sale, offer for sale, or attempt to sell any merchandise for any consideration." N.D.C.C. § 51-15-01(5).

116.    "Advertisement" is defined to include "the attempt by publication, dissemination, solicitation, or circulation, oral or written, to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in any merchandise." N.D.C.C. § 51-15-01(1).

117.    "Merchandise" is defined as "any objects, wares, goods, commodities, intangibles, real estate, charitable contributions, or services." N.D.C.C. § 51-15-01(3).

118.    "Person" is defined as "any natural person or the person's legal representative, partnership, corporation, limited liability company, company, trust, business entity, or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee, or cestui que trust thereof." N.D.C.C. § 51-15-01(4).

119.    N.D.C.C. § 51-15-02 uses language regarding an intent that others rely, not an intent to deceive. *See e.g. In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1020 (N.D. Cal. 2018). *See also People ex rel. Babbitt v. Green Acres Tr.*, 127 Ariz. 160, 168, 618 P.2d 1086, 1094 (Ct. App. 1980)[6]

---

[6] *Superseded by statute on other grounds*, 1981 Ariz. Sess. Laws, ch. 295, § 5, *as recognized in State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 592 (1983).

1   <u>citing</u> A.R.S. § 44-1522(A) ("[R]eliance or actual deception or damage is not a prerequisite

2   to a consumer fraud action brought by the attorney general" under Arizona's Consumer

    Fraud Act).

3        120.    Further, by its plain language, N.D.C.C. § 51-15-02 does not require a

4   showing that a person was misled, deceived or damaged by the defendant's unlawful acts.

5        121.    The North Dakota Supreme Court has held that for actions brought under Ch.

    51-15, N.D.C.C., "the alleged fraudulent conduct must be proved by a preponderance of

6   the evidence." *State ex rel. Spaeth v. Eddy Furniture Co.*, 386 N.W.2d 901, 903 (N.D.

7   1986).  In *Eddy Furniture*, the court noted, "it is generally recognized that consumer

8   protection statutes are remedial in nature, and therefore must be liberally construed in favor

    of protecting consumers." *Id.* (internal citations omitted).

9

10  <u>Second and Third Causes of Action: Unconscionable Act / Substantial Injury</u>

11       122.    N.D.C.C. § 51-15-02 further provides:

12           …The act, use, or employment by any person of any act or practice,
             in connection with the sale or advertisement of any merchandise,
             which is unconscionable or which causes or is likely to cause
13           substantial injury to a person which is not reasonably avoidable by the
             injured person and not outweighed by countervailing benefits to
14           consumers or to competition, is declared to be an unlawful practice.

15  N.D.C.C. § 51-15-02.

16       123.    As discussed, *supra*, the following terms are defined by N.D.C.C. § 51-15-

17  01: "person" (N.D.C.C. § 51-15-01(4)); "sale" (N.D.C.C. § 51-15-01(5)); "advertisement"

    (N.D.C.C. § 51-15-01(1)); and "merchandise" (N.D.C.C. § 51-15-01(3)).

18

19

20

21

Unconscionable Acts or Practices:

124.    The North Dakota Supreme Court has not issued an opinion regarding the meaning of "unconscionable" in the context of a consumer protection claim under Ch. 51-15, N.D.C.C.

125.    In the context of determining a certified question from a federal district court regarding whether a provision in an arbitration agreement was unconscionable, the North Dakota Supreme Court stated, "that a party alleging unconscionability must demonstrate some quantum of both procedural and substantive unconscionability, and courts are to balance the various factors, viewed in totality, to determine whether the particular contractual provision is 'so one-sided as to be unconscionable.'" *Strand v. U.S. Bank Nat. Ass'n ND*, 2005 ND 68, ¶ 12, 693 N.W.2d 918, 924 *citing Construction Assocs., Inc. v. Fargo Water Equip. Co.*, 446 N.W.2d 237, 241 (1989).

126.    With regards to procedural unconscionability, the North Dakota Supreme Court explained:

> Procedural unconscionability focuses upon formation of the contract and fairness of the bargaining process, including factors such as inequality of bargaining power, oppression, and unfair surprise… Courts are more likely to find unconscionability in consumer transactions than in contracts arising in purely commercial settings involving experienced parties.

