Neil S. Ende, Esq.
nende@tlgdc.com
Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
Telephone: (202) 895-1707
Facsimile: (202) 478-5074
Attorneys for Michael D. Lansky, LLC
  dba Avid Telecom
Michael D. Lansky and Stacey S. Reeves

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

State of Arizona, ex rel. Kristin K. Mayes )
Attorney General et al. )
)
)
Plaintiffs )
)
v. )   Case No. 4:23-cv-00233-EJM
)
Michael D. Lansky, LLC, dba )
Avid Telecom, an Arizona )
Limited Liability Company; )
)
Michel D. Lansky, individually )
As a Member/Manager/Chief )
Executive Officer of Michael D. )
Lansky, LLC dba Avid Telecom; )
and )
)
Stacey S. Reeves, individually as )
a Manager/Vice President of )
Michael D. Lansky LLC dba )
Avid Telecom )
)
Defendants. )
_____

**ANSWER**

Defendants Michael D. Lansky, LLC, Michael D. Lansky, and Stacey S. Reeves ("Defendants"), through counsel, hereby submit their Answer to the Complaint filed by the state Attorneys General identified in the caption (the "Plaintiffs" or "AGs")[1].

The Complaint does not contain a scintilla of evidence that Defendant Avid Telecom, ever initiated even a single illegal robocall or that Avid Telecom "knew" or should have known that any of the calls that it received from an originating aggregator or carrier was an illegal robocall. Indeed, Plaintiffs' entire case is premised on innuendo, rather than fact, and the facially absurd premise that the issuance of 329 Tracebacks out of billions of alleged calls (*fewer than one hundred millionth of one percent*) somehow put each of the Defendants on notice that they were transiting illegal robocalls.

Of course, this allegation will be revealed to be all the more absurd when the Court comes to understand that a Traceback is literally nothing more than a request to by the Industry Traceback Group (the "ITG") to "trace" a call path so that a regulatory authority with jurisdiction can understand where a call originated and the path of the call through the telecommunications network. Indeed, the Traced Act, which authorized the creation of the Industry Traceback Group, describes the traceback process as "a registration process for a single consortium that conducts private-led efforts to trace back the origin of suspected unlawful robocalls." *Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act or the Pallone-Thune Traced Act,* Public Law No: 116-

---

[1] Defendants submit their Answer June 14, 2024, as ordered by this Court because Plaintiffs did not timely submit an amended complaint. (See Dkt. 66 at page 35)

105 (12/30/2019) at Section 13(d); *passim*.  It does not authorize the FCC to grant the "consortium" with any authority to determine the legality of any call nor does it give this "private-led consortium" any enforcement authority.[2] The "consortium's authority is expressly limited to "conduct[ing] private-led efforts to trace back the origin of suspected unlawful robocalls.[3] Nor did the FCC grant the ITG such authority in its implement orders.[4]  And, even the ITG, itself, recognizes the limitations on its role: ". . . the ITG itself is not a law enforcement agency. Nor is it or any cooperating voice service provider—an agent of law enforcement. *See* the ITG website at *https://tracebacks.org/about/*. Per the *Traced Act*, the entity designated as the official Traceback Consortium – as the ITG is currently designated – must explicitly be a private entity."

Not only is the Complaint entirely lacking in any direct evidence of wrongdoing it is replete with allegations of fact that Plaintiffs know, or should know are not true, but much of the so-called evidence also presented was, on information and belief, obtained through illegal or otherwise improper means.[5]

---

[2] For this reason, while Plaintiffs seek to mislead the Court, through repeated false inuendo, into believing that a Traceback is a finding of illegality, notably, Plaintiffs never directly make that allegation—because they cannot.

[3] The Traced Act also mandates that the "consortium" be "neutral."  Traced Act at § 13(d)(1)(A).  As described herein, and as will become apparent as this case proceeds, the "consortium", which is part of the leading industry trade group (USTelecom; *www.ustelecom.org*) controlled by the nation's largest carriers and Avid Telecom's competitors—is far from independent.

[4] The Order implementing the Congressional mandate to create the "consortium states, expressly, that the implementation was pursuant to Section 13(d) of the Traced Act.

[5] These means include, on information and belief" (i) the unlawful or improper scraping of voice messages by third parties and the transmission of the associated data to third parties, including the ITG, through the interstate wire; (ii) the recording of voice messages without required consent in violation of state law and the transmission of the associated data to third parties, including the ITG, through interstate wire; (iii) the false addition of business telephone numbers into the Do Not Call Registry and the transmission of the associated data to third parties, including the ITG, through interstate wire; and (iv) the improper or illegal acquisition of the Mr. Lansky's financial data and the transmission of that data to third parties through interstate wire.

**JURISDICTION AND VENUE**

1. Defendants admit that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1355; the Telemarketing Act, 15 U.S.C. § 6103(a); and the TCPA, 47 U.S.C. §§ 227(e)(6) and (g)(2). The Telemarketing Act is the enabling statute for the TSR.

2. Defendants admit that this Court has pendent jurisdiction over the state law claims pursuant to 28 USC § 1367.

3. Defendants admit that venue is proper in this District under 28 U.S.C. §§ 1391(b)(2), 1395(a), 47 U.S.C. §§ 227(e)(6)(E), 227(g)(4), and 15 U.S.C. § 6103(e).

4. Defendants lack sufficient information to admit or deny whether Plaintiffs notified the Federal Trade Commission ("FTC") of this civil action. Defendants state that they were not notified directly, nor did they receive a copy of any notice that was provided to the FTC.

5. Defendants lack sufficient information to admit or deny whether Plaintiffs notified the Federal Communications Commission of this civil action prior to instituting such action, as required by 47 U.S.C. §§ 227(e)(6)(B) and (g)(3). Defendants state that they were not notified directly, nor did they receive a copy of any notice that was provided to the FCC.

6. Defendants are without sufficient current knowledge or information to admit or to deny whether the Attorneys General of the Plaintiffs are the chief legal officers for their respective states and commonwealths or whether they have the authority to participate in the instant complaint and/or whether their participation is appropriate under

applicable state laws and/or regulations and applicable ethical standards. Defendants, therefore, reserve all rights on these issues. Defendants deny that Plaintiffs brought this action in the public interest. Rather, Defendants believe that this action arises out of and is being pursued, in whole or part, by one of more of the Attorneys General, in a vindictive manner that is not consistent with the public interest.

7. The statements set forth in this paragraph constitute allegations of law to which no answer is required. To the extent that an answer is required, Defendants deny that Defendants have engaged in any telemarketing activities that violate the TSR or that Plaintiffs have established any right to damages, restitution, compensation or other relief.

8. The statements set forth in this paragraph constitute allegations of law to which no answer is required. To the extent that an answer is required, Defendants deny that Defendants have willfully or knowingly routed illegal calls or otherwise violated any applicable regulations.

9. The statements set forth in this paragraph constitute allegations of law to which no answer is required. To the extent that an answer is required, Defendants deny that they have violated any of the identified statutes.

10. Defendants admit the statements of fact set forth in paragraph 10 of the Complaint.

11. Defendants admit the statement of fact set forth in paragraph 11 of the Complaint.

12. Defendants deny that "at all relevant times to this Complaint, Avid Telecom was engaged in trade or commerce within the scope of the statutes enforced by Plaintiffs

and transacted business by routing telephone calls to each of the Plaintiff's jurisdictions." All routing decisions for calls transited by Defendants were made by third parties, often unknown to Defendants.

13.     Defendant Lansky admits that he resides in Tucson, Arizona, that according to filings in the Arizona Secretary of State business database, he is a Member and Manager of Avid Telecom, that he has held himself out as CEO of Avid Telecom in business filings and on the FCC's 499 Filer Database website and, on occasion, as the President of Avid Telecom. Lansky denies that he has formulated, directed, controlled, had the authority to control, or participated in many of the acts or practices of Avid Telecom set forth in this Complaint.

14.     Defendant Stacey S. Reeves ("Reeves") admits that, in certain limited circumstances, she has identified herself as a Vice President of Operations and Sales for Avid Telecom. At all times, Reeves' association with Avid Telecom was that of an independent contractor.  As such, Reeves never had the authority to formulate, direct, control, or that she ever had the authority to control the acts or practices of Avid Telecom as set forth in this Complaint and she denies all allegations to the contrary.

15.     Defendants Lansky admits that transacted business in this District through Avid Telecom. Defendant Lansky denies that he ever transacted business in this District in his individual capacity.  Defendant Reeves denies that she ever transacted business in this District in any capacity.

16.     Defendant Avid Telecom admits that the FCC's Form 499 Filer Database identifies Avid Telecom as an interconnected Voice over Internet Protocol ("VoIP")

service provider.  Avid Telecom denies that the traffic at issue is interconnected Voice over Internet Protocol traffic.

17.   Avid Telecom admits that, like most filers, it checked a box on the FCC website indicating that it does business in all U.S. states and territories because by doing so it was authorized to provide service there.  Avid Telecom denies that it has ever had any physical presence other than the State of Arizona, and while certificated in all states, it does not directly terminate any traffic an any state.

18.   Avid Telecom denies that the traffic at issue in the Complaint is interconnected Voice over Internet Protocol traffic.  Defendant Avid Telecom admits that it uses broadband to route calls.  Avid Telecom denies that it has any knowledge of or involvement in the selection of the persons originating the calls, that the persons originating the calls at issue are its "customers" or that it transits calls "throughout the U.S. telephone network."

**<u>INTRODUCTION</u>**

19.   Defendants lack sufficient information to admit or to deny the allegations of fact set forth in paragraph 19 of the Complaint.   To the extent an answer is required, Defendants deny they ever knowingly transited any calls that were harassing, annoying, threatening, or malicious.  The only such calls of which Defendants are aware are the dozens of harassing, annoying, threatening, and/or malicious calls Defendant Lansky and Defendant Reeves have received—including dozens and dozens of calls

containing specific death threats aimed and Defendant Lansky and Reeves, their families and even their outside counsel.[6]

20.    Defendants lack sufficient information to admit or to deny the allegations of fact set forth in paragraph 20 of the Complaint.    To the extent that an answer is required, Defendants deny that they ever knowingly transited any calls that originated by scammers.[7]

---

[6] For example, with apologies for reprinting the rough language, the following message was transmitted to Avid Telecom's independent contractor, Stacey Reeves from a sender who read the Complaint:

> "I'm going to murder your children. You are a piece of sh%t. You deserve nothing more than the worst torture on earth. I hope that you drown in a pool of sh%t and piss. You're horrible. Go kill yourself. Go f%$k yourself with a railroad spike. Go eat a hot branding iron. Die and never return to this earth. F%$k you, f%$k your children, f%$k everyone who knows you. Please, just kill yourself."

Ms. Reeves' Arizona attorney was so concerned about the implications of this email (and many similar ones) for Ms. Reeves' safety, that he sent emails to Daniel Barr, Laura Dilweg, Joseph Hubble and Dylan Jones at the Arizona Attorney General's office stating, first, inter alia, ". . . .We are genuinely concerned for Mr. Lansky and Ms. Reeves' safety and are asking that the Attorney General's office assist us in investigating the threats, which we believe are criminal, and marshalling security to protect them . . ."  In a second email, Ms. Reeves' attorney wrote, "I think it is imperative that the Attorney General's Office send out a press release of some sort condemning the harassing conduct here and reminding people that the claims in the complaint are merely allegations and that they need to let the judicial process work. Truly, the attacks that our clients are receiving are horrifying and we hope you will do what you can to calm things down. We are available to discuss. Thanks. Mr. Stein received the following terse response, flatly refusing to take any action to mitigate the risk caused directly by the Complaint: "If you have concerns related to the safety of your clients, please direct them to contact 9-1-1, or their local police department."

[7] The failure of any Defendant to admit or deny an allegation shall not be deemed a waiver or denial by such party.

## OVERVIEW   DEFENDANTS' BUSINESS PRACTICES
## AND WRONGDOING

21.    Defendants admit that Avid Telecom is in the business of providing VoIP services.  Defendants deny that they ever knowingly facilitated or initiated and/or helped others make any illegal robocalls.

22.    Defendants admit that, over a multiple-year period, Avid Telecom received more than 329 tracebacks from the Industry Traceback Group (a rate of fewer than 7 per month).  Defendants state Avid Telecom responded directly to each of these Tracebacks, providing information from the originating carrier—often a member of the ITG that did not itself receive a traceback for the very same call—demonstrating the call was lawful. Moreover, *as a traceback notice is not a formal or even an informal finding that a call is illegal*, rather it is nothing more than a request for the receiving carrier to "trace" information evidencing the call path through the network. Defendants each deny the mere receipt of a traceback notification ever put any of them "on notice" that Avid Telecom was transiting illegal robocalls.  Defendants also each state, under applicable law and regulation, the limits of their duty when receiving a notice or a traceback was to request and to provide call tracking information from the customer to the ITG.  Defendants each state that Avid Telecom fully complied with each of these obligations.  Moreover, as the Complaint alleges Avid Telecom transited more than 24.5 billion calls over this same multiple-year period (Compl. at para. 86), even if a traceback represented a finding a call was illegal, the receipt of 329 tracebacks on 24.5 billion calls—a 0.00000000658% traceback rate—Defendants state that they understood these data—along with their full

and timely compliance with all regulatory requirements and the blocking of billions of questionable calls that were delivered by third parties to their network—as direct evidence that each of them was doing an industry leading job of taking action to avoid and blocking the transmission of illegal robocalls.

23.    Defendants Avid Telecom and Lansky each deny the allegation set forth in paragraph 23 of the Complaint that they "chose profits over running a business that conforms to state law" and that they did not implement effective and meaningful procedures to prevent—or even significantly mitigate—the perpetration of illegal behavior.  In her limited role as an independent contractor, Defendant Reeves did not have access to information regarding any "profits" made by Avid Telecom or any decisions regarding those profits, and thus she does not have sufficient information to admit or to deny these allegations.   As the AGs in the State of Ohio and the State of Indiana—which we understand to be directly involved in the drafting of the Complaint— are well aware[8], Defendants not only timely implemented and utilized all required Know-Your-Customer requirements, but their operations also complied with STIR-SHAKEN standards well in advance of the due date.  Avid Telecom's efforts to prevent the transiting of illegal robocalls is also demonstrated by the fact that the company was never a point of entry carrier for overseas traffic (from where most illegal robocalls originate) and it rejected more that ninety percent (90%) of the requests for services that it received from

---

[8]  In response to CID's issued by the AG's office in each state, counsel to the Indiana and Ohio AG's offices have each been provided with documents, including without limitation Avid Telecom's Know Your Customer documents on file with the FCC, evidencing the company's efforts to implement meaningful procedures to prevent or to mitigate illegal behavior.

carriers where it suspected that their traffic could include illegal robocalls. For these reasons, and others, each of the Defendants denies the allegation that they "did not implement effective and meaningful procedures to prevent—or even significantly mitigate—the perpetration of illegal behavior."

24. Defendants each deny the allegation of fact set forth in paragraph 24 that the 329 tracebacks "informed Avid Telecom that they were carrying illegal robocall traffic". Defendants each also deny the allegation "they knew or should have known that Avid Telecom was assisting and facilitating telemarketers or sellers transmitting illegal robocalls based on its call detail records."

25. Defendants each deny the allegation of fact set forth in paragraph 25 of the Complaint that they were on notice, through tracebacks that Avid Telecom's network was being used by telemarketers or sellers to send illegal robocalls. Defendants also deny the allegation of fact set forth in paragraph 25 that they were on notice, through Tracebacks and complaints from downstream providers that Avid Telecom's network was being used by telemarketers or sellers to send illegal robocalls.

26. Defendants each deny the allegation of fact set forth in paragraph 26 of the Complaint that they "have been on notice about this illegal call traffic for many years."

27. Defendants each deny the allegation of fact set forth in paragraph 27 of the Complaint that they knew or consciously avoided knowing that telemarketers or sellers were transmitting robocalls across Avid Telecom's services to send call traffic that violated federal and state laws."

28.    Defendants each deny the allegation of fact set forth in paragraph 28 of the Complaint that provided substantial assistance to robocallers and facilitated the transmission and eventual delivery of millions of prerecorded telephone calls to residents in the Plaintiffs' respective jurisdictions."   Among other things, Plaintiffs have completely failed to provide any factual basis in support of the allegation that Defendant Avid Telecom actually terminated illegal robocalls in most of Plaintiffs' "respective jurisdictions," which it did not.

29.    Defendants each deny the allegation of fact set forth in paragraph 29 of the Complaint that "Defendants and their customers made or initiated calls to both residential and cellular telephone lines using artificial or prerecorded voices to deliver messages without the prior express consent of the called parties." Among other things, Plaintiffs have completely failed to provide any factual basis to believe that Defendant Avid Telecom, itself, made or initiated such calls; an allegation that they know or should know to be untrue.

30.    Because Plaintiffs do not define the terms "telemarketers", "sellers" or "some" Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 30 of the Complaint "[s]ome of Defendants' customers were telemarketers and/or sellers."  Defendants state further that the transiting of traffic for "telemarketers" or "sellers" is not *per se* illegal (*i.e.,* millions of lawful telemarketing calls are transited each day, *e.g.,* for pharmacies, banks warranty companies, schools, sports teams), the mere fact that "[s]ome of Defendants' customers

were [allegedly] telemarketers and/or sellers" does not evidence any illegal activity. To the extent a response is required, Defendants each deny each of the allegations.

31. Because Plaintiffs do not define the terms "telemarketers", "sellers" or "many" Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 31 of the Complaint that "[f]or many calls where Defendants' customers were not the caller, the caller was a telemarketer and/or seller." Because Reeves' role was limited to that of an independent contractor, Defendant Reeves also denies any third party was her "customer." Defendants state further that because the transiting of traffic for "telemarketers" or "sellers" is not *per se* illegal (*i.e.,* millions of lawful telemarketing calls are transited each day, *e.g.,* for pharmacies, banks warranty companies, schools, sports teams), the mere fact that "[s]ome of Defendants' customers were [allegedly] telemarketers and/or sellers" does not evidence any illegal activity. To the extent that a response is required, Defendants each deny each of the allegations.

32. Because Plaintiffs do not define the terms "customers", their "robocall campaigns" the advertising at issue, Defendants are without sufficient current knowledge or information to admit or to deny the allegations of fact set forth in paragraph 32 that Defendants' customers robocall campaigns advertise various goods and services including healthcare products and automobile extended warranties." Because Reeves' role was limited to that of an independent contractor, Defendant Reeves also denies any third party was her "customer." Defendants state further that the advertising of healthcare products and automobile extended warranties, including through advertising campaigns,

is not *per se* illegal and the complaint fails to provide any facts evidencing that Defendants had any actual knowledge that the calls that Avid Telecom was transiting were *illegal* robocalls.  To the extent that a response is required, Defendants each deny each of the allegations.

33.    Because Plaintiffs do not define the term "facilitated", Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 33 of the Complaint that Defendants that they facilitated the transmission of the identified robocall campaigns. To the extent that the enumerated (a-g) paragraphs that follow set forth legal claims regarding the alleged conduct, no further response is required. To the extent that a response is required, Defendants each deny each of the allegations.

34.    Because Plaintiffs do not identify the "customized" services at issue, Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 34 of the Complaint.  Moreover, because the allegation is directed only to Avid Telecom, no response is required from Defendants Lansky and Reeves.  Further, because Reeves' role was limited to that of an independent contractor, Defendant Reeves also denies that she provided any "service."   To the extent that a response is required, Defendants state that they do not own or control any telecommunications switches and that each of the identified services was available from Avid Telecom's third party to be utilized—or not—at the election of each of Avid Telecom's customers.  For these reasons, Defendants deny that they "customized" any

services or that the election by its customers to access or to utilize these services is a "clear indicia of illegal call traffic."

35.     Defendant Avid Telecom admits the allegation of fact set forth in paragraph 35 of the Complaint that it provided its customers with DID numbers. Moreover, because the allegation is directed only to Avid Telecom, no response is required from Defendants Lansky and Reeves. Further, because Reeves' role was limited to that of an independent contractor, Defendant Reeves also denies that she provided any DID numbers. Avid Telecom (and, to the extent required, Lansky and Reeves) each denies that Avid Telecom's provision of DIDs was in violation of any applicable law or regulation. Avid Telecom (and, to the extent required, Lansky and Reeves) each denies that they had any role in the determination of the "Called ID" that was presented to the party receiving calls initiated on these DIDs. Avid Telecom (and, to the extent required, Lansky and Reeves) each denies that, under applicable law and regulation, that their duty when receiving a notice or a traceback was to do anything more than to request and provide call information from the customer. Avid Telecom (and, to the extent required, Lansky and Reeves) each state that they had no obligation to vet or to verify the information provided by and that fully complied with each of their regulatory obligations.

36.     Defendants are unable to admit or to deny the allegations of fact set forth in paragraph 36 of the Complaint because the term "[t]his service" is ambiguous as "DID numbers" are not a "service." Moreover, because the allegation is apparently directed only to Avid Telecom, no response is required from Defendants Lansky and Reeves. Further, because Reeves' role was limited to that of an independent contractor, Defendant

Reeves also denies she provided any DID numbers. To the extent that Plaintiffs intend to refer to the use made by the customer of the DIDs provided by Avid Telecom (and, to the extent required, Lansky and Reeves) each deny that they provided DID numbers to "circumvent the procedural guardrails of the caller authentication framework of STIR/SHAKEN" or the mere use of DIDs necessarily creates the described result.

37. Defendant Avid Telecom admits, at the time referenced in footnote 11, it was able to obtain DIDs in the described time frame. Defendants admit at the time referenced in footnote 12, they were able to obtain DIDs at the described pricing. Defendant Avid Telecom admit denies the manner in which it obtained and provided DIDs was in any way either illegal or improper. Moreover, because the allegation is apparently directed only to Avid Telecom, no response is required from Defendants Lansky and Reeves. Further, because Reeves' role was limited to that of an independent contractor, Defendant Reeves also denies that she provided any DID numbers.

38. Defendants are unable to admit or to deny the allegations of fact set forth paragraph 38 of the Complaint because the term "bulk" is not defined with sufficient specificity to allow a proper response. Because the allegation is apparently directed only to Avid Telecom, no response is required from Defendants Lansky and Reeves. Further, because Reeves' role was limited to that of an independent contractor, Defendant Reeves also denies that she provided any DID numbers. To the extent a response is required, Defendant Avid Telecom (and, to the extent required, Lansky and Reeves) admit Avid Telecom, like hundreds of other carriers, had the ability to obtain DIDs with all area codes. Defendant Avid Telecom (and, to the extent required, Lansky and Reeves) each

denies Avid Telecom's acquisition of DIDs with all area codes was in any way either illegal or improper. Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers—including most of the members of the ITG—that operate in the same, and often far more troubling manners.

39. As the statement regarding "spoofing" is not directed to Defendants, and the definition of "spoofing" is a matter of law, no response is required. To the extent that a response is required, Defendants are without sufficient current knowledge or information to admit or to deny why unnamed third parties may elect to "spoof" the callerID system. To the extent this allegation is intended to suggest Defendants had any role in making it appear scammer calls are from legitimate phone numbers, Defendants each deny this allegation. Moreover, because Reeves' role was limited to that of an independent contractor, Defendant Reeves also denies she had any role in any alleged "spoofing".

40. Defendants deny the allegation set forth in paragraph 40 of the Complaint they "used DIDs for "'neighbor' spoofing and/or 'snowshoe' spoofing." To the extent this allegation is intended to suggest Defendants have any role in the selection of the callerID associated with any call that transits its network, Defendants each deny this allegation. Moreover, because Reeves' role was limited to that of an independent contractor, Defendant Reeves also denies that she provided any DID numbers. Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while

turning a blind eye to the dozens of other carriers—including most of the members of the ITG—that operate in the same, and often far more troubling manners.

41.     Because the allegation is properly directed to Avid Telecom alone, no response should be required from Defendants Lansky and Reeves.[9]  To the extent that a response is required, Defendant Avid Telecom (and, to the extent required, Lansky and Reeves) each deny the allegation set forth in paragraph 41 of the Complaint that they that they ever provided or sold data in the form of call recipient phone numbers to their customers to use as "leads" in their customers' telemarketing  campaigns. Further, because Reeves' role was limited to that of an independent contractor (to Avid Telecom only), Defendant Reeves also denies that she provided or sold data in the form of call recipient phone numbers to their customers to use as "leads" in their customers' telemarketing campaigns.

42.     Because the allegation is properly directed to Avid Telecom alone, no response should be required from Defendants Lansky and Reeves.  To the extent that a response is required, Defendant Avid Telecom (and, to the extent required, Lansky and Reeves) each deny the allegation set forth in paragraph 42 of the Complaint that they ever provided formal or informal consulting services concerning how to effectively conduct robocalling operations to any third party, including a (unnamed) "known robocaller". Moreover, because Reeves' role was limited to that of an independent contractor to Avid

---

[9] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 41, 49, 50, 51.  It is unclear whether these inconsistencies are the byproduct of an absence of focus or they reflect an intention to blur the lines between the conduct of Avid Telecom, as a corporate entity, and the separate conduct of Mr. Lansky as the owner of that LLC or, more troublingly, the conduct of Ms. Reeves, whose role was limited to that of an independent contractor.

Telecom (and not to any third party), Defendant Reeves also denies she ever advertised she provided formal or informal consulting services concerning how to effectively conduct robocalling operations to any third party, including a (unnamed) "known robocaller".

43.    Because Plaintiffs fail to define the term "actively participated" with adequate specificity, Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 43 of the Complaint. To the extent a response is required, Defendants deny they "actively participated in the initiation of, or assisted and facilitated in the initiation of, *illegal* robocalls." (Emphasis added.) Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers—including most of the members of the ITG—that operate in the same, and often far more troubling manners.

44.    Because Plaintiffs fail to define the terms "assisted" and "facilitated" with adequate specificity, Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 44 of the Complaint. To the extent a response is required, Defendants deny they "assisted and facilitated telephone calls that used neighbor spoofing." Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers—including most of the members of the ITG—that operate in the same, and often far more troubling manners.

45.    Defendants deny the allegation set forth in paragraph 45 of the Complaint that they "knew or consciously avoided knowing they were routing illegal robocall traffic." Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers—including most of the members of the ITG—that operate in the same, and often far more troubling manners.

46.    Because Plaintiffs fail to define the terms "substantial support" with adequate specificity, Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 46 of the Complaint.  To the extent a response is required, Defendants deny they "provided substantial support and assisted sellers and telemarketers engaged in illegal robocalling".  Specifically, Defendants deny they: Paragraph 46.a, made any illegal robocalls in any of Plaintiffs' jurisdictions or that they knowingly routed such calls; Paragraph 46(b), took "express" steps to obscure the ownership of any of their customers from ITG or other third parties; Paragraph 46.c., provided any customers with "DID rotation support" so that the customer could circumvent and undermine consumer, law enforcement, and industry efforts to block and mitigate illegal calls; Paragraph 46.e., provided customers with leads and/or data used by their customers to make illegal calls to consumers; or Paragraph 46.f., provided customers with expertise on how to most effectively and profitably run their illegal robocalling and telemarketing schemes. With respect to the allegations of fact set forth in paragraph 46.d, Defendants admit that Avid Telecom provided DIDs to certain of its customers, but it denies that it knew that these DIDs were used to make illegal

robocalls. Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers—including most of the members of the ITG—that operate in the same, and often far more troubling manners.

