Neil S. Ende, Esq.
Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC  20015
nende@tlgdc.com
Telephone: (202) 895-1707
Facsimile: (202) 478-5074
Attorneys for Michael D. Lansky, LLC
 dba Avid Telecom
Michael D. Lansky and Stacey S. Reeves

**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF ARIZONA**

| | |
|---|---|
| State of Arizona, ex rel. Kristin K. Mayes, Attorney General; et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No.: 4:23-cv-00233-TUC-CKJ ) |
| Michael D. Lansky, L.L.C., dba Avid Telecom et al., | ) **DEFENDANTS' CASE** ) **MANAGEMENT PLAN** ) |
| Defendants. | ) ) ) |

Pursuant to this Court's August 22, 2024, Order [Dkt 84], Defendants, Michael D. Lansky, LLC dba Avid Telecom, LLC ("Avid Telecom"), Michael D. Lansky ("Lansky") and Stacey Reeves ("Reeves") hereby submit their Case Management Plan ("Defendants' CM Plan"). Defendants CM Plan sets forth Defendants' the subject matters and issues on which Defendants will seek discovery, the parties from whom discovery will be sought and the expected time required.

# INTRODUCTION

Although Plaintiffs' Case Management Plan was submitted by counsel for the Plaintiff States of Arizona, Indiana, North Carolina, and Ohio, in fact, Defendants face a six hundred thirty (630) paragraph Complaint containing more than four hundred (400) paragraphs of "facts" offered in support of five (5) Counts asserted by all fifty (50) state Plaintiffs, as well as twenty three (23) additional, fact-specific Counts, asserted by eleven (11) of those same state Plaintiffs. If Plaintiffs are to be believed, the claims at issue involve billions and billions of calls placed over a multi-year period from, by and through multiple carriers, to all fifty states. The allegations are allegedly based on documents and data obtained from myriad government or government designated parties, including the Industry Traceback Group, which, itself has at least twenty-nine (29) corporate members and a sizable staff, numerous state regulatory and law enforcement agencies comprised of hundreds of staff members, and a large number of *unnamed* private third parties (*e.g.*, YouMail) who provided material data and support to the Plaintiffs. Indeed, there is little doubt that the number of persons and entities with relevant, if not essential, knowledge of the facts directly associated with the complaint numbers in the hundreds.

In contrast, Plaintiffs allegations are directed at a single LLC, owned and controlled by a single individual, and a single independent contractor.

In this context, any suggestion that the legitimate discovery needs of Plaintiffs and Defendants are in any way comparable, or that Defendants' rights to discovery—

particularly depositions—should be capped at a level that is only sufficient to meet Plaintiff's needs, is nothing short of absurd.

## I. NATURE OF THE CASE AND DEFENSES

As set forth in Plaintiffs Case Management Plan, Plaintiffs filed this action against Avid Telecom, in its corporate capacity, and against Lansky and Reeves. All Plaintiffs joined Counts I through V of the Complaint, which alleged violations of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310 *et seq.*; the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* and its implementing rule, 47 C.F.R. § 64.1200; the Truth in Caller ID Act ("TCIA"), 47 U.S.C. 9 § 227(e) and its implementing rule, 47 C.F.R. § 64.1604. Eleven Plaintiffs alleged violations of state laws.

Defendants moved to dismiss on various grounds, including the absence of jurisdiction, and for a failure to state a claim. The Motion to Dismiss was denied, with the exception of the alter ego claim which, after Plaintiffs failed to file an amended complaint providing supporting facts, was granted as to Lansky.

