# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, *ex rel.* Kristen K. Mayes, Attorney General, et. al.;<br><br>Plaintiffs,<br><br>v.<br><br>Michael D. Lansky, L.L.C., dba Avid Telecom; et al.;<br><br>Defendants. | CASE NO. CV-23-00233-TUC-CKJ<br><br>**ORDER ON PROTOCOL GOVERNING ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**<br><br>(Assigned to the Hon. Cindy K. Jorgenson) |

The Court recognizes that discovery in this action is likely to include electronically stored information as well as paper documents. The Court finds that a protocol governing the production of electronically stored information and paper documents will assist the parties in facilitating document production and disclosures. This Protocol shall remain in effect unless modified through written agreement of the Parties or through Court intervention.

Accordingly, **IT IS ORDERED** that the Plaintiffs' Motion (Dkt. # 116) is granted and the following provisions shall be enforced.

A.   **GENERAL AGREEMENTS**

1. **General**

    a.   This Protocol for Electronically Stored Information and Hard Copy Documents (the "Protocol") governs the production of all Electronically Stored Information ("ESI") and paper (hardcopy) discovery in this matter ("Action").

    b.   The Parties agree that should a dispute arise out of the implementation of this Protocol, the Parties shall meet and confer in an attempt to resolve the dispute. All disputes arising out of this Protocol shall be resolved with reference to the agreements contained herein and the Federal Rules of Civil Procedure.

    c.   Nothing in this Protocol shall limit a Party's right to object to any discovery request pursuant to any applicable rule or law, or to modify this Protocol through agreement of the Parties or through Court intervention.

    d.   A Party producing documents or ESI will be referred to as the "Producing Party" and a Party receiving documents or ESI will be referred to herein as the "Receiving Party".

2. **Proportionality of Discovery**

    a.   Pursuant to Federal Rule of Civil Procedure 26(b)(1), the Parties agree that discovery in this Action will be proportional to the needs of the case. To this end, the Parties will work together in good faith to identify appropriate limits on discovery. These limits may include the number of custodians, discoverable data sources, the relevant time period, the permissible scope of requests for production, and the permissible scope of requests for emails and other ESI.  The Parties agree that working in good faith means cooperating in good faith throughout this matter, including by meeting and conferring over any disagreements as may arise during the course of discovery before filing a motion to compel discovery. The Parties agree that whenever possible, requests for production of ESI, including requests for emails, shall be reasonably targeted, clear, and as specific as possible, rather than general discovery.

b. <u>Custodians</u>

 i. The Parties shall meet and confer to agree upon the identity of any Key Custodians (each, a "Key Custodian", and collectively, the "Key Custodians") and relevant non-custodial data sources. Should the Parties, through the discovery process, identify a legitimate need to conduct additional reasonable and proportional discovery related to new Key Custodians, the Parties shall meet and confer to agree upon additional discovery. If an agreement between the Parties is not reached regarding the identity of the Key Custodians, the Parties will seek Court assistance to resolve the issue.

 ii. The Parties agree to take reasonable steps to identify and search the sources of potentially relevant and responsive information of each Key Custodian and non-custodial data source for collection, including but not limited to hard copy files, texts, e-mail repositories, and folders within shared network drives in which each Key Custodian places or maintains documents.

c. <u>Discovery Concerning Preservation and Collection Efforts</u>. If, based upon good faith, there is a reasonable dispute concerning the scope of a Party's preservation or collection efforts, the Parties agree to meet and confer on the basis for such discovery, including the need for the requested discovery, relevance to claims or defenses of the action, proportionality of the proposed discovery, and the suitability of alternative means for obtaining the information.

