Neil S. Ende, Esq.
*nende@tlgdc.com*
Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
Telephone: (202) 895-1707
Attorneys for Michael D. Lansky,
Michael D. Lansky, LLC dba Avid Telecom

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

_____

State of Arizona, et al.,
Plaintiffs,

v.

Michael D Lansky LLC, et al.,
Defendants.

_____

## MOTION TO REVISE DISCOVERY SCHEDULE
## PURSUANT TO RULE 54(b)

# Table of Contents

**INTRODUCTION**........................................................................................................... 1

**ARGUMENT** .................................................................................................................. 6

   A.   The Scheduling Order Must Be Revised As Allowed Under FRCP Rule 54 ........................... 6

   B.   The Limitations Imposed by the Scheduling Order are Contrary to the General Rule Favoring Liberal Discovery and the Specific Requirements of FRCP Rule 26 ...................................... 9

   C.   The Scheduling Order Represents an Abuse of Discretion and a Denial of Due Process to Defendants……………………………………...………………………………………14

   D.   This Court has the Authority to Revise the Discovery Plan. .................................................. 16

**CONCLUSION** .................................................................................................................. 17

**Cases**

*Campion v. City of Tucson*, 256 Ariz. 256, 536 P.3d 1232 (Ct. App. 2023) ........................... 14

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper,* 254 F.3d 882, 889 (9th Cir. 2001) ...................................................................................................................... 16

*Dietz v. Bouldin*, 579 U.S. 40, 136 S. Ct. 1885, 195 L. Ed. 2d 161 (2016) ........................... 16

*Draper v. Gentry*, 255 Ariz. 417, 532 P.3d 1153 (2023) ........................................................ 16

*Englert v. Carondelet Health Network*, 199 Ariz. 21, 13 P.3d 763 (Ct. App. 2000) .............. 14

*Mittelstadt v. Burgess,* 563 P.3d 1168 (Ariz. Ct. App. 2025) ................................................. 10

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) . 9

*R.S. v. Thompson in & for Cnty. of Maricopa, 251 Ariz.* 111, 485 P.3d 1068 (2021) ............. 16

*Saxena v. Goffney,* 159 Cal.App.4th 316 (2008) .................................................................... 11

*Smith v. Dellaripa*, No. 1 CA-CV 23-0571, 2024 WL 3456950, at *3 (Ariz. Ct. App. July 18, 2024) ........................................................................................................................ 9

*State v. Schurz*, 176 Ariz. 46, 859 P.2d 156 (1993) ............................................................... 11

*Thoren v. Johnston & Washer,* 29 Cal.App.3d 270(1972) ..................................................... 11

*Thykkuttathil v. Keese*, 294 F.R.D. 597 (W.D. Wash. 2013) ................................................... 8

*Webb v. Omni Block, Inc.,* 216 Ariz. 349, 166 P.3d 140 (Ct. App. 2007) .............................. 15

**Rules**

Fed.Rules Civ.Proc.Rule 30(a)(2) ........................................................................................... 7

FRCP 26(b)(1)........................................................................................................................ 8

FRCP 37 ................................................................................................................................ 10

FRCP Rule 11 ................................................................................................................. 9

FRCP Rule 26 ................................................................................................................. 8

FRCP Rule 54 ................................................................................................................. 6

Rule 26 (b)(2)(C) ........................................................................................................... 10

Rule 26(b)(1) ................................................................................................................. 11

Rule 31 ........................................................................................................................... 8

Rule 54 ........................................................................................................................... 17

Rule 54(b) ...................................................................................................................... 5

1

**INTRODUCTION**

2      In its Scheduling Order, this Court has limited Defendants' discovery rights only to

3  a self-determined group of so-called Lead Plaintiff States,[1] and to the states that have filed

4  individual claims arising under state law.

