# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

State of Arizona, *ex rel.* Kristin K. Mayes,
Attorney General; et al.,

      Plaintiffs,

      v.

Michael D. Lansky, L.L.C., dba Avid Telecom,
et al.,

      Defendants.

No. 4:23-CV-00233-TUC-CKJ

### PLAINTIFFS' SECOND REQUESTS FOR ADMISSION TO DEFENDANTS MICHAEL D. LANSKY, STACEY S. REEVES, AND MICHAEL D. LANSKY, L.L.C., DBA AVID TELECOM

Pursuant to Federal Rules of Civil Procedure 36, Plaintiffs, by and through the undersigned attorneys, hereby submit their Second Rule 36 Requests for Admission ("Requests") to Defendants Michael D. Lansky, Stacey S. Reeves, and Michael D. Lansky, L.L.C. dba Avid Telecom. Please respond to the following Requests within thirty (30) days of service.

### DEFINITIONS AND INSTRUCTIONS

As used herein, the following words shall have the following meanings:

1.      Use of singular shall be deemed to include the plural. As used herein, the terms "and" and "or," "any" and "all," and "each" and "every" shall be interpreted liberally, as conjunctive, disjunctive, or both depending on the context, to achieve the fullest disclosure of information.

2.      Use of the present or past tense of a verb in a Request shall be interpreted liberally, to achieve the fullest and most accurate disclosure of information, where the conduct, action, or activity described therein is construed to apply to the subject of the Request at any time during the Relevant Period when such conduct, action, or activity was capable of being applicable.

3.      "Communication" any contact, whether formal or informal, between two or more Persons, at any time or place, and under any circumstances whatsoever, whereby information of any kind or nature was transmitted, transferred, disclosed, exchanged, or recorded.  It includes, without limitation, any oral, written, and electronically-stored information that is opened or unopened, active or deleted.

4.      "Defendants" means the following, individually, collectively or in any combination.

a.      "Corporate Defendant" or "Defendant Avid Telecom" means Michael D. Lansky, L.L.C., dba Avid Telecom, its members, agents, independent contractors, associates, employees, affiliates, supervisors, representatives and/or any other Person entitled to act or purporting to act on the Corporate Defendant's behalf, which includes, but is not limited to any trade names, fictitious names, or "doing business as" names, and its successors and assigns. The term also includes present and former owners, officers, directors, employees, independent contractors, agents, representatives,

attorneys, and all Persons working for or acting on behalf of the foregoing.

b.    "Individual Defendants" means Michael D. Lansky and Stacey S. Reeves collectively.

c.    "Defendant Lansky" means Michael D. Lansky individually.

d.    "Defendant Reeves" means Stacey S. Reeves individually.

5.    "Direct Inward Dial Numbers" or "DIDs" mean telephone numbers that conform to the North American Numbering Plan and can be used to Transmit inbound or outbound voice calls.

6.    "Document" or "Record," unless otherwise specified, means handwritten, typewritten, printed, punched, taped, filmed, computerized, programmed, recorded or graphic materials, information or data of every kind and description, whether in final or draft form, whether formal or informal, however produced or reproduced, including but not limited to: letters, correspondence, telegrams, facsimiles, voice mail, email, memoranda, reports, studies, summaries, analyses, bulletins, circulars, advertisements, instructions, books, records, notes, records and notes of telephone or personal conversations and conferences, minutes, worksheets, contracts, charts, graphs, photographs, film, audiotape and videotape recordings, and all other data compilations or information resources from which information can be obtained or translated into reasonably usable form. These terms also include the original of any document in whatever medium it may exist and all copies that differ in any way from the original, including the addition of any notations, underlining, markings, or electronically imbedded comments or

codes. They further include information stored in, or accessible through, computer diskettes and hard drives, solid-state drives, cloud storage, or any other information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations.

7. "FCC" means the Federal Communications Commission.

8. "Foreign Voice Service Provider" means any entity providing Voice Service outside the United States that has the ability to originate Voice Service that terminates in a point outside that foreign country or terminate Voice Service that originates from points outside that foreign country.

9. "Non-interconnected Voice over Internet Protocol Service" or "Non Interconnected- VoIP Service" means a service that (1) enables real-time voice communications that originate from or terminate to the user's location using Internet protocol or any successor protocol; (2) requires Internet protocol compatible customer premises equipment; and (3) does not include any service that is an Interconnected VoIP Service.

10. "North American Numbering Plan" or "NANP" means the basic numbering scheme for telecommunications networks located in the United States and its territories, Canada, and parts of the Caribbean, as defined in 47 C.F.R. § 52.5, as amended, and are ten-digit numbers consisting of a three-digit area code, followed by a three-digit central office code, followed by a four-digit line number.

11. "Person" means any individual, group, organization, unincorporated association, limited or general partnership, corporation, subsidiary, affiliate, or other legal entity. This includes any entity that holds itself out and conducts business as a legally formed entity but has failed to comply with all applicable state laws to form a legally recognized entity in the jurisdiction in which it conducts its business.

12. "Regarding," "Relating to," "Relate," "Related" and any derivation of these words mean consisting of, referring to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, underlying, or being in any way legally, logically, or factually connected to the matter discussed, whether in whole or in part, directly or indirectly.

13. "Relevant Period" means the period starting five years prior to the date the initial Complaint in this action was filed through the present. All Requests pertain to the Relevant Period unless otherwise stated.

14. "Short Duration Call" means any voice call of a duration of less than six seconds.

15. "Traceback" or "traceback" means any effort to trace back the origin of a call or calls, including, but not limited to, a request from the industry traceback consortium as defined in 47 C.F.R. § 64.6300(f), another Voice Service Provider in the call path, the FCC, or a civil or criminal law enforcement agency.

16. "Transmit" or "Transmitted" means to accept, initiate, send, transit, route, make, and/or complete calls.

17.    "Voice Service" means any service that is interconnected with the public switched telephone network and that furnishes voice communications using resources from the North American Numbering Plan.

18.    "Voice Service Provider" means a provider of Voice Service. The role of a Voice Service Provider is determined on a call-by-call—rather than entity-by-entity—basis.

19.    "VoIP" means Voice over Internet Protocol.

20.    "VoIP Service" shall have the meanings ascribed to "interconnected VoIP" and "non-interconnected VoIP" in 47 C.F.R. § 9.3 and 47 U.S.C. § 153(25) and (36).

## REQUESTS FOR ADMISSION

1.    Admit that Defendant Avid offered VoIP services that permitted its customers to transmit outbound voice calls to all North American Numbering Plan (NANP) area codes.

2.    Admit that Defendant Avid offered VoIP services that did not restrict the transmission of outbound calls to only NANP telephone numbers operating on IP networks.

3.    Admit that Defendant Avid received a Traceback from the Industry Traceback Group ("ITG") related to a call that Avid transmitted on its network on November 4, 2021 regarding fraudulent activity associated with a Social Security Number, referenced in Plaintiffs' Complaint at footnote 4.

4.    Admit that Defendant Avid received a Traceback from the ITG related to a call that Avid transmitted on its network on April 16, 2020 relating to a lawsuit filed by the

Social Security Administration and an arrest warrant, referenced in Plaintiffs' Complaint at footnote 5.

5.      Admit that Defendant Avid received a Traceback from the ITG related to a call that Avid transmitted on its network on July 9, 2022 regarding the impersonation of Amazon, referenced in Plaintiffs' Complaint at footnote 6.

6.      Admit that Defendant Avid received a Traceback from the ITG related to a call that Avid transmitted on its network on December 12, 2022 regarding an offer from Comcast for a 50% discount on its services, referenced in Plaintiffs' Complaint at footnote 7.

7.      Admit that Defendant Avid offered its customers the option of transmitting calls of Short Duration.

8.      Admit that Defendant Avid sold DIDs to its customers and charged its customers a monthly recurring charge for the use of each DID.

9.      Admit that on February 1, 2022, Defendant Avid provided a list of over 400,000 DIDs to return to Call48's inventory.

10.     Admit that Voice Services that transmit a high-volume of calls per second with 6-second or shorter duration is sometimes referred to as "dialer traffic."

11.     Admit that Voice Services that transmit a high-volume of calls per second with 6-second or shorter duration is sometimes referred to as "short duration" traffic.

