Neil S. Ende, Esq.
*nende@tlgdc.com*
Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
Telephone: (202) 895-1707
Facsimile: (202) 478-5074
Attorneys for Michael D. Lansky, LLC
 *dba* Avid Telecom
Michael D. Lansky and Stacey S. Reeves

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| State of Arizona, ex rel. Kristin K. Mayes Attorney General et al. | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Case No. 4:23-cv-00233-EJM |
| Michael D. Lansky, LLC, dba Avid Telecom, LLC, an Arizona Limited Liability Company; | ) ) ) ) | **MOTION FOR RECONSIDERATION** |
| Michel D. Lansky, individually As a Member/Manager/Chief Executive Officer of Michael D. Lansky, LLC dba Avid Telecom; and | ) ) ) ) ) ) | |
| Stacey S. Reeves, individually as a Manager/Vice President of Michael D. Lansky LLC dba Avid Telecom | ) ) ) ) ) | |
| Defendants. | ) ) | |

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 4

BACKGROUND ............................................................................................................. 5

ARGUMENT .................................................................................................................. 7

   A.   This Court Is Not Bound By the FCC's Interpretation of the TCPA with Respect to
        the Issue of Personal or Vicarious Liability .................................................................. 7

   B.   Absent Chevron Deference, There Is No Basis in Fact or Law to Subject Either
        Defendant to Personal Liability ................................................................................ 11

     1. The Absence of Statutory Language Expressly Creating Personal Liability     Precludes
     the Application of Such Liability ................................................................................ 11

     2.   There Is No Factual Basis for the Application of Personal or Vicarious Liability .. 12

CONCLUSION ............................................................................................................. 15

TABLE OF AUTHORITIES

<u>C</u>ASES

*Alexander v. Sandoval* (2001), 532 U.S. 275 (2001)----------------------------------------- 12, 13

*Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies*, Inc., 961 F.3d 942 (7th Cir. 2020) -------------------------------------------------------------------------------------10

*Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) ---13

*Cent. Bank of Denver N.A. v. First Interstate Bank of Denver, NA.*, 511 U.S. 164 (1994)---- 9

*Chevron USA v. National Resources Defense Council*, 467 U.S. 837 (1984) ------------- 6, 7, 9

Citing *Jones v. Royal Admin. Servs., Inc.* 887 F.3d 443 (9th Cir. 2017) ------------------------ 5

*City Select Auto Sales Inc. v. David Randall Assocs., Inc*., 885 F.3d 154 (3d Cir. 2018) ----11

*City Select Auto Sales, Inc.*, 885 F.3d 154 (3d Cir. 2018)------------------------------------- 8

*Goodell v. BH Automotive, LLC*, 2023 WL 2691452 (USDC AZ 2023)------------------------ 5

*Jones v. Royal Admin. Servs., Inc.* 887 F.3d 443 (9th Cir. 2017) -------------------------------14

*Jones v. Royal Admin. Servs., Inc*., 887 F.3d 443 (9th Cir. 2018)-------------------------------- 6

*Kline v. Advanced Ins. Underwriters, LLP*, No. 1:19-cv-00437, 2020 U.S. Dist. LEXIS 110453, *19 (M.D. Pa., June 23, 2020) -------------------------------------------------------- 9

*Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024)------------------------------------- 7

*Marbury v. Madison*, 1 Cranch 137 (1803) ------------------------------------------------------ 7

Perrong v. Chase Data, 2024 WL 329933 (E.D. Pa. Jan 26, 2024) -------------------------------- 8

*Rucker v. Nat'l Auto. Fin. Servs. LLC,* No. CV2016377MASTJB, 2021 WL 4482831, at *3 (D.N.J. Sept. 30, 2021) ------------------------------------------------------------------------9, 13

*Worsham v. Direct Energy Services, LLC*, No. SAG-20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021) ------------------------------------------------------------------------------------- 5

*Ziglar v. Abbasi* (2017), 582 U.S. 120 (2017) ------------------------------------------------12

1  Defendants Stacey S. Reeves and Michael D. Lansky (collectively "Defendants"), through

2  undersigned counsel, pursuant to D. Ariz. LRCiv 7.2(g), hereby submit this Motion for

3  Reconsideration.[1]

4  
5  **INTRODUCTION**

6  On September 12, 2025, Defendants filed a Further Supplemental Motion to Dismiss

7  along with a Motion for Leave. On November 20, 2025, the Court issued an order (Dkt. 181)

8  accepting the Motion to Dismiss (Dkt. 151). In that Order, the Court asked Defendants to re-

9  docket their Further Supplemental Motion as a Motion to Dismiss. This Motion is filed for

10  that purpose.

