Neil S. Ende, Esq.
*nende@tlgdc.com*
Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
Telephone: (202) 895-1707
Attorneys for Michael D. Lansky,
Michael D. Lansky, LLC dba Avid Telecom

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| State of Arizona, ex rel. Kristin K. Mayes Attorney General et al.,<br><br>Plaintiffs<br><br>v.<br><br>Michael D. Lansky, LLC, dba Avid Telecom, an Arizona Limited Liability Company;<br><br>Michel D. Lansky, individually As a Member/Manager/Chief Executive Officer of Michael D. Lansky, LLC dba Avid Telecom; and<br><br>Stacey S. Reeves, individually as a Manager/Vice President of Michael D. Lansky LLC dba Avid Telecom<br><br>Defendants. | Case No. 4:23-cv-00233-EJM |

**DEFENDANTS' REPLY TO PLAINTIFFS'**
**<u>RESPONSE TO MOTION FOR RECONSIDERATION</u>**

Michael D. Lansky, LLC dba Avid Telecom, LLC ("Avid Telecom"), Michael D. Lansky ("Lansky"), and Stacey Reeves ("Reeves"), by and through their undersigned counsel, hereby reply to the Plaintiff's response to the Motion for Reconsideration.

Argument

    a. The Further Supplemental Motion Was Proper and
<u>Timely Filed Pursuant to the Scheduling Order and LRCiv 7.2.</u>

Defendants filed their Further Supplemental Motion to Dismiss ("Further Supplemental Motion"), along with a Motion for Leave, on September 12, 2025. [Dkt. 150]. The Further Supplemental Motion to Dismiss [Dkt. 151] was filed pursuant to FRCP Rule 12(g). While Rule 12(g) prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion, it is well recognized that courts have the authority consider supplemental motions to dismiss where, as here, there has been an interim change of law that is directly relevant to material issues of law that are at issue that "could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1). *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017), aff'd sub nom. *Apple Inc. v. Pepper*, 587 U.S. 273, 139 S. Ct. 1514, 203 L. Ed. 2d 802 (2019).

Here, both the *Loper Bright* and *McLaughlin* cases, which create the procedural basis for the right to file, were issued after the original Motion to Dismiss was filed and the order issued [Dkt. 64]. And, clearly, the monumental impact of those decisions—eliminating Chevron deference is directly material to the Defendants' original Motion to Dismiss.

As the Court is aware, the *Loper Bright* decision, which was issued on June 20, 2024, marked the end of *Chevron* deference as applied to court review of statutory

2

interpretations by federal agencies. However, the application of the Chevron order to the FCC remained uncertain until the Supreme Court issued its Order in *McLaughlin*. Thus, Defendant's to avoid uncertainty as to the application of Chevron to the FCC, rightfully held off filing their Further Supplemental Motion until the Supreme Court confirmed the application of *Loper Bright* to interpretations by the FCC in *McLaughlin*. Any earlier filing would have been premature and imposed an unjustifiable burden on the Court.

The timing of Defendants' Motion—fewer than sixty days after the *McLaughlin* order was issued, and many months prior to the end date set forth in the Scheduling Order [Dkt. 102] for the filing of dispositive motions was clearly reasonable. Given the substantial activity in the case during this period, as well as the limited human and economic resources available to Defendants, the filing of Defendants' Further Supplemental Motion, in fewer than sixty (60) days following the issuance of the *McLaughlin* order, falls well within the standard of reasonable diligence required under the Local rules.[1] *See Doe v. Busby*, 661 F.3d 1001, 1006, 2011 U.S. App. LEXIS 21479, *1 (requiring the effort that a reasonable person might be expected to deliver under his or her particular circumstances).

      b. Defendants' No Conceivable Prejudice Arose from the
          Filing of the Re-Docketed Motion for Reconsideration

Defendants' Motion for Reconsideration presents the *exact same arguments* regarding the legal impact of the expanded discretion allowed by the end of *Chevron*

---

[1] The Court issued its order on the Motion for Leave that was submitted along with the Further Supplemental Motion nearly two months later, on November 20, 2025. Thus, it is apparent that the Court did not view the Further Supplemental Motion as requiring immediate action to avoid prejudice to Defendants.

