Neil S. Ende, Esq.
*nende@tlgdc.com*
Technology Law Group, LLC
5335 Wisconsin Avenue, NW
Suite 440
Washington, DC 20015
Telephone: (202) 895-1707
Facsimile: (202) 478-5074
Attorneys for Michael D. Lansky, LLC
 *dba* Avid Telecom
Michael D. Lansky and Stacey S. Reeves

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, ex rel. Kristin K. Mayes Attorney General et al. ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 4:23-cv-00233-EJM |
| Michael D. Lansky, LLC, dba ) Avid Telecom, LLC, an Arizona ) Limited Liability Company ) ) | |
| Michael D. Lansky, individually ) ) | |
| and ) ) | |
| Stacey S. Reeves, individually ) ) | |
| Defendants. ) | |

## MOTION FOR SUMMARY JUDGMENT ON CLAIMS ARISING UNDER THE TCPA AND ON CLAIMS OF PERSONAL LIABILTY AGAINST DEFENDANT STACEY REEVES

Table of Contents

INTRODUCTION…………………………………………………………..1

STATEMENT OF UNDISPUTED MATERIAL FACTS   …………………….....2

THE LEGAL STANDARD…………………………………………………….2

BACKGROUND……………………………………………………………4

ARGUMENT - Federal Law Claims…………………….......................5

    I.  It is Undisputed that Avid Telecom is an Information Services Provider……….5

    II.  Information Service Providers are Not Subject to TCPA Jurisdiction…………..8

          a.    The Service Provided by Avid Telecom is an "Interactive Computer Service"……………………………………………………………12

          b.    Avid Telecom is Not a "Publisher or a "Speaker"…………………………16

          c.    Avid Telecom Transmitted Calls Exclusively Using Content/Information Provided by Third Parties……………………17

          d.    Avid Telecom is Immune From Suit Under Section 230…………….….18

          e.    Lansky and Reeves are also Immune from Suit Under Section 230……....19

    III.  Reeves is Entitled to Summary Judgment Because Her Relationship to Avid Telecom Was as an Independent Contractor and All Her Actions Were Undertaken Exclusively In That Capacity………..20

          a.    Plaintiffs Have No Facts to Support the Allegation of Actual Knowledge...21

          b.    Plaintiffs Have No Facts to Support the Allegation that Reeves is an Employee………………………………………………………….23

i

IV.    State Law Claims………………………………………………………..29

   a.  The State Law Claims Against Avid Telecom are Preempted………………..29

       1.  The State Law Claims Against Avid Telecom are Expressly Pre-empted…30

       2.  The State Law Claims against Avid Telecom are Subject to Implied Preemption…………………………………………………………...36

   V. CONCLUSION………………………………………………………….38

Table of Authorities

**<u>Caselaw</u>**

<u>State and Federal Cases</u>

*American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988)…………………6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)……………………………2

*Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 947 (7th Cir. 2020)………………………………………………………………………………21

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009)……………………11, 17

*Barrett v. Clark*, 2001 WL 881259 at *9 (Cal. Sup. Ct. 2001)…………………………..13

*Barrientos v. 1801-1825 Morton LLC,* 583 F.3d 1197, 1208 (9th Cir. 2009)…………...30

*Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003)……………………………………13

*Bobrow v. Bobrow*, 241 Ariz. 592, 390 P.3d 1224 (App. 2014)………………………..7

*Bradford v. Sovereign Pest Control of TX, Inc*………………………………………………1

*Bride v. Snap Inc.*, No. 2:21-CV-06680-FWS-MRW, 2023 WL 2016927, at *8 (C.D. Cal. Jan. 10, 2023)……………………………………………………………………………18

*California Architectural Build. Prods., Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied,* 484 U.S. 1006, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988)…..3

*Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024)………………………11, 18

*Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 168, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)……………………………………………………………………………………23

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1123, 1124 (9th Cir. 2003)……………9, 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)……………………………………………2

*Cipollone v. Liggett Grp., Inc.,* 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992)……………………………………………………………………………………30

*City Select Auto Sales Inc. v. David Randall Assocs., Inc.,* 885 F.3d 154, 159 (3d Cir. 2018)……………………………………………………………………………………………..20

*Clackamas Gastroenterology Assocs., P. C. v. Wells,* 538 U.S. 440, 450, 123 S. Ct. 1673, 1680, 155 L. Ed. 2d 615 (2003)……………………………………………………….29

*Cour v. Life360, Inc.*, No. 16-cv-00805-TEH (N.D. Cal. July 28, 2016)…………………9

*Doe v. Grindr Inc.*, No. 2:23-CV-02093-ODW-PDX, 2023 WL 9066310, at * (C.D. Cal. Dec. 28, 2023)……………………………………………………………………………18

*Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1062 (N.D. Cal. 2025)……...10

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008)………………………………………19

*Doe v. Twitter, Inc. and individual Twitter employees,* No. 24-177 (9th Cir. 2025)…….19

*Fed. Trade Comm'n v. Morton Salt Co*., 334 U.S. 37, 44–45, 68 S. Ct. 822, 827, 92 L. Ed. 1196 (1948)………………………………………………………………………………31

*First National Bank of Arizona v. Cities Service Co.,* 391 U. S. 253 (1968)……………….3

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)……………………………………………………………………………………37

*Gentry v. eBay, Inc*., 99 Cal. App. 4th 816, 831 & n.7 (2002)…………………………..13

*Glauser v. GroupMe, Inc.* No. C 11-2584 PJH (N.D. Cal. Feb. 4, 2015)…………………9

*Gomez v. Campbell-Ewald* Co., 768 F.3d 871 (9th Cir. 2014)…………………………..23

*Gonzalez v. Google, LLC,* 598 U.S. 617 (2021)………………………………………...17

*Gospel Missions of America v. City of Los Angeles,* 328 F.3d 548 (9th Cir. 2003)………7

*Homeaway.com v. City of Santa Monica*, 918 F.3d at 682 (2019)………………………15

*In re Joint Petition Filed by DISH Network, LLC, 28 FCC Rcd. 6574 (F.C.C. 2013)…..23

*In re Zoom Video Commc'ns Inc. Privacy Litig.*, 525 F. Supp. 3d 1017, 1029 (N.D. Cal. 2021)……………………………………………………………………………………..12

*Jones v. Google LLC,* 73 F.4th 636 (9th Cicr. 2023)…………………………………...30

*Jones v. Royal Admin. Servs., Inc.,* 887 F.3d 443 (9th Cir. 2017)……………………....2

*Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991)…………………………..8

*King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 795 (N.D. Cal. 2021)……………………18

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13, 144 S. Ct. 2244, 2273, 219 L. Ed. 2d 832 (2024)……………………………………………………………………………...1, 20

*Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703 (3d Cir. 1988)……………8

*McDermet v. DirecTV, LLC*, No. 19-11322-FDS (D. Mass. Jan. 21, 2021)………………9

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2022–23 (2025)…………………………………………………………………………….…………1, 20

*Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)…..29

*Metrophones Telecommunications, Inc. v. Glob. Crossing Telecommunications, Inc.*, 423 F.3d 1056, 1072 (9th Cir. 2005), aff'd, 550 U.S. 45, 127 S. Ct. 1513, 167 L. Ed. 2d 422 (2007)…………………………………………………………………………………….37

*Mountain States Tel. v. Arizona Corp. Comm'n*, 160 Ariz. 350 (Ariz. 1989)…………...10

*Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943 (9th Cir. 2010)………………….24, 29

*Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318 (1992), 503 U.S. 318 at 324, 112 S.Ct. 1344 (*quoting NLRB v. United Ins. Co. of America,* 390 U.S. 254, 258, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968)……………………………………………………………...24, 29

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245 (11th Cir. 2015)*……………………………………………………………………………………..20

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007)……………….....11

*Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)………...8

*Perrong v. Chase Data Corp., et al.*, Civil Action 22-2628 (USDC EDPA 2024)……....21

*Rossi v. Hammons*, 34 Ariz. 95, 268 P. 181 (1928)………………………………………7

*Royal Seas Cruises (Prospect DM)*, No. 17-CV-00986-BAS-AGS (S.D. Cal. Jan. 29, 2021)…………………………………………………………………………..10

*Rucker v. Nat'l Auto. Fin. Servs. LLC*, No. CV2016377MASTJB, 2021 WL 4482831, at *3 (D.N.J. Sept. 30, 2021)……………………………………………………….21, 23, 24

*Schneider v. Amazon.com*, 31 P.3d 37, 40- 41 (Wash Ct. App. 2001)…………………..13

S*helcusky v. Garjulio*, 797 A.2d 138, 144 (N.J. 2002)…………………………………8

*Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848 (9th Cir. 1995)………………………………..7

*Sikhs for Just., Inc. v. Facebook, Inc.*, 697 Fed. App'x 526 (9th Cir. 2017)……………..17

*Smith v. Substack, Inc.*, No. 24-CV-00727-AGT, 2024 WL 3757501, at *3 (N.D. Cal. Aug. 12, 2024)………………………………………………………….10

*State v. Towery*, 186 Ariz. 168, 920 P.2d 290 (1996)……………………………………7

*Texas v. Am. Blastfax, Inc.,* 164 F. Supp. 2d 892 (W.D. Tex. 2001)………………………21

*United States v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080, 1103 (S.D. Cal. 2024)…..9

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.,* CIV 96-785 PHX RCB. USDC AZ (1997)………………………………………………………………………………...7

