# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

State of Arizona, ex rel. Kristin K. Mayes )
Attorney General et al. )
)
　　　　　　　Plaintiffs )
)
v. )　　Case No. 4:23-cv-00233-EJM
)
Michael D. Lansky, LLC, dba )
Avid Telecom, LLC, an Arizona )
Limited Liability Company; )
)
Michael D. Lansky, individually )
As a Member/Manager/Chief )
Executive Officer of Michael D. )
Lansky, LLC dba Avid Telecom; )
and )
)
Stacey S. Reeves, individually as )
a Manager/Vice President of )
Michael D. Lansky LLC *dba* )
Avid Telecom )
)
　　　　　　　Defendants. )
_____)

**Statement of Material Undisputed Facts**
**in Support of Motion for Summary Judgment**

Pursuant to the requirements of FRCP 56, Defendants, through counsel, present the following Statement of Material Undisputed Facts in Support of their Motion for Summary Judgment.

1

A. **Defendants' Undisputed Facts in Support of** **Avid Telecom as an Information Services Provider**

1.      Defendant Avid Telecom operates as an information services provider.

        *See* Dkt 45 at pp. 20, 22, 23

2.      The switch used by Avid Telecom exclusively utilizes the VoIP protocol.

        *See* Dkt 45 at p. 23; Declaration of Michael Lansky at para. 7; Declaration of Scott Presta at para. 2.

3.      Avid Telecom does not own any telecommunications switching or transmission equipment.

        Declaration of Michael Lansky at para. 3.

4.      All switching services utilized by Avid Telecom were provided by SipNav.

        Declaration of Michael Lansky at para. 4.

5.      Avid Telecom was never the publisher of the content of any of the calls at issue in the complaint.

        *See* Dkt 45 at p. 23; Declaration of Michael Lansky at para. 29; Declaration of Scott Presta at para. 5.

6.      The content of the calls at issue was determined, created and placed into each of the calls at issue in the Complaint by a third party.  Avid Telecom never had any involvement in any of those actions.

        Declaration of Michael Lansky at para. 29; Declaration of Scott Presta at para. 5.

7.      Third party telemarketers or sellers were transmitting robocalls across Avid Telecom's Network.

        *See* Dkt 1 at pp. 10, 43, 119; Declaration of Michael Lansky at para. 24; Declaration of Stacey Reeves at para. 19.

8.    Defendant Avid Telecom did not own or control any switching or similar equipment that utilized an automatic telephone dialing system ("ATDS"), as defined by the TCPA.

Declaration of Michael Lansky at para. 8.

9.    No Defendant had real time visibility or knowledge as to whether any call that it received from another service provider utilized ATDS.

Declaration of Michael Lansky at para. 9.

10.    No Defendant had visibility or knowledge after a call was delivered as to whether the call that it received from another service provider utilized ATDS.

Declaration of Michael Lansky at para. 10.

11.    No Defendant had any involvement in any decision by any service provider that delivered calls to Avid Telecom utilized ATDS and I have no idea if it was used.

Declaration of Michael Lansky at para. 11.

12.    No Defendant had any involvement in any decision to use a prerecorded or artificial voice for any of the communications alleged in Plaintiff's complaint and I have no idea if it was used.

Declaration of Michael Lansky at para. 12.

13.    No Defendant had real time visibility or knowledge as to whether any call delivered to Avid Telecom utilized a prerecorded or artificial voice.

Declaration of Michael Lansky at para. 13.

14.    No Defendant had visibility or knowledge after a call was delivered as to whether any call delivered to Avid Telecom utilized a prerecorded or artificial voice.

Declaration of Michael Lansky at para. 14.

15.    The single third-party switch used by Defendant Avid Telecom did not originate any of the calls at issue in the Complaint.

3

Declaration of Michael Lansky at para. 15.

16.     The single third-party switch used by Defendant Avid Telecom did not select the telephone number from which any call originated.

Declaration of Michael Lansky at para. 16.

17.     The single third-party switch used by Defendant Avid Telecom did not generate random or sequential telephone numbers in connection with any call transited by Avid Telecom.

Declaration of Michael Lansky at para. 17.

18.     The single third-party switch used by Defendant Avid Telecom did not change/spoof the telephone number from which any call transited by Avid Telecom was originated.

Declaration of Michael Lansky at para. 18.

19.     Avid Telecom was never the party that selected the telephone number from which a call at issue in the Complaint was originated.

Declaration of Michael Lansky at para. 19.

20.     Avid Telecom was never the party that selected the telephone number to which a call at issue in the Complaint was terminated.

Declaration of Michael Lansky at para. 20.

