Exhibit I

# **Declaration of Michael Lansky**

Declaration of Michael Lansky

I, Michael D. Lansky, do hereby state, under penalty of perjury, that the following facts are true and correct to the best of my personal knowledge, information and belief:

1.      I am the CEO of Avid Telecom, LLC.  I have held that position at all times relevant to the instant litigation.

2.      I am the sole member/owner of Avid Telecom and have always been relevant to the instant litigation.

3.      Avid Telecom does not own any telecommunications switching or transmission equipment.

4.      All switching services utilized by Avid Telecom were provided by SipNav.

5.      Avid Telecom is not a going concern.  The company's debts far exceed its assets.

6.      Avid Telecom stopped providing any telecommunications service in July 2023.

7.      One hundred percent (100%) of the services provided by Avid Telecom utilized VoIP telephony.

8.      Defendant Avid Telecom did not own or control any switching or similar equipment that utilized an automatic telephone dialing system ("ATDS"), as defined by the TCPA.

9.      No Defendant had real time visibility or knowledge as to whether any call that it received from another service provider utilized ATDS.

10.    No Defendant had visibility or knowledge after a call was delivered as to whether the call that it received from another service provider utilized ATDS.

11.    No Defendant had any involvement in any decision by any service provider that delivered calls to Avid Telecom utilized ATDS and I have no idea if it was used.

12.    No Defendant had any involvement in any decision to use a prerecorded or artificial voice for any of the communications alleged in Plaintiff's complaint and I have no idea if it was used.

13.    No Defendant had real time visibility or knowledge as to whether any call delivered to Avid Telecom utilized a prerecorded or artificial voice.

14.    No Defendant had visibility or knowledge after a call was delivered as to whether any call delivered to Avid Telecom utilized a prerecorded or artificial voice.

15.    The single third-party switch used by Defendant Avid Telecom did not originate any of the calls at issue in the Complaint.

16.    The single third-party switch used by Defendant Avid Telecom did not select the telephone number from which any call originated.

17.    The single third-party switch used by Defendant Avid Telecom did not generate random or sequential telephone numbers in connection with any call transited by Avid Telecom.

18.    The single third-party switch used by Defendant Avid Telecom did not change/spoof the telephone number from which any call transited by Avid Telecom was originated.

19. Avid Telecom was never the party that selected the telephone number from which a call at issue in the Complaint was originated.

20. Avid Telecom was never the party that selected the telephone number to which a call at issue in the Complaint was terminated.

21. Avid Telecom was never the carrier that terminated any of the calls at issue in the Complaint.

22. At no point did I personally undertake any action (*e.g.,* dial) to originate or transit any of the calls at issue in the Complaint in my own name.

23. At no point did I originate or transit or make any of the calls at issue in the Complaint in my personal name or for any personal purpose.

24. At no point did I originate or transit or make any of the calls at issue in the Complaint for telemarketing purposes.

25. At no point did Reeves personally undertake any action (*e.g.,* dial) to originate or transit any of the calls at issue in the Complaint in her own name or for any personal purpose.

26. At no point did Reeves originate or transit or make any of the calls at issue in the Complaint in her personal name.

27. At no point did Defendant Reeves make calls for telemarketing purposes.

28. At no point did Avid Telecom have actual knowledge when a call was received at the SipNav switch was an illegal robocall.

29. Defendant Avid Telecom did not have any involvement in determining the content of any call.

30.     Defendant Reeves did not have any involvement in determining the content of any call at issue in this proceeding.

31.     Other than me, Avid Telecom has never had any employees.  Everyone who worked for Avid Telecom, including Reeves' several predecessors, all interacted with Avid Telecom as independent contractors.

32.     Defendant Reeves had the skills required to provide independent contractor services to Avid Telecom.

33.     Defendant Reeves provided and paid for all of the instrumentalities and tools associated with her work for Avid Telecom.

34.     Defendant Reeves never worked at a location owned or controlled by Avid Telecom.  All services were provided from a work location in her personal residence and Reeves provided and paid for all of the instrumentalities associated with her work (e.g., office furniture, computer, software, communications devices, etc.).

35.     The duration of Reeves's work for Avid Telecom was fewer than three years.

36.     Reeves never had the right to assign any projects to any other person working for Avid Telecom.

37.     Reeves had full personal and unfettered discretion over when and how long she provided service to Avid Telecom.

38.     Reeves never received a salary.  She was always paid as an independent contractor, as reflected on the IRS Form 1099 that Ms. Reeves received from Avid Telecom each year.  Reeves reported her income as an independent contractor on her tax returns.

39.     Reeves never had any role in hiring or firing any third party who provided services to Avid Telecom.

40.     The services provided by Reeves were part of Avid Telecom's regular business activities.

41.     Reeves did not receive any compensation, healthcare benefits, vacation benefits, or retirement benefits generally associated with status as an employee.

42.     Reeves never received a W-2.  Reeves was treated as an independent contractor for tax purposes, receiving a1099 from Avid Telecom each year that services were provided .

43.     Reeves did not have any decision-making authority over any issue or matter involving Avid Telecom.  All policies and day-to-day operational decisions were made exclusively by Avid Telecom.  Reeves' role was limited to announcing (in some cases) and implementing the policies and operational decisions made by Avid Telecom.

44.     Reeves did not have the authority, nor did she ever bring a new customer to Avid Telecom.  All decisions regarding customer acquisition were made exclusively by Avid Telecom.

Dated: 03/17/2026                *Michael Lansky*

_____
Michael Lansky