June 8, 2026

***By ECF***

Honorable Michael Ambri
United States District Court for the District of Arizona
Evo A. DeConcini U.S. Courthouse
405 West Congress Street, Suite 3170
Tucson, AZ 85701-5032

Re:    *State of Arizona*, *ex rel. Kristin K. Mayes, Attorney General, et al. v. Michael D. Lansky, LLC d/b/a Avid Telecom. et al.*, Case No. CV 23-00233-TUC-CKJ (MAA)

Dear Judge Ambri:

Plaintiff, the State of Maryland and Defendants Michael Lansky, LLC d/b/a Avid Telecom, Stacey Reeves and Michael Lansky submit this joint statement pursuant to the Court's Discovery Standing Order.

Undersigned counsel for the Plaintiff met and conferred with counsel for the Defendants on June 1, 2026, to determine whether the Office of the Maryland Attorney General is required to be deposed pursuant to this Court's Order dated 4/21/26 (Dkt. No. 238) and were unable to resolve their dispute.

Submitted,

/s/ Philip Ziperman

_____
Philip D. Ziperman (Admitted *Pro Hac Vice,* Fed. Bar No. 12430)
Deputy Chief
Consumer Protection Division
Office of the Maryland Attorney General
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
(410) 576-6417
pziperman@oag.maryland.gov

Attorney for the State of Maryland

/s/ Neil Ende

_____
Neil Ende, Esq.

1

Technology Law Group LLC

5335 Wisconsin Avenue, N.W.

Suite 440

Washington, D.C. 20015

Attorney for the Defendants

## I.   The State of Maryland's  Statement

The Office of the Maryland Attorney General, State of Maryland ("State of Maryland") seeks clarification from this Court regarding whether its April 21, 2026 Order (DKT. No. 238) requires the State of Maryland to undergo deposition via Fed.R.Civ.P. 30(b)(6) when the State of Maryland's state law claim upon which it is to be deposed is entirely derivative of its federal claims. This Court specified that Maryland and 11 state claim plaintiffs were required to undergo deposition to the extent such depositions relate to the facts used exclusively to support their state law claim. *See* Order, DKT. No. 238, p. 7. As is set forth more fully below, because the State of Maryland's claim is entirely derivative of its federal law claim, the State of Maryland seeks clarification whether the Court's Order applies to it.

The State of Maryland was one of 48 states and the District of Columbia that sued Defendants for violations of three federal statutes regulating the illegal dissemination of robocalls – the Telemarketing and Consumer Fraud and Abuse Act, 15 U.S.C. § 6101, *et seq.*, the Telemarketing Sales Rule, 16 C.F.R. § 310, *et seq.* and the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*  This multiple state concerted action has been investigated and primarily litigated by four states recognized by this Court as lead Plaintiff States (Arizona, Indiana, North Carolina, and Ohio), and the State of Maryland is one of 11 additional participating states that has alleged state law claims. (*See* Order, DKT. No. 238, p. 5, n. 1). Directly relevant to the State of Maryland's objection is the fact that Maryland's claim, unlike some of the other states that have made state law claims, is entirely derivative of its federal claims.  Specifically, as set forth in Count IX of the Plaintiffs Complaint, Maryland's state law claim is premised entirely on the Maryland Telephone Consumer Protection Act, Md. Code Ann., Com. Law § 14-3201, *et seq.*  That Act provides:

A person may not violate:

(1) The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 through 6108, as implemented by the Federal Trade Commission in the Telemarketing Sales Rule (16 C.F.R. Part 310); or

(2) The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L).

Paragraph 89t. of the Plaintiffs' Complaint additionally alleges that Defendants made 27,097 calls to phone numbers with Maryland area codes in violation federal law, and thus also state law.

