**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

State of Arizona, ex rel. Kristin K. Mayes, Attorney General; *et al.*,

Plaintiffs,

v.

Michael D. Lansky, L.L.C., dba Avid Telecom; *et al.*,

Defendants.

No. CV-23-233-TUC-CKJ

**ORDER**

Pending before the Court is the Motion for Order Permitting Hybrid-Fact-Expert Testimony by Michael D. Lansky (Doc. 173)[1] and the Motion for Reconsideration (Doc. 207) filed by Defendants Michael D. Lansky, et al ("Defendants"). Plaintiffs State of Arizona, ex rel. Kristin K. Mayes, et al. ("Plaintiffs") have filed responses (Doc. 177, 207) and Defendants have filed replies (Doc. 180, 221).

[1]Although Defendants' Motion is entitled a Motion for Order Permitting Hybrid-Fact-Expert Testimony by Michael D. Lansky, it was docketed as a Motion for Order Permitting Hybrid-Fact-Expert Testimony by Michael D. Lansky (Doc. 173), with the Hybrid Expert Report lodged with a statement the document is to be filed by Clerk if Motion is granted (Doc. 174). As the applicable rules require disclosure and not filing, *see* Fed.R.Civ.P. 5(d)(1), 26(a)(2), as well as the fact the Hybrid Expert Report is attached to the Motion for Order Permitting Hybrid-Fact-Expert Testimony (Doc. 173-1), the Court will direct the Clerk of Court to not docket the lodged document.

I. *Applicable Procedural History*

Defendants have filed a Motion for Order Permitting Hybrid-Fact-Expert Testimony by Michael D. Lansky. Defendants assert the economic realities of this case have forced Defendants to limit the scope of aspects of their defense and the presentation of Michael D. Lansky ("Lansky") as a hybrid fact-expert witness is the only way in which Defendants will be able to participate fully in the case.

In a Motion to Dismiss, Defendants sought dismissal of the claim of personal liability against Lansky based on a common law piercing of the corporate veil, the claim of personal liability against Defendant Stacey Reeves based on her status as an independent contractor, and on the alleged inadequacy of Plaintiffs' claims arising under the Telecommunications Consumer Protection Act ("TCPA") (Doc. 39). Defendants sought to supplement its Motion to Dismiss, citing new case law which had determined no personal liability existed even where a defendant personally participated in or directed a TCPA violation. The Court denied the request, finding the case law was not binding precedent and was not issued before the filing of the original Motion (or relied on those prior decisions). May 8, 2024, Order (Doc. 64). The Court denied the Motion to Dismiss, but agreed with Defendants that Plaintiffs had failed to sufficiently allege facts in support of piercing the corporate veil.

On November 20, 2025, this Court issued an order which permitted Defendants to docket a Motion for Reconsideration on or before November 25, 2025, and set filing deadlines for a response and a reply. (Doc. 181). Defendants filed its Motion for Reconsideration on February 3, 2026. (Doc. 207). This Court amended the filing deadlines for a response and a reply and advised the parties it would also consider the timeliness of the filing of the Motion. February 5, 2026, Order (Doc. 208).

. . . . .

. . . . .

. . . . .