*Strand v. U.S. Bank Nat. Ass'n ND*, 2005 ND 68, ¶ 13, citing Construction Assocs., 446 N.W.2d at 241-42.

127.    With regards to substantive unconscionability, the North Dakota Supreme Court explained, "[s]ubstantive unconscionability focuses upon the harshness or one-sidedness of the contractual provision in question. <u>Strand</u>, 2005 ND 68, ¶ 20, *citing Construction Assocs.*, 446 N.W.2d at 241.

Substantial Injury:

128.    There is no relevant North Dakota caselaw regarding the "substantial injury" test under N.D.C.C. § 51-15-02.  However, the "substantial injury test" under N.D.C.C. § 51-15-02 is similar to the "unfairness test" under Section 5 of the Federal Trade Commission Act, which provides: a practice is "unfair" if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or benefits."  15 U.S.C. § 45(n).

129.    The Ninth Circuit has held that, under the FTC Act, an act or practice can cause "substantial injury" by doing a "small harm to a large number of people, or if it raises a significant risk of concrete harm."  *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1157–58 (9th Cir. 2010).

130.    Further, under Ninth Circuit precedent, an injury is reasonably avoidable - under the FTC Act - if consumers "have reason to anticipate the impending harm and the means to avoid it," or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact.  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012) *citing Orkin Exterminating Co., Inc. v. FTC,* 849 F.2d 1354, 1365–66 (11th Cir.1988).

131.    With regards to whether consumer harm is "not outweighed by countervailing benefits to consumers or to competition," the District Court of Arizona has held that the relevant act or practice which the countervailing benefits should be measured are those outlined in the plaintiff's pleadings, not the defendant's business practices as a whole.  *Fed. Trade Comm'n v. Elec. Payment Sols. of Am. Inc.*, No. CV-17-02535-PHX-SMM, 2021 WL 3661138, at *12 (D. Ariz. Aug. 11, 2021).

### COUNT XIX – By the State of Rhode Island

### Rhode Island – Violations of the Telephone Sales Solicitation Act

### R I Gen. Laws § 5-61-1, *et seq.*

Defendants routed telephone solicitations from unregistered telephonic sellers to Rhode Islanders in violation of the TSSA.

132.    A telephone sales solicitation operation or telephonic seller is effectively registered to do business in Rhode Island only when:

A.    A filing containing all the information required by R.I. Gen. Laws § 5-61-4 has been submitted to the Consumer and Economic Justice Unit of the Rhode Island Department of Attorney General; R.I. Gen. Laws § 5-61-3(a);

B.    The filing is accompanied by a one hundred dollar ($100) filing fee; R.I. Gen. Laws § 5-61-3(a);

C.    The seller has delivered and filed a surety bond, irrevocable letter of credit, or certificate of deposit in a federally insured financial institution for a minimum amount of thirty thousand dollars ($30,000), or if the Rhode Island Department of Attorney General, in its discretion, established a greater value, for that discretionary amount; R.I. Gen. Laws § 5-61-3.1(a)–(b);

D.    The Rhode Island Department of Attorney General has sent a written confirmation of receipt of the filing to the seller's principal business location; R.I. Gen. Laws § 5-61-3(d);

E.    The seller has made copies for each of its business locations if it has more than one business location; R.I. Gen. Laws § 5-61-3(d);

F.    The seller has posted the confirmation of receipt of filing within ten (10) days of receipt in a conspicuous place at each of the seller's business locations; R.I. Gen. Laws § 5-61-3(d);

G.    The business done in Rhode Island commences within one year from the date the seller received and posted the written confirmation or has

44

renewed its annual registration, and received written confirmation of renewal; R.I. Gen. Laws §§ 5-61-3(b)–(c); and

H.      The Consumer and Economic Justice Unit of the Rhode Island Department of Attorney General has not otherwise delayed, rejected, or revoked the registration.

R.I. Gen. Laws § 5-61-3(e); *see also* R.I. Gen. Laws § 5-61-3.2.