47. Defendants deny the allegation set forth in paragraph 47 of the Complaint that it knowingly provided support, assistance, facilitation, and participation in the delivery of billions of illegal robocalls sent by, to, and through their network that allegedly reached millions of consumers across the United States. Defendants' denial is premised, in part, on the fact that no entity with authority has ever concluded that Avid Telecom ever knowingly provided support, assistance, facilitation, and participation in the delivery of billions of illegal robocalls. Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers— including most of the members of the ITG—that operate in the same, and often far more troubling manners.

### Defendants' VoIP Provider Business Practices

48. Because the allegation is directed to Avid Telecom alone, no response is required from Defendants Lansky and Reeves. To the extent that a response is required, Defendants each admit the allegation set forth in paragraph 48 of the Complaint that Avid Telecom was in the business of transmitting telephone calls.

49. Because Plaintiffs fail to define the terms "retail customers" with adequate specificity, Defendant Avid Telecom does not have sufficient information to admit or to

deny the allegation of fact set forth in paragraph 49 of the Complaint. Moreover, because the allegation is directed to Avid Telecom alone, no response is required from Defendants Lansky and Reeves. Further, because Reeves' role was limited to that of an independent contractor to Avid Telecom Defendant Reeves also denies that she ever provided services to any retail customers. To the extent a response is required, Avid Telecom (and, to the extent required, Lansky and Reeves) each deny denies the allegation of fact set forth in paragraph 49 of the Complaint that it "provides services to retail customers." All Avid Telecom's customers are other carriers or aggregators of traffic from retail customers. Avid Telecom never has a direct relationship with any "customer" originating a call. Avid Telecom (and, to the extent required, Lansky and Reeves) does/do not have sufficient information to admit or to deny the manner (*e.g.,* whether any are pre-recorded robocalls) in which calls are originated onto its network by its aggregator and wholesale customers or the purpose of those calls (*e.g.,* whether any are telemarketing calls). Avid Telecom admits the allegation set forth in paragraph 49 of the Complaint that it provides transiting services to wholesale customers. Avid Telecom (and, to the extent required, Lansky and Reeves) does/do not have sufficient information to admit or to deny of the manner (*e.g.,* whether any are pre-recorded robocalls) in which calls are originated onto its network by its wholesale customers or aggregators or the purpose of those calls (*e.g.,* whether any are telemarketing calls).

50.    Because the allegation is properly directed to Avid Telecom alone,[10] no response should be required from Defendants Lansky and Reeves.  To the extent that a response is required, Defendants admit the allegation of fact set forth in paragraph 50 of the Complaint that Avid Telecom's "position in the call paths can vary from call to call." Avid Telecom denies that it ever has a direct relationship with a retail customer or any real time knowledge of the manner (*e.g.,* whether any are pre-recorded robocalls) in which calls are originated onto its network by its wholesale or aggregator customers or the purpose of those calls (*e.g.,* whether any are telemarketing calls).

51.    Because the allegation is directed to Avid Telecom alone,[11] no response should be required from Defendants Lansky and Reeves.  To the extent that a response is required, because Plaintiffs fail to define the term "originating VoIP provider" with adequate specificity, Avid Telecom (and, to the extent required, Lansky and Reeves) does/do not have sufficient information to admit or to deny the allegation of fact set forth in paragraph 51 of the Complaint.  To the extent that a response is required, (and, to the extent required, Lansky and Reeves) state that, even where they are the *first* provider in chain of providers that transit a call, Avid Telecom denies that it ever "makes or initiates the call" on behalf of its own retail customer—as it has no retail customers.

---

[10] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 51, 52.

[11] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 52.

52. Because the allegation is directed to Avid Telecom alone,[12] no response should be required from Defendants Lansky and Reeves. To the extent that a response is required, Avid Telecom (and, to the extent required, Lansky and Reeves) admit, generally, that Avid Telecom does transit calls initiated by a wholesale carrier or through an aggregator to another provider, which routes the call to another provider on the voice communications network and so on, until the call is routed to a provider that delivers or terminates the call to the intended call recipient. Avid Telecom (and, to the extent required, Lansky and Reeves) state further that Avid Telecom is never the terminating carrier.

53. Because the allegation is directed to Avid Telecom alone,[13] no response should be required from Defendants Lansky and Reeves. To the extent that a response is required, Avid Telecom (and, to the extent required, Lansky and Reeves) Defendants admit the allegation of fact set forth in paragraph 53 of the Complaint that they operate as an "intermediate provider", but they deny the allegation that Avid Telecom is ever the first provider—with the relationship with the calling party—in the chain of providers or that it is ever the "downstream" provider that terminates the call to the "call recipient".

54. Defendants admit the allegation of fact set forth in paragraph 54 of the Complaint that the last provider in a chain of providers that are involved in transiting a

---

[12] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51.
[13] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

call is sometimes referred to as the "terminating provider." Defendants deny that Avid Telecom is ever the "terminating provider".

55. Because Plaintiffs fail to define the term "originating provider" with adequate specificity, Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 55 of the Complaint. To the extent that a response is required, Avid Telecom states that, where its customer is an aggregator, it may act as the *first* provider in the chain of providers that transit calls to the called party. In other circumstances, Avid Telecom may be an intermediate provider in the middle of the chain of providers. Defendants deny that Avid Telecom is ever the "terminating provider".

56. Because Plaintiffs fail to define the term "complete filing" "incomplete filing" or otherwise provide any identifying information, Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 56 of the Complaint. Defendants admit that Avid Telecom has made filings in the FCC Robocall Mitigation Database.

57. At the time it made the filing, Avid Telecom understood that the reference in its 499 registration to the jurisdictions in which service is being provided to be a reference to the jurisdiction in which it was seeking authority to provide services. On information and belief, it is the common practice for applicants to check this box even though they do not then, nor do they intend to provide service to every state. In all events, Defendants deny that Avid Telecom ever provided VoIP services in all of Plaintiffs' respective jurisdictions.

58. Because the allegation is directed to Avid Telecom alone,[14] no response should be required from Defendants Lansky and Reeves. Issues relating to the "structure" of contracts call for a legal conclusion to which no response is required. Moreover, because Plaintiffs fail to define the term "structures its contracts" or "upstream providers" or "downstream providers" with adequate specificity, Avid Telecom (and, to the extent required, Lansky and Reeves), do not have sufficient information to admit or to deny the allegation of fact set forth in paragraph 58 of the Complaint. Further, because Reeves' role was limited to that of an independent contractor, she does not have sufficient information to admit or to deny allegations regarding contractual matters. To the extent that a response is required, Avid Telecom (and, to the extent required, Lansky and Reeves) denies that it intentionally structures its contracts and billing to appeal to "upstream providers" that transmit illegal robocalls.

59. Because the allegation is directed to Avid Telecom alone,[15] no response should be required from Defendants Lansky and Reeves. Moreover, because Plaintiffs fail to define "downstream providers" or "dialer traffic" or "conversational traffic" with adequate specificity, Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 59 of the Complaint. To the extent that a response is required, Avid Telecom (and, to the extent required, Lansky and Reeves), admit that it has agreements with (what it views as downstream providers)

---

[14] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.
[15] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

to transit calls and that those downstream providers—like virtually every carrier in the telecom network handling a variety of call types—may offer a variety of routes to transit those calls.

60.    Because the allegation is directed to Avid Telecom alone,[16] no response should be required from Defendants Lansky and Reeves.  Moreover, because Plaintiffs fail to identify that providers that it considers "like Avid Telecom" or to define the term "caters to" with adequate specificity, Avid Telecom (and, to the extent required, Lansky and Reeves) do not have sufficient information to admit or to deny the allegation of fact set forth in paragraph 60 of the Complaint that "providers like Avid Telecom cater to callers using robocalling technology that allows for the transmission of high call volumes in short durations.  To the extent that a response is required, Avid Telecom (and, to the extent required, Lansky and Reeves) state that Avid Telecom does not own any telecommunications switches and that each of the identified services was available from Avid Telecom's third-party switch provider and could be utilized—or not—at the election of each of Avid Telecom's customers.  Thus, Avid Telecom (and, to the extent required, Lansky and Reeves) each denies that there is anything in the VoIP services available from its switch provider that allows for the transmission of high call volumes in short durations, the ability to make multiple calls in a single second, pre-recorded or artificially-voiced messages or to allow a computer to confirm a call receipt any more than traditional TDM services (that have supported high volume calling for decades), all

---

[16] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

of which are ancillary services, not the VoIP telecom service itself. Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers—including most of the members of the ITG—that operate in the same, and often far more troubling manners.

61. Because the allegation is directed to Avid Telecom alone,[17] no response should be required from Defendants Lansky and Reeves. Moreover, because Plaintiffs fail to define "dialer traffic" with adequate specificity, Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 61 of the Complaint. To the extent that a response is required, Avid Telecom (and, to the extent required, Lansky and Reeves), Avid Telecom admits that All Access was one of the providers that Avid Telecom handed off traffic to after it transited Avid Telecom. Avid Telecom denies that the services available from All Access were unlimited or only available for below six-second calls. Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers— including most of the members of the ITG—that operate in the same, and often far more troubling manners.

62. Because Plaintiffs fail to define the terms "particularly attractive" or "troll" with adequate specificity, Defendants are without sufficient current knowledge or

---

[17] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

information to admit or to deny the allegation of fact set forth in paragraph 62 of the Complaint.  Defendants also do not have sufficient information to admit or to deny why "scammers" elect to use one telecom technology or the other or whether they "troll for vulnerable customers who will fall victim to their financial or identity theft claims."  To Avid Telecom's knowledge, virtually every carrier, including virtually every member of ITG, utilize VoIP technology in their networks to transmit millions or billions of calls—including millions or billions of short duration calls—and there is nothing inherent in VoIP technology that facilitates these activities any more than more than traditional TDM services that have supported high volume calling for decades.

63.     Because the allegation is directed to Avid Telecom alone,[18] no response should be required from Defendants Lansky and Reeves.  Moreover, because Plaintiffs fail to define the term "catered its business to" or "special dialer rates" with adequate specificity, Avid Telecom (and, to the extent required, Lansky and Reeves) do not have sufficient information to admit or to deny the allegation of fact set forth in paragraph 63 of the Complaint.  To that extent that a response is required, Avid Telecom (and, to the extent required, Lansky and Reeves) denies the allegation that it catered its business to the needs of robocallers by offering special "dialer rates" for short duration calls.

64.     Defendants Avid Telecom and Lansky admit that Lansky sent the referenced email.  Defendant Reeves, who operated exclusively as an independent contractor, does not have sufficient information to admit or to deny that Lansky sent the

---

[18] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

referenced email, or the meaning or the completeness of that email.  Defendants Avid Telecom and Lansky (and to the extent required, Reeves) deny that the email, which is heavily excerpted, provide full context for that communication.  Defendants Lansky and Avid Telecom (and to the extent required, Reeves) also deny the allegation, set forth in footnote 16 that all call center traffic is short duration calls from telemarketers. Defendants Lansky, Avid Telecom and, as a general matter, Reeves, admit that Avid Telecom was prepared to assist ANI Networks in "blocking" and "stopping" short duration traffic[19] and that Avid Telecom was not and did not want to be "the least expensive guys out there" who did not stop and block short duration calls.  For these reasons—and because it timely responded to all Traceback— Lansky, Avid Telecom and, as a general matter, Reeves, admit that Avid Telecom was in "very good standing with the US Telecom Association" (which runs the Industry Traceback Group).

### Avid Telecom's Website and Marketing

65.    Because the allegation is directed to Avid Telecom,[20] no response should be required from Defendant Reeves.  Moreover, Plaintiffs do not provide the date or web URL for the web page depicted, and that web page no longer exists, Avid Telecom and Lansky are unable to admit or to deny the allegations set forth in paragraph 65.  Defendant Reeves does not have information sufficient to allow her to admit or to deny the

---

[19] The statement set forth in this paragraph—that Avid Telecom had assisted in blocking and stopping short duration traffic—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic.  *See, e.g., Compl. para. 23.*  Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

[20] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

allegations regarding the content of the Avid Telecom website. To the extent that a response is required, Avid Telecom and Lansky and Reeves admit, following the initial Indiana Complaint, Lansky instructed Reeves to make changes to the Avid Telecom website to more adequately represent the offered services. Defendants also admit Avid Telecom offered telecom "minutes" and DIDs/Phone Numbers to its call center clients. Avid Telecom and Lansky and Reeves deny that Avid Telecom ever provided "Dialing Software", "SMS", "Targeted Services" or "Expertise" that was not associated with the purchase of telecom "Minutes" to any call center.

66.     Because the allegation is directed to Avid Telecom,[21] no response should be required from Defendant Reeves. Defendant Reeves does not have information sufficient to allow her to admit or to deny the allegations regarding the content of the Avid Telecom website. Avid Telecom and Lansky admit that an icon with the words "Dialing Software" appears in the depiction of the Avid Telecom Home Page presented in paragraph 66. Avid Telecom, Lansky and Reeves deny that it ever provided dialing software of any kind to any customer, including without limitations any call center customer. Avid Telecom, Lansky and Reeves also deny that Avid Telecom ever provided Predictive Dialer, Voice Broadcasting, List Management or Agent Management dialing software—none of which are identified on the identified page of the website—to any customer, including without limitations any call center customer. Avid Telecom and

---

[21] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

Lansky state that references to Dialing Software was inserted into the website in error by the website designer and it was removed when the error was detected.

67. Defendants admit the allegation presented in paragraph 67 of the Complaint that Avid Telecom has held itself out as a provider of DID numbers. Defendants further admit that Avid Telecom sold DID numbers both on a one-off basis, in bulk and in rotation.[22] Defendants are without sufficient current knowledge or information to admit or to deny that it is generally recognized that telephone numbers in all forms (toll free, inbound and outbound) can help users to increase sales, including through call backs, which are not a tool of robocallers. As Avid Telecom provided DIDs in the same manner many other carriers, including many of the members of the ITG, Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers—including most of the members of the ITG—that operate in the same, and often far more troubling manners.

68. Defendants do not have enough information to admit or to deny the allegation of fact set forth in paragraph 68 of the Complaint that "[t]he regular rotation of DID phone numbers is often indicative of callers that do not want to be identified. Legitimate businesses typically want their customers to be able to call them back with a DID phone number that does not change or rotate." To the extent a response is required, Defendants deny they had any involvement in any customer decision to obtain fresh DIDs

---

[22] Avid Telecom's customers, all of which are carriers, aggregators and the like, were permitted to return following a 90-day waiting period, consistent with industry best practices.

or to rotate its DIDs or the motivation for any customer to do so. As Avid Telecom provided DIDs in the same manner many other carriers, including many of the members of the ITG, Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers—including most of the members of the ITG—that operate in the same, and often far more troubling manners.

69. Because the allegation is directed to Avid Telecom,[23] no response is required from Defendant Reeves, who operated exclusively as an independent contractor and has no special knowledge of the alleged facts regarding the Avid Telecom website. Avid Telecom and Lansky admit that the statement presented in paragraph 69 of the Complaint, that it held itself out as providing telecom services that helped its customers complete calls and improve sales with no dead air or FAS." Avid Telecom and Lansky also admit it told its customers that they would not confront the fraud concerns associated with False Answer Supervision on other telecom services, where a caller is billed for a call duration that is longer than the actual connection time (rather, any such calls were terminated to a fake recording). Avid and Lansky admit further that, like many telecom companies, it offered flexible, volume-based pricing and the opportunity to test its network for free. Defendants deny that Avid Telecom's provision of any of these services was in violation of any applicable regulation or statute. As Avid Telecom offered these services in the same manner many other carriers, including many of the members of the

---

[23] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

ITG, Defendants view these accusations as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers—including most of the members of the ITG—that operate in the same, and often far more troubling manners.

70.    Because the allegation is directed to Avid Telecom,[24] no response is required from Defendant Reeves, who operated exclusively as an independent contractor and has no special knowledge of the alleged facts regarding the Avid Telecom website. Avid Telecom Avid Telecom and Lansky admit that the words "multiple of data sources" appeared in the depiction of the Avid Telecom homepage presented in paragraph 70. Avid Telecom and Lansky deny that the words "call data" appear or that it ever provided "call data" to any customer. The reference to "multiple of data sources" and "contact leads" were inserted into the website in error by the website designer and they were removed when the error was detected.

71.    Because the allegation is directed to Avid Telecom,[25] no response is required from Defendant Reeves, who operated exclusively as an independent contractor and has no special knowledge of the alleged facts regarding the Avid Telecom website. Avid Telecom and Lansky deny that Avid Telecom held itself out publicly to offer its "employees' expertise" in wholesale and call center telephone. Indeed, neither the words "employees" nor "expertise" appear on the referenced webpage, and, in fact, Avid

[24] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.
[25] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

-34-

Telecom never had any employees.  Avid Telecom and Lansky also deny that Avid Telecom ever guided customers through any "data management" or "taxation" issues. Defendants admit that Avid Telecom worked hard to ensure of its customers were aware of their "industry compliance" obligations.  The references to "data management" and "taxation" issues were inserted into the website in error by the website designer and they were removed when the error was detected.

72.  Because the allegation is directed to Avid Telecom,[26] no response is required from Defendant Reeves, who operated exclusively as an independent contractor and has no special knowledge of the alleged facts regarding the Avid Telecom website. Avid Telecom and Lansky deny the allegation set forth in paragraph 72 of the Complaint that "Avid Telecom's website and marketing made it clear that it was courting robocallers and other VoIP providers that send voluminous robocall traffic."  As all robocalls are not illegal, Defendants view this accusation as further evidence of Plaintiffs' selective, discriminatory and punitive misapplication of statutes and rules to Avid Telecom, while turning a blind eye to the dozens of other carriers—including most of the members of the ITG—that operate in the same, and often far more troubling manners.

## ROBOCALL MITIGATION, METRICS, AND ANALYSIS TOOLS

73.  Defendants are without sufficient current knowledge or information to admit or to deny  to admit or to deny the allegations of fact set forth in paragraph 73 of the Complaint that many of the rules, and processes on which Plaintiff relies to support

---

[26] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

its claims, have become essential to identifying and mitigating the sources of illegal robocall and telemarketing campaigns have been implemented by law enforcement and voice communications members "[i]n the last several years." Defendant denies that many of the allegations of fact regarding carriers with which Avid Telecom did business were known to Defendants at the time that they occurred or that many of the rules, and processes on which Plaintiff relies to support its claims were in place at the time that the alleged wrongdoing occurred. Defendants state that Plaintiffs' attempt to apply these facts, rules and regulations on an *ex post facto* basis is unfair, reckless, improper and legally unsustainable.

### Call Detail Records

74. The generic, self-serving and entirely unsupported allegations of fact set forth in paragraph 74 are not addressed to Defendants, so, no response is required. To the extent that a response is required, Defendants deny the allegation set forth in paragraph 74 of the Complaint that "every attempted or completed call that reaches a VoIP provider's network *automatically* generates a record, known as a 'call detail record' or 'CDR.'" (Emphasis added.) The generation of a CDR is a function of the programming of one or more switches or servers, and it is not "automatic." Defendants admit that, where a CDR is generated, it may contain the information referenced in paragraph 74.a-f. Defendants deny that, due to software, manipulation and other issues, all CDR records are complete and accurate.

75. The generic, self-serving and entirely unsupported allegations of fact set forth in paragraph 75 are not addressed to Defendants, so, no response is required. To

the extent that a response is required, Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 75 of the Complaint that "VoIP providers" are incentivized to ensure that CDRs are complete or accurate. To the extent that response is required, Defendants deny that all VoIP providers are incentivized to ensure that CDRs are "complete or accurate." Indeed, to the extent that Plaintiffs, both in the aggregate in this Complaint and individually through subpoenas and Civil Investigative Demands utilize CDRs to prove their allegations of illegal activity, the incentives to carriers are just the opposite. At the same time, the incentives are also the opposite for those parties that seek to misrepresent data from CDRs for competitive advantage or profit.

76. The generic, self-serving and entirely unsupported allegations of fact set forth in paragraph 76 are not addressed to Defendants, so, no response is required. To the extent that a response is required, because Plaintiffs fail to define the terms "some amount of time" with adequate specificity, Defendants are without sufficient current knowledge or information to admit or to deny the allegation of fact set forth in paragraph 76 of the Complaint. Notwithstanding this definitional inadequacy, Defendants also do not have sufficient information to admit or to deny whether "every provider" needs CDRs to accurately bill and "upstream provider" for accepting its call traffic. As there are providers that bill in manners other than time, Defendants believe that this allegation to be false.

77. The generic, self-serving and entirely unsupported allegations of fact set forth in paragraph 77 are not addressed to Defendants, so, no response is required. To

the extent that a response is required, Defendants deny the allegation set forth in paragraph 77 of the Complaint that, "[i]llegal robocalls create distinctive and identifiable patterns in CDRs." Defendants also deny the allegation that these calls are universally unexpected and unwanted, and that most recipients hang up the phone immediately. Moreover, because Plaintiffs fail to define the terms "typically", "short duration", "often" and "high" Defendants are unable to admit or to deny the allegation that, "these calls typically connect for a very short duration", that CDRs for illegal robocalls will often feature a high percentage of calls that are only a few seconds long" or that, [w]hen examined in the aggregate, CDRs tend to show a very short average call duration". To the extent that a response is required, Defendants also deny each of these allegations.

78. The generic, self-serving and entirely unsupported allegations of fact set forth in paragraph 78 are not addressed to Defendants, so, no response is required. To the extent that a response is required, because Plaintiffs fail to define the terms "legitimate", "consented-to" or "routine conversational call traffic", Defendants are unable to admit or to deny the allegation that, these calls "typically have a much lower short call percentage, and a much longer average call duration", Defendants are unable to admit or to deny these generic allegations. To the extent that a response is required, Defendants deny each of these allegations.

79. The generic, self-serving and entirely unsupported allegations of fact set forth in paragraph 79 are not addressed to Defendants, so, no response is required. To the extent that a response is required, because Plaintiffs fail to define the terms "relatively infrequently", "often apparent" or "indicative of", Defendants are unable to admit or to

deny the allegation that, these calls "typically have a much lower short call percentage, and a much longer average call duration", Defendants are unable to admit or to deny these generic allegations. To the extent that a response is required, Defendants deny each of these allegations.

80.    The generic, self-serving and entirely unsupported allegations of fact set forth in paragraph 80 are not addressed to Defendants, so, no response is required.  To the extent that a response is required, because Plaintiffs fail to define the terms "frequently", "often apparent" or "indicative of", Defendants are unable to admit or to deny the allegation that, these calls "typically have a much lower short call percentage, and a much longer average call duration", Defendants are unable to admit or to deny these generic allegations. To the extent that a response is required, Defendants deny each of these allegations.

81.    The generic self-serving and entirely unsupported allegations of fact set forth in paragraph 81 are not addressed to Defendants, so, no response is required.  To the extent a response is required, Defendants deny they were ever involved in "neighbor spoofing or impersonating trusted numbers."

82.    The generic self-serving and entirely unsupported allegations of fact set forth in paragraph 82 are not addressed to Defendants, so, no response is required.  To the extent a response is required, Defendants deny they were ever involved in "snowshoeing."

83.    The generic, self-serving and entirely unsupported allegations of fact set forth in paragraph 83 are not addressed to Defendants, so, no response is required.  To

the extent a response is required, Defendants deny they were ever involved in "snowshoeing."

84.    The generic and entirely unsupported allegations of fact set forth in paragraph 84 are not addressed to Defendants, so, no response is required.  To the extent that a response is required, Defendants deny each of these allegations.

85.    The generic and entirely unsupported allegations of fact set forth in paragraph 85 are not addressed to Defendants, so, no response is required.  To the extent that a response is required, Defendants deny the allegation that the rate of phone numbers in the Do Not Call Registry is a reliable way to "distinguish illegal robocalls and telemarketing calls from legitimate calls" either in the industry generally or, specifically, as to the calls transited by Avid Telecom (particularly as, on information and belief, many of the numbers in the Do Not Call Registry were registered by businesses who placed them there as honeypots to capture supposed illegal robocalls.

**Patterns of Illegal Calls Identified in Avid Telecom's Call Detail Records**

86.    Because Plaintiffs do not provide any information regarding the data collection or review parameters of their alleged "preliminary review" of "some" of the CDRs allegedly obtained from Avid Telecom's "downstream providers", nor do they provide any evidence of the statistical significance of the data obtained and reviewed, and because Plaintiffs do not identify these "downstream providers" nor do they define the term "valid U.S. phone numbers", Defendants cannot admit or deny the allegations of fact regarding Avid Telecom's traffic volumes or average call duration. To the extent

-40-

that a response is required, Avid Telecom states that, as a general matter, the duration of a call is not determinative of whether a call is a legal or an illegal robocall.

87.    Because Plaintiffs do not provide any information regarding the data collection or review parameters of their alleged "preliminary review" of "some" of the CDRs allegedly obtained from Avid Telecom's "downstream providers", nor do they provide any evidence of the statistical significance of the data obtained and reviewed, and because Plaintiffs do not identify these "downstream providers" nor do they define the term "valid U.S. phone numbers", Defendants cannot admit or deny the allegations of fact regarding Avid Telecom's traffic volumes or average call duration. To the extent that a response is required, Avid Telecom states that, as a general matter, the duration of a call is not probative of whether a call is a legal or an illegal robocall.

88.    Because the allegation in paragraph 88 refers only to the conduct of Avid Telecom no response is required from Lansky or Reeves. [27]  Moreover, because Reeves operated exclusively as an independent contractor with no authority over routing decisions, Reeves denies that the alleged conduct of Avid is properly attributable to her. Further, because Plaintiffs do not provide any information regarding the parameters of their alleged "preliminary review" of (apparently) "some" of the CDRs allegedly obtained, nor do they provide any evidence of the statistical significance of the data obtained and reviewed, and because Plaintiffs do not identify these "downstream providers" nor do they define the term "valid U.S. phone numbers",  Avid Telecom (and,

---

[27] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

as required, Lansky and Reeves) each cannot admit or deny the allegations of facts set forth in paragraph 88.a-g and i.  Similarly, because Plaintiffs do not provide any information regarding the parameters of their alleged "initial review" of (apparently) "some" of the CDRs allegedly obtained from Avid Telecom's "downstream providers", nor do they provide any evidence of the statistical significance of the data obtained and reviewed, Avid Telecom (and, as required, Lansky and Reeves) each cannot admit or deny the allegations of facts set forth in paragraph 88.h. regarding the calls allegedly transmitted Avid Telecom sent and/or transmitted more than 1 million calls to consumers in the "Plaintiffs' respective (sic) jurisdictions."  To the extent that a response is required, Avid Telecom (and, as required, Lansky and Reeves) each denies that it was knowingly involved in the transiting of illegal robocalls or the termination of illegal robocalls calls in a n d / e a c h  o f  the "Plaintiffs' respective (sic) jurisdictions."  Given Plaintiffs' representation that only "1 million" of these calls were illegal, Avid Telecom (and, as required, Lansky and Reeves) deny that the call counts and associated allegations set forth in paragraph 88 a.-h. evidence the fact or the scope of any illegal activity in those jurisdictions.

89.    Because the allegation in paragraph 89 refers only to the conduct of Avid Telecom no response is required from Lansky or Reeves.[28]  Moreover, because Reeves operated exclusively as an independent contractor with no authority over routing decisions, Reeves denies that the alleged conduct of Avid Telecom is properly attributable

_____

[28] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

to her.   Further, because Plaintiffs do not provide any information regarding the parameters under which the data presented obtained, apparently from certain unnamed Avid Telecom "downstream providers", nor do they define the term or identify the "unlawful content" at issue, nor do they provide any evidence of the statistical significance of the data obtained and reviewed or the jurisdiction into which any of the calls were placed, or how they know that the content was "unlawful" or even what laws were allegedly broken, Defendants cannot admit or deny the allegations of facts set forth in paragraph 88.a-ww.  To the extent that a response is required, Defendants deny that it ever knowingly transited illegal robocalls or that it was the terminating carrier for any of the calls referenced in paragraph 89.