Defendants answered the complaint, essentially denying all of the material factual allegations. Defendants' Answer included the following affirmative defenses: (i) **Due Care** (*i.e.,* that Defendant has established and implemented, with due care, reasonable practices and procedures, consistent with all then existing rules and regulations, to prevent telephone solicitations; (ii) **The Industry Traceback Group Legal Authority** (*i.e.,* that The Industry Traceback Group does not have the legal authority to determine if a call is illegal; (iii) **Tracebacks are Not Notice of Illegal Activity** (*i.e.,* that the issuance of a

3

traceback by the Industry Traceback Group does not constitute a determination of illegality or notice of illegality; (iv) **Failure to State a Claims upon which Relief may be Granted Against Avid Telecom, in its corporate capacity and Michael Lansky and Reeves in their Personal Capacities**; (v) **Statute of Limitations** (*i.e.,* that the claims of the Plaintiffs are barred, in whole or in part, by the applicable statute of limitations; (vi) **Consent** (*i.e.,* that the claims of the Plaintiffs are barred, in whole or in part, by the consent of third parties; (vii) **Laches** (*i.e.,* that the claims of the Plaintiffs are barred, in whole or in part, by the doctrine of laches; (viii) **Unclean Hands** (*i.e.,* that the claims of the Plaintiffs are barred, in whole or in part, by their unclean hands; (viii) **Conduct** (*i.e.,* that the claims of the Plaintiffs are barred, in whole or in part, by the conduct by one or more Plaintiffs; (ix) **Estoppel** (*i.e.,* that the claims of the Plaintiffs are barred, in whole or in part, by the doctrine of estoppel; (x) **Unconstitutionality of Statutory Damages** (*i.e.,* that statutory damages would constitute an excessive fine or penalty without the substantive or procedural safeguards guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution; and (xi) **Standing** (*i.e.,* that Plaintiffs have not and cannot show a concrete and particularized invasion of a legally protected interest and that he, and the proposed class, are in the zone of interests the TCPA is intended to protect.

II. **DEFENDANTS' PLAN FOR FACT DISCOVERY**

Defendants intend to seek written and oral discovery from parties, non-parties and experts on all topics identified in the Complaint and in Defendants' Affirmative

Defenses. These parties and non-parties from whom discovery will be sought included the following:

**Witnesses from the Plaintiff Lead Group**. These witnesses (including, potentially, counsel as to non-privileged matters) are likely to have discoverable information as to the factual basis of the Counts common to all fifty (50) states (*i.e.,* Counts I through V). The topics for discovery will include: (i) the methodologies by which information and documents were obtained, specifically including: (a) the methodologies by which data was obtained from, for example: (x) the Industry Traceback Group (*e.g.,* whether improper or illegal payments were made or received by the Industry Traceback Group to obtain call data or as compensation for issuing tracebacks), (xx) YouMail (*e.g.,* whether data was taken/scraped from individual customer accounts in an illegal or improper manner; (xxx) other carriers; (xxxx) zipDX and David Frankel; (ii) whether illegal means were utilized (*e.g.,* the illegal recording of calls without consent, the improper placement of non-residential number onto the DO NOT CALL list, the illegal scraping of personal voicemail data and/or the transmission of illegally obtained data over the interstate wire) to gather data used in the Complaint; and (iii) when and the methodologies by which personal financial information regarding Plaintiff Lansky was obtained.

**Witness(es) from Each of the Eleven (11) States that Asserted Claims Arising under State Law**. These witnesses (including, potentially, counsel as to non-privileged matters) are likely to have discoverable information as to the factual basis