d. <u>Non-Discoverable ESI</u>. Pursuant to the proportionality standards under Fed.R.Civ.P. 26(b)(1), and absent a Party's specific written notice for good cause, the following categories of ESI are presumed to be inaccessible and not discoverable:

 i. ESI deleted in the normal course of business prior to the Party's preservation obligation in this matter;

      ii.    Backup data files that are (a) maintained in the normal course of business for purposes of disaster recovery, including but not limited to backup tapes, disks, SAN, and other forms of media, and (b) substantially duplicative of data that are accessible elsewhere;

      iii.    Deleted, slack, fragmented, or unallocated data only accessible by forensics;

      iv.    Random access memory (RAM) or temporary files that are difficult to preserve without disabling the operating system;

      v.    On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

      vi.    Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

      vii.    Data remaining from systems no longer in use that is unintelligible on the systems in use;

      viii.    De-NISTing - Software files included on the National Institute of Standards and Technology (NIST) Modern RDS (minimal) list obtained from https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download/current-rds;

      ix.    Operating System files that do not store user-created content (e.g. CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS, etc.).

      e.    <u>Disaster-Recovery Backup Data</u>. Unless the data is more readily accessible elsewhere as contemplated by 2.d.ii. above, each Party shall provide the other with information regarding any applicable data retention procedures, then in place, which may impact potential discovery requests or ESI in this matter. Otherwise, absent an objection from either Party, agreement of the Parties, or Court order, no Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes.

### 3. Designation of Discovery Requests

Productions of hardcopy documents and ESI in the reasonably usable form set out in this Protocol, including Appendix A, should be organized and labeled to correspond to the categories in the requests.

### 4. Clawback of Privileged Information

The production and clawback of privileged information is governed by the Protective Order entered in this matter (Dkt. 109) or as it may be amended by the Court.

## B. ELECTRONICALLY STORED INFORMATION

### 1. Production in Reasonably Usable Form

a. <u>Rolling Production.</u> The Parties agree that ESI will be produced within five (5) days of serving written responses, unless the parties mutually agree otherwise.

b. <u>Reasonably Usable Form</u>. The Parties shall produce ESI in a reasonably usable form. Except as stated in paragraphs B(2) through B(3) below, or as agreed hereafter by the Parties, such reasonably usable form shall be the single-page, black and white, Group IV TIFF-image format with extracted or OCR text and associated metadata set out in Appendix A, which is incorporated in full in this protocol. Each Group IV TIFF version of an electronic document will be created directly from the corresponding native file. If the Receiving Party, for good cause explained in the request, seeks production in native format of specifically identified ESI produced originally in Group IV TIFF-image form, the Producing Party shall respond reasonably and in good faith to any such request.

c. <u>Redactions</u>. The Producing Party may redact from any Group IV TIFF image, metadata field, or native file, material (i) that is protected from disclosure by any applicable privilege or immunity, (ii) governed by applicable privacy law or regulation, or (iii) that any Protective Order entered in this Action allows to be redacted. The basis for each redaction shall be annotated (*i.e.*, Redacted - Privacy, Redacted – Attorney Client Privilege, Redacted – Work-Product, etc.) on the redaction itself, to reflect the basis for such redaction(s). Redactions made in accordance with these provisions need not be

included on a privilege log or redaction log. Following the production of documents redacted for privilege, the parties may meet and confer on any reasonable requests from the Receiving Party for privilege log entries related to individual documents redacted for privilege if the redaction(s) are so substantial that they remove the context necessary to evaluate the appropriateness of the redaction(s) and would require a description to allow the receiving party to assess the privilege claim.

       d.    <u>Color</u>. Where an original document contains color, the Parties shall make reasonable efforts to produce such documents in color as single page, JPED images. Parties will honor reasonable requests for re-production of any color images produced in black and white TIFF images.