5      The so-called Lead Plaintiff States are nothing more than a *self-determined* group

6  of Plaintiffs who have identified themselves as taking the lead in the litigation.  Some of

7  them appear to be doing so, some do not.  There is nothing in the complaint or in any other

8  documents that demonstrates or even suggests that the facts associated with Lead Plaintiff

9  States' claims are typical of the claims of the remaining Plaintiffs or that they are more

10  significant in scope.  To the contrary, the Complaint contains direct evidence that the states

11  experienced significantly different alleged interactions with Defendants, including a wide

12  variety in the number and kinds of calls.  *See, e.g.,* Complaint at para. 89.  Yet, the

13  Scheduling Order only allows Defendants to discover on the self-determined set of Lead

14  Plaintiff States along with the twelve State Law Claim Plaintiffs; it does not allow any

15  discovery on thirty-six (36) of their co-Plaintiffs each of whom are presenting claims based

16  on materially different facts.

17      The prejudicial impact of precluding all discovery on thirty-six Plaintiffs is apparent

18  on the face of the Complaint.  First, as noted, the Complaint contains no suggestion, let

19  alone evidence, that there is complete unity among all Plaintiffs in either the number of

20  illegal calls allegedly received, when they were received or the content of the calls.  For

---

[1] As we understand it, the current group of so-called Lead Plaintiff States are the following: Arizona, Indiana, North Carolina, and Ohio.

1

example, while Texas is *not* one of the so-called Lead Plaintiff States or one of the states with state law claims—and therefore is totally immune from any discovery—the Complaint alleges that Texas citizens received approximately eighty thousand (82,000) illegal calls.[2] See Complaint at para. 89.pp. The denial of Defendants' right to propound any discover on Texas means that Defendants are effectively immune from the obligation to disclose any facts underlying their claim to more than One Hundred Twenty-Three Million Dollars ($123,000,000) (*i.e.,* 82,000 calls x the statutory fine of $1500 per call[3]) in potential forfeitures. How are Defendants to defend themselves against this allegation where the Plaintiffs are affirmatively shielded by the Scheduling Order from the obligation to produce even a single document supporting their claims?[4] The simple answer is that because the facts associated with Texas' claims are unique, the denial of all discovery on Texas will make it impossible for Defendants to effectively understand the basis of Texas's claims, let alone to have access to the documents necessary to mount an effective challenge.

The same is true of the remaining thirty-five (35) Plaintiffs who have not chosen to act as Lead Plaintiffs or to assert specific state law claims. The denial of Defendants' right to discover on these Defendants, once again, effectively precludes Defendants from having

---

[2] Notably, the Complaint contains literally no data of any kind regarding these alleged calls, remarkably, including the basis on which they were deemed to be illegal.
[3] 47 U.S. Code § 227.
[4] The absence of any discovery not only means that Defendants will be denied the ability to determine any of the parameters under which these states decided that the calls were "illegal", whether any of these calls were actually transited by Avid Telecom into Texas or even whether any of these calls were actually made.

1   any access to facts alleged to support more than more than Nine Hundred Million Dollars

2   ($900,000,000) in potential damages.[5]  How is this remotely fair?

3       The irrationality of randomly excluding the 36 states from all discovery obligations

4   is evident when one compares the factual claims made by Texas and North Carolina.  As

5   noted, Texas, which is not one of the so-called Lead States, alleges that its citizens received

6   approximately eighty thousand (82,000) illegal calls.  In comparison, North Carolina,

7   which is one of the Lead Plaintiff States, alleges that its citizens received slightly more

8   than half that number, approximately forty-six thousand (46,000) call.  *See* complaint [Dkt

9   1] at para. 89. pp. and 89. gg.  Thus, it is clear that the decision as to which states are subject

10  to discovery was not based on the number of allegedly illegal calls were received.  Instead,

11  Texas is protected from any discovery obligations by the mere fortuity (or tactical self-

12  serving decision) not to be a member of the Lead Plaintiff squad.

13      The absence of any discovery not only means that the excluded Plaintiffs will be

14  denied complete visibility to any of the factors: (i) the factual basis on which they decided

15  that each of the referenced calls were "illegal" (including the critical question of

16  "consent"), (ii) whether any of these calls were actually transited by Avid Telecom; (iii)

17  whether any of these calls were actually transited by Avid Telecom *into an excluded state*,

18  (iv) or whether any of these calls that were actually transited by Avid Telecom *into an*

19  *excluded state* were answered in that state or at all; and (v) even whether any of these calls

20  were actually made at all. Given the materiality of all these facts, and many others, it is

---

[5] Defendants' concerns regarding the preclusion have been borne out as, to date, these thirty-six (36) Plaintiffs have flatly refused to respond to any discovery requests.