12.     Admit that prior to November 1, 2022, Defendant Avid offered DIDs to call centers.

13.     Admit that prior to November 1, 2022, Defendant Avid offered outbound VoIP Service to call centers.

14.     Admit that prior to November 1, 2022, Defendant Avid advertised that its DID footprint covered the contiguous US, Alaska, Hawaii and Canada.

15.     Admit that on March 18, 2021, Defendant Avid received a Traceback notice from ITG related to a voice call that Avid transmitted over its network on March 10, 2021 that related to an offer to extend or reinstate an auto warranty, described at Paragraph 101 of Plaintiffs' Complaint.

16.     Admit that on April 9, 2021, Defendant Avid received a Traceback notice from ITG related to a voice call that Avid transmitted over its network on April 8, 2021 that referred to a Social Security Disability Advisor, described at Paragraph 101 of Plaintiffs' Complaint.

17.     Admit that Sumco Enterprise was a customer of Defendant Avid's VoIP service or DID product.

18.     Admit that Geist Telecom LLC was a customer of Defendant Avid's VoIP service or DID product.

19.     Admit that on May 5, 2022, in a Skype chat between Defendant Reeves and Red Telecom personnel, Defendant Reeves wrote that she was turning off a third-party call blocking feature for some customers.

20.     Admit that Defendant Avid's VoIP Service transmitted voice calls destined to called parties served by wireless networks.

21.     Admit that Defendant Avid's VoIP Service transmitted voice calls destined to called parties served by circuit switched networks.

22.     Admit that Defendant Avid's VoIP Service did not limit its transmission of voice calls only to those destined to called parties served by other VoIP Service Providers.

23.     Admit that on August 18, 2020, Defendant Avid received a Traceback notice from ITG related to calls from Avid's customer, Virtual Telecom, regarding offers to extend or reinstate auto warranties, described in Plaintiffs' Complaint at Paragraph 386.

24.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate credit card account to purchase items or services from Ancestry.com DNA LLC.

25.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate bank account to purchase items or services from Ancestry.com DNA LLC.

26.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate Pay Pal account to purchase items or services from Ancestry.com DNA LLC.

27.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate credit card to purchase items or services from Bandcamp for the full digital discography (9 releases) by Clann An Drumma.

28.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate bank account to purchase items or services from Bandcamp for the full digital discography (9 releases) by Clann An Drumma.

29.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate PayPal account to purchase items or services from Bandcamp for the full digital discography (9 releases) by Clann An Drumma.

30.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate credit card to pay the fees for the SMHS reunion for Defendant Lansky and another person.

31.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate bank account to pay the fees for the SMHS reunion for Defendant Lansky and another person.

32.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate PayPal account to pay the fees for the SMHS reunion for Defendant Lansky and another person.

33.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate credit card to pay for a "Michael Lansky for Bicycle replacement."

34.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate bank account to pay for a "Michael Lansky for Bicycle replacement."

35.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate PayPal account to pay for a "Michael Lansky for Bicycle replacement."

36.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate credit card to pay for "Bachelor Party lodging."

37.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate bank account to pay for "Bachelor Party lodging."

38.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate PayPal account to pay for "Bachelor Party lodging."

39.    Admit that Defendant Avid transmitted voice calls over its network that had both an originating DID and a terminating DID containing any Indiana area code (219, 260, 317, 574, 765, 812, 930, 463).

40.    Admit that Defendant Avid charged its customers on a per minute of use basis to transmit voice calls over its network to another Voice Service Provider.

41.    Admit that Defendant Avid charged its customers on a per call basis to transmit voice calls over its network to another Voice Service Provider.

42.    Admit that Defendant Avid has not filed any applications with any state public utility or public service commission for authorization to provide competitive local exchange services in any state.

43.    Admit that Defendant Avid has not filed any applications with any state public utility or public service commission for authorization to provide VoIP Services in any state.

44.    Admit that Defendant Avid has not filed a Form 477 with the FCC.

45.    Admit that Defendant Avid has not filed a Form 502 Numbering Resource Utilization Forecast with the FCC.

46.    Admit that Defendant Avid has not filed any tariffs with the FCC relating to its VoIP Service or its sale of DIDs.

47.    Admit that Defendant Avid's contracts with its customers to purchase VoIP services and DIDs are individually negotiated and the prices are confidential.

48.    Admit that Defendant Avid did not request permission from the FCC to discontinue providing its VoIP Services.

49.     Admit that Defendant Avid has no Documents, Records, or Communications to support its assertion in Defendants' Reply (Doc. 155 at p. 5, fn 8) that "certain of the third parties who provided data [to] the AGs, took numbers out of the pool prior to the end of the cooling off period as part of a plan and scheme to trap carriers who relied on consent and other information that was relevant to the previous 'owner', but, not to the new 'owner.'"

50.     Admit that Defendant Avid accepted call traffic from at least one foreign Voice Service Provider that transmitted calls to Avid that were the subject of at least one traceback request.

51.     Admit that in its Complaint filed against TransNexus (Doc.1, Case No. 1:22-cv-04829, US District Court, ND GA.), Avid stated that it, "specializes in the delivery of automated calls for its customers to persons who have authorized Avid Telecom's calling party customers to place those calls."

*The remainder of this page is intentionally left blank.*

RESPECTFULLY SUBMITTED this 17th day of October 2025.

**FOR THE STATE OF ARIZONA:**

KRISTIN K. MAYES
Attorney General for the State of
Arizona

/s/ John Raymond Dillon IV
JOHN RAYMOND DILLON IV
SARAH PELTON
Assistant Attorneys General
*Attorneys for the State of Arizona*

**FOR THE STATE OF NORTH
CAROLINA:**

JEFF JACKSON
Attorney General for the State of North
Carolina

/s/ Tracy Nayer
TRACY NAYER
ROCHELLE SPARKO
Special Deputy Attorneys General
*Attorneys for the State of North Carolina*

**FOR THE STATE OF INDIANA:**

TODD ROKITA
Attorney General for the State of Indiana

/s/ Douglas S. Swetnam
DOUGLAS S. SWETNAM
THOMAS L. MARTINDALE
Deputy Attorneys General
*Attorneys for the State of Indiana*

**FOR THE STATE OF OHIO:**

DAVE YOST
Attorney General for the State of Ohio

/s/ Erin B. Leahy
ERIN B. LEAHY
EMILY G. DIETZ
Assistant Attorneys General
*Attorneys for the State of Ohio*

***Lead Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2025, I served the foregoing **PLAINTIFFS'
SECOND REQUESTS FOR ADMISSION TO DEFENDANTS MICHAEL D.
LANSKY, STACEY S. REEVES, AND MICHAEL D. LANSKY, L.L.C., DBA AVID
TELECOM** upon Defendants by electronically mailing a copy of the same to their counsel
of record as follows:

Neil S. Ende
Technology Law Group, LLC
nende@tlgdc.com

Greg Taylor
Technology Law Group, LLC
gtaylor@tlgdc.com

/s/Rochelle Sparko
Rochelle Sparko
Special Deputy Attorney General

## LIST OF PLAINTIFFS' COUNSEL

John Raymond Dillon IV (AZ Bar
No. 036796)
Sarah Pelton (AZ Bar No. 039633)
Assistant Attorneys General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-8018
Fax:   (602) 542-4377
john.dillonIV@azag.gov
sarah.pelton@azag.gov
*Attorneys for Plaintiff State of Arizona*

Douglas S. Swetnam (IN Bar No. 15860-
49)
Thomas L. Martindale (IN Bar No.
29706-64)
Deputy Attorneys General
Office of the Indiana Attorney General
Todd Rokita
Indiana Govt. Center South, 5th Fl.
302 W. Washington St.
Indianapolis, IN 46204-2770
Phone: (317) 232-6294 (Swetnam)
        (317) 232-7751 (Martindale)
Fax:   (317) 232-7979
douglas.swetnam@atg.in.gov
thomas.martindale@atg.in.gov
*Attorneys for Plaintiff State of Indiana*