11  While the Motion for Leave was pending, Defendants filed motions with the Court

12  seeking an order requiring Plaintiffs to designate witnesses on a range of topics pursuant to

13  FRCP Rule 30(b)(6). The topics at issue included the designation of witnesses capable of

14  providing testimony on issues relevant to this pleading. By Order issued on October 28, 2025,

15  the Magistrate authorized Defendant to take those depositions and ordered Plaintiffs to address

16  those Notices by no later than November 28, 2025. (Dkt.170). Defendants expected that

17  Plaintiffs would comply and that Defendants would have access to witness testimony prior to

18  the date on which the re-docketing was to occur. Remarkably, despite the mandate of the

---

[1] The Defendants, pursuant to FRCP rule 12(c), seek Judgement on this Motion for Reconsideration at the earliest because this Motion has been filed before as a Motion to Dismiss (Dkt. 151) on September 12, 2025, giving Plaintiffs plenty of time to review and respond.

4

1    Magistrate's order and multiple requests from Defendants, Plaintiffs have continued to fail and

2    refuse to designate any witnesses.

3        In a hearing conference today, the Magistrate has instructed the parties to meet and

4    confer during the next three weeks in an effort to come to an agreement on the witness

5    designation issue.  As it is now clear that Defendants will not have access to these witnesses

6    for at least an additional month, it is no longer practical to put off the re-docketing further.

7    Accordingly, to the extent necessary, Defendants ask that the Court accept this pleading nunc

8    pro tunc to December 15, 2025.  As the parties are: (i) continuing to address discovery issues,

9    (ii) depositions have yet to commence, (iii) the parties have been instructed by the Magistrate

10   to meet and confer regarding a material extension in the scheduling order (which will take end

11   of discovery well beyond the pleading cycle on this Motion), and (iv) this Motion is

12   substantively identical to the Motion that has been before Plaintiffs for more than four months

13   no possible prejudice will arise from the re-docketing of the motion now.

14                                      BACKGROUND

15       In its Further Supplemental Motion to Dismiss, Defendants presented caselaw and

16   argument demonstrating that the individual Defendants should not be held personally liable

17   under the Telecommunications Consumer Protection Act, 47 USC § 227 ("TCPA").  Citing

18   *Jones v. Royal Admin. Servs., Inc.* 887 F.3d 443 (9th Cir. 2017), which is the only case on

19   point decided by *the Ninth Circuit*, [2] Defendants also established that, as an independent

---

[2] The Court's attention was directed to the same conclusion reached by the District Court in Maryland. *Worsham v. Direct Energy Services, LLC*, No. SAG-20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021).  *See also Goodell v. BH Automotive, LLC*, 2023 WL 2691452 (USDC AZ 2023).  ("Moreover, to establish BHA's vicarious liability under an actual authority theory,

5

1    contractor with no decision-making authority, Ms. Reeves cannot be held personally or

2    vicariously liable under the TCPA.[3]  Secondly, Defendants demonstrated that Lansky cannot

3    be held personally or vicariously liable for the acts of Avid Telecom, both because there was

4    no showing that he was directly involved in making the calls or on a piercing theory.

5        This Motion for Reconsideration, like Defendants' predecessor Further Supplemental

6    Motion to Dismiss if offered bring to the Court's attention the impact that the Supreme Court's

7    decision to end *Chevron* deference,[4] along with its recent order in making it clear that, in the

8    post *Chevron* era, the application of the Hobbs Act[5] does not create a bar to independent

9    judicial interpretation of the TCPA.  As set forth below, the simple answer is that neither of

---

Plaintiffs "must do more than establish an agency relationship. They must also establish actual authority to place the unlawful calls" *citing Jones v. Royal Admin. Servs., Inc*., 887 F.3d 443, 449 (9th Cir. 2018).") (A citable version of this case was not found at the time that briefing was completed.)