3

deference. Indeed, other than the change in the title of the document and related confirming edits addressing procedural issues, the Motion for Reconsideration literally contained the exact same words as the original Further Supplemental Motion.

As the Further Motion to Dismiss and the Motion for Reconsideration are virtually identical, Plaintiffs have had access to the arguments presented for more than five months. Indeed, rather than causing Plaintiffs prejudice, the delay in the filing of the Motion for Reconsideration provided Plaintiffs with several extra months to develop and file their responsive pleading, during which period Plaintiffs gained access to additional documents and other discovery. Moreover, no depositions have been taken, and neither party has undertaken work that could have been avoided with an earlier filing.

Rhetoric aside, Plaintiffs most certainly do not come at this issue with clean hands. Plaintiffs have failed and refused to designate even a single witness in response to notices issued pursuant to FRCP 30(b)(6) nearly ten months ago. Plaintiffs' intransigence flies in the face of the Magistrate's October 24, 2025, Order [Dkt. 170] mandating that Plaintiffs address all outstanding 30(b)(6) issues by no later than November 28, 2025. However, despite numerous requests from Defendants, Plaintiffs failed and refused to do so prior to the December 15, 2025, date for the filing of the re-docketed Motion for Reconsideration. Plaintiffs failed to engage on this issue through the date on which the re-docketed Motion for Reconsideration was filed in complete frustration.

Defendants regret that the distractions caused by Plaintiff's ongoing refusal to meet its discovery obligations caused it to miss the original date for the re-docketed

4

motion. However, given the importance of the issues raised, the relatively brief delay, Plaintiffs' own conduct, and the complete absence of any prejudice, let alone material prejudice, the balance of the equities clearly favors acceptance of the re-docketed Motion for Reconsideration and consideration on its merits.

   c. <u>Defendants' Motion Should be Granted on its Merits</u>

      i. <u>Defendants' Motion Qualifies as a "Change in law."</u>

A motion for reconsideration is procedurally appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *See Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993). As an initial matter, it is important to keep in mind that the re-docketing of Defendants' Further Supplemental Motion to Dismiss came at the request of the Court, after the Court had granted Defendants' request for leave to file their Further Supplemental Motion to Dismiss. As this re-docketing was effectuated based on an order of the Court, following the grant of leave to file the substantively equivalent Further Supplemental Motion to Dismiss, the refusal to accept the filing as a Motion for Reconsideration on procedural grounds does not seem appropriate.

Secondly, it is undisputed that both *Loper Bright* and *McLaughlin* represent a material change in the law governing the Court's consideration of the central issues in this case. As such, there can be no doubt that a Motion for Reconsideration is a proper vehicle for the Court to consider the issues presented.[2]

---

[2] There is no question that the Supreme Court's decision in In *Loper Bright*—which overruled a decision that had been cited in over 18,000 federal court opinions—was, as described in the *Regulatory Review* as "a sea change in administrative law" that ". . .

    ii. The Court Did Rely on the FCC's Conclusion
      Regarding Personal Liability Under the TCPA

   Plaintiff's assertion that this court did not rely on the FCC's interpretation for imposing personal or vicarious liability is wrong.  It is beyond legitimate dispute that, prior to *Loper Bright*, courts were required to defer to the interpretations law enunciated by federal agencies, including the FCC. Thus, Defendants are reasonable in assuming that, at a minimum, the Court understood that principles of Common Law, as reflected in numerous district court cases that weighed against personal liability, could not be considered, and certainly not relied upon in its Order.  To the contrary, the Court was not allowed to exercise its independent judgment, including relying on Common Law principles of tort liability.  *Chevron* deference required that the reasoning as well as the substance of the Court's Order had to be in compliance with the FCC's interpretation.

   The above realities are clear in the language of the Court's Order that the Court allowed Plaintiffs' claims of personal liability under TCPA were based on the FCC interpretation of the TCPA.[3]  While the Court's Order on the Motion to Dismiss references numerous Common Law cases addressing personal liability for corporate conduct, none of those cases arose under the TCPA or any comparable statute.  The two

---

marks the end of an era of judicial abdication." According to the Review, "[w]hat is certain is that the Supreme Court has handed down one of the most important decisions in the history of administrative law."  Justice Gorsuch described it as placing ". . . a tombstone on *Chevron* no one can miss." The Harvard Law Review described *Loper Bright* as "a momentous decision", 138 Harv. L. Rev. 227 (https://harvardlawreview.org/print/vol 138/the-demise-of-deference-and-the-rise-of-delegation-to-interpret/).