*Vonage Holdings Corp. v. Minnesota Pub. Utilities Comm'n,* 290 F. Supp. 2d 993, 1003 (D. Minn. 2003)………………………………………………………………………..37

*Winter v. United States*, 190 F. Supp. 2d 1187 (D. Ariz. 2002)……………………………7

*Wright A. Miller, & M. Kane, Federal Practice and Procedure* § 2725, pp. 93-95 (1983)………………………………………………………………………………...3

*Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1168, 1175–76 (9th Cir. 2009)…………..12

*Zeran v. Am. Online, Inc.,* 129 F.3d 327, 330–31 (4th Cir. 1997)…………………....14, 19

<u>Regulatory Orders</u>

*Declaratory Ruling and Order*, (Dkt Nos 02-278 07-135, 30 FCC Rcd 7961  (July 10, 2015)……………………………………………………………………....9

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12407 (1995)…………………………………………..20

<u>Statutes</u>

Communications Act of 1934, as amended, 47 U.S.C. § 227………………………*passim*
Communications Act of 1934, as amended, 47 U.S.C. 151………………………………4
Communications Act §153……………………………………………………….10
Communications Decency Act, 47 U.S.C. § 230……………………………………..*passim*
Communications Decency Act, 47 U.S.C. § 230(c)(1)……………………………..9, 18
Communications Decency Act, 47 U.S.C. § 230(e)(3)……………………………...19
Communications Decency Act, 47 U.S.C. § 230(f)(2)……………………………..12
Communications Decency Act, 47 U.S.C. § 230(f)(3)……………………………..17
Communications Decency Act, 47 U.S.C. § 230(f)(4)……………………………..12

<u>Other Authorities</u>

Restatement (Third) Of Agency § 2.04 (2006)…………………………………..23

Defendants Michael D. Lansky, LLC dba Avid Telecom, LLC, Michael D. Lansky and Stacey S. Reeves (collectively "Defendants"), through undersigned counsel, and pursuant to FRCP 56 and Local Rule 56.1, hereby seek an Order granting summary judgment in favor of: (i) all Defendants on claims arising under the TCPA; and (ii) claims of personal liability against Defendant Reeves as set forth in the Complaint [Dkt 1]. As demonstrated by the attached Statement of Undisputed Facts and Applicable Law (Exhibit I hereto), there are no genuine material facts requiring a trial.[1]

## INTRODUCTION

For the purpose of *this pleading*, Defendants accept the facts set forth by Plaintiffs in the Complaint [Dkt 1], to the extent that they support the conclusion that Avid Telecom is not a common carrier but, rather, it is a provider of Information Services as those services are understood and defined by the Federal Communications Commission ("FCC"). As explained below, these facts are sufficient, standing alone, to require that all claims asserted

---

[1] With the end of *Chevron* Deference in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024), the courts need not defer to the FCC's agency interpretation; rather, the District Court should interpret the TCPA as courts traditionally do under ordinary principles of statutory interpretation. *See also McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 145 S. Ct. 2006, 2022–23 (2025). This principle was just reaffirmed by the Fifth Circuit in *Bradford v. Sovereign Pest Control of TX, Inc*. which held that the TCPA permits *either written or oral* consent for autodialed or pre-recorded/artificial voice telemarketing calls, explicitly rejecting the Federal Communications Commission's ("FCC") regulations imposing a prior express written consent requirement for such calls. The Fifth Circuit's decision applies the principles previously articulated in the United States Supreme Court's *Loper Bright* and *McLaughlin* one-two punch: courts are not bound by FCC interpretations of the TCPA and are free in TCPA litigation outside a direct appellate challenge to an FCC rule, to interpret the statute contrary to longstanding FCC authority.

by Plaintiffs under the TCPA, or under any companion state law, be dismissed pursuant to the explicit immunity terms of Communications Decency Act ("CDA"), 47 U.S.C. § 230.

Further, while the Court declined to dismiss the personal liability claims against Defendant Reeves while discovery was still pending, written discovery has now closed, and Plaintiffs have failed to come forward with any evidence supporting the conclusion that Ms. Reeves was anything other than an independent contractor and, as such, immune from personally liable claims arising under the TCPA. *Jones v. Royal Admin. Servs., Inc.* 887 F.3d 443 (9th Cir. 2017).

STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to FRCP 56 and LRCiv 56.1(a), attached hereto is a Separate Statement of Undisputed Material Facts, each supported by citations to the record, including declarations and other admissible evidence, showing that no material fact is in dispute.

THE LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. Once that burden is met, to survive the motion, the nonmoving party must set forth specific facts showing a genuine material issue of fact that needs to be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (holding that the moving party must demonstrate the absence of a genuine issue of material fact, but does not need to negate the opponent's claim with

2

evidence.[2] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *See generally Wright, A. Miller, & M. Kane, Federal Practice and Procedure* § 2725, pp. 93-95 (1983)." *Id.* at 248. If the nonmoving party's evidence is merely colorable or is not significantly probative, a court may grant summary judgment. *See, e.g., California Architectural Build. Prods., Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied,* 484 U.S. 1006, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988).

As set forth hereinbelow, *all* of the material facts necessary for the grant of summary judgment in favor of Avid Telecom have been directly, specifically and aggressively asserted by Plaintiffs in this proceeding. Plaintiff is bound to these facts, both for the purposes of this pleading and in any trial on the facts.[3] Thus, there is literally no factual basis on which Plaintiffs can assert the existence of material dispute sufficient to prevent summary judgment.[4]

---

[2] The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. *Id*. 477 U. S. 256-257.

[3] *See* substantive discussion, *infra.*

[4] Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *See generally Wright, A. Miller, & M. Kane, Federal Practice and Procedure* § 2725, pp. 93-95 (1983). Rule 56(e)'s provision that a party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson* at 478, *citing First National Bank of Arizona v. Cities Service Co.,* 391 U. S. 253 (1968). As all of the facts that might affect the outcome of the suit are both admitted and binding on Plaintiffs, the grant of summary judgment is clearly warranted.

3

BACKGROUND

The Communications Act of 1934, as amended, 47 U.S.C. 151, *et seq.* (the "Communications Act"), as interpreted by the FCC, provides for two categories of service providers: common carriers and information service providers. Service providers fall into one category or the other.

In their Response to the Defendants' Motion to Dismiss, Plaintiffs assert, *aggressively and repeatedly*, that "Defendant Avid Telecom is . . . an information service provider." [Dkt 45 at. p. 20].

For the purposes of *this pleading*, Defendants accept, and do not dispute, the facts asserted by Plaintiffs, along with their conclusion, as a matter of law, that Defendant Avid Telecom is a provider of information services.[5]

All Defendants seek summary judgment based on Avid Telecom's undisputed status as an "information service provider" exempt from regulation under the TCPA pursuant to the terms of the CDA and a long line of Ninth Circuit cases decided thereunder. Further, Defendant Reeves seeks summary judgment based on the undisputed fact that she operated exclusively as an independent contractor, immune from liability under the TCPA.[6]

---

[5] Defendant Avid Telecom reserves all rights with respect to this issue should the Court decline to grant this Motion.

[6] As set forth in the previously filed Further Supplemental Motion to Dismiss [Dkt 151], Defendants Lansky and Reeves argue that in the aftermath of the *Loper Bright* and the *McLaughlin* cases, there is no legal or factual basis in the governing caselaw to apply personal liability to either of them. The arguments in this motion for summary judgment in favor Reeves, provide additional bases for finding in favor of Reeves.

<u>ARGUMENT</u>
<u>Federal Law Claims</u>

I.    <u>It is Undisputed that Avid Telecom is an Information Services Provider</u>

In its successful effort to avoid the dismissal of the complaint based on the common carrier exception, Plaintiffs argue, at length, that Avid Telecom's operations qualify it as an "information services" provider.  Among the specific facts asserted by Plaintiffs are the following:[7]

> "... Defendant Avid Telecom is not a common carrier, but rather it is an information-service provider."
> [Dkt 45 at. p. 20].

> If the provider is an information-service provider, it cannot be a common carrier.
> [Dkt 45 at. p. 20].

> "A number of federal courts have concluded that Voice over Internet Protocol ("VoIP") providers, like Defendant Avid Telecom, operate as information services [providers], not telecommunications services [providers]."
> [Dkt 45 at. p. 22].

> Since the capability to perform protocol conversion is a defining attribute of VoIP telephony, Defendant Avid Telecom is an "information service" provider within the meaning of the Communications Act and is not subject to regulation as a common carrier.
> [Dkt 45 at. p. 23].

---

[7] In support, Plaintiffs argue that Avid Telecom is a provider of VoIP services because it "mak[es] available information via telecommunications by providing the capability to transform that information through net protocol conversion."

As set forth in the Declarations of Defendants Lansky and Reeves and confirmed in the Declaration of Scott Presta, the CEO of Avid Telecom's switching services provider, SipNav, all of the services utilized by Avid Telecom used the VoIP technology protocol. *See* Exhibits I, II, and IV.  Thus, *based on the facts asserted by Plaintiffs*, and confirmed in these declarations, Avid Telecom is not a common carrier but, instead, it is a provider of information services.

Not only do Plaintiffs argue, relentlessly, that Avid Telecom is a provider of information services, and not a common carrier, in the Complaint and in their motion papers, they offer no facts or argument of any kind, or in any context, claiming or even suggesting that Avid Telecom is anything other than an information services provider. Thus, for the purposes of this pleading, the Court should and must accept Plaintiffs' facts and rule on that basis that Avid Telecom operates exclusively as a provider of information services.