21.     Avid Telecom was never the carrier that terminated any of the calls at issue in the Complaint.

Declaration of Michael Lansky at para. 21.

22.     At no point did I personally undertake any action (*e.g.,* dial) to originate or transit any of the calls at issue in the Complaint in my own name.

Declaration of Michael Lansky at para. 22.

23. At no point did I originate or transit or make any of the calls at issue in the Complaint in my personal name or for any personal purpose.

Declaration of Michael Lansky at para. 23.

24. At no point did I originate or transit or make any of the calls at issue in the Complaint for telemarketing purposes.

Declaration of Michael Lansky at para. 24.

25. At no point did Reeves personally undertake any action (*e.g.,* dial) to originate or transit any of the calls at issue in the Complaint in her own name or for any personal purpose.

Declaration of Michael Lansky at para. 25.

26. At no point did Reeves originate or transit or make any of the calls at issue in the Complaint in her personal name.

Declaration of Michael Lansky at para. 26.

27. At no point did Defendant Reeves make calls for telemarketing purposes.

Declaration of Michael Lansky at para. 27.

28. At no point did Avid Telecom have actual knowledge when a call was received at the SipNav switch was an illegal robocall.

Declaration of Michael Lansky at para. 28.

29. Defendant Avid Telecom did not have any involvement in determining the content of any call.

Declaration of Michael Lansky at para. 29.

**B.** **Defendants' Undisputed Facts in Support of Reeves' Entitlement to Summary Judgment**

1.    Defendant Reeves did not place any of the calls at issue in the Complaint.

Declaration of Stacey Reeves at para. 18; Declaration of Michael Lansky at para. 26.

2.    Defendant Reeves did not have any involvement in determining the content of any call at issue in this proceeding nor did she have any awareness of that content when the call reached the Avid Telecom switch.

Declaration of Stacey Reeves at para. 21; Declaration of Michael Lansky at para. 30.

3.    Defendant Reeves did not have any involvement in the decision whether to use a pre-recorded or AI-generated voice in connection with any call at issue in this proceeding nor did she have any awareness as to whether a pre-recorded or AI-generated voice had been used.

Declaration of Stacey Reeves at para. 7-9; Declaration of Michael Lansky at para. 13-14.

4.    Defendant Reeves did not have any involvement in the decision made by a third-party carrier who delivered traffic to Avid Telecom whether to use an automatic telephone dialing system ("ATDS"), as defined by the TCPA in connection with any call at issue in this proceeding, nor did she have any awareness as to whether an ATDS had been used.

Declaration of Stacey Reeves at para. 4-6; Declaration of Michael Lansky at para. 9-11.

5.    Defendant Reeves did not have any involvement in the decision as to which originating telephone number would be associated with any call at issue in the proceeding.

Declaration of Stacey Reeves at para. 33; Declaration of Michael Lansky at para. 43.

6.    Defendant Reeves did not have any involvement in the decision as to the telephone number to which any call would be terminated.

Declaration of Stacey Reeves at para. 33; Declaration of Michael Lansky at para. 43.

7.    At no point did Defendant Reeves, in her personal capacity, make calls for any telemarketing purpose.

Declaration of Stacey Reeves at para. 19; Declaration of Michael Lansky at para. 27.

8.    Defendant Reeves had the skills required to provide independent contractor services to Avid Telecom.

Declaration of Stacey Reeves at para. 22; Declaration of Michael Lansky at para. 32.

9.    Defendant Reeves personally provided all of the instrumentalities and tools associated with her work for Avid Telecom.

Declaration of Stacey Reeves at para. 23-24; Declaration of Michael Lansky at para. 33-34.

10.    Defendant Reeves never worked at a location owned or controlled by Avid Telecom.  All services were provided from a work location in her personal residence.

Declaration of Stacey Reeves at para. 24; Declaration of Michael Lansky at para. 34.

11.    The duration of Reeves's work for Avid Telecom was fewer than three years.

Declaration of Stacey Reeves at para. 25; Declaration of Michael Lansky at para. 35.

12.    Reeves never had the right to assign any projects to any other person working for Avid Telecom.

Declaration of Stacey Reeves at para. 26; Declaration of Michael Lansky at para. 36.

7

13. Reeves had full personal and unfettered discretion over when and how long she provided service to Avid Telecom.

Declaration of Stacey Reeves at para. 27; Declaration of Michael Lansky at para. 37.

14. Reeves never received a salary. She was always paid as an independent contractor, as reflected on the IRS Form 1099 that Ms. Reeves received from Avid Telecom each year and on Ms. Reeves ' own personal tax returns.

Declaration of Stacey Reeves at para. 28; Declaration of Michael Lansky at para. 38; Declaration of Todd Lunderling at para. 6.