This Court, in its April 21, 2026 Order, granted in part and denied in part the protective order sought by the Plaintiffs in response to the Defendants' Motion to Compel the Plaintiff States to designate witnesses in response to its Notice of Depositions issued pursuant to Fed.R.Civ.P. 30(b)(6).  In partially granting the protective order, this Court struck some of the topics originally listed by the Defendants in their deposition notices and further limited unnecessary cumulative testimony. In doing so, this Court noted:

The plaintiff states are collectively litigating common issues based on a common set of records. Doc. 225, pp. 3,14. The defendants may notice separate Rule 30(b)(6) depositions for states bringing state law claims, who are not lead plaintiff states, but ***only where the depositions relate to the facts used exclusively to support state law claims***. See Doc. 102, p. 2 (limiting depositions to four lead plaintiff states and states bringing state law claims). (*See* Order, DKT. No. 238, p. 7 (emphasis supplied)).

The Defendants have noted the following topics in their Notice of Deposition served on the State of Maryland (a copy of which is attached hereto):

1. The allegations of fact set forth in paragraph 89 of the complaint applicable to the state on whose behalf the witness is appearing.
2. The origin of all data (e.g., a CID, a subpoena, You Mail, an AG Expert Witness) used to calculate the number of calls set forth in the subparagraph of paragraph 89 of the complaint applicable to the state on whose behalf the witness is appearing.
   . . . .
4. Facts supporting the allegation that Lansky knew the calls transited by Avid Telecom were illegal robocalls.
5. Facts supporting the allegation that Lansky should have known that Lansky knew that the calls transited by Avid Telecom were illegal robocalls.
6. Facts supporting the allegation that Reeves knew the calls transited by Avid Telecom were illegal robocalls.
7. Facts supporting the allegation that Reeves should have known that the calls transited by Avid Telecom were illegal robocalls.
8. Facts supporting the allegation that each of the individual calls referenced in the subparagraph of paragraph 89 of the complaint on whose behalf the witness is appearing contained a pre-recorded message.

9. Facts supporting the allegation that each of the individual calls referenced in the subparagraph of paragraph 89 of the complaint on whose behalf the witness is appearing contained a commercial message.

10. Facts supporting the allegation that each of the individual calls referenced in the subparagraph of paragraph 89 of the complaint on whose behalf the witness is appearing originated from a predictive dialer (or a similar device).[1]

Each of the above-listed topics relate to the joint federal claims brought by the Plaintiffs, will be addressed in deposition when the Defendants depose the lead states, and are not facts that have been relied on exclusively by the State of Maryland in bringing its state law claim. For only this reason, the State of Maryland requests that the Court clarify whether the State of Maryland is subject to this Court's April 21, 2026 Order and must submit to deposition pursuant to Fed.R.Civ.P. 30(b)(6).

## II.  Defendants' Statement

Maryland's claim that its interests are being represented by a group of four so-called lead plaintiff states, and that only those states should be required to provide corporate deposition testimony on facts relating to Maryland is disingenuous.  As this Court is aware, membership in the so-called lead plaintiff states was created in an entirely extra-judicial manner; that is, this Court was not asked to select or to approve the members, nor has it ever specifically approved, either the number or the identities of the members of that group. Plaintiffs have made no effort to justify membership based, for example, on the number of allegedly illegal calls terminated into the states.  And, in fact, if that seemingly rational approach was applied, we would have a very different list of lead plaintiff states.[2]  Yet, through a number of Court orders and the actions of Plaintiffs, the unilateral decision by Plaintiffs as to which states are lead plaintiffs has taken on enormous importance, including as the single deciding factor regarding the Plaintiffs that will be subject to normal discovery obligations. Defendants, who have been excluded entirely from that decision-making process, but could be subject to tens of millions of dollars in potential damages, are left with full discovery rights only against four lead plaintiff states that represent at small fraction of the total call volume.

---

[1] Defendants withdrew their third topic when the parties met and conferred on June 1, 2026.

[2]  In fact, there are Seven (7) states in which more allegedly illegal calls were terminated than the lead plaintiff state with the largest number of alleged terminations. CA (80,989), FL (94,167), GA (56,779), IL (46,737), NY (79,558), PA (48,933), TX (82,140), Notably Indiana which, on information and belief, was the main initiating party—after its failed effort to enforce against Avid Telecom at the state level—only had 3,225 allegedly illegal calls in the four (4) year period.