II. *Motion for Order Permitting Hybrid-Fact-Expert Testimony by Lansky* (Doc. 173)

A. *Financial Interest in the Litigation*

The parties disagree whether Lansky's financial interest in the case precludes him from testifying as a witness in this case. Specifically, Plaintiffs assert Lansky's financial interest in the case precludes him from testifying as an expert. Generally speaking, a party may testify as an expert witness. 32 C.J.S. Evidence § 695 (April 2026 update) ("witness is not disqualified as an expert by the mere fact that the witness is a party"); Larsen, Navigating the Federal Trial § 11:16 (2025 ed.); *see also Braun v. Lorillard Inc.*, 84 F.3d 230, 238 (7th Cir. 1996) (CEO, although not a disinterested expert witness, could be qualified to give an expert opinion); *Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993), *cert. denied*, 508 U.S. 956 (1993) (citing cases) ("Nothing in the Federal Rules of Evidence prohibits a party from serving as an expert witness. The fact that the witness is a party is properly considered when the court assesses the witnesses' credibility."); *Brownlee v. Gay & Taylor, Inc.*, 861 F.2d 1222, 1225 (10th Cir. 1988) (permitting regional vice president of defendant to testify as an expert was not an abuse of discretion). The parties have not cited to, nor is the Court aware of, any Ninth Circuit case law that directly addresses when a court's inherent authority warrants the exclusion of expert testimony by a party.

Indeed, the case law in the Ninth Circuit is mixed as to whether that party's financial interest in the case prevents that party from testifying as an expert. For example, in *Sec. & Exch. Comm'n v. Cornerstone Acquisition & Mgmt. Co. LLC*, No. 22-CV-765 JLS (VET), 2025 WL 276318, at *19 (S.D. Cal. Jan. 23, 2025), *quoting Perfect 10, Inc. v. Giganews, Inc.*, CV 11-07098-AB (SHx), 2014 WL 10894452, at *6 (C.D. Cal. Oct. 31, 2014), the court determined the exclusion of the testimony would "advance the 'policy objectives [of] preventing conflicts of interest and maintaining the integrity of the judicial process' without substantially burdening Defendants' 'access to expert witnesses who possess specialized knowledge.'" In *Maritech Marine Servs., LLC v. Bay Welding Servs., Inc.*, No. 3:20-CV-00231-SLG, 2022 WL 138677, at *2 (D. Alaska Jan. 14, 2022), however, the court

distinguished *Perfect 10* and declined to exercise its inherent authority to strike the expert testimony of the owner/operator of defendant. The court stated:

> In *Perfect 10*, the District Court for the Central District of California excluded the testimony of *Perfect 10*'s CEO not under Rule 702, but under its "separate, inherent authority to exclude expert testimony that would be against public policy."[17] . . .
>
> The Court recognizes that [the owner/operator] has a financial interest in the outcome of this litigation. However, *Perfect 10* is distinguishable because [the owner/operator] does not "almost certainly" lack the specialized knowledge relevant here, for the reasons discussed above.[19] Further, the integrity of the adversarial process and public confidence in the legal system can be protected by Plaintiff's opportunity to cross examine Mr. Engebretsen about his financial interest, with the ultimate question of credibility to be determined by the trier of fact.[20]
>
> > [17] 2014 WL 10894452, at *5 (distinguishing two other cases because they did not "address[ ] a district court's separate, inherent authority to exclude expert testimony that would be against public policy").
> >
> > [19] See supra Section I.
> >
> > [20] [*United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001)] ("Generally, evidence of bias goes toward the credibility of a witness, not his competency to testify, and credibility is an issue for the jury.").

*Maritech Marine Servs.*, 2022 WL 138677, at *2 (D. Alaska Jan. 14, 2022).

In excluding the testimony in *Perfect 10*, that district court stated:

> "A district court is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir.1980). Encompassed within that discretion is "the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." *Hewlett–Packard Co. v. EMC Corp.*, 330 F.Supp.2d 1087, 1092 (N.D.Cal.2004); *accord Campbell Industries v. M/V Gemini*, 619 F.3d at 27 (holding district court had "inherent power to exclude [expert's] testimony"); *Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir.1996) ("Federal courts have the inherent power to disqualify experts"); *see also Ross v. American Red Cross*, 567 Fed.Appx. 296, 304 (6th Cir.2014) (same). Although courts reserve the power to disqualify an expert for rare or extreme cases, courts will exercise it to achieve important "policy objectives ... include[ing] preventing conflicts of interest and maintaining the integrity of the judicial process." *English Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F.Supp. 1498, 1504 (D.Colo.1993); *accord Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d at 1183 (same).[3]
>
> > [3] Courts should be careful to "balance" those interests with the "policy objectives" of "ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling." *English Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F.Supp. at 1504. But as the Court has already discussed, on this issue the overwhelming majority of courts, including the courts of this district, have done that balancing, and drawn the line between the sort of conflict associated

> with an indirect incentive to reach a certain conclusion and a direct financial stake in the substance of an opinion or the outcome of litigation.