133.    A telephone sales solicitation operation or telephonic seller is deemed to do business in Rhode Island when:

A.      The seller solicits person(s) to become obligated to the seller from locations in Rhode Island; or

B.      The seller solicits person(s) who are located in Rhode Island to become obligated to the seller.

R.I. Gen. Laws § 5-61-3(a); *see also* R.I. Gen. Laws § 5-61-2(7).

<u>Defendants routed telephone solicitations with pre-recorded messages to Rhode Islanders in violation of the TSSA.</u>

134.    A telephonic seller may make calls using prerecorded or synthesized voice messages into or within Rhode Island only if:

A.      The subscriber has knowingly or voluntarily requested, consented to, permitted, or authorized receipt of the message; R.I. Gen. Laws § 5-61-3.4(a);

B.      The message is immediately preceded by a live operator who has:

i.      Obtained the subscriber's consent before the message is delivered; R.I. Gen. Laws § 5-61-3.4(a);

ii.     Made the proper disclosures required by R.I. Gen. Laws § 5-61-3.4(c)(1)–(4) at the outset of the message.

C.      The recorded message is from a school district to students, parents, or employees; R.I. Gen. Laws § 5-61-3.4(b); or

45

D.      The recorded message is from an employer advising employees of work schedules; R.I. Gen. Laws § 5-61-3.4(b); and

E.      The automatic-dialing-announcing device used to make calls into or within Rhode Island is designed and operated so as to create a disconnect signal or an on-hook condition that allows the subscriber's line to be released within five (5) seconds after termination of the telephone call by the subscriber. R.I. Gen. Laws § 5-61-3.4(d).

<u>Defendants provided telephonic seller customers with Rhode Islanders' telephone numbers who were then targeted for pre-recorded calls in violation of the TSSA.</u>

135.    A person who causes a telephone solicitation or attempted telephone solicitation to occur is a telephonic seller for the purposes of the TSSA when:

A.      The occurrence of the telephone solicitation or attempted telephone solicitation is caused by a person on their own behalf;

B.      The occurrence of the telephone solicitation or attempted telephone solicitation is caused by a person acting through salespersons; or

C.      The telephone solicitation or attempted telephone solicitation occurs through the use of an automatic-dialing-announcing device; and

D.      The person is not otherwise exempted from the meaning of "telephonic seller" or "seller."

R.I. Gen. Laws § 5-61-2(9)–(10).

<u>Defendants routed telephone solicitations from telephonic seller customers to Rhode Islanders whose numbers they knew were targeted on the National DNC Registry in violation of the TSSA.</u>

136.    A salesperson or telephonic seller may make, or cause to be made, unsolicited telephone sales calls to a residential, mobile, or telephonic-paging-device only if:

A.    the salesperson or telephonic seller has instituted procedures for maintaining a list of persons who do not wish to receive telephonic sales calls made by or on behalf of that person; and

B.    the instituted procedures are in compliance with 47 C.F.R. Part 64 or 16 C.F.R. § 310.

R.I. Gen. Laws § 5-61-3.5(a); *see also* 16 C.F.R. § 310.4(b)(iii)(B) (2024) (It is an abusive practice to initiate an outbound telephone call to a person when the person's phone number is on the National DNC Registry without that person's written consent). *See generally* 47 C.F.R. § 64 (2023); 16 C.F.R. § 310 (2024).

### COUNT XX – By the State of Rhode Island
### Rhode Island – Violations of the Deceptive Trade Practices Act
### R. I. Gen. Laws § 6-13.1-1, *et seq*.

Defendants' acts, practices, representations, and omissions violate the RI DTPA's prohibition against unfair trade practices.

137.    Conduct is unfair for the purposes of the RI DTPA when a plaintiff shows that:

A.    "the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness;"

B.    "it is immoral, unethical, oppressive, or unscrupulous;" or

C.    "it causes substantial injury to consumers (or competitors or other businessmen)."

*Long v. Dell*, 93 A.3d 988, 100 (R.I. 2014) (quoting *Ames v. Oceanside Welding and Towing Co.*, 767 A.2d 677, 681 (R.I. 2001).