90.   Because the allegation in paragraph 90 refers only to the conduct of Avid Telecom, no response is required from Lansky or Reeves.[29]  Moreover, because Reeves operated exclusively as an independent contractor with no authority over routing decisions, Reeves denies that the alleged conduct of Avid Telecom is not attributable to her.  Further, because Plaintiffs do not provide any information regarding the identity(ies) of the persons or entities that sponsored the allegedly "unlawful campaigns", the jurisdictional relevance of the calls, nor a scintilla of factual basis for the allegation that the campaigns or the content of the messages were unlawful, Defendants cannot admit or deny the validity or the accuracy of these transcripts.  Moreover, on information and belief, some or all of the transcripts obtained by the ITG directly or through a third party

[29] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

were obtained in an improper and/or an illegal manner and then transmitted over interstate wire to ITG.   In all events, Defendants each deny that they had any foreknowledge of or role in the design of the referenced campaigns, or that the content of the transcribed messages demonstrate that the calls were illegal robocalls or that any Defendant engaged in unlawful conduct.[30]

91.   Defendants deny the allegation set forth in paragraph 91 that they "made" any calls, including calls that used illegally spoofed phone numbers."   Because Avid Telecom does not "make" any calls, nor do they have any role in the selection of the DID used for such calls, Defendants also deny the allegation set forth in paragraph 91 that they "used illegally spoofed phone numbers to deliberately disguise" calls as "legitimate call traffic from local, state, and federal government agencies within the United States." Moreover, because Reeves operated exclusively as an independent contractor with no authority over routing decisions, Reeves denies that the alleged conduct of Avid Telecom is properly attributable to her.   Defendants also deny that Avid Telecom "made" calls "into" the United States.

92.   Because Plaintiffs do not identify any of the calls at issue, by date, DID, called number or jurisdiction of termination, Defendants are without sufficient current

---

[30] On information and belief, some or all of these transcripts were obtained in violation of law and of the applicable YouMail Terms of Use and/or Privacy Policy.  Defendants therefore reserve all rights to challenge the admissibility of these transcripts as well as any data that is presented that was derived from data provided by YouMail.  For example, the YouMail Privacy Policy expressly states that all "Data Related To Phone Calls and Text Messages" "is kept completely private, stored securely and available only to your account except in the specific cases described below where you explicitly share the data or give us access to it."  As the Complaint expressly alleges that Plaintiffs obtained the transcripts "through a publicly available no-cost website" it is beyond dispute that the YouMail customers who received the transcribed calls did not "explicitly share the data or give [YouMail] access to it." Defendants reserve all rights regarding the admissibility of data obtained from YouMail.

knowledge or information to admit or to deny the allegations set forth in paragraph 92 that they "knowingly" sent and/or transmitted more than 8.4 million calls across Avid Telecom's network that used spoofed CallerID numbers which misrepresented the callers' affiliations with federal law enforcement agencies, state law enforcement agencies, and private sector entities." Moreover, because Reeves operated exclusively as an independent contractor with no authority over routing decisions, Reeves denies that the alleged conduct of Avid Telecom is properly attributable to her. To the extent that a response is required, Defendants deny the allegation.

93. Because Plaintiffs do not identify any of the calls at issue, by date, DID called number or jurisdiction of termination, Defendants are without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 93 of the Complaint that they "knowingly" sent and/or transmitted calls with spoofed calling numbers to any of the federal and state law enforcement agencies identified in paragraph 93.a.-w." Moreover, because Reeves operated exclusively as an independent contractor with no authority over routing decisions, Reeves denies that the alleged conduct of Avid Telecom is properly attributable to her. To the extent that a response is required, Defendants deny the allegation.

94. Because Plaintiffs do not identify any of the calls at issue, by date, DID or called number, Defendants are without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 94 of the Complaint that they "knowingly" sent and/or transmitted calls with spoofed calling numbers associated with any of the private entities identified in paragraph 94. Moreover, because Reeves operated

exclusively as an independent contractor with no authority over routing decisions, Reeves denies that the alleged conduct of Avid Telecom is properly attributable to her.  To the extent that a response is required, Defendants deny the allegation.

95.    The generic and entirely unsupported allegation of fact set forth in paragraph 95 of the Complaint is not addressed to Defendants, so, no response is required. Notwithstanding the previous, Avid Telecom states that it utilized available systems and resources to block more than 2.3 billion calls in calendar year 2023 alone.

96.    Because Plaintiffs do not identify any of the calls at issue, by date, DID or called number, Defendants are without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 96 of the Complaint that they sent and/or routed more than 21.5 billion calls that were made using more than 1.3 billion Caller ID or DID numbers.  To the extent a response is required, Defendants deny they had any involvement in the selection of the CallerID or the DID numbers associated with any of the calls.

**OVERVIEW OF AVID TELECOM'S TRACEBACKS AND OTHER THIRD-PARTY NOTICES OF WRONGDOING**

97.    Because the allegation in paragraph 97 refers only to the conduct of Avid Telecom, no response is required from Lansky or Reeves.[31]  Defendant Avid Telecom admits the allegations set forth in paragraph 97 of the Complaint that it "received Traceback requests from and communicated with ITG."  Avid Telecom (and, as necessary,

---

[31] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

Lansky and Reeves) deny that any of these Traceback requests reflect a finding by an entity with jurisdiction that the associated call was an illegal robocall. Avid Telecom states further that it responded in a timely manner to each Traceback that it received from the ITG.

98. Avid Telecom admits the allegations set forth in paragraph 98 of the Complaint that, to the best of its knowledge, "the ITG is a private industry group—composed of providers across wireline, wireless, VOIP, and cable services—that traces and identifies the sources of illegal robocalls." Avid Telecom denies that the ITG is "collaborative"; rather Avid Telecom believes that the ITG often wields its power in ways that are designed and implemented to protect its members and to punish companies that compete with its members. Avid Telecom states further that membership in the ITG is not open to all carriers—particularly smaller carriers—that the members of ITG are the direct competitors to Avid Telecom and to other carriers and that many of the Tracebacks that were issued to Avid Telecom involved calls transited by members of the ITG—often the originating carrier—who did not also receive a Traceback. Avid Telecom states further that the ITG does not have the legal authority to determine if a robocall is illegal and that the issuance of a Traceback by the ITG does not purport to be nor is it a legally cognizable finding of illegal activity.

99. Defendants admit the allegations set forth in paragraph 99 of the Complaint that the "ITG's traceback operations are managed by a team of employees and contractors." On information and belief, many of these employees are provided by members of ITG who compete directly with Avid Telecom. Avid Telecom also admits

that ITG's intended function is "to work daily with industry and government partners to identify sources of illegal robocalling campaigns."  However, ITG regularly strays well beyond the role granted to it by the Traced Act and the FCC, including by asserting that it has the authority to determine if a call is legal and to impose sanctions upon targeted companies like Avid Telecom and, on information and belief, by gaining the data used to issue Tracebacks through improper and/or unlawful means, by selling Tracebacks to third parties,[32] and by unlawfully sharing the data it obtains with third parties who are not authorized to access those data.

100.    Defendants are without information sufficient to admit or to deny the allegation set forth in paragraph 100 of the Complaint that "[e]very day, the ITG traces back numerous robocalls, which are representative examples of the most prolific, ongoing, identified and suspected illegal robocall campaigns in the United States"; *provided, however*, Defendants does not believe that many of those Tracebacks are representative examples of "the most prolific, ongoing, identified and suspected illegal robocall campaigns in the United States."[33]  Moreover, on information as belief, when

---

[32] Josh Bercu, the Vice President, Policy & Advocacy at USTelecom/ITG, has admitted, under oath, that the ITG is paid by third parties to issue Tracebacks to specific targeted carriers.  The ITG's Policies and Procedures provide for the issuance of a Traceback at the request of an ITG member, including an ITG member that is the direct competitor to Avid Telecom.  ITG Policies and Procedures (Organization Traceback Requests) at p. 9.
[33] The ITG's Policies and Procedures provide for the issuance of a Traceback at the request of an ITG member, including an ITG member that is the direct competitor to Avid Telecom.  ITG Policies and Procedures (Organization Traceback Requests) at p. 9.  The Complaint does not reveal how many of the 329 Tracebacks identified in the Complaint were the byproduct of a payment to the ITG, requested by a member of the ITG or by a third party in coordination with a member of the ITG.

the ITG issues a Traceback and enters the Traceback into its database, it does not update that database to indicate where the traceback has found no illegal conduct. As a result, the information in that database that it shares with federal and state law enforcement agencies—and which is apparently being relied upon in whole or part by Plaintiffs in this case—is unreliable (on the high side) with respect to the number of traceback that reflect illegal robocalls.

101.   Defendants admit that the two Traceback notices included in paragraph 101 of the Complaint appear to be traceback notices sent by Josh Bercu of ITG to Avid Telecom. Defendants also admit that these traceback notices state that traffic at issue was viewed as "suspicious" and requested the cooperation of Avid Telecom "identify the sources" of the traffic. Defendants also admit that each of these notices states that the ITG "appreciates" [Avid Telecom's] past support of the ITG." Defendants state further that Avid Telecom provided the requested information and that, in neither case, did the ITG refer the matter to the FCC's Enforcement Bureau, which is the only organization associated with the FCC authorized to determine the legality of a robocall.[34]

102.   Defendants deny the allegation set forth in paragraph 102 of the Complaint that "[t]he ITG traces back the most prolific or damaging ongoing identified or suspected illegal robocall campaigns in the United States." Rather, on information and belief, the ITG targets certain companies, like Avid Telecom (who are not allowed to be members

---

[34] The ITG's Policies and Procedures provide that, ". . . nothing in this section shall limit the ability of the ITG to refer Tracebacks to enforcement authorities . . ." Industry Traceback Group: Policies and Procedures (Revised April 2022) at p. 8.

of ITG), for tracebacks and fails to issue tracebacks to favored carriers—many of which are members of the ITG—who are involved in much larger robocall campaigns involving exponentially larger numbers of suspicious robocalls.[35]   On further information and belief, the ITG members who are involved in these massive campaigns do not receive tracebacks on their own campaigns where traceback are issued to smaller carriers to whom the larger carriers—who are often the originating carrier—deliver the suspicious traffic.   On further information and belief, the ITG sells Tracebacks to favored third parties that wish to target a carrier.[36]   Defendants also deny that the "Traceback" process starts when the ITG sends a notice to the "terminating provider," the voice service provider who delivered the call that is the subject of the Traceback to the call recipient."   Rather, the traceback process starts with an allegation—truthful or not—received from a member of the public or from a member of the ITG—that a call or a campaign includes the transiting of illegal robocalls. Defendants also deny any implicit allegation that Avid Telecom has ever refused to respond to a Traceback notification.   It has not.

103.    Without admitting that the description of the Traceback process set forth in paragraph 103 or elsewhere in the Complaint is complete or accurate, or that the ITG

---

[35] On information and belief, the ITG also improperly shares traceback data with private persons and entities who then use those data in for-profit enterprises and other questionable purposes.

[3636] On information and belief, the actions described in the ¶¶ 98-102, which stray outside the authority delegated to the ITG and/or are otherwise improper, including without limitation a motive to harm competition and/or to derive a profit, may warrant the loss sovereign immunity and/or derivative immunity by USTelecom and/or the ITG and its members.

complies operates within its delegated authority, which Defendants deny, Defendants admit that they are generally aware both of how the Traceback process works in reality and of how it was intended to work.

104.    Defendants admit the allegation set forth in paragraph 104 of the Complaint that Avid Telecom received notifications in which the sender alleges that Avid Telecom had transited calls made in violation of the National DNC Registry and state Do Not Call Lists.  Defendants deny that Avid Telecom knowingly transited calls that were made in violation of the National DNC Registry and state Do Not Call Lists.  Defendants state further that, where it received such a notification, Avid Telecom responded directly sand in a timely manner.  Where Avid Telecom's investigation revealed a concern, it timely disconnected the involved carrier.  Where Avid Telecom's investigation revealed that the data on which the notice was based was false, obtained illegally or that it was byproduct of illegal conduct by the noticing party (*e.g.,* the illegal recording of the call at issue; the false registration of a number in the CallerID database) it so advised the notice provider of its concerns.

105.    Defendants admit the allegation set forth at paragraph 105 of the Complaint that the ITG notified Avid Telecom at least 329 times since (on or about) January 6, 2020, about "suspected" illegal calls that transited Avid Telecom's network."  Defendants deny that any of these notifications led to an enforcement action by the FCC or a specific finding that the associated call was, in fact, an illegal robocall.

106.    Because Plaintiff does not define the term "large volume" or "similar", Defendants are unable to admit or to deny the allegation set forth in paragraph 106 of the

Complaint that each traced call it received is representative of a "large volume" of "similar" illegal calls. Moreover, because Plaintiff does not define the term "large volume" or "similar", Avid Telecom is unable to admit or to deny the allegation set forth in paragraph 106 of the Complaint that it "caused 'vast numbers' of scam robocalls to reach US consumers." Further, because the allegation in paragraph 106 refers only to the conduct of Avid Telecom, no response is required from Lansky or Reeves.[37] To the extent that a response is required, Avid Telecom (and, as required, Lansky and Reeves) deny both the allegation that each traced call Avid Telecom received is representative of a "large volume" of "similar" illegal calls as well as the inconsistent allegation that Avid Telecom "caused 'vast numbers' of scam robocalls to reach US consumers." Avid Telecom (and, as required, Lansky and Reeves) also deny that any of the Tracebacks represent calls that were ever "identified . . . as illegal call traffic" by an entity with the legal authority to do so (*i.e.,* the FCC Enforcement Bureau).

107. Avid Telecom is without information sufficient to admit or to deny the allegation set forth in paragraph 107 of the Complaint that "[o]f these 329 representative calls traced back by the ITG, 160 calls were made to phone numbers on the National DNC Registry. Moreover, because the allegation in paragraph 107 of the Complaint relates only to the alleged conduct of Avid Telecom, no response is required from Lansky or Reeves.[38] To the extent that a response if required, Avid Telecom (and, as required

---

[37] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

[38] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

Lansky and Reeves) deny that they knowingly transited any calls made to phone numbers on the National DNC Registry.

108. Because Plaintiff does not define the term "scam calls"—which is not a term defined in the applicable law or regulations—Defendants are unable to admit or to deny the allegation set forth in paragraph 108 of the Complaint that "[b]ased on its (sic) Tracebacks, Avid Telecom knew that it routed identified scam calls. . ."  Because the allegation in paragraph 108 of the Complaint relates only to the alleged conduct of Avid Telecom, no response is required from Lansky or Reeves.[39]  To the extent that a response if required, Avid Telecom (and, as required Lansky and Reeves) deny that Avid Telecom knew that any call it transited was a "scam" or the like.  Avid Telecom (and, as required Lansky and Reeves) also deny that the calls associated with the Tracebacks had been "identified" as scam calls Avid Telecom (and, as required, Lansky and Reeves) also deny that any of the Tracebacks represent calls that were ever "identified" as "scam calls" or the like by an entity with the legal authority to do so (i.e., the FCC Enforcement Bureau) and Avid Telecom (and, as required Lansky and Reeves) deny the allegation on that basis. Finally, as the ITG never elected to refer a single Traceback to the FCC Enforcement Bureau—which is the only organization associated with the FCC that has the legal authority to find illegality—Avid Telecom justifiably and rightfully concluded that the ITG found there to be no wrongdoing.

---

[39] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

109.   Avid Telecom admits that it received Tracebacks relating to calls delivered to Avid Telecom by the carriers identified in paragraph 109 of the Complaint.   Because the allegation in paragraph 109 of the Complaint relates only to the alleged conduct of Avid Telecom, no response is required from Lansky or Reeves.[40]  Avid Telecom (and, as required Lansky and Reeves) also deny that the calls associated with these Tracebacks had been "identified" as "illegal robocalls" by an entity with the legal authority to do so (*i.e.,* the FCC Enforcement Bureau) and Avid Telecom (and, as required Lansky and Reeves) deny the allegation on that basis.  Moreover, as the ITG never elected to refer a single one of these Tracebacks to the FCC Enforcement Bureau there is no legal basis to conclude that any of the associated calls were illegal and Avid Telecom (and, as required Lansky and Reeves) deny the allegation on that basis.

110.   Avid Telecom denies the allegation set forth in paragraph 110 of the Complaint that Avid Telecom "accepted and routed identified and known illegal robocalls."  Because the allegation in paragraph 110 of the Complaint relates only to the alleged conduct of Avid Telecom, no response is required from Lansky or Reeves.[41]  Avid Telecom (and, as required Lansky and Reeves) also deny that the calls associated with these Tracebacks had been "identified" as "illegal robocalls" by an entity with the legal authority to do so (*i.e.,* the FCC Enforcement Bureau).  As the ITG never elected to refer a single one of these Tracebacks to the FCC Enforcement Bureau—which is the only

[40] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.
[41] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

organization associated with the FCC that has the legal authority to find illegality—there is no legal basis to conclude that any of the associated calls were illegal and Avid Telecom (and, as required Lansky and Reeves) deny the allegation on that basis. Moreover, because the Complaint fails to provide any information regarding the time period or the calls at issue, Defendants are without sufficient current knowledge or information to admit or to deny to admit or to deny that the FCC "sent Robocall Cease-and-Desist Letters to the identified or that the Cease and Desist letters related to traffic transited by Avid Telecom."

111. Defendants lack sufficient information to admit or to deny the allegation set forth in paragraph 111 deny the allegation set forth in paragraph 111 of the Complaint that ". . .on June 9, 2020, the FCC brought an enforcement action against Avid Telecom's customer, John Spiller and JSquared, which ultimately resulted in a record $225 million fine issued in March 2021." Because the allegation in paragraph 111 of the Complaint relates only to the alleged conduct of Avid Telecom, no response is required from Lansky or Reeves.[42] To the extent that a response is required, Avid Telecom (and, as required Lansky and Reeves) deny that they were aware at the time that JSquared traffic transited the Avid Telecom network that any of that traffic consisted of illegal robocalls. Avid Telecom (and, as required Lansky and Reeves) state further that Avid Telecom terminated JSquared promptly upon its knowledge that the traffic was subject to reasonable suspicion.

---

[42] Plaintiffs' inconsistent references to "Defendants" and to "Avid Telecom" in addressing the services alleged provided makes it difficult to provide cogent responses. *See, e.g.* ¶¶ 49, 50, 51, 52.

112.    Defendants lack sufficient information to admit or to deny the allegation set forth in paragraph 112 deny the allegation set forth in paragraph 112 of the Complaint that on June 9, 2020, eight states—Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas—sued John Spiller, JSquared Telecom LLC, and several other related entities. Defendants were not involved in any of those lawsuits, and they deny that they were aware that any of the JSquared traffic consisted of illegal robocalls.  Avid Telecom (and, as required Lansky and Reeves) state further that Avid telecom terminated JSquared promptly upon its knowledge that the traffic was subject to reasonable suspicion.

113.    Defendants deny the allegation set forth in paragraph 113 of the Complaint that they "knew" at the time when they transited traffic that the Cease and Desist letters sent to Avid Telecom's customers, or the enforcement action against JSquared Telecom or the States' lawsuit related to traffic transited by Avid Telecom.

114.    Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 114 of the Complaint that that "[on] April 19, 2021, the State of Vermont and StrategicIT—another of Avid Telecom's customers— entered into an Assurance of Discontinuance because of StrategicIT's illegal robocall traffic.  To the extent a response is required, Defendants deny they were aware of the Assurance of Discontinuance at the time that it occurred. Defendants state further that the State of Vermont did not provide direct notice to any Defendant of the alleged Assurance of Discontinuance, nor was any Defendant party to any related action.

115.    Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 115 of the Complaint that "[on] March 18, 2022, the State of Vermont brought an action against TCA VoIP—another of [former] Avid Telecom's customers—alleging that it knowingly facilitated illegal robocalls.  To the extent a response is required, Defendants deny they were aware of the case at the time that it was brought. Defendants state further that Vermont did not provide direct notice to any Defendant of the alleged action, nor was any Defendant party to any of those action. On information and belief, at the time of the Vermont action, TCA VoIP was not an Avid Telecom customer.

116.    Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 116 of the Complaint that that "[on] April 26, 2022, the FTC brought a case against VoIP Terminator, Inc.—another of Avid Telecom's customers—for "assisting and facilitating the transmission of millions of illegal prerecorded telemarketing robocalls, including those they knew or should have known were scams, to consumers nationwide.  To the extent a response is required, Defendants deny they were aware of the case at the time that it was brought. Defendants state further that the FTC never provided direct notice to any Defendant of the alleged case, nor was any Defendant party to the case.

117.    Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 117 of the Complaint that that Defendants had contemporaneous knowledge that "[o]n July 7, 2022, the FCC and the State of Ohio took simultaneous enforcement actions against a massive auto warranty robocall operation run

by recidivist robocallers, Aaron Michael Jones ("Jones") and Roy M. Cox, Jr. ("Cox"). To the extent a response is required, Defendants deny they were aware of the case at the time that it was brought. Defendants state further that neither the FCC nor the State of Ohio provided direct notice to any Defendant of the alleged enforcement actions, nor was any Defendant involved in the "common enterprise" or otherwise party to any of these enforcement actions.

118.   Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 118 of the Complaint that that "[o]n December 23, 2022, the FCC subsequently issued a Notice of Apparent Liability against certain individuals and entities involved in the Sumco Enterprise robocall operation, proposing a $299,997,000 fine.  To the extent a response is required, Defendants deny they were aware of the case at the time that it was brought. Defendants state further that the FCC never provided direct notice to any Defendant of the alleged enforcement actions, Defendants state further that the FCC did not provide any notice to any Defendant of the alleged lawsuits, nor was any Defendant party to any of those action.  Defendants state further that the mere issuance of a Notice of Apparent Liability—particularly one that did not end with a judgment against Sumco Enterprise[43]—does not prove that any illegal

---

[43] As the term Notice of Apparent Liability suggests, the issuance of an NAL is not a final judgment that a respondent has violated a law or regulation.  Rather, NALs merely indicate that the FCC has found that a "potential" violation.  As such, the mere issuance or a NAL cannot be viewed as a legally cognizable basis to conclude that third parties, like Defendant, were on notice that the FCC had made a final determination that a violation of law had occurred merely by the issuance of the Notice.

actions were taken by Sumco Enterprise or indirectly by Avid Telecom and the implication to the contrary is inappropriate at best.

119.   Defendants admit the allegation set forth in paragraph 119 of the Complaint that that on or about September 12 and 13, 2022, Avid Telecom received nine Tracebacks concerning another of its customers, Urth Access, for transmitting Student Loan robocalls or that three of the robocalls were made to phone numbers on the National DNC Registry. Because Plaintiffs do not define what they mean by the Urth Access robocall operation Defendants are without sufficient information to admit or to deny whether they were involved.  In all events, Defendants deny that Avid Telecom knowingly transited any calls made to phone numbers on the National DNC Registry.

120.   Because Plaintiffs fail to provide any information about the alleged outreach Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 120 of the Complaint that "[o]n or around September 19, 2022, almost one week after receiving the ITG notices concerning Urth Access, Reeves reached out to ITG about these Tracebacks."

121.   Defendants admit the allegation set forth in paragraph 121 that, "[a] representative from ITG wrote . . . to Reeves" with the message set forth in that paragraph.  Defendants admit that Reeves engaged with the ITG representative promptly and in good faith and that the message does not contain a request or a demand that Avid Telecom cease and desist from transiting traffic for Urth Access or for any further action by Avid Telecom.

122.   Avid Telecom denies allegation set forth in paragraph 122 that that they "continued sending Urth Access's traffic after this notification from ITG."

123.   Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 123 that, "Avid Telecom allowed Urth Access to submit payment for services using bank accounts held in names of one or more other business entities."

124.   Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 124 that, "[o]n November 10, 2022, the FCC issued a robocall cease-and-desist letter to Avid Telecom's customer Urth Access." Defendants also lack sufficient current knowledge or information to admit or to deny whether the cease-and-desist letter involved traffic that Avid Telecom received from Urth. In all events, Defendants state that the FCC did not provide any notice to any Defendant of the alleged cease-and-desist letter.

125.   Defendants admit the allegation set forth in paragraph 125 of the Complaint that, "[o]n December 8, 2022, the FCC ordered VoIP service providers, including Avid Telecom, to block student loan robocalls coming from Urth Access." Avid Telecom had voluntarily turned off service to Urth on October 2022, two months before it received the notice from the FCC.

126.   Because Plaintiffs do not define the terms "problematic evidence" nor do they identify any of the alleged Tracebacks, Avid Telecom cannot admit or deny the allegation set forth in paragraph 126 of the Complaint that it "provided ITG with problematic evidence of consent for several of its Tracebacks." To the extent that a

response is required, Avid Telecom denies that it ever provided "problematic evidence" to the ITG or that its response was improper form or substance.

127. Because Plaintiffs fail to identify the alleged Traceback with sufficient specificity, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 127 of the Complaint that, "[i]n response to a July 2021 Traceback, Avid Telecom responded, we have notified the customer and have asked that they provide response. Until we have complete understanding, we have taken steps to block the dialed number. We will update once we have their response."  Avid Telecom denies the allegation that this response was problematic, specifically but without limitation, because the response contained an agreement to voluntarily block the dialed number pending a response.

128. Defendants admit the allegation set forth in paragraph 128 of the Complaint that, "[o]n July 23, 2021, Avid Telecom wrote to the ITG: "we have had additional conversations with our customer. They are performing an internal investigation to determine why these numbers were provided to them as valid numbers.  We will update with more detailed information as soon as we have it." Avid Telecom denies the apparent allegation that this response was problematic specifically but without limitation, because Avid Telecom responded in a timely manner with all available information from the customer and because it continued to voluntarily block the dialed number pending its receipt of "more detailed information.

129. Avid Telecom admits the allegation set forth in paragraph 129 of the Complaint that, in response to the Traceback, it reached out to its customer, it was told

by its customer that the calls at issue were based only on valid permission, that it reported this information to the ITG, that it requested "opt in" information from the customer and that it advised the ITG in a timely manner that it would provide that additional information once received. Avid Telecom also admits that it asked the ITG to confirm and issue with the recording regarding the called party's qualification for a "no cost insurance analysis" and that no response was received from the ITG on that issue and that there was no further follow-up by the ITG.

130.   Defendants do not have sufficient information to admit or to deny the allegation set forth in paragraph 130 of the Complaint that "[t]his Traceback was for a Medicare rewards related call."

131.   Avid Telecom admits the allegation set forth in paragraph 131 of the Complaint that, on or about December 10, 2021, it provided the documentation that it received from its consumer of an "opt-in" to the call at issue to the ITG.

132.   Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 132 of the Complaint whether, in December 2021, "[n]either of these websites are (sic) related to Medicare, health insurance, or medicine."

133.   Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 133 of the Complaint whether, in December 2021, "the alleged consent for the December 3, 2021, Traceback was for an out-of-service number assigned to a large voice communications provider. The owner of the number would not and could not have consented to the call, as it was part of the voice service

provider's robocall tracking program.  No end user was assigned to the phone number that could have provided consent."