of the Counts that arise under their state laws (*i.e.,* Counts VI through XIII). As with the fifty (50) states' claims, the topics for discovery will include: (i) the methodologies by which information and documents were obtained, specifically including: (a) the methodologies by which data was obtained from, for example: (x) the Industry Traceback Group (*e.g.,* whether improper or illegal payments were made or received by the Industry Traceback Group to obtain call data or as compensation for issuing tracebacks), (xx) YouMail (*e.g.,* whether data was taken/scraped from individual customer accounts in an illegal or improper manner; (xxx) other carriers; (xxxx) zipDX and David Frankel; (ii) whether illegal means were utilized (*e.g.,* the illegal recording of calls without consent, the improper placement of non-residential number onto the DO NOT CALL lists, the illegal scraping of personal voicemail data and/or the transmission of illegally obtained data over the interstate wire) to gather data used in the Complaint; and (iii) when and the methodologies by which personal financial information regarding Plaintiff Lansky was obtained. Written and oral discovery will also be taken from witness(es) from each of the third parties identified in the complaint, including carriers, other parties originating, transiting and/or or receiving calls from Avid Telecom, The Industry Traceback Group, USTelecom (the organization under which The Industry Traceback Group operates), and other third parties with knowledge of facts associated with Avid Telecom's operations. As appropriate, Defendants will also take written and oral discovery from parties familiar with Reeves relationship to Avid Telecom and Lansky's finances. In addition,

testimony will be taken regarding the source of the data utilized in each state count; i.e., whether it was obtained by each state or whether those data were obtained and provided by The Lead Group or by another third party.

In addition, Defendants reserve the right to take discovery from each of the categories of witnesses identified in Plaintiffs' Case Management Report, on each of the matters identified in that Report, as well any following additional matters on which they are likely to have discoverable information.

**<u>Customer Witnesses Who Allegedly Received the Calls at Issue</u>.** To the extent that discovery is allowed notwithstanding the hearsay rule, where a customer is likely to have discoverable information, discovery of customer witnesses include inquiries into: (i) whether the customer had, in fact, provided consent to receive the call; (ii) whether the customer phone was a landline or mobile phone; (iii) whether the phone was used for business or personal matters; (iv) whether the customer ever made a complaint directly to Avid Telecom and, if so, the response, (v) whether and with whom the customer had filed the complaint; and (vi) whether the phone had been listed by the customer on the DO NOT CALL LIST.

**<u>Witnesses with Knowledge of Defendants' Business Practices</u>.** In addition to the matters discussed above and/or in Plaintiffs' Case Management Report, Defendants intend to take discovery and/or offer testimony from witnesses, including Defendants, and all other persons associated with Defendants regarding all aspects of their relationship to Avid Telecom aspects of the operation of Avid Telecom. The persons

who are likely to have discoverable information regarding Avid Telecom's business practices and relationships with third parties include various customers and carriers, Avid Telecom's switch services provider, The Industry Traceback Group (*e.g.,* regarding Avid Telecom's response to tracebacks) and various state Attorneys General (regarding Avid Telecom's compliance with subpoenas). The topics on which discovery would address include, without limitation: (i) Avid Telecom's contracts and contracting practices; (ii) Avid Telecom's regulatory compliance and practices, including Know Your STIR/SHAKEN and Robocall Mitigation Plans; (iii) Avid Telecom's denials of service to prospective customers; (iv) Avid Telecom's termination of service to customers upon knowledge of potentially improper practices; and (iv) denials of service to international carriers.

**Ownership and Control of Defendants.** Defendants intend to take discovery and/or offer testimony from witnesses who are likely to have discoverable information regarding Avid Telecom's corporate matters, finances and operations, including its relationships with its independent contractors. These persons include each of the Defendants and the company accountant.

**Financial Institutions**. Defendants are particularly interested in taking discovery from financial institutions who apparently provided company and personal financial information to Plaintiffs without prior notice to the relevant Defendant(s). To the extent these data were provided by a financial institution pursuant to subpoena following the filing of the complaint—without prior or subsequent notice to the relevant Defendant(s)

as required by law and/or by the FRCP 45(a)(4) —discovery may also be required from the Plaintiff(s)' counsel who issued the subpoena.