**2. Electronic Spreadsheets, Word Processing, Multimedia and Presentation Files**

       a.    To the extent possible, spreadsheet file, including without limitation Microsoft Excel Files (*.xls or *.xlsx), shall be produced in native format. Otherwise, such files shall be with related searchable text, metadata, and bibliographic information, and shall display any hidden rows, columns, and worksheets, if any.

       b.    To the extent possible, word-processing files, including without limitation Microsoft Word Files (*.doc and *.docx) shall be produced in TIFF format, with any tracked changes, comments, or hidden text displayed

       c.    Except if redacted, photographs, video and any other audio/visual multimedia files will be produced in native format. Such files may include, but are not limited to video files (*e.g.*, .wma, .mov, .mpg, .wmv, .avi, and .asf), Microsoft PowerPoint files (.ppt and .pptx), and computer animation files (*e.g.*, .avi, .gif, .mpg, .gif, .mpg, .mpeg, .wmv).

       d.    When producing documents in native format, the Producing Party shall insert into the production a "placeholder" file to reflect that the document has been produced natively.

e.  Any produced native file will be named according to the first Bates number of the corresponding electronic document (*e.g.*, [Begin Bates].xlsx).

3. **Structured Data from Enterprise Databases, Database Management Systems and other Structured Data**

To the extent possible, ESI in an enterprise database or database management system (*e.g.*, Oracle, SQL server, DB2) will be produced in the reasonably usable Group IV TIFF-image form described in Appendix A, in an already existing and reasonably available report format. If an existing report form is not reasonably available, the Parties shall export from the original database discoverable information in a format compatible with Microsoft Excel or Microsoft Access, and the information shall be produced in that native format.

4. **Additional Procedures for Native Format Files**

a.  Procedures for assigning production numbers and confidentiality information to files produced in native format are addressed in Appendix A, Paragraph A.14.

b.  Any Party seeking to use, in any proceeding in this Action, files produced in native format shall do so subject to the following:

   i.  If the native file has been converted to Group IV TIFF-image or hardcopy, the original production number and confidentiality designation shall be stamped on each page of the resulting Group IV TIFF-image or hardcopy document representing the original native-format file, with a suffix added to the production number to identify the particular page in the file (e.g., XYZ00001_001).

   ii. If the file will be used in its native format, the Party seeking to use the native file shall first provide to other Parties, sufficiently in advance of such use that the Producing Party can confirm that the file to be used is the same as the file produced, both the production number and the MD5 or SHA-1 hash value of the file.

      iii.    Use of a file in native format, or use of a Group IV TIFF-image or hardcopy document representing the original native-format file shall constitute a representation that the file being used is an accurate and complete depiction of the original native-format file.

**5.**    **Use of Search Terms and Filters**

    a.    To contain costs in the identification of relevant ESI for review and production, the Parties agree to meet and confer to discuss the use of reasonable search terms, proximity filters, file types among other possible filters, or the use of advanced search and retrieval technologies, such as predictive coding or other technology-assisted review.

    b.    In meeting and conferring on the use of search terms and filters, the Producing Party shall first disclose its search terms or filters to the Receiving Party, and if the Receiving Party believes in good faith that use of the disclosed search filters may result in deficiencies in production, the Receiving Party may make prompt, reasonable requests for different or additional searches/terms. The Producing Party shall respond reasonably to such requests and meet and confer if necessary. Any proposed search filters shall be tailored to the particular claims and defenses at issue and proportional to the needs of the case, in accordance with the Federal Rules of Civil Procedure.

    c.    The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Party from withholding such file from production on the grounds that the file is not responsive, protected from disclosure by applicable privilege or immunity, governed by the applicable privacy laws or regulations, or that any Protective Order entered in this Action allows the file to be withheld.

    d.    Nothing in this section shall limit a Party's right to reasonably seek agreement from the other Parties or a court ruling to modify previously agreed-upon search terms.

**6.  De-Duplication**

"Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (*i.e.*, both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart document families. Attachments to parent documents may not be deduplicated against a duplicate standalone version of the attachment. Similarly, standalone versions of the documents may not be suppressed if a duplicate version exists exclusively as an attachment. When the Duplicate ESI exists in the files of multiple custodians, all such custodians shall be listed in the ALLCUSTODIANS field identified in Paragraph A.13(c) of Appendix A.