1  hard to conceive of a rational basis for the exclusion or to view the basis for the exclusion

2  anything other than arbitrary.

3      To be clear, unlike a class action, where all Plaintiffs are deemed to share a common

4  set of facts, that is demonstrably *not* the case here.  Indeed, Plaintiffs have not, because

5  they cannot, present any evidence that the same allegedly illegal calls were transited or

6  terminated by Avid Telecom to a called party in more than one state.   Indeed, as the only

7  information provided in the Complaint is that the calls were alleged transited on unknown

8  dates over a four-year period (*i.e.,* "since 2019") (Complaint at para. 89), in the absence of

9  any evidence from Plaintiffs, it is reasonable to assume that they were the same calls and

10  that discovery on one state will fully disclose facts relevant to all states.  Rather, it is clear

11  that for Defendants to defend themselves properly against each state's *federal and state*

12  *laws claims*, separate discovery on each state's claims is an absolute requirement.[6]

13      All of these facts lead to the inescapable conclusion that limiting discovery to the

14  Lead States and to the States with State Law Claims will completely deny Defendants the

15  ability to understand the factual basis of at least thirty-six (36) of the Plaintiff states' claims

16  regarding millions, if not billions, of calls.

17  Even worse, if possible, is that fact that all of the 36 Plaintiffs who are being excused

18  completely   from   any   discovery   obligations—allowing   them   to   make   outrageous

---

[6] The Court must keep in mind both that: (i) all of the Plaintiffs, including all of the 36 excluded states, certified by their signatures that they had a good faith belief that *every fact and legal claim* associated with their claims *arising under federal law* was true and correct; and (ii) each state identified separate calls that they allege to be illegal.  Thus, for the discovery process to be fair, each of the 36 excluded Plaintiffs must be subject to discovery that allows Defendants to obtain documents and facts that each Plaintiff state alleges support its claims arising under federal law.

4

1    allegations without any obligation to provide documentary or fact based proof or

2    disclosure—continue to have the absolute right to engage in all forms of discovery on each

3    Defendant, *either directly or through the Lead Plaintiff States as their surrogates*.[7]    This

4    imbalance is particularly perverse as, unlike Defendants, who were brought into this

5    proceeding involuntarily and forcibly confronted by the burdens (both in the litigation and

6    in the eye of the public) of responding to forty Nine (49) separate plaintiffs, each of the

7    thirty-six (36) Plaintiffs joined this proceeding *voluntarily*--indeed gleefully—as it allowed

8    them to trumpet and to make "political hay" from their supposed concern for the public

9    interest.  Again, Defendants have great difficulty understanding how this can be viewed as

10    a fair process.

11        Of course, in joining this case, each of the excused Plaintiffs had to expect that they

12    would be subject to the standard obligations of parties to a litigation, including the

13    obligation to respond to discovery.  Having gladly planned for and accepted all of the

14    advantages of a forty-nine on three battle—let alone the benefit that arises from the inherent

15    power of the states, including their vast budget and staffs—these 36 Plaintiffs should not

16    be further rewarded through overwhelmingly discriminatory and favorable discovery

17    rights.

---

[7] We know that the excluded states are cynically using the Lead Plaintiff States as their surrogates from an email sent to counsel to Defendants on July 25, 2025, Tracy Nayer of Lead Plaintiff State, North Carolina, that started with the following words, "Today, on behalf of all Plaintiffs. . ."  As this email makes clear, the excluded states are using the terms of the Scheduling Order to participate only when it suits their purposes and to hide behind the order to avoid any accountability for the allegations they make, directly and singularly, in the Complaint.  Defendants have not been afforded any similar right.