Tracy Nayer (NC Bar No. 36964)
Rochelle Sparko (NC Bar No. 38528)
Special Deputy Attorneys General
North Carolina Department of Justice
Consumer Protection Division
P.O. Box 629
Raleigh, North Carolina 27602
Phone:  (919) 716-6000
Fax:     (919) 716-6050
tnayer@ncdoj.gov
rsparko@ncdoj.gov
*Attorneys for Plaintiff State of North
Carolina*

Erin B. Leahy (OH Bar No. 0069509)
Emily G. Dietz (OH Bar No. 0104729)
Assistant Attorneys General
Office of Attorney General Dave Yost
30 East Broad Street, 14th Fl.
Columbus, OH 43215
Phone: (614) 752-4730 (Leahy)
        (614) 466-3493 (Dietz)
Erin.Leahy@OhioAGO.gov
Emily.Dietz@OhioAGO.gov
*Attorneys for Plaintiff State of Ohio*

***Lead Counsel for Plaintiffs***

Lindsay D. Barton (AL Bar No. 1165-G00N)
Robert D. Tambling (AL Bar No. 6026-N67R)
Assistant Attorneys General
Office of the Alabama Attorney General
501 Washington Avenue
Montgomery, Alabama 36130
Phone: (334) 353-2609 (Barton)
          (334) 242-7445 (Tambling)
Fax:     (334) 353-8400
Lindsay.Barton@AlabamaAG.gov
Robert.Tambling@AlabamaAG.gov
*Attorneys for Plaintiff State of Alabama*

Amanda Wentz (AR Bar No. 2021066)
Assistant Attorney General
Office of Attorney General Tim Griffin
101 West Capitol Avenue
Little Rock, AR 72201
Phone: (501) 682-1178
Fax:     (501) 682-8118
amanda.wentz@arkansasag.gov
*Attorney for Plaintiff State of Arkansas*

Nicklas A. Akers (CA Bar No. 211222)
Senior Assistant Attorney General
Bernard A. Eskandari (CA Bar No. 244395)
Supervising Deputy Attorney General
Timothy D. Lundgren (CA Bar No. 254596)
Rosailda Perez (CA Bar No. 284646)
Deputy Attorneys General
Office of the California Attorney General
300 S. Spring St., Suite 1702
Los Angeles, CA 90013
Phone: (415) 510-3364 (Akers)
          (213) 269-6348 (Eskandari)
          (213) 269-6355 (Lundgren)
          (213) 269-6612 (Perez)
Fax:     (916) 731-2146
nicklas.akers@doj.ca.gov
bernard.eskandari@doj.ca.gov
timothy.lundgren@doj.ca.gov
rosailda.perez@doj.ca.gov
*Attorneys for Plaintiff People of the State of California*

Michel Singer Nelson (CO Bar No. 19779)
Assistant Attorney General II
Colorado Office of the Attorney General
Ralph L. Carr Judicial Building
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6220
michel.singernelson@coag.gov
*Attorney for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

Brendan T. Flynn (Fed. Bar No. ct04545,
CT Bar No. 419935)
Assistant Attorney General
Office of the Connecticut Attorney
General William Tong
165 Capitol Avenue, Suite 4000
Hartford, CT 06106
Phone: (860) 808-5400
Fax:     (860) 808-5593
brendan.flynn@ct.gov
*Attorney for Plaintiff State of
Connecticut*

Ryan Costa (DE Bar No. 5325)
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8811
Fax:     (302) 577-6499
Ryan.costa@delaware.gov
*Attorney for Plaintiff State of Delaware*

Laura C. Beckerman (DC Bar No.
1008120)
Senior Trial Counsel
Public Advocacy Division
D.C. Office of the Attorney General
400 6th Street NW, 10th Floor
Washington, DC 20001
Phone: (202) 655-7906
Laura.Beckerman@dc.gov
*Attorney for Plaintiff District of
Columbia*

Sean P. Saval (FL Bar No. 96500)
Sr. Assistant Attorney General
Michael P. Roland (FL Bar No. 44856)
Assistant Attorney General
Office of the Florida Attorney General
Department of Legal Affairs
Consumer Protection Division
3507 E. Frontage Rd, Suite 325
Tampa, FL 33607
Phone: (813) 287-7950
Fax:     (813) 281-5515
Sean.Saval@myfloridalegal.com
michael.roland@myfloridalegal.com
Zivile.Rimkevicius@myfloridalegal.com
*Attorneys for Plaintiff James Uthmeier,
Attorney General of the State of Florida*

David A. Zisook (GA Bar No. 310104)
Senior Assistant Attorney General
Office of the Georgia Attorney General
40 Capitol Square SW
Atlanta, GA 30334
Phone: (404) 458-4294
Fax:     (404) 464-8212
dzisook@law.ga.gov
*Attorney for Plaintiff State of Georgia*

Christopher J.I. Leong (HI Bar No.
9662)
Deputy Attorney General
Hawaii Department of the Attorney
General
425 Queen Street
Honolulu, HI 96813
Phone: (808) 586-1180
Fax:     (808) 586-1205
christopher.ji.leong@hawaii.gov
*Attorney for Plaintiff State of Hawaii*

James J. Simeri (ID Bar No. 12332)
Consumer Protection Division Chief
Idaho Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
Phone: (208) 334-4114
james.simeri@ag.idaho.gov
*Attorney for Plaintiff State of Idaho*

Philip Heimlich (IL Bar No. 6286375)
Assistant Attorney General
Elizabeth Blackston (IL Bar No. 6228859)
Consumer Fraud Bureau Chief
Office of the Illinois Attorney General
500 S. Second Street
Springfield, IL 62791
Phone: (217) 782-4436
philip.heimlich@ilag.gov
elizabeth.blackston@ilag.gov
*Attorneys for Plaintiff People of the State of Illinois*

Benjamin Bellus (IA Bar No. AT0000688)
William Pearson (IA Bar No. AT0012070)
Assistant Attorneys General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Phone: (515) 242-6536 (Bellus)
       (515) 242-6773 (Pearson)
Fax:   (515) 281-6771
Benjamin.Bellus@ag.iowa.gov
William.Pearson@ag.iowa.gov
*Attorneys for Plaintiff State of Iowa*

Nicholas C. Smith (KS Bar No. 29742)
Sarah M. Dietz (KS Bar No. 27457)
Assistant Attorneys General
Consumer Protection Section
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
Phone: (785) 296-3751
Fax:   (785) 291-3699
Nicholas.Smith@ag.ks.gov
sarah.dietz@ag.ks.gov
*Attorneys for Plaintiff State of Kansas*

Jonathan E. Farmer (KY Bar No. 91999)
Deputy Executive Director of Consumer Protection
Office of the Attorney General of Kentucky
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Phone: (502) 696-5448
Fax:   (502) 573-8317
Jonathan.Farmer@ky.gov
*Attorney for Plaintiff Commonwealth of Kentucky*

ZaTabia N. Williams (LA Bar No. 36933)
Assistant Attorney General
Office of the Attorney General Liz Murrill
1885 North Third St.
Baton Rouge, LA 70802
Phone: (225) 326-6164
Fax:   (225) 326-6499
WilliamsZ@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

Brendan O'Neil (ME Bar No. 009900)
Michael Devine (ME Bar No. 005048)
Assistant Attorneys General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
Phone: (207) 626-8800
Fax:     (207) 624-7730
brendan.oneil@maine.gov
michael.devine@maine.gov
*Attorneys for Plaintiff State of Maine*

Philip Ziperman (Fed. Bar No. 12430)
Deputy Counsel
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417
Fax:     (410) 576-6566
pziperman@oag.state.md.us
*Attorney for Plaintiff Maryland Office of
the Attorney General*

Carol Guerrero (MA Bar No. 705419)
Assistant Attorney General
Michael N. Turi (MA Bar No. 706205)
Deputy Chief, Consumer Protection
Division
Massachusetts Office of the Attorney
General
One Ashburton Place, 18th Floor
Boston, MA 02108
Phone: (617) 963-2783
Fax:     (617) 727-5765
mailto:Carol.Guerrero@mass.gov
Michael.Turi@mass.gov
*Attorneys for Plaintiff Commonwealth of
Massachusetts*