[3] The facts surrounding Ms. Reeves association with Avid Telecom meet all of the relevant factors for determining whether she is an employee or an independent contractor. First and foremost, as Plaintiffs are well aware, each year Ms. Reeves received an IRS Form 1099 which included all compensation that she was paid.  She worked exclusively from an office that she established, furnished and outfitted in her house in Florida, thousands of miles away from Avid Telecom's sole office in Tucson, Arizona, she never had an ownership interest in Avid Telecom, she did not receive 401(k) retirement, healthcare or vacation benefits, she set her own hours, she had no hiring or firing authority and she had no authority of any kind to bind Avid Telecom to any decision.  Every statement that she made, including every statement referenced by Plaintiffs, was made only after obtaining the express authorization from Mr. Lansky.    In effect, Ms. Reeves conduct was exactly that of every customer service representative that we all speak with at, for example, our wireless carrier when we request a change in a service plan or an additional phone.   Just because the customer service representative is able to grant our request, does not mean that the representative him or herself is responsible for the acts of the company.  Rather the wireless service customer service representative, like Ms. Reeves, merely acted as the "front person" implementing the authorized decisions of senior management.  Plaintiffs do not even purport to offer evidence to the contrary; they cannot because there is none.

[4] *See Chevron USA v. National Resources Defense Council*, 467 U.S. 837 (1984).

[5] 28 U. S. C. § 2342.

1  them provides a legal basis for this Court not to independently consider the issue of personal

2  liability under applicable statutes and Common Law.

3                                          **ARGUMENT**

4  A.      **This Court Is Not Bound By the FCC's Interpretation**

5          **of the TCPA with Respect to the Issue of Personal or Vicarious Liability**

6

7          At the time that the original Motion to Dismiss was filed, the Supreme Court order in

8  *Chevron USA v. National Resources Defense Council*, 467 U.S. 837 (1984), which required

9  the courts to show deference to the decisions of federal agencies, was still the law of the land.

10  However, with the issuance of the Order in *Loper Bright Enterprises v. Raimondo*, 603 US

11  369 (2024), which followed the Court's Order of Defendants' Motion to Dismiss in this Case,

12  Chevron deference was no longer required.   Indeed, according to Chief Justice Roberts'

13  opinion in *Loper Bright*, the judiciary now has the sole prerogative to "say what the law is."

14  *Loper* at 7 (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803). The *Loper Bright* order

15  shifts the final say on unclear laws from agencies to the judiciary, giving courts the authority

16  to determine the single "best meaning" of a statute.[6]

17          While *Chevron* remained the law of the land, including in the consideration of the

18  Complaint [Dkt 1] and the Motion to Dismiss [Dkt 39]and the Supplemental Motion to

---

[6] According to the Court, "[t]he Framers [] envisioned that the final 'interpretation of the laws' would be 'the proper and peculiar province of the courts.'" *Loper* at p. 7 (quoting The Federalist No. 78, p. 525 (J. Cooke ed. 1961) (A. Hamilton).  In executing their traditional interpretive duty, courts "accord[ed] due respect to Executive Branch interpretations of federal statutes," particularly where "an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id*. at p. 8.  But this deference and "respect" were not absolute and could "not supersede" the judiciary's duty to interpret the law. *Id*. at p. 9

7

Dismiss [Dkt 62] in this Case, this Court, like many other Courts, showed deference to the FCC's interpretation of the TCPA as allowing the application of personal liability on individuals for claimed violations of the TCPA.  While this view of the TCPA is and always was very controversial—among other reasons because there is not a scintilla of evidence either in the legislative history of the Act or in the words of the Act that Congress intended to impose personal liability—nonetheless, most courts deferred to the FCC's interpretation without substantive independent analysis.[7]

As Defendants argued in their Motion to Dismiss [Dkt 39] and in their Supplemental Motion to Dismiss [Dkt 62], even prior to the Supreme Courts's removal of *Chevron* deference, the growing trend in the caselaw has been that corporate officer, like Mr. Lansky, cannot be held liable for alleged violations of the TCPA.  As Defendants noted, one such case, issued following the close of briefing on the Motion to Dismiss [Dkt 39], is *Perrong v. Chase Data,* 2024 WL 329933 (E.D. Pa. Jan 26, 2024).  In the *Perrong* case, the court dismissed all TCPA claims against an individual business owner, concluding:

> The Third Circuit Court of Appeals has raised "doubt" as to whether "common-law-personal participation liability is available against corporate officers under the TCPA." *City Select Auto Sales, Inc.*, 885 F.3d 154, 160 (3d Cir. 2018). The court's opinion noted that because "Congress has demonstrated in many statutes that it 'kn[ows] how to impose' personal-participation liability 'when it

---

[7] The mandated application of *Chevron* deference can be viewed particularly inappropriate in this case as, in *Chevron*, the Supreme Court had "presum[ed] that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley v. Citibank* (S.D.), N.A., 517 U.S. 735, 740–41 (1996). That presumption is especially strong for statutes where Congress has "explicitly left a gap for the agency to fill." *Chevron*, 467 U.S. at 843–44. With respect to the issue of personal liability under the TCPA, there is no basis to conclude that Congress had "explicitly left a gap for the agency to fill."

cho[oses] to do so,' the argument that Congressional silence indicates such an intent is a weak one at best." *Id.* at 161 (quoting *Cent. Bank of Denver N.A. v. First Interstate Bank of Denver, NA.*, 511 U.S. 164, 176-77 (1994)) (alterations in the original).