[3] FCC's interpretation of TCPA stating that "The agency has clarified that the sender subject to liability under the statute is the person "on whose behalf [the faxes] are transmitted". *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 FCC Rcd. 12391, 12407 (1995) [hereinafter 1995 Order].*

cases cited by the Court [Dkt 64 at p. 20] that did arise under the TCPA, *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 (D. Md. 2011) and *Texas v. Am. Blastfax*, 164 F.Supp.2d 892, 898 (W.D.Tex. 2001), both found personal liability based on deference to the FCC's view of the statute, notably, without any actual evidence that the statute so permits. Specifically, in *Texas v. Am. Blastfax*, the Court's finding of personal liability under the TCPA relied specifically on the fact that the Federal Communications Commission has interpreted:

> 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute.

*See Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892, 899, 2001 U.S. Dist. LEXIS 12879, *17.

The Court's failure to consider Common Law principles applicable to the TCPA in its Order is understandable in the era of mandated *Chevron* deference. However, now that *Chevron* deference is a relic of history, the Court is free to consider Common Law principles as they arise under the TCPA and, as demonstrated through the multiple cases cited in Defendants' Motion for Reconsideration,[4] those principles plainly do not authorize the application of personal liability. The absence of any consideration in the Court's Order

---

[4] *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 160 (3d Cir. 2018)). Since *City Select*, courts in this circuit have found that "a corporate officer is not liable under the TCPA common law personal liability principles." *KHS Corp. v. Singer Fin. Corp*, 376 F.Supp.3d 524, 530 (E.D. Pa. 2019) (finding no personal liability although defendant "personally directed and participated in" a TCPA violation); *see also Kline v. Advanced Ins. Underwriters, LLP*, No. 1:19-cv-00437, 2020 U.S. Dist. LEXIS 110453, *19 (M.D. Pa., June 23, 2020) (noting personal liability for corporate officers does "not appear to be a cognizable theory of liability under the TCPA."). *Perrog* 2024 WL 329933 *4.

or in Plaintiff's responsive pleading of common law principles associated with conduct under the TCPA further confirms that the Court relied exclusively on the FCC's interpretation of personal liability.[5]

Plaintiffs also assert that the *City Select* [6] decision, acknowledging the Supreme Court's decision in *Meyer v. Holley,* provides that where a statute is silent, Congress intended for ordinary tort rules to apply. However, Plaintiffs' reading of these cases is simplistic and self-serving. First, *Meyer v. Holley* involved an interpretation of the Fair Housing Act, not the TCPA, so its ruling is inapposite. However, even if the ruling in *Meyer v. Holley* is applicable, Plaintiffs carefully avoid advising the Court that the conclusion that statutory silence leading to the application of tort liability only applies because it is ". . .. consistent with the FCC's interpretation of 'sender'" . . .." *See City Select* at 164, 2018 U.S. App. LEXIS 6558, *24, 2018 Comm. Reg. (P & F) 21, 2018 WL 1354268. As the case cited by Defendants in their Motion for Reconsideration (at pp. 12-13)[7] expressly found that the individual Defendants cannot be considered to be

---

[5] Federal Communications Commission has interpreted "willful or knowing" under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute. *See Texas v. Am. Blast Fax, Inc*., 164 F. Supp. 2d 892, 899, 2001 U.S. Dist. LEXIS 12879, *17. Further, it is also pertinent to note that this case is not a binding precedent for this court.

[6] Ironically, while Plaintiffs cite *City Select* in response assert that other district courts have declined to apply *City Select* and cite one case, which is not binding to this court. In comparison, Defendants cite numerous cases relying on *City Select* and, on that basis, finding there to be no personal liability under the TCPA. Defendants believe that these cases amply demonstrate that in a post-*Chevron* world, where reliance on FCC interpretations is not required, the court must consider an interpretation of TCPA based on Common Law principles and, on that basis, refuse to impose personal liability.