Plaintiffs' allegations, and the legal conclusions that are required as a result, are the death knell of their claims under the TCPA.  As an initial matter, Ninth Circuit precedent holds that facts formally asserted in pleadings—such as a complaint or an opposition to a motion to dismiss—constitute judicial admissions, which are binding on the party and cannot be denied or contradicted for the purpose of defeating summary judgment. *See American Title Ins. Co. v. Lacelaw Corp*, 861 F.2d 224, 226 (9th Cir. 1988) ("[f]actual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them"). Arizona courts recognize this so-called "No-Contradiction" rule to prevent a Plaintiff from creating a "genuine

dispute" by later contradicting facts asserted in their own complaint or supporting pleadings.[8] Thus, both as a matter of legal mandate and as a matter of simple fairness, Plaintiffs' use of the claim that Avid Telecom is an information services provider as a weapon to successfully avoid the dismissal of their Complaint, must mean that Plaintiffs are bound to the legal consequences of that assertion.

Not only do Plaintiffs' aggressive claims that Defendant Avid Telecom is an information services provider constitute irrevocable admissions of fact, but notably those claims also take the question of Avid Telecom's legal status off the table in all subsequent motions, including this motion for summary judgment. *See Winter v. United States*, 190 F. Supp. 2d 1187, 1190 (D. Ariz. 2002)(judicial admissions are formal admissions in pleadings, which have the effect of withdrawing a fact from issue and dispensing with the need for proof of fact); *Gospel Missions of America v. City of Los Angeles* ["prior statements in pleadings regarding key legal relationships (like privity) function as binding judicial admissions]; and *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.,* CIV 96-785 PHX RCB. USDC AZ (1997) *citing Sicor Ltd. v. Cetus Corp.* 51 F.3d 848 (9th Cir. 1995)

---

[8] *See also* the following cases addressing the principle of judicial estoppel: *Rossi v. Hammons*, 34 Ariz. 95, 268 P. 181 (1928); *State v. Towery*, 186 Ariz. 168, 920 P.2d 290 (1996) (a party who has assumed a particular position in a judicial proceeding may not later assume an inconsistent position in a subsequent proceeding involving the same parties and questions); *Bobrow v. Bobrow*, 241 Ariz. 592, 390 P.3d 1224 (App. 2014) (holding to the doctrine that the "position first asserted must have been successfully maintained", noting that the doctrine usually applies between separate actions but can apply across phases of the same case.). The instant case meets each of the requirements set forth in these cases, to wit:  (i) the same party has taken clearly inconsistent positions in one or more judicial proceedings; (ii) the earlier position was successfully maintained or accepted by the court; and (iii) application of judicial estoppel is necessary to protect the integrity of the judicial process.

7

(under Ninth Circuit law, a statement in a complaint serves as a judicial admission).[9] Thus, for the purpose of determining whether Avid Telecom is subject as a common carrier to liability under the TCPA, or whether it is immune as mandated by the CDA, this Court should and must consider Avid Telecom to be a provider of information services, and therefore immune from all liability under the TCPA.

II.    Information Service Providers are Not Subject to TCPA Jurisdiction

As noted above, Plaintiffs dedicated many pages of their response to Defendants' Motion to Dismiss to an effort to prevent the Court from concluding that Avid Telecom is a common carrier and thus that its traffic is non-jurisdictional under the TCPA (the so-called "common carrier exception). In this effort, Plaintiffs allege numerous facts that they allege demonstrate that Defendant Avid Telecom is not a common carrier, but rather that is a provider of information services.

To avoid the preclusive effect of the common carrier exception, Plaintiffs argue aggressively that Avid Telecom is a provider of information services. In so doing, Plaintiffs "shot themselves in the proverbial foot" by failing to recognize that *information service providers are not subject to TCPA jurisdiction*. Indeed, in enacting the CDA,

---

[9] Because allegations of fact by Plaintiffs in the Complaint [Dkt 1] and/or in supporting pleadings and/or testimony are considered, judicial admissions courts in the Ninth Circuit (and across the nation) routinely disregard affidavits or statements submitted in opposition to summary judgment that contradict a plaintiff's prior statements, under the so-called "sham affidavit" doctrine. *See, e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991); S*helcusky v. Garjulio*, 797 A.2d 138, 144 (N.J. 2002); *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703 (3d Cir. 1988).

Congress specifically and intentionally immunized information service providers from liability associated with the content that they transmit or host. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1123, 1124 (9th Cir. 2003) ("Under § 230(c), therefore, so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process."). Specifically, the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). As an interactive computer service is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server", providers of information services qualify for immunity under 47 U.S.C. § 230. As such, it is beyond dispute that information service providers are immune from liability both under federal laws, including the TCPA, as well as state or local law." *Id.* § 230(e)(3). *See United States v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080, 1103 (S.D. Cal. 2024).[10]

---

[10] *See also Glauser v. GroupMe, Inc.* No. C 11-2584 PJH (N.D. Cal. Feb. 4, 2015) (concluding that a provider is not subject to TCPA liability where the "affirmative choices by the app user" determine who receives messages; *Cour v. Life360, Inc.*, No. 16-cv-00805-TEH (N.D. Cal. July 28, 2016), where a district court dismissed TCPA claims against Life360, a mobile application operator, finding that it was not the "sender" of texts initiated using its platform. The court held that Life360 could not be liable because users—not the application itself—selected when and to whom the texts were sent. The court relied on the FCC's 2015 Declaratory Ruling and Order, 30 FCC Rcd 7961 (July 10, 2015), which held that the "affirmative choices made by the app user," particularly the user's ability to select recipients and initiate the communication—rather than the provider—led the FCC to conclude that the user maker of the communication for TCPA purposes. *McDermet v. DirecTV, LLC*, No. 19-11322-FDS (D. Mass. Jan. 21, 2021) (where the court determined that "no rational factfinder could find that defendants were directly or vicariously liable" for calls made by DirecTV's authorized retailers rather than by DirecTV itself); *cf. Royal*

9

The principle that providers of information services are exempted from liability under state and federal law is well established in the Arizona state courts.  For example, in *Mountain States Tel. v. Arizona Corp. Comm'n*, 160 Ariz. 350 (Ariz. 1989), the Arizona Supreme Court addressed "information access service providers" in relation to state regulation of carriers. The court discussed the distinction between "telecommunications service" and "information service" under both federal law (notably Communications Act §153) and Arizona statutes.  The court concluded  that the term "information service" means a service that offers capabilities for "generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications, and includes electronic publishing—but does not include… the management, control, or operation of a telecommunications system or service"[][][]. This treatment of information service providers aligns with the federal definition found in 47 U.S.C. §153.[11]   Thus, as alleged by Plaintiffs, "Voice over Internet Protocol ("VoIP") providers, like Defendant

*Seas Cruises (Prospect DM)*, No. 17-CV-00986-BAS-AGS (S.D. Cal. Jan. 29, 2021), where the court rejected vicarious liability claims against Royal Seas because the express language in the contract between Royal Seas and its lead provider required that any leads come from individuals who had consented to be contacted. Although consent is not at issue in all of the calls, the principle that a provider cannot be held liable where its contract expressly requires the customer to only send lawful traffic is directly relevant as each of Avid Telecom's contracts contained an express representation by the customer that all of the traffic that it sends will be in full compliance with all applicable laws and regulations.
[11]  This same conclusion has also been adopted in other courts in the Ninth Circuit.  *See Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1062 (N.D. Cal. 2025); *Smith v. Substack, Inc.*, No. 24-CV-00727-AGT, 2024 WL 3757501, at *3 (N.D. Cal. Aug. 12, 2024).

Avid Telecom, operate as information services [providers], not telecommunications services [providers]." [Dkt 45 at. p. 22].

Critically, the Ninth Circuit has interpreted the CDA to establish broad federal immunity to actions that would—as Plaintiffs improperly attempt here—make VoIP providers, like Defendant Avid Telecom—which operate exclusively as information services providers—liable for content originating from third-party users of the service. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007). *See also Calise v. Meta Platforms, Inc.,* 103 F.4th 732 (9th Cir. 2024)(confirming that platforms hosting third-party content are protected by § 230(c)(1) as interactive computer service providers; *Barnes v. Yahoo!, Inc.* (9th Cir. 2009) 570 F.3d 1096 (9th Cir. 2009)(upholding that an online service provider is not liable for its failure to remove third-party content, affirming the protection of interactive computer services).

The Ninth Circuit has articulated a three-prong test for immunity under the CDA. Immunity from liability exists for "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009). As Plaintiffs' allegations in their response to the Motion to Dismiss fully demonstrate, Defendant Avid Telecom's operations meet each prong of this test. Hence, Plaintiffs' own arguments confirm, both

11

as a matter of fact and thus as a matter of law, that Defendants are immune from liability under the TCPA.[12]

  a. <u>The Service Provided by Avid Telecom is an "Interactive Computer Service"</u>

  The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the internet . . .." 47 U.S.C. § 230(f)(2). Courts interpret the term "interactive computer service" broadly. *See In re Zoom Video Commc'ns Inc. Privacy Litig.*, 525 F. Supp. 3d 1017, 1029 (N.D. Cal. 2021).  Any information service or access software provider capable of being accessed by multiple users qualifies under the CDA. *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1168, 1175–76 (9th Cir. 2009). Under the Communications Act, "access software providers" include software providers that "transmit, receive, display, [or] forward . . . content." 47 U.S.C. § 230(f)(4).