15. Reeves never had any role in hiring or firing any third party who provided services to Avid Telecom.

Declaration of Stacey Reeves at para. 29; Declaration of Michael Lansky at para. 39.

16. The services provided by Reeves were part of Avid Telecom's regular business activities.

Declaration of Stacey Reeves at para. 30; Declaration of Michael Lansky at para. 40.

17. Reeves did not receive any compensation, healthcare benefits, vacation benefits, or retirement benefits generally associated with status as an employee. Reeves was treated as an independent contractor for tax purposes, receiving a 1099 from Avid Telecom each year that services were provided.

Declaration of Stacey Reeves at para. 31-32; Declaration of Michael Lansky at para. 41-42; Declaration of Todd Lunderling at para. 6.

18. Reeves never had any decision-making authority over any issue or matter involving Avid Telecom. All policies were set by Lansky, and all day-to-day operational decisions were made exclusively by Lansky. Reeves' role was limited to announcing (in some cases) and implementing the policies and operational decisions made by Lansky.

Declaration of Stacey Reeves at para. 33; Declaration of Michael Lansky at para. 43.

8

19. Reeves did not have the authority to, nor did she ever bring a new customer to Avid Telecom. All customer acquisition decisions were made exclusively by Lansky.

Declaration of Stacey Reeves at para. 34; Declaration of Michael Lansky at para. 44.

20. Defendant's business platform lacked the ability to generate random or sequential telephone numbers.

Declaration of Stacey Reeves at para. 12; Declaration of Michael Lansky at para. 17; Declaration of Scott Presta at para.7.

C. **Defendants' Undisputed Facts in Support of Express Pre-emption**

1. The Complaint does not include any allegation that any state statute under which the claim is asserted is more restrictive than the federal TCPA.

Dkt 1 at pp. 462-481

Indiana. Indiana asserts claims arising under its Auto-Dialer Law, Ind. Code § 24-5-14-1 et seq. (2025): The Indiana state law here allows for a means of oral consent through a live operator[1], while the federal law restricts the consent only to "prior express consent," which, according to the FCC at the time that the Complaint was filed. Further, the exemptions for consent under the Indiana state law are more extensive than the federal law, as Indiana state law provides exemptions for school students and their employees, current business or personal relationship, and employees for work schedule.[2] None of which are present in the federal laws, while federal law exemptions are not only more restrictive but also have further conditions imposed on those exemptions as well, making the Indiana state law less restrictive.

Dkt 1 at pp. 482-492

Maryland. Maryland asserts claims under the Maryland Telephone Consumer Protection Act (MTCPA), Md. Code Ann., Com. Law §§ 14-3201 to 14-3202: Maryland's TCPA equivalent state law mirrors

---

[1] (2) The message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered. Ind. Code Ann. § 24-5-14-5 (West).

[2] *See* Ind. Code Ann. § 24-5-14-5 (West).

the Federal TCPA.  Thus, by definition, the Maryland TCPA equivalent state law is not more restrictive than Federal law.[3] Thus, it is preempted.

Dkt 1 at pp. 493-509

Nevada. *Regulation of Automatic Dialing and Announcing Devices*, Nev. Rev. Stat. Ann. § 597.814 & 597.816: The Nevada TCPA equivalent state law does not require consent to receive a robocall; rather, it requires mere disclosure.[4] Nev. Rev. Stat. Ann. § 597.814 (West). Further, the exemptions to even this disclosure is provided by the statute for 7 categories, like Schools or districts, Non-profit organizations, Video service provider, Public Utilities, Facilities handling hazardous or dangerous materials, state or local government, or private entities under their direction with some conditions, and political entities.[5] Nev. Rev. Stat. Ann. § 597.816 (West). The absence

---

[3] A person may not violate:

(1) The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 through 6108, as implemented by the Federal Trade Commission in the Telemarketing Sales Rule (16 C.F.R. Part 310); or

(2) The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L). Md. Code Ann., Com. Law § 14-3201 (West). As it merely mirrors, it is undisputed that it is not more restrictive than the Federal TCPA.

[4] 1. Except as otherwise provided in subsection 3 and NRS 597.816, a person shall not use a device for automatic dialing and announcing to disseminate a prerecorded message in a telephone call unless, before the message is disseminated, a recorded or unrecorded natural voice:

(a) Informs the person who answers the telephone call of the nature of the call, including, without limitation, the fact that a device for automatic dialing and announcing will be used to disseminate the message if the person who answers the call remains on the line; and

(b) Provides to the person who answers the telephone call the name, address and telephone number of the business or organization, if any, being represented by the caller. Nev. Rev. Stat. Ann. § 597.814 (West).