In addition, if Maryland gets its way, Defendants will also lose the right to take oral discovery from all other states with state law claims that are alleged to relate to the facts used exclusively to support their state law claims.  The combined effect of a self-determined lead plaintiff state group and acceptance of the aggressive limitations suggested by Maryland, would mean that Defendants would only be able to take oral discovery from four states—representing a small fraction of the total call volume—all of which have already admitted—indeed argued—that they have no personal knowledge of any facts relevant to any of the other states that they would be "representing."  All of these aggressive limitations would be applied—presumably to avoid disproportionate discovery costs—in a case where the potential damages could run into the hundreds of millions of dollars.[3]

Moreover, the assertion that the so-called lead plaintiff states are the only substantive actors in this case is itself a sham.  In reality, while the so-called lead plaintiff states may be more involved in the case on a day-to-day basis than certain other states, in fact, numerous "non-lead plaintiff states", specifically including Maryland, have voluntarily inserted themselves into substantive aspects of the case when they viewed it as in their interest to do so.  For example, Maryland (represented by Mr. Ziperman), has been directly and substantively involved in multiple material aspects of this case, including the Court-mandated meet and confer call among the parties in January of this year.  Indeed, Maryland was among the most vocal, and certainly the most aggressive voices speaking on behalf of Plaintiffs during that call.  Similarly, participation in the November 24, 2025 hearing conference with the Magistrate included five (5) states other than the so-called lead plaintiff states participated.  These states included, the State of California, the State of Kansas, the State of Louisiana, the State of North Dakota the state of Tennessee.

Thus, if Plaintiffs have their way, they, and they alone, will have the absolute right both to use the fact that a state is not identified as a lead Plaintiff state as a shield against full discovery while retaining the right for those same Plaintiffs to participate fully, and at their sole discretion, in other substantive aspects of the case.  Defendants respectfully believe that allowing this unbalanced and self-serving arrangement to continue and, specifically, to be the basis of preventing the deposition of any non-lead plaintiff state, would be arbitrary and capricious and, perhaps more importantly, manifestly unfair and violative of Defendants' fundamental due process rights.

---

[3]  In this context, even if Defendants were allowed to take a full day deposition of half of 48 Plaintiffs, conservatively estimated, the total costs for those depositions would be a few hundred thousand dollars, well less than one percent (1%) of these potential damages.  Certainly, in the context of a three year litigation where the parties have spent hundreds of thousands of dollars in legal fees and involved damage claims totaling in the hundreds of millions of dollars, the depositions of a handful of lead, non-lead and state law claim Plaintiffs—each addressing their separate claims of illegal calls (as specifically set forth in paragraph 89 of the Complaint) is plainly not disproportional.

Further, Maryland's allegation that they are somehow shielded from any obligation to appear from deposition on any of the approved topics, we believe, materially overstates the intended application of the Magistrate's Order. Indeed, reading the language of the Magistrate's Order as Maryland requests would render the Judge's Scheduling Order [Dkt. 73], which specifically allowed the depositions of each state with a claim arising under state law, entirely meaningless. Respectfully, having already excluded all non-lead plaintiff states from normal discovery obligations—especially where the possible damages that associated with calls allegedly terminated to these states could run into the hundreds of millions of dollars—we do not believe that the Judge intended to further limit Defendants right to oral discover as Maryland now urges.

Here, each state, let alone each state that asserted state-specific claims, chose to voluntarily participate in this litigation. Each state with state law claims additionally chose to present state-specific facts, both in its individual state law Count(s) and in its separate state-specific subparagraph of paragraph 89. As *this is not a class action*, where a designated group of "class representatives" are determined, after a factual inquiry, to all share the *exact same facts*, the rationale that justifies limiting discovery only to those "class representatives" simply does not apply here. To the contrary, as none—not a single one—of the facts presented in any of the sub-paragraphs is a "common" fact, that claim cannot be the basis for allowing Maryland to avoid its discovery obligations.