*Perfect 10*, 2014 WL 10894452, at *4.

The Ninth Circuit case cited by *Perfect 10* did not involve the exclusion of expert testimony by a party, but the exclusion of an expert's testimony based on a Fed.R.Civ.P. 26 violation. *Campbell Indus.*, 619 F.2d at 27 ("Few would question a court's inherent power to discipline breaches of Rule 26(e), even in the absence of a court order."). Similarly, the Fifth and Sixth Circuit authority cited by *Perfect 10* did not involve the exclusion of expert testimony by a party, but the exclusion of expert testimony based on prior relationships. *Koch Ref. Co.* 85 F.3d at 1180-83 (where multiple cases were consolidated and insurance company changed its position after some cases were settled, court did not abuse its discretion in excluding expert that had originally been hired by insurance company); *Ross*, 567 Fed.Appx. at 303 (plaintiff's expert was former deputy general counsel and interim general counsel of defendant).

However, the *Perfect 10* court recognized:

> . . . [T]he majority of courts, including the Courts of this district, have "held that testimony of expert witnesses whose compensation is contingent upon the outcome of the case must be excluded." [*Citations omitted*.]
>
> Although this issue most commonly arises with experts retained on a contingency fee basis, the underlying logic reaches further. As the Fourth Circuit has held, testimony from experts who have a *direct financial stake* in the outcome of litigation is "against public policy ...." *Accrued Fin. Svcs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 300 (4th Cir.2002) (emphasis added). *While experts are almost universally compensated for their opinion, public policy has long made a distinction between paid experts who have an indirect incentive to win the approval of their employers (the client and attorneys) on the one hand, and experts who have a direct financial stake in the outcome of the litigation on the other.* [*Citations omitted*.] Public policy tolerates the former category of expert testimony as a necessary evil: although it carries inherent risks of witness bias, those risks can be minimized by the adversarial process and are outweighed by the reality that the modern legal system would collapse without the aid of expert testimony. However, courts of this country draw a line where the expert's incentive structure crosses the threshold from an *indirect incentive* to reach a certain conclusion to a *direct financial interest* in doing so. Once the expert obtains a direct financial interest in the outcome of the litigation (whether by his or her status as a party, by contingency fee agreement, or otherwise), any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded. Under those rare circumstances, the conflict of interest is so great, and raises so many "serious questions about the integrity of [the witnesses'] expert testimony," that to admit the conflicted testimony would violate public policy.

> [*Straughter v. Raymond*, No. CV 08–2170 CAS CWX, 2011 WL 1789987, at *3 (C.D.Cal. May 9, 2011)].

*Perfect 10*, 2014 WL 10894452, at *4, *emphasis in original*. Similarly, in *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 300 (4th Cir. 2002), the court compared employees of plaintiff testifying as experts to a contingent fee arrangement, violating public policy.

In this case, Defendants assert:

> The economic realities of this case, which have forced Defendants to limit the scope of many aspects of their defense, have now forced to limit their ability to provide expert testimony. Having already spent tens of thousands of dollars to defend their rights to date, Defendants cannot afford to hire an independent expert and continue their defense of the complaint. The presentation of hybrid tract expertise is the only way in which defendants will be able to participate fully in this proceeding.

Motion (Doc. 173, p. 2). Plaintiffs' response does not dispute this assertion. The Court finds it appropriate to balance the interests of Defendants with policy objectives of "ensuring that parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling." *Perfect 10*, 2014 WL 10894452, at *4, n. 3, *quoting English Feedlot*, 833 F.Supp. at 1504.