47

138.   All three of the factors do not need to be established. Rather, unfairness may be proven by "showing that a trade practice meets one factor to a great degree or two or three factors to a lesser degree." *Id.* at 1001.

139.   Conduct is deceptive for the purposes of the RI DTPA when a plaintiff shows that:

       A.   "'a representation, omission, or practice, that"

       B.   "is likely to mislead consumers acting reasonably under the circumstances, and"

       C.   the representation, omission, or practice is material.'"

*Long v. Dell*, 93 A.3d 988, 1003 (R.I. 2014) (quoting *F.T.C. v. Verity Int'l Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006).

140.   A representation is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product," and "express representations that are shown to be false are presumptively material." *Long*, 93 A.3d at 1003 (quoting *F.T.C. v. Patriot Alcohol Testers, Inc.*, 798 F. Supp. 851, 855 (D. Mass. 1992); *Cliffdale Assoc., Inc.*, 103 F.T.C. 110, 165 (1984).

141.   Conduct occurs in trade or commerce when it involves the:

       A.   Advertising, offering for sale, sale, or distribution of

       B.   Any services or any tangible or intangible, real, personal, or mixed property, and any other article, commodity, or thing of value wherever situate,

       C.   Including any trade or commerce directly or indirectly affecting the people of Rhode Island.

R.I. Gen. Laws § 6-13.1-1(5).

**COUNT XXI – By the State of Washington**

**Violation of the Washington State Consumer Protection Act, RCW 19.86.020**

142.    The CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. Through this "broad prohibit[ion] . . . the legislature intended to provide sufficient flexibility to reach unfair or deceptive conduct that inventively evades regulation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009). The CPA "is to be liberally construed." RCW 19.86.920. This liberal construction directive ensures the protection of the public and the existence of fair and honest competition. *Id.*; *see also State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 82 Wn.2d 265, 274, 510 P.2d 233 (1973).

143.    To prevail on a CPA claim, the State must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, and (3) a public interest impact. *State v. Mandatory Poster Agency*, 199 Wn. App. 506, 518, 398 P.3d 1271 (2017); *see also* RCW 19.86.020; .920. Unlike private plaintiffs, the State "is not required to prove causation or injury." *Mandatory Poster*, 199 Wn. App. at 518.

UNFAIR OR DECEPTIVE ACT

144.    Deception exists if there is a representation, omission or practice that has "the *capacity* to deceive" a reasonable consumer. *Panag*, 166 Wn.2d at 47 (emphasis added). The State need not show actual deception, nor that Allure *intended* to deceive. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785, 719 P.2d 531 (1986); *LA Investors*, 2 Wn. App. 2d at 537-39. "A deceptive act or practice is measured by 'the net impression' on a reasonable consumer." *Mandatory Poster*, 199 Wn. App. at 519; *Panag*, 166 Wn.2d at 50. In evaluating whether a representation has the tendency or capacity to deceive, courts are directed to look not to the most sophisticated consumers, but the very least. *Panag*, 166 Wn.2d at 50.

145.    Unfair acts or practices violate the CPA, even if they are not deceptive. *See Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). An act is "unfair"

if it offends public policy, as established by statutes, the common law, or otherwise; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to consumers. *Rush v. Blackburn*, 190 Wn. App. 945, 962-63, 361 P.3d 217 (2015). Allure's NDAs violate the CPA.

146.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

OCCURRING IN TRADE OR COMMERCE

147.    The CPA broadly defines "trade" and "commerce" to include "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). The CPA "bring[s] within its reach *every* person who conducts unfair or deceptive acts or practices in *any* trade or commerce." *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 602, 200 P.3d 695 (2009). The terms "trade" and "commerce" are interpreted broadly to include "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2); *Hangman Ridge*, 105 Wn.2d at 785.