134.   Because Plaintiffs fail to provide any information regarding the calling party number, the called party number, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 134 of the Complaint that, "[f]or a similar Medicare call on December 10, 2021, Avid Telecom provided "proof of a consumer's consent or 'opt-in' information that was said to have been given on January 24, 2019, through a website of https://www.flashrewards.co/default.aspx."

135.   Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 135 of the Complaint whether, in December 2021, "[t]his website is (sic) not related to Medicare, health insurance, or medicine."

136.   Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 136 of the Complaint whether, in December 2021, "the alleged consent for the December 3, 2021, Traceback was for an out-of-service number assigned to a large voice communications provider. The owner of the number would not and could not have consented to the call, as it was part of the voice service provider's robocall tracking program.  No end user was assigned to the phone number that could have provided consent."

137.   Defendants admit the allegation set forth in paragraph 137 of the Complaint that, "[b]etween September 19 and September 21, 2022," Avid Telecom provided ITG with screenshots of websites identified by its customer from which the customer had obtained consent to call.

138.   Defendants admit the allegation set forth in paragraph 138 of the Complaint that, Avid Telecom provided ITG with the screenshots shown of a website page identified by its customer from which the customer had obtained consent to call.

139.   Because Plaintiffs fail to provide any information regarding the alleged call, including the calling number or the called number, the date or time, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 139 of the Complaint that the recording at the https://portal.tracebacks.org/api/public/attachments/1041845 link is complete, true and correct or that the call was actually transited by Avid Telecom.[44]

140.   Defendants admit the robocall makes reference to disability benefits. Because Plaintiffs fail to provide any information regarding the alleged call, including the calling number or the called number, the date or time, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 140 of the Complaint that, "[t]he robocall" was in fact associated with the screenshot or that the call with illegal or improper.   To the extent that Plaintiffs can establish a relationship between the screenshot and the call, as the webpage specifically refers to "National Disability", there is no basis to believe that Defendants had any reason to

---

[44] On information and belief, the recording associated with the link may have been obtained through illegal means, including the improper scraping of YouMail and/or other customer data without their permission, the transmission of these data over interstate wire, and/or the recording of calls in violation of applicable state law.   Defendants reserve all rights regarding these actions, including without limitation, the admissibility of any associated evidence.

question the information that they had been provided by their customer. Apparently, the ITG was apparently not concerned as there was no follow-up from the ITG.

141.    Defendants deny the allegation set forth in the first sentence of paragraph 141 of the Complaint that, "[t]he robocall failed to announce the name of the seller on whose behalf the robocall was being made."  In fact, the voice recording of the call specifically includes a statement that the representative is with "National Disability." Plaintiffs should be ordered to amend its complaint to remove this knowingly false allegation immediately.

142.    The allegation that set forth in the first clause of paragraph 142 of the Complaint that, "[t]his is a clear violation of the TSR" is an allegation of law to which no response is required.  To the extent that a response is required, Defendants deny the allegation the described conduct was a "clear violation" of the TSR.  Defendants also deny the allegation set forth in the second clause of paragraph 142 of the Complaint that, "Defendants were on notice that their customer was violating the TSR."

143.    As Plaintiffs fail to provide any identifying information, including the date the alleged screenshot was provided, or any other basis for associating the screen shot with the alleged call, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 143 of the Complaint that, "[t]he website purports to be for nursing jobs in Las Vegas, Nevada and not calls about disability benefits, and was not legitimate or actual proof of consent from a consumer to receive the call that was the subject of the Traceback.  To the extent that a response is required, Defendants deny that the website purports to be only about nursing jobs as the pull

down—which it appears that Plaintiffs did not click—makes specific reference to "National Disability.", which is clearly associated with the disability care at issue and not with nursing jobs.  Thus, Defendants also deny that the reference to the website provided by the customer and forwarded by Avid Telecom to the ITG "was not legitimate or actual proof of consent from a consumer to receive the call that was the subject of the Traceback.

144.   The allegation set forth in paragraph 144 of the Complaint that, "the grant of consent is to thousands of potential calling entities, which could and should have alerted Defendants their customer lacked proper consent to make these robocalls" is unintelligible as written and thus no response can be provided.  In addition, as Plaintiffs fail to identify or to define what is meant by the grant of consent being provided to "thousands of potential calling entities", how such consent was allegedly provided, by which entity(ies) or to otherwise identify these supposed entities in any way, Defendants do not have sufficient current knowledge or information to admit or to deny the allegation.  To the extent that a response is required, Defendants deny the allegation.

145.   As Plaintiffs fail to provide any information identifying the calling or the called party, or the date the alleged screenshot was provided, to whom it was provided, any covering email or other communication, or any other basis for associating the screen shot with an alleged call, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 145 of the Complaint that, "[f]or a call related to Social Security Disability Consultant, Reeves provided this screenshot as proof of consent:"

146.    Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 146 of the Complaint that the recording at the https://portal.tracebacks.org/api/public/attachments/1041847 link is complete, true and correct or that the call was actually transited by Avid Telecom.[45]  As Defendants do not provide any information demonstrating that this recording was in any associated with the screenshot, Defendants lack sufficient current knowledge or information to admit or to deny the implication that the call and the screenshot are associated with each other.

147.    Defendants admit that the robocall refers to disability benefits.   As Plaintiffs fail to provide any information identifying the calling or the called party, or the date the alleged screenshot was provided, to whom it was provided, any covering email or other communication, or any other basis for associating the screen shot with the alleged call, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 147 of the Complaint that, "[t]he robocall" was in fact associated with the screenshot or that the call with illegal or improper.

148.    Defendants deny allegation set forth in the first sentence of paragraph 148 of the Complaint that, "[t]he robocall failed to announce the name of the seller on behalf the robocall was being made."  In fact, the voice recording of the call specifically includes a statement that the representative is with "National Disability."

---

[45] On information and belief, the recording associated with the link may have been obtained through illegal means, including the improper scraping of YouMail and/or other customer data without their permission, the transmission of these data over interstate wire, and/or the recording of calls in violation of applicable state law.  Defendants reserve all rights regarding these actions, including issuing subpoenas to all persons and entities associated with the acquisition of data from YouMail.

149. The allegation that set forth in the first clause of paragraph 149 of the Complaint that, "[t]his is a clear violation of the TS is an allegation of law to which no response is required. To the extent that a response is required, Defendants deny the allegation. Defendants also deny the allegation that set forth in the second clause of paragraph 142 of the Complaint that, "Defendants were on notice that their customer was violating the TSR."

150. The allegation set forth in paragraph 150 of the Complaint that, "the grant of consent is to thousands of potential calling entities, which could and should have alerted Defendants their customer lacked proper consent to make these robocalls" is unintelligible as written and thus no response can be provided. In addition, as Plaintiffs fail to identify or to define what is meant by the grant of consent being provided to "thousands of potential calling entities", how such consent was allegedly provided, by which entity(ies) or to otherwise identify these supposed entities in any way, Defendants do not have sufficient current knowledge or information to admit or to deny the allegation. To the extent that a response is required, Defendants deny the allegation.

151. As Plaintiffs fail to provide any information identifying the calling or the called party, or the date the alleged screenshot was provided, to whom it was provided, any covering email or other communication, or any other basis for associating the screen shot with an alleged call, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 151 of the Complaint that, "[f]or an auto warranty call, Reeves provided this screenshot:"

-68-

152.    Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 152 of the Complaint that the recording at the https://portal.tracebacks.org/api/public/attachments/1043172 link is complete, true and correct or that the call was actually transited by Avid Telecom.[46] As Defendants do not provide any information demonstrating that this recording was in any associated with the screenshot, Defendants lack sufficient current knowledge or information to admit or to deny the implication that the call and the screenshot are associated with each other.

153.    Defendants admit that the robocall refers to auto warranties.  As Plaintiffs fail to provide any identifying information, including the date the alleged screenshot was provided, or any other basis for associating the screen shot with the alleged call, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 153 of the Complaint that, "[t]he robocall" was in fact associated with the screenshot or that the call with illegal or improper.  As Defendants do not provide any information demonstrating that this recording was in any associated with the screenshot, Defendants lack sufficient current knowledge or information to admit or to deny the implication that the call and the screenshot are associated with each other.

154.    Defendants deny allegation set forth in the first sentence of paragraph 154 of the Complaint that, "[t]he robocall failed to announce the name of the seller on behalf

---

[46] On information and belief, the recording associated with the link may have been obtained through illegal means, including the improper scraping of YouMail and/or other customer data without their permission, the transmission of these data over interstate wire, and/or the recording of calls in violation of applicable state law.  Defendants reserve all rights regarding these actions, including issuing subpoenas to all persons and entities associated with the acquisition of data from YouMail..

the robocall was being made." In fact, the voice recording of the call specifically includes a statement that the representative is with "Senior Aid Helper." [47]

155. The allegation that set forth in the first clause of paragraph 155 of the Complaint that, "[t]his is a clear violation of the TSR is an allegation of law to which no response is required. To the extent that a response is required, Defendants deny the allegation. Defendants also deny the allegation that set forth in the second clause of paragraph 155 of the Complaint that, "Defendants were on notice that their customer was violating the TSR."

156. As Plaintiffs chose to produce what appears to be only a selected page of the alleged "website", without providing the URL of the website, the Traceback itself or any other identifying information, Defendants are not lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 156 of the Complaint that, "[t]he website purports to be for nursing jobs in Nevada and not information about auto warranties or auto warranty calls, and was not legitimate or actual proof of consent from a consumer to receive the call that was the subject of the Traceback." To the extent that a response is required, Defendants deny that the website purports to be only about nursing jobs as the pull down—which it appears that Plaintiffs did not click—makes specific reference to many other matters (some of which are not fully revealed in the screenshot). Defendants also deny that the reference to the website

---

[47] It is apparent that Plaintiffs are fully aware and know that the representative was calling on behalf of "Senior Aid Helper" as, in paragraph 207 of the Complaint identifies Senior Air Helper as the calling party in a call utilizing the exact same recorded message. Defendants reserve all rights to seek appropriate sanctions for Plaintiffs' knowingly false and deceptive claim.

provided by the customer and forwarded by Avid Telecom to the ITG "was not legitimate or actual proof of consent from a consumer to receive the call that was the subject of the Traceback."

157.    The allegation set forth in paragraph 157 of the Complaint that, "the grant of consent is to thousands of potential calling entities, which could and should have alerted Defendants their customer lacked proper consent to make these robocalls" is unintelligible as written and thus no response can be provided.  In addition, as Plaintiffs fail to identify or to define what is meant by the grant of consent being provided to "thousands of potential calling entities", how such consent was allegedly provided, by which entity(ies) or to otherwise identify these supposed entities in any way, Defendants do not have sufficient current knowledge or information to admit or to deny the allegation.  To the extent that a response is required, Defendants deny the allegation.

158.    Because Plaintiffs fail to provide any information regarding which calls are at issue, including why they believe that the screen shot was provided in response to any particular call, they were calls offering  auto warranties, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 158 of the Complaint that, "[f]or another auto warranty call, Reeves provided this screenshot:".  To the extent that a reply is required, Defendants admit that a true and correct version of the screenshot that was provided to them by the customer in response to a request from Avid Telecom.

159.    Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 159 of the Complaint that the recording at the

https://portal.tracebacks.org/api/public/attachments/1043174 link is complete, true and correct or that the call was actually transited by Avid Telecom.[48]

160.    Defendants admit that the robocall refers to auto warranties.  As Plaintiffs fail to provide any identifying information, including the date the alleged screenshot was provided, or any other basis for associating the screen shot with the alleged call, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 160 of the Complaint that, "[t]he robocall" was in fact associated with the screenshot, that the call was actually transited by Avid Telecom or that the call with illegal or improper.

161.    Defendants deny allegation set forth in the first sentence of paragraph 161 of the Complaint that, "[t]he robocall failed to announce the name of the seller on behalf the robocall was being made."  In fact, the voice recording of the call specifically includes a statement that the representative is with "Senior Aid Helper."  Plaintiffs should amend their complaint to remove this knowingly false allegation immediately.

162.    The allegation that set forth in the first clause of paragraph 162 of the Complaint that, "[t]his is a clear violation of the TSR, and Defendants were on notice that their customer was violating the TSR" is an allegation of law to which no response is required.  To the extent that a response is required, Defendants deny the allegation.

---

[48] On information and belief, the recording associated with the link may have been obtained through illegal means, including the improper scraping of YouMail and/or other customer data without their permission, the transmission of these data over interstate wire, and/or the recording of calls in violation of applicable state law.  Defendants reserve all rights to seek sanctions and other relief regarding these apparently-illegal actions, including issuing subpoenas to all persons and entities associated with the acquisition of data from YouMail.

Defendants also deny the allegation that set forth in the second clause of paragraph 162 of the Complaint that, "Defendants were on notice that their customer was violating the TSR."

163.   As Plaintiffs chose to produce what appears to be only a selected page of the alleged "website", without providing the URL of the website, the Traceback itself or any other identifying information, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 163 of the Complaint that, "[t]he website purports to be for trying free products and not information about auto warranties or auto warranty calls, and was not legitimate or actual proof of consent from a consumer to receive the call that was the subject of the Traceback." To the extent that a response is required, Defendants deny the allegation.

164.   The allegation set forth in paragraph 164 of the Complaint that, "[f]urther, the grant of consent is to thousands of potential calling entities, which could and should have alerted Defendants their customer lacked proper consent to make these robocalls" is unintelligible as written and thus no response can be provided.  In addition, as Plaintiffs fail to identify or to define what is meant by the grant of consent being provided to "of potential calling entities", how such consent was allegedly provided, by which entity(ies) or to otherwise identify these supposed entities in any way Defendants do not have sufficient current knowledge or information to admit or to deny the allegation.  To the extent that a response is required, Defendants deny the allegation.

165.   Because Plaintiffs fail to provide any information regarding which calls are at issue, including why they believe that the screen shot was provided in response to any

particular call, they were calls offering auto warranties, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 165 of the Complaint that, "[f]or another auto warranty call, Reeves provided this screenshot:". To the extent a response is required, Defendants deny they intentionally provided the screenshot depicted about "Products From Your Favorite Brands" where they received a Traceback relating to an auto warranty call.

166.   Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 166 of the Complaint that the recording at the https://portal.tracebacks.org/api/public/attachments/1043262 link is complete, true and correct or that the call was actually transited by Avid Telecom.[49] To the extent that a response is required, Defendants deny that the recording is complete, true and correct or that the call was actually transited by Avid Telecom.

167.   Defendants admit that the robocall refers to auto warranties.  As Plaintiffs fail to provide any identifying information, including the date the alleged screenshot was provided, or any other basis for associating the screen shot with the alleged call, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 167 of the Complaint that, "[t]he robocall" was in fact associated with the screenshot or that the call with illegal or improper.  To the extent that a response is required, Defendants deny the allegation.

---

[49] On information and belief, the recording associated with the link may have been obtained through illegal means, including the improper scraping of YouMail and/or other customer data without their permission, the transmission of these data over interstate wire, and/or the recording of calls in violation of applicable state law.  Defendants reserve all rights regarding these actions, including issuing subpoenas to all persons and entities associated with the acquisition of data from YouMail.

168.    Defendants deny allegation set forth in the first sentence of paragraph 168 of the Complaint that, "[t]he robocall failed to announce the name of the seller on behalf the robocall was being made." In fact, the voice recording of the call specifically includes a statement that the representative is with "Senior Aid Helper." Plaintiffs should amend their complaint to remove this knowingly false allegation immediately.

169.    The allegation that set forth in the first clause of paragraph 169 of the Complaint that, "[t]his is a clear violation of the TSR, and Defendants were on notice that their customer was violating the TSR" is an allegation of law to which no response is required. To the extent that a response is required, Defendants deny the allegation. Defendants also deny the allegation that set forth in the second clause of paragraph 169 of the Complaint that, "Defendants were on notice that their customer was violating the TSR."

170.    As Plaintiffs chose to produce what appears to be only a selected page of the alleged "website", without providing the URL of the website, the Traceback itself or any other identifying information, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 170 of the Complaint that, "[t]he website purports to be for refinance programs or mortgage programs and not information about auto warranties or auto warranty calls, and was not legitimate or actual proof of consent from a consumer to receive the call that was the subject of the Traceback."

171.    The allegation set forth in paragraph 171 of the Complaint that, "[f]urther, the grant of consent is to thousands of potential calling entities, which could and should

have alerted Defendants their customer lacked proper consent to make these robocalls" is unintelligible as written and thus no response can be provided. In addition, as Plaintiffs fail to identify or to define what is meant by the grant of consent being provided to "of potential calling entities", how such consent was allegedly provided, by which entity(ies) or to otherwise identify these supposed entities in any way, Defendants do not have sufficient current knowledge or information to admit or to deny the allegation. To the extent that a response is required, Defendants deny the allegation.

172. Defendants deny the allegation set forth in paragraph 172 of the Complaint that, "[f]or all these robocalls, Avid Telecom knew or should have known its customer did not have valid consent to make these robocalls."

173. Defendants deny the allegation set forth in paragraph 173 of the Complaint that, "[a]ll these notices and the obvious lack of consent make clear that this call traffic was part of one or more illegal robocall schemes."

174. Defendants admit that, on or about "March 10, 2023, Reeves responded to another Traceback—ITG Traceback No. 12443—with evidence of consent. Defendants admit that Reeves told the ITG that the issue had been resolved, stating: "Although customer as valid opt-in as shown above, they have added the number to their global do not call list in order to resolve this consumer complaint." [50]

---

[50] The statement set forth in this paragraph—that Ms. Reeves had blocked traffic to Vermont on notice that there could be issues with that traffic—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.* Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements, including issuing subpoenas to all persons and entities associated with the acquisition of data from YouMail.

175.   As Plaintiffs do not provide a copy of the identified Traceback or the opt-in information referenced in Defendants' response, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 175 of the Complaint that, "[a]n ITG representative responded" as set forth in that paragraph. Defendants do not have sufficient current knowledge or information to admit or to deny the allegation that the ITG ever reached a conclusion that the calls were illegal (which, conclusion, would have been beyond their authority) or that the ITG "continue[d]" to investigate the call at issue.

176.   Defendants admit that, on or about "March 10, 2023, Reeves responded to another Traceback—ITG Traceback No. 12480—as follows: "Although customer as valid opt-in as shown above, the number has been added to their global do not call list in order to resolve this consumer complaint.  The number has also been blocked in Avid's switch." [51]  Defendants do not have sufficient current knowledge or information to admit or to deny the allegation that the ITG ever reached a conclusion that the calls was illegal (which, conclusion, would have been beyond their authority) or that the ITG "continue[d]" to investigate the call at issue.

177.   As Plaintiffs do not provide a copy of the identified Traceback or the opt-in information referenced in Defendants' response, Defendants lack sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 177 of

---

[51] The statement set forth in this paragraph—that Ms. Reeves had blocked traffic to Vermont on notice that there could be issues with that traffic—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.*  Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements, including issuing subpoenas to all persons and entities associated with the acquisition of data from YouMail.

the Complaint that, "[a]n ITG representative responded" as set forth in that paragraph. Defendants do not have sufficient current knowledge or information to admit or to deny the allegation that the ITG ever reached a conclusion that the calls was illegal (which, conclusion, would have been beyond their authority) and the Complaint provides no basis to believe that the ITG "continue[d]" to investigate the call at issue.

178.    Defendants deny the allegation set forth in paragraph 178 of the Complaint that, Avid Telecom continues to route this customer's robocalls."

**Illustrative Examples of Direct Downstream Provider Notices to Defendants**

**About Illegal Robocall Traffic**

179.    As set forth in the following paragraphs, Defendants admit and deny certain aspects of the allegation set forth in paragraph 179 of the Complaint that, they "were on notice from downstream providers that their customers were sending identified and suspected illegal traffic, which included illegal robocalls."

**Notices from Talkie Communications**

180.    Defendants admit the allegation ser forth in paragraph 180 of the Complaint that, "[o]n March 3, 2020, Talkie Communications ("Talkie") notified via email, Avid Telecom that Avid was sending "toll free pumping/spoofing" calls.  Defendants do not admit that the statement was true or that it had any involvement in or knowledge of any decision by a third party to deliver traffic to Avid Telecom that involved toll free pumping and/or spoofing.  Defendant Reeves denies the allegations set forth in paragraph 180 as she was not an independent contractor for Avid Telecom at the time.

181.   While Defendants do not have sufficient information to admit or to deny that any of the traffic actually included toll free pumping and/or spoofing, Defendants admit the allegation set forth in paragraph 181 of the Complaint that following its receipt of information alleging such traffic, Avid Telecom took prompt action to address the issue, responding to the notice, saying, "[t]he ORIG number was blocked and the upstream carrier was notified." Defendants state further that, in fact, the ORIG number was blocked, and the upstream carrier was notified. [52] Defendant Reeves denies the allegations set forth in paragraph 181 as she was not an independent contractor for Avid Telecom at the time.

182.   Defendants admit the allegation set forth in paragraph 182 of the Complaint that, "[o]n March 11, 2020, Talkie Communications ("Talkie") notified via email, Avid Telecom that Talkie had received several complaints (sic) Avid Telecom was sending a "google business verification scam."   Defendants do not admit that the statement was true.

183.   Defendants admit the allegation set forth in paragraph 183 of the Complaint that Avid Telecom took prompt action to address the issued, responding to the notice, saying, "[t]he ORIG number was blocked, and the upstream carrier was notified." [53]

---

[52] The statement set forth in this paragraph—that Avid Telecom had blocked calls associated with an alleged "toll free pumping/spoofing scam"—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.* Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

[53] The statement set forth in this paragraph—that Avid Telecom had blocked calls associated with an alleged "google business verification scam." —is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.* Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

Defendants state further that, in fact, the ORIG number was blocked, and the upstream carrier was notified.

**Notices from Red Telecom**

184.    Defendants do not have sufficient current information to admit or to deny the allegation set forth in paragraph 184 of the Complaint that, "[o]n April 15, 2020, a Red Telecom, LLC employee Skype messaged Lansky that "he was sending a TON of spoofed Social Security scam calls." To the extent that a response is required Defendants deny that Lansky sent any calls, scam or otherwise. Defendant Reeves denies the allegations set forth in paragraph 184 as she was not an independent contractor for Avid Telecom at the time.

185.    Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 185 of the Complaint that, "in a Skype chat, Reeves notified Red Telecom that 'I've blocked Vermont'".[54] On information and belief, however, Avid Telecom did block calls to Vermont promptly upon notice that information from Red Telecom about possible issues with those calls.

186.    Defendants admit, on information and belief, the allegation set forth in paragraph 186 of the Complaint that Avid Telecom did block calls to Vermont promptly upon notice that information from Red Telecom about possible issues with those calls.

---

[54] The statement set forth in this paragraph—that Ms. Reeves had blocked traffic to Vermont on notice that there could be issues with that traffic—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.* Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

187.    As Plaintiffs have not provided their alleged "analysis of Avid Telecom's CDRs", Defendants cannot admit or deny the allegation set forth in paragraph 187 of the Complaint regarding what those CDRs allegedly show.

188.    Defendants deny the baseless and disingenuous allegations set forth in paragraph 188 of the Complaint that "blocking robocall traffic to an area code[55]—which Plaintiffs allege in this Complaint was required upon notice of potentially illegal traffic— is another indication Defendants knew their traffic was illegal" as well as the allegation that it blocked the traffic because it was "likely to draw an investigation by the Vermont Attorney General."  Avid Telecom blocked this traffic in good faith when it received notice that the traffic might include illegal robocalls.

189.    Defendants admit the allegation set forth in paragraph 189 of the Complaint that, "[o]n March 25, 2022, in a Skype chat, Reeves notified Red Telecom that, 'Most of my high short duration traffic will now be coming to you signed with an A.'" Defendants state that the Attestation A was the valid level for the number provided by the Avid Telecom to the customer.  Defendants deny that this interaction constituted notice to Defendants that Avid Telecom was sending identified and suspected illegal traffic, which included illegal robocalls.

190.    Defendants the allegation set forth in paragraph 190 of the Complaint that, "[o]n On May 5, 2022, in a Skype chat, when discussing a third-party call blocking

---

[55] The statement set forth in this paragraph—acknowledging that Avid Telecom had blocked suspicious traffic—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic.  *See, e.g., Compl. para. 23.*  Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

feature, Reeves wrote to Red Telecom that she was turning it off for some customers." [56] Defendants state that Reeves used the word "some" as call blocking for some customer routes was not appropriate because it would block valid consumer callback. Defendants deny that this interaction constituted notice to Defendants that Avid Telecom it was sending identified and suspected illegal traffic, which included illegal robocalls.

191. Defendants admit the allegation set forth in paragraph 191 of the Complaint that, "[o]n July 11, 2022, in a Skype chat, Red Telecom notified Reeves of a Traceback, regarding calls impersonating Amazon." As a Traceback is not an indication or a legal finding that a call was illegal, Defendants deny that this statement is notice to Defendants that Avid Telecom was sending identified and suspected illegal traffic, which included illegal robocalls.

192. Defendants admit the allegation set forth in paragraph 192 of the Complaint that, "Reeves responded: 'Nice-just perfect.'" Defendants deny that the language of paragraphs 191 and 192 reflects the complete conversation and context and Defendants deny this conversation constituted notice to Defendants that Avid Telecom was sending identified and suspected illegal traffic, which included illegal robocalls.

193. Defendants admit the allegation set forth in paragraph 193 of the Complaint that, "[o]n July 21, 2022, in a Skype chat, Red Telecom notified Reeves of the FCC enforcement action against Sumco Panama." As the commencement of an enforcement

---

[56] The statement set forth in this paragraph—that Ms. Reeves turning off certain traffic upon receiving notice that there could be issues with that traffic—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.* Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

action is not evidence of illegal activity, and as Avid Telecom was not presented with any evidence that the action involved any traffic transited by Avid Telecom, Defendants deny that this statement is notice to Defendants that Avid Telecom was sending identified and suspected illegal traffic, which included illegal robocalls.  Defendants state further that at the time that Ms. Reeves received the communication from Red Telecom, Avid Telecom had already turned off MOBI Telecom.

194.    Defendants admit the allegation set forth in paragraph 194 of the Complaint that, "Reeves responded: 'I just saw that.'"  As the commencement of an enforcement action is not evidence of illegal activity, and as Avid Telecom was not presented with any evidence that the action involved any traffic transited by Avid Telecom, Defendants deny that this statement is notice to Defendants that it was sending identified and suspected illegal traffic, which included illegal robocalls. Defendants state further that at the time that Ms. Reeves received the communication from Red Telecom, Avid Telecom had already turned off MOBI Telecom.

195.    Defendants admit the allegation set forth in paragraph 195 of the Complaint that, "October 5, 2022, in a Skype chat, Reeves described to Red Telecom that one of Avid Telecom's customers was a 'turnkey solution for call centers.'" The fact that one of *Avid Telecom's customers* was described as a "turnkey solution for call centers" is not evidence of illegal activity by the customer and certainly not by Avid Telecom.  Thus, Defendants deny that this description is notice to Defendants that it was sending identified and suspected illegal traffic, which included illegal robocalls.

196.    Defendants admit the allegation set forth in paragraph 196 of the Complaint that, "[o]n October 11, 2022, in a Skype chat, Reeves, regarding a third-party provider's honeypots, wrote to Red Telecom: 'and now I know what his honeypot AI sounds like. At least for now because I's sure he will change it.'"  Discussions regarding the operation of honeypots—which itself often reflects deceptive and/or illegal activity by the operator of the honeypot, including through the improper placement of honeypot telephone number into the DNC database and the illegal recording of calls—is not evidence of illegal activity.  Thus, Defendants deny that this chat is evidence that Avid Telecom was sending identified and suspected illegal traffic, which included illegal robocalls.