**The Industry Traceback Group**. The Industry Traceback Group is an organization within USTelecom that has been designated by the FCC to manage the traceback process. On information and belief, much of the data, specifically including without limitation the 329 tracebacks referenced in the Complaint were provided by the Industry Traceback Group. Remarkably, while the FCC requires that the third party responsible for the issuance of tracebacks be "independent," nonetheless, the Industry Traceback Group is comprised *exclusively* of carriers who compete directly with Avid Telecom. As such, at best, just based on their competitive position, their independence is subject to question. The manner in which they manage the traceback process raises material additional concerns. As the Complaint relies heavily on these 329 tracebacks, the reliability of the data they provided to Plaintiffs is plainly at issue. Thus, there can be no doubt that the, members of The Industry Traceback Group, The Industry Traceback Group itself as well as USTelecom, which is the governing entity, as entities and through their officers have material discoverable evidence. The topics on which such discovery will be taken include, *inter alia*: (i) the creation of the organization; (ii) rules regarding membership; (iii) the application of those rules to prevent smaller entities, like Avid Telecom, form becoming members; (iv) the relationship between The Industry Traceback Group and USTelecom; (v) the identities of the members of The Industry Traceback Group; (vi) The Industry Traceback Group's policies and procedures

governing the issuance of tracebacks; (vii) facts refer to or relate to the reason(s) that each traceback was issued to Avid Telecom; (viii) the relationship between The Traceback Group and YouMail; (ix) data evidencing differences between the standards applied to the issuance of tracebacks to members of The Industry Traceback Group and to non-members (including on calls where a non-member received a traceback but a member did not; (x) the relationship between the FCC and The Industry Traceback Group; (xi) financial issues, including consideration received by the Industry Traceback Group for issuing tracebacks or to third parties for providing data; and (xi) representations made and documents provided to the FCC, Congress and other state and federal agencies regarding its operations and "independence." Among the persons at The Industry Traceback Group who are believed to have discoverable information on these topics include Josh Bercu (VP Policy & Advocacy and the person who issued many of the tracebacks to Avid Telecom) and Jonathan Spalter (USTelecom President & CEO).

**YouMail**.  As set forth in Plaintiffs' Case Management Plan, YouMail is a provider of customized voicemail, call handling and spam call-blocking services, the terms and conditions of services, trends and statistics of call analytics and audio recordings captured by services some of which may be calls initiated, transmitted or facilitated by the Defendants at issue in this case. On information and belief, YouMail provided some of the data that is relied upon in the Complaint as evidence of illegal calling. As set forth in Plaintiffs' Case Management Plan, YouMail is likely to have discoverable information relevant to Plaintiffs claims. The topics on which such

10

discovery will be taken from YouMail include, *inter alia*: (i) the data provided to Plaintiffs that is alleged to be associated with Avid Telecom; (ii) the names and telephone numbers of the customers associated with those data; (iii) the algorithm or search parameters that were used to identify calls that were deemed suspicious; (iv) the identities of all persons and/or entities to which those data were provided; (v) the legal authority under which YouMail undertook the searches of its customers' voice messages; (vi) any agreement(s) or subpoenas under or by which the production of data associated with Avid Telecom was provided to any third party, including The Industry Traceback Group and/or any Plaintiff; and (vii) whether consideration of any kind was received by YouMail from any third party, including without limitation the Industry Traceback Group (or any person associated with The Industry Traceback Group) in connection with any search performed. The person likely to have discoverable information is believed to be Alex Quilici.

## II.    DEFENDANTS' PLAN FOR EXPERT TESTIMONY

Defendants intend to retain expert witnesses who will provide testimony, *inter alia*, on the following topics:

**Technological and Operational issues in the Telecom Industry.** The technological and operational issues on which discovery will be sought include: (i) technologies and operational practices available at times relevant to this case to know if a carrier is receiving and transiting illegal robocalls; (ii) technologies available and operational practices available at times relevant to this case to mitigate or to block illegal

robocalls; and (iii) whether Avid Telecom utilized these technologies and operational practices (*e.g.,* to block more than 2 billion calls).