**C.  DOCUMENTS THAT EXIST IN ONLY HARDCOPY (PAPER) FORM**

To the extent documents exist solely in hardcopy (paper) form, a Producing Party should scan and produce such documents in accordance with the procedures set out in Appendix A.11. Such paper documents shall be produced as Group IV TIFF images with related Optical Character Recognition ("OCR") text files and a cross-referenced load file, according to the specifications set forth in Appendix A11.

**D.  CONFIDENTIALITY**

The Parties agree to incorporate the provisions of the Protective Order, (Dkt. 109) concerning protection of "Confidential Information" as that term is defined in the Protective Order, any further orders by the Court, and any written agreements between the parties concerning the protection or handling of otherwise sensitive information not specifically addressed under the Protective Order. For the avoidance of doubt, nothing in this Stipulation shall supersede or alter any discovery confidentiality agreement and/or protective order concerning protection of confidential or otherwise sensitive information that may be entered by the Court.

E.   **COSTS OF PRODUCTION**

Each Party shall bear its own costs of production, but no Party waives the right to seek reimbursement in the future for costs of production, pursuant to the Federal Rules of Civil Procedure, other applicable rules, or other applicable case law.

F.   **CLAIMS OF PRIVILEGE**

   1.   **Privilege Log**

       a.   Any document falling within the scope of any request for production or subpoena that is withheld on the basis of a claim of attorney-client privilege, work product, or any other claim of privilege or immunity from discovery is to be identified by the Producing Party in a privilege log. Such privilege log shall be provided to the Receiving Party within thirty (30) days of production by a Producing Party, unless otherwise agreed to by the parties.

       b.   The privilege log must contain the following information for each document:

           i.   A document identification number and/or bates number;
           ii.  the date of the document or communication;
           iii. the identity of the document author;
           iv.  and, if the document is an email, from and to whom the communication was sent and who, if anyone, was carbon or blind-copied;
           v.   an indication of all authors or recipients of the document who are attorneys and/or legal staff;
           vi.  unless itself privileged, the subject and/or title of the withheld document;
           vii. unless itself privileged, the filename of the withheld document, including file extension;

        viii.    a statement of the ground(s) alleged for withholding such document; and

        ix.    a description of the withheld document, communication, or tangible thing in a manner that, without revealing information claimed privileged or protected, will enable the Receiving Party to assess the validity or efficacy of the privilege claim.

    c.    The Parties further agree that, in order to promote efficiency and cost reduction, documents may be logged on a categorical basis ***in certain circumstances***, including in scenarios where the privileged documents in question are so voluminous that to require a producing party to produce such privilege log entries on a document-by-document basis would prove unduly burdensome. The Parties should identify categories into which the withheld documents can be arranged that will permit the requesting party to assess the basis for privilege and the general subject matter of documents in any such category. The categorical log should, at a minimum, include the following: (i) date ranges of withheld documents; (ii) list of authors/recipients of such documents; (iii) document type(s); (iv) category description; (v) privilege basis(es); and (vi) approximate number of documents withheld in any given category. Should a requesting party have a good faith reason to believe a particular category on a categorical privilege log contains responsive non-privileged information, the requesting party may request, and the producing party will not unreasonably refuse, to create a privilege log for that category in compliance with Fed.R.Civ.P. 26(b)(5).

    d.    Notwithstanding a claim of privilege, any document containing both privileged and non-privileged matter must be produced with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself. For emails, the bibliographic information (to/from/cc/bcc/date sent/time sent/subject) shall not be redacted unless the information is itself privileged.

   e. Privileged communications between or among counsel involving the facts that form the basis of or are related to the allegations set forth in this Action do not need to be identified on a privilege log. Additionally, communications between or among counsel or experts retained for the purpose of this litigation that post-date the issuance of the civil investigative demand by the Office of the Indiana Attorney General to Michael D. Lansky, L.L.C., dba Avid Telecom on August 1, 2022, need not be placed on a privilege log.

   f. Following the receipt of a privilege log, a Receiving Party may identify, in writing, the particular documents that it believes require further explanation within thirty (30) days of receipt of the privilege log. Within thirty (30) days of such an identification, the Producing Party must respond to the request. If a Party challenges a request for further information, or if the Receiving Party has issues with any further explanation, as the case may be, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter shall be brought to the Court.