The simple truth is that, notwithstanding their endless bluster, Plaintiffs' right to relief depends entirely on their ability to show that *each call at issue*: (i) was handled in a manner by Avid Telecom that could make it liable under an applicable statute; (ii) contained content that is illegal; and (iii) that the called party did not consent to receive the call. Plaintiffs' own call records and other data will evidence Plaintiffs' wholesale inability to meet these factual burdens.  Yet, if the Scheduling Order stands, Defendants will be denied all access to the documents that they require to mount a successful defense from more than seventy percent (70%). If this circumstance continues through the end of the discovery process, the excluded Plaintiffs will be allowed to cherry-pick the facts and documents that wish to disclose, without any timely opportunity for challenge.

## ARGUMENT

This Court has inherent authority under Rule 54(b) to "revise any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . *at any time before the entry of a judgment adjudicating all the claims* . . . .  There has been no final judgment in the instant matter. Accordingly, by this pleading, Defendants respectfully request that the Scheduling Order be revised to allow full discovery by all Defendants on all Plaintiffs.

A.    The Scheduling Order Must Be Revised To Allow
        Full Discovery Rights Available Under FRCP Rule 54

*Defendants are not seeking reconsideration of the Scheduling Order*.  Rather, by this Motion, Defendants ask the Court to *revise and expand* the reach of the Scheduling Order to address matters of substantive rule, specifically including the scope of discovery allowed under the FRCP 54 and Rule 26.  Defendants believe that the requirements of these

6

Rules, as described in the relevant caselaw, authorize a revision in the Scheduling Order to properly protect the legitimate rights of Defendants to full and *substantively equal* discovery.

The Scheduling Order provides dates for each of the key actions in the case, including dates for the commencement and conclusion of discovery, expert reports, dispositive motions, pre-trial matters, and the trial.  Defendants are not seeking any revisions in these matters.  The Scheduling Order also sets forth both the number of allowed depositions and other discovery as well as the parties to which discovery can be directed.  Notably, however, the Scheduling Order *does not explain* why it chose the specific number of written interrogatories or depositions, why Defendants are limited to discover only in the Lead States and the states who asserted state law claims or, critically, or why the Plaintiff states who have not asserted specific state law claims are allowed to discover without limit on Defendants while Defendants are expressly foreclosed from *any* discovery on them.

With respect to written discovery, both Plaintiffs and Defendants are limited to 25 interrogatories. On its face, this could appear fair.  However, when one takes into account the fact that Defendants are prohibited from taking any discovery on thirty-six (36) Plaintiffs—while those same thirty-six (36) Plaintiffs are free to issue twenty-five (25) interrogatories to Defendants each—this means that Plaintiffs have been awarded nine hundred (900) more interrogatories than are available to Defendants.  The gulf between the actual scope of discovery allowed to parties on the opposite sides of the "v." is vast as is the inevitable prejudice.

1   The Scheduling Order is silent on the number of depositions for each side, but it

2   states that "limits of discovery set forth in Federal Rule 30". In the present scheduling

3   order, as per the Federal Rule of Civil Procedure, the limit on the number of depositions

4   for both sides is 10.[8] While this facial equality in the number of allowed depositions might

5   again appear fair, the reality is that Plaintiffs only need to depose three Defendants, well

6   within the limit.  In contrast, with only 10 depositions available, Defendants will not  even

7   have sufficient depositions to depose each of the Lead Plaintiffs and the Plaintiffs with state

8   law claims.  Of course, this also means that Defendants will also not be able to depose *any*

9   of the 36 remaining Plaintiffs.  How is this fair?

10   The unexplained and inequitable imbalance in the opportunity for discovery is

11   undeniably unfair and materially prejudicial.  It is particularly disturbing considering the

12   vast economic damages that Defendants face if the claims of even a single Plaintiff in an

13   excluded state are credited and statutory damages are awarded.

14   This court has the power to grant a greater number of depositions,[9] which provides

15   substantive fairness and equal footing for Defendants to obtain the facts—many of which

16   are in the exclusive possession and control of Plaintiffs, but are required to properly prepare

17   a defense to the Complaint.  It should revise the Scheduling Order to do so in a manner that

18   fully recognizes the real world circumstances.