Kathy P. Fitzgerald (MI Bar No.
P31454)
Michael S. Hill (MI Bar No. P73084)
Assistant Attorneys General
Michigan Department of Attorney
General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
Phone: (517) 335-7632
Fax:     (517) 335-6755
fitzgeraldk@michigan.gov
Hillm19@michigan.gov
*Attorneys for Plaintiff People of the
State of Michigan*

Bennett Hartz (MN Bar No. 0393136)
Assistant Attorney General
Office of the Minnesota Attorney
General
445 Minnesota Street, Suite 1200
Saint Paul, MN 55404
Phone: (651) 757-1235
bennett.hartz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota,
by its Attorney General, Keith Ellison*

James M. Rankin (MS Bar No. 102332)
Special Assistant Attorney General
Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205
Phone: (601) 359-4258
james.rankin@ago.ms.gov
*Attorney for Plaintiff Lynn Fitch,
Attorney General State of Mississippi*

Eliot Gusdorf (MO Bar No. 73225)
Assistant Attorney General
Office of the Missouri Attorney General
815 Olive Street, Suite 200
St. Louis, MO 63101
Phone: (314) 340-6816
Fax:    (314) 340-7891
eliot.gusdorf@ago.mo.gov
*Attorney for Plaintiff State of Missouri,
ex. rel. Catherine L. Hanaway, Attorney
General*

Brent Mead (MT Bar No. 68035000)
Deputy Solicitor General
Anna Schneider (MT Bar No. 13963)
Special Assistant Attorney General,
Senior Counsel
Montana Attorney General's Office
Office of Consumer Protection
215 North Sanders Street
P.O. Box 200151
Helena, MT 59620-0151
Phone: (406) 444-4500
Brent.mead2@mt.gov
Anna.schneider@mt.gov
*Attorneys for Plaintiff State of Montana*

Gary E. Brollier (NE Bar No. 19785)
Assistant Attorney General
Office of the Attorney General Michael
T. Hilgers
2115 State Capitol Building
Consumer Protection Division
Lincoln, NE 68509
Phone: (402) 471-1279
Fax:    (402) 471-4725
gary.brollier@nebraska.gov
*Attorney for Plaintiff State of Nebraska*

Michelle C. Badorine (NV Bar No.
13206)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 North Carson Street
Carson City, NV 89701-4717
Phone: (775) 684-1164
Fax:    (775) 684-1299
MBadorine@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

Mary F. Stewart (NH Bar No. 10067)
Assistant Attorney General
New Hampshire Department of Justice
Office of the Attorney General
Consumer Protection and Antitrust
Bureau
1 Granite Place South
Concord, NH 03301
Phone: (603) 271-1139
Mary.F.Stewart@doj.nh.gov
*Attorney for Plaintiff State of New
Hampshire*

Blair Gerold (NJ Bar No. 294602019)
Jeffrey Koziar (NJ Bar No. 015131999)
Deputy Attorneys General
New Jersey Office of the Attorney
General
Division of Law
124 Halsey Street
Newark, NJ 07101
Phone: (609) 696-5363 (Gerold)
        (973) 648-7819 (Koziar)
Fax:    (973) 648-3879 (Gerold)
        (973) 648-4887 (Koziar)
Blair.Gerold@law.njoag.gov
Jeff.koziar@law.njoag.gov
*Attorneys for Plaintiff State of New
Jersey*

Billy Jimenez (NM Bar No. 144627)
Assistant Attorney General
New Mexico Department of Justice
408 Galisteo St.
Santa Fe, New Mexico 87501
Phone: (505) 527-2694
Fax:    (505) 490-4883
Bjimenez@nmdoj.gov
*Attorney for Plaintiff Raúl Torrez, New
Mexico Attorney General*

Glenna Goldis (NY Bar No. 4868600)
Assistant Attorney General
Office of the New York State Attorney
General
28 Liberty Street
New York, NY 10005
Phone: (646) 856-3697
Glenna.goldis@ag.ny.gov
*Attorney for Plaintiff Office of the
Attorney General of the State of New
York*

Elin S. Alm (ND Bar No. 05924)
Christopher Glenn Lindblad (ND Bar
No. 06480)
Assistant Attorneys General
Office of North Dakota Attorney General
Consumer Protection & Antitrust
Division
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
Phone: (701) 328-5570
Fax:    (701) 328-5568
mailto:ealm@nd.gov
clindblad@nd.gov
*Attorneys for Plaintiff State of North
Dakota*

Sylvia Lanfair (OK Bar No. 30144)
Assistant Attorney General
Office of the Oklahoma Attorney
General
313 N.E. 21st St.
Oklahoma City, OK 73105
Phone: (405) 522- 8129
Fax:    (405) 522-0085
mailto:sylvia.lanfair@oag.ok.gov
*Attorney for Plaintiff State of Oklahoma
ex rel. Attorney General Gentner
Drummond*

Jordan M. Roberts (OR Bar No. 115010)
Senior Assistant Attorney General
Oregon Department of Justice
Consumer Protection Division
100 SW Market St.
Portland, OR 97201
Phone: (971) 673-1880
Fax:    (971) 673-1884
jordan.m.roberts@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

Mark W Wolfe (PA Bar No. 327807)
Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 15th Floor
Harrisburg, PA 17120-0001
Phone: (717) 772-3558
Fax:    (717) 705-3795
mwolfe@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of
Pennsylvania by Attorney General David
W. Sunday, Jr.*

Stephen N. Provazza (RI Bar No. 10435)
Assistant Attorney General
Rhode Island Office of the Attorney
General
150 S. Main Street
Providence, RI 02903
Phone: (401) 274-4400, ext. 2476
Fax:    (401) 222-1766
sprovazza@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island, by Attorney General Peter Neronha*

Kristin Simons (SC Bar No. 74004)
Senior Assistant Attorney General
South Carolina Attorney General's
Office
P.O. Box 11549
Columbia, SC 29211-1549
Phone: (803) 734-6134
mailto:ksimons@scag.gov
*Attorney for Plaintiff State of South Carolina*

Austin C. Ostiguy (TN Bar No. 040301)
Tyler T. Corcoran (TN Bar No. 038887)
Assistant Attorneys General
Office of the Tennessee Attorney
General
P.O. Box 20207
Nashville, TN 37202
Phone: (615) 532-7271 (Ostiguy)
        (615) 770-1714 (Corcoran)
Fax:    (615) 532-2910
austin.ostiguy@ag.tn.gov
tyler.corcoran@ag.tn.gov
*Attorneys for Plaintiff State of Tennessee*

David Shatto (Fed. Bar No. 3725697; TX
Bar No. 24104114)
Assistant Attorney General
Attorney General for the State of Texas
Office of the Attorney General
P.O. Box 12548 (MC-010)
Austin, TX 78711
Phone: (512) 463-2185
Fax:    (512) 473-9125
David.Shatto@oag.texas.gov
*Attorney for Plaintiff State of Texas*

Alexandra Butler (UT Bar No. 19238)
Assistant Attorney General
Utah Attorney General's Office
160 East 300 South, 5th Floor
P.O. Box 140872
Salt Lake City, UT 84114-0872
Phone: (385) 910-5533
Fax:    (801) 366-0315
alexandrabutler@agutah.gov
*Attorney for Plaintiff Utah Division of Consumer Protection*

James Layman (VT Bar No. 5236)
Office of the Vermont Attorney General
109 State Street
Montpelier, VT 05609-1001
Phone: (802) 828-2315
Fax:    (802) 304-1014
James.Layman@vermont.gov
*Attorney for Plaintiff State of Vermont*

Geoffrey L. Ward (VA Bar No. 89818)
Senior Assistant Attorney General
Office of the Attorney General of
Virginia
202 N. Ninth St.
Richmond, VA 23219
Phone: (804) 371-0871
Fax:    (804) 786-0122
gward@oag.state.va.us
*Attorney for Plaintiff Commonwealth of
Virginia, ex rel. Jason S. Miyares,
Attorney General*

Zorba Leslie (WA Bar No. 58523)
Assistant Attorney General
Washington State Attorney General's
Office
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Phone: (206) 340-6787
Fax:    (206) 464-6451
zorba.leslie@atg.wa.gov
*Attorney for Plaintiff State of
Washington*