Since *City Select*, courts in this circuit have found that "a corporate officer is not liable under the TCPA common law personal liability principles." *KHS Corp. v. Singer Fin. Corp*, 376 F.Supp.3d 524, 530 (E.D. Pa. 2019) (finding no personal liability although defendant "personally directed and participated in" a TCPA violation); *see also Kline v. Advanced Ins. Underwriters, LLP*, No. 1:19-cv-00437, 2020 U.S. Dist. LEXIS 110453, *19 (M.D. Pa., June 23, 2020) (noting personal liability for corporate officers does "not appear to be a cognizable theory of liability under the TCPA.").

*Perrog* 2024 WL 329933 *4. Although Defendants acknowledge that the *Perrong, City Select KHS Corp, and Kline* decisions are not binding precedent on this Court, they argued that the legal analyses set forth in those cases, finding no independent legal or factual basis (other than the FCC's interpretation) for finding personal liability, were sound. This Court disagreed, finding that those cases did not reflect sufficiently new law and, in any event, they were not binding precedent in the face of *Chevron* deference.

With the elimination of *Chevron* deference, the analysis of whether a defendant can be held personally liable under TCPA requires proof that the defendant actually made the call him or herself or that the call was made under their direction for a personal purpose. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12407 (1995) [holding that it is the device itself (in that case a facsimile), not the person using the facsimile, that is the only "sender" for the purposes of the TCPA.]; *see also Rucker v. Nat'l Auto. Fin. Servs. LLC,* No. CV2016377MASTJB, 2021 WL 4482831, at *3 (D.N.J. Sept. 30, 2021) (holding that mere findings that individual defendants personally

9

1    "authorized," "oversaw," and "directed" violations at issue are not enough to sustain a claim

2    for personal liability under the TCPA). Further, mere proof of knowledge or awareness that a

3    call is being made is also not sufficient to hold personally liable under the TCPA. *See Arwa*

4    *Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies*, Inc., 961 F.3d 942, 947 (7th Cir.

5    2020).

6         Even with the withdrawal of *Chevron* deference by the Supreme Court, there still

7    remained the potential of uncertainty regarding this Court's right to independently interpret

8    whether the TCPA allowed for the application of personal liability.   This is because the

9    Administrative Order Review Act (better known as the "Hobbs Act") grants "exclusive jurisdiction"

10   to the federal courts of appeals to "determine the validity" of most FCC orders and rules and certain

11   other agency orders. 28 U. S. C. § 2342.  Some argued that the Hobbs Act would interfere with

12   the clear language of *Loper Bright*, creating new barriers to independent judicial interpretation

13   of the TCPA. Thus, until McLaughlin, there remained a large measure of uncertainty as to just

14   how much leeway this Court would have to interpret the TCPA in a manner contrary to the

15   FCC's then-existing interpretation.

16        However, the Supreme Court has recently decided that the Hobbs Act is not a barrier to

17   independent interpretation by this Court.  Specifically, in *McLaughlin*, the Court rejected a claim

18   that the Hobbs Act required courts to accept the agency's interpretation of the Communications Act

19   embodied in its rules and orders. Specifically, the Supreme Court held that the "[t]he district

20   court is not bound by the FCC's interpretation" of the TCPA and that district courts *must*

21   independently determine whether the agency's interpretation of a statute is correct.  Consistent

1    with its recent rulings in *Loper Bright*, *McLaughlin* directs lower courts to assess an agency's

2    statutory interpretation with no more deference to the logic of the agency's reasoning merits.

3    Accordingly, this Court is now free to determine whether there is any legal basis for imposing

4    personal liability on either Defendant under the TCPA or otherwise without reliance on the

5    FCC's interpretation of the Act

6    **B.    Absent Chevron Deference, There Is No Basis in**
7    **Fact or Law to Subject Either Defendant to Personal Liability**
8
9    1. The Absence of Statutory Language Expressly Creating Personal Liability
10    Precludes the Application of Such Liability

11
12    In the absence of *Chevron* deference, the analysis of whether personal liability can be

13    applied under the TCPA may still commence with a review of the TCPA itself.  That review

14    reveals no language that speaks directly or even indirectly to the issue of personal liability.