[7] *Rucker v. Nat'l Auto. Fin. Servs. LLC*, No. CV2016377MASTJB, 2021 WL 4482831, at *3 (D.N.J. Sept. 30, 2021); *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc*., 961 F.3d 942, 947 (7th Cir. 2020)

the "senders" of the calls under the TCPA, Plaintiffs' reliance on this language of *City Select* is particularly inappropriate and cannot be the basis of a **post-Chevron** determination of personal liability.

Significantly, the Ninth Circuit cases addressing the issue of personal liability also rely on the FCC's Interpretation for the imposition of vicarious liability under TCPA by relying on *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013) (noting that a "broad range of agency principles" may be employed in seeking to hold a principal liable for an agent's TCPA violations*). See Jones v. Royal Admin. Servs*., 887 F.3d 443, 448, 2018 U.S. App. LEXIS 8587, *9, 2018 Comm. Reg. (P & F) 36, 2018 WL 1631476. Hence, the basis for the imposition of personal liability and vicarious liability under TCPA was through deference to the FCC's interpretation and can now be brought into question with the Supreme Court's rejection of *Chevron* deference through *Loper Bright* and *McLaughlin*, holding that the district is not bound by the FCC's interpretation of the TCPA and should independently interpret the statute.

iii. <u>There Is No Need for Further Discovery</u>

Defendants argue that it is premature to decide the issue of personal liability prior to the close of discovery. While this argument might be meritorious in certain circumstances, it is not in the instant case. As discussed, the Common Law does not allow for a finding of personal liability in the absence of proof that a person was directly involved in the sending of a call; *e.g.,* that he/she actually dialed the call or otherwise initiated the call at issue. The complaint that Plaintiffs drafted is, however, devoid of any direct or even indirect allegation to this effect. Rather, with respect to this issue, Plaintiffs refer only to Avid Telecom as the party transiting or otherwise associated with

the initiation of each call. Thus, having failed to lay the factual predicate for a finding of personal liability, Plaintiffs should not be allowed to delay the day of reckoning by claiming a right to discover facts that they chose not to allege.

Further, concerning vicarious liability claims under TCPA against Ms. Reeves, it is not a matter of discovery, as the Plaintiffs' application of vicarious liability is plainly wrong. Even assuming arguendo that Ms. Reeves is an employee of Avid, the Common Law provides that "an employer is subject to liability for torts committed by employees while acting within the scope of their employment."[8] The opposite is never true; *i.e.,* an employee is never liable for the acts of a company merely based on her status as an employee. Hence, regardless of the discovery, the vicarious liability claims under TCPA against Ms. Reeves need to be dismissed. Moreover, in response to the discovery propounded by Defendants, Plaintiffs have not provided a single document or other evidence showing that Reeves was involved in the dialing of any call or any related activity required for personal liability under the Common Law. Nor have Plaintiffs sought any discovery that addresses this issue. Additional discovery should not be allowed at this late date.

## Conclusion

With the end of *Chevron* deference, this Court is now free to independently interpret TCPA in relation to the personal liability claims against Lansky and Reeves. Defendants respectfully believe that a careful review of the applicable caselaw decided before *Loper Bright* and *McLaughlin* further supports the conclusion that the TCPA

---

[8] Restatement (Third) Of Agency § 2.04 (2006).

itself does not prescribe or even suggest the existence of personal liability and that there can be no finding of personal liability as a matter of Common Law.

Accordingly, Defendants respectfully request that the Court reconsider its Order on Defendants' Motion to Dismiss based on the new law enunciated in Loper Bright and McLaughlin, and that it dismiss the personal liability claims against Defendants Lansky and Reeves as sought under the TCPA.

                                          Respectfully submitted,

                                          _____
                                          Neil S. Ende
                                          *Pro Hac Vice*
                                          *Counsel to Michael D. Lansky, LLC*
                                          *dba Avid Telecom*
Dated: March 3, 2026               *Michael D. Lansky and Stacey S. Reeves*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of March 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/ Silsa Cabezas
_____
Silsa Cabezas