  The affirmative allegations of fact set forth in Plaintiffs' Complaint and their supporting motion papers [Dkt 1; Dkt 45] evidence that Avid Telecom is an "access software provider." As Plaintiffs repeatedly allege, the Avid Telecom switch utilizes software allowing users to transmit telemarketing messages to consumers.[13] [Dkt 45 at. pp.

---

[12] At least one court has concluded that the "on behalf of" language in 47 USC § 227(c)(5) is only triggered when the consumer has received *more than one* unsolicited call or text within a 12-month period.  Where only a single call is alleged, there is no vicarious liability hook under § 227(c), and § 227(b) does not supply one either.  As Plaintiffs have not alleged that any consumer received more than one illegal call, vicarious liability cannot attach to Defendants.

[13] In the complaint, Plaintiffs themselves also state that Defendants use dialing software, which is a software or technology that initiates as many calls as possible. [Dkt 1 at. p. 15]

23-25]. Plaintiffs also repeatedly allege that these telemarketing messages contain unlawful "content" (*e.g.,* content promoting auto warranty and Medicare services).

Plaintiffs allege, as a matter of fact, that Avid Telecom "provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(4). [Dkt 1 at. p. 10]. Defendants do not dispute this allegation. Thus, for the purposes of this Motion, it is undisputed that the software associated with Avid Telecom's switch allows customers to access its computer servers used by Avid Telecom to deliver messages utilizing an interactive computer service.[14] [Dkt 1 at. p. 10].

Defendants expect that Plaintiffs will argue that Avid Telecom cannot claim immunity under the CDA because they do not seek to hold Avid Telecom liable "in its role as a provider or user of a computer service" but instead for the conduct associated with distributing users' messages. This argument is unavailing. As the Ninth Circuit made clear in *Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003):[15]

> There is, however, no need here to decide whether a listserv or website itself fits the broad statutory definition of "interactive computer service," because the language of § 230(c)(1) confers immunity not just on "providers" of such services, but also on "users" of such services. [footnote omitted] § 230(c)(1).

---

[14] The Plaintiffs in the whole 140 Page Complaint time and time again state that "telemarketers or sellers were transmitting robocalls across Avid Telecom's network and using Avid Telecom's services to send call traffic that violated federal and state laws." [Dkt 1]

[15] Other courts construing § 230(f)(2) have recognized that the definition includes a wide range of cyberspace services, not only internet service providers. *See, e.g.*, *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 831 & n.7 (2002) (on-line auction website is an "interactive computer service"); *Schneider v. Amazon.com*, 31 P.3d 37, 40- 41 (Wash Ct. App. 2001) (online bookstore Amazon.com is an "interactive computer service"); *Barrett v. Clark*, 2001 WL 881259 at *9 (Cal. Sup. Ct. 2001)(newsgroup considered an "interactive computer service").

13

Similarly, in *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330–31 (4th Cir. 1997) the Fourth Circuit concluded:

> The CDA was designed to avoid imposing requirements on service providers to make 'a legal judgment concerning the information's defamatory character, and an on-the-spot editorial decision whether to risk liability by allowing the continued publication of that information' because while 'this might be feasible for the traditional print publisher, the sheer number of postings on interactive computer services would create an impossible burden in the Internet context.'

The rationale of *Batzel* and *Zeran* is directly applicable to the current matter. The TCPA imposes liability *on a call-by-call basis*; *i.e.,* imposing a forfeiture of $500 *for each call* determined to be unlawful without proof that the conduct was "willful" and a forfeiture of $1500 for each call determined to be unlawful with proof that the conduct was "willful". 47 U.S.C. § 227.  There is no language in the TCPA that provides or even suggests that liability can attach to any call where there is an absence of proof that *the call at issue* was unlawful; *i.e.,* that each call at issue had each of the following three characteristics: (i) it was originated using a predictive dialer, (ii) using a pre-recorded voice, and (iii) was for a commercial purpose. ***Remarkably, the Complaint merely assumes, but it is completely devoid of any evidence that any of these elements, let alone all three, exist for any of the calls at issue.***[16]

The Complaint relies entirely on a theory of liability that is exactly what the CDA precludes.  Specifically, for Defendants to avoid liability under Plaintiffs' theory, they

---

[16] Remarkably, Plaintiffs' expert report also fails to provide direct evidence that the calls at issue originated using a predictive dialer, used a pre-recorded voice or was for a commercial purpose.

would have had to make *real-time judgments* regarding the lawfulness of billions of calls initiated by third parties who created the content without the involvement of Defendants.[17] As thousands, if not millions, of these calls were delivered by third parties simultaneously, as in *Zeran*, the sheer number of calls received by Avid Telecom's interactive computer service created an "impossible burden" on Avid Telecom to make a "legal judgment" concerning the lawfulness of the circumstances associated with or the content of each call.[18] The CDA was enacted specifically to avoid imposing these moderation duties on providers of interactive computer services.[19] *Homeaway.com v. City of Santa Monica*, 918 F.3d at 682 (2019).

---

[17] It goes without saying that it is not technologically or legally feasible for carriers to make a real-time determination of whether the actual content of a call is legal, except in very limited circumstances such as when a lawful intercept order is served by law enforcement [*e.g.,* under the Communications Assistance for Law Enforcement Act ("CALEA")], enabling monitoring under strict protocols. *Avid Telecom never received an intercept order*. Absent a CALEA intercept order, carriers do not analyze the substantive content of live voice calls for legality in real time due to privacy laws, technological limitations, and the lack of established automated frameworks.

[18] As the Fourth Circuit has noted, "Congress made a policy choice not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.   Congress' purpose in providing the § 230 immunity was thus evident.   Interactive computer services have millions of users.   The amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems.   Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted.   Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect." *Zeran,* 129 F.3d at 330-31 (citation omitted); *See also* Batzel, 333 F.3d at 1027 (quoting *Zeran* with approval). Under § 230(c), therefore, so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process.

[19] Plaintiffs' effort to apply the "knew" or "should have known" standard to the calls received by Avid Telecom would negate the very purpose of the CDA to immunize

15

b.  Avid Telecom is Not a "Publisher or a "Speaker".

Plaintiffs allege that Avid Telecom should be held liable because it provided substantial assistance to sellers or telemarketers in violation of the TSR for: (1) initiating outbound prerecorded telephone calls to induce the purchase of goods or services; (2) initiating outbound telephone calls to consumers on the National DNC registry to induce the purchase of goods or services; and (3) failing to disclose the identity of the seller of the goods or services truthfully, promptly, and clearly. [Dkt 1 at. pp. 87-88]**.**  Each of these claims is designed to establish Avid Telecom as a "publisher" or a "speaker".

As an initial matter, Plaintiffs offer no evidence that any Defendant had any role in the creation of the content of any message in any call that transited the Avid Telecom network.  The reason is simple: *no Defendant ever had any such role*.  *See* Declaration of Michael Lansky at para. 29; Declaration of Stacey Reeves at para. 21.  Thus, there is no factual basis on which the Court could conclude that the immunity established by the CDA does not apply to any Defendant.

Moreover, as every call that Plaintiffs allege to have been unlawful is premised— as it must be under the TCPA and the TSR—on the unlawful *content* of each call at issue, neither of the exceptions to CDA immunity apply.[20]  Defendants qualify for immunity

providers of interactive computer services from the obligation to moderate the third-party content that they receive regardless of whether they "should have known" or even if they "knew" of the message content.

[20] Plaintiffs' claims are all based on the content of the calls, including Medicare Rewards, Auto Warranty, Employment Request, Amazon Account Debit, and DirecTV Discount. [Dkt 1 at. pp. 31-32].

16

under the CDA as all of the content that they transit comes exclusively from third parties that use their services.[21]

### c. Avid Telecom Transmitted Calls Exclusively Using Content/Information Provided by Third Parties

Further, to the extent that Plaintiff's claims are read to be premised on Avid Telecom's status as a "publisher" of third-party content distributed by its software,[22] a long line of Ninth Circuit and district court precedent bars these claims. For example, in *Sikhs for Just., Inc. v. Facebook, Inc.*, 697 Fed. App'x 526 (9th Cir. 2017), the court dismissed the complaint as a matter of federal law, finding that Section 230 immunizes Facebook from liability as a publisher for its decisions regarding content and dismissing the state law claims as preempted by Section 230. Similarly, in *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), the Ninth Circuit held that Section 230(c)(1) bars liability where the claim seeks to hold an internet service provider liable for publishing content created by another party. Again, in *Gonzalez v. Google, LLC* 598 U.S. 617 (2021), the Ninth Circuit recognized that even where there is some level of involvement by the platform provider—

---

[21] The CDA is inapplicable to an "information content provider," which is defined as someone who "is responsible, in whole or in part, for the creation or development of" the offensive content. 47 U.S.C. § 230(f)(3). As no Defendant ever provided any content, nor did any Defendant ever participate in the creation of any content, none of them qualifies as information content providers.

[22] In the Complaint, Plaintiffs allege that, "[T]elemarketers or sellers were transmitting robocalls across Avid Telecom's Network." [Dkt 1 at. p. 10]. Further, every traceback referenced in the Complaint identifies the customers who created the content and delivered the calls containing that content to Avid Telecom. [Dkt 1 at. p. 40] Thus, all of the facts on which Plaintiffs rely are predicated on the fact that the allegedly unlawful content was being created and sent across Avid Telecom *by its customers*. Nowhere in the Complaint does the Plaintiff assert, let alone meet its burden to demonstrate, that Avid Telecom had any role in creating the content.