[5] The provisions of NRS 597.814 do not prohibit the use of a device for automatic dialing and announcing by any person exclusively on behalf of:

1. A school or school district to contact the parents or guardians of a pupil regarding the attendance of the pupil or regarding other business of the school or school district.

2. A nonprofit organization.

3. A video service provider that provides cable television or other video services to contact its customers regarding a previously arranged installation of such services at the premises of the customer.

of the key requirement of consent, along with broad exemptions to the disclosure make the Nevada TCPA equivalent statute well less restrictive than the federal TCPA statute.

Dkt 1 at pp. 510-537

North Carolina. *North Carolina Telephone Solicitations Act*, N.C. Gen. Stat. §§ 75-100: The North Carolina TCPA equivalent Act allows for oral consent through a live operator, [6] while, at the time the Complaint was filed, the FCC required prior express written consent. Further, the exemptions under North Carolina state law are charitable or civic organizations, a political party or political candidate, a governmental official, or an opinion-polling organization, radio station, television station, cable television company, or broadcast-rating service conducting a public opinion poll. N.C. Gen. Stat. Ann. § 75-104. These exemptions include more categories than the Federal law, making it less restrictive than the Federal law.

Dkt 1 at pp. 551-571

North Dakota. *North Dakota Telephone Solicitations Act*, N.D. Cent. Code § 51-28-01: The North Dakota TCPA equivalent state law

---

4. A public utility to contact its customers regarding a previously arranged installation of utility services at the premises of the customer.

5. A facility that processes or stores petroleum, volatile petroleum products, natural gas, liquefied petroleum gas, combustible chemicals, explosives, high-level radioactive waste or other dangerous substances to advise local residents, public service agencies and news media of an actual or potential life-threatening emergency.

6. A state or local governmental agency, or a private entity operating under contract with and at the direction of such an agency, to provide:

(a) Information relating to public safety;

(b) Information relating to a police or fire emergency; or

(c) A warning of an impending or threatening emergency.

7. A candidate for public office, committee advocating the passage or defeat of a ballot question, political party, committee sponsored by a political party or a committee for political action. Nev. Rev. Stat. Ann. § 597.816 (West).

[6] Prior to the playing of the recorded message, a live operator complies with G.S. 75-102(c), states the nature and length in minutes of the recorded message, and asks for and receives prior approval to play the recorded message from the person receiving the call. N.C. Gen. Stat. Ann. § 75-104.

allows for oral consent through a live operator,[7] while, at the time the Complaint was filed, required prior express written consent. Further, the exemptions for consent under the North Dakota state law are more extensive than the federal law, as North Dakota state law provides exemptions for public safety agencies notifying persons of an emergency, school students and their employees, current business relationships, and employees for work schedule.[8] None of which are present in the federal laws, while federal law exemptions are not only more restrictive but also have further conditions imposed on those exemptions as well, making the North Dakota state law less restrictive.

Dkt 1 at pp. 572-590

Rhode Island. *Rhode Island Telephone Solicitation Act*, R.I. Gen. Laws § 5-61-1: The Rhode Island TCPA equivalent state law here allows for oral consent through a live operator,[9] while, at the time the Complaint was filed, required prior express written consent. Further, the exemptions for consent under the Rhode Island state law are more extensive than the federal law, as Rhode Island state law provides exemptions for school district to students and their employees, and employees for work schedule.[10] None of these exemptions are present in the federal TCPA.

---

[7] A caller may not use or connect to a telephone line an automatic dialing-announcing device or deliver a prerecorded or synthesized voice message to a subscriber unless the subscriber has knowingly requested, consented to, permitted, or authorized receipt of the message or the message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered. N.D. Cent. Code Ann. § 51-28-02 (West).

[8] This section and section 51-28-05 do not apply to a message from a public safety agency notifying a person of an emergency; a message from a school district to a student, a parent, or an employee; a message to a subscriber with whom the caller has a current business relationship; or a message advising an employee of a work schedule. N.D. Cent. Code Ann. § 51-28-02 (West).

[9] A telephonic seller shall not use or connect to a telephone line an automatic-dialing-announcing device unless: (1) the subscriber has knowingly or voluntarily requested, consented to, permitted, or authorized receipt of the message; or (2) the message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered. 5 R.I. Gen. Laws Ann. § 5-61-3.4 (West).

[10] (b) This section does not apply to:
(1) Recorded messages from school districts to students, parents, or employees; or

Dkt 1 at pp. 591-606

<hr />

(2) Messages advising employees of work schedules. 5 R.I. Gen. Laws Ann. § 5-61-3.4 (West).