Indeed, there is no evidence in the record, nor is there any reason to believe, either as a matter of established fact, simple logic and reason, that even a single one of the calls included in the aggregate number of calls identified by Maryland in paragraph 89.t is the same as any call identified by any lead state in that same paragraph. In fact, it is indisputable that the aggregate totals identified in each state-specific sub-paragraph to paragraph 89 involve: (i) different calls, (ii) placed to different telephone numbers, (iii) at called party locations in different states, (iv) at different times of day, (v) from different originating parties, (vi) originated and/or delivered by a different set of carriers, (vii) with undisclosed and likely different content (commercial or non-commercial), (viii) delivered in an unknown and potentially different manner (pre-recorded or artificial voice or live person), and (ix) originated using an unknown and potentially different modality (individually dialed or predictive dialed). The established and potential differences in the facts underlying the millions of different calls at issue are manifest and undeniable. At a minimum, these issues are clearly appropriate for deposition Maryland must be required to present a witness with personal knowledge of each of its alleged facts, even if any were actually common.

Additionally, as the TCPA's state-enforcement provisions limit state-AG actions to calls "to residents of that State" and authorize suits "on behalf of the residents of that State", Maryland cannot delegate the right to represent its citizens to a state that does not have the legal authority to do so. *See* 47 U.S.C. § 227(g). In this context, it is clear that Maryland

cannot unilaterally empower a state AG from another state to represent Maryland's interests in the complaint process, including in discovery.

Further, Maryland's allegation that it should be excused from its discovery obligations because the Maryland Telephone Consumer Protection Act (MDTCPA), Md. Code Ann., Com. Law § 14-3201 et seq., is entirely derivative of the federal TCPA is also false.[4] Among other things, the MDTCPA: (i) creates its own state-law cause of action and remedies, including Maryland state law specific unfair and deceptive trade practice remedies that are not available under the federal TCPA; (ii) incorporates both the TCPA and separate federal telemarketing rules by reference; (iii) a violation of the TCPA/TSR is deemed a separate violation of Maryland law, not merely "evidence" in a federal claim; and (iv) the MDTCPA remedies (*e.g.,* injunctive relief, restitution, civil penalties under § 13-408 and related provisions) go beyond the TCPA's statutory damages structure, thereby creating its own damages and fee regime; it is not limited to the TCPA's $500/$1,500 framework.

Defendants note further that, in an effort to finally bring this issue to resolution, Defendants voluntarily removed Topic 1—which sought a witness to testify with respect to facts in paragraphs 19-88 and 90-630—thereby limiting the scope of the facts at issue across all of the Topics only to those relating to the calls allegedly terminated into Maryland in paragraph 89.t of the Complaint. For the Judge's order allowing Defendants to have any meaning, certainly, Defendants must be allowed to depose a witness with knowledge as to facts related to these Maryland-only calls.

Finally, Defendants would be remiss if we failed to remind the Court of just how cynical this process has been and remains. By their own repeated admission, Plaintiffs filed a massive 630-paragraph complaint, containing representations of millions of illegal calls across every Plaintiff state. Now, in support of their endless effort to avoid probing oral discovery they admit that no state other than a lead plaintiff state has any personal knowledge of any fact to which they subscribed in signing the complaint. Put simply, having used the impact of a 48-starte complaint as an intimidation tactic, Plaintiffs are left to admit that, none of the non-lead-Plaintiff states, apparently including Maryland, made any effort to verify the facts they alleged in the complaint, specifically including any and all of the facts asserted in each state-specific subparagraph of paragraph 89. Defendants content that this is the real reason why all Plaintiffs, specifically including Maryland, are fighting so hard to avoid making themselves available to provide sworn testimony to that effect. They already understand, what will be clear to the Court at trial, that they do not and will not have a witness who can testify from personal knowledge as to any of the facts

---

[4] To the extent that the Court accepts Maryland's allegation, it should and must dismiss Maryland's claims in their entirety as its right to bring an action based on state law only exists where the state law applies more restrictive regulations than the TCPA. The dismissal of Maryland's state specific claims will render the instant controversy moot.

required to establish that a call was an illegal robocall, including without  limitation: (i) that the call was automated/predictive dialed; or (ii) that the call used an artificial or pre-recorded voice.

In this context, the asserted justifications for denying Defendants their rightful opportunity to require a representative of Maryland to avoid being required to admit as much in an oral deposition is just distraction and noise.  It should be rejected as such.