As Plaintiffs have not disputed Defendants' assertion of a limited ability to provide expert testimony, the Court accepts Defendants' assertion for purposes of this motion. The Court does not find the conflict of interest demonstrated by a contingency fee expert to be entirely comparable to a party providing testimony as an expert. Rather, excluding a party from serving as an expert does not eliminate, reduce, or even create a financial incentive to prevail; that incentive exists by virtue of the status as a party. A jury can simply take that obvious interest into account when evaluating the testimony. By contrast, prohibiting contingent-fee experts prevents the creation of an additional, outcome-dependent financial incentive in someone whose role in the litigation is otherwise that of an ostensibly independent expert.

Thus, the relevant distinction is not whether the witness has a financial interest in the outcome. Both witnesses may. The relevant distinction is whether the financial interest is an

inherent consequence of being a litigant or is affirmatively created by an agreement conditioning an expert's compensation upon the outcome of the litigation. Unlike the contingent fee expert, who may present a layer of reliability based solely on his expert status, a party presents bias and an interest in the outcome simply by his status as a party. Further, the Court recognizes a jury's ability to discount testimony for an "obvious conflict of interest." *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988); *see also Braun*, 84 F.3d at 238. Lastly, "the integrity of the adversarial process and public confidence in the legal system can be protected by Plaintiff's opportunity to cross examine [Lansky] about his financial interest, with the ultimate question of credibility to be determined by the trier of fact." *Maritech Marine Servs.*, 2022 WL 138677, at *2.

B. *Qualification as an Expert*

Defendants request Lansky be permitted to testify as a hybrid fact-expert witness as recognized by Fed.R.Civ.P. 26(a)(2)(C). Further, Defendants assert Lansky is eligible to testify as an expert pursuant to Fed.R.Civ.P. 702. Additionally, Defendants have provided a declaration setting forth Lansky's qualifications and a Statement of Anticipated Fact and Expert Testimony (Doc. 173-1, Ex. 1). Plaintiffs assert, however, Defendants have not shown Lansky is qualified as an expert. Alternatively, Plaintiffs request the Court defer its ruling until after the close of expert discovery.

The Court accepts Lansky is eligible to testify as an expert pursuant to Fed.R.Civ.P. 26(a)(2)(C). *See generally Sec. & Exch. Comm'n v. Cornerstone Acquisition & Mgmt. Co. LLC*, No. 22-CV-765 JLS (VET), 2025 WL 276318, at *17 (S.D. Cal. Jan. 23, 2025).

The parties disagree whether Lansky meets the requirements of Fed.R.Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579(1983) and *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999), to qualify as an expert. The rule provides when expert testimony may be appropriate:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an

> expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence. *Daubert*, 509 U.S. at 589, *Kumho Tire Co*., 526 U.S. at 149; *Elsayed Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) (*amended en banc* at 319 F.3d at 1073 (9th Cir. 2003)). The Ninth Circuit has held that a trial court may make a determination as to a proposed expert's qualifications, the relevance of the testimony, and the reliability of the testimony without a hearing. *United States v. Alatorre*, 222 F.3d 1098, 1101-02 (9th Cir. 2000). Indeed, this latitude allows a trial court to decide what proceedings, if any, are required to determine reliability. *Alatorre*, 222 F.3d at 1103; *see also Hangarter*, 676 F.3d at 1018 (trial court satisfied gatekeeping duties by probing the extent of expert's knowledge and experience of expert in pre-trial rulings and during voir dire).