AFFECTING THE PUBLIC INTEREST

148.    In determining whether unfair or deceptive conduct affects the public interest, Washington courts consider five factors: (1) were the alleged acts committed in the course of the defendants' business; (2) was there a pattern or generalized course of conduct; (3) were the acts repeated; (4) is there a real and substantial potential for repetition; and (5) if the act complained of involved a single transaction, were many consumers affected or likely to be affected by it. *Hangman Ridge*, 105 Wn.2d at 790. No one factor is dispositive, and they do not need to all be present to establish a public interest impact. *Id.* at 791.

REMEDIES

149.    The CPA provides for a range of remedies, including restitution, civil penalties per violation, injunctive relief, and attorneys' fees and costs. RCW 19.86.080; RCW 19.86.140.

## COUNT XXII – By the State of Wisconsin
### Knowingly Assisting Violations of Telephone Solicitations Rules
### Wis. Admin. Code § ATCP 127.20

150.    Plaintiff, State of Wisconsin, brings Count XXII for violations of Wis. Admin. Code ATCP ch. 127 (Direct Marketing), which was promulgated by the Wisconsin Department of Agriculture, Trade and Consumer Protection under the authority of Wis. Stat. § 100.20(2).

151.    In Count XXII, Plaintiff State of Wisconsin will need to show that Defendants knowingly assisted sellers to engage in any activity or practice in violation of Wis. Admin. Code ATCP ch. 127 Subchapter II, Telephone Solicitations. Count XXII encompasses three subclaims.

152.    Count XXII is brought pursuant to Wis. Stat. §§ 100.20(6) and 100.26(6), which authorize the State to recover pecuniary losses suffered by Wisconsin consumers and to enforce and restrain violations of Wis. Stat. § 100.20 and Wis. Admin. Code ATCP ch. 127.  Each separate violation of Wis. Admin. Code ATCP § 127.20 is subject to a civil forfeiture of not less than $100 nor more than $10,000 per Wis. Stat. § 100.26(6).

153. "No person may knowingly assist[7] any seller[8] to engage in any activity or practice in violation of this subchapter." (Wis. Admin. Code ATCP § 127.20).

---

[7] Wisconsin law does not define "knowingly assist" or "knowingly facilitate" for purposes of the rules cited herein. However, Wis. Admin. Code ATCP §§ 127.20 and 127.83(2)(d) are similar to the Telemarketing Sales Rule's (TSR) assisting and facilitating provision. *See* 16 C.F.R. § 310.3(b)("It is a deceptive telemarketing act or practice and a violation of this [Rule] for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates . . . this [Rule].")/ Wisconsin law does not require that the assistance be "substantial." But even substantial assistance, "does not impose a demanding standard[.]" *FTC v. Day Pacer LLC*, 689 F. Supp. 3d 609, 642, (N.D. Ill. 2023).  In defining "substantial assistance," courts have defined it as requiring more than casual or incidental help to a telemarketer. *See* 16 C.F.R. § 310.3(b); *FTC v. Chapman*, 714 F.3d 1211, 1216 (10th Cir. 2013) (quoting *FTC, Complying with the Telemarketing Sales Rule*, available at http://business.ftc.gov/documents/bus27-complying-telemarketing-sales-rule#assisting (Feb. 2011)); *Consumer Financial Protection Bureau v. Nesheiwat*, No. 21-56052, 2022 WL 17958636, at *1 (9th Cir. Dec. 27, 2022); *FTC v. Consumer Health Benefits Ass'n*, No. 10-CV-3551 (ILG), 2011 WL 3652248, at *5 (E.D.N.Y. Aug. 18, 2011) (quoting Telemarketing Sales Rule, 60 Fed. Reg. 43842-01, 43852 (Aug 23, 1995)). "To constitute substantial assistance, there must be a connection between the assistance provided and the resulting violations of the core provisions of the TSR. *U.S. v. Dish Network, L.L.C.*, 667 F. Supp. 2d 952, 961, (C.D. Ill. 2009).  Knowledge can be inferred from a combination of suspicion and indifference to the truth. *See United States v. Salinas*, 763 F.3d 869, 875 (7th Cir. 2014) (discussing the "ostrich instruction"). Knowledge may be inferred when the person providing assistance receives complaints about violations. *FTC v. Day Pacer LLC*, 689 F. Supp. 3d at 642.