197.    Defendants admit the allegation set forth in paragraph 197 of the Complaint that, "On December 9, 2022, in a Skype chat, Red Telecom inquired about Avid Telecom's lower traffic.  Reeves responded: 'Many insurance campaigns are over, (sic) so this may be the volume through the end of the year.'" As insurance campaigns are not inherently illegal, and changes in traffic volumes traffic are a normal feature of the telecom world, Defendants deny that this statement is notice to Defendants that it was sending identified and suspected illegal traffic, which included illegal robocalls.

198.    Defendants admit allegation set forth in paragraph 198 of the Complaint that, "[o]n January 3, 2023, in a Skype chat, Red Telecom followed up on why the traffic was still slow. Reeves responded: 'they've slowed down their dialing. New campaigns won't start until January.'"  As insurance campaigns are not inherently illegal, and changes in traffic volumes are a normal feature of the telecom world, Defendants deny

that this statement is notice to Defendants that it was sending identified and suspected illegal traffic, which included illegal robocalls.

**Notices from Verizon**

199.    Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 199 of the Complaint that, "[o]n December 16, 2020, Verizon send Lansky a letter regarding the 'very large volume of" robocalls Avid Telecom was routing to Verizon." As all robocalls (assuming this word was actually used by Verizon) are not illegal, Defendants deny that this statement is notice to Defendants that it was sending identified and suspected illegal traffic, which included illegal robocalls. Defendants also deny any implication that the alleged letter was sent to Lansky in his personal capacity.

200.    Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 200 of the Complaint that, "[o]n December 16, 2020, Lansky responded: 'I have asked that our VP of Operations quickly and thoroughly review our traffic to Verizon and make adjustments as necessary to remove as much of this traffic as possible, as quickly as possible. We understand the problematic issues that this type of traffic produces and clearly are willing to work with Verizon to do everything possible to mitigate this traffic altogether. [57]   As all robocalls (assuming this word was actually used by Verizon) are not illegal, Defendants deny that

---

[57] The statement set forth in this paragraph—that Avid Telecom agreed to work with Verizon to mitigate illegal traffic—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.* Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

this statement is notice to Defendants that it was sending identified and suspected illegal traffic, which included illegal robocalls.  Defendants also deny any implication that Lansky's response was sent in his personal capacity.  Defendants admit that contrary to the implication of this paragraph, Lansky's response reflects Avid Telecom's ongoing effort, upon notice, to block suspected illegal robocalling in a timely and comprehensive manner.

201.   Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 201 of the Complaint that, "[o]n January 20, 2021, Verizon notified Lansky that Verizon was shutting off Avid Telecom's traffic because of 'unacceptable levels of illegal or unwanted calls.'" Given Avid Telecom's denial that it was sending any traffic to Verizon (see paragraph 202 below), Avid Telecom denies that it was sending Verizon illegal robocalls or that the Verizon letter was notice that it was sending identified and suspected illegal traffic, which included illegal robocalls.  Defendants also deny any implication that the alleged notice was sent to Lansky in his personal capacity.

202.   Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 202 of the Complaint that, "Lansky responded: 'We of course have not been sending you any traffic as your pricing has not been winning any.  We term over 10 million mins a day of voice traffic with Verizon winning only a few dollars of it.  Defendants deny any implication that the alleged letter was sent to Lansky in his personal capacity.

**Notices from Call48**

203.    Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 203 of the Complaint that, "[o]n September 13, 2021, Call48 notified Avid Telecom of a 'high volume of SPAM calls" regarding auto warranty messages.'"  To the extent a response is required, Defendants deny they knowingly transited SPAM calls regarding auto warranty messages.

204.    Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 204 of the Complaint that, "Reeves responded: "These calls are not considered spam. Our customer has Opt-Ins for their calls, and, as you know, uses valid ANIs.  To the extent that a response is required, Defendants deny that the communication from Call48 is notice to Defendants that it was sending identified and suspected illegal traffic, which included illegal spam traffic.

205.    Defendants admit the allegation set forth in paragraph 205 of the Complaint that, "[o]n October 19, 2021, Call48 notified Reeves of auto warranty robocalls being sent to someone whose number had been listed on the National DNC Registry since 2006."  To the extent that a response is required, as all auto warranty calls are not illegal, Defendants deny that the communication from Call48 is notice to Defendants that it was sending identified and suspected illegal traffic, which included illegal robocalls. Defendants state further that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints were received.

206. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 206 of the Complaint that, "Reeves responded: 'We have blocked the destination number on Avid's network and have requested that number be removed from the customer call list. To the extent that a response is required, as all auto warranty calls are not illegal, Defendants deny that the communication from Call48 is notice to Defendants that it was sending identified and suspected illegal traffic, which included illegal robocalls. Defendants state further that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints were received.

207. Defendants admit the allegation set forth in paragraph 207 of the Complaint that, "[o]n November 1, 2021, Call48 notified Avid Telecom of robocalls from "Senior Aid Helper" to someone who was on the National DNC Registry. [58] Defendants state further that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints regarding a listing on the DNC were received.

208. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 208 of the Complaint that, "Reeves responded: "We have blocked the destination number . . . on Avid's switch and have requested that our customer remove the number from their call list." To the extent that a response is required, Defendants state that, as a matter of company policy, regardless of

[58] *See* footnote 10, *supra*.

-88-

apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints were received.

209. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 209 of the Complaint that, "[o]n November 8, 2021, Call48 notified Avid Telecom of unwanted calls to a phone number on the National DNC Registry. To the extent that a response is required, Defendants state that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints regarding a listing on the DNC were received.

210. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 210 of the Complaint that, Reeves responded: "[w]e have blocked the destination number on Avid's switch and have requested that our customer remove the number from their call list." To the extent that a response is required, Defendants state that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints regarding a listing on the DNC were received.

211. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 211 of the Complaint that, Reeves responded: "[t]o further confirm, our customer complies with TCPA guidelines. Calls are made based on Opt-Ins only." To the extent that a response is required, Defendants state that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints.

212.   Defendants admit the allegation set forth in paragraph 212 of the Complaint that, "[o]n January 21, 2022, Call48 notified Lansky and Reeves that: "My guys are complaining that you are sending his dialer traffic down 2 of the 3 conversational trunks again and they are at risk of being shut down for good. Can you do what you can to clean this up and get them off my back?"  To the extent that a response is required, Defendants state that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints regarding dialer traffic were received.

213.   Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 213 of the Complaint that, "[o]n January 25, 2022, Call48 followed up that they were shutting down the route because the stats were too bad." Defendants state that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints were received.

214.   Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 214 of the Complaint that, "[o]n May 18, 2022, Call48 notified Avid Telecom that an individual was receiving robocalls from the "vehicle service center" despite not consenting to the calls or owning a car." Defendants state that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints were received.

215.   Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 215 of the Complaint that Reeves advised Call48 that Avid Telecom had "blocked the terminating number from Avid's network and have required that our customer remove the number from all call lists."[59] Defendants state that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints were received.

216.   Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 216 of the Complaint that, "[o]n June 16, 2022, Call48 notified Avid Telecom of a complaint regarding auto warranty calls going to someone who was on the National DNC Registry. The complainant asked for more information about the owner of the calling phone number." Defendants state that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints were received.

217.   Defendants admit the allegation set forth in paragraph 217 of the Complaint that "the destination number was blocked in Avid's switch, and that Avid Telecom

---

[59] The statement set forth in this paragraph—that Avid Telecom that Avid Telecom had terminated a customer that had delivered a suspicious call—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.* Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

required its customer to remove the destination number from all dialing campaigns and block the number in their switch.[60]

218.   Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 218 of the Complaint that, "[o]n August 20, 2022, Call48 notified Avid Telecom unwanted car warranty calls, specifically that the caller does not honor the National DNC Registry. The alleged calls were sent through Avid Telecom on August 15, 2022. Call48 followed up on this notification several times." Defendants state that, as a matter of company policy, regardless of apparent validity of an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints were received about the DNC Registry.

219.   Defendants admit that "customer who sent the alleged auto warranty call to Avid Telecom's network was terminated. [61]

### Notices from Dorial Telecom

220.   Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 220 of the Complaint that, "[o]n October 12, 2020, Dorial Telecom ("Dorial") notified Avid Telecom and Lansky  of Social Security Fraud traffic. The email included recordings of the illegal robocalls. Defendants state that, as a matter of company policy, regardless of apparent validity of

---

[60] The statement set forth in this paragraph—that Avid Telecom agreed to work with Verizon to mitigate illegal traffic—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.* Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

[61] The statement set forth in this paragraph—that Avid Telecom agreed to work with Verizon to mitigate illegal traffic—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.* Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

an Opt-In, Avid Telecom nonetheless blocked numbers for which consumer complaints were received about the DNC Registry. Defendants deny that any such notice was provided to Lansky in his personal capacity.

221. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 221 of the Complaint that, "[o]ne recording stated: "Hello, this call is from the Social Security Administration. The reason for this call is to inform you that your Social Security Number is suspended and there is an arrest warrant in your name. Please press one to talk to a Social Security Administration officer and know more about the case."[62]

222. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 222 of the Complaint that, "[a] second recording stated: "This is an important notice from the Social Security Administration. The reason you have received this notice from our department because we have found some suspicious and fraudulent activities under your Social Security Number, and we are going to suspend the IP. So, if you want to know about this and talk to our representative, please press one. I repeat, press one to connect." [63]

223. Defendants admit the allegation set forth in paragraph 223 of the Complaint that, "[o]n October 8, 2021, Dorial notified Avid Telecom that Dorial's downstream provider was complaining about auto warranty traffic." Defendants state that Avid

---

[62] Given the inaccurate representations made about other recordings identified in the Complaint, Defendants cannot accept Plaintiffs' representation of the quoted language here.
[63] Given the inaccurate representations made about other recordings identified in the Complaint, Defendants cannot accept Plaintiffs' representation of the quoted language here.

Telecom initiated a trouble ticket for FAS ion the route as carrier was apparently providing fake answer and billing. Avid Telecom removed its traffic from Dorial for this reason.

224. Defendants admit that Avid Telecom did not believe that the call(s) at issue reflected illegal auto warranty traffic, believed that its customer had a valid opt-in and that the call(s) used valid ANIs. Nonetheless, consistent with its policy to remove any suspicious traffic of which it was aware, Avid Telecom removed Dorial from its routing.

225. Defendants admit the allegations set forth in paragraph 225 of the Complaint that, "[o]n November 3, 2021, Dorial notified Avid Telecom that: You sent us 34415 disconnected number calls, and these are the ones we had in our database, there where (sic) many more. We cannot assign you ports and misuse them for disconnected number calling customers" . . .. and that "You sent us 9406 calls with unallocated ANI's, this is real fraud traffic, we do not want this traffic." Defendants state that Avid Telecom researched the issue and numbers at issue were removed.

226. Defendants admit the allegation set forth in paragraph 226 of the Complaint that, "[o]n June 14, 2022, Dorial notified Reeves that: "Based on the excel sheet for the new/second trunk, that traffic has an SDP over 80% and an ACD of less than 10 sec. I don't know what they are doing but I don't think that we are interested in terminating that kind of traffic." Defendants state that Avid Telecom initiated a trouble ticket for FAS on the route as carrier was apparently providing fake answer and billing. Avid Telecom removed its traffic from Dorial for this reason.

227. Defendants admit the allegation set forth in paragraph 227 of the Complaint that, "Reeves responded: "Understood." Defendants state that Avid Telecom initiated a

trouble ticket for FAS on the route as carrier was apparently providing fake answer and billing. Avid Telecom removed its traffic from Dorial for this reason.

228. Defendants admit the allegations set forth in paragraph 228 of the Complaint that, "[o]n August 17, 2022, Dorial's COO emailed Reeves asking why Avid Telecom's traffic was low. On information and belief, Avid Telecom's traffic was "low" because it was removing its traffic from Dorial.

229. Defendants admit the allegations set forth in paragraph 229 of the Complaint that, "[o]n August 18, 2022, Reeves responded: "the majority of our traffic is high SD, low ACD traffic." This traffic was being removed because of the FAS issue.

230. Defendants admit the allegations set forth in paragraph 230 of the Complaint that, "Dorial's COO then asked how the traffic level was on Avid Telecom's side."

231. Defendants admit the allegations set forth in paragraph 231 of the Complaint that, "Reeves responded: "We saw a decline with that 2nd FCC order regarding the auto warranty companies. Given the amount there was in the marketplace, I'm not surprised it effected (sic) traffic."

232. As Plaintiffs do not identify the alleged FCC Order at issue, Defendants are without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 232 of the Complaint that, "The companies in the referenced FCC order were discussed above and direct customers of Avid Telecom." Avid Telecom states that it complied fully and in a timely manner with all FCC orders regarding the transmission of known auto warranty traffic.

**Notices from Telco Connection**

233.    Defendants are without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 233 of the Complaint that, "[o]n March 31, 2022, Telco Connection notified Avid Telecom of "IRS impersonation calls/spoofing." On information and belief, consistent with company policy, and regardless of apparent validity of an Opt-In, Avid Telecom nonetheless would have blocked numbers for which consumer complaints were received.

234.    Defendants admit the allegations set forth in paragraph 234 of the Complaint that, Avid Telecom blocked the ANI at issue.

235.    Defendants are without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 235 of the Complaint that, "[o]n August 4, 2022, Telco Connection notified Avid Telecom of "IRS impersonation calls/spoofing."

236.    Defendants admit that, consistent with company policy, Avid Telecom blocked the ANI at issue.

**Notices from All Access Telecom**

237.    Defendants do not have sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 237 of the Complaint that, "[o]n April 26, 2021, All Access Telecom notified Lansky and Reeves that: "Please be advised, due to the recent multiple tickets received, All Access Telecom is requesting Avid Telecom to remove customers from routing that are related to the AutoWarrantyExtend US Telecom tracebacks effective ASAP." Defendants do not

have sufficient information to admit or to deny the allegations set forth in paragraph 237 of the Complaint that, "All AccessTelecom followed up two days later to alert Lansky and Reeves that the traffic had to be stopped", but it believes that All Access took the customer traffic directly.

238. Defendants admit allegation set forth in paragraph 238 of the Complaint that Avid Telecom had already moved the traffic off of All Access prior to the alert. [64]

239. Defendants admit allegation set forth in paragraph 239 of the Complaint that, "[on] August 24, 2021, All Access Telecom notified Avid Telecom of "Medicare scam" traffic. Defendants state that, consistent with company policy, Avid Telecom removed this traffic following its receipt of a Traceback from the ITG.

## Notices from Peerless Network

240. Defendants are without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 240 of the Complaint that, "[o]n March 3, 2020, Peerless Network notified Avid Telecom that: "the following TNs Peerless assigned to your company are experiencing high levels of complaints tied to the FTC DNC and IRS complaints." On information and belief, consistent with company policy, Avid Telecom would have removed this traffic following its receipt of a customer complaint.

241. Defendants admit the allegation set forth in paragraph 241 of the Complaint

---

[64] The statement set forth in this paragraph—that Avid Telecom agreed to move certain traffic off of All Access—is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.* Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

that, "[o]n May 21, 2021, Peerless Network notified Avid Telecom that Peerless had "been made aware of an issue from one our downstream vendors and we need you guys to reach out to your end use that is sending these calls to stop sending the calls (Auto Warranty scam). Defendants deny that they ever received any evidence that these calls were *illegal* robocalls.

242.   Defendants admit the allegation set forth in paragraph 242 of the Complaint that, "[o]n "Reeves responded: "What is exactly the issue with the traffic?""

243.   Defendants are without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 243 of the Complaint that, Peerless Network responded:

> Multiple carriers of ours have complained that the calls are for Car Warranty scams. I have instructed the NOC to immediately block until the issue can be resolved.

> hi this is Katie and I'm giving you a call from the dealer service center we recently noticed your card extended warranty was going to expire and wanted to give you one final courtesy call before your warranty expires and your coverage is voided this would make you financially responsible for all Service Repairs press 1 now if you wish to extend or reinstate your cars warranty once again press one now or press 2 to be placed on a Do Not Call List you can also call 833-3041 for…

244.   Defendants are without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 244 that "[o]n or about May 21, 2021, Lansky advised Peerless Network that Avid Telecom had blocked "that customers (sic) traffic to you."  However, on information and belief, consistent with company policy, Avid Telecom did block the described traffic.

245. As Plaintiffs do not provide any information regarding the alleged Tracebacks, Defendants are without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 245 of the Complaint that, "[a]fter May 21, 2021, Avid Telecom received 53 Tracebacks from ITG regarding Auto Warranty robocall traffic."

246. Defendants admit the allegation set forth in paragraph 246 of the Complaint that, "[o]n June 7, 2021, Peerless Network provided a list of FTC complaints related to DIDs Avid Telecom was renting or owning." Defendants, however, deny that Avid Telecom "rented" or "owned" any DIDs.

247. Defendants admit the allegation set forth in paragraph 247 of the Complaint that, "[o]n June 9, 2021, Peerless Network notified Avid Telecom of unwanted calls to someone on the National DNC Registry. The complainant specifically requested "I need to know who the carrier is, and the business associated with these calls."

248. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 248 of the Complaint that, "Lansky responded: "As I understand, per APNI laws, rules and regulations until they have a subpoena, you nor Avid can release any records to an individual or organization.

249. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 249 of the Complaint that, "[o]n June 11, 2021, Reeves responded: "DIDs are being used by a publicly traded company in compliance with all regulations."

**Notices from Inteliquent**

250. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 250 of the Complaint that, "[o]n June 26, 2020, Inteliquent notified Avid Telecom of auto- warranty robocalls being routed by Avid Telecom. Defendants deny that either Inteliquent, or the ITG ever provided any evidence that these calls were *illegal* robocalls, that the ITG ever referred these calls to the FCC Enforcement Bureau for investigation, that the FCC Enforcement Bureau ever launched an investigation of any of these calls or made a finding that any of them were illegal, or that Avid Telecom ever received data from the originator of the calls that they were illegal robocalls.

251. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 251 of the Complaint that, "[o]n March 3, 2021, Inteliquent notified Avid Telecom of more auto warranty robocalls." Defendants deny that either Inteliquent, or the ITG ever provided any evidence that these calls were *illegal* robocalls, that the ITG ever referred these calls to the FCC Enforcement Bureau for investigation, that the FCC Enforcement Bureau ever launched an investigation of any of these calls or made a finding that any of them were illegal, or that Avid Telecom ever received data from the originator of the calls that they were illegal robocalls.

252. Defendants admit the allegation set forth in paragraph 252 of the Complaint that on or about March 4, 2021, Reeves responded: "Customer has Opt Ins for all calls", and that Avid Telecom had "blocked the terminating number."

253. Defendants admit the allegation set forth in paragraph 253 of the Complaint

that that Inteliquent then asked if the opt ins could be passed along to the complainant.

254.    Defendants admit the allegation set forth in paragraph 254 of the Complaint that that Reeves responded: "I do not have access to the Opt In."

255.    Defendants admit the allegation set forth in paragraph 255 of the Complaint that that on or about April 14, 2021, Inteliquent notified Avid Telecom of more auto warranty robocalls. Defendants deny that either Inteliquent, or the ITG ever provided any evidence that these calls were *illegal* robocalls, that the ITG ever referred these calls to the FCC Enforcement Bureau for investigation, that the FCC Enforcement Bureau ever launched an investigation of any of these calls or made a finding that any of them were illegal, or that Avid Telecom ever received data from the originator of the calls that they were illegal robocalls.

256.    Defendants admit that on or about April 14, 2021, Reeves told Inteliquent that Avid Telecom took the vetting of its customers very seriously, that Avid had Telecom notified its customer of the complaint and asked that they investigate, and that Avid Telecom had taken steps to block the ANI from terminating via Avid's network.[65]

257.    On May 11, 2021, Inteliquent notified Avid Telecom of more auto warranty robocalls. Defendants deny that either Inteliquent, or the ITG ever provided any evidence that these calls were *illegal* robocalls, that the ITG ever referred these calls to the FCC

---

[65] The statement set forth in this paragraph—that Avid Telecom agreed to move certain traffic off of All Access— is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.* Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

Enforcement Bureau for investigation, that the FCC Enforcement Bureau ever launched an investigation of any of these calls or made a finding that any of them were illegal, or that Avid Telecom ever received data from the originator of the calls that they were illegal robocalls.

258.  Defendants admit that on or about June 8, 2021, Inteliquent notified Avid Telecom of more auto warranty robocalls.  Defendants deny that Inteliquent ever provided any evidence that these calls were *illegal* robocalls.

259.  Defendants admit that on or about June 9, 2021, Avid Telecom told Inteliquent that "[b]ased on information Avid has received, Customer is compliant with all requests for Opt Ins and follows guidelines with regard to dialing and that, consistent with company policy, Avid Telecom had nonetheless blocked the listed ANI's from Inteliquent's network."[66]

260.  Defendants admit the allegation set forth in paragraph 260 of the Complaint that, on or about June 15, 2021, Inteliquent notified Avid Telecom of more auto warranty robocalls. Defendants deny that Inteliquent ever provided any evidence that these calls were *illegal* robocalls.

261.  Defendants admit the allegation set forth in paragraph 261 of the Complaint that, based on information provided by its customer, on or June  15,  2021,  Reeves told Inteliquent that the "Customer   is   compliant with regulations."  Defendants deny that,

---

[66] The statement set forth in this paragraph—that Avid Telecom agreed to move certain traffic off of All Access— is directly at odds with Plaintiffs' repeated claims that Defendants did not do anything to mitigate illegal traffic. *See, e.g., Compl. para. 23.*  Defendants reserve all rights to seek sanctions and other relief for Plaintiffs' knowingly false statements.

under applicable law and regulation, their duty when receiving a notice or a traceback was to do anything more that to request information from the customer and to pass it along to the ITG. Defendants fully complied with each of these obligations.

262. Defendants admit the allegation set forth in paragraph 262 of the Complaint that Inteliquent responded: "You should take another look at this. We are working directly with Verizon and their honeypot captures and those are numbers that could, in no way, be opted in to receive anything."

263. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 263 of the Complaint that, on June 15, 2021, Inteliquent sent Avid Telecom a letter containing the language shown.

264. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 264 of the Complaint that Lansky responded: "Understood and we take these issues incredibly serious. We have notified this customer of the issues and are working with them as we do with customers to help them mitigate this from our network and to keep all traffic within the acceptable regulatory guidelines." Defendants, however, state that the, as a matter of company policy, Avid Telecom does what it can to limit the illegal robocalling traffic that reaches its network.

265. Defendants admit the allegation set forth in paragraph 265 of the Complaint that on or about July 13, 2021, Inteliquent emailed Lansky and Reeves, stating: "It has been nearly a month since this initial warning was sent and we have not seen improvement[.]" Defendants deny the allegation that, in fact, Avid Telecom had not taken

action to mitigate the allegedly illegal robocalling traffic that had reached its network by removing the referenced traffic.

266.    Defendants admit the allegation set forth in paragraph 266 of the Complaint that on or about July 13, 2021, Reeves responded: "I've made the final changes to remove a couple of problematic customers. We've also taken steps to notify the problematic carrier of the issues, but, again, the traffic has been removed from Inteliquent."

267.    Defendants admit the allegation set forth in paragraph 267 of the Complaint that on or about July 22, 2021, Inteliquent notified Reeves and Lansky: "Also, we have been receiving quite a few auto-warranty scam complaints and as we've sent them out to our customers the traceback has come back as a few points they are receiving those from, but you are one of them.  I've had to turn a few customers down for these and hope we don't get there with AVID, can you please share some details with me on what you are doing to get these off your network?

268.    Defendants admit the allegation set forth in paragraph 268 of the Complaint that on or about July 23, 2021, Reeves responded: "As to the warranty traffic, we are continually working to remove this traffic from our network.  We have been able to identify most of our customers who are sending the traffic, but, as you know, it continues to pop up from other sources."

269.    Defendants deny the allegation set forth in paragraph 269 of the Complaint that they  knowingly  continued  to  route illegal auto-warranty robocall traffic.

270.    Defendants admit the allegation set forth in paragraph 270 of the Complaint that on or about September 21, 2021, Inteliquent notified Avid Telecom of auto warranty

robocall traffic.

271.    Defendants admit the allegation set forth in paragraph 271 of the Complaint that on or about April 11, 2022, Inteliquent sent Avid Telecom a Know-Your-Customer Notice because Avid Telecom's traffic was problematic. Further, Inteliquent notified Defendants that their traffic was hitting a large number of honeypots.

272.    Defendants admit the allegation set forth in paragraph 272 of the Complaint that Reeves replied: "We are reviewing the stats and had already resolved the SD issues on both trunks.  I have now removed the low ASR traffic from the SD trunk and will monitor tomorrow to ensure the guidelines are met."  Defendants state further that Avid Telecom blocked the destination and notified the carrier customer.

273.    Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 273 of the Complaint that on  July 30, 2022, Inteliquent sent Avid Telecom another Know-Your Customer Notice because Avid Telecom's traffic was problematic. Further, Inteliquent notified Defendants that their traffic was hitting a large number of honeypots.

274.    Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 274 of the Complaint that on September 27, 2022, Inteliquent sent Avid Telecom another Know-Your- Customer Notice because Avid Telecom's traffic was problematic.

275.    Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 275 of the Complaint, that Inteliquent stated: "For your traffic, specific concern would be the spike in Tracebacks

this month. Can you please take a look and advise?"

276. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 276 of the Complaint, that "Inteliquent counted five Avid Telecom Tracebacks.

277. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 277 of the Complaint, in September of 2022, Avid Telecom received at least 23 Tracebacks or that nine of the calls that were the subject of the Tracebacks were to telephone numbers on the National DNC Registry.

278. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 278 that is apparently predicated upon Plaintiff's unstated information and belief.

279. Defendants admit the allegation set forth in paragraph 279 of the Complaint that on September 27, 2022, Lansky emailed Reeves: "Stupid tracebacks."

280. Defendants admit the allegation set forth in paragraph 280 of the Complaint that on September 27, 2022, Reeves responded to Inteliquent: "We have been working with our customer to obtain the consumer permission documentation.      The investigation is not completed, however, the information we have received to this point is valid."

281. Defendants admit the allegation set forth in paragraph 281 of the Complaint that on September 14, 2022, Inteliquent notified Avid Telecom that a call Avid Telecom routed went to a honeypot.

282. Defendants admit the allegation set forth in paragraph 282 of the Complaint

that on Reeves responded: "We have blocked the destination number and have notified our customer of the issue. We are requiring that the number be removed from their call list."

283. Defendants admit the allegation set forth in paragraph 283 of the Complaint that on November 7, 2022, Inteliquent notified Avid Telecom that it was terminating the Master Service Agreement.

284. Defendants admit the allegation set forth in paragraph 284 of the Complaint that on November 7, 2022, Lansky responded with this inserted email.

285. Defendants admit the allegation set forth in paragraph 285 of the Complaint that on November 8, 2022, a representative from Inteliquent responded with the inserted email.

286. Defendants admit the allegation set forth in paragraph 286 of the Complaint that Lansky responded with the inserted email.

**Notices from Bandwidth**

287. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 287 that on June 11, 2020, Bandwidth notified Avid Telecom and Lansky that Bandwidth "has been notified that Avid Telecom has been identified as the sender of improper or illegal robocalls in six different tracebacks . . . Bandwidth's review of Avid's traffic profile also raises further concerns."