**Legal and Regulatory Issues**. The legal and regulatory issues on which discovery will be sought include: (i) Avid telecom's compliance with STIR/SHAKEN, Know Your Customer and other federal regulations as they existed and were modified during the relevant time period; (ii) the legal authority of the Industry Traceback Group to determine if a call is illegal, including whether the issuance of a traceback is a finding of illegality; (iii) whether recording inbound calls in states requiring two-party consent is legal and the impact of such illegal conduct on the use a of associated data; (iv) whether placing non-residential telephone numbers on the DO NOT CALL LIST is legal and the impact of such conduct on the use a of associated data; (v) whether scraping consumer from private voicemail is legal and the impact of such illegal conduct on the use a of associated data; (vi) whether making payments to or receiving payments from third parties in return for the issuance of a traceback is legal and the impact of such conduct on the use a of associated data; (vii) FCC rules and regulations regarding allowed practices for carriers to block calls; and (vii) FCC rules and regulations regarding customer consent to receive calls and who is responsible for determining if proper consent was provided.

**Data Analytic Issues.** The data analytic issues on which discovery will be sought include: (i) the methodology(ies) and assumptions used by Plaintiffs to conclude that certain calls were illegal or presumed to be illegal (e.g., was there actually proof of illegality for each call or were presumptive percentage and/or multipliers applied to

calculate the number of allegedly illegal calls); (ii) the methodology(ies) and assumptions used by individual state Plaintiffs to concluded that certain calls (e.g., calls to mobile phones) were actually terminated within their states and (iii) the methodology(ies) and assumptions used by Plaintiffs to conclude that consent has not been provided for calls alleged to be illegal.

### III. DEFENDANTS' PROPOSED MODIFICATIONS TO FRCP LIMITATIONS ON DISCOVERY

As set forth in Plaintiffs' Case Management Plan, the parties exchanged their initial Fed. R. Civ. P. 26(a)(1) disclosures and filed the Notice of Initial Disclosure on September 6, 2024. The parties were not able to reach an agreement on appropriate changes. As set forth above, Defendants face a Complaint containing more than four hundred (400) paragraphs of "facts" offered in support of five (5) Counts asserted by all fifty (50) state Plaintiffs, as well as twenty-three (23) additional, fact specific Counts, asserted by eleven (11) of those same state Plaintiffs. Given this reality, the modifications proposed by Plaintiffs are plainly inappropriate and prejudicial.

    A.    Interrogatories: Fed. R. Civ. 33 provides for a limit of twenty-five (25) interrogatories per party. We interpret that Rule to mean that Plaintiffs may serve 25 interrogatories to each of the three Defendants and that each of the three Defendants may serve 25 interrogatories on each of the 50 Plaintiffs. Defendants do not seek a modification of this Rule as described. Defendants, like Plaintiffs, reserve the right to seek an expansion of this

limitation through later stipulation of the parties or motion to the Court as necessary.

B.  Depositions: Defendants oppose the modification to Fed. Rule Civ. P. 30 to allow 20 depositions per side proposed by Plaintiffs. Given the massive difference in the number of Plaintiffs and the number of Defendants, and the sheer scale of the allegations made by Plaintiff—mostly based on access to data and information that is presently unavailable to Defendants—an equivalent limit of 20 depositions would be uniquely prejudicial to Defendants. It would allow Plaintiff to have nearly seven depositions for each Defendant while limiting Defendants to one deposition for every 2.5 Plaintiffs. And, this limit does not include the substantial number of customers, vendors, carriers, officials at The Industry Traceback Group, the FCC and various state regulatory and law enforcement agencies on which the Complaint relies. Defendants propose that the limitation be modified to allow a total of 40 fact depositions. This number would allow Defendants to take one fact deposition of a representative of each of the states that asserted a claim(s) based on federal law and one deposition of each of the Lead States (a total of approximately 18 depositions), leaving 22 depositions of customers, vendors, carriers, officials at The Industry Traceback Group, the FCC and various state regulatory and law enforcement

agencies.