**IT IS SO ORDERED**.

Dated this 9th day of July, 2025.

                _____
                Honorable Cindy K. Jorgenson
                United States District Judge

# APPENDIX A

## STIPULATION REGARDING ELECTRONICALLY STORED INFORMATION AND HARD COPY PROTOCOL

A.1. <u>Image Files</u>. Files produced in TIFF image format will be single page black and white TIFF files at 300 DPI, 8 ½ x 11-inch page size, Group IV compression. To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Each TIFF file will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 TIFF files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

    a)     be consistent across the production;

    b)     contain no special characters; and

    c)     be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with a 6-digit number (*e.g.*, ABC_000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2. <u>File Text</u>. Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per TIFF image). Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted TIFF image will be OCR'd and file-level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file

named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

A.3.  <u>Unitization.</u> A unitization file, in standard format (*e.g.*, Concordance, Opticon, Summation DII, or the like) showing the Bates number of each page, the appropriate unitization of the documents, and the entire family range, will accompany each Group IV TIFF document. The unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. The relationship of documents in a document collection (*e.g.*, cover letter and enclosures, email and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process. If more than one level of parent-child relationship exists, documents will be kept in order, but will be treated as children of the initial parent document. Such information shall be produced in the load file, in a manner to enable the parent-child relationship among documents in a document collection to be reconstituted by the Receiving Party in commercially available document management software such as Concordance, Relativity, or Everlaw.

A.4.  <u>Parent-Child Relationships</u>. The Parties agree that if any part of a document, or any attachment thereto, is responsive, the entire document and all associated attachments will be produced, with the exception of documents that must be withheld and logged based on privilege or work-product protection, or redacted. Such parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.13 below.

A.5.  <u>Dynamic Fields</u>. Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.6. <u>English Language</u>. To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A.7. <u>Embedded Objects and Hyperlinked documents</u>. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access, and PDF. To the extent reasonably possible, objects with those identified file types shall be extracted as separate files or produced as attachments to the file in which they were embedded. To the extent possible, any hyperlinked documents or files upon which the contents of the parent rely for context, should be produced as separate, attached documents. Following production of documents where such embedded objects or hyperlinked documents could not be extracted or produced, the Parties may meet and confer on reasonable requests for this information.

A.8. <u>Compressed Files</u>. Compressed file types (*i.e.*, .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.9. <u>Encrypted Files</u>. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted. This provision does not require a forensic level tool or password cracking software to be utilized to decrypt a document. The Parties agree to meet and confer in good faith to discuss any encrypted file that could not be unencrypted under this provision.

A.10. <u>Fixed Notes</u>. For documents that contain fixed notes (*e.g.*, "post-it notes"), the pages will be scanned or converted both with and without notes and those pages will be treated as part of the same document. If the burden on the Producing Party associated with production of documents with fixed notes becomes unreasonable, the Parties agree to meet and confer on the requirements of this subparagraph.

A.11. <u>Scanned Hardcopy Documents:</u>

    a) In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hard copy documents should be logically unitized).

    b) OCR for scanned images of hard copy documents should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

    c) In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

A.12. <u>Production Numbering</u>. In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each TIFF image will have its assigned production number electronically "burned" onto the image.

A.13. <u>Data and Image Load Files</u>.

    a) <u>Load Files Required</u>. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

b) <u>Load File Formats</u>.

  i. Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, either ABC001.dat or ABC001_metadata.dat would be acceptable.

  ii. Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

  iii. Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

c) <u>Fields to be Included in Data Load File</u>. For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions. The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into TIFF images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.