---

[8] Defendants in multi-party action were presumptively limited to ten depositions per side, not ten depositions per party. FRCP 30(a)(2), 28 U.S.C.A. *Thykkuttathil v. Keese*, 294 F.R.D. 597 (W.D. Wash. 2013).
[9] A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2): **(A)** if the parties have not stipulated to the deposition and:**(i)** the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants; Fed. R. Civ. P. 30.

B.    The Limitations Imposed by the Scheduling Order are
Contrary to the General Rule Favoring Liberal Discovery
<u>and the Specific Requirements of FRCP Rule 26</u>

The federal rules embody the principle of liberal discovery in federal civil litigation, intending that the parties have broad access to information relevant to their case, encompassing any nonprivileged matter relevant to a claim or defense.  Under FRCP 26(b)(1), Defendants may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.[10] "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the  claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350–51, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978).[11]

Discoverable information need not be admissible in evidence to be discoverable, as long as it is relevant. *See Mittelstadt v. Burgess,* 563 P.3d 1168, 1173 (Ariz. Ct. App. 2025).  It is also clear under both FRCP Rules 33 and 34, as well as the prevailing caselaw, that a party may undertake discovery "on any other party."  By denying Defendants *all*

[10] *Smith v. Dellaripa*, No. 1 CA-CV 23-0571, 2024 WL 3456950, at *3 (Ariz. Ct. App. July 18, 2024), review denied (Dec. 3, 2024)
[11] Notably, the Arizona Supreme Court has gone farther than  the federal rules in ensuring full and fair discovery by adopting a set of procedural amendments proposed by its Civil Justice Reform Committee in 2018.  These procedural amendments are designed to ensure full and fair discovery granting its courts broad discretion to grant discovery exceeding the presumptive limits on stipulation, motion, or *sua sponte.*

1    *discovery* on more than seventy percent (70%) of the Plaintiffs, the Scheduling Order

2    violates both the general principle of liberal discovery under the federal rules, the clearly

3    stated views of the Reform Civil Justice Reform Committee, as well as the specific

4    mandates of the FRCP.[12]

5         Denying all discovery on the thirty-six (36) Plaintiffs flies in the face of both the

6    principle of liberal discovery and the basic rights of Defendants to discover against all of

7    its accusers, especially when the facts allegedly supporting each accusers claims are

8    undeniable different.  The denial of all discovery against 36 Plaintiffs also means that

9    Defendants will not even have visibility to the person or persons who allegedly have

10    personal knowledge and a good faith belief in the accuracy of the facts alleged.[13]  It goes

11    without saying that prejudice would result in unfair harm to the defendants.

---

[12] Following exhaustive research, Defendants are unable to find a single case anywhere in the nation in which a party has been denied ***all discovery***—written and oral—on a party opponent, whether in a Scheduling Order or through another procedure.   Our research also confirms the absence of any known precedent for denying one party the right to discover on another while allowing the other party to discover to the ordered numeric limits.

[13] Under FRCP Rule 11, signatories to the complaint, each Plaintiff, through its counsel, "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.  FRCP Rule 11(b).  The preclusive effect of the Scheduling Order not only prevents Defendants from discovering on the substantive facts pled by each of the thirty-six (36) Plaintiffs, it also completely prevents Defendants from probing into whether any of the signatories for these Plaintiffs had actually reviewed the Complaint before signing and could properly vouch for *all of the facts pled*.  Indeed, absent direct evidence, it is inconceivable to Defendants that *each* of 50 Plaintiffs *who are signatories to the <u>entire Complaint</u>*, and who benefitted directly from the facts pled in the entire complaint, have the personal knowledge required by FRCP Rule 11 to so certify.  The absence of discovery rights will improperly excuse thirty-six (36) Defendants from any inquiry on this issue.

FRCP 37, FRE 403, Arizona Rules of Civil Procedure 26.1 and 37, and the associated caselaw provide for the exclusion of evidence based on "unfair prejudice". "Unfair prejudice" means "an undue tendency to suggest a decision on an improper basis"[14] Unfair prejudice" arises when a party seeks to introduce evidence where that party wilfully refused to produce it in discovery, or the court denied the other party access to that evidence through the discovery process,  *See* FRE 403 "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.".; *see also Thoren v. Johnston & Washer,* 29 Cal.App.3d 270(1972); *Saxena v. Goffney,* 159 Cal.App.4th 316 (2008).  That exact situation exists, by choice, under the Scheduling Order as it exists today.