Ashley T. Wentz (WV Bar No. 13486)
Assistant Attorney General
West Virginia Attorney General's Office
Consumer Protection/Antitrust Division
P.O. Box 1789
Charleston, WV 25326
Phone: (304) 558-8986
Fax:    (304) 558-0184
Ashley.T.Wentz@wvago.gov
*Attorney for Plaintiff State of West
Virginia ex rel. John B. McCuskey,
Attorney General*

Gregory A. Myszkowski (WI Bar No.
1050022)
Assistant Attorney General
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707-7857
Phone: (608) 266-7656
Fax:    (608) 294-2907
gregory.myszkowski@wisdoj.gov
*Attorney for Plaintiff State of Wisconsin*

Cameron W. Geeting (WY Bar No.
7--5338)
Senior Assistant Attorney General
Consumer Protection and Antitrust Unit
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, Wyoming 82002
Phone: (307) 777-3795
cameron.geeting1@wyo.gov
*Attorney for Plaintiff State of Wyoming*

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| State of Arizona, *ex rel*. Kristin K. Mayes, Attorney General; et al., | No. 4:23-CV-00233-TUC-CKJ |
| Plaintiffs, | |
| v. | |
| Michael D. Lansky, L.L.C., dba Avid Telecom, et al., | |
| Defendants. | |

**DEFENDANTS' RESPONSES TO
PLAINTIFFS' SECOND REQUESTS FOR ADMISSION**

Defendants, by and through the undersigned attorneys, hereby submit their Responses to Plaintiffs' Second Rule 36 Requests for Admission ("Requests").

<u>General Objections</u>

Defendants object generally to Plaintiffs' Requests for Admission ("RFAs") to the extent they are vague, ambiguous, overbroad, unduly burdensome, disproportionate to the needs of the case, compound, assume disputed facts, call for legal conclusions, or lack a reasonable temporal limitation.

Defendants also object to the extent any RFA seeks information protected by the attorney-client privilege, common-interest doctrine, or attorney work-product doctrine, or seeks confidential/proprietary information of third parties.

Defendants also object to any definitions, instructions, or assumptions that purport to impose obligations beyond or inconsistent with the Federal Rules of Civil Procedure, including Rules 26, 33, and 36. Notwithstanding the content of any Response, Defendants

do not adopt Plaintiffs' definitions to the extent they are inconsistent with fact, contextually irrelevant an/or they are contrary to governing law.

Defendants Lansky and Reeves respond only in their individual capacities, based on information reasonably available to her after a reasonable inquiry. By providing a Response, Defendants do not concede that the Response is relevant or admissible.

All objections are expressly preserved and incorporated into each Response below. Defendants reserve the right to supplement or amend these Responses as permitted by Rule 26(e).

Subject to and without waiving the foregoing General Objections, Defendants' answers the RFAs below based on information presently known and reasonably available to her after a reasonable inquiry. These Responses are made solely for purposes of this litigation and are not admissions for any other purpose. Defendants reserve the right to assert additional objections, to amend or supplement these Responses as permitted by Fed. R. Civ. P. 26(e), 33, and 36, and to withhold privileged information.

## RESPONSES

1.      Admit that Defendant Avid offered VoIP services that permitted its customers to transmit outbound voice calls to all North American Numbering Plan (NANP) area codes.

**Response**:  Defendants deny that Avid Telecom had a VoIP network that permitted its customers to transmit outbound voice calls to all North American Numbering Plan (NANP) area code. Defendants also deny that Avid Telecom transmitted outbound voice calls to all North American Numbering Plan (NANP) area codes.  Defendants admit that, in certain circumstances, Avid Telecom connected with carrier networks that were capable of allowing its customers to transmit outbound voice calls to all North American Numbering Plan

(NANP) area codes.

2.      Admit that Defendant Avid offered VoIP services that did not restrict the transmission of outbound calls to only NANP telephone numbers operating on IP networks.

**Response**:  Defendants admit that Avid Telecom offered VoIP services that did not restrict the transmission of outbound calls to only NANP telephone numbers operating on IP networks.  Defendants are without sufficient information to admit or to deny whether the networks to which it connected, and which terminated all of its calls, restricted the transmission of outbound calls to only NANP telephone numbers operating on IP networks.

3.      Admit that Defendant Avid received a Traceback from the Industry Traceback Group ("ITG") related to a call that Avid transmitted on its network on November 4, 2021 regarding fraudulent activity associated with a Social Security Number, referenced in Plaintiffs' Complaint at footnote 4.

**Response:** Defendants do not have sufficient information to admit or to deny the allegation that the call was associated with a Social Security Number, referenced in Plaintiffs' Complaint at footnote 4. Defendants state further that Avid Telecom did not originate or terminate the call, that it was the sixth carrier in line from the originating carrier, that it was not the terminating carrier, that it had nothing to do with the creation of the content of the call, that the call was for a commercial purpose, whether the called party had consented to receive the call, that it had nothing to do with the selection of the originating number or the terminating number, that it had no prior or contemporaneous knowledge of the content of the call, it had no prior, contemporaneous or current knowledge of whether the call was auto-dialed, and it had no prior, contemporaneous or current knowledge of whether the call utilized live voice or prerecorded voice or an AI voice.

4.        Admit that Defendant Avid received a Traceback from the ITG related to a call that Avid transmitted on its network on April 16, 2020 relating to a lawsuit filed by theSocial Security Administration and an arrest warrant, referenced in Plaintiffs' Complaint at footnote 5.

**Response**:  Defendants do not have sufficient information to admit or to deny the allegation that the call was associated with a Social Security Number, referenced in Plaintiffs' Complaint at footnote 5.  Defendants state further that Avid Telecom did not originate or terminate the call, that it was the sixth carrier in line from the originating carrier, that it was not the terminating carrier, that it had nothing to do with the creation of the content of the call, that the call was for a commercial purpose, whether the called party had consented to receive the call, that it had nothing to do with the selection of the originating number or the terminating number, that it had no prior or contemporaneous knowledge of the content of the call, it had no prior, contemporaneous or current knowledge of whether the call was auto-dialed, and it had no prior, contemporaneous or current knowledge of whether the call utilized live voice or prerecorded voice or an AI voice.

5.        Admit that Defendant Avid received a Traceback from the ITG related to a call that Avid transmitted on its network on July 9, 2022 regarding the impersonation of Amazon, referenced in Plaintiffs' Complaint at footnote 6.

**Response**:  Defendants do not have sufficient information to admit or to deny the allegation that the call was associated with a Social Security Number, referenced in Plaintiffs' Complaint at footnote 6.  Defendants state further that Avid Telecom did not originate or terminate the call, that it was the sixth carrier in line from the originating carrier, that it was

not the terminating carrier, that it had nothing to do with the creation of the content of the call, that the call was for a commercial purpose, whether the called party had consented to receive the call, that it had nothing to do with the selection of the originating number or the terminating number, that it had no prior or contemporaneous knowledge of the content of the call, it had no prior, contemporaneous or current knowledge of whether the call was auto-dialed, and it had no prior, contemporaneous or current knowledge of whether the call utilized live voice or prerecorded voice or an AI voice.

6.     Admit that Defendant Avid received a Traceback from the ITG related to a call that Avid transmitted on its network on December 12, 2022 regarding an offer from Comcast for a 50% discount on its services, referenced in Plaintiffs' Complaint.

       **Response**:  Defendants do not have sufficient information to admit or to deny the allegation that the call was associated with a Social Security Number, referenced in Plaintiffs' Complaint.  Defendants state further that Avid Telecom did not originate or terminate the call, that it was the sixth carrier in line from the originating carrier, that it was not the terminating carrier, that it had nothing to do with the creation of the content of the call, that the call was for a commercial purpose, whether the called party had consented to receive the call, that it had nothing to do with the selection of the originating number or the terminating number, that it had no prior or contemporaneous knowledge of the content of the call, it had no prior, contemporaneous or current knowledge of whether the call was auto-dialed, and it had no prior, contemporaneous or current knowledge of whether the call utilized live voice or prerecorded voice or an AI voice.

7.     Admit that Defendant Avid offered its customers the option of transmitting calls of Short Duration.

**Response**: Deny.  Avid Telecom offered a telecommunications service that allowed customers to deliver traffic to the switch utilized by Avid Telecom to accept incoming traffic. Avid Telecom had no involvement in any decision made by the customer regarding the content or the duration of any call.