15    The statute is completely silent.  As Congress clearly understands how to include language

16    establishing personal liability in statutes, where it fails to do so, the prevailing view is that the

17    Courts should conclude that Congress did not intend to provide that remedy.[8] This concept is

18    exemplified by the canon of statutory construction generally referred to as *expressio unius est*

19    *exclusio alterius* ("the expression of one thing is the exclusion of another").  Applied to this

20    context, the principle suggests that since the TCPA specifies particular remedies or forms of

21    liability, but is silent on others, including personal liability, the enacting legislative body is

22    presumed to have intentionally excluded the unmentioned remedies. Where this is the case, a

---

[8]  *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3d Cir. 2018)

1    court is free to infer that Congress did not intend to provide other, unmentioned grounds or

2    remedies.

3         Examples of courts decisions refusing to apply remedies not found in the applicable

4    statute abound.   For example, in *Alexander v. Sandoval* (2001), 532 U.S. 275 (2001), the

5    Supreme Court ruled that private individuals could not sue to enforce disparate-impact

6    regulations under Title VI of the Civil Rights Act since the statute's text did not explicitly

7    create a private right of action for disparate-impact claims, the Court concluded Congress did

8    not intend for one to exist.  Similarly, in *Ziglar v. Abbasi* (2017), 582 U.S. 120 (2017), the

9    Supreme Court refused to create a new *Bivens* remedy (an implied right of action for damages

10   against federal officials) for constitutional violations, inter alia, concluding that because

11   Congress had not extended the kind of remedies sought, its silence must be viewed as

12   intentional and relevant.  See also *Meyer v. Holley* (2001), where the Supreme Court,

13   reviewing a Ninth Circuit holding, held that the FHA does not automatically impose absolute

14   personal liability on owners and officers for an agent's discriminatory acts, rejecting a strict

15   liability standard and emphasizing that statutory intent, based on silence, prevented the

16   automatic imposition of personal liability.

17        2.   <u>There Is No Factual Basis for the Application of Personal or Vicarious Liability</u>

18        In their 630-count complaint, Plaintiffs offer *no evidence* that Mr. Lansky or Ms.

19   Reeves actually made any of the allegedly illegal calls**,** and, in fact, it is apparent that they did

20   not.  Indeed, Plaintiffs argue over and over again that each and every call was delivered to

12

1   Avid Telecom by another carrier or from a call center that originated those calls. [9] It is beyond

2   dispute that all of the acts undertaken by the Defendants, as alleged in the complaint, were

3   undertaken exclusively in the name of the corporation, and none of these acts were undertaken

4   in either Defendant's personal name or personal capacity.   Thus, given the reasoning in

5   *Kline—i.e.,* that personal liability cannot be applied even where the Defendant personally

6   directed and participated in" a TCPA violation—such liability can only be established through

7   a piercing of the corporate veil.  As Plaintiffs have only sought to apply personal liability on a

8   piercing theory against Mr. Lansky,[10] and not against Ms. Reeves, and this Court has already

9   dismissed that piercing claim [Dkt 72] at. p. 1, there is also no remaining basis for imposing

10  personal liability on either Defendant as a matter of common law.

11       Vicarious Liability cannot be applied to hold Mr. Lansky or Ms. Reeves liable under

12  TCPA, as it is based on Common Law Principles of Agency.[11] . Applying those principles, it

13  is well established that "an employer is subject to liability for torts committed by employees

---

[9] *Rucker v. Nat'l Auto. Fin. Servs. LLC,* No. CV2016377MASTJB, 2021 WL 4482831, at *3 (D.N.J. Sept. 30, 2021).

[10] The Court wrote [Dkt 72]:

To be clear, the Plaintiffs, having failed to file an Amended Complaint, any claims relying on alter ego theories of liability, including piercing the corporate veil (Complaint (Doc. 1) ¶409), are dismissed, without prejudice. There is no corresponding Count in the Complaint dedicated to this theory of liability; therefore, the Court dismisses this as a theory of liability ***for all Counts***.

(Emphasis added).

[11] *See Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 168, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) (*citing In re Joint Petition Filed by DISH Network, LLC,* 28 FCC Rcd. 6574 (F.C.C. 2013)).