*e.g.,* by providing targeted algorithmic recommendations—it is protected under Section 230, so long as the claims treat the platform as a publisher of third-party content, not as the creator.  Finally, in *Calise v. Meta Platforms, Inc*. 103 F.4th 732 (9th Cir. 2024), the court clarified the scope of Section 230(c)(1) immunity, reaffirming the "three-prong test" from *Barnes*: (1) the defendant is an interactive computer service provider, (2) the claim seeks to treat the provider as a publisher or speaker, and (3) the content at issue was provided by another party.[23]  Where, as here, all three prongs are met, Section 230 bars liability for harms caused by user-generated content.

        d. Avid Telecom is Immune From Suit Under Section 230

In addition to creating a defense to liability, Section 230 also makes clear that Section 230 provides complete immunity from suit.[24]  Indeed, the plain language of Section 230(e)(3) reflects Congress's intent to provide broad immunity from being subject to suit, not merely immunity from liability, stating that "[n]o cause of action may be brought and

---

[23] Similarly, in *Doe v. Grindr Inc.*, No. 2:23-CV-02093-ODW-PDX, 2023 WL 9066310, at * (C.D. Cal. Dec. 28, 2023) the court dismissed without leave to amend a complaint where "the core theory" seeks to treat the defendant as a "publisher or speaker of third-party content").  Again, in *Bride v. Snap Inc.*, No. 2:21-CV-06680-FWS-MRW, 2023 WL 2016927, at *8 (C.D. Cal. Jan. 10, 2023), the court dismissed Plaintiffs' claims with prejudice finding that Snap is not responsible for the third-party content posted on its platform.  And, again in *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 795 (N.D. Cal. 2021) the court dismissed the complaint, finding that Facebook is protected by Section 230 of the Communications Decency Act (CDA), which shields online platforms from liability for content moderation decisions.  For each of these reasons, Avid Telecom's undisputed status as a provider of "information services" completely precludes any liability under the TCPA.

[24] In the Ninth Circuit, immunity from suit and preemption of inconsistent state laws are not mutually exclusive defenses.  *Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1125 (9th Cir. 2003) ("[W]e conclude that Congress intended that service providers . . . be afforded immunity from suit").

no liability may be imposed under any state . . . law that is inconsistent with this section."

47 U.S.C. § 230(e)(3) (emphasis added).[25]

e.  Lansky and Reeves are also Immune from Suit Under Section 230

The claims of personal liability against Lansky and Reeves are all derivative of alleged conduct on behalf of Avid Telecom.  There is no allegation, nor are there any facts that could support the conclusion that any of their conduct was undertaken in their personal capacity.  Indeed, all of the evidence is to the contrary.  *See* Declaration of Michael Lansky as Exhibit. I, Declaration of Stacey Reeves as Exhibit II.

By its terms, Section 230 protects any "provider or user of an interactive computer service." The courts have read this language to include natural persons, not just corporate entities.[26]  Thus, when an officer is sued solely because of the alleged conduct of a provider's platform, courts typically hold that Section 230 immunity applies to the

---

[25] Other sections of the statute confirm Section 230 immunity. For example, when Section 230(b) is read together with 230(c)(1) and 230(e)(3), it is clear that Congress intended that the statute afford information service providers with immunity from suit.

[26] *See Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) (holding that AOL was immune under Section 230 for failing to remove defamatory postings by a third party; later cases and commentary note that this reasoning extends to employees sued for the service's publication decisions, so long as they qualify as "providers or users" of the interactive computer service and are not themselves the information content providers); *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) (applying Section 230, the court barred claims premised on MySpace's failure to protect users from another user's misconduct, treating the platform's decision-making about user content and interactions as publisher conduct covered by Section 230, which by its terms extends to any provider or user, including natural persons acting in that capacity); and *Doe v. Twitter, Inc. and individual Twitter employees,* No. 24-177 (9th Cir. 2025) (various federal district court decisions) (dismissing claims against both the company and named employees where the theory of liability was based on hosting or failing to remove user-generated content, applying the same three-part Section 230 test to the employees as to the company.

19

individual to the same extent that it applies to the provider.  As Avid Telecom is entitled to immunity as a provider of information services, Lansky and Reeves are entitled to that same immunity for all acts undertaken on behalf of the company.

> III.    Reeves is Entitled to Summary Judgment Because Her Relationship to Avid Telecom Was as an Independent Contractor and All Her Actions Were Undertaken Exclusively In That Capacity

With the change in legal landscape following *Loper Bright* and *McLaughlin*, Courts are no longer required to defer to the interpretation of law and regulation applied by an agency, and they are now free to apply their independent judgment regarding the proper interpretation of the TCPA.   *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13, 144 S. Ct. 2244, 2273, 219 L. Ed. 2d 832 (2024); *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp*., 145 S. Ct. 2006, 2022–23 (2025).  As the application of personal liability under the TCPA is not found anywhere in the statute itself, and it is nothing more than a regulatory scheme created and crafted by the FCC, this Court should and must take a fresh look at whether such liability exists either under the TCPA or at Common Law.[27] Reeves is confident that this court will determine, as many other courts have in the post-*Chevron* era, that liability does not attach as a matter of law.

---

[27] FCC's interpretation of TCPA provides that "The agency has clarified that the sender subject to liability under the statute is the person "on whose behalf [the faxes] are transmitted". *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 10 FCC Rcd. 12391, 12407 (1995) [hereinafter 1995 Order]. *City Select Auto Sales Inc. v. David Randall Assocs., Inc.,* 885 F.3d 154, 159 (3d Cir. 2018) and also relied on in *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,* 781 F.3d 1245 (11th Cir. 2015). None of the facts asserted by Plaintiffs even suggests that any of the calls were transmitted on behalf of Reeves.

a. <u>Plaintiffs Have No Facts to Support the Allegation of Actual Knowledge</u>

Even if the personal liability can be applied under the TCPA, Defendant Reeves cannot be held personally liable because Plaintiffs have provided *no evidence* that she had the required direct, personal participation in or personally authorized conduct found to have violated the statute". *Texas v. Am. Blastfax, Inc.,* 164 F. Supp. 2d 892 (W.D. Tex. 2001). The caselaw is clear that mere allegations that an individual personally "authorized," "oversaw," and "directed" violations at issue were not enough to sustain a claim for personal liability under the TCPA.[28]  For example in *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc*., 961 F.3d 942, 947 (7th Cir. 2020), the court concluded that:

> The only claim Arwa offers in support of Silverman's liability was that he "knew" or "was aware" that Med-Care's procedures included sending the faxes. Mere knowledge is insufficient. In the present case, it was the CEO against whom the plaintiffs had a claim of personal liability, which was dismissed because mere knowledge and awareness as proof is insufficient.

*See also Perrong v. Chase Data Corp., et al.*, Civil Action 22-2628 (USDC EDPA 2024)(while Congress can and does impose personal-participation liability when it chooses, there is no such language in the TCPA an thus personal liability cannot be applied).

The discovery in this case confirms that Plaintiffs have no evidentiary basis for their claim that Reeves had actual knowledge.[29] Defendants propounded the following series of

---

[28] *Rucker v. Nat'l Auto. Fin. Servs. LLC*, No. CV2016377MASTJB, 2021 WL 4482831, at *3 (D.N.J. Sept. 30, 2021).

[29] The RFP Requests define "Actual Knowledge" as **"**information that the person whose knowledge is at issue is consciously aware."

21

RFPs asking Plaintiffs to provide documentary evidence in support of their claims the Reeves had "Actual Knowledge" of illegality:[30]

> Request No. 37.  Please produce all Documents that the Lead Plaintiff States allege demonstrate that Stacey S. Reeves, in her individual capacity, had Actual Knowledge at the time that a call transited the Avid Telecom network that each and every call identified in the previous Request was an illegal robocall under federal law.

> Request No. 38.  Please produce all Documents that the Lead Plaintiff States allege demonstrate that Stacey S. Reeves, in her individual capacity, had Actual Knowledge at any time after a call transited the Avid Telecom network that each and every call identified in the previous Request was an illegal robocall under federal law.

> Request No. 39.  Please produce all Documents that the State Law Action States allege demonstrate that Stacey S. Reeves, in her individual capacity, had Actual Knowledge at the time that a call transited the Avid Network that each and every call identified in the previous Request was an illegal robocall under state law.

> Request No. 40.  Please produce all Documents that the State Law Action States allege demonstrate that Stacey S. Reeves, in her individual capacity, had Actual Knowledge at any time after a call transited the Avid Network that each and every call identified in the previous Request was an illegal robocall under state law.

Plaintiffs provided *no documents* in response to any of the above requests.[31]

Hence, as the Complaint fails to offer evidence of actual knowledge sufficient to meet the applicable legal standard, and Plaintiffs have failed to come forward with any

---

[30] The RFPs defined "Actual Knowledge" as information which the person whose knowledge is at issue is consciously aware.  Defendant Reeves Second RFPs to Plaintiffs at p. 5 ("Definitions").