A witness is "qualified as an expert by knowledge, skill, experience, training, or education[.]" Fed.R.Evid. 702. The note to the rule states:

> Nothing in this amendment is intended to suggest that experience alone – or experience in conjunction with other knowledge, skill, training or education – may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. *See, e.g., United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); *Tassin v. Sears Roebuck*, 946 F.Supp. 1241, 1248 (M.D.La. 1996) (design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches"). *See also Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

Fed.R.Evid. 702, Advisory Committee Notes. An expert may testify "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the

testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Kuhmo Tire*, 526 U.S. at 141, 152. Factors that may be considered in determining reliability were set forth in *Daubert*: (1) whether the theory can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) whether there is a high known or potential rate of error and whether there are standards controlling the techniques' operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community), and were made applicable to non-scientific expert testimony, depending on the circumstances of a case, in *Kumho Tire*. However, the Ninth Circuit has stated:

> Thus, admissibility of expert opinion testimony generally turns on the following preliminary question of law determinations by the trial judge under FRE 104(a).
>
> - Whether the opinion is based on scientific, technical, or other specialized knowledge;
>
> - Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;
>
> - Whether the expert has appropriate qualifications - i.e., some special knowledge, skill, experience, training or education on that subject matter [citation omitted].
>
> - Whether the testimony is relevant and reliable [citations omitted].
>
> - Whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury) [citation omitted].
>
> - Whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time [citations omitted].

*United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also Porter v. Martinez*, 68 F.4th 429, 444 (9th Cir. 2023), *citations omitted*. Where, as in *Hankey*, the reliability of an expert's testimony "depends heavily on the knowledge and experience of the expert," the *Daubert* factors "simply are not applicable." *Id*. at 1169; *see also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). However, the Court must still perform its gatekeeper duties, but wide latitude is afforded to the Court in determining whether the expert testimony should be admitted and in determining how to test reliability.

*Hangarter*, 373 F.3d at 1018 (where testimony is non-scientific, district court must make reliability determination to fulfill gatekeeping duties); *United States v. Alatorre*, 222 F.3d at 1101-02.

Here, Defendants assert Lansky's opinion is based on his experience in telecommunications and its operations, regulatory compliance (e.g., STIR/SHAKEN), robocall mitigation, and involvement in creating compliance protocols (e.g., enhanced monitoring). In other words, Defendants are asserting Lansky is qualified as an expert based on his knowledge and experience in the telecommunications field, rather than the Daubert factors. Indeed, the proposed expertise of Lansky is not of the type envisioned by *Daubert*, *i.e.*, is non-scientific. Defendants assert Lansky's opinions are rooted in real-time observations and day-to-day involvement in telecommunications; Defendants compare this to Plaintiffs' experts who reviewed selective and unverified generic information from sources of uncertain reliability, relied on undisclosed programs and software, and has zero real world experience.

In his Hybrid Expert Report ("Ex. Rpt."), Lansky asserts he has spent more than two decades in the telecom industry and has lived "day-to-day" the issues presented in a Plaintiff expert report and Lansky's opinions are rooted in real-time observations. Motion, Ex. Rpt. (Doc. 173-1, ECF p. 3 of 236). The Ex. Rpt. also states Lansky's resume is attached, *id*., but it is not attached to the Ex. Rpt. However, Lansky's Declaration sets forth his asserted qualifications (e.g., CEO, day-to-day person in charge, summary of experience, reputation). *Id*. (ECF pp. 71-72 of 236), (Doc. 73-2, ECF pp. 2-3 of 3).

The Ex. Rpt. also sets forth the material facts as perceived by proposed expert Lansky and his initial expert opinion of the expert reports of Plaintiffs' experts. Additionally, the Ex. Rpt. summarizes allegations in the Complaint which Lansky asserts are misleading and/or false, as well as places the allegations within context which Defendants appear to assert is relevant. Further, the Ex. Rpt. asserts the reports of Plaintiffs' experts do not contain "a single data point or document evidencing that a call alleged to be illegal meets all of the legal

requirements, including that it was auto dialed, pre-recorded, and that it contained a commercial message." *Id*. (ECF p. 37 of 236). The Ex. Rpt. also points out what Lansky asserts are deficiencies in Plaintiffs' expert reports (e.g., failure to identify campaigns, analytic providers, and referrals, making it impossible to determine reliability of sources or data).