[8] "Seller" means a person, other than a bank, savings bank, savings and loan association, credit union, insurance company, public utility, or telecommunications carrier engaged in exempt activities under s. 93.01 (1m), Stats., who is engaged in the business of selling, offering to sell, or promoting the sale of consumer goods or services to consumers. "Seller" includes all of the following:

1. A person who accepts payment for a purported sale of consumer goods or services to a consumer.

2. An employee or agent of a seller.

3. A person who makes solicitations under arrangement with a seller. (Wis. Admin. Code ATCP § 127.01(21)).

154.    Disclosures Subclaim: Knowingly assisting sellers to engage in telephone solicitations[9] that failed to make required disclosures (*See* Wis. Admin. Code ATCP §§ 127.04, 127.20).

      A.    Element 1: Defendants knowingly assisted sellers to engage in telephone solicitations that failed to make required disclosures (*See* Wis. Admin. Code ATCP §§ 127.04, 127.20); and

      B.    Element 2: The sellers made telephone solicitations that failed to disclose in a telephone solicitation (*See* Wis. Admin. Code ATCP § 127.04(1)):

            i.    The name of the principal seller (See Wis. Admin. Code ATCP § 127.04(1)(a)); and

            ii.    The nature of the goods or services which the seller was offering or promoting (See Wis. Admin. Code ATCP § 127.04(1)(d)).

155.    Misrepresentations Subclaim: Knowingly assisting sellers to engage in telephone transactions[10] that included misrepresentations (*See* Wis. Admin. Code ATCP §§ 127.14, 127.20).

---

[9] "Telephone solicitation" means a solicitation, under s. ATCP 127.01(22), that a seller makes to a consumer by telephone, videoconferencing, or other interactive electronic voice communications. (Wis. Admin. Code ATCP § 127.02(3)). "Solicitation" means a communication received by a consumer at a place other than the seller's regular place of business, in which a seller offers or promotes the sale of consumer goods or services to a consumer, or which is part of a seller's plan or scheme to sell consumer goods or services to a consumer. (*See* Wis. Admin. Code ATCP § 127.01(22)).

[10] "Telephone transaction" means any of the following:

1. A telephone solicitation.

2. Purchase contracts and other dealings that result from a telephone solicitation. (Wis. Admin. Code ATCP § 127.02(4)).

A.    Element 1: Defendants knowingly assisted sellers to engage in telephone solicitations that included misrepresentations (See Wis. Admin. Code ATCP §§ 127.14, 127.20); and

B.    Element 2: The sellers, in a telephone transaction, directly or impliedly (See Wis. Admin. Code ATCP § 127.14):

  i.    Misrepresented the seller's identity, affiliation, location, or characteristics (See Wis. Admin. Code ATCP § 127.14(1);

  ii.    Misrepresented the nature, quantity, material characteristics, performance, or efficacy of the goods or services offered or promoted by the seller (See Wis. Admin. Code ATCP § 127.14(5));

  iii.    Misrepresented that the seller is affiliated with, or endorsed by, any government or 3rd party organization (See Wis. Admin. Code ATCP § 127.14(9)); and/or

  iv.    Made false, deceptive, or misleading representations to a consumer (See Wis. Admin. Code ATCP § 127.14(15)).

156.    Restricted Times Subclaim: Knowingly assisting sellers to engage in telephone solicitations during restricted times (*See* Wis. Admin. Code ATCP §§ 127.16(3), 127.20).

A.    Element 1: Defendants knowingly assisted sellers to initiate telephone solicitations to consumers before 8:00 AM or after 9:00 PM (See Wis. Admin. Code ATCP §§ 127. 16(3), 127.20); and

B.    Element 2: The telephone solicitations were made without prior consent of the consumers (See Wis. Admin. Code ATCP § 127.16(3)).