288. Defendants admit the allegation set forth in paragraph 288 of the Complaint

that on January 20, 2021, Bandwidth notified Avid Telecom regarding spoofing and possible violations of Bandwidth's Acceptable Use Policy.

289.    Defendants admit the allegation set forth in paragraph 289 of the Complaint that Reeves responded: "We have blocked the originating number and have notified our originating carrier customer. They are working to identify their originating customer and will be blocking them."

290.    Defendants admit the allegation set forth in paragraph 290 of the Complaint that on January 26, 2021, Bandwidth notified Avid Telecom regarding spoofing and possible violations of Bandwidth's Acceptable Use Policy.

291.    Defendants admit the allegation set forth in paragraph 291 of the Complaint that Avid Telecom responded: "We have blocked this number."

292.    Defendants admit the allegation set forth in paragraph 292 of the Complaint that on April 5, 2021, Bandwidth notified Avid Telecom regarding spoofing and possible violations of Bandwidth's Acceptable Use Policy.

293.    Defendants admit the allegation set forth in paragraph 293 of the Complaint that Avid Telecom responded to the spoofing notice: "We apologize for the issue.  The ANI has been blocked, and the originating customer has been notified.

294.    Defendants admit the allegation set forth in paragraph 294 of the Complaint that on April 24, 2021, Bandwidth notified Avid Telecom regarding spoofing and possible violations of Bandwidth's Acceptable Use Policy.

295.    Defendants admit the allegation set forth in paragraph 295 of the Complaint that Reeves responded: "We have reviewed the information and have blocked the ANI and

notified our originating customer.

296.    Defendants admit the allegation set forth in paragraph 296 of the Complaint that February 10, 2023, Bandwidth notified Avid Telecom that Bandwidth has: "identified some potentially fraudulent traffic being sent by your network to these areas." The area was: "USA-IA (+1712775*)".

297.    Defendants admit the allegation set forth in paragraph 297 of the Complaint that on February 10, 2023, Reeves responded: "We have contacted our customer with regarding the nature of the traffic. In the meantime, we have removed the conversational customer from routing via Bandwidth and have blocked the originating number.

### Notices Show Defendants' Knowledge of Participation in Illegal Robocalling Schemes

298.    As Plaintiffs do not identify the notices at issue in paragraph 298, Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 287.

299.    Defendants deny that by receiving the identified notices, which were provided long after the calls at issue had been received by Avid Telecom, they knew at the time of delivery that their services were being used to facilitate illegal robocalling. Defendants also deny that all of the notices that they received correctly identified illegal calls.

300.    As Plaintiffs do not define the term "voluminous" with sufficient specificity, Defendants are without sufficient current knowledge or information to admit

or to deny the allegation set forth in paragraph 300 of the Complaint that "[d]espite the voluminous number of complaints and notices from multiple sources, Defendants continued offering services to entities and persons sending illegal robocalls. Defendants deny that they knowingly offered services to entities and persons sending illegal robocalls. Defendants also deny that all of the complaints that they received correctly identified illegal calls.

301.    As Plaintiffs do not define the term "several" with sufficient specificity, Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 301 of the Complaint that "[i]n several instances, despite being given evidence their clients did not have the legal authority to make or initiate so many robocalls, Defendants portrayed their clients as having valid consent to send robocalls. Defendants deny that they knowingly offered portrayals of their clients having consent to send robocalls where the customer delivering the traffic to them did not represent to Avid Telecom that the custom had received valid consent to make the call. Defendants also deny that all of the "evidence" that they received correctly identified circumstances where Avid Telecom's clients did not have the legal authority to make or initiate illegal robocalls.

302.    As much of the narrative of the Complaint evidences, when Avid Telecom became aware of the potential that illegal robocalls were reaching their network, it blocked or shut off those calls and carriers.  Defendants therefore deny the implication of the allegation set forth in paragraph 302 that Avid Telecom did not avail themselves of opportunities to shut off illegal traffic.

303.   Defendants deny the allegation set forth in paragraph 303 that, "in most instances, they made the business decision to continue routing illegal robocalls."

304.   The allegations set forth in paragraph 304 of the Complaint are argument not fact and thus no response is required.   To the extent that a response is required, Defendants deny that "the notices show a pattern of Defendants not taking illegal robocalls seriously. Defendants admit that in many instances they blocked the calling number or the called number, which was fully resolved the issue presented. Defendants deny the baseless allegation that this was "a wholly inadequate response as well as the misplaced analogy that blocking one number is analogous to stopping a single raindrop in a thunderstorm."   Avid Telecom blocked numbers where it had reason to believe that they could be associated with illegal robocalling.   It did not randomly or arbitrarily block numbers where it did not have reason to believe that they could be associated with illegal robocalling.

## SAMPLING OF AVID TELECOM'S CUSTOMERS
### John Spiller and His Entities

305.   Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 305 of the Complaint that, "[o]n June 9, 2020, the States of Arkansas, Indiana, Michigan, Missouri, North Carolina, North Dakota, Ohio, and Texas sued John Spiller ("Spiller"), Rising Eagle Capital Group LLC, JSquared Telecom LLC, and other entities in *State of Texas et al. v. Rising Eagle Capital Group LLC et al.,* 4:20-cv-02021 (S.D.T.X 2020).

306.   Defendants deny that John Spiller was ever a customer of Avid Telecom.

Defendants admit that, for a short period time, prior to Avid Telecom having reason to believe that they might be passing illegal robocalls, Rising Eagle Capital Group LLC, JSquared Telecom LLC Great Choice Telecom LLC, were customers of Avid Telecom.

307. Defendants deny that Spiller was ever a customer of Avid Telecom or that Spiller used Avid Telecom to send his own robocalls and the robocalls of his customers.

308. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 308 of the Complaint that, "[a]t some points in time, Spiller was a seller or telemarketer." Defendants deny that Spiller ever provided sales or telemarketing services to Avid Telecom.

309. Defendants deny that Spiller was ever a customer of Avid Telecom or that "from May 2019 until March 2021, Spiller used Avid Telecom to send over 4 billion calls."

310. Defendants deny that Spiller was ever a customer of Avid Telecom and thus they deny the allegation set forth in paragraph 310 of the Complaint that, "[i]n some instances, Spiller sent auto warranty robocalls to Avid Telecom.

311. Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny the allegation set forth in paragraph 311 of the Complaint that, "[i]n some instances, the health care robocalls Spiller sent Avid Telecom delivered a pre-recorded message.

312. Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny that Avid Telecom had any knowledge regarding the allegation set forth

in paragraph 312 of the Complaint that "Spiller did not have the call recipient's consent to call them."

313. Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny that Avid Telecom had any knowledge regarding the allegation set forth in paragraph 313 of the Complaint that, "[m]any of Spiller's robocalls and the robocalls of his customers were to telephone numbers on the National DNC Registry and various state Do Not Call Lists."

314. Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny that Avid Telecom had any knowledge regarding the allegation set forth in paragraph 314 of the Complaint that, "[a]ny of Spiller's robocalling customers initiated robocalls to telephone numbers on the National DNC Registry and various state Do Not Call Lists."

315. Defendants admit the allegation set forth in paragraph 315 of the Complaint that Avid Telecom received payments from Rising Eagle, Great Choice and JSquared of at least $555,000. Defendants deny that they were aware that any of these payments were associated with the transmission of illegal robocalls.

316. Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny the allegation set forth in paragraph 316 of the Complaint that, "Avid Telecom sold Spiller tens of thousands of DIDs." Defendants also deny the implication that the purchase or the sale of DIDs is probative as to the lawfulness of the calls utilized by the customer who controls those numbers.

317. Defendants admit the allegation set forth in paragraph 317 of the Complaint

that, "Avid Telecom also purchased DIDs for Rising Eagle Capital Group. Defendants deny that Avid Telecom had any role in the determination by Rising Eagle as to how those DIDs would be utilized, including if they were used to transmit illegal robocalls.

318.   Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny the allegation set forth in paragraph 318 of the Complaint Defendants had direct knowledge that Spiller was sending illegal call traffic to Avid Telecom's network.

319.   Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny the allegation set forth in paragraph 319 of the Complaint that Defendants have been on notice since on or around January 7, 2020, that Spiller was using their services and/or network to send illegal robocalls.

320.   Defendants deny the allegation set forth in paragraph 320 of the Complaint that Defendants had many opportunities to shut down Spiller's traffic and did not choose to do so. Instead, Defendants accepted hundreds of thousands of dollars from Spiller to further his illegal robocalling schemes.

321.   Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny the allegation set forth in paragraph 321 of the Complaint that Defendants knew Spiller was using Avid Telecom to route illegal robocalls.

322.   Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny the allegation set forth in paragraph 322 of the Complaint that Defendants provided "substantial assistance" to Spiller in this process.

**Defendants Had Knowledge of Spiller's Robocalling Schemes and Substantially Assisted Him**

323.    Avid Telecom admits the allegation set forth in paragraph 323 that, "[o]n or around January 7, 2020, Avid Telecom received its first Traceback related to JSquared. Avid Telecom denies that this traceback represented a legal conclusion that the associated call was an illegal robocall or that Avid Telecom knew or believe JSquared was sending Avid Telecom illegal robocall traffic.

324.    Avid Telecom admits the allegation set forth in paragraph 324 that, "[o]n or around February 17, 2020, Avid received its first Traceback related to JSquared for auto warranty robocalls. Avid Telecom denies that this traceback represented a legal conclusion that the associated call was an illegal robocall.

325.    Avid Telecom admits the allegation set forth in paragraph 325 that, "[o]n or around June 19, 2020, Avid received its last Traceback related to JSquared. Avid Telecom denies that this traceback represented a legal conclusion that the associated call was an illegal robocall.

326.    Avid Telecom admits the allegation set forth in paragraph 326 that, "[o]n or around August 24, 2020, Avid received its first Traceback related to Great Choice Telecom, another entity owned by Spiller. The Traceback was related to auto warranty robocalls. Avid Telecom denies that this traceback represented a legal conclusion that the associated call was an illegal robocall.

327.    Defendants admit the allegation set forth in paragraph 327 of the Complaint

that, "Avid Telecom continued to receive Tracebacks related to Great Choice Telecom until on or around December 17, 2021. Defendants deny that these Tracebacks represented a legal conclusion that the associated calls were an illegal robocalls or that Defendants believed that Great Choice Telecom was sending it illegal robocalling traffic.

328.    Defendants admit the allegation set forth in paragraph 328 of the Complaint that, "Avid  Telecom received 19 Tracebacks for JSquared Telecom's traffic. Defendants deny that these Tracebacks represented a legal conclusion that the associated calls were an illegal robocalls or that Defendants believed that JSquared Telecom's was sending it illegal robocalling traffic.

329.    Defendants admit the allegation set forth in paragraph 329 of the Complaint that, "Avid Telecom received 22 Tracebacks for Great Choice Telecom's traffic. Defendants deny that these Tracebacks represented a legal conclusion that the associated calls were an illegal robocalls or that Defendants believed that Great Choice Telecom was sending it illegal robocalling traffic.

330.    Because Plaintiffs do not provide the name of the entity Defendants do not have the information available to admit or deny the allegation set forth in paragraph 330 of the Complaint that, "Avid Telecom received 41 Tracebacks regarding suspected or known illegal traffic sent to its network by a Spiller-owned entity."  To the extent that a response is required, Defendants deny that these Tracebacks represented a legal conclusion that the associated calls were an illegal robocalls or that Defendants believed that Avid Telecom was transiting illegal robocalling traffic for any customer.

331.    Defendants deny that Spiller was ever a customer of Avid Telecom and thus

Defendants deny the allegation set forth in paragraph 331 that they were "on notice from the Tracebacks that Spiller was using Avid Telecom to route illegal robocall traffic."

332.    Defendants deny the allegation set forth in paragraph 332 that "Lansky  and Reeves took steps to hide Great Choice Telecom's  true ownership from ITG and other entities."

333.    Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny the allegation set forth in paragraph 333 that they knew that "Spiller's traffic was illegal and that he was sending calls to phone numbers on the National DNC Registry and various state Do Not Call Lists.  As Plaintiffs do not state the time period at issue, Defendants are unable to admit of to deny the allegation that "Lansky and Reeves continued working with Spiller."  To the extent that a response is required, Defendants Lansky and Avid Telecom admit that they worked with companies controlled by Spiller for a brief period of time.  Defendant Reeves was not engaged by Avid Telecom as an independent contractor at this time and thus she does not have sufficient information to admit or to deny these allegations.

334.    As Plaintiffs do not state the time period at issue, and they do not define the terms "regularly" with a sufficient degree of specificity, Defendants Avid Telecom and Lansky are unable to admit of to deny the allegation set forth in paragraph 334 of the Complaint that "Lansky and Reeves continued working with Spiller" or that "Spiller regularly communicated with Lansky and Reeves via Skype. Defendant Reeves denies that she ever worked with Spiller.

335.    Defendants Avid Telecom and Lansky admit the allegation set forth in

paragraph 335 that, "[o]n June 10, 2020, Lansky and Spiller discussed the States' lawsuit and the FCC action and the impact it would have on Lansky and Spiller's relationship." Defendants Avid Telecom and Lansky also state that, at the time this conversation occurred, neither the States' proceeding, nor the FCC had yet to reach any conclusion regarding the lawfulness of Spillers' companies' traffic. Defendants Avid Telecom and Lansky state further that once Defendant Avid Telecom and Lansky came to believe that Spiller's companies might be sending illegal robocall traffic, Avid Telecom promptly ceased doing business with these companies. Defendant Reeves was not engaged by Avid Telecom as an independent contractor at this time and thus she does not have sufficient information to admit or to deny these allegations.

336. Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny the allegation set forth in paragraph 336 of the Complaint that, "[o]n June 17, 2020, Lansky confirmed he knew Spiller was sending Avid Telecom health care and auto warranty robocall traffic. Moreover, as Plaintiffs do not provide any information regarding the circumstances or the manner in which the "confirmation" was alleged delivered, Defendants Avid Telecom and Lansky are unable to admit of to deny the allegation set forth in paragraph. Defendant Reeves was not engaged by Avid Telecom as an independent contractor at this time and thus she does not have sufficient information to admit or to deny these allegations.

337. As Plaintiffs do not provide any information regarding the circumstances or the manner in which these "discussions" alleged occurred, Defendants Avid Telecom and Lansky are unable to admit of to deny the allegation set forth in paragraph 337 that, "[o]n

June 19, 2020, Spiller and Lansky discussed the creation of Great Choice Telecom. Spiller was going to use Great Choice Telecom "to run my traffic if the FCC shuts off my business." Spiller notified Lansky that Spiller would be the CEO of Great Choice but that the paperwork would be in someone else's name. Lansky responded: "let me know when you are ready to transit (sic) over to the new company." To the extent that a response is required, Defendants Avid Telecom and Lansky deny that the parties "discussed" the creation of Great Choice Telecom or that Defendants Avid Telecom or Lansky ever agreed to accept any illegal robocalling traffic from Great Choice Telecom. Defendant Reeves was not engaged by Avid Telecom as an independent contractor at this time and thus she does not have sufficient information to admit or to deny these allegations.

338. Defendants Avid Telecom and Lansky deny that Spiller was ever a customer of Avid Telecom or that Spiller eve ran any traffic through Avid Telecom, and thus Defendants deny the allegation set forth in paragraph 338 of the Complaint that, Lansky agreed to help Spiller switch his traffic to a new company thus avoiding being shut down by the FCC." Defendants Avid Telecom and Lansky also deny that they were ever party to any plan by Spiller to switch his traffic to a new company to avoid being shut down by the FCC. Defendant Reeves was not engaged by Avid Telecom as an independent contractor at this time and thus she does not have sufficient information to admit or to deny these allegations.

339. Defendants Avid Telecom and Lansky admit the allegation set forth in paragraph 339 of the Complaint that, "[o]n June 25, 2020, Lansky followed up with Spiller about when Spiller was going to switch the traffic to Great Choice." Defendants

Avid Telecom and Lansky deny that they were ever party to any plan by Spiller to switch his traffic to a new company to avoid being shut down by the FCC. Defendant Reeves was not engaged by Avid Telecom as an independent contractor at this time and thus she does not have sufficient information to admit or to deny these allegations.

340.   Defendants Avid Telecom and Lansky deny the allegation set forth in paragraph 340 of the Complaint that, "[s]ometime between June 25, 2020, and August 26, 2020, Lansky, Reeves, and/or Avid Telecom switched Spiller's JSquared Telecom account to Great Choice Telecom and replaced Spiller's information with that of Mikel Quinn. Defendants Avid Telecom and Lansky admit that JSquared Telecom approached Avid Telecom and became a customer of Avid Telecom for a brief period during the summer of 2020. Defendant Reeves was not engaged by Avid Telecom as an independent contractor at this time and thus she does not have sufficient information to admit or to deny these allegations.

341.   Defendants Avid Telecom and Lansky admit the allegation set forth in paragraph 341 of the Complaint that, "[o]n August 26, 2020, in responding to Great Choice  Telecom's  first Traceback, Avid Telecom provided Mikel Quinn's contact information to the ITG in response to the Traceback.  Defendants Avid Telecom and Lansky state that they did so because Mr. Quinn's contact information was provided by Great Choice to Avid Telecom in the material provided to Avid Telecom to respond to the Traceback. Defendant Reeves was not engaged by Avid Telecom as an independent contractor at this time and thus she does not have sufficient information to admit or to deny these allegations.

342.    Defendants Avid Telecom and Lansky admit the allegation set forth in paragraph 342 of the Complaint that, "[o]n September 30, 2020, Lansky agreed to be a credit reference for Spiller and Great Choice for Peerless Network, under Spiller's alias Mikel Quinn. Lansky wrote: "no worries. I will give you a good reference."  Defendant Lansky agreed to provide a credit reference because Great Choice because the company had a good credit history.  Mr. Lansky was not asked by Peerless Network to opine on the characteristics of Great Choice's traffic, and he did not do so. Defendant Reeves was not engaged by Avid Telecom as an independent contractor at this time and thus she does not have sufficient information to admit or to deny these allegations.

343.    Defendants admit the allegation set forth in paragraph 343 of the Complaint that, "Through 2020 and 2021, Avid Telecom and Great Choice received Tracebacks regarding Great Choice's illegal robocall traffic."  Defendants deny that these Tracebacks were regarding "illegal robocalling traffic" as the issuance of a Tracebacks is not a finding of illegality, which finding is not withing the authority granted to the ITG by the FCC.

344.    Defendants admit the allegation set forth in paragraph 344 of the Complaint that, "[o]n June 23, 2021, Reeves wrote to ITG in response to a Great Choice Traceback: "we are closing the customer route."  Defendants took this action as a part of its good faith response to Tracebacks.

345.    Defendants admit the allegation set forth in paragraph 345 of the Complaint that, "[o]n June 29, 2021, Reeves wrote to ITG in response to another Great Choice Traceback: "We have blocked the customer until the issue can be investigated."

Defendants took this action as a part of its good faith response to Tracebacks.

346. Defendants admit the allegation set forth in paragraph 346 of the Complaint that, "[o]n August 26, 2021, Avid Telecom wrote to ITG in response to another Great Choice Traceback: "We are informing the customer and blocking the customer pending further investigation (sic)," and "The customer had previously been permanently blocked." *Id.* Defendants took this action as a part of its good faith response to Tracebacks.

347. Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny the allegation set forth in paragraph 347 of the Complaint that, "[f]rom August 26, 2021, to August 27, 2021, Lansky and Spiller discussed Avid Telecom shutting off Spiller's traffic."  Lansky admits that Avid Telecom agreed to turn Great Choice's traffic back on based on its express commitment to carefully monitor its traffic to ensure that it only sent lawful traffic.

348. Defendants admit the allegation set forth in paragraph 348 of the Complaint that, "[o]n September 2, 2021, Lansky notified Spiller to "be careful on your traffic" and that there was "very little room for error right now." Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful.  However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

349. Defendants admit the allegation set forth in paragraph 349 of the Complaint that, "[o]n October 14, 2021, Lansky agreed to be a reference for a business loan for which Spiller was applying.  Defendant does not recall being notified by Spiller that "Spiller was not

using his real name because he was involved in a lawsuit." Lansky agreed to provide a reference because Great Choice because the company had a good credit history. Mr. Lansky was not asked to opine on Spiller's character or business operations, and he did not do so.

350. Defendants admit the allegation set forth in paragraph 350 of the Complaint that, "[o]n October 27, 2021, Reeves wrote to ITG in response to another Great Choice Traceback: "The customer was disconnected this morning based on previous traceback received this morning." Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

351. Defendants admit the allegation set forth in paragraph 351 of the Complaint that, "[o]n October 27, 2021, Lansky notified Spiller of "two USTA tickets with horrible calls that you have not answered." According to Lansky, these were "pure fraud" calls, and that they would have to block Spiller's traffic. Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

352. Defendants admit the allegation set forth in paragraph 352 of the Complaint that "Spiller went on to ask if he could earn Avid Telecom back as a vendor."

353. Defendant Lansky admits that the communication set forth in in paragraph 353 of the Complaint occurred.

354. Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny the allegation set forth in paragraph 354 of the Complaint that, "[that Avid Telecom continued routing Spiller's call traffic after October 27, 2021." Defendants admit that, based on its specific commitment to send only lawful traffic Avid Telecom transited a small amount of traffic for Great Choice after October 27, 2021.

355. Defendants admit the allegation set forth in paragraph 355 of the Complaint that "[o]n December 20, 2021, Reeves wrote to the ITG in response to another Great Choice Traceback: "Customer route has been permanently closed." Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

**Sampling of Avid Telecom's Notices to Spiller Regarding Illegal Robocalls**

356. Defendants deny that Spiller was ever a customer of Avid Telecom and thus Defendants deny the allegation set forth in paragraph 356 of the Complaint that, "While Spiller was a customer, Avid Telecom emailed Spiller about illegal or suspect calls Spiller sent to Avid Telecom's network." Defendants admit that Avid Telecom did communicate its concerns about traffic quality to companies controlled by Spiller as a part of Avid Telecom responses to Tracebacks and its good faith effort to ensure that all the traffic it received was lawful

357. Defendants admit the allegation set forth in paragraph 357 of the Complaint that "[o]n September 23, 2019, Avid Telecom emailed Spiller regarding a person's

complaint: "I receive an insane amount of unsolicited phones calls from telemarketers despite being listed on the national do not call list." Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

358. Defendants admit the allegation set forth in paragraph 358 of the Complaint that "[o]n November 4, 2019, Avid Telecom emailed Spiller another complaint:

> "Stop all calls from Whitestone Health . . . to my phone number immediately. [Phone number] is on the DO NOT CALL REGISTRY."

Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

359. The allegation in paragraph 359 that, "[t]hese calls to phone numbers on the National DNC Registry are clear violations of the TSR prohibition of unsolicited and non-consensual telemarketing calls to phone numbers on the National DNC Registry states a legal conclusion to which no response is required. As the information available to Defendants were mere assertions and not established facts, Defendants deny the allegation that they were on notice their customer was sending calls "in violation of the law."

360. Defendants admit the allegation set forth in paragraph 360 of the Complaint that "[o]n February 17, 2020, Avid Telecom emailed Spiller regarding "Fraudulent IRS

calls." Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

361. Defendants admit the allegation set forth in paragraph 361 of the Complaint that "[o]n February 21, 2020, Avid Telecom emailed Spiller regarding more scam complaints." Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

362. Defendants admit the allegation set forth in paragraph 362 of the Complaint that "[o]n March 4, 2020, Avid Telecom emailed Spiller regarding a "Medical Insurance Scam." Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

363. Defendants admit the allegation set forth in paragraph 363 of the Complaint that "[o]n March 16, 2020, Avid Telecom emailed Spiller regarding a call to a person on the "Do Not Call registry." Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

364. Defendants admit the allegation set forth in paragraph 364 of the Complaint that "[o]n April 3, 2020, Avid Telecom emailed Spiller: "Please remove [telephone number] from your calling lists as soon as possible." Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However,

Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

365. Defendants admit the allegation set forth in paragraph 365 of the Complaint that "[o]n April 3, 2020, Lansky emailed Spiller: "This number happens to belong to a senior exec of one of the largest mobile providers in the country. they call the President of our ULC who called me. so Please remove from your lists. (sic)" Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

366. Defendants admit the allegation set forth in paragraph 366 of the Complaint that "[o]n April 8, 2020, Avid Telecom emailed Spiller regarding robocalls to a number on the National DNC Registry. Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

367. Defendants admit the allegation set forth in paragraph 367 of the Complaint that "[o]n April 20, 2020, Avid Telecom emailed Spiller regarding spoofed robocalls. Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful. However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

368. Defendants admit the allegation set forth in paragraph 368 of the Complaint that "[o]n June 15, 2020, Avid Telecom emailed Spiller regarding unsolicited call to a phone number on the National DNC Registry. Defendants took this action as a part of its

good faith effort to ensure that all the traffic it received was lawful.  However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

369.   Defendants admit the allegation set forth in paragraph 369 of the Complaint that "[o]n June 26, 2020, Avid Telecom emailed Spiller regarding auto warranty robocalls. Defendants took this action as a part of its good faith effort to ensure that all the traffic it received was lawful.  However, Defendants deny that by taking this action, they were acknowledging that the allegations were meritorious.

370.   Defendant Lansky is without sufficient current knowledge or information to admit or to deny whether, "in a deposition, Spiller testified that Lansky, personally, helped Spiller with the content of Spiller's prerecorded messages."  Defendant Lansky denies that he ever personally helped Spiller with the content of Spiller's prerecorded messages.

<strong><u>The Sumco Auto Warranty Calling Scheme</u></strong>

371.   Defendant Reeves admits the allegation set forth in paragraph 371 that, "[b]efore joining Avid Telecom, Defendant she worked at Modok, LLC ("Modok") from June 2017 to June 2020 as the Director of Network Operations.  Defendant Reeves is without sufficient current knowledge or information to admit or to deny why Modok ceased business.  Defendants Avid Telecom and Lansky are without sufficient current knowledge or information to admit or to deny any of the allegations set forth in this paragraph.

372.   Defendant Reeves is without sufficient current knowledge or

information to admit or to deny what caused Modok to be the subject of the Michigan law enforcement action or what ultimately caused it to shut down in August of 2020. Defendants Avid Telecom and Lansky are without sufficient current knowledge or information to admit or to deny any of the allegations set forth in this paragraph.

373.    Defendant Reeves admits the allegation set forth in paragraph 373 that, "Sumco was a customer of Modok from January 1, 2020, through July 2020" and that she "assisted in its onboarding as a new retail (end-user) customer." Defendant Reeves is without sufficient current knowledge or information to admit or to deny whether "Modok knew that Sumco was a high-volume call center customer delivering auto warranty robocalls." Defendants Avid Telecom and Lansky are without sufficient current knowledge or information to admit or to deny any of the allegations set forth in this paragraph.

374.    Defendant Reeves admits the allegation set forth in paragraph 374 that, she corresponded with the ITG regarding Traceback requests related to Sumco's robocall traffic. Defendant Reeves is without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 374 that, "[w]ithin four months of opening the Sumco account, Modok had received 11 Traceback requests regarding Sumco's traffic."

375.    Defendant Reeves is without sufficient current knowledge or information to admit or to deny the allegations set forth in paragraph 375 that "[d]ue to pressure Modok was receiving from the ITG to mitigate Sumco's robocall traffic,

Modok opened a new wholesale account in April of 2020 for Sumco under the name, Virtual Telecom Kft or that Virtual Telecom Kft ("Virtual Telecom") was registered as a 499 Filer with the FCC and was purportedly located in Budapest, Hungary or that "Modok set up a wholesale account for Sumco so that Modok would no longer appear to be the originating voice service provider for the Sumco robocall traffic." Defendant Reeves is without sufficient current knowledge or information to admit or to deny the allegation that she "assisted with the account set up for Virtual Telecom and facilitated the acquisition of over 800,000 DID numbers for Sumco's use." Defendants Avid Telecom and Lansky are without sufficient current knowledge or information to admit or to deny any of the allegations set forth in this paragraph.