C. More specifically, Defendants intend to conduct depositions including but not limited to the following parties, individuals or entities:

i. One fact deposition of each Plaintiff that filed a separate claim under state law (identifications to be determined).

ii. One fact deposition of each member of the Plaintiff Lead Group (identifications to be determined).

iii. One fact witnesses from SipNAV (the switch vendor), presumably Scott Presta.

iv. One or two depositions of Digital Media Solutions, presumably Tony Saldana and another unknown witness with specific knowledge of the customer acquisition and "consent" process.

v. Three to five depositions of The Industry Traceback Group personnel on matters specific to Avid Telecom and on the other matters identified herein, including Josh Bercu and other persons involved in the traceback process generally and specifically with respect to Avid Telecom.

vi. A deposition of USTelecom on issues related to its designation to handle the traceback process and on the other matters identified herein, presumably Jonathan Spalter.

   vii. Five to ten depositions of carriers, customers and vendors, including those identified in the Complaint.

C. Defendants agree that ESI should be produced in its native format in connection with individual discovery requests as set forth in Fed. R. Civ. P. 33 and 34, that the parties should confer as to any ESI that requires special consideration and that the parties will meet and confer regarding any specific ESI needs and disputes before seeking involvement of the Court.

D. Defendants agree that wo weeks following the Court's entry of the Case Scheduling Order, the parties will submit a proposed Protective Order for the Court's review setting forth procedures governing assertions of privilege or other applicable protection from disclosure. Pursuant to the previous agreement, the parties will confer prior to bringing any attorney-client privilege, work product, or other discovery issues or disputes to the Court.

E. Defendants propose the following case schedule:

   i. <u>Initial Disclosures</u>: Already exchanged by the parties on September 6, 2024;

   ii. <u>Addition of Parties or Amending Complaint</u> : 60 days following the entry of the Case Scheduling Order;

   iii. <u>Completion of Fact Discovery</u>: 9 months following the entry of the Case Scheduling Order. Defendants believe that the voluminous facts—most of which Plaintiffs presently have unique access—the large number of Counts (23), the number of Plaintiffs (50), the complexity of the legal issues and the significant number

of witnesses, fully justify a discovery period in excess of 180 days.

iv.   Disclosure of Expert Testimony:

- Initial Expert Testimony: 11 months following the entry of the Case Scheduling Order;

- Expert Discovery Responses: 30 days following the Initial Expert Testimony

- Rebuttal Expert Testimony: 60 days following the Disclosure of Initial Expert Testimony;

v.   <u>Disclosure of Witness Lists</u>: 30 days prior to trial;

vi.   <u>Dispositive Motions</u>: 30 days after the Disclosure of Rebuttal Expert Testimony;

vii.   <u>Pre-Trial Statements</u>: 21 days before trial; and

viii.   <u>Settlement Status Report</u>: 10 days after Disclosure of Rebuttal Expert.

F.   Evidentiary Hearings: Hearings on pending motions, such as a hearing to exclude unqualified expert or scientific evidence under the *Daubert* standard withing 30 days after Rebuttal Expert Reports are exchanged.

G.   Based on the information currently available, Defendants now anticipate being prepared for trial within 16 months after the entry of the Case Scheduling Order. Defendants anticipate needing at least 10 trial days following the close of Plaintiffs' affirmative case. Each party reserves the right to seek an

17

extension of the trial date based on the progress of discovery, including the cooperation of third-party witnesses.

.  Respectfully submitted

**Technology Law Group, LLC**

/s/ Neil S. Ende
_____
Neil S. Ende
*(Pro Hac Vice)*
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC  20015
nende@tlgdc.com
202-895-1707

Dated: October 18, 2024

*Attorneys for Defendants*

**Certificate of Service**

I hereby certify that on October 18, 2024, I caused the foregoing Defendants' Case Management Plan to be filed and served on Plaintiffs electronically via the District Court's CM/ECF system to all counsel of record.

_____
Silsa Cabezas