**METADATA TABLE OF REQUESTED FIELDS**

| Field Name | Field Description | Field Type |
|---|---|---|
| Volume Name | Production volume number (e.g., ABC001-001) | Note Text |
| Begin Bates | Start Bates (including prefix) -- No spaces or special characters | Note Text |
| End Bates | End Bates (including prefix) - No spaces or special characters | Note Text |

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5 | Family Range | Range of the Begin Bates value of the parent record to the End Bates value (including prefix) of the last child record (for example, ABC-JD-00001201 ABC-JD-00001220); populated for all documents in the group. Empty if the record is NOT in family grouping | Note Text |
| 6<br>7 | BeginFamily | Parent record's BEGDOC#, including prefix (populated ONLY in child records) | Note Text |
| 8 | Pages | Page count | Integer |
| 9<br>10<br>11 | Redacted | User-generated field that will indicate redactions. "X," "Y," "Yes," "True," are all acceptable indicators that the Document is redacted. Otherwise, blank. | Multi-Entry |
| 12<br>13 | Custodian | Custodian(s) / source(s) - format: Last, First or ABC Dept | Multi-Entry |
| 14<br>15 | All Custodians | Custodian(s) / source(s) - format: Last, First or ABC Dept | Multi-Entry |
| 16<br>17 | Time and zone | The Time and Zone from which the native file was collected. | Note Text |
| 18<br>19 | From | Author of the Email or Calendar item (as formatted on the original) | Note Text |
| 20<br>21 | To | Recipients of the Email (as formatted on the original) | Multi-Entry |
| 22<br>23<br>24 | Cc | Names of the individuals (All recipients) who were copied on the Email (as formatted on the original) | Multi-Entry |
| 25<br>26 | Bcc | Names of the individuals (All recipients) who were blind-copied on the Email (as formatted on the original) | Multi-Entry |
| 27 | Subject | Email or calendar subject | Note Text |

| | | |
|---|---|---|
| Date Sent | Date the Email was sent. Format: DD.MM.YYYY | Date |
| Time Only | Time Email was sent -- Format: HH:MM:SS (use 24 hour times, e.g., 13:32 for 1:32 pm; time zone indicators cannot be included) | Time |
| Date Received | Date Email was received. Format: DD.MM.YYYY | Date |
| Message ID | Proprietary email database/mailstore/post office file associated with centrally managed enterprise email servers. Microsoft Outlook PST EntryID, the UniqueID (UNID) for Lotus Notes, equivalent value for other proprietary mailstore formats. | Note Text |
| Conversation Index | Email Thread Identification | Note Text |
| Importance | Email flag indicating priority level set for message | Note Text |
| Date Created | Date electronic file was created. Format: DD.MM.YYYY | Date |
| Date Saved | Date native file was last modified. Format: DD.MM.YYYY | Date |
| Author | Author field value extracted from the metadata of a native file | Note Text |
| File Path | File path to native file as it existed in original environment | Note Text |
| Native Path | File path location to the current native file location on the delivery medium | Note Text |

A.14. <u>Files Produced in Native Format.</u> Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC_000002_Confidential." For each native file produced, the production will include a TIFF image slipsheet indicating the production number of the native file

and the confidentiality designation, and stating "File Produced Natively." To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.15. <u>Production Media.</u> Unless otherwise agreed, documents and ESI will be produced on external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

A.16. <u>Production of Non-Party discovery.</u> Unless otherwise agreed, any ESI or paper discovery received by a party from any Non-Party in this matter (as defined in the Protective Order) pursuant to subpoena, or other document request, may be circulated to all other parties in accordance with A. 15. above, without any additional processing by the party circulating such ESI or paper discovery, or such discovery may be produced in accordance with this Protocol. In addition, as contemplated by, and in accordance with Paragraph II. 10. of the Protective Order, any party circulating such discovery shall circulate it in accordance with any applicable confidentiality designations prescribed by such Non-Party in writing or otherwise.

A.17. <u>Encryption of Production Media</u>. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.