Rule 26 (b)(2)(C) of the Federal Rules of Civil Procedure allows limitations to be put on the scope of discovery *only where* a court finds that:

➢ The discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
➢ The party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

➢  The proposed discovery is outside the scope permitted by Rule 26(b)(1).

No such findings appear in the Scheduling Order, nor do the facts permit any such findings at this stage of the proceeding.  Moreover, given the truly vast number of factual allegations in the **630-paragraph complaint**—most of which are not supported by an documentation

---

[14] *State v. Schurz*, 176 Ariz. 46, 52, 859 P.2d 156, 162 (1993).

or data identified by source—there is no doubt that there are many discoverable issues that are non-privileged and relevant to Defendants' defenses. For example, Defendants would be wholly within their right—indeed, they absolutely need—to seek information regarding the calculation of the number of allegedly illegal calls asserted by *every one of the Plaintiffs*—including each of the thirty-six (36) Plaintiffs on which no discovery is being allowed.[15]  The Scheduling Order completely precludes all such discovery.

Regarding the issue of proportionality, as noted, the potential damages on the TCPA claim alone could be more than ***nine hundred million dollars*** from the thirty-six (36) excluded Plaintiffs alone.[16] It is difficult to imagine a situation in which substantial discovery by Defendants—at least to the extent afforded to Plaintiffs—would be more necessary and appropriate both as an absolute or a proportional matter.  Indeed, even if the parties were to spend $250,000 each on discovery (which is extremely unlikely), that expenditure would represent approximately 0.00055556% of the potential damage claim just associated with the thirty-six (36) free riding Plaintiffs.   Thus, any limitation on the parties subject to discovery or the scale of discovery implemented under a guise of proportionality cannot be justified and would remain fundamentally inequitable.

---

[15] Indeed, on this one topic alone, in the absence of full discovery rights, Defendants would be required to enter the trial in this case without the ability to inquire into the factual basis of any of these core central factual claims.  For example, Defendants would be left totally blind to the facts allegedly supporting the conclusion that the calls were actually delivered into the alleging state, or that Defendants actually transited any of the calls, or the basis of the conclusion that the calls were illegal, including evidence that the receiving party did not consent (which, sadly, is true of every allegation in the complaint).

[16] This number is calculated by multiplying the number of illegal calls alleged by the thirty-six (36) Plaintiffs from whom all discovery has been denied by the one thousand five hundred dollar ($1500) per call fine available for willful violations of the TCPA.

1    As noted, each of the thirty-six (36) Plaintiffs on whom all discovery has been

2    prohibited entered this proceeding *voluntarily*.    Each of these Plaintiffs *voluntarily*

3    *provided* number counts of the calls they believe were illegal.    Complaint [Dkt 1] at para.

4    89.  There is no reason to allow them to absolve them from the normal obligation to provide

5    documents substantiating their call counts to the same degree as all other Defendants in the

6    discovery process[17]

7    The Scheduling Order also apparently fails to consider the other relevant factors like

8    "the importance of the issues at stake in the action, the amount in controversy, the parties'

9    relative access to relevant information, the parties' resources, and the importance of the

10   discovery in resolving the issues.  As the above examples clearly demonstrate, there can be

11   no doubt that the discoverable facts *on all Plaintiffs* include, by way of example only facts:

12   (i) that prove *or disprove* the allegations that Defendants actually transited the calls at issue;

13   (ii) that prove or *disprove* whether the called party consented to receive that calls at issue

14   (which essential facts are completely missing from the complaint); (iii) that prove or

15   *disprove* that Defendants knew that it was transiting illegal calls; (iv)  that prove or disprove

16   that Defendants should have known that it was transiting illegal calls; (v) that prove or

17   *disprove* that any of the alleged illegal robocalls were actually terminated in the state claims