8.    Admit that customers paid a monthly recurring charge for the use of each DID.

**Response**: Defendants object to this Request on the grounds that facts associated with any alleged payment for each DID is not relevant to any issue in this proceeding nor is it likely to lead to the discovery of relevant evidence.

9.    Admit that on February 1, 2022, Defendant Avid provided a list of over 400,000 DIDs to return to Call48's inventory.

**Response:** Defendants object to this Request on the grounds that facts associated with any alleged payment for each DID is not relevant to any issue in this proceeding nor is it likely to lead to the discovery of relevant evidence.

10.    Admit that Voice Services that transmit a high-volume of calls per second with 6-second or shorter duration is sometimes referred to as "dialer traffic."

**Response**: Defendants deny that they understand the term "dialer traffic" or that they ever used the term, "dialer traffic" in the described manner.

11.    Admit that Voice Services that transmit a high-volume of calls per second with 6-second or shorter duration is sometimes referred to as "short duration" traffic.

**Response**:  Defendants object to this request as vague and ambiguous.  Defendants are prepared to meet and confer.

**Response**: Defendants deny that they understand the term "dialer traffic" or that they

ever used the term, "dialer traffic" in the described manner.

12.     Admit that prior to November 1, 2022, Defendant Avid offered DIDs to call centers.

**Response**: Defendants object to this Request on the grounds that facts associated with any alleged offering of DIDs is not relevant to any issue in this proceeding nor is it likely to lead to the discovery of relevant evidence.

13.     Admit that prior to November 1, 2022, Defendant Avid offered outbound VoIP Service to call centers.

**Response**: Defendants deny that a call center was ever the customer to any service provided by Avid Telecom.

14.     Admit that prior to November 1, 2022, Defendant Avid advertised that its DID footprint covered the contiguous US, Alaska, Hawaii and Canada.

**Response:** Defendants do not have sufficient current information to admit or to deny this allegation of fact.

15.     Admit that on March 18, 2021, Defendant Avid received a Traceback notice from ITG related to a voice call that Avid transmitted over its network on March 10, 2021 that related to an offer to extend or reinstate an auto warranty, described at Paragraph 101 of Plaintiffs' Complaint.

**Response**: Defendants admit that the traceback identified in the Request *states* that it related to a voice call that Avid transmitted over its network on March 10, 2021. Defendants do not have sufficient information to admit or to deny that the content of the call contained an offer to extend or reinstate an auto warranty, described at Paragraph 101 of Plaintiffs'

Complaint. Defendants state further that Avid Telecom did not originate or terminate the call, that it was the sixth carrier in line from the originating carrier, that it was not the terminating carrier, that it had nothing to do with the creation of the content of the call, that the call was for a commercial purpose, whether the called party had consented to receive the call, that it had nothing to do with the selection of the originating number or the terminating number, that it had no prior or contemporaneous knowledge of the content of the call, it had no prior, contemporaneous or current knowledge of whether the call was auto-dialed, and it had no prior, contemporaneous or current knowledge of whether the call utilized live voice or prerecorded voice or an AI voice.

16.     Admit that on April 9, 2021, Defendant Avid received a Traceback notice from ITG related to a voice call that Avid transmitted over its network on April 8, 2021 that referred to a Social Security Disability Advisor, described at Paragraph 101 of Plaintiffs' Complaint.

**Response**: Defendants admit that the traceback identified in the Request *states* that it related to a voice call that Avid transmitted over its network on April 9, 2021. Defendants do not have sufficient information to admit or to deny that the content of the call referred to a Social Security Disability Advisor, described at Paragraph 101 of Plaintiffs' Complaint. Defendants state further that Avid Telecom did not originate or terminate the call, that it was the sixth carrier in line from the originating carrier, that it was not the terminating carrier, that it had nothing to do with the creation of the content of the call, that the call was for a commercial purpose, whether the called party had consented to receive the call, that it had nothing to do with the selection of the originating number or the terminating number, that it had no prior or contemporaneous knowledge of the content of the call, it had no prior, contemporaneous or current knowledge of whether the call was auto-dialed, and it had no prior,

contemporaneous or current knowledge of whether the call utilized live voice or prerecorded voice or an AI voice.

17.    Admit that Sumco Enterprise was a customer of Defendant Avid's VoIP service or DID product.

**Response**: Defendants object to this request as compound as, as such, a proper Response is not possible.  Defendants are prepared to meet and confer in an effort to obtain an intelligible Request.  Notwithstanding and without limiting the scope or the effect of this objection, Defendants deny that Sumco Enterprise was a customer of Defendant Avid's VoIP service.

18.    Admit that Geist Telecom LLC was a customer of Defendant Avid's VoIP service or DID product.

**Response**: Defendants object to this request as compound and, as such, a proper Response is not possible.  Defendants are prepared to meet and confer in an effort to obtain an intelligible Request.  Notwithstanding and without limiting the scope or the effect of this objection, Defendants admit that Geist Telecom LLC was a customer of Defendant Avid's VoIP service.

19.    Admit that on May 5, 2022, in a Skype chat between Defendant Reeves and Red Telecom personnel, Defendant Reeves wrote that she was turning off a third-party call blocking feature for some customers.

20.    **Response**: Defendants Lansky and Avid Telecom do not have sufficient personal information to admit or to deny this allegation of fact.  Defendant Reeves admits that the referenced chat contains those words but  that those words are taken out of context.  Third party call blocking was turned off because YouMail was no longer providing necessary current

data to our SipNav switch.  In fact, Avid Telecom continued to block numbers saved by the SipNav switch that were flagged as SPAM by YouMail at a higher level than advised by YouMail because of false positives. Admit that Defendant Avid's VoIP Service transmitted voice calls destined to called parties served by wireless networks.

**Response**: Defendants admit certain of the traffic that it received from other carriers may have been directed by the calling party to called parties served by wireless networks. Defendants state further that Avid Telecom did not originate or terminate any of these calls, that it was not the terminating carrier, that it had nothing to do with the creation of the content of the call, that it had no prior or contemporaneous knowledge call whether the call was for a commercial purpose, whether the called party had consented to receive the call, that it had nothing to do with the selection of the originating number or the terminating number, that it had no prior or contemporaneous knowledge of the content of the call, that it had no prior, contemporaneous or current knowledge of whether the call was auto-dialed, and that it had no prior, contemporaneous or current knowledge of whether the call utilized live voice or prerecorded voice or an AI voice.

21.    Admit that Defendant Avid's VoIP Service transmitted voice calls destined to called parties served by circuit switched networks.

**Response**: Defendants are unable to respond to this Request as the term "circuit switched networks" is not a defined term.

22.    Admit that Defendant Avid's VoIP Service did not limit its transmission of voice calls only to those destined to called parties served by other VoIP Service Providers.

**Response:** This Request is unintelligible as drafted.  Defendants are prepared to meet

and confer in an effort to obtain an intelligible Request.

23.     Admit that on August 18, 2020, Defendant Avid received a Traceback notice from ITG related to calls from Avid's customer, Virtual Telecom, regarding offers to extend or reinstate auto warranties, described in Plaintiffs' Complaint at Paragraph 386.

Response: Defendants do not have sufficient information to admit or to deny that the content of the call referred to offers to extend or reinstate auto warranties, described in Plaintiffs' Complaint at Paragraph 386.  As the allegation of fact predates Reeves' association as an independent contractor to Avid Telecom, Defendant Reeves does not have sufficient information to admit or to deny.  Defendants Lansky and Avid Telecom state further that Avid Telecom did not originate or terminate this call, that it was not the terminating carrier, that it had nothing to do with the creation of the content of the call, that it had no prior or contemporaneous knowledge call whether the call was for a commercial purpose, whether the called party had consented to receive the call, that it had nothing to do with the selection of the originating number or the terminating number, that it had no prior or contemporaneous knowledge of the content of the call, that it had no prior, contemporaneous or current knowledge of whether the call was auto-dialed, and that it had no prior, contemporaneous or current knowledge of whether the call utilized live voice or prerecorded voice or an AI voice.

24.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate credit card account to purchase items or services from Ancestry.com DNA LLC.