13

1    while acting within the scope of their employment."[12] However, the courts have never applied

2    this principle the other way around, applying vicarious liability to an employee based solely

3    on the acts of a company.

4          Plaintiffs are alleging the claim of vicarious liability in the case of Ms. Reeves and Mr.

5    Lansky solely on the basis of their alleged position at Avid Telecom.  As noted above, to the

6    extent that the Court finds, as it inevitably will once discovery is closed, that Ms. Reeves was

7    never an employee of Avid Telecom, any claim of vicarious liability will be without factual or

8    legal basis.[13]  In all events, as there is no factual basis for the conclusion that either Ms. Reeves

9    or Mr. Lansky acted in their personal capacity or made any of the alleged calls themselves,

---

[12] Restatement (Third) Of Agency § 2.04 (2006).

[13] *See Jones v. Royal Admin. Servs., Inc.* 887 F.3d 443 (9th Cir. 2017).  The facts surrounding Ms. Reeves association with Avid Telecom meet all of the relevant factors for determining whether she is an employee or an independent contractor.  First and foremost, as Plaintiffs are well aware, each year Ms. Reeves received an IRS Form 1099 which included all compensation that she was paid.  She worked exclusively from an office that she established, furnished and outfitted in her house in Florida, thousands of miles away from Avid Telecom's sole office in Tucson, Arizona, she never had an ownership interest in Avid Telecom, she did not receive 401(k) retirement, healthcare or vacation benefits, she set her own hours, she had no hiring or firing authority and she had no authority of any kind to bind Avid Telecom to any decision.  Every statement that she made, including every statement referenced by Plaintiffs, was made only after obtaining the express authorization from Mr. Lansky.  In effect, Ms. Reeves conduct was exactly that of every customer service representative that we all speak with at, for example, our wireless carrier when we request a change in a service plan or an additional phone.  Just because the customer service representative is able to grant our request, as Ms. Reeves did on occasion, does not mean that the representative him or herself can be held liable for the acts of the company.  Rather the wireless representative, like Ms. Reeves, merely acts as the "front person" implementing the authorized decisions of senior management.  As Defendant Reeves will demonstrate in an upcoming Motion for Summary Judgment, Plaintiffs have offered no proof to the contrary and the claims against Ms. Reeves must be dismissed.

1  and vicarious liability cannot be applied to Ms. Reeves or to Mr. Lansky solely on the basis of

2  the alleged actions of Avid Telecom, all claims based on personal liability must be dismissed.

3  **Conclusion**

4      By filing and widely publicizing a massive, harshly worded Complaint, Plaintiffs put

5  Avid Telecom out of business (almost immediately).  And, through a series of related actions,

6  Plaintiffs have effectively prevented Defendants from earning a living.  In any context, let

7  alone this one, where Plaintiffs are already financially crippled, the possibility that Defendants

8  could be held personally for actions taken by a corporate entity is a serious matter, requiring

9  the availability of specific facts and explicit statutory justification.  Respectfully, Plaintiffs'

10  claims do not come close to reaching this standard.

11      Plaintiffs' real claims, if any, are against Avid Telecom.  There is no basis in law or

12  fact to include Ms. Reeves as a defendant on any basis.  Similarly, even if Plaintiffs could

13  demonstrate that either Defendant engaged in illegal activity, which the complaint clearly does

14  not, and in fact they did not, there is no evidence or legal basis—particularly in the post

15  *Chevron* era—that justifies continuing to subject them to personal liability.

16      It is time to bring this Case within its proper framework as a fight between the AGs and

17  Avid Telecom and to stop allowing Plaintiffs to use baseless claims against Ms. Reeves and

18  Mr. Lansky as some form of pre-judgment punishment.

19      Accordingly, based on the new legal framework adopted by the Supreme Court in its

20  orders in *Loper Bright* and, recently, in *McLaughlin*, both of which were issued after the

21  previous motions to dismiss were filed, Defendants respectfully renew their request that the

1   Court independently consider whether personal liability may be attached to Defendants and

2   that it concludes those claims must now be dismissed with prejudice.

3                                          Respectfully submitted,

4
5                                          _____
6                                          Neil S. Ende
7                                          *Pro Hac Vice*
8                                          *Counsel to Michael D. Lansky, LLC*
9                                          *dba Avid Telecom*
10  Dated: February 3, 2026                *Michael D. Lansky and Stacey S. Reeves*

16

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that on the 3rd day of February 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


/s/ Silsa Cabezas

_____

Silsa Cabezas