[31] To be clear, in response to Defendants' RFPs, Plaintiffs did not provide any documents that support the conclusion that Defendant Reeves had "Actual Knowledge".

proof in the discovery process, there are no material facts in dispute and Ms. Reeves is entitled to summary judgment rejecting all claims of personal liability.

b.  Plaintiffs Have No Facts to Support the Allegation that Reeves is an Employee

Claims of vicarious liability—which are based on common law principles of agency—also cannot be the basis to hold Reeves liable under TCPA.[32]  Under the TCPA, "officers or employees are generally not liable for statutory violations based solely on their corporate offices or ownership." *See Rucker v. Nat'l Auto. Fin. Servs. LLC*, No. CV2016377MASTJB, 2021 WL 4482831, at *3 (D.N.J. Sept. 30, 2021). Thus, even if Reeves were an officer or even an employee of Avid Telecom—which she was not—she cannot be held liable for the acts of the company.  *See* the Declarations of Reeves and Lansky, *passim*.  Moreover,  it is well established that while "an *employer* is subject to liability for torts committed by *employees* while acting within the scope of their employment",[33] the courts have never applied this principle the other way around; *i.e.,* applying vicarious liability to an employee based solely on the acts of the company.  *Gomez v. Campbell-Ewald* Co., 768 F.3d 871 (9th Cir. 2014) (Emphasis added).[34]  There is no authority—Ninth Circuit or otherwise—for "reverse" vicarious liability holding an agent or an employee liable for their principal/employer's independent decisions or directives.

---

[32] *See Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 168, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) (*citing In re Joint Petition Filed by DISH Network, LLC,* 28 FCC Rcd. 6574 (F.C.C. 2013)).

[33] Restatement (Third) Of Agency § 2.04 (2006).

[34] Under the TCPA, "officers or employees are generally not liable for statutory violations based solely on their corporate offices or ownership.

23

Moreover, as set forth in Defendants' Motion for Reconsideration (Dkt 207 at. p. 9), under the TCPA, even "officers or employees are generally not liable for statutory violations based solely on their corporate offices or ownership *See Rucker v. Nat'l Auto. Fin. Servs. LLC*, No. CV2016377MASTJB, 2021 WL 4482831, at *3 (D.N.J. Sept. 30, 2021).

In its Order on Defendants' Motion to Dismiss, the Court held that whether an employee is an independent contractor is a legal conclusion based on a factual inquiry aimed at determining whether the hiring party has the right to control the manner and means by which the product is accomplished. [Dkt 64 at. pp. 15-16]. The relevant factors to be considered, were identified by the Court, as follows:

      a.   the skill required.
      b.   the source of the instrumentalities and tools.
      c.   the location of the work.
      d.   the duration of the relationship between the parties
      e.   whether the hiring party has the right to assign additional projects to the hired party.
      f.   the extent of the hired party's discretion over when and how long to work.
      g.   the method of payment.
      h.   the hired party's role in hiring and paying assistants.
      i.   whether the work is part of the regular business of the hiring party and whether the hiring party is in business.
      j.   the provision of employee benefits
      k.   the tax treatment of the hired party.

*Id.* (*quoting Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945–46 (9th Cir. 2010)) (quoting *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)).

Reeves meets each and every criteria associated with being an independent contractor:

a.   The Skill Required: The complaint does not include any facts evidencing that Reeves did not have the skill required to perform the service provided to Avid Telecom.  Rather, the undisputed evidence is that Ms. Reeves performed services supporting the operational and sales policies created and presented to her by Avid Telecom and that Ms. Reeves had the skills required to implement the sales policies created and presented to her by Avid Telecom.  *See* Reeves Declaration (Exhibit II hereto) at para. 33. Moreover, Plaintiffs in their responses to Reeves' Requests for Documents ("RFP") produced showing that she was involved with the purchase of DID—which is a highly specific skill required for her position, and emails sent by the Industry Traceback Group to her, which, again, evidence her skill in dealing with that complex issue.  *See* Reeves Declaration [Exhibit II, Schedule 1 (Plaintiffs' RFP Responses)]; *see also* Lansky Declaration (Exhibit I hereto) at para. 32.  Thus, the undisputed facts support Reeves' status as an independent contractor with respect to this element of the standard.

b. The Source of Instrumentalities and Tools:  The undisputed evidence is that no instrumentalities or tools used by Reeves in the performance of her duties as an independent contractor were provided by Avid Telecom. This evidence includes the fact that Ms. Reeves' office was always within her residence in Florida and none of the furniture, computer, mobile phone, fax machine and all other tools and instrumentalities required for Ms. Reeves to provide her independent contractor services, were by provided by, nor were the costs associated with any of those items reimbursed by Avid Telecom or by Lansky. *See* Reeves Declaration (Exhibit II hereto) at para. 23-24; Lansky Declaration (Exhibit I hereto) at para. 33-34. Moreover, in their responses to Reeves' Requests for Documents Plaintiffs ("RFP") do not produce a single document that Avid Telecom provided any instrumentalities or tools that Reeves used in providing these services.  Rather, Plaintiffs produced a number of Lansky's personal credit card statements, none of which evidence a single item purchased for Reeves by Avid Telecom. *See* Reeves Declaration [Exhibit II, Schedule 1 (Plaintiffs' RFP Responses); (Exhibit II hereto) at para. 23-24]. Thus, the undisputed facts continue to support Reeves' status as an independent contractor with respect to this element of the standard.

c.   The Location of the Work: The undisputed evidence is that Ms. Reeves' office was always within her residence in Florida and that she never had an office at Avid Telecom's office in Arizona. Indeed, Ms. Reeves was never in Avid Telecom's office in Arizona.  *See* Reeves Declaration (Exhibit II hereto) at para. 24; Lansky Declaration (Exhibit I hereto) at para. 34. In their responses to Reeves' Requests for Documents ("RFP") Plaintiffs do not

provide a single document that evidences the contrary. *See* Reeves Declaration [Exhibit II, Schedule 1 (Plaintiffs' RFP Responses); (Exhibit II hereto) at para. 24]. Thus, the undisputed facts support Reeves' status as an independent contractor with respect to this element of the standard.

d.     The Duration of the Relationship Between the Parties: Ms. Reeves did not have a long-term relationship with Avid Telecom. The undisputed evidence is that the duration of Ms. Reeves' work as an independent contractor for Avid Telecom was fewer than three years.  Ms. Reeves never had an agreement with Avid Telecom that guaranteed a specific time period for their relationship, and either party could end it at any time.  Ms. Reeves was also free to work for others should she choose to do so.  *See* Reeves Declaration (Exhibit II hereto) at para. 25; Lansky Declaration (Exhibit I hereto) at para. 35. Thus, the undisputed facts support Reeves' status as an independent contractor with respect to this element of the standard.

e.     Whether the Hiring Party has the Right to Assign Additional Projects to the Hired Party:   The undisputed evidence is that Avid Telecom always had the right, and it exercised that right on a daily basis, to determine Ms. Reeves' work assignment.  Ms. Reeves never had the authority to decide what matters she would work on; she only worked on projects assigned to her by Avid Telecom. *See* Reeves Declaration (Exhibit II hereto) at para. 33; Lansky Declaration (Exhibit I hereto) at para. 43. Moreover, the Plaintiffs acknowledge in their responses to Reeves' Request for Documents ("RFP") that they do not have any documents to refute that Ms. Reeves only worked on projects that were assigned by Avid Telecom. *See* Reeves Declaration [Exhibit II, Schedule 1 (Plaintiffs' RFP Responses)]. Thus, the undisputed facts support Reeves' status as an independent contractor with respect to this element of the standard.

f.     The Extent of the Hired Party's Discretion over When and How Long to Work: The undisputed evidence is that as long as she completed assigned tasks in a timely manner, Ms. Reeves always had discretion over when and how long to work.  Ms. Reeves did not have an assigned vacation period, and she was never paid for vacation time. Moreover, Plaintiffs acknowledge in their responses to Reeves' Requests for Documents ("RFP") that they do not have any documents evidencing that Reeves did not set hours of work and that she received any paid vacation time.  *See* Reeves Declaration [Exhibit II, Schedule 1 (Plaintiffs' RFP Responses)]. Thus, the undisputed facts support Reeves' status as an independent contractor with respect to this element of the standard.

g.    Method of Payment: The undisputed evidence is that Ms. Reeves never received a salary; rather, she was paid exclusively as an independent contractor, as reflected on the IRS Form 1099 that Ms. Reeves received from Avid Telecom each year. Ms. Reeves' own tax returns also reflect that all of her compensation was paid in a manner consistent with her status as an independent contractor, and she reported the same on her own tax returns. The undisputed evidence is that Ms. Reeves' compensation was never tied to any sales metric; *i.e.,* she did not receive extra compensation based on the sales in which she was involved. *See* Reeves Declaration (Exhibit II hereto) at para. 31-32; Lansky Declaration (Exhibit I hereto) at para. 41-42. Moreover, Plaintiffs acknowledge in their responses to Reeves' Requests for Documents ("RFP") that they do not have any documents evidencing that Reeves received any extra bonuses or compensation from Avid Telecom based on her performance and further the Plaintiffs also admit in their responses to Reeves' Request for Admission ("RFA") that Plaintiffs have no facts evidencing IRS or any agency having ever challenged Reeves' status as independent contractor. *See* Reeves Declaration [Exhibit II, Schedule 1 (Plaintiffs' RFP Responses)]( Exhibit II, Schedule 2 (Plaintiffs' RFA Responses). Thus, the undisputed facts support Reeves' status as an independent contractor with respect to this element of the standard.

h.    The Hired Party's Role in Hiring and Paying Assistants: The undisputed evidence is that Ms. Reeves never played any role in hiring or firing, nor did she ever have a role in paying assistants, contractors, or any third party. *See* Reeves Declaration (Exhibit II hereto) at para. 29; Lansky Declaration (Exhibit I hereto) at para. 39. Moreover, Plaintiffs acknowledge in their responses to Reeves' Requests for Documents ("RFP") that they do not have any responsive documents evidencing that Ms. Reeves was involved in a hiring or firing decision by Avid Telecom. *See* Reeves Declaration [Exhibit II, Schedule 1 (Plaintiffs' RFP Responses)]. Thus, the undisputed facts support Reeves' status as an independent contractor with respect to this element of the standard.

i.    Whether the Work is Part of the Regular Business of the Hiring Party and Whether the Hiring Party is in Business:  The undisputed evidence is that the services were all a part of Avid Telecom's ordinary business activities and that all the services that Ms. Reeves provided were at the instruction of and pursuant to the policies identified to her by Avid Telecom. During Ms. Reeves' tenure as an independent contractor, Avid Telecom was an ongoing business. *See* Reeves Declaration (Exhibit II hereto) at para. 30; Lansky Declaration (Exhibit I hereto) at para. 40. Thus, the undisputed facts support Reeves' status as an independent contractor with respect to this element of the standard.