Lansky's testimony could be helpful to the jury because it could provide information about telecom operations. For example, "[t]he average layperson has no experience pertaining to what is or is not common knowledge within the telecommunications field." *Bouygues Telecom, S.A. v. Tekelec*, 472 F. Supp. 2d 722, 726 (E.D.N.C. 2007). Second, it appears Lansky's opinions are based on his qualifications as well as specialized knowledge and experience in telecom operations. Generally speaking, this testimony is relevant and would assist the trier of fact in understanding the evidence or determining a fact in issue.

However, the Court does recognize that Lanky has presented his opinions as to the legalities of Defendants' operations in his discussion of material facts. For example, Lansky asserts

> [A] call is only an illegal robocall in the limited circumstances when it is placed using a computerized autodialer and the message is prerecorded (i.e., not delivered via a live human voice). Calls that do not meet both criteria are legal and even where the call is placed using a computerized autodialer and the message is prerecorded, a robocall is entirely legal if it comes from a caller who is exempted from an applicable telemarketing statute (for example, a political campaign to a landline telephone) or where the party receiving the call has agreed in advance to receive the call.

Ex. Rpt. (Doc. 173-1, ECF pp. 4-5 of 236). Such opinions may not be particularly helpful as "expert opinions on legal conclusions have little relevance given the Court determines issues of law." *Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 525 F. Supp. 3d 1145, 1201 (S.D. Cal. 2021), *aff'd sub nom. Golden Eye Media USA, Inc. v. Evo Lifestyle Prods. Ltd.*, No. 2021-2096, 2022 WL 2232517 (Fed. Cir. June 22, 2022), *citing KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426-27 (2007).

Additionally, the record indicates that Lansky testimony could be reliable based on his specialized knowledge and experience. Lansky has worked in the field of telecom

operations for two decades and has been involved in the day-to-day telecom operations. As stated by another district court:

> With respect to non-scientific expert testimony in particular, the reliability of an expert's methodology must be determined by common sense and common practices in the area of expertise in question. As the Advisory Committee Notes make clear, experience alone, or in conjunction with other knowledge, skill, training, or education, may very well provide a sufficient foundation for expert testimony. Fed.R.Evid. 702 Adv. Comm. Notes. However, if a witness relies "solely or primarily on experience, [she] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. *See also Kumho Tire*, 119 S.Ct. at 1176 ("[I]t will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.").

*United States v. Wilkinson*, No. 1:14-CR-168-BLW-1, 2015 WL 6182466, at *4 (D. Idaho Oct. 21, 2015). The Ex. Rpt. does set forth Lansky experience and specialized knowledge and the Ex. Rpt. sufficiently demonstrates Lansky's experience as a basis for the opinions. Further, the Ex. Rpt. implicitly explains how Lansky's experience leads to the conclusions reached and how that experience is reliably applied to the facts.

The Ninth Circuit has recognized that "[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998), *citation omitted*; *see also Allen v. Am. Capital Ltd.*, 287 F. Supp. 3d 763, 776 (D. Ariz. 2017), *citation omitted* (the "qualification standard is meant to be broad and to seek a ‘minimal foundation' justifying the expert's role as an expert"); *Gray v. LG&M Holdings LLC*, No. CV-18-02543, 2020 U.S. Dist. LEXIS 188376, *23-24 (D. Ariz. Sept. 3, 2020), *citation omitted* ("Rule 702 was not meant to supplant 'the traditional and appropriate means of attacking shaky but admissible evidence,' including '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'"). Vigorous cross-examination could assist in determining the reliability of expert testimony by Lansky.