**COUNT XXIII – By the State of Wisconsin**

**Knowingly Facilitating Violations of Telephone Solicitations**

**Do-Not-Call Rules. Wis. Admin. Code § ATCP 127.83(2)(d)**

157. Plaintiff, State of Wisconsin, brings Count XXIII for violations of Wis. Admin. Code ATCP ch. 127 (Direct Marketing), which was promulgated by the Wisconsin Department of Agriculture, Trade and Consumer Protection under the authority of Wis. Stat. § 100.20(2).

158. In Count XXIII, Plaintiff State of Wisconsin will need to show that Defendants knowingly facilitated any person's violation of Wis. Admin. Code ATCP ch. 127 Subchapter V, Telephone Solicitations; State Do-Not-Call Registry. Count XXIII consists of two subclaims.

159. Count XXIII is brought pursuant to Wis. Stat. §§ 100.20(6) and 100.26(6), which authorize the State to recover pecuniary losses suffered by Wisconsin consumers and to enforce and restrain violations of Wis. Stat. § 100.20 and Wis. Admin. Code ATCP ch. 127. Each separate violation of Wis. Admin. Code ATCP § 127.83(3)(d) is subject to a civil forfeiture of not less than $100 nor more than $10,000 per Wis. Stat. § 100.26(6).

160. No person may "Require, instruct, or authorize any person to violate this subchapter, or knowingly facilitate[11] any person's violation of this subchapter." (Wis. Admin. Code ATCP § 127.83(2)(d)).

161. Do-Not-Call Subclaim: Knowingly facilitate any person in making a telephone solicitation to a customer whose telephone number appears on the do-not-call registry (*See* Wis. Admin. Code ATCP §§ 127.82(2), 127.83(2)(d)).

       A. Element 1: Defendants knowingly facilitated persons to make telephone solicitations, either directly or through an employee or agent, to customers on the state do-not-call registry (See Wis. Admin. Code ATCP §§ 127.82(2), 127.83(2)(d)); and

---

[11] For discussion of "knowingly facilitate" see first footnote to Wisconsin's elements.

B.  Element 2: The customers were "covered telephone customers" which means they were individuals in Wisconsin who received basic local exchange service or commercial mobile service from a telecommunications utility (See Wis. Admin. Code ATCP § 127.80(4)); and

C.  Element 3: The state do-not-call registry means the portion of the national do-not-call registry that consists of numbers with Wisconsin area codes (Wis. Admin. Code ATCP § 127.80(6r)); and

D.  Element 4: The national do-not-call registry means the national database established by the federal trade commission under 47 USC § 227(c)(3) that consists of telephone numbers of residential customers who object to receiving telephone solicitations (Wis. Admin. Code ATCP § 127.80(5)).

162.  Prerecorded Message Subclaim: Knowingly facilitate any person in using electronically prerecorded messages in telephone calls to encourage purchases without first obtaining written consent (See Wis. Admin. Code ATCP §§ 127.83(2)(b), (d)).

A.  Element 1: Defendants knowingly facilitated persons to use electronically prerecorded messages in telephone calls to encourage customers to make purchases without first obtaining the customers' consent (See Wis. Admin. Code ATCP §§ 127.83(2)(b), (d)); and

B.  Element 2: The customers were covered telephone customers or noncovered telephone customers. "Noncovered telephone customer" means a means a person, other than a covered customer, who receives telecommunications service from a telecommunications utility (See Wis. Admin. Code ATCP §§ 127.80(4), (6); and

C.  Element 3: The purchases were for property, goods, or services, (See Wis. Admin. Code ATCP § 127.83(2)(b)); and

D.  Element 4: Consent is a written agreement that contains the telephone number and signature of the customer to be called, that discloses in writing

that the customer is not required to sign the agreement as a condition of making a purchase and authorizes telemarketing calls from that person (See Wis. Admin. Code ATCP § 127.83(2)(b)); and

E.      Element 5: The person was not a nonprofit organization, (See Wis. Admin. Code ATCP §127.80(10)(a))[12]; and

F.      Element 6: The person was not an individual acting on his or her own behalf (See Wis. Admin. Code ATCP § 127.80(10)(b)).

---

[12] The lengthy provisions of Wis. Admin. Code ATCP §§ 127.80(10)(a) and (b) are set forth here in abbreviated form.

57