376. Defendants admit the allegation set forth in paragraph 376 of the Complaint that, "[o]n June 17, 2020, Avid enrolled Virtual Telecom Kft as a wholesale voice service provider customer."

377. Defendants are without sufficient current knowledge or information to admit or to deny the allegation set forth in paragraph 377 of the Complaint that "Virtual Telecom provided Avid with an address from Budapest, Hungary and a Proton email address, which is an encrypted email service based in Switzerland."

378. Defendants admit the allegation set forth in paragraph 378 of the Complaint that Avid allowed Virtual Telecom, like all of its prepaid carriers, to enroll for its VoIP service without executing a written agreement regarding the terms of services as Virtual Telecom agree to pay in advance for its services.

379. Defendants admit the allegation set forth in paragraph 379

of the Complaint that t h a t, " Virtual Telecom had access to Avid Telecom's "Dialer Special" plan which allowed to run 15,000 sessions and 1,000 simultaneous calls per session.

380. D e f e n d a n t s  a d m i t the allegation set forth in paragraph 380 of the Complaint that t h a t, " [ b ] y August 28, 2020, Lansky had increased the calling capabilities to allow 40,000 sessions with each session able to initiate 3000 simultaneous calls per session.

381. Defendants admit the allegation set forth in paragraph 381 of the Complaint that that Reeves worked as a 1099 independent contractor to Avid Telecom utilizing the job title of Vice President of Operations and Sales in October of 2020. Defendants are without sufficient current knowledge and information to admit or to deny that Reeves first accessed and performed tasks related to Virtual Telecom's account on October 27, 2020.

382. Defendants are without sufficient current knowledge and information to admit or to deny that "[f]ollowing a temporary reduction in Virtual Telecom's call capacity on September 21, 2020, to 30,000 sessions with 3,000 calls per session, Reeves increased the calling capabilities on the account to back 40,000 sessions with 3,200 calls per session on December 9, 2020."

383. Defendants deny the allegation set forth in paragraph 383 of the Complaint that that the Defendants call capabilities w e r e "a s t o u n d i n g" a n d  t h a t  t h e y "knew or consciously avoided knowing that its customer was engaged in or facilitating illegal robocalling."

384.    Defendants are without sufficient current knowledge and information to admit or to deny that "[o]n August 25, 2020, Lansky changed the name and contact information in Avid Telecom's account management system for Virtual Telecom's account to Mobi Telecom, LLC ("Mobi"). Defendants admit that these changes occurred at some point during the parties' relationship.

385.    Defendants are without sufficient current knowledge and information to admit or to deny the allegation set forth in paragraph 385 that, "Mobi was a newly formed company registered with the Wyoming Secretary of State in June of 2020 and registered in the FCC's 499 Filer database as an interconnected VoIP provider on April 1, 2020."

386.    Defendants are without sufficient current knowledge and information to admit or to deny the allegation set forth in paragraph 386 that, "Avid received its *first* Traceback request from the ITG on August 18, 2020, related to robocalls from Virtual Telecom. Defendants admit that the Traceback request refers to auto warranty calls.

387.    Defendants deny the allegation set forth in paragraph 387 that, "the Traceback request provided Avid with notice and evidence of the abusive nature of the robocall campaign at issue." Defendants admit that "[t]he Traceback form states that robocalls were being made to wireless numbers and via random autodialing, including calls to wireless numbers that had never been in service or were currently not in service."

388.    The allegations set forth in paragraph 388 regarding the TSR and the TCPA do not require a response. As Tracebacks are not a finding of illegality, Defendants deny that they were on notice their customer was violating the TSR and the TCPA.

389.    Defendants admit the allegation set forth in paragraph 389 of the Complaint

that the transcript showed the prerecorded messages were sent with no disclosure as to the entity responsible for the solicitation. Defendants state that due to a variety of issues relating to the software used to record the call and to create the transcript, this transcript, standing alone, is not evidence of illegal behavior by any party, Defendants.

390. Defendants admits the allegation set forth in paragraph 390 of the complaint that Avid accepted over $2,426,000 in payments for services on this account from at least four different Sumco entities. Defendants deny that this payment arrangement—which is a matter of private agreement—was improper.

391. Defendants admit the allegation set forth in paragraph 391 of the Complaint that that it supplied DID numbers used for caller ID to another Sumco entity, Geist Telecom, LLC ("Geist") and that that Geist was not obtaining VoIP services from Avid Telecom.

392. Defendants admit the allegation set forth in paragraph 392 of the Complaint that he Ohio Attorney General's Office issued a subpoena to Avid related to the Virtua Telecom/Mobi Telecom account on February 10, 2021, referencing its investigatory authority under the Ohio's Consumer Sales Practices Act and Telephone Solicitation Sales Act.

393. As plaintiffs fail to define the term "substantial assistance" with sufficient specificity, Defendants cannot admit or deny the allegation set forth in paragraph 393 as Avid provided substantial assistance and support to Sumco and its related entities. To the extent that a response is required, Defendants deny the allegation.

394. Defendants do not have sufficient current knowledge and information to

admit or to deny the allegation set forth in paragraph 394 of the Complaint that, "[f]rom June 2020 to February 2021, Avid facilitated over 5 billion calls for Sumco through the Virtual Telecom/Mobi Telecom account. As Plaintiffs do not provide any information regarding the alleged "call analytics on which they rely, Defendants do not have sufficient current knowledge and information to admit or to deny the allegation that any of these calls were unwanted robocalls, or that "of the 5 billion calls Avid facilitated, approximately 80% were less than 6 seconds in duration, with approximately 96% of the calls having a duration of less than 30 seconds."

395.    Defendants deny the allegation set forth in paragraph 395 of the Complaint that, "[Defendants knew or consciously avoided knowing that their customer was initiating massive volumes of robocalls to cellular and residential telephone numbers without having the requisite prior express written consent to deliver robocalls to 650 million unique telephone numbers.

396.    Defendants do not have sufficient current knowledge and information to admit or to deny the allegation set forth in paragraph 396 of the Complaint that, "[m]any of Virtual Telecom's/Mobi Telecom's calls were to telephone numbers on the National DNC Registry and various state Do Not Call Lists.  Of the 5 billion calls Avid facilitated, at least 100 million of them were placed to over 9 million telephone numbers with Ohio area codes that were listed on the National DNC Registry for at least 31 days at the time of the call."

397.    Defendant Reeves denies the allegation set forth in paragraph 397 of the Complaint that she knew from her employment at Modok that call center client, Sumco,

changed its name to Virtual Telecom and that Virtual Telecom subsequently became an Avid customer. When Reeves arrived at Avid Telecom, the customer's name was already Mobi. Defendants also deny that they knew that unrelated entities were paying Avid Telecom for the VoIP service provided to the account in the name of Virtual Telecom or that there was anything improper about reporting that the robocall traffic came from Mobi Telecom.

398.   Defendants deny the allegation set forth in paragraph 398 of the Complaint that they knew the true identity of the upstream provider.

399.   Defendants deny the allegation set forth in paragraph 399 of the Complaint that Avid Telecom and Lansky were on notice since as early as August 18, 2020, that Virtual Telecom and Mobi were using Avid's services to send illegal robocalls.

400.   Reeves denies the allegation set forth in paragraph 400 that she "has been on notice since as early as October 2020 that Sumco and its affiliated entities were using Avid's services to send illegal robocalls."

401.   As the delivery of a Traceback is not evidence of illegality, Defendants deny the allegations set forth in paragraph 401 of the Complaint that, "[t]he illegal robocall traffic associated with the Virtual Telecom/Mobi account was brought to Defendants' attention on many occasions." Avid Telecom also denies the allegation that it failed to take action to mitigate the robocall traffic or that it knowingly "enabled Sumco, Virtual Telecom, and/or Mobi Telecom in furthering their illegal robocalling scheme."

402.   As plaintiffs fail to define the term "substantial assistance" with sufficient specificity, Defendants cannot admit or deny the allegation set forth in paragraph 402 that

Avid provided substantial assistance and support to provided substantial assistance and support to the Sumco, Virtual Telecom, and/or Mobi Telecom and Geist Telecom by providing VoIP services necessary for the initiation of the robocalls and DIDs used for caller ID. Defendants also deny that the provision of DID numbers is an entirely lawful activity and Defendants played no role in the decision how those DID would be utilized.

403. Defendants deny the allegation set forth in paragraph 403 that they had direct knowledge that Sumco was sending them illegal call traffic.

**INDIVIDUAL LIABILITY OF DEFENDANTS LANSKY AND REEVES**

404. Defendants' allegation in paragraph 404 of the Complaint that Lansky and Reeves are also both individually liable for the conduct alleged herein constitutes a legal argument to which no response is required. To the extent that a response is required, Defendants Lansky and Reeves each deny the allegation.

405. Defendants Lansky admits that he is a member of Michael D. Lansky, LLC, and that he possessed and exercised the authority to control the policies and trade practices of Michael D. Lansky, LLC. Defendant Lansky denies that he created and implemented any illegal policies and trade practices, participated in any illegal trade practices, directed or supervised any employees of Michael D. Lansky, LLC who participated in illegal trade practices. Defendant Reeves states that she operated exclusive as a 1099 independent contractor and not as an "officer" of the LLC. Defendant Reeves also denies that she had any right of control over any of the activities of the LLC, all of which right was held exclusively by Defendant Lansky and all of her actions were subject to his

prior consent and approval.

406. The allegations set forth in paragraph 406 of the Complaint regarding the piercing of the corporate veil are legal arguments to which no response is required. Defendant

407. Lansky denies that he exhibited any lack of respect to the separate identities of each entity or that he improperly comingled corporate and personal assets.

408. Defendant Lansky admits allegations set forth in paragraph 408 of the Complaint that he controlled Michael D. Lansky, LLC's corporate bank account(s) corporate credit card(s), corporate check book(s), and corporate PayPal account(s). Defendant Lansky denies that "[t]hat these accounts comingled money for Lansky's personal business.

409. Defendant Lansky denies, and the Court has found as a matter of law, that he did not use corporate funds for personal matters in a way that would justify piercing of the corporate veil.

410. Defendant Lansky denies, and the Court has found as a matter of law, that any use corporate funds for non-corporate purposes does not justify piercing of the corporate veil.

411. Defendant Lansky denies, and the Court has found as a matter of law, that any use corporate funds for the enumerated purposes would not justify piercing of the corporate veil.

412. The allegations set forth in paragraph 412 of the Complaint state a legal conclusion to which no response is required.

413.   The allegations set forth in paragraph 413 of the Complaint state a legal conclusion to which no response is required.

414.   Defendant Lansky denies the allegations set forth in paragraph 414 of the Complaint that his conduct through Michael D. Lansky, LLC, has caused harm to consumers.

415.   Defendant Lansky denies the allegation set forth in paragraph 415 of the Complaint that Treating Michael D. Lansky, LLC and Lansky as separate entities would further sanction a fraud, promote injustice, and lead to an evasion of legal obligations.

416.   Defendant Lansky and Reeves each denies the allegation set forth in paragraph 416 of the Complaint that they are liable for the illegal conduct alleged herein.

**INDIANA: CERTIFICATE OF TERRITORIAL AUTHORITY**

417.   The allegations set forth in paragraph 417 of the Complaint state a legal conclusion to which no response is required.

418.   The allegations set forth in paragraph 418 of the Complaint state a legal conclusion to which no response is required.

419. The allegations set forth in paragraph 419 of the Complaint state a legal conclusion to which no response is required.

420. The allegations set forth in paragraph 420 of the Complaint state a legal conclusion to which no response is required.

421. Avid Telecom admits that at the time of the Complaint, it had not applied for a CTA or been granted a CTA.

422. Defendants are not the terminating carrier for calls that terminate in the state

of Indiana.  As an intermediate carrier, Defendants do not select the number that is called, nor do they make the determination whether it is on an applicable Do Not Call List.  As such, Avid Telecom does not assist or facilitate persons or entities sending calls to telephone numbers on the Indiana Do Not Call List in violation of Indiana law.

423.  Defendants deny that they have substantially assisted and facilitated or supported these clients in violating Indiana law.

424.  As Plaintiffs have yet to produce the referenced analysis, Defendants do not have sufficient knowledge or information to admit or to deny the allegation of fact contained therein.

425.  Defendants deny the allegation set forth in paragraph 425 of the Complaint that they "helped sellers and/or callers make many more calls to Hoosiers on the Indiana Do Not Call List after Defendants were on notice their clients were making calls to Hoosiers on the Indiana Do Not Call List."

## COUNT I

### Violations of the Telemarketing Sales Rule

### 16 C.F.R. §§ 310.3-310.4

426.  No response required.

427.  The allegations set forth in paragraph 427 of the Complaint state a legal conclusion to which no response is required.

428.  The allegations set forth in paragraph 428 of the Complaint state a legal conclusion to which no response is required.

429. The allegations set forth in paragraph 429 of the Complaint state a legal

conclusion to which no response is required.

430.   The allegations set forth in paragraph 430 of the Complaint state a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations.

431.   Defendants,  deny the allegations set forth in paragraph 431 of the Complaint that they provided  substantial  assistance  or support to sellers and telemarketers that were violating the TSR through any of the identified actions.

## COUNT II
### Violations of the TCPA – 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(n)(3)
### (Failure to Exercise Due Diligence/KYC)

432.   No response required.

433.   The allegations set forth in paragraph 433 of the Complaint state a legal conclusion to which no response is required.

434.   The allegations set forth in paragraph 434 of the Complaint state a legal conclusion to which no response is required.

435. The allegations set forth in paragraph 435 of the Complaint state a legal conclusion to which no response is required.

436.   Defendants deny the  allegation set forth in paragraph 436 of the Complaint that they did not choose to regularly, if at all, block calls made from telephone numbers that the FCC has authorized could be blocked so that those calls do not reach a called party pursuant to 47 C.F.R. § 64.1200(k).  By way of example, Avid Telecom blocked in excess of 2.3 billion calls in 2022.

437.   Defendants deny the allegation set forth in paragraph 437 of the Complaint that they violated 47 C.F.R. § 64.1200(n)(3) by failing to take affirmative effective measures to prevent new and renewing customers from using its network to originate illegal calls, including knowing its customers and exercising due diligence in ensuring that its services are not used to originate illegal traffic.  By way of example, at all times, Avid Telecom had a fully compliant Know-Your-Custom plan on file with the FCC and Avid Telecom strictly adhered to the requirements of that Plan.

## COUNT III

### Violations of the TCPA – 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B)
### (Robocalls to Cellular and Residential Telephone Lines)

438.   No response required.

439.   No response required.

440.   The allegations set forth in paragraph 440 of the Complaint state a legal conclusion to which no response is required.

441.   The allegations set forth in paragraph 441 of the Complaint state a legal conclusion to which no response is required.

442.   Defendants deny the allegation set forth in paragraph 442 of the Complaint that they violated 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B) by engaging in a pattern or practice of initiating telephone calls to residential and cellular telephone lines using artificial or prerecorded voices to deliver messages without the prior express consent of the called parties. As Avid Telecom never initiates a call, and it is never

involved in setting the content of a call or the phone number called, it cannot and does not create or apply an artificial prerecorded voices to deliver messages to a called party.

443. Defendants deny the allegation set forth in paragraph 443 of the Complaint that they violated 47 C.F.R. § 64.1200(a)(2) by engaging in a pattern or practice of initiating or causing telephone calls to be initiated that include or introduce advertisements or constitute telemarketing to cellular telephone lines using artificial or prerecorded voices to deliver messages without the prior express written consent of the called parties. As Avid Telecom never initiates a call, and it is never involved in setting the content of a call or the phone number called, it cannot and does not create or apply an artificial or prerecorded voices to deliver messages.

444. Defendants deny the allegation set forth in paragraph 444 of the Complaint that they violated 47 C.F.R. § 64.1200(a)(3) by engaging in a pattern or practice of initiating telephone calls to residential telephone lines using artificial or prerecorded voices to deliver messages without the prior express written consent of the called parties. As Avid Telecom never initiates a call, and it is never involved in setting the content of a call or the phone number called, it cannot and does not create or apply an artificial or prerecorded voices to deliver messages.

445. Defendants deny the allegation set forth in paragraph 445 of the Complaint that they transmitted calls delivering prerecorded or artificially voiced messages to cellular and residential telephone lines in each of the Plaintiffs' respective jurisdictions.

446. Defendants deny the allegation set forth in paragraph 446 of the

Complaint that Defendants initiated calls that terminated within Plaintiffs' respective jurisdictions because the calls would not have connected but for Defendants' decision to allow transit their network despite having actual knowledge that many of the calls were scam robocalls delivering prerecorded or artificially voiced messages cellular and residential telephone lines in each of the Plaintiffs' respective jurisdictions. As Avid Telecom never initiates a call, it cannot and does not meet the requirements for a violation of the TCPA.

447.   Defendants deny the allegation set forth in paragraph 447 of the Complaint that Defendants knew or should have known that many of these calls violated 47 U.S.C. § 227(b)(1)(A)(iii) and (b)(1)(B). As Avid Telecom never initiates a call, and it never engages in any of the conduct associated with the initiation of a call it cannot and did not know that its conduct was in violation of the TCPA, which it was not.

**COUNT IV**
**Violations of the TCPA – 47 U.S.C. §§ 227(c) and 47 C.F.R. § 64.1200(c)(2)**
**(Calls to Telephone Numbers on the National DNC Registry)**

448.   No response required.

449.   The allegations set forth in paragraph 449 of the Complaint state a legal conclusion to which no response is required.

450.   The allegations set forth in paragraph 450 of the Complaint state a legal conclusion to which no response is required.

451.   Defendants deny the allegation set forth in paragraph 451 of the Complaint that Defendants violated 47 C.F.R. § 64.1200(c)(2) by engaging in a pattern

or practice of initiating telephone solicitations to residential telephone subscribers in the Plaintiffs' respective jurisdictions who have registered their telephone numbers on the National DNC Registry. As Avid Telecom never initiates a telephone solicitation, it cannot and does not meet the requirements for a violation of the TCPA.

452. Defendants deny the allegation set forth in paragraph 452 of the Complaint that Defendants knew or should have known that many, if not most, of these calls were made in violation of 47 C.F.R. § 64.1200(c)(2). As Avid Telecom never initiates a telephone solicitation, and it never engages in any of the conduct associated with the initiation of a call it cannot and did not know that its conduct was in violation of the TCPA, which it was not.

<strong><u>COUNT V</u></strong><br><strong>Violations of the Truth in Caller ID Act – 47 U.S.C. § 227(e)</strong><br><strong><u>(Prohibition Against Spoofing)</u></strong>

453. No response required.

454. The allegations set forth in paragraph 454 of the Complaint state a legal conclusion to which no response is required.

455. The allegations set forth in paragraph 455 of the Complaint state a legal conclusion to which no response is required.

456. The allegations set forth in paragraph 456 of the Complaint state a legal conclusion to which no response is required.

457. Defendants deny the allegation set forth in paragraph 457 of the

Complaint that Defendants violated Defendants violated 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604(a) by knowingly causing the caller identification services of the recipients of their call traffic with spoofed phone numbers to transmit misleading or inaccurate caller identification information.  Defendants do not have any control over the number that the calling party chooses to associate with its calls and thus Defendants cannot and do not knowingly cause the caller identification services of the recipients of call traffic with spoofed phone numbers to transmit misleading or inaccurate caller identification information.

458.   Defendants deny the allegation set forth in paragraph 458 of the Complaint that Defendants knew or should have known that they accepted and profited from illegal robocalls with misleading or inaccurate spoofed phone numbers, which sought to  defraud, cause harm, or wrongfully obtain things of value from the call recipients.

**COUNT VI**

**By State of California for Violations of Business and Professions Code Section 17200**

**(Unfair Competition)**

459.   No response required.

460.   Defendants deny the allegation set forth in paragraph 460 of the Complaint that they have engaged in and continue to engage in unfair competition as defined in California Business & Professions Code section 17200. 461.   As an initial matter, Avid Telecom has been out of business for nearly a year and thus it could not have engaged in unfair competition during that period.  With respect to its past services,

Defendants deny that they have: (i) provided substantial assistance or support, through to one or more sellers or telemarketers who Defendants knew or should have known were engaged in deceptive or abusive telemarketing acts or practices; (ii) failed to take affirmative, effective measures to prevent new and renewing customers from using their network to originate illegal calls; or (iii) initiated telephone solicitations to cellular and residential telephone lines, including lines in California, using artificial or prerecorded voices to deliver a message without the prior express consent of the called party. To the contrary, Defendants have (a) cooperated fully with the ITG in the Traceback process and they have shut down every carrier where it became known that they were delivering illegal robocalls; and (b) taken extraordinary measures to prevent new and renewing customers from using their network to originate illegal calls, including by rigorous adherence to its Know Your Customer Plan and blocking billions of calls. As Avid Telecom does not initiate calls, they could not have and do not engage in any of the conduct associated with such action.

461.   No response is required.

## COUNT VII

### Violations of Chapter 501, Part II, Florida Statutes

462.   No response is required.

463.   The allegations set forth in paragraph 463 of the Complaint state a legal conclusion to which no response is required.

464.   The allegations set forth in paragraph 464 of the Complaint state a legal

conclusion to which no response is required.

465.    The allegations set forth in paragraph 465 of the Complaint state a legal conclusion to which no response is required.

466.    The allegations set forth in paragraph 466 of the Complaint state a legal conclusion to which no response is required.

467.    The allegations set forth in paragraph 467 of the Complaint state a legal conclusion to which no response is required.

468.    The allegations set forth in paragraph 468 of the Complaint state a legal conclusion to which no response is required.

469.    The allegations set forth in paragraph 469 of the Complaint state a legal conclusion to which no response is required.

470.    The allegations set forth in paragraph 470 of the Complaint state a legal conclusion to which no response is required.

471.    The allegations set forth in paragraph 471 of the Complaint state a legal conclusion to which no response is required.

472.    As Plaintiffs do not define the term "routinely:" with sufficient specificity, Defendants do not have the ability to respond to the allegation as stated.  To the extent a response is required, Defendants deny they knowingly transmit calls to consumers in Florida  which misrepresent the identity of the caller and the nature of goods and services offered through the call.

473.    As Plaintiffs do not provide the records of calls allegedly transmitted by the Defendants, Defendants do not have the current

knowledge or information required to respond to this allegation regarding the 1,184,200,778 calls were directed to phone numbers with area codes assigned to Florida.

474. As Plaintiffs do not provide the records of calls allegedly transmitted by the Defendants, Defendants do not have the current knowledge or information required to respond to this allegation regarding the number of calls directed to phone numbers on the National DNC Registry.

475. As Plaintiffs do not provide the records of calls allegedly transmitted by the Defendants, Defendants do not have the current knowledge or information required to respond to this allegation regarding the average duration of the calls. Defendants also dispute the allegation that an average call length of 16.7 seconds, indicates that the vast majority of such calls were unwanted.

476. As Plaintiffs do not allege or provide any basis to believe that the example provided was for a call transited by Avid Telecom, Avid Telecom does not have the current knowledge or information necessary to admit or to deny the allegation. To the extent that a response is required. Avid Telecom denies that it knowingly transmitted the referenced call into Florida.

477. As Plaintiffs do not allege or provide any basis to believe that any spoofed call was transmitted by Avid Telecom into Florida, Avid Telecom does not have the current knowledge or information necessary to admit or to deny the allegation. To the extent that a response is required. Avid Telecom denies that it knew or had reason to believe that it was transmitted calls into Florida where the originating party had spoofed the CallerID.

478. Defendants deny that they knowingly transmit traffic that causes injury, or the risk of injury, to consumers.

479. The allegations set forth in paragraph 479 of the Complaint state a legal conclusion to which no response is required.

480. The allegations set forth in paragraph 480 of the Complaint state a legal conclusion to which no response is required.

481. The allegations set forth in paragraph 481 of the Complaint state a legal conclusion to which no response is required.

## COUNT VIII
## Violations of the Telephone Solicitation of Consumers Act (the "TSCA")
## Indiana Code 24-4.7-4

482. No response is required.

483. The allegations set forth in paragraph 483 of the Complaint state a legal conclusion to which no response is required.

484. The allegations set forth in paragraph 484 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny they are doing business in Indiana because they do not make or cause to be made calls to consumers in Indiana nor do they "control" persons who make those calls.

485. The allegations set forth in paragraph 485 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny they are doing business in Indiana because they do not have any

subscribers in Indiana, they do not initiate any calls into Indiana and thus they cannot and do not contact or attempt to contact subscribers in Indiana by telephone.

486.   The allegations set forth in paragraph 486 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny they are suppliers in Indiana because they do not engage in or soliciting consumer transactions in Indiana.

487.   The allegations set forth in paragraph 487 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny they make or cause others to make calls to telephone numbers on Indiana's Do Not Call List at the time of the calls, and thus that they committed any violations of the TSCA, Ind. Code § 24-4.7-4-1

488.   The allegations set forth in paragraph 488 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny they are ever the calling party or that transfer a live call to one or more persons if the call has been placed to a consumer in violation of the TSCA, Ind. Code 24-4.7 or the Auto-Dialer Act, Ind. Code 24-5-14. Ind. Code § 24-4.7-4-7(c).

489.   The allegations set forth in paragraph 489 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny they provided substantial assistance to a telephone solicitor, supplier, or caller.

490.   Defendants deny the allegation set forth in paragraph 490 of the Complaint that Avid Telecom, Lansky, and Reeves knew or consciously avoided knowing that the

telephone solicitor, supplier, or caller was engaged in a practice that violated Ind. Code 24-4.7-4.

491.    Defendants deny the allegation set forth in paragraph 491 of the Complaint that Avid Telecom's equipment or services were used for more than the transportation, handling, or retransmitting of a call.  For the purposes of clarity, Avid Telecom does not own any equipment and its services are only used to transit an incoming call and hand it off to another carrier.

492.    The allegations set forth in paragraph 492 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny they made any telephone calls or that they knowingly transited any telephone calls to a number selected by the calling party that was legitimately on a Do Not Call list.

**COUNT IX**
**Violations of the Maryland Telephone Consumer Protection Act (the "MTCPA")**
**Md. Code Ann., Com. Law § 14-3201, *et seq*.**

493.    No response is required.

494.    The allegations set forth in paragraph 494 of the Complaint state a legal conclusion to which no response is required.

495.    The allegations set forth in paragraph 495 of the Complaint state a legal conclusion to which no response is required.

496.    Defendants deny the allegation set forth in paragraph 496 that they have knowingly provided substantial assistance or support, through the provision of Avid

Telecom's services, to one or more sellers or telemarketers who Defendants knew or should have known were engaged in the deceptive or abusive telemarketing acts or practices.

497. Defendants deny the allegation set forth in paragraph 497 that they originated any calls or that they transmitted calls from telephone solicitors who Defendants knew or consciously avoided knowing were violating the Telephone Consumer Protection Act by (1) making telephone solicitations to numbers on the National Do Not Call Registry; (2) using automatic dialing and prerecorded messages; and (3) causing misleading information to be transmitted to users of caller identification technologies or otherwise block or misrepresent the original source of the call."