---

[17]  These thirty-six (36) Plaintiffs who are presently skirting the discovery process completely have already benefitted greatly in the town square from the aggressive nationwide public relations campaign they have each undertaken taking credit for suing a company that allegedly transited illegal robocalls. This campaign has not only forced Avid Telecom out of business, but it has also completely destroyed the individual Defendants reputations and subjected them to dozens of terrifying death threats.  These Plaintiffs have also benefitted greatly by joining with the Lead States in complaint that poses a 49 well-staffed and well-funded Plaintiffs against to a company that Plaintiffs have intentionally bankrupted and two individuals with very limited resources.

the violation; (vi) that evidence that Plaintiffs may have obtained certain of the data referenced in the complaint through illegal means; and (vii) that evidence the flawed and disingenuous manner in which Plaintiffs calculated the number of allegedly illegal calls. Most, if not all of the documents that refer to or relate to these facts are within the sole and exclusive control of Plaintiffs, including the thirty-six (36) who have been excused from participation. Allowing Plaintiffs to pursue these fact-based claims while denying Defendants the opportunity to discover on them—particularly without any explanation— is materially prejudicial.[18].

### C. The Scheduling Order Represents an Abuse of Discretion and a Denial of Due Process to Defendants

"An 'abuse of discretion' is discretion that is manifestly unreasonable, or that is exercised on untenable grounds, or for untenable reasons."[19] "An abuse of discretion exists when the court commits an error of law in reaching a *discretionary* conclusion." *Webb v. Omni Block, Inc.,* 216 Ariz. 349, 352, 166 P.3d 140, 143 (Ct. App. 2007) *(Emphasis added).* As set forth above, the Scheduling Order's total prohibition of discovery on more than seventy percent (70%) of the Plaintiffs, as well as the effectively unequal treatment towards Defendants, is manifestly unreasonable, both by its inherent nature and by its unequal application. The failure of the Scheduling Order to provide any explanation for the reasons for the prohibition or for its unequal applicability renders those restrictions inherently "untenable" as a matter of law. As such, absent a revision to the Scheduling Order that applies the

---

[18] *Campion v. City of Tucson*, 256 Ariz. 256, 264, 536 P.3d 1232, 1240 (Ct. App. 2023), review denied (Apr. 2, 2024).
[19] *Englert v. Carondelet Health Network*, 199 Ariz. 21, 27, 13 P.3d 763, 769 (Ct. App. 2000).

court's authority in accordance with the applicable FRCP rules in a fair and balanced manner, supported by proper rationale, the limitations on discovery constitute a material abuse of discretion.

The current unequal limitations on discovery also deny due process to Defendants by prohibiting them from obtaining critical facts that are in Plaintiffs' unique possession and control, that are required to defend against the false allegations of fact presented by *all* Plaintiffs, and to ensure Defendants a fair trial.   The Arizona courts have made it absolutely clear that defendants are entitled to full disclosure of all facts:

> "[t]he very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts"[20] which is being denied to the defendants without any finding in support of it.   If a trial court excludes essential evidence, thereby precluding a defendant from presenting a theory of defense, the trial court's decision results in a denial of the defendant's right to due process that is not harmless," *Roper*, 172 Ariz. at 236, 836 P.2d at 449. Thus, the due process right to present a complete defense is vitiated if a defendant is prevented access at the pretrial discovery stage to the "raw materials" necessary to build his defense, rendering his trial fundamentally unfair. *See R.S. v. Thompson in & for Cnty. of Maricopa, 251 Ariz.* 111, 117, 485 P.3d 1068, 1074 (2021).

The purpose of pretrial discovery is to ensure that both parties have the opportunity to obtain and present all relevant evidence as well as the opportunity to use it at trial. Effective discovery is essential to these objectives.[21] By prohibiting Defendants from all discovery of more than seventy percent (70%) of the Plaintiffs, the Court will deny the

---

[20] *R.S. v. Thompson in & for Cnty. of Maricopa*, 251 Ariz. 111, 117, 485 P.3d 1068, 1074 (2021)
[21] § 4:1. Importance of discovery, 1 Equit. Distrib. of Property, 4th § 4:1.