**Response:** Defendant Reeves and Defendant Avid telecom do not have sufficient information to admit or to deny the allegation of fact.  Defendant Lansky admits that the corporate credit card was used to purchase items or services from Ancestry.com DNA LLC.  Defendants Lansky and Avid Telecom state further that the use of the corporate credit card account was merely

–11–

a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

25.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate bank account to purchase items or services from Ancestry.com DNA LLC.

**Response:** Defendant Reeves and Defendant Avid telecom do not have sufficient information to admit or to deny the allegation of fact.  Defendant Lansky admits that the corporate bank account was used to purchase items or services from Ancestry.com DNA LLC. Defendants Lansky and Avid Telecom state further that the use of the corporate bank account was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

26.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate Pay Pal account to purchase items or services from Ancestry.com DNA LLC.

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact.  Defendant Lansky admits that the corporate PayPal account was used to purchase items or services from Ancestry.com DNA LLC.  Defendants Lansky and Avid Telecom state further that the use of the corporate PayPal account was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

27.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate credit card to purchase items or services from Bandcamp for the full digital discography (9 releases) by Clann An Drumma.

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the

corporate credit card was used to purchase items or services from Bandcamp. Defendants Lansky and Avid Telecom state further that the use of the corporate credit card was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

28.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate bank account to purchase items or services from Bandcamp for the full digital discography (9 releases) by Clann An Drumma.

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the corporate bank account was used to purchase items or services from Bandcamp. Defendants Lansky and Avid Telecom state further that the use of the corporate bank account was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

29.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate PayPal account to purchase items or services from Bandcamp for the full digital discography (9 releases) by Clann An Drumma.

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the corporate PayPal account was used to purchase items or services from Bandcamp. Defendants Lansky and Avid Telecom state further that the use of the corporate PayPal account was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

30.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate credit card to pay the fees for the SMHS reunion for Defendant Lansky and another person.

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the corporate credit card was used pay the fees for the SMHS reunion for Defendant Lansky and another person.  Defendants Lansky and Avid Telecom state further that the use of the corporate credit card was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

31.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate bank account to pay the fees for the SMHS reunion for Defendant Lansky and another person.

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the corporate bank account was used pay the fees for the SMHS reunion for Defendant Lansky and another person.  Defendants Lansky and Avid Telecom state further that the use of the corporate bank account was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

32.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate PayPal account to pay the fees for the SMHS reunion for Defendant Lansky and another person.

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the corporate PayPal account was used pay the fees for the SMHS reunion for Defendant Lansky and another person.  Defendants Lansky and Avid Telecom state further that the use of the

corporate PayPal account was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

33.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate credit card to pay for a "Michael Lansky for Bicycle replacement."

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the corporate credit card to pay for a "Michael Lansky for Bicycle replacement." Defendants Lansky and Avid Telecom state further that the use of the corporate credit card was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

34.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate bank account to pay for a "Michael Lansky for Bicycle replacement."

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the corporate bank account to pay for a "Michael Lansky for Bicycle replacement." Defendants Lansky and Avid Telecom state further that the use of the corporate bank account was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

35.     Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate PayPal account to pay for a "Michael Lansky for Bicycle replacement."

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the corporate PayPal account to pay for a "Michael Lansky for Bicycle replacement." Defendants

Lansky and Avid Telecom state further that the use of the corporate PayPal account was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

36.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate credit card to pay for "Bachelor Party lodging."

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the corporate credit card to pay for "Bachelor Party lodging."  Defendants Lansky and Avid Telecom state further that the use of the corporate credit card was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

37.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate bank account to pay for "Bachelor Party lodging."

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the corporate bank account to pay for "Bachelor Party lodging."  Defendants Lansky and Avid Telecom state further that the use of the corporate bank account was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

38.    Admit that Defendant Lansky used the Michael D. Lansky, LLC corporate PayPal account to pay for "Bachelor Party lodging."

**Response:** Defendants Reeves and Avid Telecom do not have sufficient current information to admit or to deny this allegation of fact. Defendant Lansky admits that the corporate PayPal account to pay for "Bachelor Party lodging."  Defendants Lansky and Avid Telecom state

further that the use of the corporate PayPal account was merely a convenience and that the related charges were treated as income on his tax return and reimbursed in full to the company.

39.    Admit that Defendant Avid transmitted voice calls over its network that had both an originating DID and a terminating DID containing any Indiana area code (219, 260, 317, 574, 765, 812, 930, 463).

**Response**: Stacey: Defendants object to this Request on the grounds of relevance because Avid Telecom did not have a switch in Indiana and, thus, none of the calls that Avid Telecom transmitted originated in Indiana.

40.    Admit that Defendant Avid charged its customers on a per minute of use basis to transmit voice calls over its network to another Voice Service Provider.

**Response**: Defendants admit that, like most telecom service providers/information service providers, Avid Telecom charged its customers on a per minute of use basis to transmit voice calls over its network to another Voice Service Provider.  Unlike many carriers that are not defendants in this case, short duration calls that were transited the Avid Telecom network were charged a *higher per minute rate* than long duration calls, thereby creating a disincentive for carriers to direct short duration traffic to Avid Telecom.

41.    Admit that Defendant Avid charged its customers on a per call basis to transmit voice calls over its network to another Voice Service Provider.

**Response**: Defendants deny this allegation of fact.

42.    Admit that Defendant Avid has not filed any applications with any state public utility or public service commission for authorization to provide competitive local exchange services in any state.

**Response**: Defendants object to this Request on the grounds of relevance and as non-sensical as Plaintiffs should, but apparently do not understand, as the services offered by Avid Telecom were information services that are not subject to regulation at the state level and they are not competitive local exchange services and thus Avid Telecom was not required to file an application with any state public utility or public service commission for authorization to provide competitive local exchange services.

43.    Admit that Defendant Avid has not filed any applications with any state public utility or public service commission for authorization to provide VoIP Services in any state.

**Response**: Defendants object to this Request on the grounds of relevance and as non-sensical as Plaintiffs should, but apparently do not understand, that Avid Telecom was not required to file an application with any state public utility or public service commission for authorization to provide information services/VoIP Services.

44.    Admit that Defendant Avid has not filed a Form 477 with the FCC.

**Response**: Defendants object to this Request on the grounds of relevance as the AGs do not have jurisdiction over FCC filing requirements.  Defendants also object to this Request on the grounds of relevance and as non-sensical as Plaintiffs should, but apparently do not understand, that Avid Telecom was not required to file a Form 477 with the FCC.

45.    Admit that Defendant Avid has not filed a Form 502 Numbering Resource Utilization Forecast with the FCC.

**Response**: Defendants object to this Request on the grounds of relevance as the AGs do not have jurisdiction over FCC filing requirements, there is no claim in the case regarding Form 503 Numbering Utilization Forecasts and, in all events, the statute of limitations has

passed on any such claim.

46.    Admit that Defendant Avid has not filed any tariffs with the FCC relating to its VoIP Service or its sale of DIDs.

**Response**: Defendants object to this Request on the grounds of relevance as the AGs do not have jurisdiction over FCC filing requirements, there is no claim in the case regarding Form 503 Numbering Utilization Forecasts and, in all events, the statute of limitations has passed on any such claim.  Defendants also object to this Request on the grounds of relevance and as non-sensical as Plaintiffs should, but apparently do not understand, that Avid Telecom was not required to file tariffs the FCC relating to its VoIP Service or its sale of DIDs.

47.    Admit that Defendant Avid's contracts with its customers to purchase VoIP services and DIDs are individually negotiated and the prices are confidential.

Response:  Defendants object to this Request on the grounds that it is not relevant to any issue in the case and a response is not likely to lead to discoverable evidence.

48.    Admit that Defendant Avid did not request permission from the FCC to discontinue providing its VoIP Services.

Response: Defendants object to this Request on the grounds of relevance as the AGs do not have jurisdiction over FCC filing requirements, there is no claim in the case regarding a request for permission from the FCC to discontinue providing VoIP Services and, in all events, the statute of limitations has passed on any such claim.