27

j.    The Provision of Employee Benefits and the Tax Treatment of the Hired Party: The undisputed evidence is that Ms. Reeves never received any benefits, compensation, healthcare benefits, vacation benefits, or retirement benefits associated with status as an employee. *See* Reeves Declaration (Exhibit II hereto) at para. 31; Lansky Declaration (Exhibit I hereto) at para. 41. Moreover, Plaintiffs acknowledge in their responses to Reeves' Requests for Documents ("RFP") that they do not have any documents evidencing that Reeves received any extra bonuses, compensation, health benefits, or retirement benefits from Avid Telecom. *See* Reeves Declaration [Exhibit II, Schedule 1 (Plaintiffs' RFP Responses)]. Thus, the undisputed facts support Reeves' status as an independent contractor with respect to this element of the standard.

k.    The Tax Treatment of the Hired Party:  The undisputed evidence is that, during each year of her employment, Avid Telecom paid Reeves as a 1099 independent contractor and the Reeves reported her income to the IRS on that same basis.  *See* Reeves Declaration (Exhibit II hereto) at para. 32; Lansky Declaration (Exhibit I hereto) at para. 42.

Plaintiffs have not provided any evidence contrary to the above.  Indeed, the only factual basis on which Plaintiffs base their allegation that Reeves was an employee in the complaint was that certain of her emails included the words "Vice President" in her signature block. [Dkt 1 at. p. 7].  However, as set forth in the Lansky and Reeves Declarations, that "title" was merely created by Ms. Reeves on her own to fill out her signature block, and it was not intended to and did not indicate that Ms. Reeves was an employee.  Plaintiffs have failed to produce a single document in response to directed RFPs sufficient to materially dispute any of the above-stated facts supporting her status as an independent contractor.

It is well established, including through Supreme Court precedent, that "[t]he mere fact that a person has a particular title—such as partner, director, or vice president—should not necessarily be used to determine whether he or she is an employee or a proprietor."

*See Clackamas Gastroenterology Assocs., P. C. v. Wells,* 538 U.S. 440, 450, 123 S. Ct. 1673, 1680, 155 L. Ed. 2d 615 (2003). Rather, the answer to whether a shareholder-director is an employee depends on "'all of the incidents of the relationship ... with no one factor being decisive.'" *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318 (1992), 503 U.S. 318 at 324, 112 S.Ct. 1344 (quoting *NLRB v. United Ins. Co. of America,* 390 U.S. 254, 258, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968)). The 9th Circuit has adopted the same standard, concluding that a party should, as here, be considered an independent contractor where the party "decided when and where to work, paid rent and maintained her own office, scheduled her own time off, was not entitled to vacation or sick days from company, and reported herself as self-employed to [the] Internal Revenue Service (IRS)." *See Murray v. Principal Fin. Grp., Inc*., 613 F.3d 943 (9th Cir. 2010).  Reeves' relationship to Avid Telecom satisfies each of these standards.  Hence, it is clear that Ms. Reeves is an Independent Contractor and cannot be held liable.

In considering the Motion to Dismiss these claims, the Court concluded that it was premature to do so in advance of discovery.  Now that Plaintiffs have been forced to come forward with any documents sufficient to support their claims, it is apparent that there are none and that there is no longer any factual or legal basis for Reeves to be a defendant.

IV. State Law Claims

a. The State Law Claims Against Avid Telecom are Preempted

The preemption doctrine is rooted in the Supremacy Clause of the U.S. Constitution. U.S. Const., art. VI, cl. 2. "[T]he purpose of Congress is the ultimate touchstone in every preemption case." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d

29

700 (1996). *See Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1208 (9th Cir. 2009). Pre-emption may be express or implied. As explained below, each of the state law claims against Avid Telecom are to be preempted either as a matter of express or implied preemption.

    1.    The State Law Claims Against Avid Telecom are Expressly Pre-empted

The "clear-statement rule" provides that Congress may expressly preempt state law by including a clear statement to that effect in the statute.[35] Express preemption is a question of statutory construction, requiring a court to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law. *See Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023); *Cipollone v. Liggett Grp., Inc.,* 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992)(holding that when a statutory provision provides reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to preempt state laws from substantive provisions of legislation).

A proper application of the clear statement rule clearly supports pre-emption of state law claims in this case. Indeed, with respect to the TCPA, the Act itself leaves no doubt that Congress intended to pre-empt all claims arising under state law with a single stated carve out where a "State law that imposes ***more restrictive intrastate requirements*** or

---

[35] The clear statement rule is a legal principle that requires a statute to state its intent in "no uncertain terms" if it intends to produce a specific outcome, especially one that would alter the status quo or have significant consequences like abrogation of state sovereign immunity. This rule is a type of substantive canon of construction used by courts to interpret laws, meaning that if Congress wants a law to achieve a certain result, it must be "unmistakably clear" in the statutory wording.

30

regulations". *See* 47 U.S.C.A. § 227 (West) (Emphasis added).  As demonstrated below, none of the state law claims provides evidence demonstrating that they are "more restrictive" and each of them plainly is not.

Six states, Indiana, Maryland, Nevada, North Carolina, North Dakota, and Rhode Island, assert state law claims arising under their version of the TCPA.  None of those claims can survive scrutiny.

The TCPA provides that: "[E]xcept for the standards prescribed under subsection (d) and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations." 47 U.S.C.A. § 227 (West).  To avoid preemption the Plaintiffs asserting state law claims must show: (i) that its laws are "more restrictive" than federal laws; and (ii) that each and every call that they allege was "unlawful" (*e.g.,* in paragraph 89 of the Complaint).

It is axiomatic that the burden to meet each of these requirements rests exclusively on the Plaintiffs: to wit, "the general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits." *See Fed. Trade Comm'n v. Morton Salt Co.*, 334 U.S. 37, 44–45, 68 S. Ct. 822, 827, 92 L. Ed. 1196 (1948). Thus, the burden is on Plaintiffs to come forward with proof that the statutes on which they rely are "more restrictive" than the TCPA.

The Complaint *does not include any allegation that any state statute under which the claim is asserted is more restrictive than the federal TCPA*. In fact, none of the state law

31

claims even allege that they are "more restrictive" than the federal TCPA.  Thus, based on Plaintiffs failure of proof alone, this Court must conclude that each of the TCPA-related claims asserted under state law is preempted by the federal TCPA and cannot be the basis of a finding in favor of Plaintiffs under that state law.

In fact, a review of the state statutes on which Plaintiffs rely demonstrates that, in fact, none of them are more restrictive than federal law. To the contrary, even the most cursory review of the referenced state laws evidence that, on key regulatory issues, there are elements of the TCPA equivalent laws in each of the states that asserted TCPA equivalent claims are materially "less restrictive" than the federal TCPA.

Indiana.  Indiana asserts claims arising under its Auto-Dialer Law, Ind. Code § 24-5-14-1 et seq. (2025): The Indiana state law here allows for a means of oral consent through a live operator[36], while the federal law restricts the consent only to "prior express consent," which, according to the FCC at the time that the Complaint was filed. Further, the exemptions for consent under the Indiana state law are more extensive than the federal law, as Indiana state law provides exemptions for school students and their employees, current business or personal relationship, and employees for work schedule.[37] None of which are present in the federal laws, while federal law exemptions are not only more restrictive but also have further conditions imposed on those exemptions as well, making the Indiana state law less restrictive.

---

[36] (2) The message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered. Ind. Code Ann. § 24-5-14-5 (West).
[37] *See* Ind. Code Ann. § 24-5-14-5 (West).

_Maryland_.   Maryland asserts claims under the Maryland Telephone Consumer Protection Act (MTCPA), Md. Code Ann., Com. Law §§ 14-3201 to 14-3202: Maryland's TCPA equivalent state law mirrors the Federal TCPA.  Thus, by definition, the Maryland TCPA equivalent state law is not more restrictive than Federal law.[38] Thus, it is preempted.