As discussed in *Hankey*, the Court must also consider whether the danger of unfair prejudice substantially outweighs the probative value. *United States v. Hankey*, 203 F.3d at

1172 ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."); *see also United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001) ("[p]otentially devastating evidence of little or no relevance [has] to be excluded under Rule 403"). The danger of unfair prejudice from Lansky testifying as an expert does not substantially outweigh the probative value.

The Court finds it appropriate to preliminarily determine Lansky qualifies as an expert. *See United States v. Alatorre*, 222 F.3d at 1101-02 (a trial court may make a determination as to a proposed expert's qualifications, the relevance of the testimony, and the reliability of the testimony without a hearing). The Court recognizes, however, the parties have not briefed objections to specific opinions of Lansky. In other words, the Court preliminarily finds Lansky has the knowledge and experience to qualify to present expert testimony, but the parties have not adequately briefed whether those qualifications provide a sufficient basis to testify to specific opinions or whether those specific opinions are appropriately presented through expert testimony. *See e.g. In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 557 (C.D. Cal. 2014), *citations omitted* ("While an expert witness may not testify to a legal conclusion, he may testify to an ultimate issue of fact."). The Court may revisit this preliminary determination should objections (e.g., relevance, reliability), further evidence regarding how Lansky's experience leads to the conclusions reached, or further evidence on whether Lansky's experience is reliably applied to the facts be presented to the Court.[2]

. . . . .

[2]It does not appear an expert deposition of Lansky, which may provide a basis for objections, has yet been conducted.

III. *Motion for Reconsideration* (Doc. 207)

In directing Defendants to docket its Motion for Reconsideration, the Court set a deadline of November 25, 2025. Defendants filed their Motion for Reconsideration on February 3, 2026. In their Motion for Reconsideration, Defendants state it expected to have access to witness testimony prior to that deadline based on orders of the magistrate judge. Defendants continued to wait for the access to witness testimony, but when it became clear that Defendants would "not have access to [the] witnesses for at least an additional month, [Defendants determined it was] no longer practical to put off the re-docketing further." Motion (Doc. 207, p. 5). Defendants request the Court accept this Motion *nunc pro tunc* to December 15, 2025. In its reply, Defendants state:

> Defendants' Motion for Reconsideration presents the exact same arguments regarding the legal impact of the expanded discretion allowed by the end of *Chevron* deference. Indeed, other than the change in the title of the document and related confirming edits addressing procedural issues, the Motion for Reconsideration literally contained the exact same words as the original Further Supplemental Motion.
>
> As the Further Motion to Dismiss and the Motion for Reconsideration are virtually identical, Plaintiffs have had access to the arguments presented for more than five months. Indeed, rather than causing Plaintiffs prejudice, the delay in the filing of the Motion for Reconsideration provided Plaintiffs with several extra months to develop and file their responsive pleading, during which period Plaintiffs gained access to additional documents and other discovery. Moreover, no depositions have been taken, and neither party has undertaken work that could have been avoided with an earlier filing.

Reply (Doc. 221, pp. 3-4).

The applicable rule states:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> * * * * *
>
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed.R.Civ.P. 6(b)(1). As to the Motion for Reconsideration, Defendants have not requested an extension of time to file the motion. Rather, Defendants request the Court accept the untimely motion *nunc pro tunc.* However, as the federal rules are to be construed liberally, the Court will accept Defendants' request as a motion under Fed.R.Civ.P. 6. *Ahanchian v.*

*Xenon Pictures, Inc.*, 624 F.3d 1253, 1258-60 (9th Cir. 2010).

Excusable neglect rests on the relevant circumstances surrounding a party's failure to meet a deadline. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The Supreme Court has set forth four factors to be considered in determining if excusable neglect exists: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855-56 (9th Cir. 2004); *see also Los Altos El Granada Investors v. City of Capitola*, 583 F.3d 674 (9th Cir. 2009).