498. Defendants deny the allegation set forth in paragraph 498 that they violated the TCPA by failing to take affirmative measures to prevent new and renewing customers from using their network to originate illegal calls, in violation of 47 CFR § 64.1200(n)(3). To the contrary, Defendants have (a) cooperated fully with the ITG in the Traceback process and they have shut down every carrier where it became known that they were delivering illegal robocalls; and (b) taken extraordinary measures to prevent new and renewing customers from using their network to originate illegal calls, including by rigorous adherence to its Know Your Customer Plan and blocking billions of calls.

499. Defendants deny the allegation set forth in paragraph 499 that they Defendants have devised and carried out the above-described business practices knowingly and deliberately.

500. Defendants deny the allegation set forth in paragraph 500 that they failed

to comply with the requirements of the Telemarketing Sales Rule, as set out in Count I above, in violation of § 14-3201(1) of the MTCPA.

501. Defendants deny the allegation set forth in paragraph 501 that they failed to comply with the requirements of the Telephone Consumer Protection Act, as set out in Counts II and III above, in violation of § 14-3201(2) of the MTCPA.

502. The allegations set forth in paragraph 502 of the Complaint state a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegation set forth in paragraph 502 that they have caused any harm to customers in Maryland.

503. Defendants deny the allegation set forth in paragraph 503 that they have originated, facilitated and/or transmitted millions of illegal robocalls in Maryland and are liable for millions of dollars in damages.

504. The allegations set forth in paragraph 504 of the Complaint state a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegation that they have engaged in any prohibited practice.

505. The allegations set forth in paragraph 505 of the Complaint state a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegation that they have engaged in any unfair or deceptive trade practice or that they are is subject to the enforcement and penalty provisions contained in Md. Code Ann., Com. Law § 13-401 through § 13-411. *See* MTCPA, § 14-3202.

506. The allegations set forth in paragraph 506 of the Complaint state a legal conclusion to which no response is required.

507.    The allegations set forth in paragraph 507 of the Complaint state a legal conclusion to which no response is required.

508.    The allegations set forth in paragraph 508 of the Complaint state a legal conclusion to which no response is required.

509.    The allegations set forth in paragraph 509 of the Complaint state a legal conclusion to which no response is required.

## COUNT X
## Violations of the Nevada Telecommunication Solicitation Act
## Chapter 228.500 to 228.590

510.    No response required.

511.    As Plaintiffs do not provide the records of calls allegedly transmitted by the Defendants, nor do they state the "times relevant that were used to create the alleged number of fraudulent robocalls, Defendants do not have the current knowledge or information required to respond to this allegation. To the extent that a response is required, Defendants deny the allegation, *inter alia*, because the Nevada AG cannot possibly know how many of the total robocalls received were "fraudulent". Defendants also dispute that calls placed to phones with Nevada area codes that were not in-state when the alleged call was received as subject to the jurisdiction of the state.

512.    The allegations set forth in paragraph 512 of the Complaint state a legal conclusion to which no response is required.

513.    The allegations set forth in paragraph 513 of the Complaint state a legal conclusion to which no response is required.

514. The allegations set forth in paragraph 514 of the Complaint state a legal conclusion to which no response is required.

515. Defendants deny the allegation set forth in paragraph 515 of the Complaint that their common carrier activities in transmitting calls, and attendant acts regarding those calls, violated provisions of the NDTPA, by violating Nevada's Do Not Call Law.

## COUNT XI

## Violations of the Nevada Law – Devices for Automatic Dialing and Announcing Chapter 597 *et seq*.

516. No response required.

517. The allegations set forth in paragraph 517 of the Complaint state a legal conclusion to which no response is required.

518. The allegations set forth in paragraph 518 of the Complaint state a legal conclusion to which no response is required.

519. The allegations set forth in paragraph 519 of the Complaint state a legal conclusion to which no response is required.

520. The allegations set forth in paragraph 520 of the Complaint state a legal conclusion to which no response is required.

521. The allegations set forth in paragraph 521 of the Complaint state a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegation set forth in paragraph 521 of the Complaint that Defendants' conduct in transmitting calls, and attendant acts regarding those calls,

violated provisions of the NDTPA, by violating the provisions of NRS 597.814 and 597.818.

**COUNT XII**

**Violations of the Nevada Deceptive Trade Practices Act, Chapter 598 *et seq*.**

522.    No response required.

523.    The allegations set forth in paragraph 523 of the Complaint state a legal conclusion to which no response is required.

524.    Defendants deny the allegation set forth in paragraph 524 of the Complaint that their conduct in transmitting calls, and attendant acts regarding those calls, including, without limitation, disseminating unsolicited prerecorded messages to solicit a person to purchase goods or services by telephone when Defendants did not have a preexisting business relationship with the person being called and/or failed to provide the person with statutory required information at the time the person answered the telephone, violated provisions of the NDTPA, by violating NRS 598.0916. Defendants specifically deny that they disseminated unsolicited prerecorded messages to solicit a person to purchase goods or services by telephone and that they failed to provide the person with statutory required information at the time the person answered the telephone.

525.    The allegations set forth in paragraph 525 of the Complaint state a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegation set forth in paragraph 525 of the Complaint that they repeatedly or continuously conducted a solicitation or presentation in a manner that is considered by a reasonable person to be annoying, abusive, or harassing.

526.    The allegations set forth in paragraph 526 of the Complaint state a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegation set forth in paragraph 526 of the Complaint that they repeatedly  or continuously conducted a solicitation or presentation in a manner that is considered by a reasonable person to be annoying, abusive, or harassing in violation of the provisions of the NDTPA, by violating NRS 598.0918(2).

527.    The allegations set forth in paragraph 527 of the Complaint state a legal conclusion to which no response is required.

528.    Defendants deny the allegation set forth in paragraph 528 of the Complaint that their conduct in allegedly transmitting fraudulent robocalls to consumers in Nevada is in violation of provisions of federal law, including without limitation, the Telemarketing Sales Rule, 16 C.F.R. Part 310 via 15 U.S.C. § 6103(a) and provisions of federal law identified herein.  Specifically, but without limitation, Defendants deny that they knowingly transmitted fraudulent robocalls.

529.    Defendants deny the allegation set forth in paragraph 529 of the Complaint that they knowingly violated the laws set forth in the preceding paragraph because Defendants knew or should have known that the robocalls were in violation of those laws.

530.    As Plaintiffs fail to provide the call records from which the number of allegedly fraudulent calls was derived, Defendants do not have the current knowledge or information required to admit or deny the allegation set forth in paragraph 530 of the Complaint that they allegedly transmitting 159,576,512 fraudulent robocalls to consumers

in Nevada or to consumers with a Nevada based area code.

531.    Defendants deny the allegation set forth in paragraph 531 of the Complaint that they knowingly transmitted fraudulent robocalls to consumers in Nevada is in violation of provisions of Nevada State law including, without limitation, the Do Not Call Law, the NDTPA, and other related statutory provisions.

532.    Defendants deny the allegation set forth in paragraph 532 of the Complaint that they knowingly transmitted calls, and undertook attendant acts regarding those calls, that violated provisions of the NDTPA, and/or other statutory provisions violating provisions of federal law, including without limitation, the Telemarketing Sales Rule, 16 C.F.R. Part 310 via 15 U.S.C. § 6103(a), and/or provisions of Nevada State law including, without limitation, the Do Not Call Law and the NDTPA.

533.    The allegations set forth in paragraph 533 of the Complaint state a legal conclusion to which no response is required.

534.    Defendants deny the allegation set forth in paragraph 534 of the Complaint that they Defendants took advantage of the lack of knowledge, ability, experience or capacity of Nevada consumers to a grossly unfair degree by transmitting calls and carrying out attendant acts regarding those calls as alleged herein, thereby committing an unconscionable practice in a transaction in violation of NRS 598.0923(1)(e).

535.    The allegations set forth in paragraph 535 of the Complaint state a legal conclusion to which no response is required.

536.    The allegations set forth in paragraph 536 of the Complaint state a legal conclusion to which no response is required.  To the extent that a response is required,

Defendants deny the allegation set forth in paragraph 536 of the Complaint that they violated the Nevada Do Not Call Law, and/or the NDTPA.

537.    The allegations set forth in paragraph 537 of the Complaint state a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegation set forth in paragraph 537 of the Complaint that they violated the NDTPA.

**COUNT XIII**
**Violations of New York General Business Law § 399-z**
**Pursuant to New York Executive Law § 63(12)**

538.    No response required.

539.    The allegations set forth in paragraph 539 of the Complaint state a legal conclusion to which no response is required.

540.    Defendants deny the allegations set forth in paragraph 540 of the Complaint have engaged in the carrying on, conducting or transaction of business in New York within the meaning of Executive Law § 63(12).

541.    Defendants deny the allegations set forth in paragraph 541 of the Complaint that they have engaged in repeated and persistent illegality by facilitating illegal calls in violation of the GBL § 399-z as set forth in the following Sections.

542.    Defendants deny the allegations set forth in paragraph 542 of the Complaint that they are a "telemarketer" or that they "make or cause to be made any unsolicited telemarketing sales call to any customer when that customer's telephone number has been on the national 'do-not-call' registry. . ."

543. Defendants deny the allegations set forth in paragraph 543 of the Complaint that they have "initiat[ed] any telemarketing sales call by means of a technology that delivers a pre-recorded message."

544. Defendants deny the allegations set forth in paragraph 544 of the Complaint that they have repeatedly facilitated unsolicited telemarketing sales calls to customers whose telephone numbers were on the national do-not-call registry and had been for at least 31 days prior to the call being made.

545. Defendants deny the allegations set forth in paragraph 545 of the Complaint that they have repeatedly provided (sic) facilitated the initiation of telemarketing sales calls by means of a technology that delivered pre-recorded messages, without the customers' prior express written consent.

546. Defendants deny the allegations set forth in paragraph 546 of the Complaint that they have engaged in repeated illegal conduct in violation of Executive Law § 63(12).

## COUNT XIV
### Violations of New York General Business Law § 399-p

547. No response required

548. The allegations set forth in paragraph 548 of the Complaint state a legal conclusion to which no response is required.

549. The allegations set forth in paragraph 549 of the Complaint state a legal conclusion to which no response is required.

550.   Defendants deny allegations set forth in paragraph 550 of the Complaint that they have facilitated sellers or telemarketers who were operating automatic dialing-announcing devices which use random or sequential number generators to produce numbers to be called.

## COUNT XV
### Violations of the North Carolina Telephone Solicitations Act
### N.C. Gen. Stat. §§ 75-100 to 75-105

551.   No response required.

552.   The allegations set forth in paragraph 552 of the Complaint state a legal conclusion to which no response is required.

553.   The allegations set forth in paragraph 553 of the Complaint state a legal conclusion to which no response is required.

554.   The allegations set forth in paragraph 554 of the Complaint state a legal conclusion to which no response is required.

555.   The allegations set forth in paragraph 555 of the Complaint state a legal conclusion to which no response is required.

556.   Defendants deny allegations set forth in paragraph 556 of the Complaint that they have transmitted calls from telephone solicitors who Defendants knew or consciously avoided knowing were violating the North Carolina Telephone Solicitations Act.

557.   Defendants deny allegations set forth in paragraph 557 of the Complaint that they willfully engaged in the actions and practices described above.

## COUNT XVI

**Violations of North Carolina's Unfair or Deceptive Trade Practices Act**

**N.C. Gen. Stat. §§ 75-1.1, *et seq.***

558.   No response required.

559.   The allegations set forth in paragraph 559 of the Complaint state a legal conclusion to which no response is required.

560.   The allegations set forth in paragraph 560 of the Complaint state a legal conclusion to which no response is required.

561.   The allegations set forth in paragraph 561 of the Complaint state a legal conclusion to which no response is required.

562.   The allegations set forth in paragraph 562 of the Complaint state a legal conclusion to which no response is required.

563.   Defendants deny allegations set forth in paragraph 563 regarding certain allegedly unlawful acts and practices and thus Defendants deny that Defendants has acted affecting commerce based on those alleged acts.

564.   Defendants deny allegations set forth in paragraph 564 the Complaint that Defendants knowingly made, initiated, and/or transmitted calls across the U.S. telephone network possessed the tendency or capacity to mislead or created the likelihood of deception.

565.   Defendants deny allegations set forth in paragraph 565 the Complaint that Defendants engaged in acts or practices that were offensive to established

North Carolina public policy, as well as immoral, unethical, oppressive, unscrupulous, and substantially injurious to North Carolina consumers across the State.

566. Defendants deny allegations set forth in paragraph 566 the Complaint that Defendants have devised and carried out the above-described business practices knowingly and deliberately.

567. Defendants deny allegations set forth in paragraph 567 the Complaint that Defendants have provided substantial assistance or support, through the provision of Avid Telecom services, to one or more sellers or telemarketers who Defendants knew or should have known were engaged in the deceptive or abusive telemarketing acts or practices set out in the TSR Counts above.

568. Defendants deny allegations set forth in paragraph 568 the Complaint that Defendants engaged in the acts or practices enumerated in the paragraphs above as deceptive telemarketing acts or practices in violation of the TSR. 16 C.F.R. § 310.3(b).

569. The allegations set forth in paragraph 569 of the Complaint state a legal conclusion to which no response is required.

570. Defendants deny allegations set forth in paragraph 570 of the Complaint that Defendants engaged in acts or practices that are unfair or deceptive trade practices under the TSR are also deceptive or misleading and constitute unfair or deceptive trade practices prohibited by N.C. Gen. Stat. § 75-1.1 and are violations of North Carolina's Unfair or Deceptive Trade Practices Act.

571. Defendants deny allegations set forth in paragraph 571 of the Complaint that Defendants engaged in acts or practices, representations and omissions that violate

the prohibition against unfair or deceptive business practices found in Section 75-1.1 of the North Carolina General Statutes.

## COUNT XVII

### North Dakota – Violations of the Unlawful Sales or Advertising Practices law N.D.C.C. ch. 51-15 – Facilitating and Assisting

572.    No response required.

573.    The allegations set forth in paragraph 573 of the Complaint state a legal conclusion to which no response is required.

574.    The allegations set forth in paragraph 574 of the Complaint state a legal conclusion to which no response is required.

575.    The allegations set forth in paragraph 575 of the Complaint state a legal conclusion to which no response is required.

576.    The allegations set forth in paragraph 576 of the Complaint state a legal conclusion to which no response is required.

577.    The allegations set forth in paragraph 577 of the Complaint state a legal conclusion to which no response is required.

578.    Defendants deny allegations set forth in paragraph 578 of the Complaint that Defendants Avid Telecom, Lansky, and Reeves engaged in violations of N.D.C.C. § 51-15-02.3 by providing assistance or support, through the provision of merchandise or services, to one or more callers who Defendants knew or consciously avoided knowing were engaged in violations of the North Dakota Telephone Solicitations

Act, N.D.C.C. chapter 51-28, and Unlawful Sales or Advertising Practices law, N.D.C.C. chapter 51-15.

579.   Defendants deny allegations set forth in paragraph 579 of the Complaint that Defendants Avid Telecom, Lansky, and Reeves engaged in violations of N.D.C.C. § 51-15-02.3 by originating and/or transmitting calls from one or more caller who Defendants knew or consciously avoided knowing were engaged in violations of the North Dakota Telephone Solicitations Act, N.D.C.C. chapter 51-28, and Unlawful Sales or Advertising Practices law, N.D.C.C. chapter 51-15.

580.   Defendants deny allegations set forth in paragraph 580 of the Complaint that Defendants Avid Telecom, Lansky, and Reeves assisted or supported unlawful robocalls to North Dakota subscribers, which robocalls violated N.D.C.C. chs. 51-28 and 51-15

581.   The allegations set forth in paragraph 581 of the Complaint state a legal conclusion to which no response is required.

**COUNT XVIII**
**North Dakota – Violations of the Unlawful Sales or Advertising Practices law**
**N.D.C.C. ch. 51-15 – Deceptive or Unconscionable practices**

582.   No response required.

583.   The allegations set forth in paragraph 583 of the Complaint state a legal conclusion to which no response is required.

584.   The allegations set forth in paragraph 584 of the Complaint state a legal conclusion to which no response is required.

585. Defendants deny allegations set forth in paragraph 585 of the Complaint that Defendants Avid Telecom, Lansky, and Reeves originated, routed, or transmitted illegal robocalls across the U.S. telephone network to millions of telephone subscribers.

586. Defendants deny allegations set forth in paragraph 586 of the Complaint that Defendants Avid Telecom, Lansky, and Reeves provided support and services to Avid Telecom's customers engaged in unlawful conduct, including dialing software, including a predictive dialer, call leads, and expertise, or directly participated in Avid Telecom's customers' unlawful acts or practices.

587. Defendants deny allegations set forth in paragraph 587 of the Complaint that Defendants Avid Telecom, Lansky, and Reeves assisted and facilitated Avid Telecom's customers' attempts to circumvent legal and regulatory protections for consumers.

588. Defendants deny allegations set forth in paragraph 588 of the Complaint that Defendants conduct, as described herein, offends public policy, as embodied in federal and state law, and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

589. Defendants deny allegations set forth in paragraph 589 of the Complaint that the robocall traffic Defendants transmit and support causes injury, or is likely to cause substantial injury, to persons, which injury is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition.

590. Defendants deny allegations set forth in paragraph 590 of the Complaint

that Defendants Avid Telecom, Lansky, and Reeves' acts or practices, as described herein, are deceptive, unconscionable, or causes or is likely to cause substantial injury to a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition, in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D.C.C., § 51-15-02.

## COUNT XIX

### Rhode Island – Violations of the Telephone Sales Solicitation Act
### R I Gen. Laws § 5-61-1, *et seq*.

591.    No response required.

592.    The allegations set forth in paragraph 592 of the Complaint state a legal conclusion to which no response is required.

593.    The allegations set forth in paragraph 593 of the Complaint state a legal conclusion to which no response is required.

594.    The allegations set forth in paragraph 594 of the Complaint state a legal conclusion to which no response is required.

595.    The allegations set forth in paragraph 595 of the Complaint state a legal conclusion to which no response is required.

596.    The allegations set forth in paragraph 596 of the Complaint state a legal conclusion to which no response is required.

597.    Defendants deny allegations set forth in paragraph 597 of the Complaint that Avid Telekom, Lansky, and Reeves repeatedly facilitated and caused violations of the TSSA in support of their telephonic seller customers by the acts enumerated in

-167-

that paragraph.

598.    The allegations set forth in paragraph 598 of the Complaint state a legal conclusion to which no response is required.

### COUNT XX

### Rhode Island – Violations of the Deceptive Trade Practices Act
### R. I. Gen. Laws § 6-13.1-1, *et seq.*

599.    No response required.

600.    The allegations set forth in paragraph 600 of the Complaint state a legal conclusion to which no response is required.

601.    The allegations set forth in paragraph 601 of the Complaint state a legal conclusion to which no response is required.

602.    The allegations set forth in paragraph 602 of the Complaint state a legal conclusion to which no response is required.

603.    Defendants deny allegations set forth in paragraph 603 of the Complaint that Defendants' acts or practices enumerated in the foregoing paragraphs have been in the conduct of any trade or commerce in Rhode Island.

604.    Defendants deny allegations set forth in paragraph 604 of the Complaint that Defendants originated and/or transmitted across the U.S. telephone network violated the TSSA and possessed the tendency or capacity to mislead, deceive, and/or create a likelihood of confusion or misunderstanding.  Defendants also deny the allegation that Defendants directly participated in these misleading, deceptive, and/or confusing acts and practices by supporting and servicing Avid Telecom's customers  by,  for

example, providing them with DIDs, providing them with Rhode Islanders to target, and assisting them as they attempt to circumvent legal and regulatory protections for consumers.

605. Defendants deny allegations set forth in paragraph 605 of the Complaint that Defendants' acts or practices enumerated above were likewise a violation of public policy, embodied in federal and state law and regulation including the TSR, 16 C.F.R. § 310.3(b) and that these practices are also immoral, unethical, oppressive, unscrupulous, and substantially injurious to Rhode Island consumers.

606. Defendants deny allegations set forth in paragraph 606 of the Complaint that Defendants' acts, practices, representations, and omissions of Defendants described herein, pursuant to R.I. Gen. Laws § 6-13.1-2 and § 6-13.1-5, violate the prohibition against unfair or deceptive trade practices found in RI DTPA.

## COUNT XXI
## Violation of the Washington State Consumer Protection Act, RCW 19.86.020

607. No response required.

608. The allegations set forth in paragraph 608 of the Complaint state a legal conclusion to which no response is required.

609. The allegations set forth in paragraph 609 of the Complaint state a legal conclusion to which no response is required.

610. Defendants deny allegations set forth in paragraph 610 of the Complaint that the calls that Defendants originated and/or transmitted across the U.S. telephone network possessed the tendency or capacity to mislead or create the likelihood of

deception.

611.    The allegations set forth in paragraph 611 of the Complaint state a legal conclusion to which no response is required.

612.    The allegations set forth in paragraph 612 of the Complaint state a legal conclusion to which no response is required.

613.    Defendants deny allegations set forth in paragraph 613 of the Complaint that Defendants have provided substantial assistance or support, through the provision of Avid Telecom's services, to one or more sellers or telemarketers who Defendants knew or should have known were engaged in the deceptive or abusive telemarketing acts or practices set out in in the TSR Counts above.

614.    Defendants deny allegations set forth in paragraph 614 of the Complaint that Defendants directed, controlled, had the authority to control, with knowledge approved of, and participated in the business practices described herein.

615.    Defendants deny allegations set forth in paragraph 615 of the Complaint that Defendants practices have impacted the public interest and is likely to continue without relief from this Court.

616.    The allegations set forth in paragraph 616 of the Complaint state a legal conclusion to which no response is required.

**COUNT XXII**

**Knowingly Assisting Violations of Telephone Solicitations Rules**

**Wis. Admin. Code § ATCP 127.20**

617. No response required.

618. The allegations set forth in paragraph 618 of the Complaint state a legal conclusion to which no response is required.

619. The allegations set forth in paragraph 619 of the Complaint state a legal conclusion to which no response is required.

620. Defendants deny allegations set forth in paragraph 620 of the Complaint that Defendants violated Wis. Admin. Code § ATCP 127.20 by knowingly assisting, through its VoIP provider services, sellers who Defendants knew were engaged in activities or practices which violated Subchapter II.

621. Defendants deny allegations set forth in paragraph 621 of the Complaint that Defendants knowingly assisted sellers who made telephone solicitations that violated Wis. Admin. Code § ATCP 127.04 when the sellers failed to disclose in a telephone solicitation

622. Defendants deny allegations set forth in paragraph 622 of the Complaint that Defendants knowingly assisted sellers who made telephone solicitations that violated Wis. Admin. Code § ATCP 127.14 when the sellers engaged in the described activities.

623. Defendants deny allegations set forth in paragraph 623 of the Complaint that Defendants knowingly assisted sellers who initiated telephone solicitations to consumers before 8:00 AM or after 9:00 PM without the prior consent of the consumers in violation of Wis. Admin. Code § ATCP 127.16(3).

624. Defendants deny allegations set forth in paragraph 624 of the Complaint that Defendants violated Wis. Admin. Code § ATCP 127.20 each time a seller,

knowingly assisted by Defendants, violated Wis. Admin. Code §§ ATCP 127.04, 127.14 and/or 127.16(3).

## COUNT XXIII
### Knowingly Facilitating Violations of Telephone Solicitations
### Do-Not-Call Rules. Wis. Admin. Code § ATCP 127.83(2)(d)

625.    No response required.

626.    The allegations set forth in paragraph 626 of the Complaint state a legal conclusion to which no response is required.

627.    Defendants deny allegations set forth in paragraph 627 of the Complaint that Defendants violated Wis. Admin. Code § ATCP 127.83(2)(d) by knowingly facilitating, through its VoIP provider services, persons who Defendants knew were engaged in violations of Subchapter V.

628.    Defendants deny allegations set forth in paragraph 628 of the Complaint that Defendants violated Wis. Admin. Code § ATCP 127.82(2) when the persons made telephone solicitations, either directly or through an employee or agent, to covered telephone customers whose telephone numbers then appeared on the state do-not-call registry.

629.    Defendants deny allegations set forth in paragraph 629 of the Complaint that Defendants violated Wis. Admin. Code § ATCP 127.83(2)(b) when the persons used electronically prerecorded messages in telephone calls for the purpose of encouraging a covered or noncovered telephone customer to purchase property, goods, or services, without first obtaining a written agreement that contains the telephone number and signature of the customer to be called, where the agreement discloses in writing

that the customer is not required to sign the agreement as a condition of making a purchase and, by signing the agreement, the customer authorizes telemarketing calls from that person, and where the provisions of Wis. Admin. Code §§ ATCP 127.80(10)(a) or (b) do not apply.

630.    Defendants deny allegations set forth in paragraph 630 of the Complaint that Defendants violated Wis. Admin. Code § ATCP 127.83(2)(d) each time a person, knowingly facilitated by Defendants, violated Wis. Admin. Code § ATCP 127.82(2) and/or 127.83(2)(b).

**Affirmative Defenses**

**Due Care**

Defendant has established and implemented, with due care, reasonable practices and procedures, consistent with all then existing rules and regulations, to prevent telephone solicitations.

**The Industry Traceback Group Legal Authority**

The Industry Traceback Group does not have the legal authority to determine if a call is illegal.

**Tracebacks are Not Notice of Illegal Activity**

The issuance of a traceback by the Industry Traceback Group does not constitute a determination of illegality or notice of illegality.

**Failure to State a Claim upon which Relief may be Granted Against Avid Telecom**

Plaintiffs have failed to state a claim upon which relief may be granted against Avid Telecom.

**Failure to State a Claim upon which Relief may be Granted Against Michael Lansky**

Plaintiffs have failed to state a claim upon which relief may be granted against Michael Lansky in his personal capacity.

**Failure to State a Claim upon which Relief may be Granted Against Stacey Reeves**

Plaintiffs have failed to state a claim upon which relief may be granted against Stacey Reeves in his personal capacity.

**Statute of Limitations**

The claims of the Plaintiffs are barred, in whole or in part, by the applicable statute of limitations.

**Consent**

The claims of the Plaintiffs are barred, in whole or in part, by the consent of third parties.

**Laches**

The claims of the Plaintiffs are barred, in whole or in part, by the doctrine of laches.

**Unclean Hands**

The claims of the Plaintiffs are barred, in whole or in part, by their unclean hands.

**Conduct**

The claims of the Plaintiffs are barred, in whole or in part, by the conduct by one or more Plaintiffs.

**Estoppel**

The claims of the Plaintiffs are barred, in whole or in part, by the doctrine of estoppel.

**Unconstitutionality of Statutory Damages**

Statutory damages would constitute an excessive fine or penalty without the substantive or procedural safeguards guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

**Standing**

Plaintiffs have not and cannot show a concrete and particularized invasion of a legally protected interest and that Defendants, and the proposed class, are in the zone of interests the TCPA is intended to protect.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

**Additional Affirmative Defenses**

Defendants expressly reserve the right to assert other affirmative defenses as may be appropriate as this action proceeds.

Respectfully submitted,

/s/ Neil S. Ende

_____

Neil S. Ende
Greg L. Taylor

*Counsel to Michael D. Lansky, LLC dba Avid*
*Telecom Michael D. Lansky and Stacey S. Reeves*

Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
nende@tlgdc.com
Telephone: (202) 895-1707
Facsimile: (202) 478-5074

Dated:  August 12, 2024

-176-

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of August 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

_____
Silsa Cabezas