1    Defendants access to essential evidence and thus deny Defendants their Constitutional

2    rights to due process and a fair trial.[22]

3            D.        This Court has the Authority to Revise the Discovery Plan

4

5            This Court has the inherent authority under Rule 54(b) of Federal Rule of Civil

6    Procedure to *"revise[d]" any one of its Orders at any time before the entry of a judgment*

7    *adjudicating all the claims*. As long as a district court has jurisdiction over the case, then it

8    possesses the inherent procedural power to revise, rescind, or modify an interlocutory order

9    for cause seen by it to be sufficient. *See City of Los Angeles, Harbor Div. v. Santa Monica*

10   *Baykeeper,* 254 F.3d 882, 889 (9th Cir. 2001).

11           The exercise of an inherent power must be a "reasonable response to the problems

12   and needs" confronting the court's fair administration of justice.[23] The court, through this

13   inherent power, can revise the prejudicial limitation of discovery and depositions because

14   of the concerns of these restrictions denying due process to defendants', making the trial

15   unfair and the court's order an abuse of discretion as established above. Hence, these

16   problems fall under "reasonable response to the problem and needs," confronting the

17   court's fair administration of justice. If not revised, will lead to abuse of discretion by this

18   Court and grave injustice to the defendants.

---

[22] Under Supremacy Clause, when defendant's due process right to present complete defense and ultimately to fair trial and victim's state constitutional or statutory rights directly conflict, defendant's due process right prevails." *Draper v. Gentry*, 255 Ariz. 417, 532 P.3d 1153 (2023).
[23] *Dietz v. Bouldin*, 579 U.S. 40, 40, 136 S. Ct. 1885, 1888, 195 L. Ed. 2d 161 (2016).

1

**CONCLUSION**

2    Defendants understand that this is an unusual case. It is particularly unusual that a

3  Defendant would face a 630 paragraph complaint.  Respectfully, it is even more unusual

4  that Defendants facing a Complaint of this scale—both based on the number of Plaintiffs,

5  the size of the Complaint, the potential for billings of dollars in damages and the economic

6  and personal consequences of an adverse ruling—would be denied effective discovery in

7  the current manners.

8    Under Rule 54, the Court has the opportunity—and we believe the obligation—to

9  revise its Scheduling Order, at a minimum, to explain why it has imposed these unequal

10  and prejudicial limitations on Defendants' rights to discovery and to revise that Order to

11  eliminate the prejudice.

12    At minimum, the Defendants believe that the following revisions are required: (i)

13  allow Defendants the right to propound both written and oral discovery on *all* Plaintiffs;

14  and (ii) increase the number of allowed party and non-party depositions to make this

15  possible, or (i) Strike from the Complaint all portions that allege facts or claims relating to

16  Plaintiffs from whom discovery has not been permitted; and (ii) Preclude all Plaintiffs from

17  referencing, relying upon, or pursuing any claim—whether in whole or in part—that is

18  based on such facts or allegations.

19    Finally, the proposed revision to the Scheduling Order will have no substantial

20  prejudice or effect against Plaintiffs, as the discovery has just begun in earnest and there is

21  plenty of time left to complete a proper, fair, and balanced discovery process.

22    Accordingly, for the reasons state, Defendants respectfully request that the

23  Scheduling Order be revised in the manners set forth herein.

17

1    Respectfully submitted,
2
3    /x/ Neil S. Ende
4
5    _____
6    Neil S. Ende
7    Greg L. Taylor
8    *Pro Hac Vice*
9    *Counsel to Michael D. Lansky, LLC*
10   *dba Avid Telecom*
     Dated:  July 31, 2025    *Michael D. Lansky and Stacey S. Reeves*
11
12   Technology Law Group, LLC
13   5335 Wisconsin Avenue, NW
14   Suite 440
15   Washington, DC 20015
16   nende@tlgdc.com
17   Telephone: (202) 895-1707
18   Facsimile: (202) 478-5074

1

## **CERTIFICATE OF SERVICE**

2

3        I hereby certify that on the 31[th] day of July 2025, I electronically transmitted the

4    attached document to the Clerk's Office using the CM/ECF System for filing, and for

5    transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

6

7

8

9                                                        /s/ Silsa Cabezas
10                                                _____
11                                                        Silsa Cabezas

12

13

14

15

4