49.    Admit that Defendant Avid has no Documents, Records, or Communications to support its assertion in Defendants' Reply (Doc. 155 at p. 5, fn 8) that "certain of the third parties who provided data [to] the AGs, took numbers out of the pool prior to the end of the

cooling off period as part of a plan and scheme to trap carriers who relied on consent and other information that was relevant to the previous 'owner', but, not to the new 'owner.'"

**Response:** Defendants deny this allegation of fact.

50.    Admit that Defendant Avid accepted call traffic from at least one foreign Voice Service Provider that transmitted calls to Avid that were the subject of at least one traceback request.

**Response**: Stacey: Defendants object to this Request on the grounds that it fails to define the term "foreign Voice Service Provider" with sufficient specificity to permit an informed response.  Defendants are prepared to meet and confer in an effort to obtain a sufficiently specific Request.

51.    Admit that in its Complaint filed against TransNexus (Doc.1, Case No. 1:22-cv-04829, US District Court, ND GA.), Avid stated that it, "specializes in the delivery of automated calls for its customers to persons who have authorized Avid Telecom's calling party customers to place those calls."

**Response:** Defendants admit that the statement was made and that it described the fact that, as a provider of information services, calls that are originated and delivered by other carriers to the third-party switch utilized by Avid Telecom are "automatically" processed (including through an automated protocol conversion) and passed on to another carrier and that this process occurs, as permitted by the TCPA, where the call delivered to the third party switch have "authorized Avid Telecom's calling party customers to place those calls.

# Exhibit C

**Pelton, Sarah**

| | |
|---|---|
| **From:** | Pelton, Sarah |
| **Sent:** | Friday, December 12, 2025 1:02 PM |
| **To:** | 'Neil Ende'; Greg Taylor |
| **Cc:** | 'Nayer, Tracy'; 'Erin Leahy'; 'Martindale, Thomas L'; Dillon IV, John; 'Sparko, Rochelle'; 'Emily.Dietz@OhioAGO.gov' |
| **Subject:** | [AZ v. Avid Telecom]: Meet and Confer Follow Up on Defendants' Responses to Plaintiffs' Second RFAs |

Counsel,

As promised during Wednesday's telephonic meet and confer, we write regarding Defendants' Responses to Plaintiffs' Second Set of Requests for Admission ("Requests"), sent November 17, 2025. As set forth below, certain Responses were deficient and improper under the Federal Rules of Civil Procedure.

Additionally, on December 8, 2025, you served another version of Defendants' Responses to Plaintiffs' Requests. Was this intended to be a supplement? If so, please resend and mark them as such.

**Defendants' Responses are Replete with Errors which Require Immediate Revision.**

Defendants' Responses contain numbering and typographical errors that render them unintelligible and unusable. For example, Defendants either do not answer or incorrectly number their response to Request 20. Additionally, Defendants' general objections responses switch between referring to Defendants as a whole and as individuals, which adds confusion (*i.e.* page 2 – "Defendants Lansky and Reeves respond only in their individual capacities, based on information reasonable available to her after a reasonable inquiry."; "Defendants' answers the RFAs below based on information presently known and reasonably available to her after a reasonable inquiry.") Accordingly, Defendants must supplement their responses to Plaintiffs' Second Set of Requests for Admissions to correct the numbering and typographical errors and provide clear, properly formatted responses.

**Defendants' Responses are Evasive, Vague, and Based on an Unreasonable Reading of Plaintiffs' Requests.**

Defendants' Responses to Requests Nos. 3-7, 15-19, 23-38, 40, 42-46, 48, and 51 show a troubling pattern of avoiding the substance of each Request in such a way that makes the response unusable. Federal Rule of Civil Procedure 36 exists to expedite matters for trial by establishing certain matters as true. "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). Requests for admission should not focus on evasion and word play. *Marchand v. Merch Med. Ctr.,* 22 F.3d 933, 938 (9th Cir. 1994).

Below is an itemized list detailing the deficiencies with each of the above Responses.

- Response to Request No. 3: The Request specifically asked whether Defendant Avid received a Traceback from the ITG related to a call Avid transmitted on its network associated with a Social Security Number. Defendants' response does not acknowledge a Traceback or the ITG in its response, which materially avoids the central purpose of the Request.
- Response to Request No. 4: Same as above.
- Response to Request No. 5: Same as above.
- Response to Request No. 6: Same as above.
- Response to Request No. 7: The Response evades directly denying the Request related to transmitting calls of Short Duration. The Response deliberately adds other language to avoid responding to the substance of the Request.

- Response to Request No. 15: The Response does not admit or deny to having received a Traceback and adds unnecessary narrative about Avid's role as a carrier in the call path.
- Response to Request No. 16:  Same as above.
- Response to Request No. 17: The Response does not answer the entirety of the Request – the Request asks whether Sumco Enterprise was a customer of Avid's VoIP service **or DID product**, but the Response only addresses Avid's VoIP service.
- Response to Request No. 18: Same as above.
- Response to Request No. 19: Reeves' Response adds additional context that is not responsive to the Request and obfuscates the nature of the admission.
- Response to Request No. 23: The Request specifically asked whether Defendant Avid received a Traceback from the ITG related to a call from one of Avid's customers. Defendants' response does not acknowledge a Traceback or the ITG in its response, which materially avoids the central purpose of the Request and adds unnecessary, self-serving context that Avid complied with industry standards.
- Response to Request No. 24: The Response adds unnecessary and self-serving context that the Request did not ask for, including that "use of the corporate credit card account was merely a convenience" and "related charges were treated as income on his tax return and reimbursed in full to the company."
- Response to Request No. 25: Same as above.
- Response to Request No. 26: Same as above.
- Response to Request No. 27: Same as above.
- Response to Request No. 28: Same as above.
- Response to Request No. 29: Same as above.
- Response to Request No. 30: Same as above.
- Response to Request No. 31: Same as above.
- Response to Request No. 32: Same as above.
- Response to Request No. 33: Same as above.
- Response to Request No. 34: Same as above.
- Response to Request No. 35: Same as above.
- Response to Request No. 36: Same as above.
- Response to Request No. 37: Same as above.
- Response to Request No. 38: Same as above.
- Response to Request No. 40: The Response adds unnecessary context concerning practice of other telecom service providers that was not asked for in the Request and serves to obfuscate the Response. Plaintiffs did not ask about how carriers were incentivized or disincentivized to use Avid Telecom's services for certain call traffic.
- Response to Request No. 42: The Response adds an unnecessary qualification explaining *why* Avid is not subject to regulation at the state level, rather than just admitting or denying the Request as written.
- Response to Request No. 43: Same as above.
- Response to Request No. 44: The Response adds an unnecessary qualification stating that Avid Telecom was not required to file a Form 477 with the FCC, rather than plainly admitting or denying the Request.
- Response to Request No. 45: The Response adds an unnecessary qualification stating that "in all events the statute of limitations has passed on any such claim."
- Response to Request No. 46: Same as above. Additionally, the Response adds an unnecessary qualification stating that Avid Telecom was not required to file tariffs with the FCC, rather than plainly admitting or denying the Request.
- Response to Request No. 48: The Response adds an unnecessary qualification stating that "in all events the statute of limitations has passed on any such claim" instead of directly admitting or denying the Request.
- Response to Request No. 51: The Response adds unnecessary context concerning Avid's practices to qualify and obfuscate its initial admission.

**Defendants' Responses Rely on Unsubstantiated Relevance Objections.**

Defendants stated several Requests are irrelevant, and thus did not provide answers to those Requests. These include Responses to Request Nos. 8, 9, 12, and 47.

Rule 36 requires any party objecting to a Request for Admission to state "[t]he grounds for objecting[.]" Fed. R. Civ. P. 36(a)(5). Relevancy objections must set forth an "explanation or argument why the requested documents are not relevant", or they will be deemed improper. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).

With this email and the telephonic status conference, Plaintiffs consider their meet and confer obligations as to these Responses as satisfied. Plaintiffs plan to proceed to file motions next week should compliant responses not be received, and will seek all appropriate relief for having to bring such motions.

Plaintiffs reserve all rights.

Regards,

**Sarah Pelton**
Assistant Attorney General
Antitrust & Privacy Unit



Arizona Attorney General Kris Mayes
2005 N. Central Ave.
Phoenix, AZ 85004
Desk: (602) 542-8018
Sarah.Pelton@azag.gov
http://www.azag.gov