_Nevada_.  _Regulation of Automatic Dialing and Announcing Devices_, Nev. Rev. Stat. Ann. § 597.814 & 597.816: The Nevada TCPA equivalent state law does not require consent to receive a robocall; rather, it requires mere disclosure.[39] Nev. Rev. Stat. Ann. § 597.814 (West). Further, the exemptions to even this disclosure is provided by the statute for 7 categories, like Schools or districts, Non-profit organizations, Video service provider, Public Utilities, Facilities handling hazardous or dangerous materials, state or local government, or private entities under their direction with some conditions, and political

---

[38] A person may not violate:
(1) The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 through 6108, as implemented by the Federal Trade Commission in the Telemarketing Sales Rule (16 C.F.R. Part 310); or
(2) The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L). Md. Code Ann., Com. Law § 14-3201 (West). As it merely mirrors, it is undisputed that it is not more restrictive than the Federal TCPA.

[39] 1. Except as otherwise provided in subsection 3 and NRS 597.816, a person shall not use a device for automatic dialing and announcing to disseminate a prerecorded message in a telephone call unless, before the message is disseminated, a recorded or unrecorded natural voice:
(a) Informs the person who answers the telephone call of the nature of the call, including, without limitation, the fact that a device for automatic dialing and announcing will be used to disseminate the message if the person who answers the call remains on the line; and
(b) Provides to the person who answers the telephone call the name, address and telephone number of the business or organization, if any, being represented by the caller. Nev. Rev. Stat. Ann. § 597.814 (West).

entities.[40] Nev. Rev. Stat. Ann. § 597.816 (West). The absence of the key requirement of consent, along with broad exemptions to the disclosure make the Nevada TCPA equivalent statute well less restrictive than the federal TCPA statute.

North Carolina. *North Carolina Telephone Solicitations Act*, N.C. Gen. Stat. §§ 75-100: The North Carolina TCPA equivalent Act allows for oral consent through a live operator, [41] while, at the time the Complaint was filed, the FCC required prior express written consent.  Further, the exemptions under North Carolina state law are charitable or civic organizations, a political party or political candidate, a governmental official, or an

---

[40] The provisions of NRS 597.814 do not prohibit the use of a device for automatic dialing and announcing by any person exclusively on behalf of:

1. A school or school district to contact the parents or guardians of a pupil regarding the attendance of the pupil or regarding other business of the school or school district.

2. A nonprofit organization.

3. A video service provider that provides cable television or other video services to contact its customers regarding a previously arranged installation of such services at the premises of the customer.

4. A public utility to contact its customers regarding a previously arranged installation of utility services at the premises of the customer.

5. A facility that processes or stores petroleum, volatile petroleum products, natural gas, liquefied petroleum gas, combustible chemicals, explosives, high-level radioactive waste or other dangerous substances to advise local residents, public service agencies and news media of an actual or potential life-threatening emergency.

6. A state or local governmental agency, or a private entity operating under contract with and at the direction of such an agency, to provide:

(a) Information relating to public safety;

(b) Information relating to a police or fire emergency; or

(c) A warning of an impending or threatening emergency.

7. A candidate for public office, committee advocating the passage or defeat of a ballot question, political party, committee sponsored by a political party or a committee for political action. Nev. Rev. Stat. Ann. § 597.816 (West).

[41] Prior to the playing of the recorded message, a live operator complies with G.S. 75-102(c), states the nature and length in minutes of the recorded message, and asks for and receives prior approval to play the recorded message from the person receiving the call. N.C. Gen. Stat. Ann. § 75-104.

opinion-polling organization, radio station, television station, cable television company, or broadcast-rating service conducting a public opinion poll. N.C. Gen. Stat. Ann. § 75-104. These exemptions include more categories than the Federal law, making it less restrictive than the Federal law.

North Dakota. *North Dakota Telephone Solicitations Act*, N.D. Cent. Code § 51-28-01: The North Dakota TCPA equivalent state law allows for oral consent through a live operator,[42] while, at the time the Complaint was filed, required prior express written consent. Further, the exemptions for consent under the North Dakota state law are more extensive than the federal law, as North Dakota state law provides exemptions for public safety agencies notifying persons of an emergency, school students and their employees, current business relationships, and employees for work schedule.[43] None of which are present in the federal laws, while federal law exemptions are not only more restrictive but also have further conditions imposed on those exemptions as well, making the North Dakota state law less restrictive.

---

[42] A caller may not use or connect to a telephone line an automatic dialing-announcing device or deliver a prerecorded or synthesized voice message to a subscriber unless the subscriber has knowingly requested, consented to, permitted, or authorized receipt of the message or the message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered. N.D. Cent. Code Ann. § 51-28-02 (West).

[43] This section and section 51-28-05 do not apply to a message from a public safety agency notifying a person of an emergency; a message from a school district to a student, a parent, or an employee; a message to a subscriber with whom the caller has a current business relationship; or a message advising an employee of a work schedule. N.D. Cent. Code Ann. § 51-28-02 (West).

Rhode Island. *Rhode Island Telephone Solicitation Act*, R.I. Gen. Laws § 5-61-1: The Rhode Island TCPA equivalent state law here allows for oral consent through a live operator,[44] while, at the time the Complaint was filed, required prior express written consent. Further, the exemptions for consent under the Rhode Island state law are more extensive than the federal law, as Rhode Island state law provides exemptions for school district to students and their employees, and employees for work schedule.[45] None of these exemptions are present in the federal TCPA.

Thus, federal laws are not only more restrictive but also have further conditions imposed on these exemptions as well, both individually and together making the Rhode Island TCPA equivalent statute law less restrictive and thus preempted. Accordingly, in terms of the content of the Complaint, this Court must conclude that those claims are pre-empted by federal law and that they cannot be the basis of a finding in favor of Plaintiffs.

2.  The State Law Claims against Avid Telecom are Subject to Implied Preemption

The Supreme Court has recognized at least *two types of implied pre-emption: field pre-emption,* where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, and *conflict pre-*

---

[44] A telephonic seller shall not use or connect to a telephone line an automatic-dialing-announcing device unless: (1) the subscriber has knowingly or voluntarily requested, consented to, permitted, or authorized receipt of the message; or (2) the message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered. 5 R.I. Gen. Laws Ann. § 5-61-3.4 (West).

[45] (b) This section does not apply to:
(1) Recorded messages from school districts to students, parents, or employees; or
(2) Messages advising employees of work schedules. 5 R.I. Gen. Laws Ann. § 5-61-3.4 (West).

36

*emption,* where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (citations and internal quotation marks omitted) (emphasis added). *See Metrophones Telecommunications, Inc. v. Glob. Crossing Telecommunications, Inc.,* 423 F.3d 1056, 1072 (9th Cir. 2005), aff'd, 550 U.S. 45, 127 S. Ct. 1513, 167 L. Ed. 2d 422 (2007).

It is undisputed that "Interconnected VoIP" and "Interstate Communication" are exclusive domains of Federal law and are subject to its jurisdiction.[46] The congressional intent not to have Title II apply to enhanced service demonstrates its intent to occupy the field of regulation of Information service. 47 C.F.R. § 64.702(a); *Louisiana PSC,* 476 U.S. at 368, 106 S.Ct. at 1898 (providing for pre-emption where comprehensive congressional legislation occupies the entire field of regulation).[47] Further, the TCPA expressly preserves state authority only where state laws impose *"more restrictive intrastate requirements or regulations"* on telephone solicitations. *See* 47 U.S.C. § 227(e)(1) (savings clause). As such, it is clear and indisputable that Federal law has control over the field of Interconnected VoIP and Interstate communication creating, at minimum, implied pre-emption sufficient to preclude state jurisdiction.

---

[46] The provisions of this chapter shall apply to all interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio, which originates and/or is received within the United States. See 47 U.S.C.A. § 152 (West).

[47] The court held that the regulation by Minnesota of information services providers such as Vonage is preempted by federal law. *See Vonage Holdings Corp. v. Minnesota Pub. Utilities Comm'n,* 290 F. Supp. 2d 993, 1003 (D. Minn. 2003).

37

CONCLUSION

Avid Telecom's status as an information services provider is not only undisputed: it is Plaintiffs' aggressively and repeatedly stated position. Having taken this position in its Response to Defendants' Motion to Dismiss, and having avoided dismissal, at least in part on this basis, Plaintiffs may not avoid the consequences of that position now. As the courts in the Ninth Circuit have uniformly helped that providers of information services are not subject to regulation under the TCPA, Plaintiffs claims cannot stand. To the extent that Plaintiffs' claims against Lansky and Reeves all arise out of conduct undertaken by Avid Telecom, both the CDA, as well as the same unbroken caselaw, requires that those claims cannot stand either.

In addition, the time has come to end Plaintiffs' vindictive, performative, personally destructive and baseless action against Ms. Reeves. Despite years of time and opportunity, Plaintiffs have plainly failed to produce *any* evidence that she was an employee of Avid Telecom or that she undertook any action in her personal; indeed, all of the evidence points to the exact opposite conclusion and Reeves meets all of the requirements of an independent contractor.

Finally, for the reasons stated, all of the state law claims need to be dismissed.

Respectfully submitted,

Neil S. Ende
*Pro Hac Vice*
*Counsel to Michael D. Lansky, LLC*
*dba Avid Telecom, Michael D. Lansky*
Dated: May 4, 2026          *and Stacey S. Reeves*

38

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 4th day of May 2026, I electronically

transmitted the attached document to the Clerk's Office using the CM/ECF System for

filing, and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants

/s/ Silsa Cabezas
_____
Silsa Cabezas