Although excusable neglect is a "flexible, equitable concept," "inadvertence, ignorance of the rules, or mistakes construing the rules do not constitute 'excusable' neglect.'" *Kyle v. Campbell Soup Company*, 28 F.3d 928, 931 (9th Cir. 1994), *quoting Pioneer*, 507 U.S. at 392. However, the Ninth Circuit has determined that it is appropriate to also evaluate whether an attorney has "otherwise been diligent, the propensity of the other side to capitalize on petty mistakes, the quality of representation of the lawyers . . . and the likelihood of injustice if the appeal [is] not allowed." *Pincay*, 389 F.3d at 859. Additionally, "[w]hile prejudice to the party seeking an extension is not one of the *Pioneer* factors, it is clear from *Pincay* that a district court is not limited in its analysis of a motion for extension of time to those four factors." *Mendez v. Knowles*, 556 F.3d 757, 765 n. 2 (9th Cir. 2009).

In this case, the delay itself does not unduly prejudice Plaintiffs. *See Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 273 (D.D.C. 2018), *citation omitted* ("Undue prejudice is not mere harm to the non-movant but a denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely."); *Med. Imaging Centers of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717, 720 (S.D. Cal. 1996) ("undue prejudice" means improper or unfair detriment). It does not appear the delay will impact the judicial proceedings.

However, it is not clear Defendants acted with diligence. While Defendants assert they were waiting for discovery to proceed, Defendants have not presented any reason why it could not and did not submit a request to the Court to extend the deadline. Indeed, Defendants "clearly could have informed the Court of the situation and sought leave to extend the . . . [filing] deadline. However, . . . rather than informing the Court and requesting to extend the deadline, [Defendants] simply allowed the time to expire . . . Under such circumstances, the Court finds diligence is lacking." *UC Rest., LLC v. Maricopa Cty.*, No. CIV 05-1602-PHX-MHM, 2007 WL 473681, at *3 (D. Ariz. Feb. 8, 2007); *see also Torres v. AutoZone, Inc.*, No. 2:24-CV-06103-CV (PVCX), 2025 WL 4058302, at *5 (C.D. Cal. Dec. 31, 2025) (three week delay without providing a valid justification weighs against a finding of excusable neglect). Further, the Court recognizes both sides assert the opposing parties have engaged in dilatory tactics (*e.g.*, Plaintiffs failing to timely designate witnesses despite magistrate judge's order requiring Plaintiffs address all outstanding Fed.R.Civ.P. 30(b)(6) issues; Defendants failing to timely file adequate motions to extend deadlines despite magistrate judge's order). While there is no basis to conclude Defendants' conduct was not in good faith, there is also no basis to conclude it was in good faith.

Additionally, "[w]hile prejudice to the party seeking an extension is not one of the *Pioneer* factors," it is clear from *Pincay* that a district court is not limited in its analysis of extending a filing deadline or accepting a document *nunc pro tunc*. *Mendez v. Knowles*, 556 F.3d 757, 765 n. 2 (9th Cir. 2009). The Court finds there is not a likelihood of injustice if the motion is not accepted *nunc pro tunc*. *See Pincay*, 389 F.3d at 859. Defendants may be able to raise the defense of failure to state a claim "by a motion for summary judgment." 5 Cyc. of Fed. Proc. § 15:431 (3d ed. Aug. 2026 update); FRCP RC § 12:95 (June 2026 update) ("Rule 12(h)(2) explicitly preserves the defendant's ability to challenge the sufficiency of a claim at any time 'up to, but not beyond, trial on the merits.'"); *see also In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 320 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019).

The Court finds excusable neglect does not justify the late filing.

Accordingly, IT IS ORDERED:

1. The Motion for Order Permitting Hybrid-Fact-Expert Testimony by Michael D. Lansky (Doc. 173) is GRANTED to the extent discussed herein.

2. The Motion for Reconsideration (Doc. 207) is DENIED as untimely.

3. The Clerk of Court shall not file the lodged document (Doc. 174)

DATED this 2nd day of September, 2026.

Cindy K. Jorgenson
United States District Judge